Paul J. Keenan Jr. (*pro hac vice* pending)
Reginald Sainvil (*pro hac vice* pending)
Baker & McKenzie LLP
1111 Brickell Avenue, 10th Floor
Miami, FL 33130
Telephone: 305-789-8900
Facsimile: 305-789-8953
Email: paul.keenan@bakermckenzie.com
        reginald.sainvil@bakermckenzie.com

Blaire Cahn
Baker & McKenzie LLP
452 Fifth Avenue
New York, NY 10018
Telephone: 212-626-4100
Facsimile: 212-310-1600
Email: blaire.cahn@bakermckenzie.com

*Proposed Counsel for the Debtor
and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CREDIVALORES – CREDISERVICIOS S.A., | Case No. 24-10837 (DSJ) |
| Debtor. | |

---

**MOTION OF THE DEBTOR FOR ENTRY OF AN ORDER (A) AUTHORIZING THE DEBTOR TO CONTINUE PAYING AMOUNTS OWED TO ITS FOREIGN UTILITY PROVIDERS IN THE NORMAL COURSE OF BUSINESS, (B) APPROVING THE DEBTOR'S PROPOSED ADEQUATE ASSURANCE AND ADEQUATE ASSURANCE PROCEDURES FOR CONSENTING FOREIGN UTILITY PROVIDERS, (C) PROHIBITING CONSENTING FOREIGN UTILITY PROVIDERS FROM ALTERING, REFUSING, OR DISCONTINUING UTILITY SERVICES ON ACCOUNT OF PREPETITION AMOUNTS OUTSTANDING OR ON ACCOUNT OF ANY PERCEIVED INADEQUACY OF THE DEBTOR'S PROPOSED ADEQUATE <u>ASSURANCE, AND (D) GRANTING RELATED RELIEF</u>**

The above-captioned debtor and debtor-in-possession (the "**Debtor**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**") hereby files this motion (this "**Motion**") for entry of an interim order, substantially in the form attached hereto as **Exhibit B** (the "**Interim**

Order"), and a final order, substantially in the form attached hereto as **Exhibit C** (the "**Final Order**," and together with the Interim Order, the "**Proposed Orders**"), granting the relief requested herein. In support of this Motion, the Debtor relies upon and incorporates by reference the *Declaration in Support of the Chapter 11 Petition and First Day Pleadings and (II) Pursuant to Local Bankruptcy Rule 1007-2* (the "**First Day Declaration**"), filed concurrently herewith. In further support of the Motion, the Debtor respectfully represent as follows:

<u>**JURISDICTION AND VENUE**</u>

1.      The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012 (Preska, C.J.).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4.      The statutory and other legal predicates for the relief requested herein are sections 105(a), 366, 1107, and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004(h), Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York, and the *Amended Procedural Guidelines for Prepackaged Chapter 11 Cases in the United States Bankruptcy Court for the Southern District of New York*, effective February 1, 2024 (the "**Guidelines**").

## BACKGROUND

5.     On the date hereof (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under the Bankruptcy Code with the Court. The Debtor continues to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No creditors' committee has been appointed by the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**"), nor has a trustee or examiner been appointed in the Chapter 11 Case.

6.     The Debtor is a non-bank financial institution in Colombia offering a variety of flexible, specialized, and tailored credit and financing alternatives, including payroll deduction loans and insurance premium financing, to low- and middle-income segments of the Colombian population. Initially operating locally in Cali, Colombia, the Debtor steadily grew into other geographic regions throughout Colombia.

7.     The Debtor has historically funded costs and expenditures through a combination of cash generated from operations, equity issuances, and borrowing funded indebtedness. Recently, the Debtor faced pressure with respect to its coupon payment due on February 7, 2024 on its 8.875% Senior Notes due 2025 (the "**Old Notes**") issued under that certain Indenture, dated February 7, 2020, between the Debtor and the Bank of New York Mellon.

8.     While the Debtor's business operations are strong, the Debtor has faced numerous headwinds in its efforts to raise the necessary funds in order to make the coupon payment on the Old Notes, and as a result, determined to improve its liquidity position through a refinancing of the Old Notes.

9.     Prior to the Petition Date, the Debtor commenced discussions with several holders of the Old Notes regarding a restructuring of the Old Notes that would extend the maturity of the

Old Notes, reduce the Debtor's overall debt and interest burden, and strengthen the Debtor's capital by significantly reducing its refinancing requirements.

10. On March 7, 2024, the Debtor launched an exchange offer and solicited votes from all holders of the Old Notes to exchange the Old Notes (the "**Exchange Offer**") for newly issued Senior Secured Step-up Notes due 2029 (the "**New Notes**"), and on its Prepackaged Chapter 11 Plan (as may be amended, the "**Plan**") that would effectuate the financial restructuring, *i.e.*, the exchange of the Old Notes for the New Notes, on essentially the same terms as the Exchange Offer.

11. The Plan consists of a plan of reorganization under Chapter 11 of the Bankruptcy Code that would result in the same transactions contemplated by the Exchange Offer, *i.e.*, the extension of the maturity of the Old Notes through the issuance of New Notes in order to reduce the Debtor's overall debt burden and interest expense burden.

12. The voting deadline on the Plan was April 3, 2024 at 5:00 p.m. New York City time. As shown in the related declaration of the Debtor's solicitation agent, 81.25% in amount and 96.09% in number of the holders of the Old Notes that cast ballots on the Plan voted to accept the Plan.

13. On the Petition Date, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code to effectuate the Plan, enhance liquidity, and solidify its long-term growth prospects and operating performance. The Plan provides that all claims other than those of the holders of the Old Notes are unimpaired.

14. A detailed factual background of the Debtor's business and operations, as well as the events precipitating the commencement of this Chapter 11 Case, is more fully set forth in the First Day Declaration, filed contemporaneously herewith and incorporated herein by reference.

## MOTION SPECIFIC FACTS

**A.      Utility Providers**

15.      In connection with the operation of its businesses and management of its estate, the Debtor obtains water, electricity, internet, telephone, and other related services (collectively, the "**Utility Services**") from a number of foreign utility companies (collectively, the "**Foreign Utility Providers**"), including those listed on **Exhibit A** attached hereto (the "**Utility Provider List**").[1]

16.      In the ordinary course of business, the Debtor regularly incurs utility expenses for Utility Services provided by the Foreign Utility Providers. The Debtor has a long and established payment history with most or all of the Foreign Utility Providers. The Debtor's aggregate average monthly cost for Utility Services is approximately \$57,000.[2] To the best of the Debtor's knowledge, there are no material defaults or arrearages with respect to the Debtor's undisputed Utility Services invoices, other than payment interruptions that may be caused by the commencement of this Chapter 11 Case.

17.      Uninterrupted Utility Services are essential to the Debtor's business operations and the success of this Chapter 11 Case. Should any Foreign Utility Provider refuse or discontinue service, even for a brief period, the Debtor's ability to preserve and maximize the value of its estate could be severely and irreparably harmed. Any interruption of the Utility Services would disrupt the Debtor's ability to operate and maintain its business and would thereby negatively affect the Debtor's customer relationships, revenues, and profits. Such a result could seriously jeopardize the value of the Debtor's businesses and, ultimately, creditor recoveries.

---

[1] The inclusion of any entity on, as well as any omission of any entity from, **Exhibit A** is not an admission by the Debtor that such entity is, or is not, a utility within the meaning of Section 366 of the Bankruptcy Code, and the Debtor reserves all rights with respect thereto.

[2] The foreign exchange rate for Colombian Pesos is 3,825.42 on May 15, 2024. The Utility expenses reflected in Exhibit A have been converted accordingly.

18. It is therefore critical that the Utility Services continue uninterrupted, and that the Debtor be authorized to continue paying its Foreign Utility Providers postpetition in the normal course of business.

19. The Debtor reserves the right to supplement the Utility Provider List by filing a notice or notices (each, a "**Subsequent Notice**") with this Court.

**B.     Adequate Assurance for Consenting Foreign Utility Providers**

20. Pursuant to Section 366 of the Bankruptcy Code, a Foreign Utility Provider may request adequate assurance of payment from the Debtor by providing its irrevocable written consent to the jurisdiction of the Bankruptcy Court for the Southern District of New York, ("**Consenting Foreign Utility Provider**"), and to the applicability of Section 366 of the Bankruptcy Code in a form and substance acceptable to the Debtor.

21. In order to provide adequate assurance of payment for future services to Consenting Foreign Utility Providers, as set forth in section 366(c) of the Bankruptcy Code, the Debtor proposes to deposit an initial sum equal to the Debtor's estimated average cost for two (2) weeks of Utility Services (the "**Adequate Assurance Deposit**"), into an existing, segregated bank account (the "**Adequate Assurance Account**") within fourteen (14) days of the entry of an interim order; *provided, however*, that no Adequate Assurance Deposit shall be made for any Consenting Foreign Utility Provider that already holds a deposit or prepayment equal to or greater than two (2) weeks of Utility Services. Because the Debtor's approximate monthly spending on Utility Services is $57,000, the Debtor proposes that the Adequate Assurance Deposit should be approximately $28,500.

22. The Debtor further proposes to maintain the Adequate Assurance Account with a minimum balance equal to the Debtor's estimated average two-week cost of Utility Services through the Final Hearing on the Motion. Thereafter, the Debtor proposes to adjust the amount in

the Adequate Assurance Account to reflect the following factors: (i) the termination of Utility Services by the Debtor regardless of any Additional Assurance Requests (as defined below); (ii) agreements with Consenting Foreign Utility Providers; and (iii) the removal of any amount spent on Utility Services from Consenting Foreign Utility Providers that hold postpetition deposits or other security from the Debtor for such services. These adjustments will permit the Debtor to maintain the Adequate Assurance Account with an amount that consistently provides the Consenting Foreign Utility Providers that do not otherwise hold deposits or security for their Utility Services with a two-week deposit on account of such services.

23.     The Debtor submits that the Adequate Assurance Deposit, taken together with the facts and circumstances of this Chapter 11 Case (together, the "**Proposed Adequate Assurance**"), constitutes sufficient adequate assurance to Consenting Foreign Utility Providers. As a result, the Debtor is objectively likely to continue paying, and be able to continue paying, its obligations to the Consenting Foreign Utility Providers postpetition.

24.     These protections ensure that all Foreign Consenting Utility Providers will have adequate assurance of payment throughout the pendency of this Chapter 11 Case, and the Debtor believes that no other or further assurance is necessary.

## C.     Adequate Assurance Procedures

25.     If any Consenting Foreign Utility Provider believes adequate assurance is required beyond the protections described herein, the Debtor is seeking authority to propose a procedure whereby Consenting Foreign Utility Providers can request assurance pursuant to the procedures described below (collectively, the "**Adequate Assurance Procedures**"):

> A.     As adequate assurance of future payment to Consenting Foreign Utility Providers, the Debtor proposes to deposit an initial sum equal to the Debtor's estimated average cost for two (2) weeks of Utility Services into the Adequate Assurance Account within fourteen (14) days of the entry of an interim order. The Debtor estimates the

aggregate amount of all Adequate Assurance Deposits will be approximately $28,500;

B.      If a Consenting Foreign Utility Providers is not satisfied with the Adequate Assurance Deposit provided by the Debtor and seeks additional assurance of payment, the Consenting Foreign Utility Providers must serve a written request (the "**Additional Assurance Request**") upon the Debtor setting forth the location(s) for which Utility Services are provided, the account number(s) for such location(s), the outstanding balance for each account, a summary of the Debtor's payment history on each account, an explanation of why the Adequate Assurance Deposit is inadequate assurance of payment, and a description of the type and amount of additional assurance sought;

C.      The Additional Assurance Request must actually be filed with the Court and received by (i) the Debtor (Attn: Treasury Department) and (ii) the Debtor's proposed counsel, Baker & McKenzie LLP (Attn: Paul J. Keenan Jr., Blaire Cahn, and Reginald Sainvil) (collectively, the "**Notice Parties**") within thirty (30) days of entry of an interim order;

D.      In the event that the Debtor receives any Additional Assurance Request in compliance with the procedures in the Motion, the Debtor shall have five (5) business days (collectively, the "**Resolution Period**") to negotiate with the Consenting Foreign Utility Providers to endeavor to resolve any Consenting Foreign Utility Provider's request for additional assurance of payment; and that during this period, Consenting Foreign Utility Providers may not terminate any of the Utility Services they provide to the Debtor on account of the bankruptcy filing or any unpaid charges for prepetition services;

E.      The Debtor may resolve any Additional Assurance Request by mutual agreement with the Consenting Foreign Utility Providers and without further order of this Court, and may, in connection with any such agreement, provide a Consenting Foreign Utility Provider with additional adequate assurance of future payment including, but not limited to, cash deposits, prepayments, and/or other forms of security, without further order of this Court, if the Debtor believes such additional assurance is reasonable.

F.      If the Debtor determines that an Additional Assurance Request is not reasonable and is not able to reach an alternative resolution with the Consenting Foreign Utility Provider, the Debtor will request a hearing before this Court, to be held at a date and time to be scheduled promptly by the Debtor upon notice to the applicable

Consenting Foreign Utility Provider, to determine the adequacy of assurances of payment with respect to a particular Consenting Foreign Utility Provider (the "**Determination Hearing**") pursuant to section 366(c)(3) of the Bankruptcy Code;

G.     Pending resolution of any such Determination Hearing, such particular Consenting Foreign Utility Provider shall be restrained from discontinuing, altering or refusing service to the Debtor on account of unpaid charges for prepetition services or the Debtor's bankruptcy filing;

H.     A Consenting Foreign Utility Provider shall be deemed to have adequate assurance of payment unless and until the Consenting Foreign Utility Provider makes a timely Additional Assurance Request and (a) the Debtor agrees to an Additional Assurance Request or agrees to an alternative assurance of payment with the Consenting Foreign Utility Provider during the Resolution Period or (b) this Court enters an order requiring that additional adequate assurance of payment be provided;

I.     The Adequate Assurance Deposit shall be deemed adequate assurance of payment for any Consenting Foreign Utility Provider that fails to make an Additional Assurance Request;

J.     At any time, the Debtor may terminate service from any of the Consenting Foreign Utility Providers, such termination being effective immediately upon the Debtor's notice to the Consenting Foreign Utility Providers. At such time, the Debtor shall no longer be required to make any more payments to such Consenting Foreign Utility Providers for any services provided after such termination, and any excess shall be returned forthwith; and

K.     Following the date upon which a chapter 11 plan is confirmed in this Chapter 11 Case, all funds deposited into the Adequate Assurance Account shall be released to the Debtor. Any additional adequate assurance of future payment ("Additional Adequate Assurance Security") shall be returned to the Debtor no later than the earlier of five (5) business days following the date upon which (a) a chapter 11 plan is confirmed in this Chapter 11 Case or (b) the Debtor provides notice to a Consenting Foreign Utility Provider that the services it provided to the Debtor no longer will be needed, provided that in the case of clause (b), the Debtor shall have paid such Consenting Foreign Utility Provider in full for any outstanding postpetition services or such outstanding amounts may be satisfied by reducing the Additional Adequate Assurance Security

26. The Debtor also requests authority to adjust periodically the amount in the Adequate Assurance Account to reflect the following factors: (a) the termination of Utility Services by the Debtor; (b) the entry into any agreements between the Debtor and the applicable Consenting Foreign Utility Providers; and (c) the removal of any amount spent on Utility Services from Consenting Foreign Utility Providers that hold postpetition deposits or other security from the Debtor for such services.

27. Absent compliance with the Adequate Assurance Procedures, the Debtor requests that Consenting Foreign Utility Providers be forbidden from altering, refusing, or discontinuing service, or requiring additional assurance of payment other than the Proposed Adequate Assurance.

**D.     Subsequent Modifications of Utility Provider List**

28. Although the Debtor has made an extensive and good-faith effort to identify all of its Utility Providers, certain Utility Providers that currently provide Utility Services to the Debtor may not be listed on the Utility Provider List.

29. To the extent that the Debtor subsequently identifies additional Utility Providers, or determines that an entity was improperly included as a Utility Provider, the Debtor has the authority, in its sole discretion and without further order of this Court, to amend the Utility Provider List to add or delete any Utility Provider. If the Debtor adds any Utility Providers to the Utility Provider List, the Debtor will serve a copy of this Motion, along with the applicable portion of the amended Utility Provider List and the interim order or final order (as applicable), on such Utility Provider within five (5) business days after the Debtor files a Subsequent Notice with the Court. Such subsequently added Utility Provider will be subject to the Adequate Assurance Procedures set forth herein. For any entity that is removed from the Utility Provider List, the Debtor shall serve that entity with notice of removal and such entity shall have five (5) days from the date of service of such notice to object to that removal.

30.     Nothing in an interim order or a final order will constitute a finding that any entity is or is not a Utility Provider under Section 366 of the Bankruptcy Code, whether or not such entity is included in the Utility Provider List.

**RELIEF REQUESTED**

31.     By this Motion, the Debtor seeks entry of the Proposed Orders, pursuant to sections 105(a) and 366 of the Bankruptcy Code, and the *Amended Procedural Guidelines for Prepackaged Chapter 11 Cases in the United States Bankruptcy Court for the Southern District of New York*, effective February 1, 2024 (the "**Guidelines**") as follows:

- Authorizing the Debtor to continue paying amounts owed to its Foreign Utility Providers (including those that do not consent to the jurisdiction of this Court) in the normal course of business;

- Approving the Debtor's Proposed Adequate Assurance and Adequate Assurance Procedures for Consenting Foreign Utility Providers;

- Prohibiting Consenting Foreign Utility Providers from altering, refusing, or discontinuing Utility Services on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Debtor's proposed adequate assurance;

- Determining that the Debtor is not required to provide any additional adequate assurance to Consenting Foreign Utility Providers beyond what is proposed by this Motion.

**BASIS FOR RELIEF REQUESTED**

**I.     Section 105(a) of the Bankruptcy Code Authorizes this Court to Allow the Debtor to Continue Paying its Foreign Utility Providers in the Normal Course**.

32.     This Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because such relief is necessary for the Debtor to carry out its fiduciary duties under section 1107(a) of the Bankruptcy Code. Section 1107(a) of the Bankruptcy Code, "contains an implied duty of the debtor-in-possession," to act as a fiduciary to "protect and preserve the estate, including an operating business' going-concern

value," on behalf of the debtor's creditors and other parties in interest. *Unofficial Comm. Of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232–33 (Bankr. S.D.N.Y. 1998). Section 105(a) of the Bankruptcy Code empowers the Court to, "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a); see *Ionosphere Clubs*, 98 B.R. at 175; *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999).

33.     In a long line of well-established cases, courts consistently have permitted payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g.*, *Miltenberger v. Logansport, C&S W.R. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of the continuance of [crucial] business relations"); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that, "if payment of a claim which arose prior to reorganization is essential to the continued operation of the . . . [business] during reorganization, payment may be authorized even if it is made out of [the] corpus"); *Mich.Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285–86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

34.     Here, the Utility Services are essential to the preservation of the Debtor's estate and assets, and therefore, to the success of this Chapter 11 Case. Should any Utility Provider refuse or discontinue service, even for a brief period, the Debtor's ability to preserve and maximize the value of its estate could be severely and irreparably harmed. Any interruption of the Utility Services would disrupt the Debtor's ability to operate and maintain its businesses and would thereby negatively affect the Debtor's customer relationships, revenues, and profits. Such a result

could seriously jeopardize the value of the Debtor's businesses and, ultimately, creditor recoveries. It is therefore critical that the Utility Services continue uninterrupted.

35.     Given the prepackaged nature of this Chapter 11 case, it is a sound exercise of the Debtor's business judgment to pay amounts owed on account of Utility Services as they become due in the ordinary course of business because doing so will avoid any potential disruption or interruption to the Debtor's business.

## II.     Pursuant to Section 366 of the Bankruptcy Code the Proposed Adequate Assurance and Adequate Assurance Procedures for Consenting Foreign Utility Providers Are Sufficient.

36.     Section 366(a) of the Bankruptcy Code prohibits utility companies from discontinuing, altering, or refusing service to a debtor. *See* 11 U.S.C. § 366(a). Pursuant to section 366(c)(2) of the Bankruptcy Code, however, in a chapter 11 context, a utility provider may refuse or discontinue service to a debtor after the first thirty (30) days if the debtor has not furnished the utility provider with adequate "assurance of payment" within the meaning of section 366(c)(1)(A) of the Bankruptcy Code. *See id.* §§ 366(c)(1)(A) and 366(c)(2). Upon expiration of such period, a utility provider cannot terminate its services if a debtor has furnished adequate "assurance of payment." *See id.* § 366(c).[3]

37.     Section 366(c), which was enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, has two primary purposes:  first, it permits a utility to alter,

---

[3] Section 366 of the Bankruptcy Code applies to entities that are traditionally viewed as utilities, such as those that provide electricity, gas, telephone service or water, and to any entity that supplies services that cannot be readily obtained or replaced elsewhere, or which constitutes a monopoly with respect to the services that it provides to the debtor. *See, e.g.*, *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986) (landlord of the Brooklyn Navy Yard "occupies 'a special position with respect to the debtor' in its role as [the debtor's] utility supplier"); *In re Ziff Davis Media Inc.*, Case No. 08-10768 (BRL) (Bankr. S.D.N.Y. Mar. 11, 2008) [Docket No. 48] (approving internet server providers as utilities for purposes of Bankruptcy Code section 366). Despite the wide latitude afforded in determining those entities that constitute utilities under section 366, some of the companies listed on the Utility Provider List may also provide goods or services to the Debtor in a capacity other than that of a utility. With respect to any such goods or services, such companies are not entitled to adequate assurance under section 366. Moreover, the Debtor is not foreclosed from taking the position that any of the entities listed on the Utility Provider List are not utilities within the meaning of section 366.

refuse or discontinue utility service if a debtor has not provided "satisfactory" adequate assurance within thirty (30) days of its bankruptcy filing, subject to the court's ability to modify the amount of adequate assurance. Second, it restricts the factors that a court can consider when determining whether an adequate assurance payment is, in fact, adequate. Specifically, courts may no longer consider (a) the absence of a security deposit before the debtor's petition date, (b) the debtor's history of timely payments, or (c) the availability of an administrative expense priority when determining the amount of a deposit. Notwithstanding these changes, it does not appear that Congress intended to – or did – abrogate the bankruptcy court's right to determine the amount of adequate assurance necessary or change the fundamental requirement that assurance of payment must simply be "adequate."

38.     While section 366(c) limits the factors a court can consider when determining whether a debtor has provided adequate assurance of payment, it does not limit a court's ability to determine the amount of payment necessary, if any, to provide such adequate assurance. Instead, section 366(c) gives courts the same discretion in determining the amount of payment necessary for adequate assurance as they had previously provided under section 366(b). *Compare* 11 U.S.C. § 366(b) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.") *with id.* § 366(c)(3)(A) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance payment under paragraph (2)."). Indeed, section 366(b) permits a court to find that no adequate assurance payment at all is necessary to provide a utility with adequate assurance of payment under certain circumstances. *See Va. Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646, 650 (2d Cir. 1997)(*Caldor*) ("Even assuming that 'other security' should be interpreted narrowly . . . a

bankruptcy court's authority to 'modify' the level of the 'deposit or other security,' provided for under § 366(b), includes the power to require no 'deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'").[4]  This may be particularly true in cases where the debtor has made prepetition deposits or prepayments for services that utilities will ultimately render postpetition.  *See* 11 U.S.C. § 366(c)(1)(A)(v) (recognizing a prepayment for postpetition services as adequate assurance).  Accordingly, courts continue to have discretion to determine the amount of adequate assurance payments and, where appropriate, to determine that no such payment is necessary.

39.    Additionally, section 366(c), like section 366(b), simply requires that a utility's assurance of payment be "adequate."  Courts have long recognized that adequate assurance of performance does not constitute an absolute guarantee of a debtor's ability to pay.  *See, e.g.*, *In re Great Atl. & Pac. Tea Co.*, No. 11-CV-1338, 2011 WL 5546954, at *5 (Bankr. S.D.N.Y. Nov. 14, 2011) ("Courts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full."); *In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996), *aff'd sub nom., Caldor,* , 117 F.3d at 646 ("[Section 366(b)] does not require an 'absolute guarantee of payment.'") (citation omitted); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) ("In determining adequate assurance, a bankruptcy court is not required to give a utility company the equivalent of a guaranty of payment . . . .").  Courts have also recognized that in determining the amount of adequate assurance, bankruptcy courts should "focus upon the need of the utility for assurance, and . . . require that the

---

[4] *Caldor* also validated an administrative expense priority as sufficient assurance of payment in a chapter 11 case.  As noted above, this portion of the *Caldor* holding was superseded by § 366(c)(1)(B) and (c)(3)(B)(iii).  However, Debtor does not rely on the availability of any administrative expense priorities to establish the sufficiency of its Adequate Assurance Deposit.  Further, *Caldor's* holding that § 366(b) provides courts with the power to modify the level of a deposit or other security, including the power to require no deposit or other security where none is necessary, remains intact. *See In re Adelphia Bus. Solutions,* 280 B.R. 63, 82 (S.D,N.Y. 2002).

debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Caldor*, 117 F.3d at 650 (emphasis in original) (citation omitted); *see also Great Atl. & Pac.*, 2011 WL 5546954, at *5-6 (holding that no additional adequate assurance deposit was necessary where such deposit would impose an unreasonable burden on reorganizing debtors). Accordingly, demands by a Consenting Foreign Utility Provider for a guarantee of payment when they already have adequate assurance of payment in light of the Debtor's specific circumstances should be refused.

40.     Based upon the foregoing, the Debtor believes that the proposed Adequate Assurance Deposits are sufficient adequate assurance of payment within the meaning of Section 366 of the Bankruptcy Code. The proposed Adequate Assurance Deposits are cash deposits, a listed form of assurance of payment in section 366(c)(1)(A) of the Bankruptcy Code. Moreover, termination of any Utility Services could result in the Debtor's inability to operate its businesses to the detriment of all stakeholders. *Cf. In re Monroe Well Serv., Inc.*, 83 B.R. 317, 321–22 (Bankr. E.D. Pa. 1988) (noting that without utility service, the debtors "would have to cease operations" and that Section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it"). These factors – which the Court should consider when considering the amount of any adequate assurance payments – justify a finding that the Proposed Adequate Assurance is more than sufficient to assure any Consenting Foreign Utility Providers of future payment.

41.     Similarly, the proposed Adequate Assurance Procedures are sufficient and should be approved by the Court. Any rights the Consenting Foreign Utility Providers believe they have under sections 366(b) and 366(c)(2) of the Bankruptcy Code are preserved under the Adequate Assurance Procedures. As an example, if the Consenting Foreign Utility Providers disagree with

the Debtor's analysis, the procedures proposed in this Motion will enable the parties to negotiate and, if necessary, seek Court intervention. These procedures are more than reasonable as they protect the rights of any Consenting Foreign Utility Providers under Section 366 of the Bankruptcy Code, without jeopardizing the Debtor's Chapter 11 Case.

42.     Because the Adequate Assurance Procedures are reasonable and consistent with the purposes of Section 366 of the Bankruptcy Code, the Court should grant the relief requested herein. Courts in this district have approved similar procedures in other recent chapter 11 cases. *See, e.g.*, *In re Lakeland Tours, LLC, et al.*, Case No. 20-11647 (JLG) (Bankr. S.D.N.Y. Sept. 27, 2020) [Docket No. 202] (approving payment of a deposit into a segregated interest-bearing account as adequate assurance to utility providers); *In re Grupo Aeromexico, S.A.B. de C.V., et al.*, Case No. 20-11563 (JPM) (Bankr. S.D.N.Y. July 20, 2020) [Docket No. 135] (approving similar adequate assurance procedures for U.S. utility providers and consenting foreign utility providers); *In re LATAM Airlines Group S.A. et al.*, No. 20-11254 (JLG) (Bankr. S.D.N.Y. June 1, 2020) [Docket No. 79] (same); *In re Frontier Commc'ns. Corp.*, Case No. 20-22476 (RDD) (Bankr. S.D.N.Y. May 26, 2020) [Docket No. 388] (approving payment of a deposit into a segregated interest-bearing account as adequate assurance to utility providers); *In re Deluxe Ent. Servs. Grp. Inc. et al*, Case No. 19-23774 (RDD) (Bankr. S.D.N.Y. Oct. 9, 2019) [Docket No. 45] (same); *In re Barneys N.Y. Inc.*, Case No. 19-36300 (CGM) (Bankr. S.D.N.Y. Aug. 22, 2019) [Docket No. 155] (same).[5]

43.     The Court also has authority to approve the proposed Adequate Assurance and Adequate Assurance Procedures under Section 105(a) of the Bankruptcy Code. As noted above, the purpose of Section 105(a) of the Bankruptcy Code is "to assure the bankruptcy courts [sic]

---

[5] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtor's proposed counsel.

power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 *Collier on Bankruptcy* ¶ 105.01, at 105-5 to 105-6 (16th ed. rev. 2015). The Proposed Adequate Assurance and Adequate Assurance Procedures are necessary and appropriate to carry out the provisions of the Bankruptcy Code, particularly section 366. Accordingly, the Court should exercise its powers under sections 366 and 105(a) of the Bankruptcy Code and grant the relief requested herein.

III.  **This Court Should Authorize and Direct Banks and Other Financial Institutions to Honor and Pay Checks Issued and Make Other Transfers to Pay Foreign Utility Providers and Consenting Foreign Utility Providers.**

44.    The Debtor requests that the Court authorize and direct the Debtor's banks and other financial institutions at which the Debtor maintains disbursement accounts (the "Disbursement Banks"), to receive, process, honor, and pay, to the extent of funds on deposit, any and all checks drawn or electronic fund transfers requested or to be requested by the Debtor relating to the Debtor's obligations to Foreign Utility Providers and Consenting Foreign Utility Providers. The Debtor also seeks authority to issue new postpetition checks, or initiate new electronic fund transfers, on account of such obligations, and to replace any prepetition checks or electronic fund transfer requests that may be lost, dishonored, or rejected as a result of the commencement of this Chapter 11 Case.

**BANKRUPTCY RULE 6003 IS SATISFIED AND**
**<u>REQUEST FOR WAIVER OF STAY</u>**

45.    The Debtor submits that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor for the reasons set forth herein and in the First Day Declaration, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted. Bankruptcy Rule 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an

> order granting the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . .

Fed. R. Bankr. P. 6003.

46.     As set forth above, the relief requested herein is essential to prevent irreparable damage to the Debtor's operations and going-concern value. Accordingly, the Debtor submits that the relief requested herein is necessary to avoid immediate and irreparable harm and, therefore, Bankruptcy Rule 6003(b) is satisfied.

47.     To successfully implement the foregoing, the Debtor respectfully requests that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances, and that the Court waive the stay imposed by Bankruptcy Rules 6004(h) and 4001(a). Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral[6] is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As explained above and in the First Day Declaration, the Debtor submits that ample cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and granting a waiver of the stay imposed by Bankruptcy Rules 4001(a)(3) and 6004(h), to the extent such notice is required and such a stay applies.

48.     Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rules 6003 and 6004(h).

## **RESERVATION OF RIGHTS**

49.     Nothing contained herein is intended or should be construed as or deemed to constitute an agreement or admission as to the validity of any claim against the Debtor on any

---

[6] Debtor does not seek the use of any cash collateral.

grounds, a waiver or impairment of the Debtor's rights to dispute any claim on any grounds or an assumption or rejection of any agreement, contract or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be, and should not be construed as, an admission as to the validity of any claim or a waiver of the Debtor's rights to dispute such claim subsequently.

## NOTICE

50.      Notice of this Motion will be provided to: (a) the U.S. Trustee; (b) the holders of the 20 largest unsecured claims against the Debtor; (c) the Internal Revenue Service; (d) the United States Attorney's Office for the Southern District of New York and any other states in which the Debtor operates; (e) the Securities and Exchange Commission; (f) any party that has requested notice pursuant to Bankruptcy Rule 2002; (g) Counsel to the Indenture Trustee for the Old Notes, Norton Rose Fulbright (Attn: Marian Baldwin, marian.baldwin@nortonrosefulbright.com); (h) any other party entitled to notice pursuant to Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

## NO PRIOR REQUEST

51.      No prior request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court enter a final order, substantially in the form annexed hereto as **Exhibit B**, granting the relief requested herein and granting such other and further relief as is just and proper.

Dated: May 16, 2024

**BAKER & McKENZIE LLP**

By: /s/ *Paul J. Keenan Jr.*

Paul J. Keenan Jr. (*pro hac vice* pending)
Reginald Sainvil (*pro hac vice* pending)
1111 Brickell Avenue, 10th Floor
Miami, FL 33131
Telephone: 305-789-8900
Facsimile: 305-789-8953
Email: paul.keenan@bakermckenzie.com
         reginald.sainvil@bakermckenzie.com

Blaire Cahn
452 Fifth Avenue
New York, NY 10018
Telephone: 212-626-4100
Facsimile: 212-310-1600
Email: blaire.cahn@bakermckenzie.com

*Proposed Counsel for Debtor and Debtor-in-Possession*

**Exhibit A**

**Utility Provider List**

| Utility Providers List | | | | | | |
|---|---|---|---|---|---|---|
| Utility Company | Service Location | Type of Service | Account Number(s) | Average Aggregate Monthly Cost (COP) | Average Aggregate Monthly Cost (USD) | Adequate Assurance (Est) |
| EMPRESAS PUBLICAS DE ARMENIA | CARRERA 15 # 21-33 | Water Services | 111439 | 26,321 | 7 | 3 |
| TRIPLE A SA ESP | CARRERA 58 # 75-12 | Water Services | 185046 | 23,353 | 6 | 3 |
| COMPAÑÍA DE JESUS | CARRERA 10 # 65-98 | Water Services | 860007627 | 1,751,161 | 458 | 229 |
| ACUEDUCTO METROPOLITANO DE BUCARAMANGA S.A. E.S.P. | CALLE 36 # 32-89 | Water Services | 1052411 | 88,532 | 23 | 12 |
| Empresas Municipales De Cali EICEESP | CARRERA 3 # 10-69 | Water Services | 247772 | 78,392 | 20 | 10 |
| Empresas Municipales De Cali EICEESP | CARRERA 8 # 52-06 PISO 2 | Water Services | 691115 | 7,170 | 2 | 1 |
| Empresas Municipales De Cali EICEESP | CARRERA 8 # 52-06 PISO 2 | Water Services | 691118 | 7,170 | 2 | 1 |
| AGUAS KPITAL DE CUCUTA | AVENIDA 0 # 17-35 | Water Services | 47740 | 39,498 | 10 | 5 |
| AGUAS KPITAL DE CUCUTA | AVENIDA 0 # 17-35 | Water Services | 108834 | 17,983 | 5 | 2 |
| EMPRESA DE SERVICIOS DE FLORENCIA SERVAF S.A E.S.P. | CARRERA 17 # 11-02 | Water Services | 38488 | 26,692 | 7 | 3 |
| EMPRESA DE AGUAS DE GIRARDOT, RICAURTE Y LA REGION S.A. E.S.P. | CALLE 20A # 10-83 | Water Services | 18981 | 53,627 | 14 | 7 |
| Empresa de Obras Sanitarias de Caldas | CARRERA 3 # 12-18 | Water Services | 11901 | 16,226 | 4 | 2 |
| AGUAS DE MANIZALES | CALLE 23 # 23-32 | Water Services | 16710 | 63,177 | 17 | 8 |
| Empresas Públicas de Medellín - EPM | CARRERA 52 # 14-30 | Water Services | 2136971 | 87,971 | 23 | 11 |
| AGUAS DE MONTERIA | CARRERA 3 # 21-90 | Water Services | 2889 | 30,316 | 8 | 4 |
| LAS CEIBAS | CALLE 21 # 13-43 | Water Services | 70960395 | 26,411 | 7 | 3 |
| LAS CEIBAS | CALLE 21 # 13-43 | Water Services | 70960300 | 42,245 | 11 | 6 |
| LAS CEIBAS | CALLE 21 # 13-43 | Water Services | 70960000 | 25,571 | 7 | 3 |
| AQUA OCCIDENTE | CALLE 31 # 30-09 | Water Services | 4087 | 11,070 | 3 | 1 |

| Utility Providers List | | | | | | |
|---|---|---|---|---|---|---|
| Utility Company | Service Location | Type of Service | Account Number(s) | Average Aggregate Monthly Cost (COP) | Average Aggregate Monthly Cost (USD) | Adequate Assurance (Est) |
| Aqualia Latinoamérica S.A. E.S.P | CALLE 13 # 13-02 | Water Services | 1200009093 | 18,021 | 5 | 2 |
| EMPRESA DE SERVICIOS PÚBLICOS DEL DISTRITO DE SANTA MARTA E.S.P. | CALLE 22 # 6-51 | Water Services | 76462 | 40,090 | 10 | 5 |
| AGUAS DE LA SABANA | CARRERA 19 # 52-19 | Water Services | 62312 | 93,634 | 24 | 12 |
| AGUAS DE TUNJA | CALLE 20 # 12-84 | Water Services | 159244 | 82,905 | 22 | 11 |
| Empresa De Servicios Públicos De Valledupar S.a. | CARRERA 10 # 16A-04 | Water Services | 18384 | 39,785 | 10 | 5 |
| EMPRESA DE ACUEDUCTO Y ALCANTARILLADO DE VILLAVICENCIO E.S.P. | CARRERA 33 # 34A-127 | Water Services | 10188 | 39,693 | 10 | 5 |
| **Water Services** | | | | 2,737,014 | 715 | 358 |
| EMPRESA DE ENERGIA DEL QUINDIO | CARRERA 15 # 21-33 | Electricity Services | 224031 | 361,891 | 95 | 47 |
| AIR-E | CARRERA 58 # 75-12 | Electricity Services | 2239442 | 4,359,337 | 1,140 | 570 |
| EDIFICIO QBE CENTRAL | CARRERA 7 # 76-35 | Electricity Services | 830047705 | 5,069,071 | 1,325 | 663 |
| COMPAÑÍA DE JESUS | CARRERA 10 # 65-98 | Electricity Services | 860007627 | 8,728,927 | 2,282 | 1,141 |
| ELECTRIFICADORA DE SANTANDER S.A. E.S.P. | CALLE 36 # 32-89 | Electricity Services | 255207 | 1,590,534 | 416 | 208 |
| ALMACENES ÉXITO | TRANSVERSAL ORIENTAL # 92-218 / PDV | Electricity Services | 890900608 | 173,156 | 45 | 23 |
| ALMACENES ÉXITO | CALLE 30 25-71/PDV CAÑAVERAL | Electricity Services | 890900608 | 165,153 | 43 | 22 |
| Empresas Municipales De Cali EICEESP | CARRERA 3 # 10-69 | Electricity Services | 247772 | 3,002,070 | 785 | 392 |
| Empresas Municipales De Cali EICEESP | CARRERA 8 # 52-06 PISO 2 | Electricity Services | 691115 | 1,001,480 | 262 | 131 |
| ALMACENES ÉXITO | CALLE 5 # 38D-35/PDV SAN FERNANDO | Electricity Services | 890900608 | 163,973 | 43 | 21 |

| Utility Providers List | | | | | | |
|---|---|---|---|---|---|---|
| Utility Company | Service Location | Type of Service | Account Number(s) | Average Aggregate Monthly Cost (COP) | Average Aggregate Monthly Cost (USD) | Adequate Assurance (Est) |
| ALMACENES ÉXITO | CARRERA 100 # 5-169/PDV UNICALI | Electricity Services | 890900608 | 171,505 | 45 | 22 |
| CARIBEMAR DE LA COSTA | CALLE 32 # 9-45 | Electricity Services | 7629800 | 1,378,082 | 360 | 180 |
| CARIBEMAR DE LA COSTA | CALLE 32 # 9-45 | Electricity Services | 6862387 | 1,062,705 | 278 | 139 |
| HERNANDO DIAZ LOPEZ | CARRERA 4 # 11-28 LOCAL 113 CC DIAZ LOPEZ | Electricity Services | 16205229 | 236,856 | 62 | 31 |
| ALMACENES ÉXITO | CARRERA 8 # 17-33/PDV CHIQUINQUIRA | Electricity Services | 890900608 | 87,711 | 23 | 11 |
| Centrales Eléctricas De Norte De Santander S.A. | AVENIDA 0 # 17-35 | Electricity Services | 278511 | 1,169,912 | 306 | 153 |
| Centrales Eléctricas De Norte De Santander S.A. | AVENIDA 0 # 17-35 | Electricity Services | 283201 | 1,019,604 | 267 | 133 |
| ALMACENES ÉXITO | CARRERA 3BIS # 21A-14/PDV GRAN PLAZA | Electricity Services | 890900608 | 171,505 | 45 | 22 |
| ELECTRIFICADORA DEL CAQUETA | CARRERA 17 # 11-02 | Electricity Services | 471715357 | 1,066,076 | 279 | 139 |
| ENEL COLOMBIA S.A. E.S.P | CALLE 20A # 10-83 | Electricity Services | 50333837 | 288,172 | 75 | 38 |
| CELSIA COLOMBIA S.A. E.S.P. | CALLE 10 # 4-23 | Electricity Services | 408316 | 1,002,612 | 262 | 131 |
| CENTRAL HIDROELECTRICA DE CALDAS S.A. E.S.P. | CARRERA 3 # 12-18 | Electricity Services | 160462877 | 222,389 | 58 | 29 |
| CARIBEMAR DE LA COSTA | CARRERA 3 # 10-18 | Electricity Services | 4143513 | 185,642 | 49 | 24 |
| CENTRAL HIDROELECTRICA DE CALDAS S.A. E.S.P. | CALLE 23 # 23-32 | Electricity Services | 393610148 | 209,855 | 55 | 27 |
| ALMACENES ÉXITO | CALLE 33 # 20-72/PDV MANIZALES | Electricity Services | 890900608 | 57,065 | 15 | 7 |
| Enertotal  S A E S P | CARRERA 52 # 14-30 | Electricity Services | 8000 | 2,054,784 | 537 | 269 |
| ALMACENES ÉXITO | DIAGONAL 55 # 34-67/PDV BELLO | Electricity Services | 890900608 | 86,316 | 23 | 11 |
| ALMACENES ÉXITO | CALLE 48 # 46-115/PDV SAN ANTONIO | Electricity Services | 890900608 | 87,711 | 23 | 11 |

| Utility Providers List | | | | | | |
|---|---|---|---|---|---|---|
| Utility Company | Service Location | Type of Service | Account Number(s) | Average Aggregate Monthly Cost (COP) | Average Aggregate Monthly Cost (USD) | Adequate Assurance (Est) |
| ALMACENES ÉXITO | CARRERA 50A # 41-42/PDV ITAGUI | Electricity Services | 890900608 | 5,641 | 1 | 1 |
| CARIBEMAR DE LA COSTA | CARRERA 3 # 21-90 | Electricity Services | 4529379 | 974,878 | 255 | 127 |
| Centrales Electricas del Huila S.A. | CALLE 21 # 13-43 | Electricity Services | 195631703 | 500,373 | 131 | 65 |
| Centrales Electricas del Huila S.A. | CALLE 21 # 13-43 | Electricity Services | 569540869 | 611,100 | 160 | 80 |
| Centrales Electricas del Huila S.A. | CALLE 21 # 13-43 | Electricity Services | 569543200 | 239,852 | 63 | 31 |
| ALMACENES ÉXITO | CARRERA 8 # 2-21/PDV CENTRO | Electricity Services | 890900608 | 165,228 | 43 | 22 |
| ALMACENES ÉXITO | AVENIDA 26 CON CALLE 19 ESQUINA/PDV SAN PEDRO | Electricity Services | 890900608 | 173,156 | 45 | 23 |
| CELSIA COLOMBIA S.A. E.S.P. | CALLE 31 # 30-09 | Electricity Services | 1447579 | 114,697 | 30 | 15 |
| ENERGIA DE PEREIRA | CARRERA 9 # 19-41 | Electricity Services | 1518851 | 358,345 | 94 | 47 |
| ALMACENES ÉXITO | CARRERA 10 # 17-71/PDV PEREIRA | Electricity Services | 890900608 | 176,879 | 46 | 23 |
| COMPAÑÍA ENERGETICA DE OCCIDENTE | CARRERA 7 # 3-22 | Electricity Services | 1394342 | 61,709 | 16 | 8 |
| AIR-E | CALLE 4 # 7-27 | Electricity Services | 5620461 | 1,959,949 | 512 | 256 |
| CARIBEMAR DE LA COSTA | CALLE 13 # 13-02 | Electricity Services | 6555051 | 157,578 | 41 | 21 |
| SOCIEDAD PRODUCTORA DE ENERGÍA DE SAN ANDRÉS Y PROVIDENCIA S.A. E.S.P. | AV 20 DE JULIO # 5-19 | Electricity Services | 1407090 | 66,977 | 18 | 9 |
| AIR-E | CALLE 22 # 6-51 | Electricity Services | 6537910 | 2,355,087 | 616 | 308 |
| CARIBEMAR DE LA COSTA | CARRERA 19 # 52-19 | Electricity Services | 5093039 | 1,700,729 | 445 | 222 |
| ALMACENES ÉXITO | CARRERA 13 # 11-50/PDV SOGAMOSO | Electricity Services | 890900608 | 86,874 | 23 | 11 |
| ALMACENES ÉXITO | CARRERA 19 # 28-76 / PDV ÉXITO | Electricity Services | 890900608 | 156,463 | 41 | 20 |
| Empresa de Energía de Boyacá S.A E.S.P. | CALLE 20 # 12-84 | Electricity Services | 434329985 | 6,240 | 2 | 1 |

| Utility Providers List | | | | | | |
|---|---|---|---|---|---|---|
| Utility Company | Service Location | Type of Service | Account Number(s) | Average Aggregate Monthly Cost (COP) | Average Aggregate Monthly Cost (USD) | Adequate Assurance (Est) |
| CARIBEMAR DE LA COSTA | CARRERA 10 # 16A-04 | Electricity Services | 7683323 | 2,532,741 | 662 | 331 |
| CARIBEMAR DE LA COSTA | CARRERA 10 # 16A-04 | Electricity Services | 7683322 | 1,630,328 | 426 | 213 |
| CARIBEMAR DE LA COSTA | CARRERA 10 # 16A-04 | Electricity Services | 7683324 | 612,651 | 160 | 80 |
| ALMACENES ÉXITO | CALLE 16 CON CARRERA 19 ESQUINA/PDV FLORES | Electricity Services | 890900608 | 87,711 | 23 | 11 |
| ELECTRIFICADORA DEL META | CARRERA 33 # 34A-127 | Electricity Services | 206506819 | 848,638 | 222 | 111 |
| ELECTRIFICADORA DEL META | CARRERA 33 # 34A-127 | Electricity Services | 209169203 | 270,600 | 71 | 35 |
| ALMACENES ÉXITO | CALLE 7 # 45-185/PDV SABANA | Electricity Services | 890900608 | 104,895 | 27 | 14 |
| **Electricity Services** | | | | 51,133,413 | 13,367 | 6,683 |
| COLOMBIA TELECOMUNICACIONES | CARRERA 14 # 14-34 / ÉXITO UNIARMENIA | Internet | 180762691 | 755,534 | 198 | 99 |
| EPM TELECOMUNICACIONES | CRA 14 No 22-25 (22-21) | Internet | 600011014842 | 104,446 | 27 | 14 |
| COLOMBIA TELECOMUNICACIONES | CARRERA 58 # 75-12 | Internet | 180762691 | 903,530 | 236 | 118 |
| COLOMBIA TELECOMUNICACIONES | CARRERA 7 # 76-35 | Internet | 180762691 | 23,996,544 | 6,273 | 3,136 |
| Comunicacion Celular S.A. | CARRERA 7 # 76-35 | Internet | 11257170 | 428,922 | 112 | 56 |
| Empresa de Telecomunicaciones de Bogotá S.A. | CARRERA 7 # 76-35 | Internet | 8766034 | 232,969 | 61 | 30 |
| CENTURYLINK | CARRERA 7 # 76-35 | Internet | 800136835 | 21,489,653 | 5,618 | 2,809 |
| CENTURYLINK | CARRERA 10 # 65-98 | Internet | 800136835 | 2,091,900 | 547 | 273 |
| CENTURYLINK | CALLE 36 # 32-89 | Internet | 800136835 | 1,183,955 | 309 | 155 |
| CENTURYLINK | TRANSVERSAL ORIENTAL # 92-218 / PDV | Internet | 800136835 | 416,319 | 109 | 54 |
| CENTURYLINK | CALLE 30 # 25-71/PDV CAÑAVERAL | Internet | 800136835 | 431,458 | 113 | 56 |
| CENTURYLINK | CALLE 7 # 11-93 | Internet | 800136835 | 32,817 | 9 | 4 |
| Comunicacion Celular S.A. | CARRERA 13 # 8-54 | Internet | 77402964 | 25,667 | 7 | 3 |

| Utility Providers List | | | | | | |
|---|---|---|---|---|---|---|
| Utility Company | Service Location | Type of Service | Account Number(s) | Average Aggregate Monthly Cost (COP) | Average Aggregate Monthly Cost (USD) | Adequate Assurance (Est) |
| CENTURYLINK | CARRERA 3 # 10-69 | Internet | 800136835 | 1,504,643 | 393 | 197 |
| CENTURYLINK | CALLE 5 # 38D-35/PDV SAN FERNANDO | Internet | 800136835 | 915,902 | 239 | 120 |
| CENTURYLINK | CALLE 13 # 80-187/PDV ALKOSTO | Internet | 800136835 | 701,141 | 183 | 92 |
| CENTURYLINK | CALLE 32 # 9-45 | Internet | 800136835 | 1,003,583 | 262 | 131 |
| Empresa de Recursos Tecnológicos S.A. | CARRERA 4 # 10-62 | Internet | 277730 | 61,639 | 16 | 8 |
| CENTURYLINK | CARRERA 4 # 10-62 | Internet | 800136835 | 285,997 | 75 | 37 |
| CENTURYLINK | CARRERA 8 # 17-33/PDV CHIQUINQUIRA | Internet | 800136835 | 423,888 | 111 | 55 |
| COLOMBIA TELECOMUNICACIONES | AVENIDA 0 # 17-35 | Internet | 180762691 | 1,497,454 | 391 | 196 |
| CENTURYLINK | CARRERA 3BIS # 21A-14/PDV GRAN PLAZA | Internet | 800136835 | 515,478 | 135 | 67 |
| CENTURYLINK | CARRERA 17 # 11-02 | Internet | 800136835 | 769,521 | 201 | 101 |
| CENTURYLINK | CALLE 20A # 10-83 | Internet | 800136835 | 278,664 | 73 | 36 |
| COLOMBIA TELECOMUNICACIONES | CALLE 10 # 4-23 | Internet | 26348033031 | 116,836 | 31 | 15 |
| CENTURYLINK | CALLE 10 # 4-23 | Internet | 800136835 | 1,235,535 | 323 | 161 |
| CENTURYLINK | CARRERA 3 # 12-18 | Internet | 800136835 | 285,997 | 75 | 37 |
| CENTURYLINK | CARRERA 3 # 10-18 | Internet | 800136835 | 275,527 | 72 | 36 |
| COLOMBIA TELECOMUNICACIONES | CALLE 23 # 23-32 | Internet | 180762691 | 2,952,243 | 772 | 386 |
| CENTURYLINK | CALLE 33 # 20-72/PDV MANIZALES | Internet | 800136835 | 343,652 | 90 | 45 |
| COLOMBIA TELECOMUNICACIONES | CARRERA 52 # 14-30 | Internet | 180762691 | 2,527,014 | 661 | 330 |
| CENTURYLINK | CARRERA 52 # 14-30 | Internet | 800136835 | 977,188 | 255 | 128 |
| CENTURYLINK | DIAGONAL 55 # 34-67/PDV BELLO | Internet | 800136835 | 383,997 | 100 | 50 |

| Utility Providers List | | | | | | |
|---|---|---|---|---|---|---|
| Utility Company | Service Location | Type of Service | Account Number(s) | Average Aggregate Monthly Cost (COP) | Average Aggregate Monthly Cost (USD) | Adequate Assurance (Est) |
| CENTURYLINK | CALLE 48 # 46-115/PDV SAN ANTONIO | Internet | 800136835 | 474,603 | 124 | 62 |
| CENTURYLINK | CARRERA 50A # 41-42/PDV ITAGUI | Internet | 800136835 | 39,908 | 10 | 5 |
| COLOMBIA TELECOMUNICACIONES | CARRERA 3 # 21-90 | Internet | 180762691 | 1,775,803 | 464 | 232 |
| COLOMBIA TELECOMUNICACIONES | CALLE 21 # 13-43 | Internet | 180762691 | 1,602,882 | 419 | 210 |
| CENTURYLINK | CARRERA 8 # 2-21/PDV CENTRO | Internet | 800136835 | 474,603 | 124 | 62 |
| CENTURYLINK | AVENIDA 26 CON CALLE 19 ESQUINA/PDV SAN PEDRO | Internet | 800136835 | 474,603 | 124 | 62 |
| CENTURYLINK | CARRERA 5 # 19-23/PDV OLIMPICA | Internet | 800136835 | 36,743 | 10 | 5 |
| CENTURYLINK | CALLE 31 # 30-09 | Internet | 800136835 | 635,118 | 166 | 83 |
| CENTURYLINK | OLIMPICA PALMIRA | Internet | 800136835 | 311,328 | 81 | 41 |
| COLOMBIA TELECOMUNICACIONES | CARRERA 9 # 19-41 | Internet | 180762691 | 587,571 | 154 | 77 |
| CENTURYLINK | CARRERA 10 # 17-71/PDV PEREIRA | Internet | 800136835 | 590,478 | 154 | 77 |
| COLOMBIA TELECOMUNICACIONES | CARRERA 7 # 3-22 | Internet | 180762691 | 518,760 | 136 | 68 |
| Comunicacion Celular S.A. | CARRERA 9 # 6N-03 / PDV | Internet | 22357772 | 131,289 | 34 | 17 |
| CENTURYLINK | CALLE 4 # 7-27 | Internet | 800136835 | 495,624 | 130 | 65 |
| CENTURYLINK | CALLE 13 # 13-02 | Internet | 800136835 | 275,527 | 72 | 36 |
| CENTURYLINK | CALLE 22 # 6-51 | Internet | 800136835 | 1,969,213 | 515 | 257 |
| CENTURYLINK | CARRERA 19 # 52-19 | Internet | 800136835 | 690,465 | 180 | 90 |
| CENTURYLINK | CARRERA 13 # 11-50/PDV SOGAMOSO | Internet | 800136835 | 423,888 | 111 | 55 |
| COLOMBIA TELECOMUNICACIONES | CARRERA 19 # 28-76 / PDV ÉXITO | Internet | 180762694 | 93,822 | 25 | 12 |

| Utility Providers List | | | | | | |
|---|---|---|---|---|---|---|
| Utility Company | Service Location | Type of Service | Account Number(s) | Average Aggregate Monthly Cost (COP) | Average Aggregate Monthly Cost (USD) | Adequate Assurance (Est) |
| Comunicacion Celular S.A. | CARRERA 19 # 28-76 / PDV ÉXITO | Internet | 90390535 | 24,656 | 6 | 3 |
| CENTURYLINK | CARRERA 19 # 28-76 / PDV ÉXITO | Internet | 800136835 | 927,134 | 242 | 121 |
| COLOMBIA TELECOMUNICACI ONES | CALLE 20 # 12-84 | Internet | 180762691 | 1,220,372 | 319 | 160 |
| COLOMBIANA DE COMERCIO S.A. CORBETA S.A. Y /O ALKOSTO S.A. | AV.UNIVERSITA RIA # 51-21/PDV | Internet | 890900943 | 121,975 | 32 | 16 |
| COLOMBIA TELECOMUNICACI ONES | CARRERA 10 # 16A-04 | Internet | 180762691 | 1,267,611 | 331 | 166 |
| CENTURYLINK | CALLE 16 CON CARRERA 19 ESQUINA/PDV FLORES | Internet | 800136835 | 474,603 | 124 | 62 |
| COLOMBIA TELECOMUNICACI ONES | CARRERA 33 # 34A-127 | Internet | 180762691 | 485,413 | 127 | 63 |
| COLOMBIA TELECOMUNICACI ONES | CALLE 31 # 31-95 AV LLANO / PDV | Internet | 180762691 | 649,544 | 170 | 85 |
| CENTURYLINK | CALLE 7 # 45-185/PDV SABANA | Internet | 800136835 | 277,546 | 73 | 36 |
| **Internet Services** | | | | **86,200,695** | **22,534** | **11,267** |
| COLOMBIA TELECOMUNICACI ONES | CARRERA 58 # 75-12 | Telephone Services | 2998592 | 713,872 | 187 | 93 |
| COLOMBIA TELECOMUNICACI ONES | CARRERA 7 # 76-35 | Telephone Services | 43354937 | 4,197,472 | 1,097 | 549 |
| COLOMBIA TELECOMUNICACI ONES | CARRERA 7 # 76-35 | Telephone Services | 180057047 | 1,515,270 | 396 | 198 |
| COLOMBIA TELECOMUNICACI ONES | CARRERA 7 # 76-35 | Telephone Services | 24487525401 | 3,325,895 | 869 | 435 |
| Comunicacion Celular S.A. | CARRERA 7 # 76-35 | Telephone Services | 11257170 | 8,868,117 | 2,318 | 1,159 |
| Empresa de Telecomunicacione s de Bogotá S.A. | CARRERA 7 # 76-35 | Telephone Services | 675226811 | 180,714 | 47 | 24 |
| Empresa de Telecomunicacione s de Bogotá S.A. | CARRERA 7 # 76-35 | Telephone Services | 6350128100 | 1,309,000 | 342 | 171 |

| Utility Providers List | | | | | | |
|---|---|---|---|---|---|---|
| Utility Company | Service Location | Type of Service | Account Number(s) | Average Aggregate Monthly Cost (COP) | Average Aggregate Monthly Cost (USD) | Adequate Assurance (Est) |
| Comunicacion Celular S.A. | CARRERA 7 # 76-35 | Telephone Services | 8222605330 | 5,840,086 | 1,527 | 763 |
| Comunicacion Celular S.A. | CARRERA 7 # 76-35 | Telephone Services | 8223192511 | 17,276,263 | 4,516 | 2,258 |
| Comunicacion Celular S.A. | CARRERA 7 # 76-35 | Telephone Services | 8224048512 | 2,037,594 | 533 | 266 |
| Empresa de Telecomunicaciones de Bogotá S.A. | CARRERA 7 # 76-35 | Telephone Services | 4359740 | 857,004 | 224 | 112 |
| EPM TELECOMUNICACIONES | CARRERA 7 # 76-35 | Telephone Services | 8.9353E+11 | 5,808,064 | 1,518 | 759 |
| EPM TELECOMUNICACIONES | CARRERA 7 # 76-35 | Telephone Services | 8.9731E+11 | 3,289,650 | 860 | 430 |
| EPM TELECOMUNICACIONES | CARRERA 7 # 76-35 | Telephone Services | 441932682 | 106,913 | 28 | 14 |
| EPM TELECOMUNICACIONES | CARRERA 7 # 76-35 | Telephone Services | 445906647 | 206,124 | 54 | 27 |
| Comunicacion Celular S.A. | CARRERA 7 # 76-35 | Telephone Services | 8224403587 | 6,458,768 | 1,688 | 844 |
| Comunicacion Celular S.A. | CARRERA 7 # 76-35 | Telephone Services | 8215720791 | 6,548,004 | 1,712 | 856 |
| Comunicacion Celular S.A. | CARRERA 7 # 76-35 | Telephone Services | 8224313302 | 5,693,154 | 1,488 | 744 |
| EPM TELECOMUNICACIONES | CARRERA 10 # 65-98 | Telephone Services | 19959262 | 2,001,957 | 523 | 262 |
| COLOMBIA TELECOMUNICACIONES | CALLE 36 # 32-89 | Telephone Services | 6426642 | 169,132 | 44 | 22 |
| Comunicacion Celular S.A. | TRANSVERSAL ORIENTAL # 92-218 / PDV | Telephone Services | 73306839 | 52,579 | 14 | 7 |
| Comunicacion Celular S.A. | CALLE 7 # 11-93 | Telephone Services | 72993579 | 49,000 | 13 | 6 |
| Comunicacion Celular S.A. | CARRERA 13 # 8-54 | Telephone Services | 77402964 | 56,467 | 15 | 7 |
| Empresas Municipales De Cali EICEESP | CARRERA 3 # 10-69 | Telephone Services | 7026661 | 30,178 | 8 | 4 |
| Empresas Municipales De Cali EICEESP | CARRERA 3 # 10-69 | Telephone Services | 6602478 | 72,118 | 19 | 9 |
| Empresas Municipales De Cali EICEESP | CARRERA 3 # 10-69 | Telephone Services | 6603986 | 18,212 | 5 | 2 |

| Utility Providers List | | | | | | |
|---|---|---|---|---|---|---|
| Utility Company | Service Location | Type of Service | Account Number(s) | Average Aggregate Monthly Cost (COP) | Average Aggregate Monthly Cost (USD) | Adequate Assurance (Est) |
| Empresas Municipales De Cali EICEESP | CARRERA 3 # 10-69 | Telephone Services | 6602486 | 72,118 | 19 | 9 |
| Empresas Municipales De Cali EICEESP | CARRERA 3 # 10-69 | Telephone Services | 6602600 | 72,135 | 19 | 9 |
| Comunicacion Celular S.A. | CARRERA 3 # 10-69 | Telephone Services | 84065754 | 52,580 | 14 | 7 |
| Comunicacion Celular S.A. | CALLE 53 # 3-29 / CC UNICO | Telephone Services | 84864008 | 69,333 | 18 | 9 |
| Comunicacion Celular S.A. | CALLE 53 # 3-29 / CC UNICO | Telephone Services | 84864016 | 69,222 | 18 | 9 |
| Empresa de Recursos Tecnológicos S.A. | CARRERA 4 # 10-62 | Telephone Services | 277730 | 40,955 | 11 | 5 |
| EPM TELECOMUNICACIONES | CARRERA 52 # 14-30 | Telephone Services | 12258141 | 98,509 | 26 | 13 |
| EPM TELECOMUNICACIONES | CARRERA 52 # 14-30 | Telephone Services | 12883679 | 105,358 | 28 | 14 |
| Comunicacion Celular S.A. | CARRERA 3 # 21-90 | Telephone Services | 86192978 | 61,678 | 16 | 8 |
| COLOMBIA TELECOMUNICACIONES | CALLE 21 # 13-43 | Telephone Services | 26835517031 | 129,898 | 34 | 17 |
| Comunicacion Celular S.A. | CALLE 31 # 30-09 | Telephone Services | 77403608 | 54,444 | 14 | 7 |
| EPM TELECOMUNICACIONES | CARRERA 9 # 19-41 | Telephone Services | 9000564466 | 171,573 | 45 | 22 |
| EPM TELECOMUNICACIONES | CARRERA 9 # 19-41 | Telephone Services | 9000391675 | 29,769 | 8 | 4 |
| EPM TELECOMUNICACIONES | CALLE 13 # 13-02 | Telephone Services | 1001586388 | 72,842 | 19 | 10 |
| Comunicacion Celular S.A. | CARRERA 19 # 52-19 | Telephone Services | 86193000 | 59,393 | 16 | 8 |
| Comunicacion Celular S.A. | CARRERA 19 # 28-76 / PDV ÉXITO | Telephone Services | 76214733 | 61,369 | 16 | 8 |
| COLOMBIA TELECOMUNICACIONES | CARRERA 19 # 28-76 / PDV ÉXITO | Telephone Services | 28187779471 | 30,662 | 8 | 4 |
| Comunicacion Celular S.A. | CARRERA 19 # 28-76 / PDV ÉXITO | Telephone Services | 90390535 | 54,211 | 14 | 7 |
| Telephone Services | | | | 77,987,657 | 20,387 | 10,193 |

| Utility Providers List | | | | | | |
|---|---|---|---|---|---|---|
| Utility Company | Service Location | Type of Service | Account Number(s) | Average Aggregate Monthly Cost (COP) | Average Aggregate Monthly Cost (USD) | Adequate Assurance (Est) |
| **Total** | | | | 218,058,779 | 57,003 | 28,501 |

## Exhibit B

## Proposed Interim Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CREDIVALORES – CREDISERVICIOS S.A., | Case No. 24-10837 (DSJ) |
| Debtor. | |

_____/

**INTERIM ORDER PURSUANT TO SECTIONS 105(a) AND 366 OF THE
BANKRUPTCY CODE (A) PROHIBITING UTILITIES FROM ALTERING, REFUSING
OR DISCONTINUING SERVICE, (B) DEEMING UTILITIES ADEQUATELY
ASSURED OF FUTURE PERFORMANCE, AND (C) ESTABLISHING PROCEDURES
FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT**

Upon the motion, dated May 16, 2024 [Doc. No. [●]] (the "**Motion**"[1]) of the above
captioned debtor and debtor-in- possession (the "**Debtor**"), pursuant to sections 105(a) and 366
of title 11 of the United States Code (the "**Bankruptcy Code**"), to authorize the Debtor to: (a)
continue paying amounts owed to its Foreign Utility Providers (including those that do not consent
to the jurisdiction of this Court) in the normal course of business; (b) adopt the proposed offer of
adequate assurance and procedures for Consenting Foreign Utility Providers and their requests for
additional or different adequate assurance; (c) prevent Consenting Foreign Utility Providers from
altering, refusing, or discontinuing Utility Services on account of prepetition amounts outstanding
or on account of any perceived inadequacy of the Debtor's proposed adequate assurance; (d)
determine that the Debtor is not required to provide any additional adequate assurance to
Consenting Foreign Utility Providers beyond what is proposed by this Motion; and (e) setting a
Final Hearing on the Debtor's proposed Adequate Assurance Procedures; as more fully described
in the Motion; and upon consideration of the *Declaration in Support of the Chapter 11 Petition
and First Day Pleadings and (II) Pursuant to Local Bankruptcy Rule 1007-2*, dated May 16, 2024

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

[Doc. No. [●]]; (the "**First Day Declaration**"); and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and the Court having conducted a hearing on the Motion on [●], 2024 (the "*Hearing*"); and the relief requested in the Motion being in the best interests of the Debtor's estates; and the Court having reviewed the Motion; and the Court having found and determined that (a) the legal and factual bases set forth in the Motion establish just cause for the relief granted herein, (b) the Debtor have provided due and proper notice of the Motion, and no further notice is necessary, (c) the relief granted herein is necessary to avoid immediate and irreparable harm to the Debtor as contemplated by Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), and (d) nothing in the Motion requests, and nothing in the Order grants, a waiver, termination, or modification of the automatic stay; and upon all of the proceedings had before the Court, including the record of the Hearing; and after due deliberation and sufficient cause appearing therefor, it is ORDERED as follows:

1.      The Motion is GRANTED as set forth herein.

2.      The hearing (the "**Final Hearing**") on the Motion shall be held on **_____, 2024, at \_\_\_\_ \_\_.m.**, prevailing Eastern Time. Any objections or responses to the relief sought shall (i) be in writing, (ii) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, and (iii) be filed with the Bankruptcy Court by attorneys electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov); and shall be served on (a) counsel to the Debtor, Baker & McKenzie LLP (Attn: Blaire Cahn) 452 Fifth Avenue, New York, New York 10018,

blaire.cahn@bakermckenzie.com, and Baker & McKenzie LLP (Attn: Paul J. Keenan Jr. and Reginald Sainvil) 1111 Brickell Avenue, Suite 1000, Miami, Florida 33131, paul.keenan@bakermckenzie.com and reginald.sainvil@bakermckenzie.com, (b) counsel to the Trustee for the Old Notes, Norton Rose Fulbright (Attn: Marian Baldwin), 1301 6th Ave, New York, New York 10019, marian.baldwin@nortonrosefulbright.com, and (c) counsel to the United States Trustee, Alexander Hamilton Custom House, One Bowling Green, Room 534, New York, NY 1004 (Attn: Andrew D. Velez-Rivera), In the event no objections to entry of a final order are timely received, this Court may enter a final order without need for the Final Hearing.

3.     In the Interim, prior to the entry of this Court's ruling on the Motion after the Final Hearing:

(a)     The Debtor may continue paying amounts owed to its Foreign Utility Providers (including those that do not consent to the jurisdiction of this Court) in the normal course of business;

(b)     The Debtor's Proposed Adequate Assurance and Adequate Assurance Procedures for Consenting Foreign Utility Providers are approved as provided in the Motion;

(c)     The Debtor and any Consenting Foreign Utility Providers shall utilize the Adequate Assurance Procedures for Consenting Foreign Utility Providers as set forth in the Motion;

(d)     Consenting Foreign Utility Providers are prohibited from altering, refusing, or discontinuing Utility Services on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Debtor's proposed adequate assurance;

(e)     The Debtor is not required to provide any additional adequate assurance to Consenting Foreign Utility Providers beyond what is proposed in the Motion absent further order of the Court;

(f)     Disbursement Banks on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved in this Order are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such Disbursement Banks are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Order without any duty of further inquiry and without liability for following the Debtor's instructions; and

(g)     The Debtor is authorized, but not directed, to issue postpetition checks, and to issue postpetition fund transfer requests in replacement of any checks or fund transfer requests that are dishonored as a consequence of the filing of this Chapter 11 Case with respect to prepetition amounts owed in connection with the relief granted in this Order.

4.     Notwithstanding the relief granted herein or any actions taken pursuant thereto, nothing herein shall be deemed: (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined hereunder; (e) a request or authorization to assume any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code or (f) a waiver of the Debtor's rights under the Bankruptcy Code or any other applicable law.

5.     Under the circumstances of the Chapter 11 Case, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

6.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

7.     The Debtor is authorized to take all actions necessary to implement the relief granted in this Order.

8.     This Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order.


Dated: New York, New York
     May \_\_\_, 2024

_____
HONORABLE DAVID S. JONES
UNITED STATES BANKRUPTCY JUDGE

<u>**Exhibit C**</u>

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CREDIVALORES – CREDISERVICIOS S.A., | Case No. 24-10837 (DSJ) |
| Debtor. | |

_____/

**FINAL ORDER PURSUANT TO SECTIONS 105(a) AND 366 OF THE BANKRUPTCY CODE (A) PROHIBITING UTILITIES FROM ALTERING, REFUSING OR DISCONTINUING SERVICE, (B) DEEMING UTILITIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE, AND (C) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT**

Upon the motion, dated May 16, 2024 [Doc. No. [●]] (the "**Motion**"[1]) of the above captioned debtor and debtor-in- possession (the "**Debtor**"), pursuant to sections 105(a) and 366 of title 11 of the United States Code (the "**Bankruptcy Code**"), to authorize the Debtor to: (a) continue paying amounts owed to its Foreign Utility Providers (including those that do not consent to the jurisdiction of this Court) in the normal course of business; (b) adopt the proposed offer of adequate assurance and procedures for Consenting Foreign Utility Providers and their requests for additional or different adequate assurance; (c) prevent Consenting Foreign Utility Providers from altering, refusing, or discontinuing Utility Services on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Debtor's proposed adequate assurance; (d) determine that the Debtor is not required to provide any additional adequate assurance to Consenting Foreign Utility Providers beyond what is proposed by this Motion; and (e) setting a Final Hearing on the Debtor's proposed Adequate Assurance Procedures; as more fully described in the Motion; and upon consideration of the *Declaration in Support of the Chapter 11 Petition and First Day Pleadings and (II) Pursuant to Local Bankruptcy Rule 1007-2*, dated May 16, 2024

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

[Doc. No. [●]]; (the "**First Day Declaration**"); and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and the Court having conducted a final hearing on the motion on [●], 2024 (the "***Final Hearing***"); and the relief requested in the Motion being in the best interests of the Debtor's estate; and the Court having reviewed the Motion; and the Court having found and determined that (a) the legal and factual bases set forth in the Motion establish just cause for the relief granted herein, (b) the Debtor have provided due and proper notice of the Motion, and no further notice is necessary, (c) the relief granted herein is necessary to avoid immediate and irreparable harm to the Debtor as contemplated by Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and (d) nothing in the Motion requests, and nothing in the Order grants, a waiver, termination, or modification of the automatic stay; and upon all of the proceedings had before the Court, including the record of the Hearing; and after due deliberation and sufficient cause appearing therefor, it is ORDERED as follows:

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtor may continue paying amounts owed to its Foreign Utility Providers (including those that do not consent to the jurisdiction of this Court) in the normal course of business;

3.      The Debtor's Proposed Adequate Assurance and Adequate Assurance Procedures for Consenting Foreign Utility Providers are approved as provided in the Motion;

4.      The Debtor and any Consenting Foreign Utility Providers shall utilize the Adequate Assurance Procedures for Consenting Foreign Utility Providers as set forth in the Motion.

5.     Consenting Foreign Utility Providers are prohibited from altering, refusing, or discontinuing Utility Services on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Debtor's proposed adequate assurance;

6.     The Debtor is not required to provide any additional adequate assurance to Consenting Foreign Utility Providers beyond what is proposed in the Motion absent further order of the Court;

7.      Disbursement Banks on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved in this Order are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such Disbursement Banks are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Order without any duty of further inquiry and without liability for following the Debtor's instructions;

8.     The Debtor is authorized, but not directed, to issue postpetition checks, and to issue postpetition fund transfer requests in replacement of any checks or fund transfer requests that are dishonored as a consequence of the filing of this Chapter 11 Case with respect to prepetition amounts owed in connection with the relief granted in this Order.

9.     The Debtor is authorized to periodically adjust the amount in the Adequate Assurance Account to reflect the following factors: (a) the termination of Utility Services by the Debtor; (b) the entry into any agreements between the Debtor and the applicable Consenting Foreign Utility Providers; and (c) the removal of any amount spent on Utility Services from Consenting Foreign Utility Providers that hold postpetition deposits or other security from the Debtor for such services;

10.     To the extent not otherwise already done, the Debtor shall fund the Adequate Assurance Deposit into the Adequate Assurance Account within fourteen (14) days of the entry of this Final Order.

11.     In the event the Debtor defaults postpetition in respect of any of its obligations under this Final Order to any Consenting Foreign Utility Provider, such Consenting Foreign Utility Provider may seek additional adequate assurances in this Court upon motion and appropriate notice to the Debtor, its counsel, and interested parties.

12.     To the extent that the Debtor subsequently identifies additional providers of Utility Services or determine that an entity was improperly included as a Utility Provider, the Debtor has the authority, in its sole discretion and without further order of the Court, to amend the Utility Provider List to add or delete any Utility Provider.  If the Debtor adds any Utility Providers to the Utility Provider List, the Debtor will serve a copy of the Motion, along with the applicable portion of the amended Utility Provider List and this Final Order, on such Utility Provider within five (5) business days after the Debtor files a Subsequent Notice with the Court.  Such subsequently added Utility Provider will be subject to the Adequate Assurance Procedures set forth in the Motion.  For any entity that is removed from the Utility Provider List, the Debtor shall serve that entity with notice of removal and such entity shall have five (5) days from the date of service of such notice to object to that removal.

13.     Notwithstanding the relief granted herein or any actions taken pursuant thereto, nothing herein shall be deemed:  (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined hereunder; (e) a request or authorization to assume any agreement, contract or lease

pursuant to section 365 of the Bankruptcy Code or (f) a waiver of the Debtor's rights under the Bankruptcy Code or any other applicable law.

14.     Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor.

15.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

16.     The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Final Order.

17.     This Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Final Order.

Dated: _____     _____
          New York, New York                    HONORABLE DAVID S. JONES
                                                          UNITED STATES BANKRUPTCY JUDGE