Paul J. Keenan Jr. (*pro hac vice*)
Reginald Sainvil (*pro hac vice*)
Baker & McKenzie LLP
1111 Brickell Avenue, 10th Floor
Miami, FL 33130
Telephone: 305-789-8900
Facsimile: 305-789-8953
Email: paul.keenan@bakermckenzie.com
        reginald.sainvil@bakermckenzie.com

Blaire Cahn
Baker & McKenzie LLP
452 Fifth Avenue
New York, NY 10018
Telephone: 212-626-4100
Facsimile: 212-310-1600
Email: blaire.cahn@bakermckenzie.com

*Proposed Counsel for the Debtor*
*and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CREDIVALORES – CREDISERVICIOS S.A., | Case No. 24-10837 (DSJ) |
| Debtor. | |

_____/

## DEBTOR'S MOTION FOR ENTRY
### OF AN ORDER (I) SCHEDULING A COMBINED HEARING TO CONSIDER THE ADEQUACY OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN; (II) APPROVING THE FORM AND MANNER OF NOTICE OF THE COMBINED HEARING; (III) APPROVING THE SOLICITATION PROCEDURES; (IV) DIRECTING THAT A MEETING OF CREDITORS NOT BE CONVENED; AND (V) GRANTING RELATED RELIEF

Credivalores – Crediservicios S.A. ("**Credivalores**"), the above-captioned debtor and

debtor in possession (the "**Debtor**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**")

hereby files this motion (the "**Motion**") for entry of an order (the "**Scheduling Order**"),

substantially in the form attached hereto as **Exhibit A**, (i) scheduling a combined hearing (the

"**Confirmation Hearing**") to consider the adequacy of the *Offering Memorandum and Consent*

*Solicitation Statement* (as modified, amended, or supplemented from time to time, the "**Disclosure Statement**") and confirmation of the *Prepackaged Chapter 11 Plan of Credivalores-Crediservicios S.A.* (as modified, amended, or supplemented from time to time, the "**Plan**");[1] (ii) approving the form and manner of notice of the Confirmation Hearing; (iii) approving the solicitation procedures used in connection with the Debtor's prepetition solicitation of the Plan described herein and further discussed in the Disclosure Statement (collectively, the "**Solicitation Procedures**"); (iv) directing that a meeting of creditors not be convened; and (v) granting certain related relief, all as described more fully below.  In support of this Motion, the Debtor relies upon and incorporates by reference the *Declaration of Jaime Francisco Buriticá Leal (I) in Support of the Chapter 11 Petition and First Day Pleadings and (II) Pursuant to Local Bankruptcy Rule 1007-2* (the "**First Day Declaration**"), filed concurrently herewith. In further support of the Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012 (Preska, C.J.).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, filed contemporaneously with this Motion.

orders or judgments consistent with Article III of the United States Constitution.

4.      The statutory and other legal predicates for the relief requested herein are sections 105, 363, 502, 1125, 1126, and 1128 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 3003, 3016, 3017, 3018, 3020, 9006, 9013, and 9021 of the Bankruptcy Rules, Rules 3017-1, 3018-1, 3018-2, and 3020-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**"), and the *Amended Procedural Guidelines for Prepackaged Chapter 11 Cases in the United States Bankruptcy Court for the Southern District of New York*, effective February 1, 2024 (the "**Guidelines**").

## BACKGROUND

5.      On the date hereof (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under the Bankruptcy Code with the Court.  The Debtor continues to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No creditors' committee has been appointed by the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**"), nor has a trustee or examiner been appointed in the Chapter 11 Case.

6.      The Debtor is a non-bank financial institution in Colombia offering a variety of flexible, specialized, and tailored credit and financing alternatives, including payroll deduction loans and insurance premium financing, to low- and middle-income segments of the Colombian population. Initially operating locally in Cali, Colombia, the Debtor steadily grew into other geographic regions throughout Colombia.

7.      The Debtor has historically funded costs and expenditures through a combination of cash generated from operations, equity issuances, and borrowing funded indebtedness. The Debtor recently experienced difficulty in raising sufficient cash to meet its obligations as they

become due and has faced pressure with respect to its coupon and principal payments on its borrowings. Chief among the Debtor's obligations are notes (the "**Old Notes**") issued under that certain Indenture, dated February 7, 2020, between the Debtor and the Bank of New York Mellon.

8.    While the Debtor's business operations are strong, the Debtor has faced numerous headwinds in its efforts to raise the necessary funds in order to repay the Old Notes, and as a result, determined to improve its liquidity position through a refinancing of the Old Notes.

9.    On March 7, 2024, the Debtor launched an exchange offer and solicited votes from all holders of the Old Notes to exchange the Old Notes (the "**Exchange Offer**") for newly issued Senior Secured Step-up Notes due 2029 (the "**New Notes**"), and to accept the Plan that would effectuate the financial restructuring, *i.e.*, the exchange of the Old Notes for the New Notes, on essentially the same terms as the Exchange Offer.

10.    The Plan consists of a plan of reorganization under Chapter 11 of the Bankruptcy Code that would result in the same transactions contemplated by the Exchange Offer, *i.e.*, the extension of the maturity of the Old Notes through the issuance of New Notes in order to reduce the Debtor's overall debt burden and interest expense burden.

11.    The voting deadline on the Plan was April 3, 2024 at 5:00 p.m. New York City time. As shown in the related declaration of the Solicitation Agent (defined below) of the voting results, 81.25% in amount and 96.09% in number of the holders of the Old Notes that cast ballots on the Plan voted to accept the Plan.

12.    On the Petition Date, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code to effectuate the Plan, enhance liquidity, and solidify its long-term growth prospects and operating performance.  The Plan provides that all claims other than those of the holders of the Old Notes are unimpaired.

13.     A detailed factual background of the Debtor's business and operations, as well as the events precipitating the commencement of this Chapter 11 Case, is more fully set forth in the First Day Declaration, filed contemporaneously herewith and incorporated herein by reference.

## THE PREPACKAGED CHAPTER 11 PLAN

14.     The Plan will achieve the Debtor's restructuring goals by reducing the indebtedness under the Old Notes.  To preserve value for the benefit of the Debtor's estate, the Debtor needs to proceed swiftly to confirmation of the Plan and minimize the effects of the Chapter 11 Case on the value of the Debtor's brand. Failure to obtain confirmation of the Plan on the proposed timeline would severely affect the Debtor's liquidity position, require the Debtor to negotiate costly debtor-in-possession financing, and may jeopardize the Debtor's business operations. Because Chapter 11 is a concept that is unfamiliar to the Debtor's non-U.S. vendors and other counterparties, such parties may take harmful actions against the Debtor that would devastate its go-forward business and ability to operate successfully if the Plan is not consummated quickly. To consummate the Plan as soon as possible, the Debtor and its stakeholders invested significant attention to achieving consensus prepetition. As a result, among other things, all non-funded debt claims will ride through the Debtor's bankruptcy unimpaired and over 95% percent of voting creditors that returned ballots voted to accept the Plan.

15.     The Plan embodies a settlement among the Debtor and its key creditor constituencies on a consensual transaction that will reduce the Debtor's debt service obligations and position the Debtor for continued operations. ***Importantly, the Plan will not alter or modify any of the Debtor's existing obligations to its customers, employees and vendors, or any other local and international creditors or stakeholders*** (other than holders of Old Notes).

16.     The Plan contemplates, among other things, that:

• Holders of the Old Notes will receive (a) the exchange consideration of US$

750 principal amount of the New Notes for each US$ 1,000 principal amount of Old Notes validly tendered, and (b) additional New Notes that will be issued and delivered to capitalize the accrued and unpaid interest in respect of the Old Notes up to the Effective Date of the Plan.

- Administrative and Priority Claims will be paid in full as part of the Plan;

- All other claims against the Debtor will be Unimpaired under the Plan; and

- All Interests in the Debtor will be reinstated.

17.     The following table (a) designates the Classes of claims against, and Interests in, the Debtor, (b) specifies the Classes of Claims and Interests that are Impaired by the Plan and, therefore, entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) specifies the Classes of Claims and Interests that are Unimpaired by the Plan and, therefore, are deemed to accept the Plan in accordance with section 1126 of the Bankruptcy Code:[2]

| Class | Description | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| A | Old Notes Claims | Impaired | Yes |
| B | Other Secured Claims | Unimpaired | No (deemed to accept) |
| C | General Unsecured Claims | Unimpaired | No (deemed to accept) |
| D | Interests | Unimpaired | No (deemed to accept) |

18.     To effectuate the terms of the proposed consensual restructuring, on or about March 7, 2024, prior to commencing this Chapter 11 Case, the Debtor caused a copy of the Plan and the Beneficial Ballot and Master Ballot (as appropriate) to be delivered to the holders of Class A Old Notes Claims, the only holders of Impaired Classes of Claims or Interests entitled to vote to accept or reject the Plan.

19.     The deadline for the receipt of votes from the holders of Class A Old Notes Claims to accept or reject the Plan (the "**Voting Deadline**") was set for April 3, 2024, at 5:00 pm (New

---

[2] This summary is included for ease of reference only and shall not limit, modify, or amend the proposed treatment set forth in the Plan, which, in the event of any inconsistency, shall govern.

York City time).   Epiq Corporate Restructuring, LLC (the "**Solicitation Agent**") collected and tabulated Ballots and Master Ballots received on or before the Voting Deadline. Contemporaneously with this Motion, the Debtor will file the *Declaration of Jane Sullivan of Epiq Corporate Restructuring LLC. Regarding Solicitation of Votes and Tabulation of Ballots Cast on the Prepackaged Chapter 11 Plan* (the "**Voting Report**"), which will certify the results and methodologies for tabulation of Ballots and Master Ballots accepting or rejecting the Plan with respect to holders of Class A Old Notes Claims (the "**Voting Class**").

20.     As set forth above and in the Voting Report, the Debtor has received support for the Plan from at least two-thirds of the amount voted and more than one-half in number of the holders of Allowed Class A Old Notes Claims that voted on the Plan.

## THE SOLICITATION PROCEDURES

21.     On March 7, 2024, the Debtor caused the Solicitation Agent to distribute packages (the "**Solicitation Packages**") to the Voting Class, which included the Plan; an appropriate ballot, and the Notice of Commencement of Prepackaged Chapter 11 Case and Hearings on First Day Motions and Confirmation of the Prepackaged Chapter 11 Plan of Reorganization of Credivalores–Crediservicios S.A. (the "**Notice of Commencement**").

22.     The Solicitation Packages disclosed the Debtor's expectation to (a) commence the Chapter 11 Case, (b) request that Court consider certain first day motions and related pleadings, (c) request that the Court hold a Combined Hearing to consider the adequacy of the Disclosure Statement, any objections to the Disclosure Statement, confirmation of the Plan, and any objections to the Plan.

23.     The Notice of Commencement disclosed that a Combined Hearing Notice would be published as soon as practicable after the Petition Date. The Combined Hearing Notice will

contain a summary of the Plan, including a copy of all releases, injunctions, and exculpation provisions, and the proposed confirmation schedule. The Debtor also disclosed that all case information would be made available at https://dm.epiq11.com/Credivalores free of charge.

24.    Holders that received the Solicitation Packages were directed in the applicable Ballot to complete and submit the respective ballots in order to cast a vote to accept or reject the Plan. Each Holder was explicitly informed in the applicable Ballot that such Holder needed to submit its Ballot in accordance with the instructions provided in the Ballot so that its vote was actually received by the Solicitation Agent on or before the Voting Deadline to be counted. Certain Holders of Claims and Interests were not provided a Solicitation Package because such Holders are conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code because such Holders are unimpaired.

## **RELIEF REQUESTED**

25.    By this Motion, the Debtor respectfully requests entry of an order, substantially in the form of the proposed Scheduling Order attached hereto as **Exhibit A**:

(a)    scheduling the Confirmation Hearing;

(b)    establishing a deadline to object to the adequacy of the Disclosure Statement and confirmation of the Plan (the "**Objection Deadline**");

(c)    approving the form and manner of notice and objection procedures for the Confirmation Hearing (the "**Confirmation Hearing Notice**"), substantially in the form attached to the Scheduling Order as **Exhibit 1**;

(d)    approving the Voting Record Date (as defined herein) for purposes of determining the holders of Claims against, and Interests in, the Debtor;

(e)    approving the Solicitation Package (as defined herein), including the forms of Ballots and Master Ballots;

(f)    approving the procedures for voting on the Plan, including the Voting Deadline;

(g)    approving procedures for vote tabulation;

(h)    waiving the requirement for meetings of creditors or equity holders; and

(i)    granting related relief.

26.    Below is a table highlighting the dates relevant to the Solicitation Procedures and the Confirmation Hearing.

| Proposed Solicitation and Confirmation Schedule | |
|---|---|
| Voting Record Date | March 7, 2024 |
| Distribution of Solicitation Package | March 7, 2024 |
| Voting Deadline | April 3, 2024 |
| Petition Date | May 16, 2024 |
| Distribution of Confirmation Hearing Notice | May 23, 2024 |
| Plan Supplement Deadline | June 7, 2024 |
| Plan Confirmation Brief and Plan Objection Deadline | June 14, 2024, at 4:30 pm (prevailing Eastern Time) |
| Reply Deadline | June 21, 2024, at 4:30 pm (prevailing Eastern Time) |
| Confirmation Hearing | June 25, 2024 |

27.    At this time, the Debtor is not seeking approval of the Disclosure Statement under section 1125(b) of the Bankruptcy Code. Rather, the Debtor will seek approval of the Disclosure Statement, including a finding that the Disclosure Statement contained "adequate information" as that term is used by section 1125 of the Bankruptcy Code, at the Confirmation Hearing.

**BASIS FOR RELIEF REQUESTED**

A.    **Scheduling the Confirmation Hearing and Establishing Notice and Objection Procedures**

(i)    **The Confirmation Hearing**

28.    The Debtor requests that the Court schedule a single hearing to consider both approval of the Disclosure Statement and confirmation of the Plan on or about June 25, 2024 (the

"**Confirmation Hearing Date**").[3] The Debtor further requests that the Court set the Objection Deadline for June 14, 2024 at 4:30 p.m. (prevailing Eastern Time), and set the deadline for the Debtor and other parties in interest to reply to objections (the "**Reply Deadline**") for June 21, 2024 at 4:30 p.m. (prevailing Eastern Time).

29.    Section 105(d)(2)(B)(vi) of the Bankruptcy Code authorizes the Court to combine a hearing on a disclosure statement with a hearing on confirmation of a plan of reorganization. In addition, the Guidelines specify that in a prepackaged chapter 11 case, the hearing on a debtor's compliance with section 1126(b) of the Bankruptcy Code and on confirmation of the plan "shall be combined whenever practicable." Guidelines, ¶ XII. The Debtor submits that a combined hearing in this Chapter 11 Case is necessary and appropriate.

30.    *First*, a Combined Hearing will promote judicial economy and the expedient reorganization of the Debtor. Any adverse effects of the chapter 11 filing upon the Debtor's business and going concern value will be minimized, and the benefit to creditors maximized, through prompt distributions and the reduction of administrative expenses of the estate—which are the hallmarks of a prepackaged plan of reorganization.

31.    *Second*, given that the Solicitation Packages were distributed to the holders of the Old Notes more than two (2) months before the proposed Confirmation Hearing, the holders of the Old Notes have had more than adequate notice of the terms of the Plan.

32.    *Third,* given that the vast majority of the Debtor's assets are located in Colombia, it is imperative that the Debtor is able to move as expeditiously as possible to minimize the impact of the Chapter 11 Case on the ability of one or more local creditors taking action against the Debtor

---

[3] The Debtor requests that the Confirmation Hearing may be continued from time to time by the Court or the Debtor without further notice except for adjournments announced in open court or filed on the Court's docket, and the Plan may be modified pursuant to section 1127 of the Bankruptcy Code prior to, during, or as a result of the Confirmation Hearing, in each case without further notice to parties in interest.

and its assets located in Columbia.

33.    *Finally*, before commencing solicitation on the Plan, the Debtor and its advisors
engaged in extensive discussions with a significant number of holders of the Old Notes regarding
implementing a restructuring on the terms set forth in the Plan.  Therefore, the Debtor respectfully
submits that (a) a single combined hearing to seek the Court's approval of the Disclosure Statement
and confirmation of the Plan is warranted under the circumstances and (b) the requested Objection
Deadline and Confirmation Hearing Date provide more than sufficient time under the
circumstances for parties in interest to make an informed decision regarding the Plan.

**(ii)    Approval of Form and Manner of Confirmation Hearing Notice**

34.    In accordance with Bankruptcy Rules 2002 and 3017(d) as modified by the
Guidelines, by May 23, 2024, the Debtor will serve the Confirmation Hearing Notice, by electronic
mail, facsimile, and/or first-class mail, upon all known holders of Claims and Interests and all other
entities entitled to notice in the Chapter 11 Case (regardless of whether such entities are entitled to
vote to accept or reject the Plan), including the Debtor's creditor matrix, all interest holders of
record, the Office of the United States Trustee for Region 2, and the entities listed on the List of
Creditors Holding the 20 Largest Unsecured Claims filed in accordance with Bankruptcy Rule
1007(d).  The foregoing service of the Confirmation Hearing Notice will provide parties in interest
of sufficient notice of the Objection Deadline and the Confirmation Hearing.

35.    The Confirmation Hearing Notice sets forth, among other things, (a) the procedures
for objecting to the Disclosure Statement and the Plan, (b) the date and time of the Objection
Deadline, and (c) the date and time of the Confirmation Hearing.  The Debtor believes that service
of the Confirmation Hearing Notice in this manner will provide sufficient notice of the
Confirmation Hearing and all applicable objection deadlines and requirements.

36.    The Debtor submits that the foregoing procedures will provide adequate notice of

the Confirmation Hearing and, accordingly, request that the Court deem such notice adequate.

### (iii)    Objections to Approval of Disclosure Statement and Confirmation of Plan

37.    Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a chapter 11 plan must be filed and served "within a time fixed by the court." Pursuant to the Guidelines, this Court may shorten the twenty-eight notice period set forth in Bankruptcy Rule 2002(b).

38.    The Debtor requests that the Court direct that all objections to the approval of the Disclosure Statement and confirmation of the Plan be filed by the Objection Deadline as provided herein (unless otherwise extended with the agreement of the Debtor).

39.    The Confirmation Hearing Notice provides, and the Debtor requests, that the Court direct that (i) the Debtor file its brief in support of confirmation of the Plan no later than **4:30 p.m. (prevailing Eastern Time) on June 14, 2024**, and (ii) objections to confirmation of the Plan or proposed modifications to the Plan, if any, must (a) be in writing, (b) state the name and address of the entity objecting and the amount and nature of the Claim or Interest of such entity, (c) state with particularity the basis and nature of any objection or proposed modification to the Plan, and (d) be filed, together with proof of service, with the Court and served so as to be actually received by: (a) counsel for the Debtor, Baker & McKenzie LLP, 1111 Brickell Avenue, 10th Floor, Miami, FL 33130; Attn: Paul J. Keenan Jr. and Reginald Sainvil; and Baker & McKenzie LLP, 425 Fifth Avenue, New York, New York 10018, Attn: Blaire Cahn; (b) counsel to the Trustee under the Old Notes; and (c) the Office of the United States Trustee for Region 2, no later than **4:30 p.m. (prevailing Eastern Time) on June 14, , 2024**. While the Confirmation Hearing Notice will be sent out by May 23, 2024, the holders of the Old Notes have been on notice of the Plan for more than 2 months, and were advised in the Solicitation Package that the Debtor would file for relief under the Bankruptcy Code soon after the Voting Deadline. The proposed Confirmation Objection Deadline will afford the Court, the Debtor, and other parties in interest sufficient time, under the

circumstances, to consider the objections and proposed modifications prior to the Confirmation Hearing.

### (iv)    Deadline to File Reply Briefs

40.    The Debtor also requests that it and other parties in interest be permitted to file and serve (i) as appropriate, replies or omnibus replies to objections that may be filed and served no later than **4:00 p.m. (prevailing Eastern Time) on June 21, 2024**.

### B.    Approval of Solicitation Procedures

41.    As described herein, and specifically in accordance with section 1125(g) of the Bankruptcy Code, the Debtor initiated solicitation of the Plan prior to the commencement of the Chapter 11 Case.  Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and interests for the purposes of soliciting their votes to accept or reject a chapter 11 plan.  Bankruptcy Rule 3017(e) provides that "the court shall consider the procedures for transmitting the documents and information required by [Bankruptcy Rule 3017(d)] to beneficial holders of stock, bonds, debentures, notes and other securities, determine the adequacy of the procedures, and enter any orders the court deems appropriate."  As set forth herein, the Solicitation Procedures are in compliance with the Bankruptcy Code and the Bankruptcy Rules, and the Debtor seeks approval of the Solicitation Procedures, including the Ballots and Master Ballots and the procedures used for collection, acceptance, and tabulations of votes to accept or reject the Plan. Indeed, similar procedures to the Solicitation Procedures have been approved in other prepackaged chapter 11 cases in this District.[4]

---

[4] *See, e.g.*, *In re Inversiones Latin America Power Ltda., et al.*, Case No. 23-11891 (JPM) (Bankr. S.D.N.Y. January 3, 2024), ECF No. 92; *In re Pacificco Inc., et al.*, Case No. 23-10470 (PB) (Bankr. S.D.N.Y. April 28, 2023), ECF No. 157; *In re Rockley Photonics Holdings Limited*, Case No. 23-10081 (LGB) (Bankr. S.D.N.Y. March 10, 2023), ECF No. 137, *Grupo Posadas S.A.B. de C.V., et al.*, Case No. 21-11831 (SHL) (Bankr. S.D.N.Y. December 9, 2021), ECF No. 113; *In re Automotores Gildemeister SpA,, et al.*, Case No. 21-10685 (LGB) (Bankr. S.D.N.Y. June 1, 2021), ECF No. 149; *Maxcom USA Telecom, Inc., et al.*, Case No. 19-23489 (RDD) (Bankr. S.D.N.Y. September 11, 2019), ECF No. 47; *Inversiones Alsacia S.A.,, et al.*, Case No. 14-12896 (MG) (Bankr. S.D.N.Y. December 4, 2014), ECF

(i)        **Establishment of Voting Record Date**

42.      Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a chapter 11 plan, "creditors and equity security holders shall include holders of stocks, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Bankruptcy Rule 3018(a) contains a similar provision regarding the record date for voting purposes. Similarly, Bankruptcy Rule 3017(c) provides that before approving the disclosure statement, the Court must fix a time within which the holders of claims and interests may accept or reject a plan and may fix a date for the hearing on confirmation of a chapter 11 plan.

43.      The Solicitation Packages clearly identified March 7, 2024, as the record date (the "**Voting Record Date**") for determining which holders of Claims arising from the Old Notes were entitled to vote to accept or reject the Plan. The Solicitation Agent solicited the holders of the Old Notes by delivering sufficient copies of the Solicitation Packages to the banks and brokerage firms through which the Old Notes are held, or their mailing agent (collectively, the "**Nominees**"), who in turn distributed them to the beneficial holders. The Voting Record Date was set forth clearly in such documents. The Debtor submits that the distribution of the Solicitation Packages on March 7, 2024, is appropriate under the circumstances here and should be approved.

(ii)       **Approval of Ballots, Solicitation Packages, Additional Materials, and Transmittal**

44.      The Debtor caused the Solicitation Packages to be transmitted to the Solicitation Agent which, in turn, delivered the Solicitation Package, to the Nominees for distribution to the beneficial holders Old Notes Claims as of the Voting Record Date, by electronic mail (if available)

---

No. 98.

prior to the commencement of the Chapter 11 case.  The Ballots and Master Ballot are modeled after the Official Form 314 - Ballot for Accepting or Rejecting Plan in connection with a prepackaged plan solicitation - and Exhibit A to the Guidelines except to the extent that they have been tailored to address the particular circumstances of this Chapter 11 Case to include certain additional information that the Debtor believes to be relevant and appropriate for the holders of the Old Note Claims.  *See* Bankruptcy Rule 3017(d).  To be counted as votes to accept or reject the Plan, each Ballot provides that it must be properly executed, completed and delivered to the Solicitation Agent (directly or via a Nominee, as applicable) so as to be actually received by the Voting Deadline.

45.     Holders of Old Note Claims were informed that they could obtain additional copies of the Solicitation Package, including the Ballots, by contacting the Solicitation Agent.

46.     Nominees were provided with sufficient Solicitation Packages to forward to the beneficial holders represented by the Nominee as of the Voting Record Date, as well as the Master Ballot for use by the Nominees to convey votes submitted by beneficial holders on Beneficial Holder Ballots.  Nominees were provided with two options related to distribution of the Solicitation Package to the beneficial holders who held their Old Notes through such Nominee.  Each Nominee was entitled to elect to (1) "pre-validate" the Beneficial Holder Ballot, i.e., execute the Beneficial Holder Ballot, forward the Solicitation Package and executed Beneficial Holder Ballot to the beneficial holder as of the Voting Record Date and instruct the beneficial holder to (A) indicate its vote to accept or reject the Plan and (B) return the executed Beneficial Holder Ballot directly to the Solicitation Agent; or (2) forward the Solicitation Package together with the unexecuted Beneficial Holder Ballot to the beneficial holder as of the Voting Record Date with instructions for the beneficial holder to complete and return the executed Beneficial Holder Ballot to the

Nominee. In the event that a Nominee elected to proceed pursuant to option (2) in the immediately preceding sentence, the Beneficial Holder Ballot provided instructions to beneficial holders to return their Beneficial Holder Ballot to the Nominee in sufficient time for the Nominee to prepare and return its Master Ballot to the Solicitation Agent by the Voting Deadline.

47.     Holders of Claims or Interests that are not in the Voting Class were not provided with a Solicitation Package. Such holders of Claims or Interests are unimpaired and conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.

**(iii)    Approval of Voting Deadlines**

48.     Section 1125(g) of the Bankruptcy Code provides that "[n]otwithstanding subsection (b), an acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law." Bankruptcy Rule 3018(b) provides that prepetition acceptances or rejections of a chapter 11 plan are valid only if the plan was transmitted to substantially all the holders of claims or interests in each solicited class and the time for voting was not unreasonably short.

49.     The Debtor commenced the solicitation of votes for approval of the Plan on March 7, 2024. The Debtor established April 3, 2024 as the deadline for receiving votes to accept or reject the Plan from the Voting Class, provided that the Debtor reserved the absolute right, at any time or from time to time, to extend the period of time (on a daily basis, if necessary) during which Ballots and Master Ballots will be accepted for any reason, including determining whether or not the requisite number of acceptances have been received, by making a public announcement of such extension no later than the first business day next succeeding the previously announced Voting Deadline. The Ballots and Master Ballots stated in clear and conspicuous language that all Ballots and Master Ballots must be properly executed, completed, and delivered to the Solicitation Agent

16

so that they are actually received by the Solicitation Agent no later than the Voting Deadline, unless the Debtor determines otherwise or as permitted by the Bankruptcy Court. Thus, holders of the Old Notes ultimately had 27 days to vote to accept or reject the Plan, which was adequate time to consider the Plan and the Disclosure Statement and submit a ballot before the Voting Deadline.

50.    The Debtor respectfully submits that the holders of Old Notes Claims had adequate time to consider the Plan. The Voting Class is comprised of sophisticated investors. Additionally, the voting period complies with the time period deemed reasonable by the Guidelines (which only require a twenty-one (21) day voting period). Accordingly, the Debtor submits that the Voting Deadline provided the holders of Old Notes Claims with sufficient time to review and vote on the Plan, and that the voting period provided by the Solicitation Procedures was sufficient under applicable law and reasonable under the facts and circumstances of this case and therefore should be approved.

**(iv)    Approval of Procedures for Vote Tabulation**

51.    The Debtor respectfully requests that the Court approve the voting and tabulation procedures described herein in accordance with section 1126(c) of the Bankruptcy Code and Bankruptcy Rule 3018(a). Section 1126(c) of the Bankruptcy Code provides:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

Similarly, section 1126(d) of the Bankruptcy Code provides:

> A class of interests has accepted a plan if such plan has been accepted by holders of such interests, other than any

> entity designated under subsection (e) of this section,
> that hold at least two-thirds in amount of the allowed
> interests of such class held by holders of such interests,
> other than any entity designated under subsection (e) of
> this section, that have accepted or rejected such plan.

Further, Bankruptcy Rule 3018(a) provides that the "court after notice and hearing may temporarily allow [a] claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan."

52.    The Debtor requests that the Court approve the vote tabulation methodology utilized by the Debtor. The Solicitation Packages were transmitted to the Nominees by overnight delivery. The Nominees then transmitted the Solicitation Packages to beneficial holders in the customary fashion, including by first class mail or electronic mail delivery (if available), and beneficial holders of Old Note Claims were directed to return their Ballots in accordance with the directions provided by the Nominee[5]. The Debtor did not count or consider for any purpose in determining whether the Plan has been accepted or rejected the following Ballots: (a) any vote cast on a Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder; (b) any vote cast by a Person or Entity that does not hold a Claim that is entitled to vote on the Plan; (c) any vote cast on an unsigned Ballot; (d) any vote not marked to accept or reject the Plan, or marked both to accept and reject the Plan; (e) any vote cast on a Ballot received after the Voting Deadline, unless otherwise determined by the Debtor; (f) any vote submitted by a party not entitled to cast a vote with respect to the Plan and (g) any non-validated Beneficial Holder Ballot that was submitted to the Voting Agent.

---

[5] The Solicitation Package contained the instructions for the Nominee to solicit votes from its Beneficial Holder clients via the delivery of duly completed Beneficial Holder Ballots or conveyance of their vote on the Plan and decision to opt in to the releases (or not) via e-mail, telephone, internet application, facsimile, voter information form, or other customary means of conveying such information; and the beneficial holder ballot could be returned to the Nominee by mail, or by email, telephone, internet application, facsimile voter information form or other accepted and customary means of delivering such information to the Nominee.

53.    Additionally, if multiple Ballots were received from an individual holder with respect to the same Claim prior to the Voting Deadline (as may have been extended by the Debtor), the last Ballot timely received superseded and revoked any previously received Ballot.

54.    The Solicitation Procedures included the following additional protocol with respect to the tabulation of Master Ballots:

- Votes cast by holders of public securities through Nominees will be applied to the applicable positions held by such Nominees as of the Voting Record Date, as evidenced by the record and depository listings. Votes submitted by a Nominee shall not be counted in excess of the amount of public securities held by such Nominee as of the Voting Record Date;

- If conflicting votes or "over-votes" are submitted by a Nominee, the Balloting Solicitation shall use reasonable efforts to reconcile discrepancies with the Nominee;

- If over-votes are submitted by a Nominee that are not reconciled prior to the preparation of the certification of vote results, the votes to accept and to reject the Plan shall be approved in the same proportion as the votes to accept and to reject the Plan submitted by the Nominee, but only to the extent of the Nominee's Voting Record Date position in the public securities;

- For the purposes of tabulating votes, each Beneficial Holder shall be deemed (regardless of whether such holder includes interest in the amount voted on its Ballot) to have voted only the principal amount of its public securities; any principal amounts thus voted may be thereafter adjusted by the Solicitation Agent, on a proportionate basis with a view to the amount of securities actually voted, to reflect the corresponding claim amount, including any accrued but unpaid prepetition interest, with respect to the securities thus voted.

55.    Procedures similar to the foregoing Solicitation Procedures have been approved in other prepackaged chapter 11 cases.[6]

---

[6]. *See, e.g.*, *In re Inversiones Latin America Power Ltda., et al.*, Case No. 23-11891 (JPM) (Bankr. S.D.N.Y. January 3, 2024), ECF No. 92; *In re Pacificco Inc., et al.*, Case No. 23-10470 (PB) (Bankr. S.D.N.Y. April 28, 2023), ECF No. 157; *In re Rockley Photonics Holdings Limited*, Case No. 23-10081 (LGB) (Bankr. S.D.N.Y. March 10, 2023), ECF No. 137; *In re Vewd Software USA, LLC, et al.*, Case No. 23-12065 (MEW) (Bankr. S.D.N.Y. February 1, 2022), ECF No. 130; *Grupo Posadas S.A.B. de C.V., et al.*, Case No. 21-11831 (SHL) (Bankr. S.D.N.Y. December 9, 2021), ECF No. 113; *In re Automotores Gildemeister SpA,, et al.*, Case No. 21-10685 (LGB) (Bankr. S.D.N.Y. June 1, 2021), ECF No. 149; *Maxcom USA Telecom, Inc., et al.*, Case No. 19-23489 (RDD) (Bankr. S.D.N.Y. September 11, 2019),

(v)    **Non-Transmission of Disclosure Statement to Certain Holders of Claims and Interests**

56.    For the reasons set forth herein, the Debtor requests a waiver of the Bankruptcy Rule requirement that the Debtor mail a copy of the Plan and Disclosure Statement to holders of Claims and Interests presumed to accept the Plan.[7]  Because the Debtor solicited acceptances and rejections of the Plan on a prepetition basis, no disclosure statement was "approved" under Bankruptcy Rule 3017(d), and, therefore, Bankruptcy Rule 3017 is not applicable here.  However, the Plan and Disclosure Statement are available at no cost on the website maintained for the case https://dm.epiq11.com/Credivalores.

57.    In any event, it would be an unnecessary administrative burden and expense for the Debtor to transmit the Disclosure Statement and Plan to holders of Claims and Interests presumed to accept the Plan.  Accordingly, the Debtor submits that it is not appropriate to require the Debtor to transmit a copy of the Solicitation Package to the holders of Claims and Interests other than those in the Voting Class.

C.    **Approval of the Disclosure Statement at the Confirmation Hearing**

58.    The Debtor will request that, at the Confirmation Hearing, the Court find that the Disclosure Statement contains adequate information as defined in section 1125 of the Bankruptcy Code.  Section 1125(a) of the Bankruptcy Code defines "adequate information" as

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the

---

ECF No. 47; *Inversiones Alsacia S.A.,, et al.*, Case No. 14-12896 (MG) (Bankr. S.D.N.Y. December 4, 2014), ECF No. 98.

[7] *See* Fed. Bankr. R. 3017(d) (requiring transmission of a court-approved disclosure statement to, inter alia, classes of unimpaired creditors and equity security holders); *see also* 11 U.S.C. § 1126(f)-(g) (providing that solicitation of parties either presumed to accept or deemed to reject is unnecessary).

relevant class to make an informed judgment about the plan …

The Debtor submits that the Disclosure Statement contains adequate information within the meaning of section 1125(a) of the Bankruptcy Code.

59.      In this regard, the Disclosure Statement contains pertinent information that allows holders of Old Notes Claims in the Voting Class to make informed decisions about whether to vote to accept or reject the Plan, including the following key sections and information contained therein:

- the Plan, including a summary of the classifications and treatment of all Classes of Claims and Interests;

- the history of the Debtor's business, including the events leading to the chapter 11 filing;

- a description of the Debtor's prepetition indebtedness;

- relief expected to be sought during the case, including with respect to first-day motions;

- certain risk factors for voters to consider that may affect the Plan;

- solicitation and voting procedures;

- certain securities law matters;

- certain federal income tax consequences of the Plan;

- provisions governing distributions under the Plan; and

- the means for implementation of the Plan.

60.      Based on the foregoing, the Debtor submits that the Disclosure Statement complies with all aspects of section 1125 of the Bankruptcy Code and addresses the information set forth above in a manner that provides adequate information to holders of Old Notes Claims, the only impaired class entitled to vote on the Plan.

**D.      Confirmation of the Plan**

61.      The Debtor believes that the Plan satisfies all of the requirements for confirmation

under the Bankruptcy Code. As noted above, the Debtor has requested that the Court schedule the Confirmation Hearing at which time the Debtor will seek confirmation of the Plan. Prior to the Confirmation Hearing, the Debtor will file the Confirmation Brief (i) demonstrating that the Plan satisfies each requirement for confirmation and (ii) responding to any objections to confirmation.

**E.    Waiver of Requirement for Creditor or Equity Holder Meeting**

62.    The circumstances of the Chapter 11 Case merit a conditional waiver of the requirement that the U.S. Trustee convene a meeting of creditors or equity security holders (the "**341 Meeting**"). Section 341 of the Bankruptcy Code allows a court to waive the requirement of a meeting of creditors or equity holders if a debtor has filed a plan on the petition date and solicited acceptances of a plan prior to the commencement of a chapter 11 case. 11 U.S.C. § 341. The Debtor filed the Plan contemporaneously with this Motion on the Petition Date, and the Debtor commenced solicitation of votes to accept or reject the Plan on March 7, 2024, prior to the Petition Date, thereby satisfying the threshold statutory requirement.

63.    Cause also exists to waive the 341 Meeting because, among other things, the only impaired class of creditors is Class A (the Old Notes), which as a class have overwhelmingly voted to accept the Plan. Thus, impaired creditors are not prejudiced by the lack of a 341 Meeting. In addition, the Debtor intends to proceed to confirm the Plan as quickly as possible. A 341 Meeting may force the Debtor to delay the Confirmation Hearing, thereby incurring additional administrative expenses and professional fees to the detriment of the Debtor's estate. For these reasons, sufficient "cause" exists to waive the requirement of a 341 Meeting. Accordingly, the Debtor requests that the Court direct that the 341 Meeting be deferred until confirmation of the Plan and need not be convened unless the Plan is not confirmed within sixty (60) days after the Petition Date or such later date as may be determined by the Court.

## BANKRUPTCY RULE 6003 IS SATISFIED
## AND REQUEST FOR WAIVER OF STAY

64.    The Debtor submits that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor for the reasons set forth herein and in the First Day Declaration, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.  Bankruptcy Rule 6003 provides:

65.    To successfully implement the Plan, the Debtor respectfully request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances, and that the Court waive the stay imposed by Bankruptcy Rules 6004(h) and 4001(a).  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As explained above and in the First Day Declaration, the Debtor submits that ample cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and granting a waiver of the stay imposed by Bankruptcy Rules 4001(a)(3) and 6004(h), to the extent such notice is required and such a stay applies. Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rules 6003 and 6004(h).

## RESERVATION OF RIGHTS

66.    Nothing contained herein or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as: (a) an admission as to the validity of any particular claims against the Debtor; (b) a waiver of the Debtor's right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; or (e) a request or authorization

to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code.

## NOTICE

67.     Notice of this Motion will be provided to (a) the U.S. Trustee; (b) the holders of the twenty largest unsecured claims against the Debtor; (c) the Internal Revenue Service; (d) the United States Attorney's Office for the Southern District of New York and any other states in which the Debtor operates; (e) the Securities and Exchange Commission; (f) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (g) any other party entitled to notice pursuant to Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

## NO PRIOR REQUEST

68.     No previous request for the relief sought herein has been made by the Debtor to this or any other court.

*[Remainder of page intentionally left blank.]*

**WHEREFORE**, for the reasons set forth herein, the Debtor respectfully requests that the Court enter the Scheduling Order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other and further relief as the Court deems just and proper.

Dated: May 16, 2024                    **BAKER & McKENZIE LLP**


By: */s/ Paul J. Keenan Jr.*
    Paul J. Keenan Jr. (*pro hac vice*)
    Reginald Sainvil (*pro hac vice*)
    1111 Brickell Avenue, 10th Floor
    Miami, FL 33131
    Telephone: 305-789-8900
    Facsimile: 305-789-8953
    Email: paul.keenan@bakermckenzie.com
          reginald.sainvil@bakermckenzie.com

    Blaire Cahn
    452 Fifth Avenue
    New York, NY 10018
    Telephone: 212-626-4100
    Facsimile: 212-310-1600
    Email: blaire.cahn@bakermckenzie.com

    *Proposed Counsel for the Debtor and Debtor-in-Possession*

## EXHIBIT A

<u>Proposed Order</u>

(Attached)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:                                                          Chapter 11

CREDIVALORES – CREDISERVICIOS S.A.,          Case No. 24-10837 (DSJ)

      Debtor.

_____/

### ORDER (I) SCHEDULING A COMBINED HEARING TO CONSIDER THE ADEQUACY OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE JOINT PLAN; (II) APPROVING FORM AND MANNER OF NOTICE OF COMBINED HEARING; (III) APPROVING SOLICITATION PROCEDURES; (IV) WAIVING REQUIREMENT FOR MEETING OF CREDITORS OR EQUITY HOLDERS; AND (IV) GRANTING RELATED RELIEF

Upon the motion, (the "**Motion**")[1] of Credivalores – Crediservicios S.A., the above-captioned debtor and debtor in possession (the "**Debtor**") for entry of an order, pursuant to sections 105, 363, 502, 1125, 1126, and 1128 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 3003, 3016, 3017, 3018, 3020, 9006, 9013, and 9021 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 3017-1, 3018-1, 3018-2, and 3020-1 of the Local Bankruptcy Rules for the Southern District of New York  (the "**Local Rules**"), (i) scheduling a combined hearing (the "**Confirmation Hearing**") to consider the adequacy of the *Solicitation and Disclosure Statement Relating to the Prepackaged Plan of Reorganization* of the Debtor (as modified, amended, or supplemented from time to time, the "**Disclosure Statement**") and confirmation of the *Prepackaged Chapter 11 Plan* of the Debtor (as modified, amended, or supplemented from time to time, the "**Plan**"); (ii) approving the form and manner of notice of Confirmation Hearing; (iii) approving solicitation procedures used in connection with the Debtor's prepetition solicitation of the Plan described herein and further discussed in the Disclosure Statement (the "**Solicitation Procedures**"); (iv) waiving the requirement for meeting of creditors

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

or equity holders; and (v) granting related relief; and the Court having held a hearing to consider

the relief requested in the Motion (the "**Hearing**"); and upon the record of the Hearing and upon

the Court's consideration of the First Day Declaration and the Motion and all objections and

pleadings filed with respect to the Motion; the Court hereby FINDS AND DETERMINES that:

(i) the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28

U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States

District Court for the Southern District of New York dated as of January 31, 2012;

(ii) consideration of the Motion and the relief requested therein is a core proceeding pursuant to

28 U.S.C. § 157(b); (iii) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409;

(iv) due and proper notice of the Motion has been provided under the particular circumstances,

and no other or further notice need be provided; (v) the relief requested in the Motion is in the best

interests of the Debtor and its estate and creditors; (vi) the relief sought in the Motion is necessary

to avoid immediate and irreparable harm to the Debtor and its estate, as contemplated by

Bankruptcy Rule 6003; and (vii) good cause exists for waiver of the 14 day stay imposed by

Bankruptcy Rule 6004(h); and after due deliberation and sufficient cause appearing therefor, it is

hereby ORDERED THAT:

1.     The Motion is granted as set forth herein.

2.     Any and all objections to the Motion not otherwise settled or withdrawn as set forth

in this Order are hereby overruled.

3.     The Confirmation Hearing, at which time the Court will consider, among other

things, the adequacy of the Disclosure Statement and confirmation of the Plan, shall commence

at ____:_____.m. (prevailing Eastern Time) on June ___, 2024; *provided, however*, that the

Confirmation Hearing may be adjourned or continued from time to time by the Court or the Debtor

without further notice other than adjournments announced in open Court or as indicated in any

notice, including any notice of agenda of matters scheduled for hearing filed by the Debtor with the Court.

4.      The notice of (i) the time fixed for filing objections to confirmation of the Plan, and (ii) the time, date, and place of the Confirmation Hearing, substantially in the form annexed hereto as **Exhibit 1** (the "**Confirmation Hearing Notice**"), complies with the requirements of Bankruptcy Rules 2002 and 3017 and is approved.

5.      The Debtor shall serve the Confirmation Hearing Notice on all known holders of Claims and Interests and all other entities entitled to notice in the Chapter 11 Case (regardless of whether such entities are entitled to vote to accept or reject the Plan) by _____, 2024.

6.      The Debtor is authorized to cause the service of the Confirmation Hearing Notice on all known holders of Claims and Interests and all other entities entitled to notice in the Chapter 11 Case, which is deemed sufficient and appropriate under the circumstances.

7.      Objections to confirmation of the Plan, if any, must be in writing, shall conform to the Bankruptcy Rules and the Local Bankruptcy Rules, and shall be (i) filed with the Court on the docket of *In re Credivalores – Crediservicios S.A.*, Case No. 24--10837 (DSJ), and (ii) served upon (a) the Clerk of the Bankruptcy Court for the Southern District of New York; (b) counsel for the Debtor, Baker & McKenzie LLP, 1111 Brickell Avenue, 10th Floor, Miami, FL 33130; Atten: Paul J. Keenan Jr. and Reginald Sainvil; and Baker & McKenzie LLP, 452 Fifth Avenue, New York, NY 10018; Attn: Blaire Cahn; (c) counsel to Trustee under the Old Notes; and (d) the Office of the United States Trustee for Region 2, so as to be received no later than _____, **2024 at 4:30 p.m. (prevailing Eastern Time)**. Objections to confirmation of the Plan that are not timely filed, served, and actually received in the manner set forth herein shall not be considered and shall be deemed overruled.

8.      The Debtor and other parties in interest may file and serve (i) as appropriate, replies or omnibus replies to objections that may be filed and served, and (ii) a memorandum in support of confirmation of the Plan, no later than **4:30 p.m. (prevailing Eastern Time) on _____, 2024**. The Debtor shall file its Plan Supplement also no later than **4:30 p.m. (prevailing Eastern Time) on _____, 2024.**

9.      The schedule of events set forth below relating to confirmation of the Plan is hereby approved in its entirety, and the Court hereby finds the following schedule of events is consistent with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules:

| Proposed Solicitation and Confirmation Schedule | |
|---|---|
| Voting Record Date | March 7, 2024 |
| Distribution of Solicitation Package | March 7, 2024 |
| Voting Deadline | April 3, 2024 |
| Petition Date | May 16, 2024 |
| Distribution of Confirmation Hearing Notice | May [23], 2024 |
| Plan Confirmation Brief and Plan Objection Deadline | June [7], 2024 |
| Reply Deadline | June [14], 2024, at 4:30 pm (prevailing Eastern Time) |
| Plan Supplement Deadline | June [21], 2024, at 4:30 pm (prevailing Eastern Time) |
| Confirmation Hearing | June [25], 2024 |

10.     For the purposes of determining holders of Claims and Interests entitled to vote to accept or reject the Plan, the Voting Record Date (the "**Voting Record Date**") is **March 7, 2024**, with respect to holders of Claims in Class A (the "**Voting Class**").

11.     To be counted as a vote to accept or reject the Plan, all Ballots and Master Ballots

must have been properly executed, completed, and delivered to the Solicitation Agent by mail, courier, email, or hand delivery, in each case so as to be actually received by no later than **April 3, 2024 at 5:00 p.m. (prevailing Eastern Time)** (the "**Voting Deadline**"). The Debtor is authorized, in its sole discretion, to extend the Voting Deadline at any time in respect of any particular voter or the Voting Class, as facts and circumstances may require.

12.     Subject to confirmation of the Plan, the Voting Record Date and the Voting Deadline are approved.

13.     Subject to confirmation of the Plan, the Solicitation Procedures utilized by the Debtor for distribution of the Solicitation Package as set forth and described in the Motion and the Disclosure Statement in soliciting acceptances and rejections of the Plan satisfy the requirements of the Bankruptcy Code and the Bankruptcy Rules and are approved.

14.     Subject to confirmation of the Plan, the Solicitation Package, including the Ballots and Master Ballots.

15.     Subject to confirmation of the Plan, the procedures used for collection, acceptance, and tabulations of votes to accept or reject the Plan as set forth and described in the Motion and the Disclosure Statement and as provided in the Ballots and Master Ballots are approved.

16.     The Debtor is not required to mail a copy of the Plan or Disclosure Statement to holders of Claims or Interests that are unimpaired and conclusively presumed to accept the Plan.

17.     The meeting pursuant to section 341(a) and (b) of the Bankruptcy Code shall not be convened; *provided* that the 341 Meeting may be held if the Plan is not confirmed within 60 days after the Petition Date.

18.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

19.     The Debtor and its advisors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

20.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

21.     This Court retains jurisdiction to hear and determine all matters arising from or related to this Order.

Date: _____, 2024
      New York, New York

                                     _____
                                     HONORABLE DAVID S. JONES
                                     UNITED STATES BANKRUPTCY JUDGE

## **Exhibit 1**

Confirmation Hearing Notice

(Attached)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:                                                              Chapter 11

CREDIVALORES – CREDISERVICIOS S.A.                Case No. 24-10837 (DSJ)

      Debtor.

_____/

### SUMMARY OF CHAPTER 11 PLAN AND NOTICE OF HEARING TO CONSIDER (I) DEBTOR'S COMPLIANCE WITH DISCLOSURE REQUIREMENT AND (II) CONFIRMATION OF PLAN OF REORGANIZATION

**NOTICE IS HEREBY GIVEN** as follows:

1.      On May 16, 2024 (the "**Petition Date**"), Credivalores – Crediservicios S.A., the above-captioned debtor (the "**Debtor**"), filed with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") a proposed prepackaged plan of reorganization (the "**Plan**") and a proposed disclosure statement (the "**Disclosure Statement**") pursuant to §§ 1125 and 1126(b) of title 11 of the United States Code (the "**Bankruptcy Code**"). Copies of the Plan and the Disclosure Statement may be obtained upon request to Debtor's counsel. The Plan and Disclosure Statement also are available for inspection on the PACER (Public Access to Court Electronic Records) website at https://pacer.uscourts.gov/ and the website of the claims and noticing agent at https://dm.epiq11.com/Credivalores.

      This notice sets forth information regarding the Plan, key dates and deadlines regarding the Plan and the Disclosure Statement, and certain other relevant information. Any information set forth herein is qualified in its entirety by the terms of the Plan. In the event of any inconsistency or conflict between this summary and the terms of the Plan, the terms of the Plan shall control and govern. *You are receiving this notice because your rights may be affected by the Plan and other actions in the bankruptcy case. You should carefully read this notice and discuss it with your attorney, if you have one. (If you do not have an attorney, you may wish to consult with one in connection with the Debtor's chapter 11 case).*

### SUMMARY OF PREPACKAGED PLAN OF REORGANIZATION

2.      The Plan agreed to by the Debtor and holders of Old Notes will achieve the Debtor's restructuring goals by reducing the Debtor's total indebtedness. The Plan is a "balance sheet" restructuring and is not intended to affect the Debtor's day-to-day operations. The Debtor believes that the restructuring will ensure that, for the foreseeable future, cash generated from operations will be sufficient to allow the Debtor to fund its operations and to increase working capital as necessary to support the Debtor's long-term business plan. *The holders of Old Notes Claims voted to accept the Plan prior to the Petition Date.* The Debtor believes that any valid alternative to confirmation of the Plan would result in significant delays, litigation, and additional costs and, ultimately, would jeopardize recoveries for holders of allowed Claims and Interests. Of note, the Plan renders all Other Secured Claims, General Unsecured Claims, Intercompany Claims, and Interests unimpaired and contemplates that such Claims will be paid in full in Cash in the ordinary course of business or on the effective date of the Plan.

3.      The following chart summarizes the treatment provided by the Plan to each class of Claims and Interests and indicates the acceptance or rejections of the Plan by each class entitled to vote.

| Class | Claim/Equity Interest | Treatment of Claim/Interest | Impaired or Unimpaired | Entitlement to Vote on the Plan | Projected Recovery under the Plan |
|---|---|---|---|---|---|
| A | Old Notes Claims | On the Effective Date or as soon as reasonably practicable thereafter in full and final satisfaction, settlement, release, and discharge of and exchange for each Allowed Old Notes Claim, each holder of an Allowed Old Notes Claim shall receive (a) US$ 750 principal amount of the New Notes for each US$ 1,000 principal amount of Old Notes validly tendered, and (b) additional New Notes that will be issued and delivered to capitalize the accrued and unpaid interest in respect of the Old Notes up to the Effective Date of the Plan | Impaired | Yes | 75% |
| B | Other Secured Claims | Each holder of an Allowed Other Secured Claim shall, at the election of the Debtor, (i) have the legal, equitable and contractual rights of such Holder Reinstated, or (ii) receive, at the option of the Debtor, (A) Cash in an amount equal to such Allowed Other Secured Claim, (B) the property of the Debtor that constitutes the collateral securing such Allowed Other Secured Claim, or (C) such other treatment as renders its Allowed Other Secured Claim Unimpaired. | Unimpaired | No (Deemed to accept) | 100% |
| C | General Unsecured Claims | Holders of Allowed Unsecured Claims shall receive Cash in an amount equal to such Allowed General Unsecured Claims on the later of the Effective Date or in the ordinary course of business of the Debtor in accordance with the terms of the particular transaction giving rise to such Allowed General Unsecured Claim. | Unimpaired | No (Deemed to accept) | 100% |
| D | Interests | The Interests in the Debtor shall be Reinstated. | Unimpaired | No (Deemed to accept) | 100% |

## DISCHARGE, INJUNCTIONS, EXCULPATION, AND RELEASES

4.      **Discharge of Claims and Termination of Interests.** Except as otherwise provided for in the

Plan and effective as of the Effective Date: (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor or any of its assets, property, or Estate; (b) the Plan shall bind all Holders of Claims and Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtor's liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtor, the Debtor's Estate, its successors and assigns, and its assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

5.      **Exculpation.** No Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim; provided, however, that the foregoing "exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted fraud, gross negligence, or willful misconduct; provided, further, that in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to, or in connection with, the Plan. The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of acceptances and rejections of the Plan and the making of distributions pursuant to the Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable, law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan**.**

6.      **Releases Under the Plan. THE PLAN CONTAINS RELEASES. PARTIES SHOULD BE AWARE THAT, IF THE PLAN IS CONFIRMED and if the Effective Date occurs, the Released Parties, as defined in Section 1.1.73 of the Plan and as reproduced below, will be receiving releases and certain parties will be giving releases and be bound by injunctions as set forth in Article VIII of the Plan, and with respect to the releases described in Article VIII of the Plan and reproduced below, they are automatically deemed to have consented to the release provisions of the Plan, if either vote to accept the Plan. For the avoidance of doubt, a Holder of a Claim or Interest that votes to accept the Plan shall be automatically deemed to have given the releases irrespective of whether such Holder elects to opt in to the Third-Party Release**

To provide additional information regarding the Third-Party Release, the following Sections of the Plan have been copied immediately below: Section 1.1.38 (Exculpated Claim); Section 1.1.39 (Exculpated Party); Section 1.1.73 (Released Party); Section 1.1.74 (Releasing Party); Section 8.2 (Discharge of Claims and Termination of Interests); Section 8.3 (Releases by the Debtor); Section 8.4 (Releases by the Releasing Parties); Section 8.5 (Exculpation); and Section 8.6 (Injunction). To the extent of any discrepancy between the following and the corresponding sections in the Plan, including any modifications or amendments thereto, the sections in the Plan control. Please carefully review the following.

<u>**Relevant Definitions:**</u>

"***Exculpated Claim***" means any Claim related to any act or omission in connection with, relating to, or arising out of the Debtor's in-court or out-of-court efforts to negotiate, enter into or implement the Chapter 11 Case, the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with or pursuant to the Disclosure Statement or the Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation, the administration and implementation of the Plan, or the distribution of property under the Plan.

"*Exculpated Party*" means each of the following in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; (c) the Trustee; (d) the Holders of Interests; and (e) with respect to each of the foregoing Entities in clauses (a) through (d) such Entity's predecessors, successors and assigns and current and former Affiliates, subsidiaries, officers, directors, members, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals.

"*Released Party*" means each of the following: (a) the Debtor; (b) the Trustee; (c) the Holders of Interests; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's successors and assigns, and current and former Affiliates, subsidiaries, officers, directors, members, stockholders, partners, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such.

"*Releasing Party*" means each of the following: (a) the Holders of Impaired Claims or Interests that (i) affirmatively vote to accept the Plan or (ii) abstain from voting on the Plan; (b) to the fullest extent permissible under applicable law, the Holders of Unimpaired Claims or Interests; (c) the Trustee; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's successors and assigns, and current and former Affiliates, subsidiaries, officers, directors, members, stockholders, partners, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such.

## Relevant Provisions:

Section 8.2 of the Plan provides for the discharge of Claims (the "**Discharge**"):

**Except as otherwise provided for herein and effective as of the Effective Date: (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor or any of its assets, property, or Estate; (b) the Plan shall bind all Holders of Claims and Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtor's liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtor, the Debtor's Estate, the Reorganized Debtor, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.**

Section 8.3 of the Plan provides for the Debtor's release of the Released Parties (the "**Debtor Release**"):

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise expressly provided herein, for good and valuable consideration, as of the Effective Date, to the extent permitted by applicable laws, the Released Parties are conclusively, absolutely, unconditionally, irrevocably, and forever deemed released and discharged by the Debtor, the Reorganized Debtor, and the Debtor's Estate from any and all actions, Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, asserted or that could possibly have been asserted on behalf of the Debtor, that the Debtor, Reorganized Debtor, or the Debtor's Estate, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating**

to, or in any manner arising from, in, or under, in whole or in part, the Debtor, the Chapter 11 Case, the Old Notes, the Old Notes Indenture, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests prior to or during the Chapter 11 Case, the negotiation, formulation, solicitation, or preparation of the Disclosure Statement, the Plan, the Plan Supplement, or related agreements, instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, however, that the foregoing provisions of this Section 8.3 shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction; provided further that nothing in this Section 8.3 shall release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement, or otherwise given effect under, the Plan, including the New Notes and any other agreement or document related thereto or entered into in connection therewith, as applicable.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this Section 8.3, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by this Section 8.3; (c) in the best interests of the Debtor and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to the Debtor asserting any Claim or Cause of Action released by this Section 8.3.

Section 8.4 of the Plan provides for the Releases by the Releasing Parties (the "**Third-Party Release**"):

As of the Effective Date, to the extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtor, the Reorganized Debtor, the Estate, the Released Parties and each such Entity's successors and assigns, current and former affiliates, subsidiaries, officers, directors, members, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such, and only if such Persons occupied any such positions at any time on or after the Petition Date, from any and all Claims, Interests, obligations, rights, liabilities, actions, causes of action, choses in action, suits, debts, demands, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including all claims and actions against any Entities under the Bankruptcy Code) whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity asserted or that could possibly have been asserted, or would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the Old Notes, the Old Notes Indenture, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Releasing Party, the restructuring of Claims and Interests prior to or during the Chapter 11 Case, the negotiation, formulation, solicitation, or preparation of the Disclosure Statement, the Plan, the Plan Supplement, or related agreements,

instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; **provided, however, that the foregoing provisions of this Section 8.4 shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction; provided further that nothing in this Section 8.4 shall release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement, or otherwise given effect under, the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this Section 8.4, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) important to the Plan; (b) in exchange for the good and valuable consideration provided by the Debtor, the Reorganized Debtor, the Estate and the Released Parties; (c) a good faith settlement and compromise of the Claims released by this Section 8.4; (d) in the best interests of the Debtor and all Holders of Claims and Interests; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; and (g) a bar to any Entity granting a release under this Section 8.4 from asserting any Claim or Cause of Action released by this Section 8.4.**

<u>Section 8.5</u> of the Plan provides for the exculpation of Exculpated Parties (the "**Exculpation**"):

**No Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim; provided, however, that the foregoing "exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted fraud, gross negligence, or willful misconduct; provided, further, that in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to, or in connection with, the Plan. The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of acceptances and rejections of the Plan and the making of distributions pursuant to the Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable, law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

<u>Section 8.6</u> of the Plan provides for a permanent injunction with respect to actions against the Released Parties and the Exculpated Parties (the "**Injunction**"):

**Except as otherwise provided herein or for obligations issued pursuant hereto, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 8.3 or Section 8.4, discharged pursuant to Section 8.2, or are subject to exculpation pursuant to Section 8.5 are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right**

to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, exculpated, or settled pursuant to the Plan.

## HEARING ON CONFIRMATION OF THE PLAN
## AND ADEQUACY OF THE DISCLOSURE STATEMENT

7.      The hearing to consider the adequacy of the Disclosure Statement, any objections to the Disclosure Statement, confirmation of the Plan, any objections thereto, and any other matter that may properly come before the Court shall be held before the Honorable _____, United States Bankruptcy Judge, in Room _ of the United States Bankruptcy Court, on _____ at : _____ ____.m. or as soon thereafter as counsel may be heard (the "**Confirmation Hearing**"). The Confirmation Hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date or dates at the Confirmation Hearing or at an adjourned Confirmation Hearing and will be available on the electronic case filing docket.

8.      The time fixed for the Confirmation Hearing and objections to confirmation of the Plan may be rescheduled by the Bankruptcy Court in the event that the Bankruptcy Court does not find compliance with the disclosure requirements. Notice of the rescheduled date or dates, if any, will be available on the electronic case filing docket.

9.      Any objections (each, an "**Objection**") to the Disclosure Statement and the Plan must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the Southern District of New York, (c) set forth the name of the objector, the nature and amount of any claims or interests held or asserted by the objector against the estate or property of the Debtor, the basis for the objection, and the specific grounds therefor, and (d) be filed with the Bankruptcy Court, with a copy delivered directly to Chambers, together with proof of service thereof, and served upon the following persons so as to be **actually received** on or before _____ _____, ___, at **4:30 p.m. (Eastern Time)**: (a) proposed counsel for the Debtor, Baker & McKenzie LLP, 1111 Brickell Avenue, 10th Floor, Miami, FL 33131; Attn: Paul J. Keenan Jr. and Reginald Sainvil; and Baker & McKenzie LLP, 452 Fifth Avenue, New York, NY 10018; Attn: Blaire Cahn (b) counsel to Trustee under the Old Notes, Marian Baldwin Fuerst, Norton Rose Fulbright, 1301 Avenue of the Americas, New York, NY 10019-6022; (c) the Office of the United States Trustee for Region 2, One Bowling Green, Suite 534, New York, New York 10004-1408; and (d) those entities who have filed a notice of appearance in the Chapter 11 Case. **UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

## SECTION 341(A) MEETING

10.      As part of the relief requested by the Debtor in connection with the filing of the Chapter 11 Case, the Debtor will request that the U.S. Trustee **NOT** be required to convene a meeting of creditors pursuant to section 341 of the Bankruptcy Code.  In the event that the Plan is not confirmed on or before 60 days form the Petition Date and the Bankruptcy Court determines that a meeting pursuant to Section 341(a) of the Bankruptcy Code (the "**Creditors' Meeting**") is warranted, the Debtor, after consultation with the Court and the Office of the United States Trustee, shall file and serve a notice of the date, time and place of the Creditors' Meeting.

YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, EXCULPATION, RELEASE, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.

Dated: _____ _____, 2024
          New York.  New York                        **BY ORDER OF THE COURT**


--------------------------------------------------------------------------------------------------------------------