DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Timothy Graulich
Angela M. Libby
Stephen D. Piraino
Moshe Melcer

*Counsel to the Ad Hoc Group of Noteholders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **CREDIVALORES – CREDISERVICIOS S.A.,** | **Case No. 24-10837 (DSJ)** |
| **Debtor.** | |

**THE AD HOC GROUP OF NOTEHOLDERS' LIMITED OBJECTION TO THE
SCHEDULING MOTION AND RESERVATION OF RIGHTS**

The ad hoc group of noteholders[1] (the "**Ad Hoc Group**") hereby files this limited objection to the Scheduling Motion (including approval of the proposed Solicitation Procedures) and reservation of rights (this "**Limited Objection and Reservation of Rights**"). In support of this Limited Objection and Reservation of Rights, the Ad Hoc Group respectfully represents as follows:

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Debtor's Motion for Entry of an Order (I) Scheduling a Combined Hearing To Consider the Adequacy of the Disclosure Statement and Confirmation of the Plan; (II) Approving the Form and Manner of Notice of The Combined Hearing; (III) Approving the Solicitation Procedures; (IV) Directing that a Meeting of Creditors Not Be Convened; and (V) Granting Related Relief* [ECF No. 19] (together with the exhibits thereto, the "**Scheduling Motion**"), or in the *Declaration of Jaime Francisco Buriticá Leal in Support of (I) the Chapter 11 Petition and First Day Pleadings and (II) Pursuant to Local Rule* 1007-2 [ECF No. 4] (the "**First Day Declaration**"), as applicable.

1.      The Ad Hoc Group[2] appreciates the Debtor's need to restructure its business and balance sheet, and has no objection to nearly all of the first day relief the Debtor is seeking, including all requested operational relief, and files this Limited Objection and Reservation of Rights solely to request an adjournment of consideration of the proposed Scheduling Order or, in the alternative, modifications to the proposed form of order to ensure that parties may raise objections to approval of the Solicitations Procedures.

2.      Following the Debtor's default on the Old Notes by failing to make the February 7, 2024 interest payment, the Ad Hoc Group, through its counsel and financial advisor, attempted to initiate a constructive dialogue with the Debtor's counsel on numerous occasions with respect to the Debtor's contemplated restructuring. Unfortunately, such efforts proved fruitless as the Debtor did not meaningfully engage with the Ad Hoc Group either prior to, during, or after the prepetition solicitation period.[3]

3.      Nor has the Ad Hoc Group been able to confirm that the Debtor negotiated the terms of its restructuring with any other third-party group of holders of the Old Notes and whether any additional consideration was offered to such third parties. Indeed, it is not apparent whether there was any meaningful representation by third-party holders of the Old Notes as part of the prepetition plan negotiation and solicitation process. Unlike most every "prepack", the Debtor has

---

[2] The undersigned counsel to the Ad Hoc Group is confirming holdings with the members of the Ad Hoc Group and intends to file a statement pursuant to Bankruptcy Rule 2019 (a "2019 Statement") in short order. As of filing, the undersigned counsel confirmed that current members of the Ad Hoc Group, funds managed by Moneda Asset Management, Vontobel Holding AG, A3E Capital SICAV, and First Geneva SICAV, collectively hold 13% of the Old Notes. However, during the solicitation period, holders of an aggregate 27% of the Old Notes had been working with the Ad Hoc Group and may, in the coming days, be included in the Ad Hoc Group's 2019 Statement.

[3] The Disclosure Statement and the Debtor's press releases regarding the exchange offer issued in February and March 2024 allude to an ad hoc committee of noteholders who support the Plan and helped negotiate the transactions contemplated thereby. For the avoidance of doubt, the referenced committee is not the Ad Hoc Group and the Ad Hoc Group has no knowledge of the identity of members of this purported committee.

not announced a restructuring support agreement with holders of the Old Notes, or otherwise provided evidence that there is broad-based support from the Old Notes for the proposed Plan.

4.  Rather, the Debtor solicited votes prepetition for a voluntary exchange of the Old Notes for new notes that would, among other terms, include a 4-year maturity extension and a principal haircut of 25%, in addition to a reduction in the current coupon. Having failed to achieve requisite 100% support for the exchange on an out-of-court basis, the Debtor now seeks to force holders of the Old Notes to accept such treatment through the Chapter 11 Case.

5.  Based on the Debtor's Voting Report, only $73,351,079.65 of Old Notes (34.8% of the total outstanding amount) have voted to accept the Plan, far short of the high-level of support characterized by the Debtor in its Scheduling Motion and other public filings. *See, e.g.*, Scheduling Motion ¶ 11. This is particularly concerning as the Debtor has explained that the sole purpose of this Chapter 11 Case is "to permit the restructuring of the [Old Notes] on the terms set forth in the Plan." First Day Decl. ¶ 3. The Plan contemplates that all claims other than the Old Notes would be unimpaired; even the Debtor's equity interests would be fully reinstated, and certain debt held by insiders of the Debtor and entitled to the same priority as the Old Notes would remain unimpaired. *See generally* First Day Declaration ¶ 50 (describing certain Related Party Transactions). Such a plan is of course only confirmable with the requisite votes of the only impaired class of holders—the Old Notes. Otherwise, the Plan provides an impermissible distribution to junior equity in stark violation to the absolute priority rule, and is otherwise unfair and inequitable in violation of section 1129(b) of the Bankruptcy Code.

6.  The Voting Report [ECF No. 23] indicates that more than $90 million in ballots were disqualified for a variety of reasons, the majority of which indicated a desire to reject the Plan (or apparently indicated no choice). While a limited number of affirmative votes were also

3

disqualified, the majority of these votes appear to be cast by an insider whose vote must be disregarded pursuant to section 1129(a)(10) of the Bankruptcy Code. Were the Ad Hoc Group's votes counted, the Plan would fail as there would be no impaired accepting class.[4]

7.  The Ad Hoc Group has a number of questions regarding both (1) the grounds for the purported disqualification of their ballots and (2) whether the solicitation procedures were adequately designed to give sufficient notice, clear instructions regarding voting and an opportunity to participate to holders of the Old Notes. When votes for a plan are solicited during a chapter 11 case, there is abundant notice of the voting procedures and sufficient opportunity for bondholders holding their interests through DTC to arrange to vote through their nominees. Where solicitation is conducted prepetition without the oversight of the U.S. Trustee and the Bankruptcy Court, as is the case here, it is paramount to ensure that solicitation procedures clearly enable creditor participation. This is especially true when, as here, junior and *pari passu* classes are unimpaired by the Plan.

8.  At this time, the Ad Hoc Group simply wishes to ensure that none of the relief granted on an emergency basis at the first day hearing impairs its ability to raise such concerns and work with the Debtor and the U.S. Trustee to ensure that the solicitation process fairly and accurately reflects the votes of the holders of the Old Notes, and to contest confirmation of the Plan, if appropriate.

---

[4] Based on the Voting Report, tabulated ballots rejecting the Plan totaled $16,921,620.35 of the principal amount of the Old Notes and tabulated ballots accepting of the Plan totaled $73,351,079.65 of the principal amount of the Old Notes. If just the rejecting ballots of the **only two** members of the Ad Hoc Group's were included in the tabulated rejections, which represents $28,259,000.00 of principal amount of the Old Notes as of the Voting Record Date, ballots accepting the Plan ($73,351,079.65) would yield only 61.88% of the total amount tabulated ballots (the sum of $16,921,620.35, $73,351,079.65, and $28,259,000.00, *i.e.* $118,531,700.00), lower than the two-thirds support required by the Bankruptcy Code. Of course, this percentage would only go down if all votes cast by the Ad Hoc Group were to be counted.

4

9. The Ad Hoc Group respectfully submits that adjourning consideration of Scheduling Order to facilitate such conversations would be not prejudice the Debtor and would avoid potentially wasting estate resources if it is determined that the Debtor needs to resolicit votes in the Chapter 11 Case prior to commencing a confirmation hearing.

10. Given that the Debtor did not file the Chapter 11 Case until May 16, 2024, six weeks after the Voting Deadline of April 3, 2024, the Debtor should not be prejudiced by a reasonable extension of its confirmation timeline. Furthermore, now that the Chapter 11 Case has commenced, the Debtor can benefit from the protection of the automatic stay from any creditor enforcement actions and engage in constructive dialogue with all other creditors, who are proposed to be unimpaired under the Plan.

11. In the event that the Court is not inclined to adjourn consideration of the Scheduling Order in full, then the Ad Hoc Group submits that parties' rights may be preserved by adjourning consideration of paragraphs 9-15 of the Scheduling Order or subjecting approval of those paragraphs to any objections that may be raised in connection with plan confirmation.

12. The Ad Hoc Group continues to review the Voting Report and reserves all rights in connection with the Scheduling Motion (including the Solicitation Procedures) and the confirmation of the Plan, and reserves all of its rights with respect thereto. The Ad Hoc Group looks forward to working with the Debtor and the U.S. Trustee in resolving any concerns with respect to the Solicitation Procedures and the tabulation of votes with respect to acceptances of the Plan.

Dated: May 20, 2024
      New York, New York

DAVIS POLK & WARDWELL LLP

By:  */s/ Timothy Graulich*

450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Timothy Graulich
Angela M. Libby
Stephen D. Piraino
Moshe Melcer

*Counsel to the Ad Hoc Group of Noteholders*

6