Paul J. Keenan Jr. (admitted *pro hac vice*)
Reginald Sainvil (admitted *pro hac vice*)
Baker & McKenzie LLP
1111 Brickell Avenue, 10th Floor
Miami, FL 33130
Telephone: 305-789-8900
Facsimile: 305-789-8953
Email: paul.keenan@bakermckenzie.com
        reginald.sainvil@bakermckenzie.com

Blaire Cahn
Baker & McKenzie LLP
452 Fifth Avenue
New York, NY 10018
Telephone: 212-626-4100
Facsimile: 212-310-1600
Email: blaire.cahn@bakermckenzie.com

*Proposed Counsel for the Debtor*
*and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CREDIVALORES – CREDISERVICIOS S.A., | Case No. 24-10837 (DSJ) |
| Debtor. | |

_____/

### DEBTOR'S APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF FTI CONSULTING CANADA ULC, AS FINANCIAL ADVISOR TO THE DEBTOR EFFECTIVE AS OF THE PETITION DATE

Credivalores – Crediservicios S.A., the above captioned debtor and debtor in possession (the "**Debtor**"), hereby submits this application (the "**Application**") for the entry of an order, substantially in the form attached hereto as **Exhibit A,** (the "**Proposed Order**"), pursuant to sections 105(a), 327(a), 328(a), and 330 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2014-1 and 2016- 1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**") authorizing the Debtor to employ and retain FTI

Consulting Canada ULC (together with its parent FTI Consulting, Inc. and its wholly owned subsidiaries, agents, and independent contractors, "**FTI**"), in the above-captioned Chapter 11 case (the "**Chapter 11 Case**") as its financial advisor, effective as of the Petition Date (as defined below) and (ii) granting such further relief as the Court deems just and proper.

In support of this Application, the Debtor relies upon and incorporates by reference the (i) *Declaration of Jaime Francisco Buriticá Leal in Support of (I) the Chapter 11 Petition and First Day Pleadings and (II) Pursuant to Local Rule 1007-2* [Doc. No. 4] (the "**First Day Declaration**") and (ii) *Declaration of Devi Rajani Villegas, Senior Managing Director of FTI* (the "**Rajani Declaration**") attached hereto as **Exhibit B.** In further support of this Application, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012 (Preska, C.J.).

2.      Venue is proper pursuant to 28 U.S.C. § 1408.

3.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Rule 7008 of the Bankruptcy Rules, the Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

4.      On the date hereof (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under the Bankruptcy Code with the Court. The Debtor continues to operate its business and

manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No creditors' committee has been appointed by the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**"), nor has a trustee or examiner been appointed in the Chapter 11 Case.

5.        The Debtor is a non-bank financial institution in Colombia offering a variety of flexible, specialized, and tailored credit and financing alternatives, including payroll deduction loans and insurance premium financing, to low- and middle-income segments of the Colombian population. Initially operating locally in Cali, Colombia, the Debtor steadily grew into other geographic regions throughout Colombia.

6.        The Debtor has historically funded costs and expenditures through a combination of cash generated from operations, equity issuances, and borrowing funded indebtedness. The Debtor recently experienced difficulty in raising sufficient cash to meet its obligations as they become due and has faced pressure with respect to its coupon and principal payments on its borrowings. Chief among the Debtor's obligations are notes (the "**Old Notes**") issued under that certain Indenture, dated February 7, 2020, between the Debtor and the Bank of New York Mellon.

7.        While the Debtor's business operations are strong, the Debtor has faced numerous headwinds in its efforts to raise the necessary funds in order to repay the Old Notes, and as a result, determined to improve its liquidity position through a refinancing of the Old Notes.

8.        Prior to the Petition Date, the Debtor commenced discussions with several holders of the Old Notes regarding a restructuring of the Old Notes that would extend the maturity of the Old Notes, reduce the Debtor's overall debt and interest burden, and strengthen the Debtor's capital by significantly reducing its refinancing requirements.

9.        On March 7, 2024, the Debtor launched an exchange offer and solicited votes from

all holders of the Old Notes to exchange the Old Notes (the "**Exchange Offer**") for newly issued Senior Secured Step-up Notes due 2029 (the "**New Notes**"), and on its Prepackaged Chapter 11 Plan (as may be amended, the "**Plan**") that would effectuate the financial restructuring, *i.e.*, the exchange of the Old Notes for the New Notes, on essentially the same terms as the Exchange Offer.

10.     The Plan consists of a plan of reorganization under Chapter 11 of the Bankruptcy Code that would result in the same transactions contemplated by the Exchange Offer, *i.e.*, the extension of the maturity of the Old Notes through the issuance of New Notes in order to reduce the Debtor's overall debt burden and interest expense burden.

11.     The voting deadline on the Plan was April 3, 2024 at 5:00 p.m. New York City time. As shown in the related declaration of the Debtor's solicitation agent, 85.34% in amount and 96.12% in number of the holders of the Old Notes that cast ballots on the Plan voted to accept the Plan.

12.     On the Petition Date, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code to effectuate the Plan, enhance liquidity, and solidify its long-term growth prospects and operating performance. The Plan provides that all claims other than those of the holders of the Old Notes are unimpaired.

13.     A detailed factual background of the Debtor's business and operations, as well as the events precipitating the commencement of this Chapter 11 Case, is more fully set forth in the First Day Declaration.

**<u>RELIEF REQUESTED</u>**

14.     By this Application, the Debtor seeks entry of the Proposed Order  pursuant to sections 105(a), 327(a), 328(a), 329 and 330  of the Bankruptcy Code, Rules 2014(a) and 2016 of the Bankruptcy Rules and Rules 2014-1 and 2016-1 of the Local Rules, authorizing it to employ and retain FTI as its financial advisor, effective as of the Petition Date, in accordance with the

terms and conditions set forth in that certain engagement agreement dated March 18, 2024, annexed hereto as **Exhibit C** (the "**Engagement Agreement**").

<u>**FTI'S QUALIFICATIONS**</u>

15.     The Debtor has determined that, in the exercise of its business judgment, FTI should be retained and is well qualified to serve as the Debtor's restructuring financial adviser. As detailed in the Rajani Declaration, FTI has a wealth of experience providing financial advisory services in restructurings and reorganizations and enjoys an excellent reputation for the services it has rendered in large and complex Chapter 11 cases on behalf of debtors and creditors throughout the United States and Latin America and is particularly well qualified to advise the Debtor during this Chapter 11 Case.  Furthermore, this FTI team has extensive experience in restructuring in the United States and Latin America, including its role as Financial Advisor to LATAM Airlines Group S.A., Automotores Gildemeister SpA, Inversiones Alsacia S.A. and Express de Santiago Uno S.A., all South American companies which reorganized under to a chapter 11 of the Bankruptcy Code.

16.     Accordingly, on March 18, 2024, FTI was engaged to provide certain services to the Debtor pursuant to the Engagement Agreement.  FTI has become intimately familiar with the Debtor's financial affairs, business operations, assets, contractual arrangements, capital structure, key stakeholders and other related material information.  Likewise, in providing prepetition services to the Debtor, FTI's professionals have worked closely with the Debtor's management, staff, and other advisors.  In particular, FTI has worked closely with the Debtor to analyze the Debtor's operations and financial positions, and to assist the Debtor in preparing for a smooth entry into and operation under the protections of Chapter 11.  FTI continues to assist the Debtor with the restructuring contemplated in this Chapter 11 Case. Accordingly, FTI has the necessary background to deal effectively and efficiently with many financial issues and problems that may

arise in the context of the Debtor's Chapter 11 Case.

17.     With its experienced professionals, and its understanding of the Debtor's financial history and business operations, FTI fulfills a critical need that complements the services to be provided by the Debtor's other professionals.  The Debtor's retention of FTI, with its resources and capabilities, together with its prepetition experience advising the Debtor, is crucial to the success of this Chapter 11 Case.  As such, the Debtor believes that it is in the estate's best interest to retain FTI for the purpose of providing the Debtor with restructuring support services in the Chapter 11 Case to maximize the value of its estate and reorganize successfully.

## SCOPE OF SERVICES

18.     Pursuant to the terms and conditions of the Engagement Agreement, FTI has provided and will continue to provide financial consulting and advisory services as FTI and the Debtor deem appropriate and feasible in order to advise the Debtor in the course of the Chapter 11 Case, including the following:[1]

### PRE-FILING ACTIVITIES:

1)     Assistance with Chapter 11 Bankruptcy preparation, including but not limited to:

    a)     Creditor Matrix Development;

    b)     Voluntary Petitions and Motions support including the related schedules;

    c)     First Day Motion Development;

    d)     First Day Declaration;

    e)     Accounting System/ Invoice Cut-off; and

---

[1] The summary of the services and the other Engagement Agreement terms included in the Application is provided for purposes of convenience only and is qualified in its entirety by reference to the Engagement Agreement. To the extent that this Application and the terms of the Engagement Agreement are inconsistent, the terms of the Engagement Agreement shall control.

f)      Cash Payment/ Controls Implementation.

2)      Prepare the liquidation analysis for purposes of the Chapter 11 disclosure statement.

3)      If necessary, assistance with preparation of 13-week cash flows taking into account an in-court bankruptcy filing.

4)      Other customary related services as may be requested by counsel or the Company.

## POST FILING ACTIVITIES

1)      If necessary, the preparation of the Statement of Financial Affairs and Statement of Assets and Statement of Liabilities.

2)      Support for "Second Day" Motions as required.

3)      Tracking and implementation of first day orders.

4)      Continue to manage liquidity and update the 13-week cash flows, including any and all of the required reporting (both for court) and assist with ongoing negotiations with stakeholders as required.

5)      Preparation of Monthly Operating Reports.

6)      Other customary related services as may be requested by counsel or the Company.

## NO DUPLICATION OF SERVICES

19.     The services of FTI will complement and not duplicate the services rendered by any other professional retained in this Chapter 11 case.  As set forth in the Rajani Declaration, FTI understands that the Debtor has retained and may retain additional professionals during the term of FTI's engagement and agrees to work cooperatively with such professionals to integrate any respective work conducted by all professionals on behalf of the Debtor.  FTI is providing distinct and specific financial advising and consulting services as set forth in the Engagement Agreement, and such services are not expected to duplicate those to be provided by any other consultants, legal advisors or investment bankers, including, without limitation, the law firm Baker & McKenzie LLP ("**Baker McKenzie**").  FTI, in consultation with the Debtor and Baker McKenzie will use reasonable efforts to coordinate with the Debtor and the other professionals retained in this Chapter

11 Case to avoid the unnecessary duplication of services.

## **PROFESSIONAL COMPENSATION**

20.     In consideration of the services to be provided by FTI, subject to this Court's approval, the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any applicable orders of the Court, and pursuant to the terms and conditions of the Engagement Agreement, the Debtor has agreed to: (a) compensate FTI for the services set forth in the Engagement Agreement on an hourly basis in accordance with FTI's ordinary and customary rates in effect on the date such services are rendered and (b) reimburse actual and necessary costs and expenses incurred by FTI in connection with the services performed on behalf of the Debtor (collectively, the "**Fee and Expense Structure**").

21.     The Engagement Agreement contemplates that FTI professionals will charge the following hourly rates, subject to periodic adjustments:

| Billing Category | Hourly Billing Rate ($USD) |
|---|---|
| Senior Managing Director | $1,095 - $1,495 |
| Directors / Senior Directors / Managing Directors | $825 - $1,110 |
| Consultants/Senior Consultants | $450 - $790 |
| Administrative / Paraprofessionals | $185 - $370 |

22.     The rates set forth above reflect FTI's normal and customary billing practices for engagements of this complexity and magnitude.  FTI revises its hourly rates periodically. Furthermore, to the extent FTI uses employees of its U.S. parent or its affiliates it will charge standard hourly rates for such employees, which fall within the above ranges.  FTI will maintain time records in conformity with the Fee Guidelines (as defined below).

23.     Pursuant to the Engagement Agreement, in the event of a prepackaged bankruptcy

filing, the Debtor agreed to pay FTI a fixed fee of $450,000 for services performed before the filing of the Debtor's chapter 11 petition for relief (the "**Fixed Fee**"). The Debtor paid the Fixed Fee in two installments: $100,000 on March 26, 2024 and $350,000 on May 10, 2024. FTI was not and is not owed any other amounts by the Debtor for services provided before the Petition Date.

24.     For post petition period, the Engagement Agreement provides that FTI will bill its regular hourly rates for professional services performed and for reasonable and documented direct expenses which are incurred on the Debtor's behalf during this engagement. These direct expenses include reasonable and customary and documented out-of-pocket expenses, which are billed directly to the engagement such as internet access, telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to this engagement. The Debtor respectfully submits that FTI's rates and policies are reasonable.

25.     If any FTI employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to the engagement, the Debtor will compensate FTI at its regular hourly rates and reimburse FTI for reasonable direct expenses (including counsel fees) with respect thereto.

26.     The Debtor understands and has agreed that FTI hereafter will apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the General Order M-412 (*Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals*, dated December 21, 2010 (Gonzalez, C.J.)), Administrative Order M-447 (*Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, dated January 29, 2013 (Morris, C.J.)) (collectively, the "**Fee Guidelines**"), and make a reasonable effort to comply with the U.S. Trustee's requests for

information and additional disclosures, the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and any applicable orders of the Court, both in connection with this Application and any interim and final fee applications to be filed by FTI in this Chapter 11 Case.

27.     FTI will provide reasonable notice to the Debtor, the U.S. Trustee, and any statutory committee appointed in the Chapter 11 Case of any generally applicable increase of FTI's hourly rates set forth in the Rajani Declaration.

28.     FTI has not shared or agreed to share any of its compensation from the Debtor or any other person, other than as permitted by section 504 of the Bankruptcy Code. No promises have been received by FTI as to compensation in connection with this Chapter 11 Case, other than as set forth in the Engagement Agreement.

29.     Pursuant to the Debtor's request, FTI has agreed to serve as financial advisor to the Debtor on and after the Petition Date with assurances that the Debtor would seek approval of its employment and retention effective as of to the Petition Date, so that FTI may be compensated for its pre-Application services. No party in interest will be prejudiced by the granting of this Application as of the Petition Date because FTI has provided and continues to provide valuable services to the Debtor's estate in the interim period.

## INDEMNIFICATION PROVISIONS

30.     Except for the indemnification and liability limiting paragraphs in sections 6.1 and 6.2 of the Terms & Conditions attached to the Engagement Agreement (together, the "**Indemnification Provisions**") or as otherwise set forth herein, no other provision in the attached pre-petition Engagement Agreement governs the post-petition engagement of FTI. During the pendency of the Debtor's Chapter 11 Case until the earlier of (i) the effective date of a chapter 11 plan approved by the Court and (ii) the entry of an order closing the Chapter 11 Case, the

Engagement Letter's indemnification provisions are subject to the following:

(a) FTI shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services provided under the Engagement Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

(b) Notwithstanding anything to the contrary in the Engagement Agreement, the Debtor shall have no obligation to indemnify FTI, or provide contribution or reimbursement to FTI, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from FTI's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtor alleges the breach of FTI's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to applicable law, or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which FTI should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified; and

(c) If, before the earlier of (i) the effective date of a chapter 11 plan in the Chapter 11 Case or (ii) the entry of an order closing the Chapter 11 Case, FTI believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution, or reimbursement obligations under the Engagement Agreement (as modified by this Order), including without limitation the advancement of defense costs, FTI must file an application therefor in this Court, and the Debtor may not pay any such amounts to FTI before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by FTI for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify FTI. All parties in interest shall retain the right to object to any demand by FTI for indemnification, contribution, or reimbursement.

31.     The terms of the Engagement Agreement, including the Indemnification Provisions, were negotiated between the Debtor and FTI at arm's length, and the Debtor respectfully submits that the Indemnification Provisions, as modified by the Proposed Order, are customary, reasonable and in the best interests of the Debtor, its estate and creditors. Accordingly, as part of this Application, the Debtor requests that this Court approve the Engagement Agreement as modified by the Proposed Order.

## FTI'S DISINTERESTEDNESS

32.     FTI has informed the Debtor that, to the best of FTI's knowledge, information, and belief, other than as set forth in the Rajani Declaration, FTI: (a) has no connection with the Debtor, its creditors, its equity security holders or other parties in interest or their respective attorneys or accountants, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any United States district judge or bankruptcy judge in this district in any matter related to the Debtor and its estate; (b) does not hold any interest adverse to the Debtor's estate; and (c) believes that it is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14). FTI has not provided, and will not provide, any professional services to any creditor or party-in-interest, or their respective attorneys and accountants with regard to any matter related to the Chapter 11 Case. If any new material facts or relationships are discovered or arise, FTI will inform the Court as required by Bankruptcy Rule 2014(a).

33.     FTI has agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with the Chapter 11 Case.

## BASIS FOR RELIEF REQUESTED

34.     The Debtor seeks authority to retain and employ FTI as its financial advisor under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b). As discussed above and as further detailed in the Rajani Declaration,

to the best of the Debtor's knowledge, FTI is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and does not hold or represent an interest adverse to the Debtor's estate.

35.     The Debtor believes that the Fee and Expense Structure is reasonable and market-based and should be approved under section 327 of the Bankruptcy Code. The Fee and Expense Structure adequately reflects: (i) the nature of the services to be provided by FTI and (ii) the fees and expenses and indemnification provisions typically utilized by FTI and other leading financial advisory and consulting firms. FTI intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with this case pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code and applicable Bankruptcy Rules, Local Bankruptcy Rules, the Fee Guidelines, and any other applicable procedures and orders of the Court, with certain limited modifications as set forth in the Proposed Order.

36.     In light of the foregoing, the Debtor submits that the relief requested in the Application is in the best interest of its estate and creditors and the Court should approve the retention and employment of FTI pursuant to the terms set forth herein and in the Engagement Agreement.

## NOTICE

37.     Notice of this Application will be given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee for the Southern District of New York (Attn: Greg Zipes and Rachael Siegel); (b) the holders of the 20 largest unsecured claims against the Debtor; (c) counsel to the Indenture Trustee for the Old Notes, Norton Rose Fulbright (Attn: Marian Baldwin Fuerst and Francisco Vazquez), (d) all parties that, as of the filing of this Application, have requested notice in this Chapter 11 Case pursuant to Bankruptcy Rule 2002; and (e) any other party entitled to notice pursuant to Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York. In light of the nature of the relief requested, no other or further notice need be given.

## **NO PRIOR REQUEST**

38.     No prior request for the relief requested herein has been made to this or any other court.

## **CONCLUSION**

WHEREFORE, for the reason set forth herein the Debtor respectfully requests that this Court (a) enter an order, substantially in the form attached hereto as **Exhibit A** and grant such other and further relief as is just and proper.

Dated: June 5, 2024

Credivalores – Crediservicios S.A.

_____
Jaime Francisco Buriticá Leal
Chief Executive Officer

## <u>EXHIBIT A</u>

## Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:                                                    Chapter 11

CREDIVALORES – CREDISERVICIOS S.A.,                       Case No. 24-10837 (DSJ)

      Debtor.

_____/

## ORDER AUTHORIZING DEBTOR TO RETAIN AND EMPLOY
## FTI CONSULTING CANADA ULC, AS FINANCIAL ADVISOR
## EFFECTIVE AS OF THE PETITION DATE

Upon the Application[1] of Credivarlores – Crediversicios S.A., the debtor and debtor-in-possession in the above-captioned case (the "**Debtor**"),[2] for entry of an order (this "**Order**") authorizing Debtor's retention and employment of FTI Consulting Canada ULC ("**FTI**") as the Debtor's financial advisor, effective as of the Petition Date, in accordance with the terms and conditions set forth in the Engagement Agreement, all as more fully set forth in the Application; and upon the *Declaration of Jaime Francisco Buriticá Leal in Support of (I) the Chapter 11 Petition and First Pleadings and (II) Pursuant to Local Rule 1007-2* [Doc. No. 4] and the *Declaration of Devi Rajani Villegas, Senior Managing Director of FTI* attached to the Application as **Exhibit B**; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York dated January 31, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. § 1408; and the Court having found that the relief requested in the Application is in the best interests of the

---

[1] All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Application.

Debtor, its estate, its creditors and other parties in interest; and the Court having found that the Debtor's notice of the Application and opportunity for a hearing on the Application was appropriate and no other notice need be provided; and the Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before the Court (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Application and on the record of the Hearing establish just cause for the relief granted herein; and all objections to the Application (if any) having been withdrawn or overruled; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1. The Application is GRANTED to the extent set forth herein.

2. The Debtor is authorized, pursuant to sections 105(a), 327(a), 328(a), 329 and 330 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Bankruptcy Rules 2014-1 and 2016-1, to retain and employ FTI as its financial advisors in accordance with the terms and conditions of the Engagement Agreement, as modified herein or by the Bankruptcy Rules or Court orders, effective as of the Petition Date, and to pay fees and reimburse expenses to FTI on the terms set forth in the Engagement Agreement.

3. The terms of the Engagement Agreement, as modified by this Order, are approved in all respects except as limited or modified herein.

4. Notwithstanding anything to the contrary in the Engagement Agreement or the Application, to the extent that the Debtor requests FTI to perform any services other than those detailed in the Engagement Agreement, the Debtor shall seek further approval by the Court by an application that shall set forth the additional services to be performed and the additional fees sought to be paid.

5.    Notwithstanding anything to the contrary in the Engagement Agreement or the Application, to the extent that FTI seeks any termination of services, FTI shall seek further approval by the Court by an application that shall set forth the termination of services sought.

6.    Notwithstanding anything to the contrary contained herein or in the Application or Engagement Agreement, FTI shall file interim and final fee applications for allowance of compensation and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other Orders of the Court.

7.    Prior to any increase in FTI 's rates, FTI shall file a notice with the Court and provide ten (10) days' notice to the Debtor and any official committee, which notice shall explain the basis for the requested rate increase in accordance with section 330(a)(3)(F) of the Bankruptcy Code and state whether the Debtor has consented to the rate increase. The U.S. Trustee retains all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code, and all rate increases are subject to review by the Court.

8.    Notwithstanding anything to the contrary in the Application or Engagement Agreement, to the extent that FTI uses the services of independent contractors or employees of foreign affiliates (collectively, the "**Contractors**") in the Chapter 11 Case, FTI (i) shall pass-through the cost of such Contractors to the Debtor at the same rate that FTI pays the Contractors; (ii) shall seek reimbursement for actual out-of-pocket expenses only; and (iii) shall ensure that the Contractors are subject to the same conflict checks and disclosures as required of professionals by Bankruptcy Rule 2014.

9.    FTI shall use its best efforts to avoid any duplication of services provided by any of the Debtor's other retained professionals in this Chapter 11 Case.

10.     The limitation of liability section in paragraph 6.2 of the Standard Terms and Conditions attached to the Engagement Agreement shall be of no force or effect with respect to the engagement authorized by this Order.

11.     The Indemnification Provisions are subject to the following during the pendency of the Debtor's Chapter 11 Case until the earlier of (i) the effective date of a chapter 11 plan approved by the Court and (ii) the entry of an order closing the Chapter 11 Case:

(a)     FTI shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services provided under the Engagement Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

(b)     Notwithstanding anything to the contrary in the Engagement Agreement, the Debtor shall have no obligation to indemnify FTI, or provide contribution or reimbursement to FTI, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from FTI's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtor alleges the breach of FTI's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to applicable law, or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which FTI should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified; and

(c)     If, before the earlier of (i) the effective date of a chapter 11 plan in the Chapter 11 Case or (ii) the entry of an order closing the Chapter 11 Case, FTI believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution, or reimbursement obligations under the Engagement Agreement (as modified by this Order), including without limitation the advancement of defense costs, FTI must file an application therefor in this Court, and the Debtor may not pay any such amounts to FTI before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by FTI for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify FTI. All parties in interest shall retain the right to object to any demand by FTI for indemnification, contribution, or reimbursement.

12.     To the extent there may be any inconsistency between the terms of the Application, the Engagement Agreement, and this Order, this Order shall govern.

13.     Notice of the Application is adequate under Bankruptcy Rule 6004(a).

14.     The Debtor is authorized to take all action necessary to effectuate the relief granted in this Order.

15.     This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Application or the implementation, interpretation or enforcement of this Order.

Dated: _____, 2024
      New York, New York

                                                    _____
                                                    THE HONORABLE DAVID S. JONES
                                                    UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Rajani Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:                                                    Chapter 11

CREDIVALORES – CREDISERVICIOS S.A.,           Case No. 24-10837 (DSJ)

        Debtor.

_____/

## DECLARATION OF DEVI RAJANI VILLEGAS IN SUPPORT OF
## THE APPLICATION OF DEBTOR FOR ENTRY OF AN ORDER AUTHORIZING
## RETENTION AND EMPLOYMENT OF FTI CONSULTING CANADA ULC AS
## FINANCIAL ADVISOR EFFECTIVE AS OF THE PETITION DATE

I, Devi Rajani Villegas, make this declaration pursuant to 28 U.S.C. § 1746 and state as follows:

1.      I am a Senior Managing Director at FTI Consulting Canada ULC a financial advisory services firm that is owned by FTI Consulting, Inc., a financial advisory services firm with numerous offices throughout the United States and similar subsidiaries that perform similar services throughout the world (collectively "**FTI**"). I am duly authorized to make this declaration (the "**Declaration**") on behalf of FTI and submit this Declaration in support of the Debtor's application (the "**Application**"),[1] pursuant to section 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Bankruptcy Rules 2014-1 and 2016-1, for authority to retain and employ FTI, as financial advisors to the Debtor, effective as of the date hereof (the "**Petition Date**") upon the terms and conditions set forth in the Application and the Engagement Agreement.

2.      Except as otherwise stated in the Application, I have personal knowledge of the facts set forth herein and, if called as a witness, I would testify thereto. Certain of the disclosures set forth herein are related to matters within the knowledge of other employees of FTI and are based on information provided to me by them.

---

[1] All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Application.

## FTI'S QUALIFICATIONS

3.      FTI has a wealth of experience in providing financial advisory services in complex restructurings and reorganizations.  FTI enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States and Latin America.  FTI's expertise includes liquidity and capital structure assessment, debt and equity restructuring advice, and identification of reorganization alternatives.  FTI has significant experience assisting distressed companies with day-to-day management activities, including development of *pro forma* financial statements and business plans, cash flow management, implementation of liquidity-enhancing and cost-saving strategies, as well as preparing the Debtor for its Chapter 11 Case.

4.      Accordingly, on March 18, 2024, FTI was engaged to provide certain services to the Debtor pursuant to the Engagement Agreement.  FTI has become intimately familiar with the Debtor's financial affairs, business operations, assets, contractual arrangements, capital structure, key stakeholders and other related material information.  Likewise, in providing prepetition services to the Debtor, FTI's professionals have worked closely with the Debtor's management, and other advisors, analyzing the Debtor's obligations to vendors, suppliers and service providers, preparing for the Debtor's Chapter 11 filing and first day relief, developing and implementing strategies for communications with internal and  external stakeholders, and preparing financial analysis and planning.  In particular, FTI has worked closely with the Debtor to analyze the Debtor's financial positions and to assist the Debtor in preparing for a smooth entry into and operation under the protections of chapter 11. FTI continues to assist the Debtor with the restructuring contemplated in this Chapter 11 Case.  Accordingly, FTI has the necessary background to deal effectively and efficiently with many financial issues and problems that may arise in the context of the Debtor's Chapter 11 Case.

5.      Pursuant to the terms and conditions of the Engagement Agreement, FTI has provided and agreed to continue providing the following financial advisory and consulting services:[2]

**PRE-FILING ACTIVITIES:**

1) Assistance with Chapter 11 Bankruptcy preparation, including but not limited to:

   a)      Creditor Matrix Development;

   b)      Voluntary Petitions and Motions support including the related schedules;

   c)      First Day Motion Development;

   d)      First Day Declaration;

   e)      Accounting System/ Invoice Cut-off; and

   f)      Cash Payment/ Controls Implementation.

2) Prepare the liquidation analysis for purposes of the Chapter 11 disclosure statement.

3) If necessary, assistance with preparation of 13-week cash flows taking into account an in-court bankruptcy filing.

4) Other customary related services as may be requested by counsel or the Company.

**POST FILING ACTIVITIES:**

1) If necessary, the preparation of the Statement of Financial Affairs and Statement of Assets and Statement of Liabilities.

2) Support for "Second Day" Motions as required.

3) Tracking and implementation of first day orders.

4) Continue to manage liquidity and update the 13-week cash flows, including any and all of the required reporting (both for court) and assist with ongoing negotiations with stakeholders as required.

---

[2] The summary of the services and the other Engagement Agreement terms included in the Application is provided for purposes of convenience only and is qualified in its entirety by reference to the Engagement Agreement. To the extent that this Application and the terms of the Engagement Agreement are inconsistent, the terms of the Engagement Agreement shall control.

5) Preparation of Monthly Operating Reports.

6) Other customary related services as may be requested by counsel or the Company.

## NO DUPLICATION OF SERVICES

6.     FTI understands that the Debtor has retained and may retain additional professionals during the term of the engagement and agrees to work cooperatively with such professionals to integrate any respective work conducted by all professionals on behalf of the Debtor. I believe that FTI is providing distinct and specific financial advising and consulting services, and such services are not expected to duplicate those to be provided by any other consultants or advisors, including, without limitation, the law firm of Baker & McKenzie LLP ("**Baker McKenzie**"). FTI, in consultation with the Debtor, will ensure that the scope of the work it undertakes does not overlap materially with that performed by other professionals retained by the Debtor.

## PROFESSIONAL COMPENSATION

7.     In consideration of the services to be provided by FTI, subject to this Court's approval, the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any applicable orders of the Court, and pursuant to the terms and conditions of the Engagement Agreement, the Debtor has agreed to: (i) compensate FTI for the services set forth in the Engagement Agreement on an hourly basis in accordance with FTI's ordinary and customary rates in effect on the date such services are rendered and (ii) reimburse actual and necessary costs and expenses incurred by FTI in connection with the services performed on behalf of the Debtor (collectively, the "**Fee and Expense Structure**").

| Billing Category | Hourly Billing Rate ($USD) |
|---|---|
| Senior Managing Director | $1,095 - $1,495 |
| Directors / Senior Directors / Managing Directors | $825 - $1,110 |
| Consultants/Senior Consultants | $450 - $790 |
| Administrative / Paraprofessionals | $185 - $370 |

8.      The rates set forth above reflect FTI's normal and customary billing practices for engagements of this complexity and magnitude.  FTI revises its hourly rates periodically. Furthermore, to the extent FTI uses employees of its U.S. parent or its affiliates it will charge standard hourly rates for such employees, which fall within the above ranges.  FTI will maintain time records in conformity with the Fee Guidelines.

9.      Pursuant to the Engagement Agreement, in the event of a prepackaged bankruptcy filing, the Debtor agreed to pay FTI a fixed fee of $450,000 for services performed before the filing of the Debtor's Chapter 11 petition for relief (the "**Fixed Fee**"). The Debtor paid the Fixed Fee in two installments: $100,000 on March 26, 2024 and $350,000 on May 10, 2024. FTI was not and is not owed any other amounts by the Debtor for services provided before the Petition Date.

10.     I, as Senior Managing Director, will lead and supervise the FTI engagement team, and my currently hourly rate is $1,180.

11.     FTI revises its hourly rates periodically.  To the extent FTI uses employees of its parent or affiliates during this engagement, FTI will charge standard hourly rates for each such employee which are within the above ranges of hourly rates.

12.     Except as set forth above, the Debtor did not make any other payments to FTI during the ninety-day period prior to the Petition Date, and FTI is not a prepetition creditor of the

Debtor. A summary of payments invoiced and received by FTI in the ninety-day period prior to the Petition Date is set forth in Schedule C annexed hereto.

13.     In addition to the fees outlined above, FTI will bill for reasonable and documented direct expenses which are incurred on the Debtor's behalf during this Engagement. Direct expenses include reasonable and customary and documented out-of-pocket expenses which are billed directly to the engagement such as internet access, telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to this engagement.

14.     If any FTI employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating this engagement, the Debtor will compensate FTI at its regular hourly rates and reimburse FTI for reasonable direct expenses (including counsel fees) with respect thereto.

15.     I believe that the Fee and Expense Structure is reasonable, market-based, and comparable to that of financial advisors and consultants of similar stature to FTI for comparable engagements, both in and out of chapter 11. The Fee and Expense Structure is consistent with FTI's normal and customary billing practices for comparably-sized and complex cases and transactions, both in and out of court, involving the services to be provided in connection with this Chapter 11 Case. Moreover, the Fee and Expense Structure is consistent with and typical of arrangements entered into by FTI and other financial advisory and consulting firms with the rendering of comparable services to clients such as the Debtor.

16.     Further, FTI will provide reasonable notice to the Debtor, the U.S. Trustee, and any statutory committee appointed in the Chapter 11 Case of any generally applicable increase of FTI's hourly rates as set forth herein. FTI also intends to comply with the Fee Guidelines (as defined in the Application) and make a reasonable effort to comply with the U.S. Trustee's requests for

information and additional disclosures, both in connection with the Application and the interim and final fee applications to be filed by FTI in this Chapter 11 Case.

17.      To the best of my knowledge, (i) no commitments have been made or received by FTI with respect to compensation or payment in connection with this case other than in accordance with the provisions of the Bankruptcy Code and (ii) FTI has no agreement with any other entity to share with such entity any compensation received by FTI in connection with this case.

## FTI'S DISINTERESTEDNESS

18.      In connection with the preparation of this Declaration, FTI conducted a review of its contacts with the Debtor, its affiliates, and certain entities holding large claims against or interests in the Debtor that were made reasonably known to FTI. A listing of the parties reviewed is reflected on **Schedule <u>A</u>** to this Declaration. FTI's review, completed under my supervision, consisted of a query of the Schedule A parties within an internal computer database[3] containing names of individuals and entities that are present or recent former clients of FTI. A summary of such relationships that FTI identified during this process is set forth on **<u>Schedule B</u>** to this Declaration.

19.      Based on the results of its review, FTI does not have a relationship with any of the parties on Schedule A in matters related to the Debtor or this Chapter 11 Case. FTI has provided and could reasonably be expected to continue to provide services unrelated to the Debtor's Chapter 11 Case for the various entities shown on Schedule B. FTI's assistance to these parties has been related to providing various financial restructuring, litigation support, technology, strategic communications, and economic consulting services. To the best of my knowledge and except as otherwise disclosed herein, no services have been provided to these parties in interest that involve

---

[3] For the avoidance of doubt, FTI's computer database covers FTI Consulting, Inc. and its wholly-owned subsidiaries globally, including FTI Consulting Canada ULC.

their rights in the Debtor's Chapter 11 Case, nor does FTI's involvement in the Chapter 11 Case compromise its ability to continue such consulting services.

20.    As part of its diverse practice, FTI appears in numerous cases, proceedings, and transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who may represent claimants and parties-in-interest in the Debtor's Chapter 11 Case. Also, FTI has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in the Chapter 11 Case. In addition, FTI has in the past, may currently, and will likely in the future be working with or against other professionals involved in the Chapter 11 Case in matters unrelated to the Debtor and the Chapter 11 Case. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests adverse to the Debtor in matters upon which FTI is to be employed and none are in connection with the Debtor's Chapter 11 Case.

21.    FTI is not a "creditor" of the Debtor within the meaning of Bankruptcy Code section 101(10). Further, neither I nor any other member of the FTI engagement team serving the Debtor, to the best of my knowledge, (a) is a creditor, equity security holder, or insider of the Debtor; (b) is or has been within two years before the Petition Date, a director, officer, or employee of any of the Debtor; or (c) has any interest materially adverse to the interests of the Debtor's estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason. As such, to the best of my knowledge and based upon the results of the relationship search described above and disclosed herein, FTI (i) is a "disinterested person" as defined in Bankruptcy Code section 101(14) and (ii) neither holds nor represents an interest adverse to the Debtor or its estate. Therefore, FTI

believes it is eligible to represent the Debtor under Bankruptcy Code section 327(a).

22.      It is FTI's policy and intent to update and expand its ongoing relationship search for additional parties in interest in an expedient manner. If any new material relevant facts or relationships are discovered or arise, FTI will file a supplemental declaration pursuant to Bankruptcy Rule 2014(a).

23.      I have read the Application and, to the best of my knowledge, information and belief, the contents of the Application are true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: June 5, 2024               FTI CONSULTING CANADA ULC

By: */s/ Devi Rajani Villegas*
     Devi Rajani Villegas
     Senior Managing Director

## Schedule A

## Potential Parties-in-Interest

**Debtor**
- Credivalores – Crediservicios S.A.

**Current and Former Officers & Directors of the Debtor and Its Non-Debtor Affiliates (3-year lookback)**
- Carlos Eduardo Meza Guarnizo
- Gustavo Adrián Ferraro
- Jaime Francisco Buriticá Leal
- José Miguel Knoell Ferrada
- Juan Manuel Trujillo Sánchez
- Luis María Blaquier

**Top Unsecured Creditors**
- Alcaldia del Municipio
- American Smart System & Networks Ltda
- Americas Business Process Services SA
- Axesnet SAS BIC
- BAN100 S.A
- Banco de Bogota
- Banco de Occidente
- Bancolombia, S.A.
- Bank of New York Mellon as trustee of the unsecured notes due in 2025
- BRC Ratings - S Global S.A. Sociedad Calificadora de Valores
- Cardif Colombia Seguros Generales S.A.
- Central de Cobranzas SAS
- Cirion Technologies Colombia S.A.S
- Cobranza Nacional de Creditos S.A.S
- Contact Finanzas S.A.S
- Credibanco SA
- Cuatrecasas, Goncalves Pereira S.A.S
- Cybertech de Colombia LTDA
- Delima Marsh
- Dirección de Impuestos Nacionales DIAN
- Econtact Col SAS
- Experian Colombia SA
- Fiducolombia Sociedad Fiduciaria S.A.
- Finanza Inversiones S.A.S
- Finleco B P O SAS
- Fondo Nacional de Garantias
- Gomez Higuera Asociados SAS
- Grupo Consultor RA SAS
- Heinsohn Business Technology SA

- Inter Notes Euro Commercial Paper Program
- Interlan SAS
- IT Business & Finances Colombia SAS
- JJ Cobranzas y Abogados SAS
- Liberty Networks de Colombia S.A.S
- Mapfre Colombia Vida Seguros SA
- Metlife Colombia Seguros de Vida S.A
- Milenio PC SA
- Oracle Colombia LTDA
- Paul Hastings
- Pro Capital Sociedad de Bolsa SA
- Procesos & Canje SA
- Puntualmente SAS
- PWC Contadores y Auditores SAS
- Secretaria de Hacienda
- Sistema G & G SA
- Softwareone Colombia S.A.S
- Sonda de Colombia S A
- Systemgroup S.A.S
- Vision Software S.A.

**Lessors**
- A. Parra y CIA S EN C
- Caja de Sueldos de Retiro de La Policía Nacional
- Colventas S.A
- Empresa Inmobiliaria Cundinamarquesa
- Felipe Andres Martinez Moreno
- Imobiliaria e Ingenieria Arana & CIA S EN C
- Inmobiliaria Tonchala S.A.S
- Jorge Giraldo & CIA
- Miguel Angel Borrero Castiblanco
- Patrimonio Autónomo Estrategias Inmobiliarias
- Ricardo Leon Gomez
- Roger Augusto Paternina Villareal
- Vive de Lujo Valledupar S.A.S

**Material Contract Counterparties**
- A. Parra y CIA S EN C
- Caja de Sueldos de Retiro de La Policía Nacional
- Colventas S.A
- Empresa Inmobiliaria Cundinamarquesa

- Felipe Andres Martinez Moreno
- Fitch Ratings Inc
- Imobiliaria e Ingenieria Arana & CIA S EN C
- Inmobiliaria Tonchala S.A.S
- Jorge Giraldo & CIA
- Miguel Angel Borrero Castiblanco
- Patrimonio Autónomo Estrategias Inmobiliarias
- Ricardo Leon Gomez
- Roger Augusto Paternina Villareal
- Vive de Lujo Valledupar S.A.S

**Insurance Companies and Brokers/Agents**
- Allianz Seguros S.A.
- Cardif Colombia Seguros Generales S.A.
- Chubb Seguros Colombia S.A.
- Panamerican Life de Colombia Compañía de Seguros, S.A.
- Seguros Generales Suramericana S.A.
- Seguros SURA Colombia

**Secured Creditors**
- Ban100 S.A.
- Banco de Bogotá S.A.
- Banco de Occidente S.A.
- Banco Santander de Negocios Colombia S.A.
- Banco Santander S.A., Sucursal Uruguay
- BTG Pactual
- Citibank Colombia S.A.
- Fiduciaria Bancolombia S.A. Sociedad
- Fiduciaria Coomeva S.A.
- Systemgroup S.A.S.
- Ubs O'Connor LLC

**Banks**
- Fiduciaria Bancolombia S.A. Sociedad Fiduciaria
- Finanza Inversiones S.A.S.
- Patrimonio Autónomo PA Credivalores UBS Gramercy

**Benefits/Payroll Providers**
- Caja Compensación Familiar y EPS Compensar
- Caja de Compensacion Familiar de Fenalco del Tolima Comfenalco
- Caja de Compensación Familiar del Caquetá COMFACA
- Crear Network S.A.S. (Batches)

- Instituto Colombiano de Bienestar Familiar (ICBF)
- Seguros de Vida Suramericana S.A.
- Servicio Nacional de Aprendizaje (SENA)
- Softland Colombia S.A.S.(Payroll Software)

**Health Providers**
- Aliansalud Entidad Promotora de Salud S.A
- Caja Compensación Familiar y EPS Compensar
- Capital Salud Entidad Promotora de Salud del Régimen Subsidiado S.A.S.
- Coosalud Entidad Promotora de Salud S.A.
- Entidad Promotora de Salud Famisanar S.A.S
- Entidad Promotora de Salud Sanitas S.A.
- EPS Suramericana S.A.
- Nueva Empresa Promotora de Salud S.A.
- Salud Total Entidad Promotora de Salud del Regimen Contributivo y del Regimen Subsidiado S.A.

**Severance Fund Administrator and related service providers**
- Administradora de Fondos de Pensiones y Cesantías Protección S.A.
- Colfondos S.A. Pensiones y Cesantías
- Fondo Nacional del Ahorro
- Fondo Nacional del Ahorro - Cesantias
- La Administradora Colombiana de Pensiones - Colpensiones
- Skandia Pensiones y Cesantías S.A.
- Sociedad Administradora de Fondos de Pensiones y Cesantías Porvenir S.A.

**Government and Regulatory Authorities**
- Superintendencia de Sociedades
- Superintendencia Financiera

**Taxing Authorities**
- Alcaldia del Municipio Armenia
- Alcaldia del Municipio Barranquilla
- Alcaldia del Municipio Cali
- Alcaldia del Municipio Cartagena
- Alcaldia del Municipio Cucuta
- Alcaldia del Municipio Ibague
- Alcaldia del Municipio Manizales
- Alcaldia del Municipio Medellin
- Alcaldia del Municipio Neiva
- Alcaldia del Municipio Pereira

- Alcaldia del Municipio Santa Marta
- Alcaldia del Municipio Sincelejo
- Alcaldia del Municipio Valledupar
- Dirección de Impuestos y Aduanas Nacionales de Colombia (DIAN)
- Secretaria de Hacienda Bogota

### Top 5 Equity Holders
- Acon Colombia Consumer Finance Holdings, S.L.
- Acon Consumer Finance Holdings II, S.L.
- Crediholding S.A.S.
- Davalia Gestión de Activos S.L.
- Lacrot Inversiones 2014, S.L.U.

### Utilities
- Empresa de Aguas de Girardot, Ricaurte y La Region S.A. E.S.P.
- Aguas de La Sabana
- Aguas de Manizales
- Aguas de Monteria
- Aguas de Tunja
- Aguas Kpital de Cucuta
- Air-E
- Colombiana de Comercio S.A. Corbeta S.A. y /o Alkosto S.A.
- Almacenes Éxito
- Acueducto Metropolitano de Bucaramanga S.A. E.S.P.
- Aqua Occidente
- Aqualia Latinoamérica S.A. E.S.P
- Caribemar de La Costa
- Celsia Colombia S.A. E.S.P.
- Centrales Eléctricas de Norte de Santander S.A.
- Centurylink
- Central Hidroelectrica de S.A. E.S.P.
- ENEL Colombia S.A. E.S.P
- Colombia Telecomunicaciones
- Comunicacion Celular S.A.
- Compañía de Jesus
- Compañía Energetica de Occidente
- Empresa de Acueducto y Alcantarillado de Villavicencio E.S.P.
- Empresa de Energía de Boyacá S.A E.S.P.
- Edificio QBE Central
- Electrificadora del Caqueta
- Electrificadora del Meta

- Centrales Electricas del Huila S.A.
- Empresas Municipales de Cali EICEESP
- Empresa de Servicios Públicos de Valledupar S.A.
- Empresa de Obras Sanitarias de Caldas
- Empresa de Energia del Quindio
- Empresas Publicas de Armenia
- Energia de Pereira
- Enertotal S A E S P
- Empresas Públicas de Medellín
- EPM Telecomunicaciones
- Empresa de Recursos Tecnológicos S.A.
- Electrificadora de Santander S.A. E.S.P.
- Empresa de Servicios Públicos del Distrito de Santa Marta E.S.P.
- Empresa de Telecomunicaciones de Bogotá S.A.
- Hernando Diaz Lopez
- Las Ceibas
- Empresa de Servicios de Florencia SERVAF S.A E.S.P.
- Sociedad Productora de Energía de San Andrés y Providencia S.A. E.S.P.
- Triple A SA ESP

### Litigation Counterparties and Pending Lawsuits
- Eddy Alessandro Álvarez Sánchez
- Pedro Pablo Castillo Tamayo
- Superintendencia de Industria y Comercio

### US Trustee and Staff SD NY
- Alaba Ogunleye
- Amanda D. Cassara
- Andrea B. Schwartz
- Andy Velez-Rivera
- Annie Wells
- Brian S. Masumoto
- Daniel Rudewicz
- Ercilia A. Mendoza
- Greg M. Zipes
- Ilusion Rodriguez
- Linda A. Riffkin
- Madeleine Vescovacci
- Mark Bruh
- Mary V. Moroney
- Joseph Nadkarni
- Paul K. Schwartzberg

- Rachael E Siegel
- Shannon Scott
- Shara Cornell
- Sylvester Sharp
- Tara Tiantian
- Valentina Vlasova
- Victor Abriano

**Judges and Staff S.D. N.Y. Bankruptcy Court**
- Chief Judge Martin Glenn
- Judge Cecelia G. Morris
- Judge David S. Jones
- Judge James L. Garrity, Jr.
- Judge John P. Mastando
- Judge Lisa G. Beckerman
- Judge Michael E. Wiles
- Judge Philip Bentley
- Judge Sean H. Lane
- Aileen Ramia
- Arielle Ambra
- Caroline Ellis
- Carolyn Indelicato
- Cathy Shu
- Chantel Barrett
- Christine Azzaro
- Courtney N. Blinn
- Daniel McCarthy
- deanna Anderson
- Dorie Arthur
- Dwij Patel
- Emilie Simone
- Francis O'Rourke
- Greg White
- Griselda Cabrera
- Ilayna Guevrekian
- Jacqueline dePierola
- Jiawei Lin
- Jillian Ingrisano
- John Kuebler
- Leslie Wybiral
- Liza Ebanks
- Lorraine Echevarria

- Lynda Calderon
- Maria Rodriguez-Castillo
- Matthew Smith
- Paul Veazey
- Philip Lockwood-Bean
- Sarah Rosenthal
- Vanessa Ashmeade
- Vincent Puzak
- Willie Rodriguez

**Clerk of the Court**
- Vito Genna

**Professionals**
- Baker & McKenzie LLP
- BCP Securities, Inc.
- Bensons Clark Abogados
- Borrero & Illidge Advisors SAS
- Epiq Corporate Restructuring LLC
- FTI Consulting Canada ULC
- Gomez Higuera Asociados S.A.S.
- MA Legal S.A.S
- My Brand Legal

**Shareholders**
- ACON Consumer Finance Holdings II, S.L.
- ACON Consumer Finance Holdings, S. de R.L.
- Crediholding S.A.S. – Seinjet Family
- Davalia Gestión de Activos S.L
- GDA Luma
- Gramercy Funds Managements LLC
- Lacrot Inversiones 2014 S.L.U.

**Permitted Holders**
- ACON Investments, L.L.C.
- David Seinjet
- GDA Luma Capital Management, L.P.
- Gramercy Funds Managements LLC

**Related Parties**
- Asesorias Financieras de Credito S.A.S
- Ban100 S.A.
- Finanza Inversiones S.A.S.

## <u>Schedule B</u>

## Parties in Interest Noted for Court Disclosure

**Potential Connections of Related Parties**
**Credivalores – Crediservicios S.A.**

**List of Current and Former FTI Clients Who Are Interested Parties**

*Engagements Relating to the Debtor or Affiliate*

**Debtor**

- Credivalores – Crediservicios S.A.

**Debtor's Restructuring Professionals**

- Baker & McKenzie LLP

*Current & Former Clients, Parents and Affiliates of Clients and Relationships Not Relating to the Debtor or Affiliates*

**Secured Creditors**

- Banco de Occidente S.A.
- Banco Santander de Negocios Colombia S.A.
- Banco Santander S.A., Sucursal Uruguay
- BTG Pactual
- UBS O'Connor LLC

**Utilities**

- Almacenes Éxito
- Centurylink

**Top Unsecured Creditors**

- Banco de Occidente S.A.
- Bancolombia, S.A.
- Paul Hastings
- Cuatrecasas, Goncalves Pereira S.A.S

**Other**

ACON Investments, L.L.C

# <u>Schedule C</u>

## Summary of Payments 90 Days Prior to the Petition Date

**Summary of Payments 90 Days Prior to the Petition Date**

| Invoice Date | Billing Period | Payment Amount | Date of Payment |
|---|---|---|---|
| March 21, 2024 | Initial Payment | $100,000 | March 26, 2024 |
| March 31, 2024 | Balance of fixed fee for pre-petition work | $350,000 | May 10, 2024 |
| | **TOTAL FEES & EXPENSES COLLECTED** | $450,000 | |

## Exhibit C

## Engagement Agreement



FTI Consulting Canada ULC
TD Waterhouse Tower
79 Wellington Street West
Suite 2010, P.O. Box 104
Toronto ON M5K 1G8

PRIVATE & CONFIDENTIAL

March 18, 2024

Jaime Francisco Buriticá Leal
Credivalores - Crediservicios S.A.
Carrera 7 #76-35, 7th Floor
Bogotá, Colombia

Re: <u>Credivalores Crediservicios S.A.</u>

Dear Mr. Jaime Francisco Buriticá Leal

1. **Introduction**

   This letter confirms that we, FTI Consulting Canada ULC ("FTI"), have been retained by you, Credivalores Crediservicios S.A. (the "Company"), to provide certain financial advisory and consulting services (the "Services") set out below. This letter of engagement (the "Engagement") and the related Standard Terms and Conditions constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided.

2. **Scope of Services**

   The Services, to be performed at your direction, are expected to include the following:

   **Pre-filing Activities:**
   1) Assistance with Chapter 11 Bankruptcy preparation, including but not limited to:

     a) Creditor Matrix Development;
     b) Voluntary Petitions and Motions support including the related schedules;
     c) First Day Motion Development;
     d) First Day Declaration;
     e) Accounting System/ Invoice Cut-off; and
     f) Cash Payment/ Controls Implementation.

2) Prepare the liquidation analysis for purposes of the Chapter 11 disclosure statement.

3) If necessary, assistance with preparation of 13-week cash flows taking into account an in-court bankruptcy filing.

4) Other customary related services as may be requested by counsel or the Company.

**Post Filing Activities**

1) If necessary, the preparation of the Statement of Financial Affairs and Statement of Assets and Statement of Liabilities.
2) Support for "Second Day" Motions as required.
3) Tracking and implementation of first day orders.
4) We will also continue to manage liquidity and update the 13-week cash flows, including any and all of the required reporting (both for court) and assist with ongoing negotiations with stakeholders as required.
5) Preparation of Monthly Operating Reports.
6) Other customary related services as may be requested by counsel or the Company.

The Services may be performed by FTI or by any subsidiary of FTI, as FTI shall determine. FTI may also provide Services through its or its subsidiaries' agents or independent contractors. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary and to any such agents or independent contractors and their employees.

The Services, as outlined above, are subject to change as mutually agreed between us.

FTI is engaged by the Company to provide financial advisory and consulting services only. Accordingly, while we may from time to time suggest options which may be available to you and further give our professional evaluation of these options, the ultimate decision as to which, if any, of these options to implement rests with the Company, its management and board of directors. FTI and its employees will not make any management decisions for the Company and will not be responsible for communicating information concerning the Company to the public, the Company's shareholders or others.

As part of the Services, FTI may be requested to assist the Company (and its legal or other advisors) in negotiating with the Company's creditors and equity holders and with other interested parties. In the event that we participate in such negotiations, the representations made and the positions advanced will be those of the Company and its management, not FTI or its employees.

If cases under the Bankruptcy Code are commenced and our retention is approved, our role will include serving as principal bankruptcy financial advisors to the debtors and debtors in possession in those cases under a general retainer, subject to court approval. Our role also will encompass all out-of-court planning and negotiations attendant to these tasks.

The services we will provide in connection with the Engagement will encompass all services normally and reasonably associated with this type of engagement that we are requested and are able to provide and that are consistent with our ethical obligations.  With respect to all matters of our Engagement, we will coordinate closely with the Company as to the nature of the services that we will render and the scope of our engagement.

As usual, our Engagement is to represent the Company and not its individual directors, officers, employees or shareholders.  However, we anticipate that in the course of that Engagement, we may provide information or advice to directors, officers or employees in their corporate capacities.

3.      **Fees and Cash on Account**

**Pre-filing Activites:**

In the event, there is a prepack filing, FTI's fees for the pre-petition period will be US$450,000 which will include not only the liquidation analysis but also all the related bankruptcy preparedness of the first day motions and schedules.  This fixed fee will cover work from the earlier of 30 calendar days from date of engagement or a prepack filing.

If a prepack filing is not possible and the Company must enter a free fall filing, our fixed fee would increase to US$550,000 (to reflect the additional work required for the first day motions) covering the period of work from the earlier of the filing or 40 calendar days.

**Post-filing Activites:**

Fees in connection with the post filing activities of this Engagement will be based upon the time incurred providing the Services, multiplied by our standard hourly rates, summarized as follows:

|  | Per Hour (USD) |
|---|---|
| Senior Managing Directors | $1,095 – 1,495 |
| Directors / Senior Directors / Managing Directors | 825 –   1,110 |
| Consultants/Senior Consultants | 450 –   790 |
| Administrative / Paraprofessionals | 185 –   370 |

Hourly rates are generally revised periodically. Note that we do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work.

In addition to the fees outlined above, FTI will bill for reasonable direct expenses which are likely to be incurred on your behalf during this Engagement. Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the engagement.  Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated by you at its regular hourly rates and reimbursed for reasonable allocated and direct expenses (including counsel fees) with respect thereto.

**Cash on Account**

Initially, the Company will forward to us the amount of $100,000, which funds will be held "on account" to be applied to our professional fees, charges and disbursements for the Engagement (the "Initial Cash on Account"). To the extent that this amount exceeds our fees, charges and disbursements upon the completion of the Engagement, we will refund any unused portion. The Company agrees to increase or supplement the Initial Cash on Account from time to time during the course of the Engagement in such amounts as the Company and we mutually shall agree are reasonably necessary to increase the Initial Cash on Account to a level that will be sufficient to fund Engagement fees, charges, and disbursements to be incurred.

We will send the Company monthly invoices for services rendered and charges and disbursements incurred on the basis discussed above, and in certain circumstances, an invoice may be for estimated fees, charges and disbursements through a date certain. Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of our Services. Upon transmittal of the invoice, we may immediately draw upon the Initial Cash on Account (as replenished from time to time) in the amount of the invoice. The Company agrees that invoices are due upon receipt and will promptly wire the invoice amount to us as replenishment of the Initial Cash on Account (together with any supplemental amount to which we and the Company mutually agree), without prejudice to the Company's right to advise us of any differences it may have with respect to such invoice. We have the right to apply to any outstanding invoice (including amounts billed prior to the date hereof), up to the remaining balance, if any, of the Initial Cash on Account (as may be supplemented from time to time) at any time subject to (and without prejudice to) the Company's opportunity to review our statements.

The Company agrees to promptly notify FTI if the Company or any of its subsidiaries or affiliates extends (or solicits the possible interest in receiving) an offer of employment to a principal or employee of FTI involved in this Engagement and agrees that FTI has earned and is entitled to a cash fee, upon hiring, equal to 150% of the aggregate first year's annualized compensation, including any guaranteed or target bonus and equity award, to be paid to FTI's former principal or employee that the Company or any of it subsidiaries or affiliates hires at any time up to one year subsequent to the date of the final invoice rendered by FTI with respect to this Engagement.

In a case under the Bankruptcy Code, fees and expenses may not be paid without the express prior approval of the bankruptcy court. In most cases of this size and complexity, on request of a party in interest, the bankruptcy court permits the payment of interim fees during the case. The Company agrees that, if asked to do so by us, the Company will request the bankruptcy court to establish a procedure for the payment of interim fees during the case that would permit payment of interim fees. If the bankruptcy court approves such a procedure, we will submit invoices on account against our final fee. These interim invoices will be based on such percentage as the bankruptcy court allows of our internal time charges and costs and expenses for the work performed during the relevant period and will constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of our representation.

In preparation for the filing of any cases under the Bankruptcy Code, we also may require an additional on account payment to supplement the Initial Cash on Account to cover fees, charges and disbursements to be incurred during the initial phase of the chapter 11 cases (the "Additional Cash on Account"). We will hold the Additional Cash on Account, as we have

the Initial Cash on Account. Of course, the reasonableness of the Additional Cash on Account remains subject to review by the court in any ensuing case.

If any of the Company's entities become a debtor in one or more cases under the Bankruptcy Code, some fees, charges, and disbursements (whether or not billed) incurred before the filing of bankruptcy petitions (voluntary or involuntary) might remain unpaid as of the date of the filing. The unused portion, if any, of the Initial Cash on Account and the Additional Cash on Account will be applied to any such unpaid pre-petition fees, charges and disbursements. Any requisite court permission will be obtained in advance. We will then hold any portion of the Initial Cash on Account and the Additional Cash on Account not otherwise properly applied for the payment of any such unpaid pre-filing fees, charges and disbursements (whether or not billed) as on account cash to be applied to our final invoice in any case under the Bankruptcy Code.

Post-petition fees, charges and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the court. The Company understands that while the arrangement in this paragraph may be altered in whole or in part by the bankruptcy court, the Company shall nevertheless remain liable for payment of court approved post-petition fees and expenses. Such items are afforded administrative priority under 11 U.S.C. § 503(b)(l). The Bankruptcy Code provides in pertinent part, at 11 U.S.C. § 1l29(a)(9)(A), that a plan cannot be confirmed unless these priority claims are paid in full in cash on the effective date of any plan (unless the holders of such claims agree to different treatment). It is agreed and understood that the unused portion, if any, of the Initial Cash on Account (as may be supplemented from time to time) and the Additional Cash on Account shall be held by us and applied against the final fee application filed and approved by the court.

4.      **Terms and Conditions**

The attached Standard Terms and Conditions set forth the duties of each party with respect to the Services. Further, this letter and the Standard Terms and Conditions attached comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations, and shall supersede all previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.

5.      **Conflicts of Interest**

Based on the list of interested parties (the "Potentially Interested Parties"), provided by you, we have undertaken a limited review of our records to determine FTI's professional relationships with the Company. As you may be aware, FTI is regularly retained by the administrative agent and/or other members of your lending group (or law firms retained by the administrative agent or lending group members). However, such representations are in matters unrelated to this engagement.

From the results of such review, we were not made aware of any conflicts of interest or additional relationships that we believe would preclude us from performing the Services. However, as you know, we are a large consulting firm with numerous offices globally. We are regularly engaged by new clients, which may include one or more of the Potentially

Credivalores Crediservicios S.A.
March 18, 2024

Interested Parties.  The FTI professionals providing services hereunder will not accept an engagement that directly conflicts with this Engagement without your prior written consent.

6.      **Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Engagement Contract by signing both the confirmation below and the attached Standard Terms and Conditions and returning a copy of each to us at the above address.

If you have any questions regarding this letter or the attached Standard Terms and Conditions, please do not hesitate to contact Devi Rajani at 1-416-844-2757.

Yours faithfully,


FTI CONSULTING CANADA ULC


By:      _Devi Rajani_

Devi Rajani
Senior Managing Director

Attachment – As stated

Credivalores Crediservicios S.A.
March 18, 2024

<u>Confirmation of Terms of Engagement</u>

**We agree to engage FTI Consulting Canada ULC upon the terms set forth herein and in the attached Standard Terms and Conditions.**

Credivalores Crediservicios S.A.

By:  _____

      Jaime Francisco Buriticá Leal
      Gerente General

Date:  March 19, 2024

**FTI CONSULTING CANADA ULC**

**STANDARD TERMS AND CONDITIONS**

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement with Credivalores Crediservicios S.A. dated March 18, 2024.   The Engagement letter and the Standard Terms and Conditions  (collectively the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.  The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

**1.      Reports and Advice**

1.1      **Use and purpose of advice and reports** – Any advice given or report issued by us is provided solely for your use and benefit and only in connection with the purpose in respect of which the Services are provided. Unless required by law, you shall not provide any advice given or report issued by us to any third party, or refer to us or the Services, without our prior written consent, which shall be conditioned on the execution of a third party release letter in the form provided by FTI and attached hereto as Schedule A. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

**2.      Information and Assistance**

2.1      **Provision of information and assistance** – Our performance of the Services is dependent upon your providing us with such information and assistance as we may reasonably require from time to time.

2.2      **Punctual and accurate information** – You shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required.  You shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3      **No assurance on financial data** – While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof.  Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information.  Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period.  Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

2.4      **Prospective financial information** - In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information.  There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material.  We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

## 3.  Additional Services

3.1 **Responsibility for other parties** – You shall be solely responsible for the work and fees of any other party engaged by you to provide services in connection with the Engagement regardless of whether such party was introduced to you by us.  Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters.  Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you, other than our agents or independent contractors engaged to provide Services, without your written authorization.

## 4.  Confidentiality

4.1 **Restrictions on confidential information** – Both parties agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, neither party will disclose the other party's confidential information to any third party without the other party's consent. Confidential information shall not include information that:

4.1.1 is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

4.1.2 is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information; or

4.1.3 is or has been independently developed by the recipient.

4.2 **Disclosing confidential information** – Notwithstanding Clause 1.1 or 4.1 above, either party will be entitled to disclose confidential information of the other to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other party.

4.3 **Citation of engagement** – Without prejudice to Clause 4.1 and Clause 4.2 above, to the extent our engagement is or becomes known to the public, we may cite the performance of the Services to our clients and prospective clients as an indication of our experience, unless we and you specifically agree otherwise in writing.

4.4 **Internal quality reviews** – Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews.

4.5 **Maintenance of workpapers** – Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies.

4.6 **Data Protection -** If this Engagement involves the processing of personal data (also referred to herein as personal information) (i) as governed by Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016, the terms of the EU Data Protection Schedule attached hereto as Schedule B shall apply to this engagement and it shall form an integral part of this Agreement and (ii) as governed by the California Consumer Privacy Act, the terms of the California Data Protection Schedule attached hereto as Schedule C shall apply to this engagement and it shall form an integral part of this Agreement. In the event of a conflict between the terms of this Agreement and the terms of Schedule B or Schedule C, the terms of Schedule B or Schedule C shall prevail in relation to the

processing of such personal data. If such personal data is processed in connection with this engagement, Client shall notify FTI in writing before any personal data is disclosed to FTI.

## 5.   Termination

5.1   **Termination of Engagement with notice** – Either party may terminate the Engagement Contract for whatever reason upon written notice to the other party. Upon receipt of such notice, we will stop all work immediately. You will be responsible for all fees and expenses incurred by us through the date termination notice is received.

5.2   **Continuation of terms** – The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement letter, and Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

## 6.   Indemnification, Liability Limitation, and Other Matters

6.1   **Indemnification** - The Company agrees to indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contactors and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of or relating to your retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted  (an "Adverse Determination").  The Company shall pay damages and expenses, including reasonable legal fees and disbursements of counsel as incurred in advance.  FTI agrees that it will reimburse any amounts paid in advance to the extent they relate directly to an Adverse Determination.

6.2   **Limitation of liability -** You agree that no Indemnified Person shall be liable to you, or your successors, affiliates or assigns for damages in excess of the total amount of the fees paid to FTI under this Engagement Contract.  Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

## 7.   Governing Law, Jurisdiction, WAIVER OF JURY TRIAL, and Compliance with Law

7.1   **Governing Law**The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof.

7.2   Jurisdiction. - The United States District Court for the Southern District of New York and the appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The Bankrutpcty Court having jurisdiction over the Client's Bankruptcy case shall have exclusive jurisdictrion in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising form it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being

brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction.

7.3  **WAIVER OF JURY TRIAL** – TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, THE COMPANY AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE TO WAIVE A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR THIS ENGAGEMENT CONTRACT.

7.4  **Compliance with Laws** - The Company agrees that it will comply with all anti-corruption, anti-money laundering, anti-bribery and other economic sanctions laws and regulations of the United States, United Kingdom, European Union and United Nations (collectively, the "ABC/AML/Sanction Laws") in connection with this Engagement. The Company further agrees that it shall not, and it shall procure its employees not to, pay or cause other person(s) to pay FTI using any funds that would result in a violation of any of the ABC/AML/Sanction Laws by either Company or FTI, or otherwise take any action that would result in a violation of any of the ABC/AML/Sanction Laws by either Company or FTI. The Company shall promptly notify FTI in the event of any violation or failure to comply with ABC/AML/Sanction Laws in connection with this Engagement, or allegations relating thereto, by the Company or its directors, officers, employees or agents.

FTI CONSULTING CANADA ULC

**Confirmation of Standard Terms and Conditions**

We agree to engage FTI Consulting Canada ULC upon the terms set forth in these Standard Terms and Conditions as outlined above.

Credivalores Crediservicios S.A.

By: _____
 Jaime Francisco Buriticá Leal
 Gerente General

Date: Marzo 19 de 2024

**SCHEDULE A**

**STANDARD RELEASE LETTER**

**[Nonclient Recipient Letterhead]**

**[Date]**

FTI Consulting Canada ULC

Dear Mr./Ms. _____:

_____ ("Client") has informed **[name of recipient]** that FTI Consulting Canada ULC ("FTI") has performed certain procedures to assist Client in connection with the _____. We understand that the work performed by FTI was performed in accordance with instructions provided by Client and was performed exclusively for Client's sole benefit and use.

Client has requested that FTI provide **[name of recipient]** access to the report of its findings dated **[date]**. **[name of recipient]** acknowledges that this report was prepared at the direction of Client and may not include all procedures deemed necessary for the purposes of **[name of recipient]** and that certain findings and information may have been communicated to Client that are not reflected in the report. **[name of recipient]** further acknowledges that (a) the report is being provided for informational purposes only; (b) the report shall not constitute, either expressly or impliedly, any representation or affirmation by FTI as to the accuracy, completeness and/or fairness of presentation of the Report or any statements or information contained therein; and (c) **[name of recipient]** will make any decisions based on its own investigation, due diligence and analysis, independent of, and without reliance on or reference to, the contents of the report or any other opinions or conclusions of FTI.

In consideration of FTI allowing **[name of recipient]** access to the report and, if requested by **[name of recipient]**, discussing the report, **[name of recipient]** agrees that it does not acquire any rights as a result of such access that it would not otherwise have had and acknowledges that FTI does not assume any duties or obligations to **[name of recipient]** in connection with such access.

**[name of recipient]** agrees to release FTI and its personnel from any claim by **[name of recipient]** that arises as a result of FTI permitting **[name of recipient]** access to the report. Further, **[name of recipient]** agrees not to disclose or distribute the report, or information received, orally or in writing from FTI to any other parties without FTI's prior written consent.

Acknowledged by **[name of recipient]** representative:

By: _____
    (Name of Company official)

Title: _____

Date: _____