Paul J. Keenan Jr. (admitted *pro hac vice*)
Reginald Sainvil (admitted *pro hac vice*)
Baker & McKenzie LLP
1111 Brickell Avenue, 10th Floor
Miami, FL 33130
Telephone: 305-789-8900
Facsimile: 305-789-8953
Email: paul.keenan@bakermckenzie.com
       reginald.sainvil@bakermckenzie.com

Blaire Cahn
Baker & McKenzie LLP
452 Fifth Avenue
New York, NY 10018
Telephone: 212-626-4100
Facsimile: 212-310-1600
Email: blaire.cahn@bakermckenzie.com

*Proposed Counsel for the Debtor*
*and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CREDIVALORES – CREDISERVICIOS S.A., | Case No. 24-10837 (DSJ) |
| Debtor. | |
| _____/ | |

**DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER (A) AUTHORIZING AND APPROVING THE APPOINTMENT OF EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING AGENT AND (B) GRANTING RELATED RELIEF**

Credivalores – Crediservicios S.A., the above captioned debtor and debtor in possession (the "**Debtor**"), hereby submits this application (the "**Application**") for the entry of an order, substantially in the form attached hereto as **Exhibit A,** (the "**Proposed Order**"), authorizing the Debtor to employ Epiq Corporate Restructuring, LLC, and respectfully states as follows in support of the Application:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012 (Preska, C.J.).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

4. On the date hereof (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under the Bankruptcy Code with the Court. The Debtor continues to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No creditors' committee has been appointed by the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**"), nor has a trustee or examiner been appointed in the Chapter 11 Case.

5. The Debtor is a non-bank financial institution in Colombia offering a variety of flexible, specialized, and tailored credit and financing alternatives, including payroll deduction loans and insurance premium financing, to low- and middle-income segments of the Colombian population. Initially operating locally in Cali, Colombia, the Debtor steadily grew into other geographic regions throughout Colombia.

6.     The Debtor has historically funded costs and expenditures through a combination of cash generated from operations, equity issuances, and borrowing funded indebtedness. The Debtor recently experienced difficulty in raising sufficient cash to meet its obligations as they become due and has faced pressure with respect to its coupon and principal payments on its borrowings. Chief among the Debtor's obligations are notes (the "**Old Notes**") issued under that certain Indenture, dated February 7, 2020, between the Debtor and the Bank of New York Mellon.

7.     While the Debtor's business operations are strong, the Debtor has faced numerous headwinds in its efforts to raise the necessary funds in order to repay the Old Notes, and as a result, determined to improve its liquidity position through a refinancing of the Old Notes.

8.     Prior to the Petition Date, the Debtor commenced discussions with several holders of the Old Notes regarding a restructuring of the Old Notes that would extend the maturity of the Old Notes, reduce the Debtor's overall debt and interest burden, and strengthen the Debtor's capital by significantly reducing its refinancing requirements.

9.     On March 7, 2024, the Debtor launched an exchange offer and solicited votes from all holders of the Old Notes to exchange the Old Notes (the "**Exchange Offer**") for newly issued Senior Secured Step-up Notes due 2029 (the "**New Notes**"), and on its Prepackaged Chapter 11 Plan (as may be amended, the "**Plan**") that would effectuate the financial restructuring, *i.e.*, the exchange of the Old Notes for the New Notes, on essentially the same terms as the Exchange Offer.

10.    The Plan consists of a plan of reorganization under Chapter 11 of the Bankruptcy Code that would result in the same transactions contemplated by the Exchange Offer, *i.e.*, the extension of the maturity of the Old Notes through the issuance of New Notes in order to reduce the Debtor's overall debt burden and interest expense burden.

11.     The voting deadline on the Plan was April 3, 2024 at 5:00 p.m. New York City time. As shown in the related declaration of the Debtor's solicitation agent, 85.34% in amount and 96.12% in number of the holders of the Old Notes that cast ballots on the Plan voted to accept the Plan.

12.     On the Petition Date, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code to effectuate the Plan, enhance liquidity, and solidify its long-term growth prospects and operating performance. The Plan provides that all claims other than those of the holders of the Old Notes are unimpaired.

13.     A detailed factual background of the Debtor's business and operations, as well as the events precipitating the commencement of this Chapter 11 Case, is more fully set forth in the First Day Declaration, filed contemporaneously herewith and incorporated herein by reference.

**RELIEF REQUESTED**

14.     Pursuant to 28 U.S.C. § 156(c), Rules 9013-1(a) and 5075-1(b) of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), and the Court's *Protocol for the Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c)* (the "**Claims Agent Protocol**"), the Debtor seeks entry of an order (a) appointing Epiq Corporate Restructuring, LLC ("**Epiq**") as claims and noticing agent (the "**Claims and Noticing Agent**") in this Chapter 11 Case, effective as of the Petition Date, including assuming full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claims filed in the Chapter 11 Case, and (b) granting related relief. In support of this Application, the Debtor submits the *Declaration of Kate Mailloux in Support of the Debtor's Application for Entry of an Order (A) Authorizing and Approving the Appointment of Epiq Corporate Restructuring,*

*LLC as Claims and Noticing Agent and (B) Granting Related Relief* (the "**Mailloux Declaration**"), attached hereto as **Exhibit B**.

15.     The Debtor's selection of Epiq to act as the Claims and Noticing Agent satisfies the Claims Agent Protocol as the Debtor has obtained and reviewed engagement proposals from three other court-approved claims and noticing agents to ensure selection through a competitive process. Moreover, the Debtor submits, based on all engagement proposals obtained and reviewed, that Epiq's rates are competitive and reasonable given Epiq's quality of service and expertise. The terms of Epiq's retention are set forth in the Standard Services Agreement, dated February 6, 2024, and attached hereto as **Exhibit C** (the "**Services Agreement**").

16.     Because the administration of this Chapter 11 Case will require Epiq to perform duties outside the scope of 28 U.S.C. § 156(c), by separate application, the Debtor will seek authorization to retain and employ Epiq as administrative agent in this Chapter 11 Case pursuant to section 327(a) of the Bankruptcy Code.

## EPIQ'S QUALIFICATIONS

17.     Epiq is a Chapter 11 administrator comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex Chapter 11 cases. Epiq's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of Chapter 11 cases and experience in matters of this size and complexity. Epiq's professionals have acted as official claims and noticing agents in many large bankruptcy cases in this district and in other districts nationwide. Epiq has developed efficient and cost-effective methods to handle the voluminous mailings associated with the noticing and claims processing portion of Chapter 11 cases to ensure the efficient, orderly, and fair treatment of creditors, equity security holders, and all parties in interest. Certain of Epiq's

active and former cases include: *In re Yellow Corp.*, Case No. 23-11069 (Bankr. D. Del. Aug. 6, 2023); *In re Media Math Holdings, Inc.*, Case No. 23-10882 (Bankr. D. Del. June 30, 2023); *In re Lumileds Holding B.V.*, Case No. 22-11155 (Bankr. S.D.N.Y. Aug. 6, 2022); *In re The Roman Catholic Diocese of Rockville Centre, New York*, Case No. 20-12345 (Bankr. S.D.N.Y. Oct. 1, 2020); *In re Grupo Aeromexico, S.A.B. de C.V.*, Case No. 20-11563 (Bankr. S.D.N.Y. June 30, 2020); *In re Jason Industries*, Case No. 20-22766 (Bankr. S.D.N.Y. June 24, 2020); *In re Ditech Holding Corp.*, Case No. 19-10412 (Bankr. S.D.N.Y. Feb. 11, 2019); *In re Trident Holding Co., LLC*, Case No. 19-10384 (Bankr. S.D.N.Y. Feb. 10, 2019); *In re Tops Holding II Corp.*, Case No. 18- 22279 (Bankr. S.D.N.Y. Feb. 26, 2018).

18.     By appointing Epiq as the Claims and Noticing Agent in this Chapter 11 Case, the distribution of notices and the processing of any claims will be expedited, and the Office of the Clerk of the Court (the "**Clerk**") will be relieved of the administrative burden associated with a case of this size.

## SERVICES TO BE PROVIDED

19.     This Application pertains only to the work to be performed by Epiq under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 5075-1; any work to be performed by Epiq outside of this scope is not covered by this Application or by any order granting approval hereof. Specifically, Epiq will perform the following tasks in its role as Claims and Noticing Agent, as well as all quality control relating thereto, in each case as required in this Chapter 11 Case:

(a)     Prepare and serve required notices and documents in this Chapter 11 Case in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules in the form and manner directed by the Debtor and/or the Court, including, if applicable, (i) notice of the commencement of this Chapter 11 Case and the initial meeting of creditors under section 341(a) of the Bankruptcy Code (as applicable), (ii) notice of any claims bar date (as

applicable), (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of a plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan or plans, and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtor or the Court may deem necessary or appropriate for an orderly administration of this Chapter 11 Case;

(b)     If applicable, maintain an official copy of the Debtor's schedules of assets and liabilities and statement of financial affairs (collectively, the "**Schedules**"), listing the Debtor's known creditors and the amounts owed thereto;

(c)     Maintain (i) a list of all potential creditors, equity holders, and other parties in interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rules 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party in interest or the Clerk;

(d)     If applicable, furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)     Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)     For *all* notices, motions, orders or other pleadings or documents served, prepare and file or caused to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(g)     Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(h)     Maintain an electronic platform for purposes of filing proofs of claim;

(i)     Maintain the official claims register for the Debtor (the "**Claims Register**") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with a

certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), and (vi) any disposition of the claim;

(j)     Except to the extent ordered otherwise by this Court, provide public access to the Claims Register, including complete proofs of claim with attachments, if any, without charge;

(k)     Implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original proofs of claim;

(l)     Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(m)     Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to Epiq's offices, not less than weekly;

(n)     Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Register for the Clerk's review (upon the Clerk's request);

(o)     Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Register and any service or mailing lists, including to identify and eliminate duplicate names and addresses from such lists;

(p)     Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

(q)     Assist in the dissemination of information to the public and respond to requests for administrative information regarding this Chapter 11 Case as directed by the Debtor or the Court, including through the use of a case website and/or call center;

(r)     If this Chapter 11 Case are converted to chapter 7 of the Bankruptcy Code, contact the Clerk's office within three (3) days of the notice to Epiq of entry of the order converting the case;

(s)     Thirty (30) days prior to the close of this Chapter 11 Case, to the extent practicable, request that the Debtor submits to the Court a proposed order dismissing Epiq as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of this Chapter 11 Case;

(t)    Within seven (7) days of notice to Epiq of entry of an order closing this Chapter 11 Case, provide to the Court the final version of the Claims Register as of the date immediately before the close of the Chapter 11 Case;

(u)    Within fourteen (14) days of entry of an order dismissing a case or within twenty-eight (28) days of entry of a final decree, Epiq shall, upon consultation with the Clerk's office, forward to the Clerk an electronic version of all imaged claims; and

(v)    Within the earlier to occur of (a) fourteen (14) days of entry of an order converting the Chapter 11 Case and (b) entry of a termination order, Epiq shall, upon consultation with the Clerk's office, forward to the Clerk an electronic version of all imaged claims.

20.    Epiq's appointment as the Claims and Noticing Agent will provide the Debtor with experienced professionals and services that are essential to the facilitation of a successful reorganization under Chapter 11. Epiq will coordinate with the Debtor's other retained professionals in this case to avoid any unnecessary duplication of services. Accordingly, the relief requested in this Application is in the best interests of the Debtor's estate and all parties in interest.

## PROFESSIONAL COMPENSATION

21.    The Debtor respectfully requests that the undisputed fees and expenses incurred by Epiq in the performance of the above services be treated as administrative expenses of the Debtor's Chapter 11 estate pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court. Epiq agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtor, the United States Trustee, counsel for the Debtor, counsel for any official committee monitoring the expenses of the Debtor, and any party-in-interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Services Agreement or monthly invoices, the parties shall meet, confer, and attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

22.     Prior to the Petition Date, the Debtor provided Epiq with a retainer in the amount of $40,000 (the "**Retainer**"). In addition, on May 10, 2024, Epiq received payment for actual and/or estimated prepetition fees and expenses in the amount of $120,000. Epiq will hold the Retainer under the Services Agreement during the Chapter 11 Case as security for the payment of postpetition fees and expenses incurred under the Services Agreement.

23.     Additionally, under the terms of the Services Agreement, the Debtor has agreed to indemnify, defend, and hold harmless Epiq and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents under certain circumstances specified in the Services Agreement, except in circumstances resulting solely from Epiq's own bad-faith, self-dealing, breach of fiduciary duty (if any), fraud, gross negligence, or willful misconduct, or as otherwise provided in the Services Agreement or the Proposed Order. The Debtor believes that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in this Chapter 11 Case.

## DISINTERESTEDNESS

24.     Although the Debtor does not propose to employ Epiq under Section 327 of the Bankruptcy Code pursuant to this Application, Epiq has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtor, and, to the best of the Debtor's knowledge, information, and belief, and except as disclosed in the Mailloux Declaration, Epiq has represented that it neither holds nor represents any interest materially adverse to the Debtor's estate in connection with any matter on which Epiq would be employed.

25.     Moreover, in connection with its retention as Claims and Noticing Agent, Epiq represents in the Mailloux Declaration, among other things, that:

(a)     Epiq is not a creditor of the Debtor;

(b)     Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this Chapter 11 Case;

(c)     by accepting employment in this Chapter 11 Case, Epiq waives any rights to receive compensation from the United States government in connection with this Chapter 11 Case;

(d)     in its capacity as the Claims and Noticing Agent in this Chapter 11 Case, Epiq will not be an agent of the United States and will not act on behalf of the United States;

(e)     Epiq will not employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in this Chapter 11 Case;

(f)     Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

(g)     in its capacity as Claims and Noticing Agent in this Chapter 11 Case, Epiq will not intentionally misrepresent any fact to any person;

(h)     Epiq shall be under the supervision and control of the Clerk with respect to the receipt and recordation of any claims and claim transfers;

(i)     Epiq will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     none of the services provided by Epiq as Claims and Noticing Agent in this Chapter 11 Case shall be at the expense of the Clerk.

26.     Epiq shall supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## COMPLIANCE WITH CLAIMS AND NOTICING AGENT PROTOCOL

27.     This Application complies with the Claims Agent Protocol and substantially conforms to the standard section 156(c) application in use in this Court. To the extent that there is any inconsistency between this Application, the Proposed Order, and the Services Agreement, the Proposed Order shall govern.

**BASIS FOR RELIEF**

28.     Local Rule 5075-1(b)(1) provides that "[i]n a case in which the number of creditors and equity security holders, in the aggregate, is 250 or more, the estate shall retain, subject to approval of the Court, a claims and noticing agent in accordance with the [Claims Agent Protocol]." Local Rule 5075-1(b)(2) provides that "[w]ith court approval, the estate may retain a claims and noticing agent in accordance with such protocol in a case in which the number of creditors and equity security holders, in the aggregate, is less than 250." In light of the number of potential claimants and the complexity of the Debtor's business, the Debtor submits that the appointment of a claims and noticing agent is either required by Local Rule 5075-1(b) or otherwise in the best interests of both the Debtor's estate and its creditors. Section 156(c) of title 28 of the United States Code governs the staffing and expenses of bankruptcy courts. This statute authorizes the Court to use "facilities" or "services" other than those of the Clerk for administration of bankruptcy cases. It states:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

29.     In addition, Local Rule 5075-1(a) provides:

> The Court may direct, subject to the supervision of the Clerk, the use of agents either on or off the Court's premises to file Court records, either by paper or electronic means, to issue notices, to maintain case dockets, to maintain Judges' calendars, and to maintain and disseminate other administrative information where the costs of such facilities or services are paid for by the estate.

Local Rule 5075-1(a).

30.     The Court has promulgated the Claims Agent Protocol "to ensure the use of competitive process in the selection of claims agents in instances where the Court has authorized such use under 28 U.S.C. § 156(c)." In compliance with the Claims Agent Protocol, the Debtor obtained and reviewed proposals from four (4) court-approved claims and noticing agents, including Epiq. The Debtor provided each court-approved claims and noticing agent the basic facts about this Chapter 11 Case and asked each claims and noticing agent to submit a written proposal based upon such facts. The Debtor also asked each claims and noticing agent case-specific pricing questions. Ultimately, the Debtor selected Epiq based on its capabilities and favorable pricing terms.

31.     Given the number of potential creditors and other parties in interest involved in this Chapter 11 Case, the Debtor seeks an order appointing Epiq as the Claims and Noticing Agent in this Chapter 11 Case, effective as of the Petition Date, pursuant to 28 U.S.C. § 156(c) and Local Rule 5075-1, to relieve this Court and the Clerk of administrative burdens.

32.     At the Debtor's request, Epiq has been serving in a Claims and Noticing Agent capacity since prior to the Petition Date with assurances that the Debtor would seek approval of its employment and retention effective as of the Petition Date so that Epiq may be compensated for its pre-application services in this Chapter 11 Case. The Debtor believes that no party in interest will be prejudiced by the granting of the employment effective as of the Petition Date, as provided

herein, because Epiq has provided and continues to provide valuable services to the Debtor's estate in the interim period.

33. Courts in this jurisdiction have routinely approved employment effective as of the petition date for claims and noticing agents similar to that requested herein. *See, e.g.*, *In re GBG USA Inc.*, Case No. 21-11369 (Bankr. S.D.N.Y. Aug. 2, 2021) (approving appointment of claims and noticing agent effective to the petition date); *In re Century 21 Dep't Stores LLC*, Case No. 20-12097 (Bankr. S.D.N.Y. Sept. 14, 2020) (same); *In re Barneys New York, Inc.*, Case No. 19-36300 (Bankr.S.D.N.Y. Aug. 7. 2019) (same); *In re Hollander Sleep Prods., LLC*, Case No. 19-11608 (Bankr. S.D.N.Y. July 2, 2019) (same).

34. Based on the foregoing, the Debtor submits that it has satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Accordingly, the Debtor respectfully request entry of the Proposed Order, pursuant to section 28 U.S.C. § 156(c) and Local Rule 5075-1, approving this Application to retain and employ Epiq as the Claims and Noticing Agent in this Chapter 11 Case, effective as of the Petition Date.

## **NOTICE**

35. Notice of this Application will be given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee for the Southern District of New York (Attn: Greg Zipes and Rachael Siegel); (b) the holders of the 20 largest unsecured claims against the Debtor; (c) counsel to the Indenture Trustee for the Old Notes, Norton Rose Fulbright (Attn: Marian Baldwin Fuerst and Francisco Vazquez), (d) all parties that, as of the filing of this Application, have requested notice in this Chapter 11 Case pursuant to Bankruptcy Rule 2002; and (e) any other party entitled to notice pursuant to Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York. In light of the nature of the relief requested, no other or further notice need be given.

**<u>NO PRIOR REQUEST</u>**

36.     No previous application for the relief sought herein has been made by the Debtor to this or any other court.

**<u>CONCLUSION</u>**

WHEREFORE, the Debtor respectfully requests that this Court grant the relief requested herein and such other and further relief as is just and proper.

Dated: June 5, 2024                     **BAKER & McKENZIE LLP**
     New York, New York

By:*/s/ Paul J. Keenan Jr.*
    Paul J. Keenan Jr. (admitted *pro hac vice*)
    Reginald Sainvil (admitted *pro hac vice*)
    1111 Brickell Avenue, 10th Floor
    Miami, FL 33131
    Telephone: 305-789-8900
    Facsimile: 305-789-8953
    Email: paul.keenan@bakermckenzie.com
        reginald.sainvil@bakermckenzie.com

    Blaire Cahn
    452 Fifth Avenue
    New York, NY 10018
    Telephone: 212-626-4100
    Facsimile: 212-310-1600
    Email: blaire.cahn@bakermckenzie.com

    *Proposed Counsel for the Debtor and Debtor-in-Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CREDIVALORES – CREDISERVICIOS S.A.,<br>　　　Debtor. | Case No. 24-10837 (DSJ) |

_____/

### ORDER (A) AUTHORIZING AND APPROVING THE APPOINTMENT OF EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING AGENT AND (B) GRANTING RELATED RELIEF

Upon the application (the "**Application**")[1] of the above-captioned debtor and debtor in possession (the "**Debtor**"), for entry of an order (the "**Order**"), (a) appointing Epiq Corporate Restructuring, LLC ("**Epiq**") as claims and noticing agent (the "**Claims and Noticing Agent**") to, among other things, (i) distribute required notices to parties in interest, (ii) receive, maintain, docket, and otherwise administer any proofs of claim filed in the Debtor's Chapter 11 Case, and (iii) provide such other administrative services—as required by the Debtor—that would fall within the purview of services to be provided by the Clerk, and (b) granting related relief, all as more fully set forth in the Application; and upon the _Declaration of Kate Mailloux in Support of the Debtor's Application for Entry of an Order (A) Authorizing and Approving the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent and (B) Granting Related Relief_; and upon the First Day Declaration; and the Debtor having estimated that there are in excess of 1,750 interested parties in this Chapter 11 Case; and the Court being authorized under 28 U.S.C. §156(c) to utilize, at the Debtor's expense, outside agents and facilities to provide notices to parties in title 11 cases and to receive, docket, maintain, photocopy and transmit proofs of claim; and the Court being satisfied that the Claims and Noticing Agent has the capability and experience to

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

provide such services, and that the Claims and Noticing Agent does not hold an interest adverse to the Debtor or its estate with respect to the matters upon which it is to be engaged; and good and sufficient notice of the Application having been given; and no other or further notice being required; and it appearing that the employment of Epiq as the Claims and Noticing Agent is in the best interests of the Debtor, the estate and creditors and sufficient cause appearing; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* M-431, dated January 31, 2012 (Preska, C.J.); and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "**Hearing**"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      Notwithstanding the terms of the Services Agreement, the Application is approved solely as set forth herein.

2.      The Debtor is authorized to retain Epiq as Claims and Noticing Agent effective as of the Petition Date under the terms of the Services Agreement, and Epiq is authorized and directed to perform noticing services, to receive, maintain, record, and otherwise administer any proofs of claim filed in this Chapter 11 Case, and all related tasks, all as described in the Application.

3. Epiq shall serve as the interim custodian of court records and shall be designated as the authorized repository for any proofs of claim filed in this Chapter 11 Case and is authorized and directed to maintain an official Claims Register for the Debtor, to provide public access to every proof of claim filed in this Chapter 11 Case unless otherwise ordered by the Court, and to provide the Clerk with a certified duplicate thereof upon request of the Clerk who remains the official custodian of court records under 28 U.S.C. § 156(e).

4. Epiq is authorized and directed to provide an electronic interface for filing proofs of claim—to the extent necessary—and to obtain a post office box or address for the receipt of proofs of claim.

5. Epiq is authorized to take such other action to comply with all duties set forth in the Application.

6. The Debtor is authorized to compensate Epiq in accordance with the terms of the Services Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Epiq and the rates charged for each, and to reimburse Epiq for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Epiq to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7. Epiq shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred. With respect to services provided prior to the effective date of a Chapter 11 plan in this Chapter 11 Case, Epiq shall serve monthly invoices on the Debtor, the United States Trustee, counsel for the Debtor, counsel for any official committee monitoring the expenses of the Debtor, and any party in interest who specifically requests service of the monthly invoices.

8.     The parties shall meet and confer to attempt to resolve any dispute which may arise relating to the Services Agreement or monthly invoices; *provided*, *however*, that the parties may seek resolution of the matter from this Court if resolution is not achieved.

9.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Epiq under this Order shall be an administrative expense of the Debtor's estate.

10.     Epiq may apply its Retainer to all prepetition invoices and thereafter Epiq may hold its Retainer under the Services Agreement during the Chapter 11 Case as security for the payment of fees and expenses incurred under the Services Agreement.

11.     The limitation of liability in Section 8 of the Services Agreement is deemed to be of no force or effect with respect to the services to be provided pursuant to this Order during the Chapter 11 Case.

12.     All requests by Epiq for the payment of indemnification as set forth in the Services Agreement shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Services Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought; *provided*, *however*, that in no event shall Epiq be indemnified in the case for its own bad-faith, self-dealing, breach of fiduciary duty (if any), fraud, gross negligence, or willful misconduct.

13.     In the event that Epiq seeks reimbursement from the Debtor for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Services Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Epiq's own applications, both interim and final, but determined by this Court after notice and a hearing.

14.     In the event Epiq is unable to provide the services set out in this Order, Epiq shall immediately notify the Clerk and the Debtor's attorneys and, upon approval of this Court, cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtor's attorneys.

15.     The Debtor may submit a separate retention application, pursuant to section 327 of the Bankruptcy Code and/or any applicable law, for work that is to be performed by Epiq but is not specifically authorized by this Order.

16.     Epiq shall not cease providing claims processing services during this Chapter 11 Case for any reason, including nonpayment, without an order of this Court.

17.     After entry of an order terminating Epiq's services as the Claims and Noticing Agent, upon the closing of this Chapter 11 Case, or for any other reason, Epiq shall coordinate the transport of court records in proper electronic format with the Clerk's office.

18.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

19.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

20.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

21.     In the event of any inconsistency between the Services Agreement, the Application and this Order, this Order shall govern.

22.     The Debtor and Epiq are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

23.     This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2024
        New York, New York

                                        _____
                                        THE HONORABLE DAVID S. JONES
                                        UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Mailloux Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CREDIVALORES – CREDISERVICIOS S.A., | Case No. 24-10837 (DSJ) |
| Debtor. | |

_____/

### DECLARATION OF KATE MAILLOUX IN SUPPORT OF DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER (A) AUTHORIZING AND APPROVING THE APPOINTMENT OF EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING AGENT AND (B) GRANTING RELATED RELIEF

I, Kate Mailloux, under penalty of perjury, declare as follows:

1.      I am a Senior Director at Epiq Corporate Restructuring, LLC ("**Epiq**"), a Chapter 11 administrative services firm with offices at 777 Third Avenue, 12th Floor, New York, NY 10017. Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      This declaration (this "**Declaration**") is made in support of the *Debtor's Application for Entry of an Order (A) Authorizing and Approving the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent and (B) Granting Related Relief,* filed contemporaneously herewith (the "**Application**").[1]

### QUALIFICATIONS

3.      Epiq is a Chapter 11 administrator comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex Chapter 11 cases. Epiq's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of Chapter 11 cases and experience in matters of this size and complexity. Epiq's professionals have acted as official claims and noticing

---

[1]     Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Application.

agent in many large bankruptcy cases in this district and in other districts nationwide. Epiq has developed efficient and cost-effective methods to handle the voluminous mailings associated with the noticing and claims processing portions of Chapter 11 cases to ensure the efficient, orderly and fair treatment of creditors, equity security holders, and all parties in interest. Certain of Epiq's active and former cases include: *In re Yellow Corp.*, Case No. 23-11069 (Bankr. D. Del. Aug. 6, 2023); *In re Media Math Holdings, Inc.*, Case No. 23-10882 (Bankr. D. Del. June 30, 2023); *In re Lumileds Holding B.V.*, Case No. 22-11155 (Bankr. S.D.N.Y. Aug. 6, 2022); *In re The Roman Catholic Diocese of Rockville Centre, New York*, Case No. 20-12345 (Bankr. S.D.N.Y. Oct. 1, 2020); *In re Grupo Aeromexico, S.A.B. de C.V.*, Case No. 20-11563 (Bankr. S.D.N.Y. June 30, 2020); *In re Jason Industries*, Case No. 20-22766 (Bankr. S.D.N.Y. June 24, 2020); *In re Ditech Holding Corp.*, Case No. 19-10412 (Bankr. S.D.N.Y. Feb. 11, 2019); *In re Trident Holding Co., LLC*, Case No. 19-10384 (Bankr. S.D.N.Y. Feb. 10, 2019); *In re Tops Holding II Corp.*, Case No. 18- 22279 (Bankr. S.D.N.Y. Feb. 26, 2018).

## SERVICES TO BE RENDERED

4.      As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Epiq will perform, at the request of the Office of the Clerk of the Court (the "**Clerk**"), the services specified in the Application and the Services Agreement, and, at the Debtor's request, any related administrative, technical, and support services as specified in the Application and the Services Agreement. In performing such services, Epiq shall charge the Debtor the rates set forth in the Services Agreement, which is attached as **Exhibit C** to the Application.

5. Epiq represents, among other things, the following:

    (a)    Epiq is not a creditor of the Debtor;

    (b)    Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this Chapter 11 Case;

    (c)    by accepting employment in this Chapter 11 Case, Epiq waives any rights to receive compensation from the United States government in connection with this Chapter 11 Case;

    (d)    in its capacity as the Claims and Noticing Agent in this Chapter 11 Case, Epiq will not be an agent of the United States and will not act on behalf of the United States;

    (e)    Epiq will not employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in this Chapter 11 Case;

    (f)    Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

    (g)    in its capacity as Claims and Noticing Agent in this Chapter 11 Case, Epiq will not intentionally misrepresent any fact to any person;

    (h)    Epiq shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

    (i)    Epiq will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

    (j)    none of the services provided by Epiq as Claims and Noticing Agent in this Chapter 11 Case shall be at the expense of the Clerk.

6. To the best of my knowledge and based solely upon information provided to me by the Debtor, and except as provided herein, neither Epiq, nor any employee thereof, has any materially adverse connection to the Debtor, its creditors, or other relevant parties. Epiq may have relationships with certain of the Debtor's creditors as a vendor or in connection with cases in which Epiq serves or has served in a neutral capacity as noticing, claims, and balloting agent for other Chapter 11 debtors.

7.      Epiq conducted a review, completed under my supervision, of the identified potential parties in interest (the "**Potential Parties in Interest**") in this Chapter 11 Case based on a query of an internal client database containing names of individuals and entities that are present or recent clients of Epiq. The list of Potential Parties in Interest was provided by the Debtor and is annexed hereto as **Schedule 1**. To the best of my knowledge and based solely upon information provided to me by the Debtor, Epiq does not have any materially adverse connection to the Debtor, its creditors or other relevant parties, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason. To the extent that Epiq's conflicts check has revealed that certain Potential Parties in Interest were connected to Epiq, these parties have been identified on a list annexed hereto as **Schedule 2** (the "**Client Match List**"). To the best of my knowledge, any such connections between Epiq and any parties on the Client Match List is completely unrelated to the Debtor.

8.      Epiq's personnel may have relationships with some of the Debtor's creditors or other parties in interest. However, to the best of my knowledge, such relationships, to the extent they exist, are of a personal nature and completely unrelated to this Chapter 11 Case. Epiq has and will continue to represent clients in matters unrelated to this Chapter 11 Case. In addition, Epiq has had and will continue to have relationships in the ordinary course of its business with certain vendors, professionals, and other parties in interest that may be involved in the Debtor's Chapter 11 Case in matters unrelated to this case. Epiq may also provide professional services to entities or persons that may be creditors or parties in interest in this Chapter 11 Case, which services do not directly relate to, or have any direct connection with, this Chapter 11 Case or the Debtor. To the best of my knowledge, neither Epiq, nor any employees thereof, represents any interest

materially adverse to the Debtor's estate with respect to any matter upon which Epiq is to be engaged.

9.  Epiq shares a corporate parent with certain companies that provide integrated technology products and services to the legal profession for electronic discovery, class action settlements, financial transactions, Chapter 7 and 13 bankruptcy, litigation, and regulatory compliance. Given the legal and operational separateness of Epiq from its affiliates and the administrative nature of the services performed by such companies, Epiq does not believe that a conflict would arise solely from any relations or claim of an Epiq affiliate or its corporate parent.

10. Although the Debtor does not propose to employ Epiq under Section 327 of the Bankruptcy Code pursuant to the Application, Epiq has nonetheless reviewed its electronic database to determine whether it has any relationships with the entities provided by the Debtor. At this time, we are not aware of any relationship which would present a disqualifying conflict of interest. Epiq shall also comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).[2]

11. Should Epiq discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Epiq shall use reasonable efforts to promptly file a supplemental affidavit.

12. In performing the services of Claims and Noticing Agent, Epiq shall charge the Debtor the rates set forth in the Services Agreement.

13. Epiq shall comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

---

[2] Epiq shall exclude this Chapter 11 Case from any file sharing arrangement with any third party.

14.     Neither Epiq nor it affiliates are party to any agreements where it/they receive(s) consideration in exchange for transferring information derived from its role as a claims agent under 28 U.S.C. § 156(c) to non-client third parties.

15.     Based on the foregoing, I believe that Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

*[Remainder of page intentionally left blank.]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: June 5, 2024
      New York, New York

*/s/ Kate Mailloux*

Kate Mailloux
Senior Director
Epiq Corporate Restructuring, LLC
777 Third Avenue, 12th Fl.
New York, NY 10017

# SCHEDULE 1

## List of Potentially Interested Parties

**Debtor**
- Credivalores – Crediservicios S.A.

**Current and Former Officers & Directors of the Debtor and Its Non-Debtor Affiliates (3-year lookback)**
- Carlos Eduardo Meza Guarnizo
- Gustavo Adrián Ferraro
- Jaime Francisco Buriticá Leal
- José Miguel Knoell Ferrada
- Juan Manuel Trujillo Sánchez
- Luis María Blaquier

**Top Unsecured Creditors**
- Alcaldia del Municipio
- American Smart System & Networks Ltda
- Americas Business Process Services SA
- Axesnet SAS BIC
- BAN100 S.A
- Banco de Bogota
- Banco de Occidente
- Bancolombia, S.A.
- Bank of New York Mellon as trustee of the unsecured notes due in 2025
- BRC Ratings - S Global S.A. Sociedad Calificadora de Valores
- Cardif Colombia Seguros Generales S.A.
- Central de Cobranzas SAS
- Cirion Technologies Colombia S.A.S
- Cobranza Nacional de Creditos S.A.S
- Contact Finanzas S.A.S
- Credibanco SA
- Cuatrecasas, Goncalves Pereira S.A.S
- Cybertech de Colombia LTDA
- Delima Marsh
- Dirección de Impuestos Nacionales DIAN
- Econtact Col SAS
- Experian Colombia SA
- Fiducolombia Sociedad Fiduciaria S.A.
- Finanza Inversiones S.A.S
- Finleco B P O SAS
- Fondo Nacional de Garantias
- Gomez Higuera Asociados SAS
- Grupo Consultor RA SAS
- Heinsohn Business Technology SA
- Inter Notes Euro Commercial Paper Program
- Interlan SAS
- IT Business & Finances Colombia SAS
- JJ Cobranzas y Abogados SAS
- Liberty Networks de Colombia S.A.S
- Mapfre Colombia Vida Seguros SA
- Metlife Colombia Seguros de Vida S.A
- Milenio PC SA
- Oracle Colombia LTDA
- Paul Hastings
- Pro Capital Sociedad de Bolsa SA
- Procesos & Canje SA
- Puntualmente SAS
- PWC Contadores y Auditores SAS
- Secretaria de Hacienda
- Sistema G & G SA
- Softwareone Colombia S.A.S
- Sonda de Colombia S A
- Systemgroup S.A.S
- Vision Software S.A.

**Lessors**
- A. Parra y CIA S EN C
- Caja de Sueldos de Retiro de La Policía Nacional
- Colventas S.A
- Empresa Inmobiliaria Cundinamarquesa
- Felipe Andres Martinez Moreno
- Imobiliaria e Ingenieria Arana & CIA S EN C
- Inmobiliaria Tonchala S.A.S
- Jorge Giraldo & CIA
- Miguel Angel Borrero Castiblanco
- Patrimonio Autónomo Estrategias Inmobiliarias

- Ricardo Leon Gomez
- Roger Augusto Paternina Villareal
- Vive de Lujo Valledupar S.A.S

## Material Contract Counterparties
- A. Parra y CIA S EN C
- Caja de Sueldos de Retiro de La Policía Nacional
- Colventas S.A
- Empresa Inmobiliaria Cundinamarquesa
- Felipe Andres Martinez Moreno
- Fitch Ratings Inc
- Imobiliaria e Ingenieria Arana & CIA S EN C
- Inmobiliaria Tonchala S.A.S.
- Jorge Giraldo & CIA
- Miguel Angel Borrero Castiblanco
- Patrimonio Autónomo Estrategias Inmobiliarias
- Ricardo Leon Gomez
- Roger Augusto Paternina Villareal
- Vive de Lujo Valledupar S.A.S

## Insurance Companies and Brokers/Agents
- Allianz Seguros S.A.
- Cardif Colombia Seguros Generales S.A.
- Chubb Seguros Colombia S.A.
- Panamerican Life de Colombia Compañía de Seguros, S.A.
- Seguros Generales Suramericana S.A.
- Seguros SURA Colombia

## Secured Creditors
- Ban100 S.A.
- Banco de Bogotá S.A.
- Banco de Occidente S.A.
- Banco Santander de Negocios Colombia S.A.
- Banco Santander S.A., Sucursal Uruguay
- BTG Pactual
- Citibank Colombia S.A.
- Fiduciaria Bancolombia S.A. Sociedad
- Fiduciaria Coomeva S.A.
- Systemgroup S.A.S.

- Ubs O'Connor LLC

## Banks
- Fiduciaria Bancolombia S.A. Sociedad Fiduciaria
- Finanza Inversiones S.A.S.
- Patrimonio Autónomo PA Credivalores UBS Gramercy

## Benefits/Payroll Providers
- Caja Compensación Familiar y EPS Compensar
- Caja de Compensacion Familiar de Fenalco del Tolima Comfenalco
- Caja de Compensación Familiar del Caquetá COMFACA
- Crear Network S.A.S. (Batches)
- Instituto Colombiano de Bienestar Familiar (ICBF)
- Seguros de Vida Suramericana S.A.
- Servicio Nacional de Aprendizaje (SENA)
- Softland Colombia S.A.S.(Payroll Software)

## Health Providers
- Aliansalud Entidad Promotora de Salud S.A
- Caja Compensación Familiar y EPS Compensar
- Capital Salud Entidad Promotora de Salud del Régimen Subsidiado S.A.S.
- Coosalud Entidad Promotora de Salud S.A.
- Entidad Promotora de Salud Famisanar S.A.S
- Entidad Promotora de Salud Sanitas S.A.
- EPS Suramericana S.A.
- Nueva Empresa Promotora de Salud S.A.
- Salud Total Entidad Promotora de Salud del Regimen Contributivo y del Regimen Subsidiado S.A.

## Severance Fund Administrator and related service providers
- Administradora de Fondos de Pensiones y Cesantías Protección S.A.

- Colfondos S.A. Pensiones y Cesantías
- Fondo Nacional del Ahorro
- Fondo Nacional del Ahorro - Cesantias
- La Administradora Colombiana de Pensiones - Colpensiones
- Skandia Pensiones y Cesantías S.A.
- Sociedad Administradora de Fondos de Pensiones y Cesantías Porvenir S.A.

**<u>Government and Regulatory Authorities</u>**
- Superintendencia de Sociedades
- Superintendencia Financiera

**<u>Taxing Authorities</u>**
- Alcaldia del Municipio Armenia
- Alcaldia del Municipio Barranquilla
- Alcaldia del Municipio Cali
- Alcaldia del Municipio Cartagena
- Alcaldia del Municipio Cucuta
- Alcaldia del Municipio Ibague
- Alcaldia del Municipio Manizales
- Alcaldia del Municipio Medellin
- Alcaldia del Municipio Neiva
- Alcaldia del Municipio Pereira
- Alcaldia del Municipio Santa Marta
- Alcaldia del Municipio Sincelejo
- Alcaldia del Municipio Valledupar
- Dirección de Impuestos y Aduanas Nacionales de Colombia (DIAN)
- Secretaria de Hacienda Bogota

**<u>Top 5 Equity Holders</u>**
- Acon Colombia Consumer Finance Holdings, S.L.
- Acon Consumer Finance Holdings II, S.L.
- Crediholding S.A.S.
- Davalia Gestión de Activos S.L.
- Lacrot Inversiones 2014, S.L.U.

**<u>Utilities</u>**
- Empresa de Aguas de Girardot, Ricaurte y La Region S.A. E.S.P.
- Aguas de La Sabana
- Aguas de Manizales
- Aguas de Monteria
- Aguas de Tunja
- Aguas Kpital de Cucuta
- Air-E
- Colombiana de Comercio S.A. Corbeta S.A. y /o Alkosto S.A.
- Almacenes Éxito
- Acueducto Metropolitano de Bucaramanga S.A. E.S.P.
- Aqua Occidente
- Aqualia Latinoamérica S.A. E.S.P
- Caribemar de La Costa
- Celsia Colombia S.A. E.S.P.
- Centrales Eléctricas de Norte de Santander S.A.
- Centurylink
- Central Hidroelectrica de S.A. E.S.P.
- ENEL Colombia S.A. E.S.P
- Colombia Telecomunicaciones
- Comunicacion Celular S.A.
- Compañía de Jesus
- Compañía Energetica de Occidente
- Empresa de Acueducto y Alcantarillado de Villavicencio E.S.P.
- Empresa de Energía de Boyacá S.A E.S.P.
- Edificio QBE Central
- Electrificadora del Caqueta
- Electrificadora del Meta
- Centrales Electricas del Huila S.A.
- Empresas Municipales de Cali EICEESP
- Empresa de Servicios Públicos de Valledupar S.A.
- Empresa de Obras Sanitarias de Caldas
- Empresa de Energia del Quindio
- Empresas Publicas de Armenia
- Energia de Pereira
- Enertotal S A E S P
- Empresas Públicas de Medellín
- EPM Telecomunicaciones
- Empresa de Recursos Tecnológicos S.A.
- Electrificadora de Santander S.A. E.S.P.
- Empresa de Servicios Públicos del Distrito de Santa Marta E.S.P.
- Empresa de Telecomunicaciones de Bogotá S.A.

- Hernando Diaz Lopez
- Las Ceibas
- Empresa de Servicios de Florencia SERVAF S.A E.S.P.
- Sociedad Productora de Energía de San Andrés y Providencia S.A. E.S.P.
- Triple A SA ESP

**<u>Litigation Counterparties and Pending Lawsuits</u>**
- Eddy Alessandro Álvarez Sánchez
- Pedro Pablo Castillo Tamayo
- Superintendencia de Industria y Comercio

**<u>US Trustee and Staff SD NY</u>**
- Alaba Ogunleye
- Amanda D. Cassara
- Andrea B. Schwartz
- Andy Velez-Rivera
- Annie Wells
- Brian S. Masumoto
- Daniel Rudewicz
- Ercilia A. Mendoza
- Greg M. Zipes
- Ilusion Rodriguez
- Linda A. Riffkin
- Madeleine Vescovacci
- Mark Bruh
- Mary V. Moroney
- Joseph Nadkarni
- Paul K. Schwartzberg
- Rachael E Siegel
- Shannon Scott
- Shara Cornell
- Sylvester Sharp
- Tara Tiantian
- Valentina Vlasova
- Victor Abriano

**<u>Judges and Staff S.D. N.Y. Bankruptcy Court</u>**
- Chief Judge Martin Glenn
- Judge Cecelia G. Morris
- Judge David S. Jones
- Judge James L. Garrity, Jr.

- Judge John P. Mastando
- Judge Lisa G. Beckerman
- Judge Michael E. Wiles
- Judge Philip Bentley
- Judge Sean H. Lane
- Aileen Ramia
- Arielle Ambra
- Caroline Ellis
- Carolyn Indelicato
- Cathy Shu
- Chantel Barrett
- Christine Azzaro
- Courtney N. Blinn
- Daniel McCarthy
- deanna Anderson
- Dorie Arthur
- Dwij Patel
- Emilie Simone
- Francis O'Rourke
- Greg White
- Griselda Cabrera
- Ilayna Guevrekian
- Jacqueline dePierola
- Jiawei Lin
- Jillian Ingrisano
- John Kuebler
- Leslie Wybiral
- Liza Ebanks
- Lorraine Echevarria
- Lynda Calderon
- Maria Rodriguez-Castillo
- Matthew Smith
- Paul Veazey
- Philip Lockwood-Bean
- Sarah Rosenthal
- Vanessa Ashmeade
- Vincent Puzak
- Willie Rodriguez

**<u>Clerk of the Court</u>**
- Vito Genna

**<u>Professionals</u>**
- Baker & McKenzie LLP
- BCP Securities, Inc.

- Bensons Clark Abogados
- Borrero & Illidge Advisors SAS
- Epiq Corporate Restructuring LLC
- FTI Consulting Canada ULC
- Gomez Higuera Asociados S.A.S.
- MA Legal S.A.S
- My Brand Legal

**<u>Shareholders</u>**
- ACON Consumer Finance Holdings II, S.L.
- ACON Consumer Finance Holdings, S. de R.L.
- Crediholding S.A.S. – Seinjet Family
- Davalia Gestión de Activos S.L
- GDA Luma
- Gramercy Funds Managements LLC
- Lacrot Inversiones 2014 S.L.U.

**<u>Permitted Holders</u>**
- ACON Investments, L.L.C.
- David Seinjet
- GDA Luma Capital Management, L.P.
- Gramercy Funds Managements LLC

**<u>Related Parties</u>**
- Asesorias Financieras de Credito S.A.S
- Ban100 S.A.
- Finanza Inversiones S.A.S.

## SCHEDULE 2

**Client Match List**

CENTURYLINK

**<u>Exhibit C</u>**

**Services Agreement**



February 1, 2024

Steven Sandretto, Esq.
Baker McKenzie
452 Fifth Avenue
New York, NY 10018

Dear Steven and all,

It was great to talk with the team yesterday! Thank you for the opportunity to submit a proposal for your client. We believe the Epiq team would be the perfect fit for the company's expected exchange offer and concurrent prepackaged plan solicitation.

Exchange offers typically have an extremely high threshold of participation required and company's often look at other options, including a concurrent prepackaged plan solicitation, which must be handled scrupulously, since it will be relied upon in the event the exchange offer cannot be closed. Epiq has worked on a number of exchange offers with stapled prepackage plans – and that is really the cornerstone of our solicitation and restructuring practice, since we have deep expertise in both aspects, including how the two should be handled when being run concurrently.

Exchange offer experience includes CIT Group's concurrent exchange offer and prepackaged plan involving hundreds of bond issues, as well as a number of combination offer/prepack assignments in which the exchange offer prevailed including:

- Aquilex Holdings LLC
- Arendal, S. de R.L. de C.V.
- Martin Midstream
- Mrs Fields Famous Brands
- Roust Trading Limited
- Voyager Aviation

The team has worked on numerous stand-alone exchange offers as exchange agent and information agent, including most recently for WeWork and Shutterfly.

Epiq is also well known for its work as balloting agent on a significant number of traditional and prepackaged plan solicitations. In addition to our work on extended bankruptcy cases, Epiq has handled a host of restructurings for companies involving a relatively brief stay in bankruptcy after careful planning and execution.
Epiq's team handled the solicitation and related case work on a number of these over the last few years, including:

- Air Methods
- Akumin
- Denbury



- GenOn
- Government Development Bank of Puerto Rico (Title VI under PROMESA)
- Inversiones Latin America Power Ltda
- Jones Energy
- Lumileds
- Quorum Health
- QualTek
- Perfumania
- Roust Corporation
- Venator

Epiq provides a complete suite of services for handling a stapled exchange offer and prepackaged plan solicitation, without the burden of hiring multiple parties to segregate those processes. In addition, in the event a filing occurs, Epiq's expert case team can assist with all aspects including:

*Pre-Filing Administrative Services*
Only Epiq has a proprietary intake platform, increasing ease of data collection and reducing costs for collecting, tracking and using information. Epiq's team can expertly and efficiently assist your client with the preparation of petitions, exhibits to first day pleadings, and other key documents.

*Claims Administration Services*
Epiq's experts use our proprietary technology platform to drive efficiencies in the case filing process, providing 24/7 web access to claims status and all relevant case data, as well as secure online claim filing and claims reconciliation using Epiq's proprietary web-based claims reconciliation platform, all of which increases efficiencies and cost savings.

*Unrivaled Core Support Services*
- Noticing Services
- Contract Review Services
- Call Center Services
- Virtual Data Room Services (VDR)
- Disbursement Services

Our proposal is attached in the form of a draft agreement, with an outline of the expected services that may be needed. In addition to our hourly rates and other fees, we will apply our customary exchange agent fee, but have reduced it from $75K to $50K for this project, as shown in the pricing schedule of our draft agreement. We very much hope to have the chance to work with you on this. Please let me know if you need any additional information or would like to discuss anything further!

Regards,

Jane Sullivan
Executive Vice President
(646) 548-4686



# EPIQ CORPORATE RESTRUCTURING

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between the undersigned parties, referred to herein as "Epiq" and "Client" as of the Effective Date, as defined below. In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

**1. <u>Services.</u>**

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "<u>Agreement</u>"), Epiq agrees to furnish Client with the services set forth on the <u>Services Schedule</u> hereto (the "<u>Services</u>") in connection with a corporate restructuring. Services will be provided on an as needed basis and upon request or agreement of Client. Charges for the Services will be based on the pricing schedule provided to Client hereto (the "<u>Pricing Schedule</u>"). The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service. Client may request separate Services or all of the Services reflected in the Pricing Schedule.

**2. <u>Term.</u>**

This Agreement shall become effective on the date of its acceptance by both Epiq and Client; provided, however, Epiq acknowledges that Bankruptcy Court approval of its engagement may be required in order for Epiq to be engaged in a chapter 11 proceeding, if applicable. The Agreement shall remain in effect until terminated: (a) by Client, on thirty (30) days' prior written notice to Epiq and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq; or (b) by Epiq, on ninety (90) days' prior written notice to Client and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq.

**3. <u>Charges.</u>**

3.1 For the Services and materials furnished by Epiq under this Agreement, Client shall pay the fees, charges and costs set forth in the Pricing Schedule. Epiq will bill Client monthly; <u>provided, however</u>, that Epiq will provide an estimated invoice prior to the closing of the exchange transaction which shall be due and payable at closing. All invoices shall be due and payable upon receipt.

3.2 Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 2, 2025. If such



annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to Client of such proposed increases.

3.3    Client agrees to pay Epiq for all materials necessary for performance of the Services under this Agreement (other than computer hardware and software) and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items.

3.4    Client shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of Client, notwithstanding how such taxes may be designated, levied or based. This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5    Client shall pay to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission. Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule; provided, however, that Epiq employees shall not be required to travel in connection with this engagement and shall attend all meetings or hearings telephonically.

3.6    In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7    To the extent permitted by applicable law, Epiq shall receive a retainer in the amount of $40,000 (the "Retainer") that may be held by Epiq as security for Client's payment obligations under the Agreement. The Retainer is due upon execution of this Agreement. Epiq shall be entitled to hold the Retainer until the termination of the Agreement. Following termination of the Agreement, Epiq shall return to Client any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

## 4.    Confidentiality.

Client data provided to Epiq during the term of this Agreement in connection with the Services ("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data. Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any Client Data or other Client materials provided to Epiq in the performance of this Agreement.



**5. Title to Property.**

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by Client (collectively, the "Property"). Charges paid by Client do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services. Client agrees not to copy or permit others to copy any of the Property.

**6. Disposition of Data.**

6.1  Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data. Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq. Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, it has full authority to deliver Client Data to Epiq. Client agrees, represents and warrants to Epiq that it has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services. Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

6.2  Any Client Data, programs, storage media or other materials furnished by Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the services provided pursuant to this Agreement are paid for in full, or until this Agreement is terminated with the services provided herein having been paid for in full. Client shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq. Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law). Client agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of Client Materials. Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Materials or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice of its intent to dispose of such data and media.

**7. Indemnification.**

Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs

3



(including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person. Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which Client is aware with respect to the services provided by Epiq under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

## 8. Limitation of Liability

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, THIS SECTION SHALL CONTROL.

(a) EACH PARTY AND ITS RESPECTIVE AGENTS SHALL NOT HAVE ANY OBLIGATION OR LIABILITY TO THE OTHER PARTY OR TO ANY THIRD PARTY (WHETHER IN TORT, EQUITY, CONTRACT, WARRANTY OR OTHERWISE AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE, PRODUCT LIABILITY, OR STRICT LIABILITY IN ACCORDANCE WITH APPLICABLE LAW, RULE OR REGULATION) FOR ANY INDIRECT, GENERAL, PUNITIVE, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO BUSINESS INTERRUPTION, LOST WAGES, BUSINESS OR PROFITS, OR LOSS OF DATA INCURRED BY CLIENT OR ANY OTHER PERSON, ARISING OUT OF RELATING TO THIS AGREEMENT, OR ANY USE, INABILITY TO USE OR RESULTS OF USE OF THE SERVICES OR SOFTWARE OR OTHERWISE, EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(b) EPIQ SHALL NOT BE LIABLE TO CLIENT FOR ANY LOSSES REGARDLESS OF THEIR NATURE THAT ARE CAUSED BY OR RELATED TO A FORCE MAJEURE EVENT.

(c) THE TOTAL LIABILITY OF EACH PARTY AND ITS AGENTS TO THE OTHER PARTY OR TO ANY THIRD PARTY FOR ALL LOSSES ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE SERVICES SHALL NOT EXCEED THE TOTAL AMOUNT PAID BY THE CLIENT TO EPIQ FOR THE PARTICULAR SERVICES WHICH GAVE RISE TO THE LOSSES IN THE IMMEDIATE SIX (6) MONTHS PRIOR TO THE DATE OF THE ACTION GIVING RISE TO THE ALLEGED LOSS.



**9. Representations / Warranties.**

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

**10. Confidential On-Line Workspace**

Upon request of Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to Client pursuant to this Agreement; and (b) with the consent of Client and/or its designees, publish documents and other information to such confidential workspace. By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

**11. General**

11.1 No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

11.2 This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld. The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

11.3 This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law. Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in New York, New York and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that each party may seek interim relief in court as it deems necessary to protect its confidential information and intellectual property rights. Any arbitration award rendered pursuant to this provision shall be enforceable worldwide.

11.4 The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

11.5 Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

11.6 In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.



11.7 Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

11.8 This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

11.9 All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein. The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.

11.10 Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

        If to Epiq:

                Epiq Corporate Restructuring, LLC
                777 Third Avenue, 12th Floor
                New York, New York 10017
                Attn: Brad Tuttle

        If to Client:

        With a copy to:

                Baker McKenzie
                452 Fifth Avenue
                New York, NY 10018
                Attn: Steven Sandretto, Esq.



11.11 Invoices sent to Client should be delivered to the following address:

        Email:

11.12   The "Effective Date" of this Agreement is February  6  , 2024.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ CORPORATE RESTRUCTURING, LLC**

Name:  Brad Tuttle
Title:   Senior Managing Director and GM

**CLIENT**

By:____
Name:
Title:



## SERVICES SCHEDULE

### *Exchange Offer*

➢ Epiq would provide the following exchange agent services in connection with the exchange offer event:

- Review the offering memorandum for all procedural and timing aspects.

- If applicable, confer with DTC about whether the ATOP system can be used for the transaction.

- Presuming DTC agrees, establish the offer on DTC's ATOP platform, act as ATOP agent for the offer, and coordinate the transaction with DTC on all exchange aspects.

- Coordinate the distribution of applicable exchange offer documentation to beneficial owners by forwarding the appropriate documents to the corporate action departments of the banks and brokerage firms holding the securities (or their agent), who in turn will contact their beneficial owners.

- Receive and process eligibility letters, if applicable, and coordinate with counsel regarding same.

- Respond to any inquiries from back offices and beneficial owners.

- Coordinate the DTC eligibility of any new notes being issued in the exchange offer, with the cooperation of the indenture trustee.

- Following expiration (and any early deadline, if applicable), prepare formal reporting of results.

- In the unlikely event DTC does not agree to make the ATOP system available for the offer, arrange for the DWAC withdrawal of any exchanged notes and the corresponding DWAC deposit of the new notes via DWAC deposit, which DWAC withdrawals and DWAC deposits must be approved by the respective indenture trustee.

- Prepare the exchange entitlement spreadsheet for DTC based upon transaction details and DTC requirements for review and approval by the company's financial advisors and then DTC.

### *Prepackaged Plan Solicitation*

➢ Provide balloting services in connection with the solicitation process for any prepackaged plan solicitation, including:

- Consult with the company and its counsel regarding timing issues, voting and tabulation procedures, and documents needed for the vote.

- Review of voting-related sections of the disclosure statement, plan, ballots, and master ballots for procedural and timing issues.



- Work with the company to request appropriate information from DTC and the indenture trustee.

- Coordinate the distribution of voting documents to beneficial owners by forwarding the appropriate documents to the proxy departments of the banks and brokerage firms holding the securities (or their agent), who in turn will contact their beneficial owners for voting.

- Respond to telephone inquiries from voting parties regarding the disclosure statement and the voting procedures.

- Receive and examine all ballots and master ballots cast by voting parties.

- Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a certification for filing with the court, if applicable.

➢ Undertake such other duties as may be agreed upon between Epiq and Client.

### *Additional services, only if applicable*

### Call Center

➢ Provide state-of-the-art Call Center facility and services, including (as needed):
- Create frequently asked questions, call scripts, escalation procedures and call log formats.
- Record automated messaging.
- Train Call Center staff.
- Maintain and transmit call log to Client and advisors.

### Schedules/ Statement Preparation

➢ Assist the Debtors with administrative tasks in the preparation of their bankruptcy Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"), including (as needed):
- Coordinate with the Client and its advisors regarding the Schedules and Statements process, requirements, timelines and deliverables.
- Create and maintain databases for maintenance and formatting of Schedules and Statements data.
- Coordinate collection of data from Client and advisors.
- Provide data entry and quality assurance assistance regarding Schedules and Statements, including, specifically, the creation of Schedule G.



### Claims Management

➤ Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form).

➤ Provide a secure on-line tool through which creditors can file proofs of claim and related documentation, eliminating costly manual intake, processing and data entry of paper claims and ensuring maximum efficiency in the claim-filing process.

➤ Create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interests).

➤ Process all proof of claim/interest submitted.

➤ Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours.

➤ Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

- Name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
- Date received;
- Claim number assigned; and
- Asserted amount and classification of the claim.

➤ Create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket.

➤ Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line.

➤ Implement necessary security measures to ensure the completeness and integrity of the claims registers.

➤ Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e).



> Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office.

## Noticing

> Prepare and serve required notices in the potential Chapter 11 case, including:

- Notice of the commencement of the potential Chapter 11 case and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

- Notice of any auction sale hearing;

- Notice of the claims bar date;

- Notice of objection to claims;

- Notice of any hearings on a disclosure statement and confirmation of the plan of reorganization; and

- Other miscellaneous notices to any entities, as the debtor or the Court may deem necessary or appropriate for an orderly administration of the potential Chapter 11 case.

> After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

> Update claim database to reflect undeliverable or changed addresses.

> Coordinate publication of certain notices in periodicals and other media.

> Distribute Claim Acknowledgement Cards to creditor having filed a proof of claim/interest.

## Miscellaneous

> Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Client.

> Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

> Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

> Provide temporary employees to the Clerk's Office to process claims, as necessary.



# PRICING SCHEDULE

## SOLICITATION/ EXCHANGE AGENT HOURLY RATES

| Title | Rates |
|---|---|
| Solicitation Consultant | $215.00 |
| Executive Vice President, Solicitation | $250.00 |

## EXCHANGE/ DISTRIBUTION AGENT FEE

| | |
|---|---|
| Exchange Agent Fee<br>(Standard Epiq Agent fee for events such as exchange offer, tender offer, consent, election, subscription, mandatory exchange, distribution, or other special event) | $50,000.00 |

## BANK ACCOUNT

$10,000 to establish account plus hourly charges to administer.

## OTHER RATES; ONLY IF APPLICABLE

### *Other Hourly Rates*

| Title | Rates |
|---|---|
| Clerical/Administrative Support | $35.00 – $55.00 |
| IT / Programming | $65.00 – $85.00 |
| Case Managers | $85.00 – $165.00 |
| Consultants/ Directors/Vice Presidents | $165.00 – $195.00 |

## CLAIMS AND NOTICING RATES[1]

| | |
|---|---|
| Printing | $0.10 per image |
| Personalization / Labels | WAIVED |
| Envelopes | VARIES BY SIZE |
| Postage / Overnight Delivery | AT COST AT PREFERRED RATES |
| E-Mail Noticing | WAIVED FOR MSL[*] |

---

[1]  Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.

[*] Quoted at time of request for high volume blasts to all creditors



| | |
|---|---|
| Fax Noticing | $0.05 per page |
| Claim Acknowledgement Letter | $0.05 per letter |
| Publication Noticing | Quoted at time of request |

## DATA MANAGEMENT RATES

| | |
|---|---|
| Data Storage, Maintenance and Security | $0.10 per record/month |
| Electronic Imaging | $0.10 per image; no monthly storage charge |
| Website Hosting Fee | NO CHARGE |
| CD- ROM (Mass Document Storage) | Quoted at time of request |

## ON-LINE CLAIM FILING SERVICES

| | |
|---|---|
| On-Line Claim Filing | NO CHARGE |

## CALL CENTER RATES

| | |
|---|---|
| Standard Call Center Setup | NO CHARGE |
| Call Center Operator | $55 per hour |
| Voice Recorded Message | $0.34 per minute |

## OTHER RATES

| | |
|---|---|
| Custom Software, Workflow and Review Resources | Quoted at time of request |
| Strategic Communication Services | Quoted at time of request |
| Escrow Services | Quoted at time of request /competitive rates |
| eDiscovery | Quoted at time of request, bundled pricing available |
| Virtual Data Room -- Confidential On-Line Workspace | Quoted at time of request |
| Disbursements -- Check and/or Form 1099 | Quoted at time of request |
| Disbursements -- Record to Transfer Agent | Quoted at time of request |