UNITED STATE  B NK UPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 24-10837-dsj

4    - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    CREDIVALORES – CREDISERVICIOS S.A.,

8

9          Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - x

11                  United States Bankruptcy Court

12                  One Bowling Green

13                  New York, NY  10004

14

15                  May 20, 2024

16                  12:01 PM

17

18

19

20

21   B E F O R E :

22   HON DAVID S. JONES

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  UNKNOWN

1    HEARING re Hybrid Hearing RE: First Day Hearings.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    BAKER MCKENZIE LLP

4         Attorneys for Debtor

5         452 Fifth Avenue

6         New York, NY 10018

7

8    BY:  PAUL KEENAN

9         BENJAMIN DAVIS

10        REGINALD SAINVIL

11        DIONNA SHEAR

12

13   DAVIS POLK WARDWELL LLP

14        Attorneys for Ad Hoc Group

15        450 Lexington Avenue

16        New York, NY 10017

17

18   BY:  ANGELA LIBBY

19        STELLA LI

20        TIMOTHY GRAULICH

21

22

23

24

25

1   NORTON ROSE FULBRIGHT US LLP

2        Attorneys for The Bank of New York Mellon

3        1301 Avenue of The Americas

4        New York, NY 10020

5

6   BY:  FRANCISCO VAZQUEZ

7

8   UNITED STATE DEPARTMENT OF JUSTICE

9        Attorneys for The United States Trustee

10       One Bowling Green

11       New York, NY  10004

12

13  BY:  GREG ZIPES

14       RACHEL SIEGEL

15

16  ALSO APPEARING:

17  JAIME FRANCISCO BURITICA LEAL, CEO of Debtor

18  CHRISTINA POTTER, Interpreter

19

20

21

22

23

24

25

1              P R O C E E D I N G S

2          THE COURT:  Welcome and nice to see you all.

3     We're here for first-day hearings in Credivalores-

4     Crediservicios, 24-10837.  So why don't (indiscernible) take

5     appearances first and then I'll let the debtor make opening

6     remarks as you see fit, and then anybody else who wants to

7     be heard can as well.

8          MR. KEENAN:  Yes, Your Honor.  My name is Paul

9     Keenan from Baker McKenzie LLP proposed counsel to the

10    debtors.  And with me in the courtroom today are Benjamin

11    Davis, Mr. Reginald Sainvil, and Ms. Dionna Shear.  And also

12    with us in the courtroom today is Debbie (Indiscernible)

13    from FTI Consulting, the proposed financial advisor to the

14    debtors.

15          And with us virtually today I believe is Jaime

16    Francisco Buritica Leal, who's the Chief Executive Officer

17    of the debtor.  And in addition I believe also virtually

18    should be Christina Potter, who's a translator from the list

19    of approved translators from SDNY as Mr. Leal speaks some

20    English but not fluently.

21          THE COURT:  Okay.  And do you anticipate live

22    testimony?

23          MR. KEENAN:  No, we do not.

24          THE COURT:  Okay.  Let's, I guess -- well, I'll

25    hear from -- take appearances from the U.S. Trustee's

1    Office.

2              MR. ZIPES:  Good afternoon, Your Honor.  Greg

3    Zipes with the U.S. Trustee's Office, and good to be in the

4    courtroom with you.  With me --

5              THE COURT:  Yeah, likewise.

6              MR. ZIPES:  With me is my colleague Rachael Segal.

7              THE COURT:  Hi.  And is anyone here for the so-

8    called Ad Hoc Noteholder Group?

9              MS. LIBBY:  Your Honor, Angela Libby of Davis Polk

10   and Wardwell on behalf of the Ad Hoc Group of Noteholders.

11   With me in the courtroom is my colleague Stella Li and with

12   us virtually on the Zoom is my colleague Tim Graulich.

13             THE COURT:  Okay.  Great.  Thank you.  And anyone

14   else here expecting to participate?  Okay.  No one said yes.

15             INTERPRETER:  Your Honor?

16             THE COURT:  Yes, go ahead.

17             INTERPRETER:  A Spanish interpreter.  How are you,

18   Your Honor.

19             THE COURT:  Great.  Hi.  How are you?  I think

20   that you're probably going to have no work except for

21   interpreting for Mr. Leal.  But if he's unexpectedly called,

22   we'll put you into work live, but it sounds like that's not

23   anticipated.  Okay?

24             INTERPRETER:  Thank you, Your Honor.

25             THE COURT:  Thank you.  Ms. Potter, where are you

1    physically located?

2              INTERPRETER:  In North Bergen, New Jersey, Your

3    Honor.

4              THE COURT:  Okay.  Not Colombia.

5              INTERPRETER:  No, I'm right past the river from

6    Southern District.

7              THE COURT:  Okay.  Fair enough.  Thank you.  Okay.

8              MR. VAZQUEZ:  (Indiscernible), Your Honor.  Good

9    morning.  Francisco Vazquez from Norton Rose Fulbright on

10   behalf of The Bank of New York Mellon, indentured trustee

11   here.

12             THE COURT:  Great.  Nice to see you, Mr. Vazquez.

13   Thanks.  Yeah.  Anyone else (indiscernible) remotely who

14   wants to state an appearance?  Okay.  No one else said yes,

15   so Mr. Keenan, I'll turn it over to you.  You can -- I'll

16   tell you I've read all the papers and I've read the limited

17   objection that was filed as well as the modified proposed

18   order that debtors filed.  So I'll just turn it over to you

19   now that you know where I am at and let you introduce the

20   case and proceed as you wish.

21             MR. KEENAN:  Sure, Your Honor.  And if you'd like,

22   I can give you a brief overview of the debtor's finances and

23   operations.  Would you still like that, or do you think it's

24   unnecessary?

25             THE COURT:  It's up to -- very brief for my

1    purposes, and if you want to say anything more for general

2    consumption that's fine too.  I don't want to hamstring you.

3    I'm all yours, but I'm pretty up to speed.  I -- let me just

4    tell you what I've absorbed.  So this is -- the debtor is an

5    entity that provides payroll lending and other lending or

6    financial services, although it's not a bank, for

7    individuals primarily in Colombia who are generally

8    relatively underserved otherwise by the financial industry.

9            I understand that this is presented as a pre-pack

10   bankruptcy where everything is going to pass through or be

11   unimpaired other than noteholders.  The debtors has filed it

12   -- sorry, the debtors have explained that at least a major

13   reason for the need for this proceeding and restructuring

14   the debt at issue is that they -- or the debtor's income is

15   in Colombian currency and their expenditures are, to meet

16   their financing needs, are in American currency.  And

17   valuation swings have taken a financial toll.

18           And so you're seeking essentially a clean and

19   swift path through bankruptcy via a pre-pack plan to really

20   simply implement a -- what you consider to be a pre-

21   bankruptcy approved restructuring of that note class.

22   That's what I've absorbed.  And I know that we have the

23   objection of the so-called Ad Hoc Group of Noteholders who

24   expressed some concerns about excluded balance and the true

25   extent of consent of the noteholder group.  So that's where

1    I'm at.  If you want to say anything beyond that, feel free.

2              I always feel like first days are not as -- not so

3    much me focused necessarily as all other proceedings are.

4    So if you want to add anything or say anything, you're

5    welcome to, but otherwise we can just get down right to it.

6    Whatever you prefer.

7              MR. KEENAN:  Sure, Your Honor.  And thank you for

8    the summation.  I, quite frankly, couldn't have put it

9    better myself, and I really appreciate that the Court

10   studied the papers so closely before we filed.  And in fact,

11   I would say that we're probably -- I'm glad I asked because

12   that may shrink my presentation by ten minutes, and I'll

13   just speak --

14             THE COURT:  Okay.

15             MR. KEENAN:  -- for just a minute or two.  And

16   what we'll do is, you know, as is customary in bankruptcy

17   court, Your Honor, we have asked two of our associates and

18   one of our junior partners --

19             THE COURT:  Mm-hmm.

20             MR. KEENAN:  -- who were involved in researching

21   and preparing for first-day motions to give them an

22   opportunity to go ahead and (indiscernible).

23             THE COURT:  That is great.  I always not just

24   welcome that, I encourage it.  So that's wonderful.

25             MR. KEENAN:  Yes, Your Honor.  Thank you.  And I

1    can also report that we had a lengthy dialogue with the U.S.

2    Trustee's Office on Friday afternoon to go through the

3    papers.  I believe that we've resolved all the issues.

4    There may be one or two lingering, but I believe we resolved

5    them.

6            Just from a high level, what I would say is that

7    when we will handle the scheduling motion as I call it and

8    the committee motion last.  We have an agreement with the

9    U.S. Trustee to continue the motion on -- regarding the

10   creditor's committee until the second-day hearing, which

11   will be in approximately three weeks' time I presume.  And

12   on the scheduling motion, I believe with the black line that

13   we filed shortly before the hearing with the court, we

14   confirmed with counsel with the, as you put it, the so-

15   called Ad Hoc Committee.  We believe that that black line

16   resolves all of their objections with the exception of one

17   or two, and I believe we can address those as well.

18           THE COURT:  Okay.

19           MR. KEENAN:  Your Honor, I would just make a quick

20   note about -- so I won't describe the debtor's finances and

21   operations.  I won't describe the capital structure of the

22   debtor.  I also won't describe the overall call it terms of

23   the plan and the exchange offer because they're all well set

24   forth in the Declaration of the Chief Executive Officer

25   Jaime Francisco Buritica Leal in support of the Chapter 11

1    plan -- excuse me, petition and first-day pleadings, which

2    can be found at Docket Entry Number 4.

3            And perhaps I should take a moment, Your Honor, to

4    introduce that declaration into evidence obviously subject

5    to cross later on if someone would so choose just as that

6    declaration is the primary support for all the first-day

7    proceeding today.

8            THE COURT:  Okay.  Does anyone have any objection

9    to the admission in evidence of the declaration of Mr. Leal?

10   Hearing no objection, it's received.  And I'll just ask does

11   anyone intend to cross-examine Mr. Leal?

12           MR. ZIPES:  Your Honor, Greg Zipes with the U.S.

13   Trustee's Office.  I don't have any present intention.  I'll

14   say it like that.

15           THE COURT:  Okay.  Right.  You had -- yes, it's

16   not a -- this is for planning purposes, not a permanent

17   waiver question.  So we will plan on not having live

18   testimony from Mr. Leal subject to anybody's right during

19   the course of the hearing to request it.

20           MR. KEENAN:  Yes, Your Honor.  Thank you.  So if I

21   will then, Your Honor, instead of summarizing those issues,

22   like I said, this will -- you know, my presentation will

23   just be one or two minutes then before we get into the

24   first-day motions.  But I just wanted to take a moment to

25   speak about foreign debtors and prepackaged Chapter 11 plans

1  because it may seem a bit odd.  Perhaps Your Honor has never

2  seen a foreign debtor proposed pre-package plan before.

3       But just take a -- there's a fair amount of

4  precedence for it, and I thought the Court might just kind

5  of appreciate some of the background.  As the Court's aware,

6  prepackaged bankruptcies are very a well-established

7  practice even for companies that are based outside of the

8  United States.

9       Prepackaged Chapter 11 cases have been widely used

10  in the U.S. since the 1980s and become even more prevalent

11  in the last ten years, and the bankruptcy rules and the

12  Bankruptcy Code, and the Federal Rules of Bankruptcy

13  Procedure expressly contemplate the filing of prepackaged

14  bankruptcy cases.  In particular, Rule 3018(b) provides for

15  voting on a plan of reorganization prior to the commencement

16  of the case.  And Section 1121 permits Chapter 11 plans to

17  be filed at the same time as a company's bankruptcy

18  petitions.

19       Your Honor, there's no prohibition of foreign

20  companies filing a prepackaged Chapter 11 case.  In fact,

21  it's quite common for foreign issuers' dollar-denominated

22  bond debt, also known as Rule 144(a) issuers, to file a

23  prepackaged Chapter 11 case.  We're aware, Your Honor, of at

24  least six companies based in Latin America that have issued

25  dollar-denominated bond debt governed by New York law have

1    restructured such debt through a Chapter 11 prepackaged

2    bankruptcy case in the last several years.  And I can list

3    those cases, Your Honor, just if you wanted to refer to them

4    in the future.

5                THE COURT:  Sure.

6                MR. KEENAN:  One is --

7                THE COURT:  I think you dropped a footnote within

8    your --

9                MR. KEENAN:  I think we did, Your Honor.

10                THE COURT:  Something, but you may as well --

11                MR. KEENAN:  Yes.

12                THE COURT:  But say it now.  It's helpful to just

13    hear.

14                MR. KEENAN:  Sure.  So there are six that I'm

15    aware of, and there may even be more.  Five of the six were

16    actually filed here in the Southern District of New York.

17    One of them was quite recent.  It was just the end of last

18    calendar year, Inversiones Latin America Power Ltda.  They

19    restructured $408,000 in dollar-denominated bond debt

20    through a 43-day prepackaged Chapter 11.  Grupo Posadas

21    filed a case here in 2021 where they restructured 393

22    million in bond debt through a 49-day prepackaged Chapter

23    11.

24                Automotores Gildemeister, which was just a few

25    years ago, filed a case here in this district where they

1    restructured $570 million in U.S. dollar denominated bond

2    debt in a 70-day prepackaged case.  Maxcom

3    Telecommunications in 2019 restructured $100 million in bond

4    debt in a 58-day prepackaged Chapter 11.  Inversiones

5    Alsacia restructured $365 million bond debt through a 59-day

6    prepackaged Chapter 11.  And Your Honor, I believe that our

7    office calculated those dates, those timelines from petition

8    date to effective date.  So we looked at the petition date

9    and the notice of effective date.

10            And the reason why I wanted to highlight those

11   cases, Your Honor, is just to, when we get to the scheduling

12   motion in terms of the schedule, we tried to propose a

13   schedule that fits within those cases.  You know, we've -- I

14   mean, it was rather interesting, Your Honor.  As we were

15   getting prepared for this case, it was somewhat timely.  The

16   Southern District of New York Bankruptcy Court issued

17   heavily revised guidelines for prepackaged Chapter 11 cases.

18   I believe it was on February 4th.

19            THE COURT:  Right, and I was glad to see you

20   referenced them and those are the fruit of some work we've

21   been doing with representatives of the commercial bar to

22   kind of update our procedures and make sure we're current

23   compared to what's happening nationally and how the practice

24   has evolved.

25            MR. KEENAN:  Sure, Your Honor.  So in our office

1   we all printed them out.  Here's my well-worn bound copy of

2   it.  We did everything we could.  We studied the guidelines

3   very closely to make sure that we followed them as closely

4   as we possibly could.  As Your Honor's aware, you know, that

5   does provide for I think it's called the rapid prepack

6   process.  But we appreciated one of the footnotes in the

7   guidelines that said maybe that's not appropriate for a

8   foreign debtor.

9           And so for that reason what we did was we looked

10  at those other Latin American prepacks, we considered that

11  footnote, and essentially we're asking for -- I believe the

12  schedule that we received from your deputy clerk was

13  something like June 27th for the confirmation date, which is

14  approximately five weeks from now.

15          And so if you have the confirmation five weeks

16  from now plus call it two weeks after that to get to the

17  effective date, you're talking about a prepacked timeframe

18  that's well within all the other cases that I mentioned,

19  approximately the same amount of time.  So we're not asking

20  the Court to do anything with undue haste.  We're trying to

21  keep it within similar prepacks for foreign debtors.

22          THE COURT:  Right.  Okay.  That's great.  And I

23  see your modified proposed scheduling order has a sequence

24  of dates that includes 28 days from today for objections to

25  be due so that you're not even shortening notice --

1          MR. KEENAN:  Correct.

2          THE COURT:  -- at this point.  So I appreciate

3     that explanation.

4          MR. KEENAN:  Correct.  So with that, Your Honor,

5     we can proceed to the first-day motions.

6          THE COURT:  Great.

7          MR. KEENAN:  I believe there's eleven first-day

8     motions to be heard today.  But rather than go in the order

9     of the agenda --

10         THE COURT:  Mm-hmm.

11         MR. KEENAN:  -- having a bit of whack-a-mole of

12    people coming up and coming down, I just have the --

13         THE COURT:  Oh, before you get going on the

14    motions --

15         MR. KEENAN:  Sure.

16         THE COURT:  -- let me just ask does anybody else

17    want to be heard on that preliminary basis or not?  Okay.

18    I'm getting a friendly no thanks and head shake out of

19    counsel for the ad hocs.  And how about for the U.S.

20    Trustee?

21         MR. ZIPES:  Your Honor, I just thought it would be

22    helpful to give one brief -- and I don't want to ruin your

23    paperwork there, but it's --

24         THE COURT:  Yeah, you're welcome to speak from the

25    table.  That's fine.

1          MR. ZIPES:  I -- just very briefly on venue and

2     the basis for venue in the SDNY I think that would be

3     helpful.

4          THE COURT:  Okay.

5          MR. KEENAN:  Yes, Your Honor.  Very happy to do

6     that.  And we anticipated that question would be asked

7     because it's an important question any time you're dealing

8     with a foreign debtor.  So Your Honor, venue for the Chapter

9     11 cases in this district is proper, and the debtor is

10    eligible under Section 109 of the Bankruptcy Code to file

11    this Chapter 11 case because the debtor maintains property

12    in the United States.

13          In particular, the debtor satisfies the

14    requirement under Section 109(a) of the Bankruptcy Code for

15    eligibility because, one, the old notes are governed by New

16    York law, and two, the debtor has a $100,000 retainer in the

17    trust account of Baker McKenzie LLP with a JP Morgan Chase

18    account that's located in New York.

19          Your Honor, you're probably aware that there are

20    cases that say the retainer alone is sufficient to confer

21    eligibility and venue.  In particular, we can cite to In re

22    Aerovias Nacionales de Colombia, otherwise known as Avianca,

23    that that would be the first Avianca Chapter 11 from 2003,

24    which can be found at 303 B.R. 1.  And also with regard to

25    the notes being governed by New York law in that conferring

1    venue and eligibility of the debtor, there are a number of

2    cases that support that proposition as well, such as

3    Octaviar Administrative Party Ltd, which can be found at 511

4    B.R. 361.  And I quote, "There's a line of authority that

5    supports the fact that prepetition deposits are retainers"

6    -- my apologies, this is a retainer case -- "can supply

7    sufficient property sufficient to make a debtor eligible to

8    file in the United States."

9         With regard to the New York law of governed debt

10   and having a New York forum selection clause, which we have

11   as well that may also satisfy the property requirement, we

12   have Inversora Electrica Buenos Aires, which could be found

13   at 560 B.R. 650.  But I know that the --

14        THE COURT:  What's the page number on the 560

15   B.R.?

16        MR. KEENAN:  560 B.R. 650.

17        THE COURT:  Okay.

18        MR. KEENAN:  I have Page Number 655.

19        THE COURT:  Okay.

20        MR. KEENAN:  And that would be for dollar deposits

21   and also New-York-law-governed debt --

22        THE COURT:  Right.

23        MR. KEENAN:  -- for foreign New York Law --

24        THE COURT:  I will tell you I --

25        MR. KEENAN:  -- forum selection clause.

1              THE COURT:  -- held that venue is appropriate

2      based on -- and 109 is satisfied based on deposits in escrow

3      accounts, and I am aware of the New York law authority.  And

4      I've -- I always view that with a little anxiety, so I tend

5      to view that as a plus factor.  Or I've relied on it as a

6      plus factor.  I don't know if it alone is sufficient, but it

7      sounds like your situation doesn't force my hand to decide

8      that.  So -- but at any rate, that's my take.  I'm curious

9      of the U.S. Trustee's take on that when their turn comes if

10     they have one about either of those two factors either alone

11     or in tandem being sufficient.

12             MR. KEENAN:  And Your Honor, we agree.  I mean,

13     the more hooks, if you will, that you have for venue --

14             THE COURT:  Right.

15             MR. KEENAN:  -- eligibility are better.  And so we

16     have at least two here.

17             THE COURT:  Right.  I think the New York law is --

18     the concept is that you've got a New-York-law conferred

19     maybe intangible property interest in your contractual

20     entitlements under the New York law contract.  Is that the

21     theory?

22             MR. KEENAN:  Your Honor, in terms of the rationale

23     --

24             THE COURT:  Yeah.

25             MR. KEENAN:  -- I think it's the fact that when

1    the parties chose New York law to govern their relationship

2    and they have a New York forum selection clause, that that

3    was sufficient if not -- I think there are some cases, and I

4    can't quote them offhand, but I believe there may be some

5    cases that say the debt is deemed to exist in New York since

6    they're governed by New York.

7              For example, I know that in Delaware, and I can

8    speak to this specifically, if you have a Delaware

9    subsidiary, the stock in the Delaware subsidiary is deemed

10   to exist in Delaware.

11             THE COURT:  Right.

12             MR. KEENAN:  And that's sufficient in terms of

13   venue.  But I know that there's quite a few cases that

14   looked at the situation over the years, and we can certainly

15   --

16             THE COURT:  Okay.  Well, if it doesn't get

17   contested, I'm going to be fine proceeding really in primary

18   lines on the retainer.

19             MR. KEENAN:  So Your Honor, what I have here from

20   In re Berau Capital Res Pte, 540 B.R. 80, the court reasoned

21   that contracts create property rights for the parties to the

22   contract, and that a debtor's contract rights are intangible

23   property of the debtor.  So in the sense that these bonds,

24   if you will, are intangible property of the debtor that are

25   deemed to exist in New York.

1          THE COURT:  Okay.  Thanks.

2          MR. KEENAN:  So in terms of the first-day motions,

3   Your Honor, like I mentioned, there's I believe 11 first-day

4   motions to be heard today.  So Mr. Davis, to my right, will

5   proceed first.  He'll present the motions on cash

6   management, insurance policies, and the debtor's hedging

7   practices.  And the followed by Mr. Davis will be Ms. Shear.

8   She'll present the motions on utilities, the extension of

9   time to file the schedules, and employees.

10          THE COURT:  And I'm sorry, what's the third?

11          MR. KEENAN:  The employee wages.  And then Mr.

12   Sainvil will present the motions concerning unimpaired

13   claims, the clarification or enforcement of the automatic

14   stay, and then also the scheduling order.  And I'll give a

15   brief introduction to the scheduled order and the changes --

16          THE COURT:  Okay.

17          MR. KEENAN:  -- when we proceed with that.

18          THE COURT:  That sounds good.  Thank you very

19   much.  And Mr. Davis, you want to go ahead?

20          MR. DAVIS:  Thank you, Your Honor.  May it please

21   the Court.  Benjamin Davis, Baker McKenzie on behalf of the

22   debtor.  As my colleague Mr. Keenan mentioned I'll be

23   presenting the cash management motion, the insurance

24   practices or policies motion, as well as the hedging

25   practices motion.  I'm happy to go in whatever order Your

1    Honor would prefer, but I think it'd be more efficient to

2    perhaps start with the cash management motion as that's kind

3    of the meatiest one of the three so to speak.

4                THE COURT:  That sounds great.  Go right ahead.

5                MR. DAVIS:  Thank you, Your Honor.  The Debtor's

6    Cash Management Motion, which is Docket Number 6 and Number

7    8 on the agenda for ease of reference, seeks customary

8    relief that will allow the debtor to continue to function

9    and operate its business in the ordinary course during this

10   hopefully brief prepackaged bankruptcy.  Specifically, the

11   debtor is seeking authorization to do four things.  One,

12   continue the use of the cash management system; two,

13   maintain bank accounts; three, continue using its business

14   forums; and four, continue engaging in these related party

15   transactions with three related parties that are

16   specifically identified in the motion.

17               Your Honor, as Your Honor already knows and is

18   very familiar with the operations of this entity, it's a

19   cash payroll loan business primarily.  It does have other

20   business segments, other financing-related business

21   segments, credit card business, things of that nature.  But

22   as it's dealing in loans and collections and things of that

23   nature, its cash management system is integral to its

24   operations.

25               It's comprised of 43 bank accounts, all of which

1    are listed in Exhibit C to the motion, 15 of which are in

2    the debtor's own name.  The remaining 23 are in the name of

3    another entity.  Those are trust accounts, which I'll

4    describe more thoroughly in a moment here.  But although --

5    or I'm sorry, there are -- these accounts are at eight

6    financial institutions.  And although they are not on the

7    U.S. Trustee's Authorized Depository List, all of them are

8    well-regarded, highly stable global institutions; 41 of the

9    accounts are either insured by the FDIC or insured by the

10   Colombian equivalent, which is the Fondo de Garantías de

11   Instituciones Financieras.  Hope I pronounced that

12   correctly.

13            And then the remaining two, one is a savings

14   account held at another institution and one is another trust

15   account held at another institution.  Those accounts that

16   are not held in the debtor's name, those are trust accounts.

17   It may seem a little unique, but it's actually very

18   customary and is common practice in Colombia.  It's a way to

19   enhance oversight and accountability.

20            Basically the debtor engages or agrees -- or

21   enters into an agreement with a fiduciary.  The fiduciary

22   must be a regulated financial institution in Colombia that's

23   overseen by the Colombia regulator.  So in that sense, it

24   involves a fiduciary who's involved in the operation of the

25   account and thereby kind of enhances security and

1    accountability.  The debtor basically endorses portions of

2    its portfolio to the trust.  The debtor continues to manage

3    those portfolios, but it's overseen by the fiduciary entity.

4    So that is kind of the summation of the bank accounts.

5            THE COURT:  Mm-hmm.

6            MR. DAVIS:  Further descriptions of the cashflow

7    and how the cash flows through the bank accounts is found in

8    Exhibit D to the motion, and then further details of the

9    specific kinds of accounts is at Paragraph 33 of the motion.

10           In addition to use of the cash management system,

11   as I mentioned, Your Honor, the motion also seeks three

12   other forms of relief: authorization to continue using its

13   existing business forums, a pretty customary request in this

14   context, as well as to continue engaging in related party

15   transactions.  Those related parties are entities that the

16   debtor's shareholders have a stake in.

17           All of those transactions existed prior to the

18   pre-petition or prior to the petition date.  One was in

19   2016, the other 2022, and the third in 2023.  The first is

20   with a -- it's basically a vendor services agreement whereby

21   the related party is providing a variety of administrative

22   services to the debtor.  Second is -- which it was executed

23   in 2022 and I believe 2023.  The second is a series of loans

24   or two loans I believe that were used as a capital injection

25   to fund the business operations.  And the third is actually

1    a sale of a portion of the credit card business to a related

2    party that just hasn't been fully consummated.

3           And then the only other item to note, I believe

4    this motion was entirely consensual.  The one item to note

5    is that in our motion we sought waiver of Section 345(b) of

6    the Code.  We've obviously conferred with the U.S. Trustee.

7    And I don't want to speak for Mr. Zipes, but I believe we've

8    come to an agreement that -- and some -- an agreement as to

9    proposed language that would not result in a waiver but a

10   60-day extension of the period to come into compliance with

11   Section 345.

12          THE COURT:  Right.  That was one of the things I

13   wanted to focus on.  And I was thinking a way -- sort of an

14   extension for -- at least for now would e a sensible way to

15   go.

16          MR. DAVIS:  We agree with that, Your Honor.

17          THE COURT:  Okay.

18          MR. DAVIS:  So --

19          THE COURT:  And let me say, by the way, I'm sorry

20   to be tapping the various keys and pulling up some

21   electronic documents and also my calendar because I think

22   that you're seeking entry of an interim -- on interim basis

23   right now, right?

24          MR. DAVIS:  Correct, Your Honor.

25          THE COURT:  So this is going to raise the question

1    in a minute of when is the second-day hearing going to be,

2    and I'm just looking -- pulling up my calendar for that

3    purpose.  Okay.  So -- okay.  And what about the -- you have

4    consent as to the money-flows-through related entities or --

5    yeah, I guess, you -- there are some related -- is the

6    related party money flow the same thing as the trust

7    arrangement that you -- trust account arrangement that you

8    described earlier, or is that different?  That's different,

9    right?

10             MR. DAVIS:  No, that's different, Your Honor.  The

11   trust account arrangement is basically kind of under the

12   umbrella of bank accounts.

13             THE COURT:  Right.

14             MR. DAVIS:  The related party transactions are

15   just separate transactions where there's cash coming in or

16   cash going out between the debtor and these three related

17   entities.  So that's kind of a separate issue from the --

18             THE COURT:  Right.

19             MR. DAVIS:  -- trust agreements.

20             THE COURT:  Okay.  And I think you're just telling

21   me that is how the business operates and that to avoid

22   disruption in established business practices that are

23   necessary for the successful completion of the -- or ongoing

24   completion of the company's business you need to maintain

25   that, right?

1          MR. DAVIS:  Absolutely, Your Honor.

2          THE COURT:  Yeah.  Okay.  I'm basically going to

3     be just interested to hear if anyone has any concern or

4     objection they want to raise.  What's your basic answer to

5     the perpetual bankruptcy judge fear that this could be a

6     license to cause estate assets to go missing?

7          MR. DAVIS:  Your Honor, all of these records are

8     maintained in the ordinary course.  The debtor, prior to the

9     petition and obviously through the course of the bankruptcy,

10    will continue to maintain adequate records regarding the

11    inflows and outflows of cash from the bank accounts.  In

12    addition, the 23 bank accounts are overseen by these

13    fiduciaries, so there's kind of the added layer of

14    protection in that context.

15          And then with respect to the related party

16    transactions, same thing.  It's all paper.  Debtor will

17    continue to accurately record those transactions as they

18    kind of come due.

19          THE COURT:  Okay.  Got it.  You may have said what

20    you wanted to say.  I don't know.  Anything else you want to

21    say about cash management?

22          MR. DAVIS:  Nothing else there, Your Honor.

23          THE COURT:  Okay.  Let me just hear does anyone

24    want to be heard with respect to the cash management motion?

25          MR. ZIPES:  Your Honor, Greg Zipes with the U.S.

1    Trustee's Office.  Briefly, Your Honor, as this is a

2    prepack, some issues that would arise, and other first-day

3    pleadings don't happen here, we're basically moving out any

4    time to ensure compliance until after the expected date of

5    confirmation in this case.  And all bets are kind of off if

6    something happens and it doesn't get confirmed in the time

7    or it becomes a contested bankruptcy.  Hopefully that won't

8    be the case, but if it is, we would have to look at all

9    these --

10             THE COURT:  You'll --

11             MR. ZIPES:  -- arrangements again at that time.

12             THE COURT:  Okay.  But in the -- you're happy

13   living with that for now and --

14             MR. ZIPES:  For 60 days.

15             THE COURT:  -- including with respect to the

16   related party elements?

17             MR. ZIPES:  Yes.

18             THE COURT:  Okay.  Thanks.  Does anyone else want

19   to be heard with respect to this?  Okay.  No one said yes.

20   All right.  So I'm prepared to approve the motion on the --

21   on an interim basis as requested.  I won't orate an oral

22   ruling.  That would just make the hearing cumulatively too

23   long.  I'll just say this is -- with a couple of wrinkles,

24   this is standard and appropriate relief designed to ensure

25   the continued effective operations of debtor and their

1  businesses, which is consistent with the overarching purpose

2  and ambition of Chapter 11, namely, to permit the

3  rehabilitation or reorganization of enterprises

4  successfully.

5       So I paid particular attention to the description

6  of accounts not held in U.S.-regulated and U.S.-insured

7  accounts.  But I think here it's appropriate and reasonable

8  to at least go forward with that on an interim basis.  And

9  as the U.S. Trustee's Office says while extending out any

10  possible final resolution of that long enough that hopefully

11  you can skate through on a prepack basis without fully

12  having to confront whether I should be actually waiving the

13  requirements of the code with respect to what depository

14  institutions are used.

15       But in the near term, it's appropriate and

16  certainly a sound exercise of business judgment just to not

17  rock the boat and maintain existing practices.  The other --

18  and I think the same logic applies to the continuation of

19  money-flow practices that involve related entities, related

20  non-debtor entities, again, is -- I've been given assurance

21  that the accounting practices are sound, that the money

22  flows can be tracked, can be disclosed to anyone who is a

23  party in interest entitled to see it who wants to see it,

24  and that will have rigorous enough controls to not have that

25  be problematic coupled with the representation that I credit

 1    that it's necessary to the carrying out of the debtor's

 2    businesses.

 3              So for that reason, I'm going to approve the

 4    interim order as submitted.  I'll say I reviewed your

 5    proposed interim order, and I had not requested changes to

 6    that.  So you can just submit that in Word to our order

 7    email box that we maintain, and that way we can -- that

 8    helps us process it, okay?  So that's what we'll do.  I

 9    don't know if you want to talk dates yet.  Basically, June

10    is kind of crazy, but the week of June 10th I have various

11    dates.

12              So you can find a date that -- June is Judicial

13    Conference Month.  So the first week of June is the Second

14    Circuit Judicial Conference, and the last week of June is a

15    National Conference of Bankruptcy Judges that's a Federal-

16    Judicial-Center-sponsored educational program that we all go

17    to if at all possible.  So I'm navigating those things.  But

18    the week of June 10th we can slot you in.  Is that a -- that

19    timing works for second-day hearings?

20              MR. KEENAN:  Give me one moment, Your Honor.

21              THE COURT:  Yep.

22              MR. KEENAN:  Your Honor, it would seem so,

23    especially if it's in the second half of the week of June

24    10th.  We anticipate, as you may have noticed, we don't have

25    our retention applications on file yet.

1          THE COURT:  Right.

2          MR. KEENAN:  We expect to get those on file this

3     week.

4          THE COURT:  Okay.

5          MR. KEENAN:  And so for efficiency's sake, we'll

6     try and get it off.  If we have it later in the week of July

7     --

8          THE COURT:  How about June -- does June --

9          MR. KEENAN:  -- June 10th?

10          THE COURT:  Does June -- right?  June 13th work?

11          MR. KEENAN:  Yes, Your Honor.

12          THE COURT:  Okay.  Let's target June 13th.  All

13     right?  Thanks.  And so that -- we don't have to have this

14     discussion on a motion-by-motion basis.  That's just when

15     we'll hear you for second days, okay?

16          MR. KEENAN:  And Your Honor, if I could just point

17     out one thing.  The interim order that we submitted along

18     with the motion, we will have to modify that to incorporate

19     the suggested language that the Court and the U.S. Trustee

20     --

21          THE COURT:  Oh, right.

22          MR. KEENAN:  -- would like.  So that would be

23     reflected in the Word version that we --

24          THE COURT:  Right.

25          MR. KEENAN:  -- submit to chambers.

1           THE COURT:  Yeah.  Just make sure -- I know you

2      know how to do this.  You'll get on the same page literally

3      with the U.S. Trustee's Office about how that's worded, and

4      then we'll -- you just submit it saying this is okay with

5      them, and then I'm good with concept.  So I'm sure I'll be

6      fine with your wording as well.  Although I reserve the

7      right to edit further.

8           MR. KEENAN:  Thank you.

9           THE COURT:  Okay?  All right.

10          MR. DAVIS:  The second item on the agenda or on my

11     portion of the agenda, Your Honor, is the Insurance Policies

12     Motion.  That's Agenda Number 6, Docket Number 12.  Through

13     this motion, the debtor seeks authority to, one, maintain

14     existing insurance policies; two, continue paying all policy

15     premiums, be they prepetition or post-petition; renew or

16     enter into new policies as needed; and remit premiums

17     collected from borrowers.

18          In this context, Your Honor, maintenance of the

19     insurance policies is key to continued operation of the

20     business.  Without these policies, basically the debtor

21     cannot function.  So when the debtor issues a payable loan,

22     it requires that the customer have a life insurance policy

23     equal to or greater than the principal amount of the loan.

24     And the customer can obtain these policies either by

25     themselves through third-party policy issuers as long as it

1   meets the requirements that the debtor has imposed or

2   through the debtor itself.

3           So the issuance of these policies, the maintenance

4   of these policies is actually kind of intertwined --

5   integrally intertwined with the debtor's business.  It's not

6   just that, you know, there's the obvious requirement under

7   the code to maintain adequate insurance, but these insurance

8   policies are integrally intertwined with the debtor's

9   business.  And accordingly, maintaining those policies would

10  be appropriate under Sections 1107 and 1108 of the Code, and

11  also pursuant to the Doctrine of Necessity.  And again, I

12  believe there's -- this motion is also consensual, but I

13  won't speak for the parties in the room.

14          THE COURT:  Okay.  Yeah.  I'd just like to make a

15  record.  So I'll ask is -- does anyone want to be heard with

16  respect to the insurance motion?

17          MR. ZIPES:  Your Honor, Greg Zipes with the U.S.

18  Trustee's Office, and we did review these motions on Friday

19  as stated.  One issue that we went over generally, this will

20  apply to this motion and others, is just how much money the

21  debtor is spending on these policies in this case in the

22  next three weeks or so.  And we understand that the dollar

23  amounts -- and we're okay with the dollar amounts.

24          THE COURT:  Okay.  Can you give me a rough order

25  of magnitude?

1          MR. ZIPES:  Your Honor, we asked for a 13-week

2     budget, and I don't know -- is that part of the record right

3     now?

4          MR. KEENAN:  No, it's not.

5          MR. ZIPES:  Is it -- can it -- do you have...

6          MR. KEENAN:  Give me a second.  Your Honor, we've

7     shared the 13-week budget with U.S. Trustee, which we don't

8     intend on filing with the court because there's no DIP

9     financing.  There's no --

10         THE COURT:  Right.  That's fine.

11         MR. KEENAN:  -- cash collateral.  And so we just

12    wanted to demonstrate to the trustee that the debtor has

13    sufficient liquidity to make the payments that are

14    contemplated under the first-day motions.

15         THE COURT:  Okay.  That's fine.  If you want to --

16    I guess I don't need to have that on the record necessarily.

17    Okay.

18         MR. ZIPES:  It's in --

19         THE COURT:  Anything else you want to add?

20         MR. ZIPES:  It's as represented in the motion at

21    -- around Paragraph 17, so...

22         THE COURT:  Okay.  Thanks.  That's fine.  Okay.

23    Anyone else want to be heard with respect to the insurance

24    motion?  Okay.  I'm -- no one said yes.  I'm going to

25    approve the motion really for reasons stated in the motion

1    papers themselves and as summarized in the oral

2    presentation.  I'm grateful as always for the U.S. Trustee

3    Office's review and its ensuring -- satisfying itself that

4    the total amount of money flows are reasonable and

5    consistent with successfully processing this case.  So

6    again, you can submit the proposed order as filed with any

7    modifications necessary in light of your discussions with

8    the U.S. Trustee's Office.

9         MR. DAVIS:  Thank you, Your Honor.

10        THE COURT:  Mm-hmm.

11        MR. DAVIS:  And the final item is the Hedging

12   Practices Motion, which is Docket Number 17, Number 11 on

13   the agenda.  The hedges practices is somewhat of a comfort

14   request.  So the debtor's hedging practices are comprised of

15   foreign currency exchange purchase contracts and options

16   that are intended to manage risk and hedge against

17   fluctuations in foreign currency.

18        The debtor's hedging master agreement is with a

19   very reputable institution, Morgan Stanley.  In this

20   context, the debtor's concerned that certain of its hedging

21   counterparties will potentially not recognize the

22   protections of this Chapter 11 filing, believe that the

23   debtor will be incapable of fulfilling its obligations under

24   those hedging agreements and seek to terminate them, which

25   would have a negative impact on the estate of the debtor.

1          Thus, granting this motion would provide those

2    hedging counterparties with assurances that the debtor will

3    continue to be able to perform those agreements.  And I will

4    say, Your Honor, at this point in time there is actually net

5    positive -- that the amount of money that we're talking

6    about if the hedging agreements were collapsed today would

7    actually be a net positive to the debtor of about $314,000.

8    So under Section 363 of the Code, we would assert that this

9    is an ordinary course transaction that should be approved by

10   the court.  And these are ordinary course transactions that

11   should be --

12          THE COURT:  Right.  I was --

13          MR. DAVIS:  -- approved by the court.

14          THE COURT:  -- struck that these did seem to be

15   ordinary course, and I guess you're just -- it's a comfort

16   order essentially you're seeking, right?

17          MR. DAVIS:  Correct.

18          THE COURT:  Does anyone have any objection to the

19   -- or response to the hedging motion?  I got a negative head

20   shake.  I'm going to approve the motion for reasons stated.

21   I think Section 363(b)(1) applies and supports the relief

22   sought.  And I'm satisfied that it is an abundantly

23   commonsensical and necessary application of the debtor's

24   business judgment to continue its hedging practices.  So

25   it's approved.

1          MR. DAVIS:  Thank you, Your Honor.  And we will

2    submit the proposed order.

3          THE COURT:  Great.  Perfect.  Yep.

4          MR. DAVIS:  With that, Your Honor --

5          THE COURT:  Okay.

6          MR. DAVIS:  -- I will pass it back to Mr. Keenan.

7          THE COURT:  Okay.  Thanks very much.

8          MR. KEENAN:  Just one moment, Your Honor.  I

9    apologize.  With regard to the second-day hearing, it

10   actually turns out that at 10 a.m. on June 13th we have a

11   hearing in front of Judge Wiles --

12         THE COURT:  Oh.

13         MR. KEENAN:  -- on another matter.  Would Your

14   Honor have any availability that afternoon?

15         THE COURT:  Oh.  I'm sure.  I'm just looking at my

16   own calendar.  Yeah, I -- let's say 2:00.

17         MR. KEENAN:  Thank you, Your Honor.

18         THE COURT:  Oh, let me say a word about where.  If

19   -- I think that we're going to realistically have to wait

20   and see what happens with the Ad Hoc Committee of

21   Noteholders.  But if everything's consensual, uncontested,

22   I'm happy to proceed by Zoom if you prefer in an effort to

23   save costs.

24         MR. KEENAN:  Yes, Your Honor.

25         THE COURT:  If there's any meaningful likelihood

1    of possible need for live testimony, then it should be

2    hybrid just as we are today.

3                MR. KEENAN:  Okay.

4                THE COURT:  Okay?

5                MR. KEENAN:  Understood, Your Honor.

6                THE COURT:  So plan accordingly.  Okay?

7                MS. SHEAR:  Good morning, Your Honor.  Dionna

8    Shear on behalf of the debtor.

9                THE COURT:  Great.  Good morning.

10               MS. SHEAR:   And today I will be presenting the

11   Wages Motion, the Motion to Extend or Waive the Deadline to

12   File the Financial Statements and Schedules, as well as the

13   Utilities Motion.

14               THE COURT:  Okay.  Great.  Can you spell your last

15   name for me?

16               MS. SHEAR:  Sure.  S-H-E-A-R.

17               THE COURT:  Okay.

18               MS. SHEAR:  Okay.  I'll start with the Wages

19   Motion.

20               THE COURT:  Mm-hmm.

21               MS. SHEAR:  By way of background, the debtor has

22   112 Colombian employees whose continued employment is

23   critical to the operations of the company.  And so by way of

24   this motion we are seeking to pay certain employee-related

25   obligations that have accrued prepetition and to continue

1    paying those obligations as the case proceeds in the

2    ordinary course post-petition.

3            Specifically, the employee-related obligations

4    fall into five broad categories, the first being employee

5    compensation, and that includes wages, commissions, and

6    something called a service bonus, which is required under

7    Colombian law for employees that make less than 13 times the

8    minimum salary requirement.

9            We are also seeking to pay Colombian-mandated

10   payroll withholding obligations.  We're seeking to pay

11   Colombian-mandated social fund contributions, and those

12   would include things such as contributions that the debtor

13   is required to make to various government-mandated social

14   security funds.  We are also seeking to pay employee benefit

15   programs.  And then finally, we're seeking to pay

16   termination obligations and severance obligations that are

17   required under Colombia law whenever an individual's

18   employee with the debtor ends.

19           And so from our perspective, honoring these

20   employee-related obligations would increase the likelihood

21   that the debtor can continue to lawfully obligate -- I'm

22   sorry, lawfully operate in Colombia and to also ensure that

23   employees are retained and the business continues to

24   operate.  Do you have any specific questions for us with

25   respect to this motion?

1          THE COURT:  Thanks.  Yeah, I -- so the only

2   concern I have is about the two employees who are owed more

3   than the statutory cap amount.  It's referenced at -- you're

4   nodding so I know you know what I'm talking about.  It's

5   referenced in Paragraph, I think, 98 I want to say from

6   memory, and then you've got a Footnote 3 just explaining

7   that there's a 35,000 severance dollar -- severance

8   indemnity payment due from a former Head of Treasuries

9   employment agreement.

10          And then there's also a $17,410 obligation to

11   another employee, 12,000 of which is on account of accrued

12   vacation.  So why is that okay given the wage cap?

13          MS. SHEAR:  So with respect to the one employee,

14   the former Head of Treasury for us, she's owed I believe a

15   $34,000 indemnity severance payment.  That payment is

16   required under Colombian law.  And under the business, the

17   Doctrine of Necessity, our position is that making sure that

18   we honor our employee obligations such as those only goes to

19   just further support employee morale and to continue to make

20   sure that our employees stay with the workforce.  Then with

21   respect -- sorry.

22          THE COURT:  Let me -- I'm sorry.  Let me ask.  So

23   I mean, it seems to me making the payment can't be that the

24   120 -- and 12 employees are going to melt down if there's a

25   delay in paying the severance, but I -- so I'm more moved by

1    the Colombian law requirement angle.

2            MS. SHEAR:  Yeah, it's the Colombian law that --

3    fair point, Your Honor.  It's the Colombian law requiring

4    employers to make sure that they pay their termination

5    obligations.  And also practically speaking, that payment

6    doesn't become due until January of 2025.  So did you see

7    that in the footnote there?

8            THE COURT:  Oh, no.  Okay.  Wait.  So...

9            MS. SHEAR:  So that 35,000 severance indemnity

10   payment --

11           THE COURT:  Oh, yeah.

12           MS. SHEAR:  -- isn't due until January 31st of

13   2025.

14           THE COURT:  Oh.  So I'm just proceeding on the

15   don't-mess-everything-up-on-the-first-day rule of judging.

16   So let me just quickly ask a side question of the U.S.

17   Trustee's Office.  Do you -- are you all okay with these?

18   Or what's the Office's view?

19           MR. ZIPES:  Well, Your Honor, we had the -- we had

20   a similar question, not exactly the same, but on severance,

21   whether it's doctrine of necessity.  You're not paying

22   someone who's actually working at the company.  And we were

23   told under Colombian law this is a requirement.  I -- you

24   know, Your Honor, technically if it's not due until January

25   of 2025, there might not be a need to hear it right now just

1   in case there's --

2           THE COURT:  Right.

3           MR. ZIPES:  -- some issue.  But I don't know.

4           THE COURT:  Well, what's -- I think maybe I'll cut

5   to chase.  I think it's probably going to be fine, but why

6   don't I approve it on an interim basis with the additional

7   instruction that it not be paid until we can hold the

8   second-day hearings and consider it further if anybody wants

9   to raise it then, okay?  So you'll have it -- you'll be on

10  the road to get it done.  The company won't see the --

11  anyone who cares won't worry that I'm intending to derail

12  this.

13          But since the Colombian law obligation doesn't

14  arise for another -- long time, seven months or so, I don't

15  want the money to go out the door given the strictures of

16  the code on wage payments.  I think severance isn't truly a

17  wage payment.  It's a separate obligation.  I think this is

18  probably a 363(b)(1) non-ordinary course payment.  It's

19  probably justified by the Colombian legal requirements.  But

20  I'll just sort of go down the road of assuming it'll be

21  made, but with the requirement that the money not leave the

22  door until the second-day hearing happens so that anyone

23  that has a concern can raise it, okay?

24          MS. SHEAR:  Understood, Your Honor.  That's no

25  problem.

1          THE COURT:  All right.  And then that gets us down

2    to the $17,410 person with a lot of vacation time that they

3    need to get paid for.

4          MS. SHEAR:  Yes.

5          THE COURT:  So what is the -- oh, when is that

6    payment due?

7          MS. SHEAR:  I believe that's already accrued.

8    Unless -- Debbie, correct me if I'm wrong.

9          WOMAN:  They're just going to take vacation.

10          MS. SHEAR:  So it's accrued vacation.

11          THE COURT:  Oh, it's forward-paying vacation?

12          MS. SHEAR:  It's -- the payout just isn't due yet.

13          WOMAN:  It's not like the money -- the money's not

14    (indiscernible).  Money's not coming back.  They're just

15    going to --

16          THE COURT:  Okay.  This is just to help the

17    transcript.  Somebody in the back who is the person with

18    actual knowledge is explaining.  So it -- do you know,

19    again, when the payment is due?  You can consult a minute if

20    you want to get the answer.  Let's just figure this out

21    because I'm skittish about -- on the one hand, it's silly.

22    I'm talking about a $2,000 gap between what's statutorily

23    capped and the amount you're looking to spend.  But I was

24    told by congress that this is the particular cap, so I'm

25    nervous about just ignoring congress.

1          MS. SHEAR:  No, that's fair, Your Honor.  Give me

2     one second.

3          THE COURT:  Sure.

4          MS. SHEAR:  Okay.  Just confirming.  So the

5     vacation has just been accrued, and so the employee will

6     just take that vacation.  There is not going to be an actual

7     dollar amount paid out.

8          THE COURT:  Oh.  So it's forward-looking.  So

9     vacation that's going to be taken.  Oh, this has been -- so

10    I don't think you need approval for that then.  It's a post-

11    petition, ordinary-course salary expense of the debtor,

12    right?

13         MS. SHEAR:  That's fair.  I agree.

14         WOMAN:  It's been accrued prepetition.

15         MS. SHEAR:  It's --

16         THE COURT:  It accrued prepetition with the person

17    who's going to take the leave now?  Oh, that -- I don't

18    think you -- I don't know that -- so the basic concept of

19    wages motions usually is that I'm approving payment of wages

20    that became due for work done prepetition but the check's

21    going to be cut post-petition.  So theoretically in the

22    sense you're paying a prepetition claim post-petition, I

23    don't think that applies to people who take vacation even

24    though they accrued the time previously.  I don't know for

25    sure.

1          But at any rate, let -- I'll hear from -- if

2     anybody has an objection.  But my thought is to -- with the

3     clarification that that's the nature of the payment, I'll

4     just say -- I can just say to the extent necessary it's

5     approved or it's not subject to the applicable statutory cap

6     and therefore it is permitted.

7               MS. SHEAR:  Okay.  That's --

8               THE COURT:  Let me ask.  Does that work, Mr.

9     Zipes?

10              MR. ZIPES:  That's fine, Your Honor.  Thank you.

11              THE COURT:  Okay.  Okay.  I'm sorry to --

12              MS. SHEAR:  No, no, no.

13              THE COURT:  -- give you such a workout, but those

14    were the -- literally the two things that I was focused on.

15    Otherwise it seems standard and appropriate to -- under the

16    Doctrine of Necessity to pay current employees' wages.  Does

17    anyone else want to be heard with respect to the Wages

18    Motion?  The reason I'm not asking you if you want to say

19    anything more is I think you've --

20              MS. SHEAR:  I don't.

21              THE COURT:  -- said everything you could possibly

22    --

23              MS. SHEAR:  I don't.  I think we're good.

24              THE COURT:  -- need to say.  Anyone else?  Okay.

25    We're good.  So I'm going to approve the motion subject to

1     the colloquy we just had, which is that the severance

2     payment amount of approximately $35,000 won't be paid prior

3     to the second-day hearing.  So that'll require a slight edit

4     to the order, proposed order, which I'll let you implement.

5     And I don't think you need -- I'll just say that we'll just

6     make that order subject to and with the colloquy

7     incorporated in the terms of the order.  You don't need to

8     write special language about the 17,000 amount.  But --

9                    MS. SHEAR:  Okay.

10                   THE COURT:  -- that'll be covered, okay?

11                   MS. SHEAR:  Okay.

12                   THE COURT:  All right.  Thanks.

13                   MS. SHEAR:  Okay, Your Honor.  Next -- onto the

14    next motion, the Utilities Motion.

15                   THE COURT:  Yes.

16                   MS. SHEAR:  Here the debtor maintains water,

17    electricity, internet, and telephone services through

18    various foreign utility service providers.  They also pay

19    the related expenses in the ordinary course.  Attached as

20    Exhibit A to the motion identifies specifically who those

21    utility providers are and the average aggregate monthly

22    amount that's owe to each of them.

23                   And so by way of this motion, we're really seeking

24    three things.  The first one is just permission to continue

25    paying those foreign utility service providers in the

1   ordinary course.  And as you can see on a monthly basis, the

2   aggregate monthly amount owed to the is $57,000.  So we're

3   asking to continue to pay those amounts in the ordinary

4   course.

5          The second thing we're asking for is to the extent

6   that any of the foreign utility service providers consent to

7   the jurisdiction of this court, that they be -- that we be

8   allowed to -- or that they can seek adequate assurance in

9   the amounts that we have proposed, which is half of the

10  $57,000 monthly expenses.  And then finally, we're also

11  asking to the extent that any of the foreign utility service

12  providers ask for additional adequate insurance that it be

13  pursuant to the proposed adequate assurance procedures that

14  we set forth in the motion.

15         THE COURT:  Okay.  Great.  You came to a resting

16  place, so I'll ask if anyone else wants to be heard with

17  respect to the Utilities Motion.

18         MR. ZIPES:  Your Honor, Greg Zipes with the U.S.

19  Trustee's Office.  And obviously 366 provides -- of the

20  Bankruptcy Code provides a safe harbor for utilities.  We

21  were -- as it was explained to us, these are for utilities,

22  and it's our understanding this is not applying to any

23  domestic utilities that would be subject to the 20-day stay.

24         THE COURT:  Okay.  So that's by way of additional

25  explanation for why you're okay with this.

1          MR. ZIPES:  Yeah, and I should say no objection,

2     Your Honor.

3          THE COURT:  Yeah.  Okay.  Great.  Okay.  Thanks.

4     So I appreciate that explanation, and I'm going to approve

5     the motion really for reasons stated in the motion I guess

6     with the benefit of the added explanation from the U.S.

7     Trustee's Office and the lack of objection.  So you can just

8     submit the order.  No detailed questions about this one.

9     It's approved.

10          MS. SHEAR:  Okay.

11          THE COURT:  Okay?

12          MS. SHEAR:  And the last motion that I'm

13     presenting is the Motion to Waive or Extend the Deadline to

14     File the Schedules and Statement of Financial Affairs.  We

15     are just seeking an extension of the deadline to file those

16     Statements of Financial Affairs for 60 days after the

17     deadline set forth in Federal Rule -- Federal Bankruptcy

18     Rule 1007(c), and to ultimately waive that requirement if

19     the plan is confirmed within that 60-day extension period.

20          We believe that this deadline should be extended

21     because the debtor's resources from our perspective would be

22     better focused on engaging in the transactions contemplated

23     under the plan than preparing the financial statements at

24     this particular time.  And we understand that courts -- and

25     we cited a number of courts in our brief.  We understand

1   that courts have often granted similar relief in prepackaged

2   cases where the general unsecured creditors are unimpaired,

3   and the creditors that are being affected by the plan have

4   already voted.  So --

5            THE COURT:  Okay.  You're right in -- about that

6   observation that these are commonly approved.  Let me -- oh,

7   before I forget, I'm going to point out a typo I noticed in

8   the wages proposed order.  It's not very consequential.

9   Where is it?  Paragraph 3(i) and maybe one other spot.  It's

10  -- let's see.  You either had the word "ode", O-D-E, and you

11  should've had "owe", O-W-E, or vice versa.

12           MS. SHEAR:  Okay.  I see it.

13           THE COURT:  Yeah.  So fix that.  Okay.  But

14  circling back to the -- what are we on?

15           MS. SHEAR:  Schedules.

16           THE COURT:  Yeah, the schedules, yes.  It is

17  frequently a practical necessity to extend the deadlines for

18  schedules.  I'm sorry.  Does anyone have any comment or

19  objection on this?  I forget if I've asked.

20           MR. ZIPES:  No, Your Honor.  Thank you.

21           THE COURT:  We're good.  Okay.  These are commonly

22  granted, and I'm going to grant it in this case.  I think

23  the rationale presented in the motion is one I agree with,

24  which is that the debtor can best serve its needs and the

25  needs of the estate as a whole by focusing on other and more

1   pressing issues first and by pushing the time to file its

2   schedule.  The logical target audience of those schedules in

3   most cases is the public at large and unsecured creditors

4   who may not be organized and they haven't the ability to

5   review finances in a publicly filed way.

6          Here the only group that might benefit from seeing

7   those -- that information is the -- is any non-consenting

8   noteholder, and that group is ably represented by counsel.

9   So they will be engaged in getting information as needed.

10  So there's no downside to deferring filing the schedules and

11  there is a practical upside.  For that reason, I'm going to

12  approve the motion.

13          MS. SHEAR:  Okay.  Thank you, Your Honor.

14          THE COURT:  Thank you very much.

15          MS. SHEAR:  And I'm turning things over to my

16  colleague Mr. Sainvil.

17          THE COURT:  Okay.

18          MR. SAINVIL:  Good afternoon, Your Honor.

19  Reginald Sainvil on behalf of the debtor.

20          THE COURT:  Hi.

21          MR. SAINVIL:  Your Honor, I will take the Court

22  through the last two first-day motions pertaining to

23  business operations, and then I'll proceed to take the Court

24  to the last two first-day motions pertaining to procedural

25  motions.

1          THE COURT:  Okay.

2          MR. SAINVIL:  I will start with what we have

3    called the Taxes Motion at -- filed at Docket Number 9.

4    It's Agenda Number 7.

5          THE COURT:  Right.

6          MR. SAINVIL:  The debtor has set forth in the

7    motion pays a series of taxes and fees, including income

8    taxes, value-added taxes, city or municipal taxes, and

9    withholding taxes, Your Honor.  The debtor's tax liability

10   is generally commensurate with the scale and business of its

11   operation.  Failing to pay many of these obligations would

12   likely give rise to liens of various priority, penalties,

13   audits, and certain regulatory actions in the debtor's -- in

14   the location where the debtor conducts a majority of its

15   business, which is Colombia, Your Honor.

16          Any such action could paralyze the debtor's

17   efforts to move this Chapter 11 case forward.  In

18   particular, in Colombia there's certain bad ramifications to

19   the debtor if they get behind on their taxes.  For this

20   reason, Your Honor, we believe that the relief requested is

21   necessary to avoid immediate and irreparable harm to the

22   debtor, and it represents a sound exercise of the debtor's

23   business judgment.  We have previewed this motion with the

24   U.S. Trustee's Office, and we do not believe that there are

25   any objections, Your Honor.

1    THE COURT:  Okay.  Thanks.  Does anyone want to be

2  heard with respect to the Taxes Motion?

3    MR. ZIPES:  Your Honor, Greg Zipes with the U.S.

4  Trustee's Office.  Again, it was explained to us that these

5  are accruing taxes that need to be paid, and we have no

6  objection.

7    THE COURT:  Okay.  Thanks.  I'm going to approve

8  the motion really for reasons stated by Mr. Sainvil and in

9  the motion papers.  I haven't been articulating law

10  generally, but on this one I noted to myself that this flows

11  from the ionosphere case rationale on the Necessity of

12  Payment Doctrine.

13    I'm applying the Necessity of Payment Doctrine a

14  little loosely in some instances because this is unopposed

15  in a prepack, but I think the payment of taxes falls

16  squarely within that doctrine and the requirements of

17  Section 363(b).  So I'm satisfied.  Therefore, again, please

18  submit the proposed order and we'll get that approved.

19    MR. SAINVIL:  Thank you, Your Honor.

20    THE COURT:  Mm-hmm.

21    MR. SAINVIL:  Next, Your Honor, I will turn to

22  what we have called the Unimpaired Claims Motion.  That was

23  filed at Docket Number 10, and it's at Agenda Number 9.

24  Your Honor, we labeled this this Unimpaired Claims Motion,

25  and we could've put a bunch of different labels on it

1    actually.  It goes to the heart of the debtor's business in

2    continuing the debtor's business operation in the ordinary

3    course, Your Honor.

4           The vast majority, if not the lion's share, of all

5    the parties with whom the debtor does business are located

6    in Colombia.  By this motion, we are seeking to continue to

7    pay the debtor's vendors and really just continuing all

8    their ordinary course service providers and pay them for the

9    duration of these cases, Your Honor -- for this case, Your

10   Honor.  And that's why we call it the Unimpaired Claims

11   Motion.

12          Really what these creditors are being paid for is

13   post-petition continuing work as well as a majority of these

14   claims would fall under a plan as an unimpaired claims, and

15   these are all unimpaired creditors, Your Honor.

16          THE COURT:  All right.  Okay.  Does anyone have

17   any objection or desire to be heard with respect to the,

18   I'll call it, the Unimpaired Claims Motion?

19          MR. ZIPES:  No, Your Honor.

20          THE COURT:  Okay.  I'm going to approve the motion

21   for reasons -- again, for reasons stated on the record and

22   in the papers.  And I'll just specifically note that this

23   finds support in the cases cited at I think Paragraph 26 of

24   the motion papers.  And so I'm satisfied that the relief

25   sought is permissible and appropriate in this circumstance.

1          MR. SAINVIL:  Thank you, Your Honor.

2          THE COURT:  Okay.  And you have one to go, or...

3          MR. SAINVIL:  Those are the last of the business

4    operations first-day motions.

5          THE COURT:  Okay.

6          MR. SAINVIL:  The last two are procedural motions,

7    the first of which is the Motion to Enforce the Automatic

8    Stay.

9          THE COURT:  Oh, right.

10          MR. SAINVIL:  And that was filed at Docket Number

11   15.  It's at Agenda Number 4.  In this motion, the debtor is

12   seeking a clarifying order from the Court enforcing the

13   worldwide automatic stay.  This order is particularly

14   important here as the debtor operates in Colombia with

15   vendors that work primarily in Colombia under Colombian

16   laws.

17          These foreign vendors are not necessarily familiar

18   with the protections afforded to the debtors under the

19   automatic stay.  And it's for that reason we believe, Your

20   Honor, that this order is necessary to explain the relevant

21   provisions of the bankruptcy court and inform these foreign

22   creditors of the automatic stay.  We have previewed this

23   motion with the United States Trustee, Your Honor, and we do

24   not believe that there are any objections to the relief

25   sought in the motion.

 1                THE COURT:  Okay.  They're looking at a paper.  Is

 2      the U.S. Trustee's Office okay with this motion?

 3                MR. ZIPES:  Your Honor, Greg Zipes with the U.S.

 4      Trustee's Office.  My office is generally okay, but I didn't

 5      review the order closely enough to notice if it had some

 6      affirmative relief in it as opposed to just noticing foreign

 7      parties and also an ability for them to come to this court

 8      if they -- because they're not actually getting notice

 9      specifically of this motion.  So some ability for them to

10      come to this court if they have a problem with it.

11                THE COURT:  Let's just take a minute and take a

12      look at that order and make sure it's okay.  I read it and I

13      didn't spot an issue.  Sorry.  I'm off-mic.  I'll say we're

14      going to take a minute and review the order and see if it's

15      okay.  I did -- and I said I reviewed it and didn't spot an

16      issue.  But let's just pause and make sure we have it right.

17      Which tab in the binder is it at do you know?

18                WOMAN:  It's the last one.

19                MR. ZIPES:  It should be 17, unless -- but we had

20      a draft.

21                MR. SAINVIL:  It should be Tab Number 11, Your

22      Honor.

23                THE COURT:  In the binder I got in chambers that's

24      a solicitation declaration.

25                MR. ZIPES:  All right.  One moment, Your Honor.

1          THE COURT:  I read everything on-screen over the

2    weekend, so I ignored your binder until now.  Let's see.

3          MS. SEGAL:  Your Honor, it was the last tab of our

4    binder.  That might be the same for you.

5          THE COURT:  No, I have a special binder that's

6    different.  So let's look.  Here, I can just pull it out.

7          MR. SAINVIL:  I think it is the last tab in your

8    binder, Your Honor, but we're double-checking.  Give me one

9    moment.

10          THE COURT:  My last tab is Leal Declaration.

11    Maybe you sent me two binders and I only brought one out.

12    That's a -- but...

13          MR. ZIPES:  Your Honor, if it's easier I could

14    just state a concern just in the interim order, one of which

15    is -- and I'm sorry because I didn't preview this with

16    debtor's counsel.  But Paragraph 5, which pursuant to

17    Section 525 of the Bankruptcy Code, a foreign or domestic

18    government unit may not deny, revoke, suspend, or refuse to

19    renew a license, permit, etcetera.

20          Your Honor, that may be binding on various

21    governmental agencies that haven't gotten notice and that

22    may believe they need to issue licenses or whatever and that

23    it doesn't violate the bankruptcy code.  That would be an

24    example of something that wouldn't normally be in an initial

25    order unless they were on notice of it.

1          THE COURT:  So do you have a corrected edit?

2          MR. ZIPES:  Your Honor I would just state again

3    that it's fine to have a provision like this generally, but

4    the governmental agencies need to have notice of it.  And so

5    unless it's absolutely necessary right now, I would say it

6    shouldn't be in the interim order.

7          THE COURT:  So -- well, let's ask the debtor about

8    the practical need.  Another option would be to just add --

9    carve out language saying it has not affect on the rights of

10   any, what, any Colombian or other governmental agency

11   subject to entry of a final version of this order.  And it

12   -- the "it" in what I just said should be this interim

13   order, right?  Does that work, or is that not...

14          I'm looking at Mr. Zipes or Ms. Segal on that.  I

15   guess my thought is if I am just responding to your

16   description of the concern, which is, I understand it, is

17   that Colombian or other government agencies shouldn't have

18   their activities restricted or subject by this order.  And I

19   would think if we carve that out from the interim at least

20   we've avoided a problem.  But maybe that's insufficient.

21   What do you think?

22          MR. ZIPES:  Your Honor, I think that's sufficient.

23   I would just turn to the debtor and make sure that we're not

24   impeding something important with this.

25          THE COURT:  Yeah.  So let me -- okay.  So --

1           MR. ZIPES:  But I would normally say it's not

2     necessary for an interim relief.

3           THE COURT:  Okay.  So let me -- feel free to

4     consult if you want or use your own deep understanding of

5     the situation and let me know if that modification causes

6     you any mischief.

7           MR. SAINVIL:  There is no mischief with that

8     modification, Your Honor.  We're happy to make that change.

9           THE COURT:  Okay.  So let's do that.  And you can

10    figure out where it goes in the order.

11          MR. SAINVIL:  Yes, Your Honor.

12          THE COURT:  I'm sorry.  I forget if I said the

13    magic words that the motion is approved with that

14    modification.  The motion is approved with that

15    modification.  There's been no opposition other than the one

16    issue raised by the U.S. Trustee's Office.  I think.  Is

17    that right?  Anything else up your sleeve?

18          MR. ZIPES:  No, Your Honor.  Thank you.

19          THE COURT:  Okay.  Then -- so it's approved for

20    reasons stated.  I'll just say debtors are quite correct

21    that in cases involving foreign entities, particularly in

22    places where the extra-territorial effect of the automatic

23    stay is not well understood or may not be well understood,

24    the court frequently grants exactly this kind of order so

25    that the debtor has another tool to make sure that counter

1   parties it deals with abroad understand the effect of the

2   bankruptcy proceeding here.

3           And I have reviewed the proposed order.  And

4   subject to the catch by U.S. Trustee's Office, I thought it

5   correctly described the extent of the automatic stay, and it

6   would be potentially beneficial for the debtor in its

7   dealings with counter-parties.  I'll also note that I was

8   comforted that it has a specific paragraph saying it doesn't

9   -- that it's limited to the lawful effect of the automatic

10  stay so that it doesn't -- it explicitly disavows any effect

11  that any of its wording might have to extend beyond the

12  protections of the automatic stay.  And that was important

13  to me and comforting, so therefore it's approved.

14          MR. SAINVIL:  Thank you, Your Honor.

15          THE COURT:  Okay.  Is one more -- is there

16  something else that we were going to --

17          MR. SAINVIL:  Yes, Your Honor.  I'll turn --

18          THE COURT:  -- raise?

19          MR. SAINVIL:  I'll turn to the last motion, Your

20  Honor.

21          THE COURT:  Okay.

22          MR. SAINVIL:  And that is what we've called the

23  Scheduling Motion.

24          THE COURT:  Right.

25          MR. SAINVIL:  That was filed at Docket Number 19,

1   and it's within this motion, Your Honor, that the debtor is

2   seeking an order scheduling a combined hearing to consider

3   the adequacy of the disclosure statement and confirmation of

4   the plan.

5          THE COURT:  Okay.  Oh, can I ask you, before you

6   get going on it, I think -- have we covered ECF Number 13,

7   the delay or wait forming the UCC?  I've lost track.

8          MAN:  Not yet, Your Honor.

9          THE COURT:  Okay.  Do you wish -- did you want to

10  do -- which order did you want to go in?  Either one's fine.

11         MR. KEENAN:  Can handle the committee first and

12  then --

13         THE COURT:  Yeah.

14         MR. KEENAN:  -- I think we have further resolution

15  on the scheduling motion that should --

16         THE COURT:  Okay.

17         MR. KEENAN:  -- take care of the objection.

18         MR. SAINVIL:  I will cede the podium to Mr.

19  Keenan, Your Honor.

20         THE COURT:  Okay.  Oh, I see.  I see why you were

21  blazing ahead to scheduling because it's your last one.

22  Okay.  Go ahead, Mr. Keenan.

23         MR. KEENAN:  So Your Honor, with regard to Agenda

24  Item 3, which is Docket Number 13, that's the Motion to

25  Dispense with the Official Committee of the Unsecured

1    Creditors, we consulted with the U.S. Trustee on Friday and

2    again this morning.  As I understand it, and the U.S.

3    Trustee can confirm, that the debtor are going to agree to

4    continue this motion until the second-day hearing with the

5    understanding that the Office of the U.S. Trustee is not

6    going to form a creditors' committee before that second-day

7    hearing.

8              THE COURT:  Okay.  Is that correct, Mr. Zipes?

9              MR. ZIPES:  That's correct, Your Honor.  And just

10   to be clear, we may be soliciting, but we're not forming a

11   committee.

12             THE COURT:  Okay.  That -- I guess I shouldn't

13   even ask the debtor if that's okay with them.  I'll just

14   okay.  I don't know.  And I will say that might inform the

15   decision whether to go forward or not, right?  If there's

16   just no interest to them.

17             MR. ZIPES:  Yes.  And also, Your Honor, as it is a

18   prepack, we wouldn't expect to form the committee, but

19   again, if something goes wrong, then we want to be ready at

20   that point to --

21             THE COURT:  Okay.  That makes sense.

22             MR. ZIPES:  -- form a committee.

23             THE COURT:  That works for debtor to just hold off

24   until --

25             MR. KEENAN:  Yes, Your Honor.

1          THE COURT:  Okay.  So we'll just carry that

2    motion.  I think that a way to implement that would be for

3    debtors to just file a Notice of Continuation of Hearing to

4    the second-day hearing date.  So unless you have a --

5          MR. ZIPES:  Your Honor, I would say without date

6    but with the right to restore just so we don't have to worry

7    about it.  And then the second day it will probably be the

8    same exact situation for everybody.  But --

9          THE COURT:  Okay.  I just don't want it to

10   disappear into a void.

11         MR. ZIPES:  Understood, Your Honor.  And either

12   way is fine.

13         THE COURT:  So how about -- or you can file a

14   Notice of Conference.  How about just -- I'd like something

15   to be docketed --

16         MR. ZIPES:  That --

17         THE COURT:  -- basically so it's --

18         MR. ZIPES:  Your Honor, we're fine with that.

19         THE COURT:  -- on the radar.

20         MR. ZIPES:  We're fine.

21         THE COURT:  Yeah.  You can carry it or just file a

22   Notice of Conference With Respect to Status of Motion or

23   something.  You can make it up.  Whatever you want.  I just

24   want it on a calendar.  Basically I live in fear of things

25   falling off my radar.  So this is as -- a better control

1     date than anything else I think.

2          MR. KEENAN:  Understood, Your Honor.

3          THE COURT:  Okay.

4          MR. KEENAN:  We'll file a notice --

5          MR. VAZQUEZ:  Your Honor, if I may comment briefly

6     on this motion or the adjournment?

7          THE COURT:  Yeah.  Just state your name for the

8     record though.

9          MR. VAZQUEZ:  Sure.  Your Honor, Francisco Vazquez

10    from Norton Rose Fulbright on behalf of The Bank of Mellon,

11    the indentured trustee here.  Any notice that would go out

12    on this I would just ask that it be clear that the U.S.

13    Trustee may be soliciting in the interim.  There is a little

14    bit of confusion right now.  People have received a

15    solicitation, but they were aware of the motion so it was

16    unclear whether or not they should respond to that

17    solicitation while the motion was pending.  So to the extent

18    the trustee is going to solicit, you may want to have a

19    statement and know that's happening.

20         THE COURT:  Okay.  I don't know --

21         MR. VAZQUEZ:  It's a request more so than

22    anything, Your Honor.

23         THE COURT:  Yeah.  I got it.  So I guess you

24    probably can't tell, but there's some slightly puzzled looks

25    in the courtroom, which I interpret as people being unsure

1    how to cause that to happen.  But...

2              MR. VAZQUEZ:  I think just a statement and notice

3    that while this motion is pending the U.S. Trustee may be

4    soliciting parties to participate on a committee should it

5    be formed.

6              THE COURT:  That would go...

7              MR. KEENAN:  We could include that statement, Your

8    Honor.  It's consistent with what --

9              THE COURT:  Yeah.  I mean, if you want to include

10   it in the -- sorry.  I don't know if you heard.  Mr. Keenan

11   said yes basically.  So he'll put it in some form of notice.

12   So if you come up with words to that effect, that's fine.  I

13   don't think -- I want to be clear.  I'm not going to order

14   or direct that.  I think usually solicitation is the

15   business of the U.S. Trustee, and they do a great job that I

16   -- and I don't meddle with it.  And so I think that I

17   shouldn't be...

18             MR. VAZQUEZ:  Well, Your Honor, I appreciate that.

19   I was not asking for an order.  It was just more of a

20   courtesy from the parties since they're there and there's

21   been some confusion this morning --

22             THE COURT:  I understand.

23             MR. VAZQUEZ:  -- on that.

24             THE COURT:  If the U.S. Trustee's going to be

25   proceeding with soliciting, they can -- you can just explain

1    the situation, right?  That essentially that it's -- may or

2    may not -- well, let me just stop talking and let Mr. Zipes

3    speak or Ms. Segal.

4               MR. ZIPES:  Your Honor, Greg Zipes with the U.S.

5    Trustee's Office.  I think it's a good point, and it hasn't

6    been raised in the past, and that doesn't mean it's not a

7    good point.  So --

8               THE COURT:  Right.

9               MR. ZIPES:  -- I -- that's why we were just

10   looking at each other.  We did -- I believe we did send out

11   notices, solicitations.  The date is, I believe, June 3rd to

12   respond.  So there is some time to respond in that regard.

13   And there's no -- we can have further discussions on

14   (indiscernible).

15              THE COURT:  Okay.  Have you sent it out?  Is it a

16   mail thing, or...

17              MR. ZIPES:  I think it was by email.  We had

18   everybody's email address.

19              THE COURT:  Okay.  Let's just ask this.  Look, I

20   --

21              MR. ZIPES:  And it will be posted as well, Your

22   Honor.

23              THE COURT:  Yeah.

24              MR. ZIPES:  It's usually on our --

25              THE COURT:  I mean, I think the request isn't even

1    for any particular order.  So let's just stick to the deal,

2    which is I'm not going to be entering an order approving the

3    motion today.  And if you all want, you can have a -- you

4    can discuss, not in open court, how this will be implemented

5    in terms of noticing and communicating to the potentially

6    interested world the idea that there's solicitation, but

7    there may or may not be formation.  But solicitation can go

8    forward.  And if you're interested, let the U.S. Trustee's

9    Office know.  Right?  That's the bottom line what you're --

10             MR. VAZQUEZ:  That's exactly it.

11             THE COURT:  Yeah.  Okay.  So maybe you can --

12   well, however you want to proceed.  I think you can work

13   this out, and I shouldn't try to micromanage that, so I'll

14   just let you proceed with that thought, okay?  All right.

15             MR. VAZQUEZ:  Thank you.

16             THE COURT:  All right.  Does that cover us on -- I

17   think that covers us on the UCC Formation Motion, yes?

18             MR. KEENAN:  Yes, Your Honor.

19             THE COURT:  Okay.  Great.  And then we're going to

20   get --

21             MR. KEENAN:  That leaves the last motion for the

22   day, Your Honor, which is the Scheduling Motion as we call

23   it --

24             THE COURT:  Right.

25             MR. KEENAN:  -- which is on -- can be found on

1    Docket Number 19.  I'll just briefly explain the

2    accommodations that we've made to, as you put it, the so-

3    called Ad Hoc Committee.  Their objection that was filed

4    shortly before the hearing today asked that we delete

5    Paragraphs 9 through 15, which Your Honor can see from the

6    blackline that was filed shortly before the hearing.  We did

7    delete Paragraphs 10 through 15.

8              With respect to Paragraph 9, Your Honor, that

9    contains the table with the confirmation schedule.  Speaking

10   with counsel for the Ad Hoc Committee before the hearing

11   today, what I understand their issue there is, is they just

12   don't want the inclusion of the voting day -- distribution

13   date and voting deadline, which are all pre-petition dates,

14   to be construed as an admission or an order that those dates

15   are firm and final.

16             So the purpose of this, Your Honor, really -- of

17   this motion and this schedule is to simply schedule the

18   dates going forward.  So we'll further revise the proposed

19   order to take the first three rows out of the table in

20   Paragraph Number 9 so that it simply has petition date and

21   then distribution plan supplement plan confirmation reply

22   confirmation hearing.  And I'll cede the podium here in a

23   moment to Mr. Sainvil if you have any questions about the

24   balance of the motion.

25             But part of the reason for my recitation of the

1    previous Latin American prepacks that have been before the

2    Southern District of New York, we just wanted to show the

3    Court that, you know, we're asking for a reasonable

4    timeframe here.  Prepacks are supposed to be short, but not

5    so short that people can't have due process and exercise

6    their rights.  And we believe that this schedule provides

7    that.

8            THE COURT:  Okay.  That's fine.  Let me quickly

9    ask the Ad Hoc Noteholder Committee if this satisfies their

10   concerns and if there's any other concern you want to raise.

11   Then Mr. Sainvil will know what he's shooting at or

12   addressing.

13           MS. LIBBY:  Thank you, Your Honor.  Angela Libby

14   from Davis Polk on behalf of the Ad Hoc Group.  As an

15   administrative matter, Your Honor, we will be filing our

16   2019 Statement in the coming days, at which point I hope we

17   can move from being the So-Called Ad Hoc Group to being the

18   Ad Hoc Group of Noteholders.  And we promised the debtors

19   that we would let them get through their agenda and kind of

20   bring this up at the end, and we will keep this short.

21           With respect to the order, I think that actually

22   does resolve almost everything.  With respect to the

23   confirmation timing, we are actually okay with scheduling

24   the date, you know, on an accelerated timeline.  And I think

25   that goes to our optimism that hopefully we can reach

1   consensus with the debtors in the near term.  But Your

2   Honor, the precedence that the debtor's counsel cites are

3   all precedents that were highly consensual that have high

4   levels of voting as one typically sees in a prepack.  And so

5   we would simply ask to reserve our rights to come back to

6   the court to ask for additional time to ask for extension of

7   those deadlines in the event that we don't reach consensus,

8   in the event that this ends up being more litigious than we

9   hope that it will be.

10          THE COURT:  Okay.  I -- that's just sort of a

11  reservation-of-rights sentence and --

12          MS. LIBBY:  Yes.

13          THE COURT:  -- I will say that I generally make

14  myself available as needed on short notice.  And of course,

15  anyone can ask for scheduling modifications or whatever else

16  they want.  So noted, and that's fine, and I am glad to hear

17  you talk about hopefully reaching a consensual resolution.

18  I hope you do too, and -- but I think for now we can just --

19  I don't want to deprive Mr. Sainvil of his presentation.  So

20  I guess I won't --

21          MS. LIBBY:  Well, Your Honor, if I can just --

22          THE COURT:  -- blaze ahead too far.

23          MS. LIBBY:  -- have two more minutes of your time.

24  And I will not --

25          THE COURT:  Yeah, absolutely.  No.

1          MS. LIBBY:  I will not belabor objection.

2          THE COURT:  Actually, let's -- since you're up --

3          MS. LIBBY:  Yes.

4          THE COURT:  -- let me hear whatever you want to

5     tell me about the case from your perspective.  I'll say I

6     read your limited objection it was called, and I absorbed

7     it.  So -- but let me let you spell out whatever you want on

8     the record.

9          MS. LIBBY:  Sure thing, Your Honor.

10          THE COURT:  And maybe that'll inform your

11    discussions.

12          MS. LIBBY:  Absolutely.  So just to start, I

13    actually want to start by saying this is no way a case where

14    there is an impasse between a pre-existing ad hoc group and

15    the debtors.  As you can tell from the uncertainty about

16    exactly how big our group is and the fact that we're still

17    getting it together, this is really a case where we will be

18    starting negotiations with the debtors at this point.

19          And they obviously have a lot on their plate.  We

20    were not engaged with them pre-petition.  That also means,

21    though, Your Honor, that it's also not a case where there

22    was an ad hoc group that was actively formed that negotiated

23    with the debtors, assigned an RSA, that there were broad

24    levels of support in the class.

25          In fact, based on their voting report, it looks

1    like their votes to accept the plan represents roughly 34

2    percent of the impaired class.  So this isn't an 85, 95, 100

3    percent class vote in support of the plan.  Hopefully

4    through additional negotiations with the debtor we can get

5    that number higher and we can reflect our support.

6           As it stands right now, though, Your Honor, a

7    number of our clients in the ad hoc group actually voted to

8    reject the plan, and the voting report shows that their

9    votes were rejected.  In some cases that's based on

10   technicalities.  In some cases that appears to be based on

11   confusion with the nominees and that prepetition process and

12   folks not being familiar with this process and exactly what

13   it was that they were being asked to vote on.

14          And so for today's purposes, we really appreciate

15   the debtor stripping that from the order so that we can have

16   additional time to work with them to determine whether that

17   was a sufficient process in particular given that it was

18   done outside of the purview of this court and the U.S.

19   Trustee.  Unlike every other case where we agonize over the

20   ballots and we have all of this time to line up nominees,

21   and everybody knows it's coming, obviously a pre-petition

22   solicitation is a very, very, very different ballgame.  And

23   we need to make sure that obviously we maintain the

24   integrity of the process here.

25          With that, Your Honor, I think I would simply just

1  say that, you know, the last thing I just want to draw your

2  attention to is that it is a case where nobody else is

3  impaired.  You did not hear us rise to say anything about

4  other creditors, including other impaired past due creditors

5  getting paid in this case.  We understand that.  We

6  understand why that is being done.  But it's also a case

7  where junior equity stakeholders are being completely

8  unimpaired and left intact while the old noteholders here

9  are being asked to mandatorily exchange their notes into new

10  notes that contemplate a four-year maturity extension and a

11  25 principal haircut.

12         And so I think in particular in a case like this

13  where there's one impaired class where junior creditors are

14  being left without impairment at all, it's particularly

15  important to make sure that we end up with broad consensus

16  here, and that the procedures for soliciting that broad

17  consensus are all fully above board.  With that, I will just

18  close to say that we have utmost respect for Baker McKenzie

19  and Epiq team, and we absolutely look forward to working

20  with them to resolve any issues before Your Honor next time.

21         THE COURT:  Okay.  Thanks.  Let me just ask a

22  basic question.  I hear everything you're saying, and I

23  understand why you're raising these issues.  I don't hear

24  any objection to approval of the scheduling order and its

25  modified -- in the order's modified form.  Is that right?  I

1    just want to nail that down.

2              MS. LIBBY:  That is correct.  In particular with

3    the changes that Mr. Keenan raised before Your Honor just

4    now.

5              THE COURT:  Right.  In other words striking from

6    Paragraph 9's chart the voting record, date, solicitation,

7    and voting deadline dates, right, as recited.  Okay.

8              MS. LIBBY:  That's right, Your Honor.

9              THE COURT:  Got it.  Okay.  Thank you.

10             MS. LIBBY:  Thank you.

11             THE COURT:  Mr. Keenan, do you want to make your

12   own little marker speech in response?  You may.

13             MR. KEENAN:  Your Honor, I don't think we need to

14   --

15             THE COURT:  I shouldn't have said the word

16   "little".

17             MR. KEENAN:  -- initiate the dialogue before Your

18   Honor today, but I would just note that we solicited this

19   prepack obviously prepetition.  They received as the first-

20   day declaration and the declaration from the voting and

21   claims agent noted overwhelming support of those who voted.

22   We understand that the Ad Hoc Committee at present

23   represents a small minority, 13 percent, and I'm sure we'll

24   be talking to them soon.

25             THE COURT:  Okay.  My own take is that right now

1    we're -- I'm scheduling -- objections can be -- are going to

2    be pushed out.  We've -- we'll be setting a confirmation

3    schedule, and hopefully you'll --

4              MR. KEENAN:  Yes, Your Honor.

5              THE COURT:  -- negotiate and arrive on the same

6    page.  And I understand.  I think the difference in

7    characterization of percentage support flows from whether

8    you count percent of those who voted or those who exist

9    basically, right?  Do I have that right?

10              MR. KEENAN:  Yes, Your Honor, but the code is

11    clear that the thresholds are of those --

12              THE COURT:  I understand.

13              MR. KEENAN:  -- who vote.

14              THE COURT:  Right.  I understand.  And then there

15    may be also a fight about some ballot rejections that

16    occurred.

17              MR. KEENAN:  Yes, Your Honor.

18              THE COURT:  So you'll -- but that's for another

19    day.  Okay.  Let me let poor Mr. Sainvil come back up to

20    actually present his motion.  He's been waiting so

21    patiently.

22              MR. SAINVIL:  Thank you, Your Honor.  Reginald

23    Sainvil again from Baker McKenzie.  I think as has been

24    stated on the record, the debtor is making certain

25    accommodations to their proposed order on this motion, which

1    we believe is going to satisfy and resolve the objection

2    that was filed earlier today, Your Honor.  Given the

3    discussion that's already taken place, I will just briefly

4    note just a few key points in the motion and proposed order,

5    Your Honor.

6              The first is that we are continuing to seek

7    approval of the Confirmation Hearing Notice, which is

8    attached to the proposed order as Exhibit A.  We are also

9    seeking just a waiver as to the 341 meeting, Your Honor.  We

10   would just ask that it not be convened immediately provided

11   that it may be held if a plan is not confirmed within 60

12   days, Your Honor.  Aside from that, I think the other points

13   have largely been fleshed out on the record, and so I'm

14   happy to stop there, Your Honor.

15             THE COURT:  Okay.  Thanks.  Let me just take a

16   minute and look back through the order to make sure I'm

17   okay.  But let me also ask to see -- does the U.S. Trustee

18   want to be heard about any of this?  In particular the --

19             MR. ZIPES:  No, Your Honor.

20             THE COURT:  -- 341 meeting.  You're good.  Okay.

21   Okay.  Thanks.  I've finished reviewing the order.  I'm

22   going to approve the motion as submitted with the

23   modifications discussed on the record and revealed in the

24   revised form of order that was filed shortly before the

25   hearing with that one addition that was discussed on the

1    record.

2            This is a prepack.  Until shown otherwise, it is

3    proceeding on a consensual basis, and the order that I'm

4    approving today is procedural in nature and is consistent

5    with the court's modified -- recently modified pre-pack

6    guidelines.  It is common and appropriate in this

7    circumstance to combine the hearings on the Disclosure

8    Statement and the Plan of Reorganization, and that is the

9    primary effect of the scheduling order along with associated

10   notice and other procedural steps that are necessary and

11   appropriate to facilitate the cost-effective progress of

12   this case.

13           Further, as the Ad Hoc Noteholders say, I'll take

14   off the "so-called" just for their benefit, the scheduling

15   modifications that have been implemented are sufficient to

16   preserve their rights to negotiate further as they see fit

17   and to oppose confirmation and/or the sufficiency of

18   disclosure or anything else at the time that hearing rolls

19   around if there remains a dispute at that time.

20           And so for purposes of today, all I need to do is

21   ensure myself and all interested parties that the procedure

22   is being followed, provide adequate notice, and are fair and

23   well-calculated to permit a procedurally fair yet

24   economically viable and optimal outcome to the case.  And I

25   think this -- that the procedures being followed here do so.

1    So for that reason, I'll approve the motion.  Okay?

2              MR. SAINVIL:  Thank you, Your Honor.

3              THE COURT:  Thank you.  Okay.  Is there anything

4    else we need or want to do today?  No?

5              MR. SAINVIL:  No, Your Honor.  Nothing else for

6    the debtor.

7              THE COURT:  Okay.  All right.  Thanks very much.

8    So I'm not -- Mr. Zipes, anything?

9              MR. ZIPES:  No, Your Honor.

10             THE COURT:  You're just poised to run for the

11   exit.  Okay.  That's fine.  Thanks very much for everybody's

12   efforts.  As I say, I'm available on short notice if needed

13   for conferences.  Good luck moving the case forward.  I do

14   hope you reach agreement, and we're adjourned.  Take care.

15             (Whereupon these proceedings were concluded at

16   1:34 PM)

17

18

19

20

21

22

23

24

25

```
 1                      I N D E X

 2

 3                        RULINGS

 4                                        Page      Line
```

```
 5   Debtor's Cash Management Motion        27        20

 6   Insurance Policies Motion             34        24

 7   Hedging Practices Motion              36        20

 8   Wages Motion                          45        25

 9   Utilities Motion                      48        4

10   Motion to Extend/Waive the Deadline to File  49   21

11   Taxes Motion                          52        7

12   Unimpaired Claims Motion              53        20

13   Motion to Enforce the Automatic Stay  58        12

14   Motion to Dispense with the Official

15   Committee of the Unsecured Creditors  66        2

16   Scheduling Motion                     75        22
```

```
17

18

19

20

21

22

23

24

25
```

1                 C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6   _Sonya M. Ledanski Hyde_

7

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  June 13, 2024

**1**

**1** 17:24 36:21 42:18
**10** 37:10 52:23 67:7
**100** 14:3 71:2
**100,000** 17:16
**10004** 1:13 4:11
**10017** 3:16
**10018** 3:6
**10020** 4:4
**1007** 48:18
**109** 17:10,14 19:2
**10th** 30:10,18 30:24 31:9
**11** 10:25 11:25 12:9,16,20,23 13:1,20,23 14:4,6,17 17:9 17:11,23 21:3 29:2 35:12,22 51:17 55:21
**1107** 33:10
**1108** 33:10
**112** 38:22
**1121** 12:16
**11501** 79:23
**12** 32:12 40:24 78:13
**12,000** 40:11
**120** 40:24
**12151** 79:6
**12:01** 1:16
**13** 34:1,7 39:7 60:6,24 73:23

79:25
**1301** 4:3
**13th** 31:10,12 37:10
**144** 12:22
**15** 23:1 54:11 67:5,7
**17** 34:21 35:12 55:19
**17,000** 46:8
**17,410** 40:10 43:2
**19** 59:25 67:1
**1980s** 12:10
**1:34** 77:16

**2**

**2** 78:15
**2,000** 43:22
**20** 1:15 47:23 78:5,7,12
**2003** 17:23
**2016** 24:19
**2019** 14:3 68:16
**2021** 13:21
**2022** 24:19,23
**2023** 24:19,23
**2024** 1:15 79:25
**2025** 41:6,13 41:25
**21** 78:10
**22** 78:16
**23** 23:2 27:12
**24** 78:6
**24-10837** 1:3 5:4

**25** 72:11 78:8
**26** 53:23
**27** 78:5
**27th** 15:13
**28** 15:24
**2:00** 37:16

**3**

**3** 40:6 49:9 60:24
**300** 79:22
**3018** 12:14
**303** 17:24
**314,000** 36:7
**31st** 41:12
**33** 24:9
**330** 79:21
**34** 71:1 78:6
**34,000** 40:15
**341** 75:9,20
**345** 25:5,11
**35,000** 40:7 41:9 46:2
**36** 78:7
**361** 18:4
**363** 36:8,21 42:18 52:17
**365** 14:5
**366** 47:19
**393** 13:21
**3rd** 65:11

**4**

**4** 11:2 54:11 78:9
**408,000** 13:19
**41** 23:8

**43** 13:20 22:25
**45** 78:8
**450** 3:15
**452** 3:5
**48** 78:9
**49** 13:22 78:10
**4th** 14:18

**5**

**5** 56:16
**511** 18:3
**52** 78:11
**525** 56:17
**53** 78:12
**540** 20:20
**560** 18:13,14 18:16
**57,000** 47:2,10
**570** 14:1
**58** 14:4 78:13
**59** 14:5

**6**

**6** 22:6 32:12
**60** 25:10 28:14 48:16,19 75:11
**650** 18:13,16
**655** 18:18
**66** 78:15

**7**

**7** 51:4 78:11
**70** 14:2
**75** 78:16

**8**

**8** 22:7
**80** 20:20
**85** 71:2

| 9 | |
|---|---|
| **9** 51:3 52:23 67:5,8,20 | |
| **9's** 73:6 | |
| **95** 71:2 | |
| **98** 40:5 | |

| a | |
|---|---|
| **a.m.** 37:10 | |
| **ability** 50:4 55:7,9 | |
| **able** 36:3 | |
| **ably** 50:8 | |
| **above** 72:17 | |
| **abroad** 59:1 | |
| **absolutely** 27:1 57:5 69:25 70:12 72:19 | |
| **absorbed** 8:4 8:22 70:6 | |
| **abundantly** 36:22 | |
| **accelerated** 68:24 | |
| **accept** 71:1 | |
| **accommodat...** 67:2 74:25 | |
| **account** 17:17 17:18 23:14,15 23:25 26:7,11 40:11 | |
| **accountability** 23:19 24:1 | |
| **accounting** 29:21 | |
| **accounts** 19:3 22:13,25 23:3 | |

23:5,9,15,16 24:4,7,9 26:12 27:11,12 29:6 29:7
**accrued** 38:25 40:11 43:7,10 44:5,14,16,24
**accruing** 52:5
**accurate** 79:4
**accurately** 27:17
**action** 51:16
**actions** 51:13
**actively** 70:22
**activities** 57:18
**actual** 43:18 44:6
**actually** 13:16 23:17 24:25 29:12 33:4 36:4,7 37:10 41:22 53:1 55:8 68:21,23 70:2,13 71:7 74:20
**ad** 3:14 6:8,10 8:23 10:15 16:19 37:20 67:3,10 68:9 68:14,17,18 70:14,22 71:7 73:22 76:13
**add** 9:4 34:19 57:8
**added** 27:13 48:6 51:8

**addition** 5:17 24:10 27:12 75:25
**additional** 42:6 47:12,24 69:6 71:4,16
**address** 10:17 65:18
**addressing** 68:12
**adequacy** 60:3
**adequate** 27:10 33:7 47:8,12,13 76:22
**adjourned** 77:14
**adjournment** 63:6
**administrative** 18:3 24:21 68:15
**admission** 11:9 67:14
**advisor** 5:13
**aerovias** 17:22
**affairs** 48:14 48:16
**affect** 57:9
**affected** 49:3
**affirmative** 55:6
**afforded** 54:18
**afternoon** 6:2 10:2 37:14 50:18

**agencies** 56:21 57:4,17
**agency** 57:10
**agenda** 16:9 22:7 32:10,11 32:12 35:13 51:4 52:23 54:11 60:23 68:19
**agent** 73:21
**aggregate** 46:21 47:2
**ago** 13:25
**agonize** 71:19
**agree** 19:12 25:16 44:13 49:23 61:3
**agreement** 10:8 23:21 24:20 25:8,8 35:18 40:9 77:14
**agreements** 26:19 35:24 36:3,6
**agrees** 23:20
**ahead** 6:16 9:22 21:19 22:4 60:21,22 69:22
**aires** 18:12
**allow** 22:8
**allowed** 47:8
**alsacia** 14:5
**ambition** 29:2
**america** 12:24 13:18

**american** 8:16
15:10 68:1
**americas** 4:3
**amount** 12:3
15:19 32:23
35:4 36:5 40:3
43:23 44:7
46:2,8,22 47:2
**amounts** 33:23
33:23 47:3,9
**angela** 3:18 6:9
68:13
**angle** 41:1
**answer** 27:4
43:20
**anticipate** 5:21
30:24
**anticipated**
6:23 17:6
**anxiety** 19:4
**anybody** 5:6
16:16 42:8
45:2
**anybody's**
11:18
**apologies** 18:6
**apologize** 37:9
**appearance**
7:14
**appearances**
5:5,25
**appearing** 4:16
**appears** 71:10
**applicable**
45:5
**application**
36:23

**applications**
30:25
**applies** 29:18
36:21 44:23
**apply** 33:20
**applying** 47:22
52:13
**appreciate** 9:9
12:5 16:2 48:4
64:18 71:14
**appreciated**
15:6
**appropriate**
15:7 19:1
28:24 29:7,15
33:10 45:15
53:25 76:6,11
**approval** 44:10
72:24 75:7
**approve** 28:20
30:3 34:25
36:20 42:6
45:25 48:4
50:12 52:7
53:20 75:22
77:1
**approved** 5:19
8:21 36:9,13
36:25 45:5
48:9 49:6
52:18 58:13,14
58:19 59:13
**approving**
44:19 66:2
76:4
**approximately**
10:11 15:14,19

46:2
**arrangement**
26:7,7,11
**arrangements**
28:11
**arrive** 74:5
**articulating**
52:9
**aside** 75:12
**asked** 9:11,17
17:6 34:1
49:19 67:4
71:13 72:9
**asking** 15:11
15:19 45:18
47:3,5,11
64:19 68:3
**assert** 36:8
**assets** 27:6
**assigned** 70:23
**associated** 76:9
**associates** 9:17
**assuming**
42:20
**assurance**
29:20 47:8,13
**assurances**
36:2
**attached** 46:19
75:8
**attention** 29:5
72:2
**attorneys** 3:4
3:14 4:2,9
**audience** 50:2
**audits** 51:13

**authority** 18:4
19:3 32:13
**authorization**
22:11 24:12
**authorized**
23:7
**automatic**
21:13 54:7,13
54:19,22 58:22
59:5,9,12
78:13
**automotores**
13:24
**availability**
37:14
**available** 69:14
77:12
**avenue** 3:5,15
4:3
**average** 46:21
**avianca** 17:22
17:23
**avoid** 26:21
51:21
**avoided** 57:20
**aware** 12:5,23
13:15 15:4
17:19 19:3
63:15

**b**

**b** 1:21 12:14
25:5 36:21
42:18 52:17
**b.r.** 17:24 18:4
18:13,15,16
20:20

back 37:6
43:14,17 49:14
69:5 74:19
75:16
background
12:5 38:21
bad 51:18
baker 3:3 5:9
17:17 21:21
72:18 74:23
balance 8:24
67:24
ballgame 71:22
ballot 74:15
ballots 71:20
bank 4:2 7:10
8:6 22:13,25
24:4,7 26:12
27:11,12 63:10
bankruptcies
12:6
bankruptcy
1:1,11,23 8:10
8:19,21 9:16
12:11,12,12,14
12:17 13:2
14:16 17:10,14
22:10 27:5,9
28:7 30:15
47:20 48:17
54:21 56:17,23
59:2
bar 14:21
based 12:7,24
19:2,2 70:25
71:9,10

basic 27:4
44:18 72:22
basically 23:20
24:1,20 26:11
27:2 28:3 30:9
32:20 62:17,24
64:11 74:9
basis 16:17
17:2 25:22
28:21 29:8,11
31:14 42:6
47:1 76:3
behalf 6:10
7:10 21:21
38:8 50:19
63:10 68:14
belabor 70:1
believe 5:15,17
10:3,4,12,15
10:17 14:6,18
15:11 16:7
20:4 21:3
24:23,24 25:3
25:7 33:12
35:22 40:14
43:7 48:20
51:20,24 54:19
54:24 56:22
65:10,11 68:6
75:1
beneficial 59:6
benefit 39:14
48:6 50:6
76:14
benjamin 3:9
5:10 21:21

berau 20:20
bergen 7:2
best 49:24
bets 28:5
better 9:9
19:15 48:22
62:25
beyond 9:1
59:11
big 70:16
binder 55:17
55:23 56:2,4,5
56:8
binders 56:11
binding 56:20
bit 12:1 16:11
63:14
black 10:12,15
blackline 67:6
blaze 69:22
blazing 60:21
board 72:17
boat 29:17
bond 12:22,25
13:19,22 14:1
14:3,5
bonds 20:23
bonus 39:6
borrowers
32:17
bottom 66:9
bound 15:1
bowling 1:12
4:10
box 30:7
brief 7:22,25
16:22 21:15

22:10 48:25
briefly 17:1
28:1 63:5 67:1
75:3
bring 68:20
broad 39:4
70:23 72:15,16
brought 56:11
budget 34:2,7
buenos 18:12
bunch 52:25
buritica 4:17
5:16 10:25
business 22:9
22:13,19,20,20
22:21 24:13,25
25:1 26:21,22
26:24 29:16
32:20 33:5,9
36:24 39:23
40:16 50:23
51:10,15,23
53:1,2,5 54:3
64:15
businesses
29:1 30:2

**c**

c 3:1 5:1 23:1
48:18 79:1,1
calculated 14:7
76:23
calendar 13:18
25:21 26:2
37:16 62:24
call 10:7,22
15:16 53:10,18
66:22

**called** 6:8,21
8:23 10:15
15:5 39:6 51:3
52:22 59:22
67:3 68:17
70:6 76:14
**cap** 40:3,12
43:24 45:5
**capital** 10:21
20:20 24:24
**capped** 43:23
**card** 22:21
25:1
**care** 60:17
77:14
**cares** 42:11
**carry** 62:1,21
**carrying** 30:1
**carve** 57:9,19
**case** 1:3 7:20
12:16,20,23
13:2,21,25
14:2,15 17:11
18:6 28:5,8
33:21 35:5
39:1 42:1
49:22 51:17
52:11 53:9
70:5,13,17,21
71:19 72:2,5,6
72:12 76:12,24
77:13
**cases** 12:9,14
13:3 14:11,13
14:17 15:18
17:9,20 18:2
20:3,5,13 49:2

50:3 53:9,23
58:21 71:9,10
**cash** 21:5,23
22:2,6,12,19
22:23 24:7,10
26:15,16 27:11
27:21,24 34:11
78:5
**cashflow** 24:6
**catch** 59:4
**categories** 39:4
**cause** 27:6 64:1
**causes** 58:5
**cede** 60:18
67:22
**center** 30:16
**ceo** 4:17
**certain** 35:20
38:24 51:13,18
74:24
**certainly** 20:14
29:16
**certified** 79:3
**chambers**
31:25 55:23
**change** 58:8
**changes** 21:15
30:5 73:3
**chapter** 10:25
11:25 12:9,16
12:20,23 13:1
13:20,22 14:4
14:6,17 17:8
17:11,23 29:2
35:22 51:17
**characterizat...**
74:7

**chart** 73:6
**chase** 17:17
42:5
**check's** 44:20
**checking** 56:8
**chief** 5:16
10:24
**choose** 11:5
**chose** 20:1
**christina** 4:18
5:18
**circling** 49:14
**circuit** 30:14
**circumstance**
53:25 76:7
**cite** 17:21
**cited** 48:25
53:23
**cites** 69:2
**city** 51:8
**claim** 44:22
**claims** 21:13
52:22,24 53:10
53:14,14,18
73:21 78:12
**clarification**
21:13 45:3
**clarifying**
54:12
**class** 8:21
70:24 71:2,3
72:13
**clause** 18:10,25
20:2
**clean** 8:18
**clear** 61:10
63:12 64:13

74:11
**clerk** 15:12
**clients** 71:7
**close** 72:18
**closely** 9:10
15:3,3 55:5
**code** 12:12
17:10,14 25:6
29:13 33:7,10
36:8 42:16
47:20 56:17,23
74:10
**collapsed** 36:6
**collateral**
34:11
**colleague** 6:6
6:11,12 21:22
50:16
**collected** 32:17
**collections**
22:22
**colloquy** 46:1,6
**colombia** 7:4
8:7 17:22
23:18,22,23
39:17,22 51:15
51:18 53:6
54:14,15
**colombian**
8:15 23:10
38:22 39:7,9
39:11 40:16
41:1,2,3,23
42:13,19 54:15
57:10,17
**combine** 76:7

combined 60:2
come 25:8,10
  27:18 55:7,10
  64:12 69:5
  74:19
comes 19:9
comfort 35:13
  36:15
comforted 59:8
comforting
  59:13
coming 16:12
  16:12 26:15
  43:14 68:16
  71:21
commencem...
  12:15
commensurate
  51:10
comment
  49:18 63:5
commercial
  14:21
commissions
  39:5
committee
  10:8,10,15
  37:20 60:11,25
  61:6,11,18,22
  64:4 67:3,10
  68:9 73:22
  78:15
common 12:21
  23:18 76:6
commonly
  49:6,21

commonsens...
  36:23
communicati...
  66:5
companies
  12:7,20,24
company 38:23
  41:22 42:10
company's
  12:17 26:24
compared
  14:23
compensation
  39:5
completely
  72:7
completion
  26:23,24
compliance
  25:10 28:4
comprised
  22:25 35:14
concept 19:18
  32:5 44:18
concern 27:3
  40:2 42:23
  56:14 57:16
  68:10
concerned
  35:20
concerning
  21:12
concerns 8:24
  68:10
concluded
  77:15

conducts 51:14
confer 17:20
conference
  30:13,14,15
  62:14,22
conferences
  77:13
conferred
  19:18 25:6
conferring
  17:25
confirm 61:3
confirmation
  15:13,15 28:5
  60:3 67:9,21
  67:22 68:23
  74:2 75:7
  76:17
confirmed
  10:14 28:6
  48:19 75:11
confirming
  44:4
confront 29:12
confusion
  63:14 64:21
  71:11
congress 43:24
  43:25
consensual
  25:4 33:12
  37:21 69:3,17
  76:3
consensus 69:1
  69:7 72:15,17
consent 8:25
  26:4 47:6

consenting
  50:7
consequential
  49:8
consider 8:20
  42:8 60:2
considered
  15:10
consistent 29:1
  35:5 64:8 76:4
construed
  67:14
consult 43:19
  58:4
consulted 61:1
consulting
  5:13
consummated
  25:2
consumption
  8:2
contains 67:9
contemplate
  12:13 72:10
contemplated
  34:14 48:22
contested
  20:17 28:7
context 24:14
  27:14 32:18
  35:20
continuation
  29:18 62:3
continue 10:9
  22:8,12,13,14
  24:12,14 27:10
  27:17 32:14

36:3,24 38:25
39:21 40:19
46:24 47:3
53:6 61:4
**continued**
28:25 32:19
38:22
**continues** 24:2
39:23
**continuing**
53:2,7,13 75:6
**contract** 19:20
20:22,22
**contracts**
20:21 35:15
**contractual**
19:19
**contributions**
39:11,12
**control** 62:25
**controls** 29:24
**convened**
75:10
**copy** 15:1
**correct** 16:1,4
25:24 36:17
43:8 58:20
61:8,9 73:2
**corrected** 57:1
**correctly** 23:12
59:5
**cost** 76:11
**costs** 37:23
**could've** 52:25
**counsel** 5:9
10:14 16:19
50:8 56:16

67:10 69:2
**count** 74:8
**counter** 58:25
59:7
**counterparties**
35:21 36:2
**country** 79:21
**couple** 28:23
**coupled** 29:25
**course** 11:19
22:9 27:8,9
36:9,10,15
39:2 42:18
44:11 46:19
47:1,4 53:3,8
69:14
**court** 1:1,11
5:2,21,24 6:5,7
6:13,16,19,25
7:4,7,12,25 9:9
9:14,17,19,23
10:13,18 11:8
11:15 12:4
13:5,7,10,12
14:16,19 15:20
15:22 16:2,6
16:10,13,16,24
17:4 18:14,17
18:19,22,24
19:1,14,17,24
20:11,16,20
21:1,10,16,18
21:21 22:4
24:5 25:12,17
25:19,25 26:13
26:18,20 27:2
27:19,23 28:10

28:12,15,18
30:21 31:1,4,8
31:10,12,19,21
31:24 32:1,9
33:14,24 34:8
34:10,15,19,22
35:10 36:10,12
36:13,14,18
37:3,5,7,12,15
37:18,25 38:4
38:6,9,14,17
38:20 40:1,22
41:8,11,14
42:2,4 43:1,5
43:11,16 44:3
44:8,16 45:8
45:11,13,21,24
46:10,12,15
47:7,15,24
48:3,11 49:5
49:13,16,21
50:14,17,20,21
50:23 51:1,5
52:1,7,20
53:16,20 54:2
54:5,9,12,21
55:1,7,10,11
55:23 56:1,5
56:10 57:1,7
57:25 58:3,9
58:12,19,24
59:15,18,21,24
60:5,9,13,16
60:20 61:8,12
61:21,23 62:1
62:9,13,17,19
62:21 63:3,7

63:20,23 64:6
64:9,22,24
65:8,15,19,23
65:25 66:4,11
66:16,19,24
68:3,8 69:6,10
69:13,22,25
70:2,4,10
71:18 72:21
73:5,9,11,15
73:25 74:5,12
74:14,18 75:15
75:20 77:3,7
77:10
**court's** 12:5
76:5
**courtesy** 64:20
**courtroom**
5:10,12 6:4,11
63:25
**courts** 48:24
48:25 49:1
**cover** 66:16
**covered** 46:10
60:6
**covers** 66:17
**crazy** 30:10
**create** 20:21
**crediservicios**
1:7 5:4
**credit** 22:21
25:1 29:25
**creditor's**
10:10
**creditors** 49:2
49:3 50:3
53:12,15 54:22

61:1,6 72:4,4
72:13 78:15
**credivalores**
1:7 5:3
**critical** 38:23
**cross** 11:5,11
**cumulatively**
28:22
**curious** 19:8
**currency** 8:15
8:16 35:15,17
**current** 14:22
45:16
**customary**
9:16 22:7
23:18 24:13
**customer**
32:22,24
**cut** 42:4 44:21

**d**

**d** 5:1 24:8
49:10 78:1
**date** 14:8,8,8,9
15:13,17 24:18
28:4 30:12
62:4,5 63:1
65:11 67:13,20
68:24 73:6
79:25
**dates** 14:7
15:24 30:9,11
67:13,14,18
73:7
**david** 1:22
**davis** 3:9,13
5:11 6:9 21:4,7
21:19,20,21

22:5 24:6
25:16,18,24
26:10,14,19
27:1,7,22
32:10 35:9,11
36:13,17 37:1
37:4,6 68:14
**day** 2:1 5:3
9:21 10:10
11:1,6,24
13:20,22 14:2
14:4,5 16:5,7
21:2,3 25:10
26:1 28:2
30:19 34:14
37:9 41:15
42:8,22 46:3
47:23 48:19
50:22,24 54:4
61:4,6 62:4,7
66:22 67:12
73:20 74:19
**days** 9:2 15:24
28:14 31:15
48:16 68:16
75:12
**de** 17:22 23:10
23:10
**deadline** 38:11
48:13,15,17,20
67:13 73:7
78:10
**deadlines**
49:17 69:7
**deal** 66:1
**dealing** 17:7
22:22

**dealings** 59:7
**deals** 59:1
**debbie** 5:12
43:8
**debt** 8:14
12:22,25 13:1
13:19,22 14:2
14:4,5 18:9,21
20:5
**debtor** 1:9 3:4
4:17 5:5,17 8:4
10:22 12:2
15:8 17:8,9,11
17:13,16 18:1
18:7 20:23,24
21:22 22:8,11
23:20 24:1,2
24:22 26:16
27:8,16 28:25
29:20 32:13,20
32:21 33:1,2
33:21 34:12
35:23,25 36:2
36:7 38:8,21
39:12,18,21
44:11 46:16
49:24 50:19
51:6,14,19,22
53:5 54:11,14
57:7,23 58:25
59:6 60:1 61:3
61:13,23 71:4
71:15 74:24
77:6
**debtor's** 7:22
8:14 10:20
20:22 21:6

22:5 23:2,16
24:16 30:1
33:5,8 35:14
35:18,20 36:23
48:21 51:9,13
51:16,22 53:1
53:2,7 56:16
69:2 78:5
**debtors** 5:10
5:14 7:18 8:11
8:12 11:25
15:21 54:18
58:20 62:3
68:18 69:1
70:15,18,23
**decide** 19:7
**decision** 61:15
**declaration**
10:24 11:4,6,9
55:24 56:10
73:20,20
**deemed** 20:5,9
20:25
**deep** 58:4
**deferring**
50:10
**delaware** 20:7
20:8,9,10
**delay** 40:25
60:7
**delete** 67:4,7
**demonstrate**
34:12
**denominated**
12:21,25 13:19
14:1

deny 56:18
department 4:8
depository 23:7 29:13
deposits 18:5 18:20 19:2
deprive 69:19
deputy 15:12
derail 42:11
describe 10:20 10:21,22 23:4
described 26:8 59:5
description 29:5 57:16
descriptions 24:6
designed 28:24
desire 53:17
detailed 48:8
details 24:8
determine 71:16
dialogue 10:1 73:17
difference 74:6
different 26:8 26:8,10 52:25 56:6 71:22
dionna 3:11 5:11 38:7
dip 34:8
direct 64:14
disappear 62:10

disavows 59:10
disclosed 29:22
disclosure 60:3 76:7,18
discuss 66:4
discussed 75:23,25
discussion 31:14 75:3
discussions 35:7 65:13 70:11
dispense 60:25 78:14
dispute 76:19
disruption 26:22
distribution 67:12,21
district 1:2 7:6 13:16,25 14:16 17:9 68:2
docket 11:2 22:6 32:12 35:12 51:3 52:23 54:10 59:25 60:24 67:1
docketed 62:15
doctrine 33:11 40:17 41:21 45:16 52:12,13 52:16
documents 25:21
doing 14:21

dollar 12:21,25 13:19 14:1 18:20 33:22,23 40:7 44:7
domestic 47:23 56:17
door 42:15,22
double 56:8
downside 50:10
draft 55:20
draw 72:1
dropped 13:7
dsj 1:3
due 15:25 27:18 40:8 41:6,12,24 43:6,12,19 44:20 68:5 72:4
duration 53:9

### e

e 1:21,21 3:1,1 5:1,1 25:14 38:16 49:10,11 78:1 79:1
earlier 26:8 75:2
ease 22:7
easier 56:13
ecf 60:6
economically 76:24
ecro 1:25
edit 32:7 46:3 57:1

educational 30:16
effect 58:22 59:1,9,10 64:12 76:9
effective 14:8,9 15:17 28:25 76:11
efficiency's 31:5
efficient 22:1
effort 37:22
efforts 51:17 77:12
eight 23:5
either 19:10,10 23:9 32:24 49:10 60:10 62:11
electrica 18:12
electricity 46:17
electronic 25:21
elements 28:16
eleven 16:7
eligibility 17:15,21 18:1 19:15
eligible 17:10 18:7
email 30:7 65:17,18
employee 21:11 38:24 39:3,4,14,18 39:20 40:11,13

40:18,19 44:5
**employees** 21:9
38:22 39:7,23
40:2,20,24
45:16
**employers** 41:4
**employment**
38:22 40:9
**encourage** 9:24
**endorses** 24:1
**ends** 39:18
69:8
**enforce** 54:7
78:13
**enforcement**
21:13
**enforcing**
54:12
**engaged** 50:9
70:20
**engages** 23:20
**engaging** 22:14
24:14 48:22
**english** 5:20
**enhance** 23:19
**enhances**
23:25
**ensure** 28:4,24
39:22 76:21
**ensuring** 35:3
**enter** 32:16
**entering** 66:2
**enterprises**
29:3
**enters** 23:21
**entirely** 25:4

**entities** 24:15
26:4,17 29:19
29:20 58:21
**entitled** 29:23
**entitlements**
19:20
**entity** 8:5
22:18 23:3
24:3
**entry** 11:2
25:22 57:11
**epiq** 72:19
**equal** 32:23
**equity** 72:7
**equivalent**
23:10
**escrow** 19:2
**especially**
30:23
**essentially**
8:18 15:11
36:16 65:1
**established**
12:6 26:22
**estate** 27:6
35:25 49:25
**etcetera** 56:19
**event** 69:7,8
**everybody**
62:8 71:21
**everybody's**
65:18 77:11
**everything's**
37:21
**evidence** 11:4
11:9

**evolved** 14:24
**exact** 62:8
**exactly** 41:20
58:24 66:10
70:16 71:12
**examine** 11:11
**example** 20:7
56:24
**except** 6:20
**exception**
10:16
**exchange**
10:23 35:15
72:9
**excluded** 8:24
**excuse** 11:1
**executed** 24:22
**executive** 5:16
10:24
**exercise** 29:16
51:22 68:5
**exhibit** 23:1
24:8 46:20
75:8
**exist** 20:5,10
20:25 74:8
**existed** 24:17
**existing** 24:13
29:17 32:14
70:14
**exit** 77:11
**expect** 31:2
61:18
**expected** 28:4
**expecting** 6:14
**expenditures**
8:15

**expense** 44:11
**expenses** 46:19
47:10
**explain** 54:20
64:25 67:1
**explained** 8:12
47:21 52:4
**explaining**
40:6 43:18
**explanation**
16:3 47:25
48:4,6
**explicitly**
59:10
**expressed** 8:24
**expressly**
12:13
**extend** 38:11
48:13 49:17
59:11 78:10
**extended** 48:20
**extending** 29:9
**extension** 21:8
25:10,14 48:15
48:19 69:6
72:10
**extent** 8:25
45:4 47:5,11
59:5 63:17
**extra** 58:22

**f**

**f** 1:21 79:1
**facilitate** 76:11
**fact** 9:10 12:20
18:5 19:25
70:16,25

factor 19:5,6
factors 19:10
failing 51:11
fair 7:7 12:3
  41:3 44:1,13
  76:22,23
fall 39:4 53:14
falling 62:25
falls 52:15
familiar 22:18
  54:17 71:12
far 69:22
fdic 23:9
fear 27:5 62:24
february 14:18
federal 12:12
  30:15 48:17,17
feel 9:1,2 58:3
fees 51:7
fiduciaries
  27:13
fiduciary
  23:21,21,24
  24:3
fifth 3:5
fight 74:15
figure 43:20
  58:10
file 12:22 17:10
  18:8 21:9
  30:25 31:2
  38:12 48:14,15
  50:1 62:3,13
  62:21 63:4
  78:10
filed 7:17,18
  8:11 9:10

10:13 12:17
13:16,21,25
35:6 50:5 51:3
52:23 54:10
59:25 67:3,6
75:2,24
filing 12:13,20
  34:8 35:22
  50:10 68:15
final 29:10
  35:11 57:11
  67:15
finally 39:15
  47:10
finances 7:22
  10:20 50:5
financial 5:13
  8:6,8,17 23:6
  23:22 38:12
  48:14,16,23
financieras
  23:11
financing 8:16
  22:20 34:9
find 30:12
finds 53:23
fine 8:2 16:25
  20:17 32:6
  34:10,15,22
  42:5 45:10
  57:3 60:10
  62:12,18,20
  64:12 68:8
  69:16 77:11
finished 75:21
firm 67:15

first 2:1 5:3,5
9:2,21 11:1,6
11:24 16:5,7
17:23 21:2,3,5
24:19 28:2
30:13 34:14
39:4 41:15
46:24 50:1,22
50:24 54:4,7
60:11 67:19
73:19 75:6
fit 5:6 76:16
fits 14:13
five 13:15
  15:14,15 39:4
fix 49:13
fleshed 75:13
flow 26:6
  29:19
flows 24:7 26:4
  29:22 35:4
  52:10 74:7
fluctuations
  35:17
fluently 5:20
focus 25:13
focused 9:3
  45:14 48:22
focusing 49:25
folks 71:12
followed 15:3
  21:7 76:22,25
fondo 23:10
footnote 13:7
  15:11 40:6
  41:7

footnotes 15:6
force 19:7
foregoing 79:3
foreign 11:25
  12:2,19,21
  15:8,21 17:8
  18:23 35:15,17
  46:18,25 47:6
  47:11 54:17,21
  55:6 56:17
  58:21
forget 49:7,19
  58:12
form 61:6,18
  61:22 64:11
  72:25 75:24
formation 66:7
  66:17
formed 64:5
  70:22
former 40:8,14
forming 60:7
  61:10
forms 24:12
forth 10:24
  47:14 48:17
  51:6
forum 18:10
  18:25 20:2
forums 22:14
  24:13
forward 29:8
  43:11 44:8
  51:17 61:15
  66:8 67:18
  72:19 77:13

| | | |
|---|---|---|
| **found** 11:2 17:24 18:3,12 24:7 66:25 | **g** | 66:7 |
| **four** 22:11,14 72:10 | **g** 5:1 | **goes** 40:18 53:1 58:10 61:19 68:25 |
| **francisco** 4:6 4:17 5:16 7:9 10:25 63:9 | **gap** 43:22 | **going** 6:20 8:10 16:13 20:17 25:25 26:1,16 27:2 30:3 34:24 36:20 37:19 40:24 42:5 43:9,15 44:6,9,17,21 45:25 48:4 49:7,22 50:11 52:7 53:20 55:14 59:16 60:6 61:3,6 63:18 64:13,24 66:2,19 67:18 74:1 75:1,22 |
| **frankly** 9:8 | **garantías** 23:10 | |
| **free** 9:1 58:3 | **general** 8:1 49:2 | |
| **frequently** 49:17 58:24 | **generally** 8:7 33:19 51:10 52:10 55:4 57:3 69:13 | |
| **friday** 10:2 33:18 61:1 | **getting** 14:15 16:18 50:9 55:8 70:17 72:5 | |
| **friendly** 16:18 | | |
| **front** 37:11 | | |
| **fruit** 14:20 | | |
| **fti** 5:13 | **gildemeister** 13:24 | |
| **fulbright** 4:1 7:9 63:10 | **give** 7:22 9:21 16:22 21:14 30:20 33:24 34:6 44:1 45:13 51:12 56:8 | **good** 6:2,3 7:8 21:18 32:5 38:7,9 45:23 45:25 49:21 50:18 65:5,7 75:20 77:13 |
| **fulfilling** 35:23 | | |
| **fully** 25:2 29:11 72:17 | | |
| **function** 22:8 32:21 | **given** 29:20 40:12 42:15 71:17 75:2 | **gotten** 56:21 |
| **fund** 24:25 39:11 | | **govern** 20:1 |
| **funds** 39:14 | **glad** 9:11 14:19 69:16 | **governed** 12:25 17:15,25 18:9,21 20:6 |
| **further** 24:6,8 32:7 40:19 42:8 60:14 65:13 67:18 76:13,16 | **global** 23:8 | **government** 39:13 56:18 57:17 |
| | **go** 6:16 9:22 10:2 16:8 21:19,25 22:4 25:15 27:6 29:8 30:16 42:15,20 54:2 60:10,22 61:15 63:11 64:6 | **governmental** 56:21 57:4,10 |
| **future** 13:4 | | |
| | | **grant** 49:22 |
| | | **granted** 49:1 49:22 |
| | | **granting** 36:1 |
| | | **grants** 58:24 |
| | | **grateful** 35:2 |
| | | **graulich** 3:20 6:12 |
| | | **great** 6:13,19 7:12 9:23 15:22 16:6 22:4 37:3 38:2 38:14 47:15 48:3 64:15 66:19 |
| | | **greater** 32:23 |
| | | **green** 1:12 4:10 |
| | | **greg** 4:13 6:2 11:12 27:25 33:17 47:18 52:3 55:3 65:4 |
| | | **group** 3:14 6:8 6:10 8:23,25 50:6,8 68:14 68:17,18 70:14 70:16,22 71:7 |
| | | **grupo** 13:20 |
| | | **guess** 5:24 26:5 34:16 36:15 48:5 57:15 61:12 63:23 69:20 |
| | | **guidelines** 14:17 15:2,7 76:6 |

| h | 64:10 75:18 | 35:10 38:20 | 48:2 49:20 |
|---|---|---|---|
| **h** 38:16 | **hearing** 2:1,1 | 52:20 | 50:13,18,21 |
| **haircut** 72:11 | 10:10,13 11:10 | **hoc** 3:14 6:8,10 | 51:9,15,20,25 |
| **half** 30:23 47:9 | 11:19 26:1 | 8:23 10:15 | 52:3,19,21,24 |
| **hamstring** 8:2 | 28:22 37:9,11 | 37:20 67:3,10 | 53:3,9,10,15 |
| **hand** 19:7 | 42:22 46:3 | 68:9,14,17,18 | 53:19 54:1,20 |
| 43:21 | 60:2 61:4,7 | 70:14,22 71:7 | 54:23 55:3,22 |
| **handle** 10:7 | 62:3,4 67:4,6 | 73:22 76:13 | 55:25 56:3,8 |
| 60:11 | 67:10,22 75:7 | **hocs** 16:19 | 56:13,20 57:2 |
| **happen** 28:3 | 75:25 76:18 | **hold** 42:7 | 57:22 58:8,11 |
| 64:1 | **hearings** 2:1 | 61:23 | 58:18 59:14,17 |
| **happening** | 5:3 30:19 42:8 | **hon** 1:22 | 59:20 60:1,8 |
| 14:23 63:19 | 76:7 | **honor** 5:8 6:2,9 | 60:19,23 61:9 |
| **happens** 28:6 | **heart** 53:1 | 6:15,18,24 7:3 | 61:17,25 62:5 |
| 37:20 42:22 | **heavily** 14:17 | 7:8,21 9:7,17 | 62:11,18 63:2 |
| **happy** 17:5 | **hedge** 35:16 | 9:25 10:19 | 63:5,9,22 64:8 |
| 21:25 28:12 | **hedges** 35:13 | 11:3,12,20,21 | 64:18 65:4,22 |
| 37:22 58:8 | **hedging** 21:6 | 12:1,19,23 | 66:18,22 67:5 |
| 75:14 | 21:24 35:11,14 | 13:3,9 14:6,11 | 67:8,16 68:13 |
| **harbor** 47:20 | 35:18,20,24 | 14:14,25 16:4 | 68:15 69:2,21 |
| **harm** 51:21 | 36:2,6,19,24 | 16:21 17:5,8 | 70:9,21 71:6 |
| **haste** 15:20 | 78:7 | 17:19 19:12,22 | 71:25 72:20 |
| **he'll** 21:5 64:11 | **held** 19:1 23:14 | 20:19 21:3,20 | 73:3,8,13,18 |
| **head** 16:18 | 23:15,16 29:6 | 22:1,5,17,17 | 74:4,10,17,22 |
| 36:19 40:8,14 | 75:11 | 24:11 25:16,24 | 75:2,5,9,12,14 |
| **hear** 5:25 | **help** 43:16 | 26:10 27:1,7 | 75:19 77:2,5,9 |
| 13:13 27:3,23 | **helpful** 13:12 | 27:22,25 28:1 | **honor's** 15:4 |
| 31:15 41:25 | 16:22 17:3 | 30:20,22 31:11 | **honoring** |
| 45:1 69:16 | **helps** 30:8 | 31:16 32:11,18 | 39:19 |
| 70:4 72:3,22 | **hi** 6:7,19 50:20 | 33:17 34:1,6 | **hooks** 19:13 |
| 72:23 | **high** 10:6 69:3 | 35:9 36:4 37:1 | **hope** 23:11 |
| **heard** 5:7 16:8 | **higher** 71:5 | 37:4,8,14,17 | 68:16 69:9,18 |
| 16:17 21:4 | **highlight** 14:10 | 37:24 38:5,7 | 77:14 |
| 27:24 28:19 | **highly** 23:8 | 40:18 41:3,19 | **hopefully** |
| 33:15 34:23 | 69:3 | 41:24 42:24 | 22:10 28:7 |
| 45:17 47:16 | **hmm** 9:19 | 44:1 45:10 | 29:10 68:25 |
| 52:2 53:17 | 16:10 24:5 | 46:13 47:18 | 69:17 71:3 |

74:3
**hybrid** 2:1
38:2
**hyde** 2:25 79:3
79:8

**i**

**idea** 66:6
**identified**
22:16
**identifies**
46:20
**ignored** 56:2
**ignoring** 43:25
**immediate**
51:21
**immediately**
75:10
**impact** 35:25
**impaired** 71:2
72:3,4,13
**impairment**
72:14
**impasse** 70:14
**impeding**
57:24
**implement**
8:20 46:4 62:2
**implemented**
66:4 76:15
**important** 17:7
54:14 57:24
59:12 72:15
**imposed** 33:1
**incapable**
35:23
**include** 39:12
64:7,9

**includes** 15:24
39:5
**including**
28:15 51:7
72:4
**inclusion** 67:12
**income** 8:14
51:7
**incorporate**
31:18
**incorporated**
46:7
**increase** 39:20
**indemnity** 40:8
40:15 41:9
**indentured**
7:10 63:11
**indiscernible**
5:4,12 7:8,13
9:22 43:14
65:14
**individual's**
39:17
**individuals** 8:7
**industry** 8:8
**inflows** 27:11
**inform** 54:21
61:14 70:10
**information**
50:7,9
**initial** 56:24
**initiate** 73:17
**injection** 24:24
**instances**
52:14
**instituciones**
23:11

**institution**
23:14,15,22
35:19
**institutions**
23:6,8 29:14
**instruction**
42:7
**insufficient**
57:20
**insurance** 21:6
21:23 32:11,14
32:19,22 33:7
33:7,16 34:23
47:12 78:6
**insured** 23:9,9
29:6
**intact** 72:8
**intangible**
19:19 20:22,24
**integral** 22:23
**integrally** 33:5
33:8
**integrity** 71:24
**intend** 11:11
34:8
**intended** 35:16
**intending**
42:11
**intention** 11:13
**interest** 19:19
29:23 61:16
**interested** 27:3
66:6,8 76:21
**interesting**
14:14
**interim** 25:22
25:22 28:21

29:8 30:4,5
31:17 42:6
56:14 57:6,12
57:19 58:2
63:13
**internet** 46:17
**interpret** 63:25
**interpreter**
4:18 6:15,17
6:17,24 7:2,5
**interpreting**
6:21
**intertwined**
33:4,5,8
**introduce** 7:19
11:4
**introduction**
21:15
**inversiones**
13:18 14:4
**inversora**
18:12
**involve** 29:19
**involved** 9:20
23:24
**involves** 23:24
**involving**
58:21
**ionosphere**
52:11
**irreparable**
51:21
**issuance** 33:3
**issue** 8:14
26:17 33:19
42:3 55:13,16
56:22 58:16

67:11
**issued** 12:24
14:16
**issuers** 12:21
12:22 32:25
**issues** 10:3
11:21 28:2
32:21 50:1
72:20,23
**it'd** 22:1
**it'll** 42:20
**item** 25:3,4
32:10 35:11
60:24

**j**

**jaime** 4:17
5:15 10:25
**january** 41:6
41:12,24
**jersey** 7:2
**job** 64:15
**jones** 1:22
**jp** 17:17
**judge** 1:23
27:5 37:11
**judges** 30:15
**judging** 41:15
**judgment**
29:16 36:24
51:23
**judicial** 30:12
30:14,16
**july** 31:6
**june** 15:13
30:9,10,12,13
30:14,18,23
31:8,8,9,10,10

31:12 37:10
65:11 79:25
**junior** 9:18
72:7,13
**jurisdiction**
47:7
**justice** 4:8
**justified** 42:19

**k**

**keenan** 3:8 5:8
5:9,23 7:15,21
9:7,15,20,25
10:19 11:20
13:6,9,11,14
14:25 16:1,4,7
16:11,15 17:5
18:16,18,20,23
18:25 19:12,15
19:22,25 20:12
20:19 21:2,11
21:17,22 30:20
30:22 31:2,5,9
31:11,16,22,25
32:8 34:4,6,11
37:6,8,13,17
37:24 38:3,5
60:11,14,17,19
60:22,23 61:25
63:2,4 64:7,10
66:18,21,25
73:3,11,13,17
74:4,10,13,17
**keep** 15:21
68:20
**key** 32:19 75:4
**keys** 25:20

**kind** 12:4
14:22 22:2
23:25 24:4
26:11,17 27:13
27:18 28:5
30:10 33:4
58:24 68:19
**kinds** 24:9
**know** 7:19 8:22
9:16 11:22
14:13 15:4
18:13 19:6
20:7,13 27:20
30:9 32:1,2
33:6 34:2 40:4
40:4 41:24
42:3 43:18
44:18,24 55:17
58:5 61:14
63:19,20 64:10
66:9 68:3,11
68:24 72:1
**knowledge**
43:18
**known** 12:22
17:22
**knows** 22:17
71:21

**l**

**labeled** 52:24
**labels** 52:25
**lack** 48:7
**language** 25:9
31:19 46:8
57:9
**large** 50:3

**largely** 75:13
**latin** 12:24
13:18 15:10
68:1
**law** 12:25
17:16,25 18:9
18:21,23 19:3
19:17,18,20
20:1 39:7,17
40:16 41:1,2,3
41:23 42:13
52:9
**lawful** 59:9
**lawfully** 39:21
39:22
**laws** 54:16
**layer** 27:13
**leal** 4:17 5:16
5:19 6:21
10:25 11:9,11
11:18 56:10
**leave** 42:21
44:17
**leaves** 66:21
**ledanski** 2:25
79:3,8
**left** 72:8,14
**legal** 42:19
79:20
**lending** 8:5,5
**lengthy** 10:1
**level** 10:6
**levels** 69:4
70:24
**lexington** 3:15
**li** 3:19 6:11

**liability** 51:9
**libby** 3:18 6:9
  6:9 68:13,13
  69:12,21,23
  70:1,3,9,12
  73:2,8,10
**license** 27:6
  56:19
**licenses** 56:22
**liens** 51:12
**life** 32:22
**light** 35:7
**likelihood**
  37:25 39:20
**likely** 51:12
**likewise** 6:5
**limited** 7:16
  59:9 70:6
**line** 10:12,15
  18:4 66:9
  71:20 78:4
**lines** 20:18
**lingering** 10:4
**lion's** 53:4
**liquidity** 34:13
**list** 5:18 13:2
  23:7
**listed** 23:1
**literally** 32:2
  45:14
**litigious** 69:8
**little** 19:4
  23:17 52:14
  63:13 73:12,16
**live** 5:21 6:22
  11:17 38:1
  62:24

**living** 28:13
**llp** 3:3,13 4:1
  5:9 17:17
**loan** 22:19
  32:21,23
**loans** 22:22
  24:23,24
**located** 7:1
  17:18 53:5
**location** 51:14
**logic** 29:18
**logical** 50:2
**long** 28:23
  29:10 32:25
  42:14
**look** 28:8 55:12
  56:6 65:19
  72:19 75:16
**looked** 14:8
  15:9 20:14
**looking** 26:2
  37:15 43:23
  44:8 55:1
  57:14 65:10
**looks** 63:24
  70:25
**loosely** 52:14
**lost** 60:7
**lot** 43:2 70:19
**ltda** 13:18
**luck** 77:13

**m**

**made** 42:21
  67:2
**magic** 58:13
**magnitude**
  33:25

**mail** 65:16
**maintain** 22:13
  26:24 27:10
  29:17 30:7
  32:13 33:7
  71:23
**maintained**
  27:8
**maintaining**
  33:9
**maintains**
  17:11 46:16
**maintenance**
  32:18 33:3
**major** 8:12
**majority** 51:14
  53:4,13
**make** 5:5 10:19
  14:22 15:3
  18:7 28:22
  32:1 33:14
  34:13 39:7,13
  40:19 41:4
  46:6 55:12,16
  57:23 58:8,25
  62:23 69:13
  71:23 72:15
  73:11 75:16
**makes** 61:21
**making** 40:17
  40:23 74:24
**man** 60:8
**manage** 24:2
  35:16
**management**
  21:6,23 22:2,6
  22:12,23 24:10

  27:21,24 78:5
**mandated** 39:9
  39:11,13
**mandatorily**
  72:9
**marker** 73:12
**master** 35:18
**matter** 1:5
  37:13 68:15
**maturity** 72:10
**maxcom** 14:2
**mckenzie** 3:3
  5:9 17:17
  21:21 72:18
  74:23
**mean** 14:14
  19:12 40:23
  64:9 65:6,25
**meaningful**
  37:25
**means** 70:20
**meatiest** 22:3
**meddle** 64:16
**meet** 8:15
**meeting** 75:9
  75:20
**meets** 33:1
**mellon** 4:2
  7:10 63:10
**melt** 40:24
**memory** 40:6
**mentioned**
  15:18 21:3,22
  24:11
**mess** 41:15
**mic** 55:13

**micromanage** 66:13
**million** 13:22 14:1,3,5
**mineola** 79:23
**minimum** 39:8
**minority** 73:23
**minute** 9:15 26:1 43:19 55:11,14 75:16
**minutes** 9:12 11:23 69:23
**mischief** 58:6,7
**missing** 27:6
**mm** 9:19 16:10 24:5 35:10 38:20 52:20
**modification** 58:5,8,14,15
**modifications** 35:7 69:15 75:23 76:15
**modified** 7:17 15:23 72:25,25 76:5,5
**modify** 31:18
**mole** 16:11
**moment** 11:3 11:24 23:4 30:20 37:8 55:25 56:9 67:23
**money** 26:4,6 29:19,21 33:20 35:4 36:5 42:15,21 43:13

**money's** 43:13 43:14
**month** 30:13
**monthly** 46:21 47:1,2,10
**months** 42:14
**morale** 40:19
**morgan** 17:17 35:19
**morning** 7:9 38:7,9 61:2 64:21
**motion** 10:7,8 10:9,12 14:12 21:23,24,25 22:2,6,16 23:1 24:8,9,11 25:4 25:5 27:24 28:20 31:14,14 31:18 32:12,13 33:12,16,20 34:20,24,25,25 35:12 36:1,19 36:20 38:11,11 38:13,19,24 39:25 45:18,25 46:14,14,20,23 47:14,17 48:5 48:5,12,13 49:23 50:12 51:3,7,23 52:2 52:8,9,22,24 53:6,11,18,20 53:24 54:7,11 54:23,25 55:2 55:9 58:13,14 59:19,23 60:1

60:15,24 61:4 62:2,22 63:6 63:15,17 64:3 66:3,17,21,22 67:17,24 74:20 74:25 75:4,22 77:1 78:5,6,7,8 78:9,10,11,12 78:13,14,16
**motions** 9:21 11:24 16:5,8 16:14 21:2,4,5 21:8,12 33:18 34:14 44:19 50:22,24,25 54:4,6
**move** 51:17 68:17
**moved** 40:25
**moving** 28:3 77:13
**municipal** 51:8

**n**

**n** 3:1 5:1 78:1 79:1
**nacionales** 17:22
**nail** 73:1
**name** 5:8 23:2 23:2,16 38:15 63:7
**national** 30:15
**nationally** 14:23
**nature** 22:21 22:23 45:3 76:4

**navigating** 30:17
**near** 29:15 69:1
**necessarily** 9:3 34:16 54:17
**necessary** 26:23 30:1 35:7 36:23 45:4 51:21 54:20 57:5 58:2 76:10
**necessity** 33:11 40:17 41:21 45:16 49:17 52:11,13
**need** 8:13 26:24 34:16 38:1 41:25 43:3 44:10 45:24 46:5,7 52:5 56:22 57:4,8 71:23 73:13 76:20 77:4
**needed** 32:16 50:9 69:14 77:12
**needs** 8:16 49:24,25
**negative** 35:25 36:19
**negotiate** 74:5 76:16
**negotiated** 70:22

**negotiations**
70:18 71:4
**nervous** 43:25
**net** 36:4,7
**never** 12:1
**new** 1:2,13 3:6
3:16 4:2,4,11
7:2,10 12:25
13:16 14:16
17:15,18,25
18:9,10,21,23
19:3,17,18,20
20:1,2,5,6,25
32:16 68:2
72:9
**nice** 5:2 7:12
**nodding** 40:4
**nominees**
71:11,20
**non** 29:20
42:18 50:7
**normally** 56:24
58:1
**north** 7:2
**norton** 4:1 7:9
63:10
**note** 8:21 10:20
25:3,4 53:22
59:7 73:18
75:4
**noted** 52:10
69:16 73:21
**noteholder** 6:8
8:25 50:8 68:9
**noteholders**
6:10 8:11,23
37:21 68:18

72:8 76:13
**notes** 17:15,25
72:9,10
**notice** 14:9
15:25 55:5,8
56:21,25 57:4
62:3,14,22
63:4,11 64:2
64:11 69:14
75:7 76:10,22
77:12
**noticed** 30:24
49:7
**notices** 65:11
**noticing** 55:6
66:5
**number** 11:2
18:1,14,18
22:6,6 32:12
32:12 35:12,12
48:25 51:3,4
52:23,23 54:10
54:11 55:21
59:25 60:6,24
67:1,20 71:5,7
**ny** 1:13 3:6,16
4:4,11 79:23

**o**

**o** 1:21 5:1
49:10,11 79:1
**objection** 7:17
8:23 11:8,10
27:4 36:18
45:2 48:1,7
49:19 52:6
53:17 60:17
67:3 70:1,6

72:24 75:1
**objections**
10:16 15:24
51:25 54:24
74:1
**obligate** 39:21
**obligation**
40:10 42:13,17
**obligations**
35:23 38:25
39:1,3,10,16
39:16,20 40:18
41:5 51:11
**observation**
49:6
**obtain** 32:24
**obvious** 33:6
**obviously** 11:4
25:6 27:9
47:19 70:19
71:21,23 73:19
**occurred** 74:16
**octaviar** 18:3
**odd** 12:1
**ode** 49:10
**offer** 10:23
**offhand** 20:4
**office** 6:1,3
10:2 11:13
14:7,25 28:1
29:9 32:3
33:18 35:8
41:17 47:19
48:7 51:24
52:4 55:2,4,4
58:16 59:4
61:5 65:5 66:9

**office's** 35:3
41:18
**officer** 5:16
10:24
**official** 60:25
78:14
**oh** 16:13 31:21
37:12,15,18
41:8,11,14
43:5,11 44:8,9
44:17 49:6
54:9 60:5,20
**okay** 5:21,24
6:13,14,23 7:4
7:7,7,14 9:14
10:18 11:8,15
15:22 16:17
17:4 18:17,19
20:16 21:1,16
25:17 26:3,3
26:20 27:2,19
27:23 28:12,18
28:19 30:8
31:4,12,15
32:4,9 33:14
33:23,24 34:15
34:17,22,22,24
37:5,7 38:3,4,6
38:14,17,18
40:12 41:8,17
42:9,23 43:16
44:4 45:7,11
45:11,24 46:9
46:10,11,13
47:15,24,25
48:3,3,10,11
49:5,12,13,21

50:13,17 51:1
52:1,7 53:16
53:20 54:2,5
55:1,2,4,12,15
57:25 58:3,9
58:19 59:15,21
60:5,9,16,20
60:22 61:8,12
61:13,14,21
62:1,9 63:3,20
65:15,19 66:11
66:14,19 68:8
68:23 69:10
72:21 73:7,9
73:25 74:19
75:15,17,20,21
77:1,3,7,11
**old** 17:15 72:8
79:21
**one's** 60:10
**ongoing** 26:23
**open** 66:4
**opening** 5:5
**operate** 22:9
39:22,24
**operates** 26:21
54:14
**operation**
23:24 32:19
51:11 53:2
**operations**
7:23 10:21
22:18,24 24:25
28:25 38:23
50:23 54:4
**opportunity**
9:22

**oppose** 76:17
**opposed** 55:6
**opposition**
58:15
**optimal** 76:24
**optimism**
68:25
**option** 57:8
**options** 35:15
**oral** 28:21 35:1
**orate** 28:21
**order** 7:18
15:23 16:8
21:14,15,25
30:4,5,6 31:17
33:24 35:6
36:16 37:2
46:4,4,6,7 48:8
49:8 52:18
54:12,13,20
55:5,12,14
56:14,25 57:6
57:11,13,18
58:10,24 59:3
60:2,10 64:13
64:19 66:1,2
67:14,19 68:21
71:15 72:24
74:25 75:4,8
75:16,21,24
76:3,9
**order's** 72:25
**ordinary** 22:9
27:8 36:9,10
36:15 39:2
42:18 44:11
46:19 47:1,3

53:2,8
**organized** 50:4
**outcome** 76:24
**outflows** 27:11
**outside** 12:7
71:18
**overall** 10:22
**overarching**
29:1
**overseen** 23:23
24:3 27:12
**oversight**
23:19
**overview** 7:22
**overwhelming**
73:21
**owe** 46:22
49:11
**owed** 40:2,14
47:2
**own** 23:2 37:16
58:4 73:12,25

**p**

**p** 3:1,1 5:1
**pack** 8:9,19
76:5
**package** 12:2
**page** 18:14,18
32:2 74:6 78:4
**paid** 29:5 42:7
43:3 44:7 46:2
52:5 53:12
72:5
**paper** 27:16
55:1
**papers** 7:16
9:10 10:3 35:1

52:9 53:22,24
**paperwork**
16:23
**paragraph**
24:9 34:21
40:5 49:9
53:23 56:16
59:8 67:8,20
73:6
**paragraphs**
67:5,7
**paralyze** 51:16
**part** 34:2 67:25
**participate**
6:14 64:4
**particular**
12:14 17:13,21
29:5 43:24
48:24 51:18
66:1 71:17
72:12 73:2
75:18
**particularly**
54:13 58:21
72:14
**parties** 20:1,21
22:15 24:15
33:13 53:5
55:7 59:1,7
64:4,20 76:21
**partners** 9:18
**party** 18:3
22:14 24:14,21
25:2 26:6,14
27:15 28:16
29:23 32:25

pass 8:10 37:6
past 7:5 65:6
  72:4
path 8:19
patiently 74:21
paul 3:8 5:8
pause 55:16
pay 38:24 39:9
  39:10,14,15
  41:4 45:16
  46:18 47:3
  51:11 53:7,8
payable 32:21
paying 32:14
  39:1 40:25
  41:21 43:11
  44:22 46:25
payment 40:8
  40:15,15,23
  41:5,10 42:17
  42:18 43:6,19
  44:19 45:3
  46:2 52:12,13
  52:15
payments
  34:13 42:16
payout 43:12
payroll 8:5
  22:19 39:10
pays 51:7
penalties 51:12
pending 63:17
  64:3
people 16:12
  44:23 63:14,25
  68:5

percent 71:2,3
  73:23 74:8
percentage
  74:7
perfect 37:3
perform 36:3
period 25:10
  48:19
permanent
  11:16
permissible
  53:25
permission
  46:24
permit 29:2
  56:19 76:23
permits 12:16
permitted 45:6
perpetual 27:5
person 43:2,17
  44:16
perspective
  39:19 48:21
  70:5
pertaining
  50:22,24
petition 11:1
  14:7,8 24:18
  24:18 27:9
  32:15 39:2
  44:11,21,22
  53:13 67:13,20
  70:20 71:21
petitions 12:18
physically 7:1
place 47:16
  75:3

places 58:22
plan 8:19
  10:23 11:1,17
  12:2,15 38:6
  48:19,23 49:3
  53:14 60:4
  67:21,21 71:1
  71:3,8 75:11
  76:8
planning 11:16
plans 11:25
  12:16
plate 70:19
pleadings 11:1
  28:3
please 21:20
  52:17
plus 15:16 19:5
  19:6
pm 1:16 77:16
podium 60:18
  67:22
point 16:2
  31:16 36:4
  41:3 49:7
  61:20 65:5,7
  68:16 70:18
points 75:4,12
poised 77:10
policies 21:6
  21:24 32:11,14
  32:16,19,20,24
  33:3,4,8,9,21
  78:6
policy 32:14,22
  32:25

polk 3:13 6:9
  68:14
poor 74:19
portfolio 24:2
portfolios 24:3
portion 25:1
  32:11
portions 24:1
posadas 13:20
position 40:17
positive 36:5,7
possible 29:10
  30:17 38:1
possibly 15:4
  45:21
post 32:15 39:2
  44:10,21,22
  53:13
posted 65:21
potentially
  35:21 59:6
  66:5
potter 4:18
  5:18 6:25
power 13:18
practical 49:17
  50:11 57:8
practically
  41:5
practice 12:7
  14:23 23:18
practices 21:7
  21:24,25 26:22
  29:17,19,21
  35:12,13,14
  36:24 78:7

**pre** 8:9,19,20
  12:2 24:18
  67:13 70:14,20
  71:21 76:5
**precedence**
  12:4 69:2
**precedents**
  69:3
**prefer** 9:6 22:1
  37:22
**preliminary**
  16:17
**premiums**
  32:15,16
**prepack** 15:5
  28:2 29:11
  52:15 61:18
  69:4 73:19
  76:2
**prepackaged**
  11:25 12:6,9
  12:13,20,23
  13:1,20,22
  14:2,4,6,17
  22:10 49:1
**prepacked**
  15:17
**prepacks** 15:10
  15:21 68:1,4
**prepared**
  14:15 28:20
**preparing** 9:21
  48:23
**prepetition**
  18:5 32:15
  38:25 44:14,16
  44:20,22 71:11

  73:19
**present** 11:13
  21:5,8,12
  73:22 74:20
**presentation**
  9:12 11:22
  35:2 69:19
**presented** 8:9
  49:23
**presenting**
  21:23 38:10
  48:13
**preserve** 76:16
**pressing** 50:1
**presume** 10:11
**pretty** 8:3
  24:13
**prevalent**
  12:10
**preview** 56:15
**previewed**
  51:23 54:22
**previous** 68:1
**previously**
  44:24
**primarily** 8:7
  22:19 54:15
**primary** 11:6
  20:17 76:9
**principal**
  32:23 72:11
**printed** 15:1
**prior** 12:15
  24:17,18 27:8
  46:2
**priority** 51:12

**probably** 6:20
  9:11 17:19
  42:5,18,19
  62:7 63:24
**problem** 42:25
  55:10 57:20
**problematic**
  29:25
**procedural**
  50:24 54:6
  76:4,10
**procedurally**
  76:23
**procedure**
  12:13 76:21
**procedures**
  14:22 47:13
  72:16 76:25
**proceed** 7:20
  16:5 21:5,17
  37:22 50:23
  66:12,14
**proceeding**
  8:13 11:7
  20:17 41:14
  59:2 64:25
  76:3
**proceedings**
  9:3 77:15 79:4
**proceeds** 39:1
**process** 15:6
  30:8 68:5
  71:11,12,17,24
**processing**
  35:5
**program** 30:16

**programs**
  39:15
**progress** 76:11
**prohibition**
  12:19
**promised**
  68:18
**pronounced**
  23:11
**proper** 17:9
**property** 17:11
  18:7,11 19:19
  20:21,23,24
**propose** 14:12
**proposed** 5:9
  5:13 7:17 12:2
  15:23 25:9
  30:5 35:6 37:2
  46:4 47:9,13
  49:8 52:18
  59:3 67:18
  74:25 75:4,8
**proposition**
  18:2
**protection**
  27:14
**protections**
  35:22 54:18
  59:12
**provide** 15:5
  36:1 76:22
**provided** 75:10
**providers**
  46:18,21,25
  47:6,12 53:8
**provides** 8:5
  12:14 47:19,20

68:6
**providing** 24:21
**provision** 57:3
**provisions** 54:21
**pte** 20:20
**public** 50:3
**publicly** 50:5
**pull** 56:6
**pulling** 25:20 26:2
**purchase** 35:15
**purpose** 26:3 29:1 67:16
**purposes** 8:1 11:16 71:14 76:20
**pursuant** 33:11 47:13 56:16
**purview** 71:18
**pushed** 74:2
**pushing** 50:1
**put** 6:22 9:8 10:14 52:25 64:11 67:2
**puzzled** 63:24

**q**

**question** 11:17 17:6,7 25:25 41:16,20 72:22
**questions** 39:24 48:8 67:23

**quick** 10:19
**quickly** 41:16 68:8
**quite** 9:8 12:21 13:17 20:13 58:20
**quote** 18:4 20:4

**r**

**r** 1:21 3:1 5:1 38:16 79:1
**rachael** 6:6
**rachel** 4:14
**radar** 62:19,25
**raise** 25:25 27:4 42:9,23 59:18 68:10
**raised** 58:16 65:6 73:3
**raising** 72:23
**ramifications** 51:18
**rapid** 15:5
**rate** 19:8 45:1
**rather** 14:14 16:8
**rationale** 19:22 49:23 52:11
**reach** 68:25 69:7 77:14
**reaching** 69:17
**read** 7:16,16 55:12 56:1 70:6
**ready** 61:19
**realistically** 37:19

**really** 8:19 9:9 20:17 34:25 46:23 48:5 52:8 53:7,12 67:16 70:17 71:14
**reason** 8:13 14:10 15:9 30:3 45:18 50:11 51:20 54:19 67:25 77:1
**reasonable** 29:7 35:4 68:3
**reasoned** 20:20
**reasons** 34:25 36:20 48:5 52:8 53:21,21 58:20
**received** 11:10 15:12 63:14 73:19
**recent** 13:17
**recently** 76:5
**recitation** 67:25
**recited** 73:7
**recognize** 35:21
**record** 27:17 33:15 34:2,16 53:21 63:8 70:8 73:6 74:24 75:13,23 76:1 79:4
**records** 27:7 27:10

**refer** 13:3
**reference** 22:7
**referenced** 14:20 40:3,5
**reflect** 71:5
**reflected** 31:23
**refuse** 56:18
**regard** 17:24 18:9 37:9 60:23 65:12
**regarded** 23:8
**regarding** 10:9 27:10
**reginald** 3:10 5:11 50:19 74:22
**regulated** 23:22 29:6
**regulator** 23:23
**regulatory** 51:13
**rehabilitation** 29:3
**reject** 71:8
**rejected** 71:9
**rejections** 74:15
**related** 22:14 22:15,20 24:14 24:15,21 25:1 26:4,5,6,14,16 27:15 28:16 29:19,19 38:24 39:3,20 46:19
**relationship** 20:1

| | | | |
|---|---|---|---|
| **relatively** 8:8 | **requested** | 47:17 52:2 | **revised** 14:17 |
| **relevant** 54:20 | 28:21 30:5 | 53:17 62:22 | 75:24 |
| **relied** 19:5 | 51:20 | 67:8 68:21,22 | **revoke** 56:18 |
| **relief** 22:8 | **require** 46:3 | 72:18 | **right** 7:5 9:5 |
| 24:12 28:24 | **required** 39:6 | **respond** 63:16 | 11:15,18 14:19 |
| 36:21 49:1 | 39:13,17 40:16 | 65:12,12 | 15:22 18:22 |
| 51:20 53:24 | **requirement** | **responding** | 19:14,17 20:11 |
| 54:24 55:6 | 17:14 18:11 | 57:15 | 21:4 22:4 |
| 58:2 | 33:6 39:8 41:1 | **response** 36:19 | 25:12,23,23 |
| **remaining** 23:2 | 41:23 42:21 | 73:12 | 26:9,13,18,25 |
| 23:13 | 48:18 | **resting** 47:15 | 28:20 31:1,10 |
| **remains** 76:19 | **requirements** | **restore** 62:6 | 31:13,21,24 |
| **remarks** 5:6 | 29:13 33:1 | **restricted** | 32:7,9 34:2,10 |
| **remit** 32:16 | 42:19 52:16 | 57:18 | 36:12,16 41:25 |
| **remotely** 7:13 | **requires** 32:22 | **restructured** | 42:2 43:1 |
| **renew** 32:15 | **requiring** 41:3 | 13:1,19,21 | 44:12 46:12 |
| 56:19 | **res** 20:20 | 14:1,3,5 | 49:5 51:5 |
| **reorganization** | **researching** | **restructuring** | 53:16 54:9 |
| 12:15 29:3 | 9:20 | 8:13,21 | 55:16,25 57:5 |
| 76:8 | **reservation** | **result** 25:9 | 57:13 58:17 |
| **reply** 67:21 | 69:11 | **retained** 39:23 | 59:24 61:15 |
| **report** 10:1 | **reserve** 32:6 | **retainer** 17:16 | 62:6 63:14 |
| 70:25 71:8 | 69:5 | 17:20 18:6 | 65:1,8 66:9,14 |
| **representation** | **resolution** | 20:18 | 66:16,24 71:6 |
| 29:25 | 29:10 60:14 | **retainers** 18:5 | 72:25 73:5,7,8 |
| **representatives** | 69:17 | **retention** | 73:25 74:9,9 |
| 14:21 | **resolve** 68:22 | 30:25 | 74:14 77:7 |
| **represented** | 72:20 75:1 | **revealed** 75:23 | **rights** 20:21,22 |
| 34:20 50:8 | **resolved** 10:3,4 | **review** 33:18 | 57:9 68:6 69:5 |
| **represents** | **resolves** 10:16 | 35:3 50:5 55:5 | 69:11 76:16 |
| 51:22 71:1 | **resources** | 55:14 | **rigorous** 29:24 |
| 73:23 | 48:21 | **reviewed** 30:4 | **rise** 51:12 72:3 |
| **reputable** | **respect** 27:15 | 55:15 59:3 | **risk** 35:16 |
| 35:19 | 27:24 28:15,19 | **reviewing** | **river** 7:5 |
| **request** 11:19 | 29:13 33:16 | 75:21 | **road** 42:10,20 |
| 24:13 35:14 | 34:23 39:25 | **revise** 67:18 | 79:21 |
| 63:21 65:25 | 40:13,21 45:17 | | |

**rock** 29:17
**rolls** 76:18
**room** 33:13
**rose** 4:1 7:9
  63:10
**rough** 33:24
**roughly** 71:1
**rows** 67:19
**rsa** 70:23
**ruin** 16:22
**rule** 12:14,22
  41:15 48:17,18
**rules** 12:11,12
**ruling** 28:22
**rulings** 78:3
**run** 77:10

**s**

**s** 1:22 3:1 5:1
  38:16
**s.a.** 1:7
**safe** 47:20
**sainvil** 3:10
  5:11 21:12
  50:16,18,19,21
  51:2,6 52:8,19
  52:21 54:1,3,6
  54:10 55:21
  56:7 58:7,11
  59:14,17,19,22
  59:25 60:18
  67:23 68:11
  69:19 74:19,22
  74:23 77:2,5
**sake** 31:5
**salary** 39:8
  44:11

**sale** 25:1
**satisfied** 19:2
  36:22 52:17
  53:24
**satisfies** 17:13
  68:9
**satisfy** 18:11
  75:1
**satisfying** 35:3
**save** 37:23
**savings** 23:13
**saying** 32:4
  57:9 59:8
  70:13 72:22
**says** 29:9
**scale** 51:10
**schedule** 14:12
  14:13 15:12
  50:2 67:9,17
  67:17 68:6
  74:3
**scheduled**
  21:15
**schedules** 21:9
  38:12 48:14
  49:15,16,18
  50:2,10
**scheduling**
  10:7,12 14:11
  15:23 21:14
  59:23 60:2,15
  60:21 66:22
  68:23 69:15
  72:24 74:1
  76:9,14 78:16
**screen** 56:1

**sdny** 5:19 17:2
**second** 10:10
  24:22,23 26:1
  30:13,19,23
  31:15 32:10
  34:6 37:9 42:8
  42:22 44:2
  46:3 47:5 61:4
  61:6 62:4,7
**section** 12:16
  17:10,14 25:5
  25:11 36:8,21
  52:17 56:17
**sections** 33:10
**security** 23:25
  39:14
**see** 5:2,6 7:12
  14:19 15:23
  29:23,23 37:20
  41:6 42:10
  47:1 49:10,12
  55:14 56:2
  60:20,20 67:5
  75:17 76:16
**seeing** 50:6
**seek** 35:24 47:8
  75:6
**seeking** 8:18
  22:11 25:22
  36:16 38:24
  39:9,10,14,15
  46:23 48:15
  53:6 54:12
  60:2 75:9
**seeks** 22:7
  24:11 32:13

**seem** 12:1
  23:17 30:22
  36:14
**seems** 40:23
  45:15
**seen** 12:2
**sees** 69:4
**segal** 6:6 56:3
  57:14 65:3
**segments** 22:20
  22:21
**selection** 18:10
  18:25 20:2
**send** 65:10
**sense** 20:23
  23:23 44:22
  61:21
**sensible** 25:14
**sent** 56:11
  65:15
**sentence** 69:11
**separate** 26:15
  26:17 42:17
**sequence** 15:23
**series** 24:23
  51:7
**serve** 49:24
**service** 39:6
  46:18,25 47:6
  47:11 53:8
**services** 8:6
  24:20,22 46:17
**set** 10:23 47:14
  48:17 51:6
**setting** 74:2
**seven** 42:14

| | | | |
|---|---|---|---|
| **several** 13:2 | **shrink** 9:12 | **somewhat** | **specifically** |
| **severance** | **side** 41:16 | 14:15 35:13 | 20:8 22:10,16 |
| 39:16 40:7,7 | **siegel** 4:14 | **sonya** 2:25 | 39:3 46:20 |
| 40:15,25 41:9 | **signature** 79:6 | 79:3,8 | 53:22 55:9 |
| 41:20 42:16 | **silly** 43:21 | **soon** 73:24 | **speech** 73:12 |
| 46:1 | **similar** 15:21 | **sorry** 8:12 | **speed** 8:3 |
| **shake** 16:18 | 41:20 49:1 | 21:10 23:5 | **spell** 38:14 |
| 36:20 | **simply** 8:20 | 25:19 39:22 | 70:7 |
| **share** 53:4 | 67:17,20 69:5 | 40:21,22 45:11 | **spend** 43:23 |
| **shared** 34:7 | 71:25 | 49:18 55:13 | **spending** 33:21 |
| **shareholders** | **situation** 19:7 | 56:15 58:12 | **sponsored** |
| 24:16 | 20:14 58:5 | 64:10 | 30:16 |
| **she'll** 21:8 | 62:8 65:1 | **sort** 25:13 | **spot** 49:9 55:13 |
| **shear** 3:11 5:11 | **six** 12:24 13:14 | 42:20 69:10 | 55:15 |
| 21:7 38:7,8,10 | 13:15 | **sought** 25:5 | **squarely** 52:16 |
| 38:16,18,21 | **skate** 29:11 | 36:22 53:25 | **stable** 23:8 |
| 40:13 41:2,9 | **skittish** 43:21 | 54:25 | **stake** 24:16 |
| 41:12 42:24 | **sleeve** 58:17 | **sound** 29:16,21 | **stakeholders** |
| 43:4,7,10,12 | **slight** 46:3 | 51:22 | 72:7 |
| 44:1,4,13,15 | **slightly** 63:24 | **sounds** 6:22 | **standard** 28:24 |
| 45:7,12,20,23 | **slot** 30:18 | 19:7 21:18 | 45:15 |
| 46:9,11,13,16 | **small** 73:23 | 22:4 | **stands** 71:6 |
| 48:10,12 49:12 | **social** 39:11,13 | **southern** 1:2 | **stanley** 35:19 |
| 49:15 50:13,15 | **solicit** 63:18 | 7:6 13:16 | **start** 22:2 |
| **shooting** 68:11 | **solicitation** | 14:16 68:2 | 38:18 51:2 |
| **short** 68:4,5,20 | 55:24 63:15,17 | **spanish** 6:17 | 70:12,13 |
| 69:14 77:12 | 64:14 66:6,7 | **speak** 9:13 | **starting** 70:18 |
| **shortening** | 71:22 73:6 | 11:25 16:24 | **state** 4:8 7:14 |
| 15:25 | **solicitations** | 20:8 22:3 25:7 | 56:14 57:2 |
| **shortly** 10:13 | 65:11 | 33:13 65:3 | 63:7 |
| 67:4,6 75:24 | **solicited** 73:18 | **speaking** 41:5 | **stated** 33:19 |
| **should've** | **soliciting** 61:10 | 67:9 | 34:25 36:20 |
| 49:11 | 63:13 64:4,25 | **speaks** 5:19 | 48:5 52:8 |
| **show** 68:2 | 72:16 | **special** 46:8 | 53:21 58:20 |
| **shown** 76:2 | **solutions** 79:20 | 56:5 | 74:24 |
| **shows** 71:8 | **somebody** | **specific** 24:9 | **statement** |
| | 43:17 | 39:24 59:8 | 48:14 60:3 |

63:19 64:2,7
68:16 76:8
**statements**
38:12 48:16,23
**states** 1:1,11
4:9 12:8 17:12
18:8 54:23
**status** 62:22
**statutorily**
43:22
**statutory** 40:3
45:5
**stay** 21:14
40:20 47:23
54:8,13,19,22
58:23 59:5,10
59:12 78:13
**stella** 3:19 6:11
**steps** 76:10
**stick** 66:1
**stock** 20:9
**stop** 65:2 75:14
**strictures**
42:15
**striking** 73:5
**stripping**
71:15
**struck** 36:14
**structure**
10:21
**studied** 9:10
15:2
**subject** 11:4,18
45:5,25 46:6
47:23 57:11,18
59:4

**submit** 30:6
31:25 32:4
35:6 37:2 48:8
52:18
**submitted** 30:4
31:17 75:22
**subsidiary**
20:9,9
**successful**
26:23
**successfully**
29:4 35:5
**sufficiency**
76:17
**sufficient**
17:20 18:7,7
19:6,11 20:3
20:12 34:13
57:22 71:17
76:15
**suggested**
31:19
**suite** 79:22
**summarized**
35:1
**summarizing**
11:21
**summation** 9:8
24:4
**supplement**
67:21
**supply** 18:6
**support** 10:25
11:6 18:2
40:19 53:23
70:24 71:3,5
73:21 74:7

**supports** 18:5
36:21
**supposed** 68:4
**sure** 7:21 9:7
13:5,14 14:22
14:25 15:3
16:15 32:1,5
37:15 38:16
40:17,20 41:4
44:3,25 55:12
55:16 57:23
58:25 63:9
70:9 71:23
72:15 73:23
75:16
**suspend** 56:18
**swift** 8:19
**swings** 8:17
**system** 22:12
22:23 24:10

**t**

**t** 79:1,1
**tab** 55:17,21
56:3,7,10
**table** 16:25
67:9,19
**take** 5:4,25
11:3,24 12:3
19:8,9 43:9
44:6,17,23
50:21,23 55:11
55:11,14 60:17
67:19 73:25
75:15 76:13
77:14
**taken** 8:17
44:9 75:3

**talk** 30:9 69:17
**talking** 15:17
36:5 40:4
43:22 65:2
73:24
**tandem** 19:11
**tapping** 25:20
**target** 31:12
50:2
**tax** 51:9
**taxes** 51:3,7,8
51:8,8,9,19
52:2,5,15
78:11
**team** 72:19
**technicalities**
71:10
**technically**
41:24
**telecommuni...**
14:3
**telephone**
46:17
**tell** 7:16 8:4
18:24 63:24
70:5,15
**telling** 26:20
**ten** 9:12 12:11
**tend** 19:4
**term** 29:15
69:1
**terminate**
35:24
**termination**
39:16 41:4
**terms** 10:22
14:12 19:22

20:12 21:2
46:7 66:5
**territorial**
58:22
**testimony** 5:22
11:18 38:1
**thank** 6:13,24
6:25 7:7 9:7,25
11:20 21:18,20
22:5 32:8 35:9
37:1,17 45:10
49:20 50:13,14
52:19 54:1
58:18 59:14
66:15 68:13
73:9,10 74:22
77:2,3
**thanks** 7:13
16:18 21:1
28:18 31:13
34:22 37:7
40:1 46:12
48:3 52:1,7
72:21 75:15,21
77:7,11
**theoretically**
44:21
**theory** 19:21
**thing** 26:6
27:16 31:17
47:5 65:16
70:9 72:1
**things** 22:11,21
22:22 25:12
30:17 39:12
45:14 46:24
50:15 62:24

**think** 6:19 7:23
13:7,9 15:5
17:2 19:17,25
20:3 22:1
25:21 26:20
29:7,18 36:21
37:19 40:5
42:4,5,16,17
44:10,18,23
45:19,23 46:5
49:22 52:15
53:23 56:7
57:19,21,22
58:16 60:6,14
62:2 63:1 64:2
64:13,14,16
65:5,17,25
66:12,17 68:21
68:24 69:18
71:25 72:12
73:13 74:6,23
75:12 76:25
**thinking** 25:13
**third** 21:10
24:19,25 32:25
**thoroughly**
23:4
**thought** 12:4
16:21 45:2
57:15 59:4
66:14
**three** 10:11
22:3,13,15
24:11 26:16
33:22 46:24
67:19

**thresholds**
74:11
**tim** 6:12
**time** 10:11
12:17 15:19
17:7 21:9 28:4
28:6,11 36:4
42:14 43:2
44:24 48:24
50:1 65:12
69:6,23 71:16
71:20 72:20
76:18,19
**timeframe**
15:17 68:4
**timeline** 68:24
**timelines** 14:7
**timely** 14:15
**times** 39:7
**timing** 30:19
68:23
**timothy** 3:20
**today** 5:10,12
5:15 11:7
15:24 16:8
21:4 36:6 38:2
38:10 66:3
67:4,11 73:18
75:2 76:4,20
77:4
**today's** 71:14
**together** 70:17
**told** 41:23
43:24
**toll** 8:17
**tool** 58:25

**total** 35:4
**track** 60:7
**tracked** 29:22
**transaction**
36:9
**transactions**
22:15 24:15,17
26:14,15 27:16
27:17 36:10
48:22
**transcribed**
2:25
**transcript**
43:17 79:4
**translator** 5:18
**translators**
5:19
**treasuries** 40:8
**treasury** 40:14
**tried** 14:12
**true** 8:24 79:4
**truly** 42:16
**trust** 17:17
23:3,14,16
24:2 26:6,7,11
26:19
**trustee** 4:9
7:10 10:9
16:20 25:6
31:19 34:7,12
35:2 54:23
61:1,3,5 63:11
63:13,18 64:3
64:15 71:19
75:17
**trustee's** 5:25
6:3 10:2 11:13

19:9 23:7 28:1
29:9 32:3
33:18 35:8
41:17 47:19
48:7 51:24
52:4 55:2,4
58:16 59:4
64:24 65:5
66:8
**try** 31:6 66:13
**trying** 15:20
**turn** 7:15,18
19:9 52:21
57:23 59:17,19
**turning** 50:15
**turns** 37:10
**two** 9:15,17
10:4,17 11:23
15:16 17:16
19:10,16 22:12
23:13 24:24
32:14 40:2
45:14 50:22,24
54:6 56:11
69:23
**typically** 69:4
**typo** 49:7

## u

**u.s.** 1:23 5:25
6:3 10:1,9
11:12 12:10
14:1 16:19
19:9 23:7 25:6
27:25 29:6,6,9
31:19 32:3
33:17 34:7
35:2,8 41:16

47:18 48:6
51:24 52:3
55:2,3 58:16
59:4 61:1,2,5
63:12 64:3,15
64:24 65:4
66:8 71:18
75:17
**ucc** 60:7 66:17
**ultimately**
48:18
**umbrella** 26:12
**uncertainty**
70:15
**unclear** 63:16
**uncontested**
37:21
**under** 17:10,14
19:20 26:11
33:6,10 34:14
35:23 36:8
39:6,17 40:16
40:16 41:23
45:15 48:23
53:14 54:15,18
**underserved**
8:8
**understand**
8:9 33:22
48:24,25 57:16
59:1 61:2
64:22 67:11
72:5,6,23
73:22 74:6,12
74:14
**understanding**
47:22 58:4

61:5
**understood**
38:5 42:24
58:23,23 62:11
63:2
**undue** 15:20
**unexpectedly**
6:21
**unimpaired**
8:11 21:12
49:2 52:22,24
53:10,14,15,18
72:8 78:12
**unique** 23:17
**unit** 56:18
**united** 1:1,11
4:8,9 12:8
17:12 18:8
54:23
**unknown** 1:25
**unnecessary**
7:24
**unopposed**
52:14
**unsecured** 49:2
50:3 60:25
78:15
**unsure** 63:25
**update** 14:22
**upside** 50:11
**use** 22:12
24:10 58:4
**used** 12:9
24:24 29:14
**using** 22:13
24:12

**usually** 44:19
64:14 65:24
**utilities** 21:8
38:13 46:14
47:17,20,21,23
78:9
**utility** 46:18,21
46:25 47:6,11
**utmost** 72:18

## v

**vacation** 40:12
43:2,9,10,11
44:5,6,9,23
**valuation** 8:17
**value** 51:8
**variety** 24:21
**various** 25:20
30:10 39:13
46:18 51:12
56:20
**vast** 53:4
**vazquez** 4:6
7:8,9,12 63:5,9
63:9,21 64:2
64:18,23 66:10
66:15
**vendor** 24:20
**vendors** 53:7
54:15,17
**venue** 17:1,2,8
17:21 18:1
19:1,13 20:13
**veritext** 79:20
**versa** 49:11
**version** 31:23
57:11

viable  76:24
vice  49:11
view  19:4,5
  41:18
violate  56:23
virtually  5:15
  5:17 6:12
void  62:10
vote  71:3,13
  74:13
voted  49:4 71:7
  73:21 74:8
votes  71:1,9
voting  12:15
  67:12,13 69:4
  70:25 71:8
  73:6,7,20

**w**

w  49:11
wage  40:12
  42:16,17
wages  21:11
  38:11,18 39:5
  44:19,19 45:16
  45:17 49:8
  78:8
wait  37:19
  41:8 60:7
waiting  74:20
waive  38:11
  48:13,18 78:10
waiver  11:17
  25:5,9 75:9
waiving  29:12
want  8:1,2 9:1
  9:4 16:17,22
  21:19 25:7

27:4,20,24
28:18 30:9
33:15 34:15,19
34:23 40:5
42:15 43:20
45:17,18 52:1
58:4 60:9,10
61:19 62:9,23
62:24 63:18
64:9,13 66:3
66:12 67:12
68:10 69:16,19
70:4,7,13 72:1
73:1,11 75:18
77:4
wanted  11:24
  13:3 14:10
  25:13 27:20
  34:12 68:2
wants  5:6 7:14
  29:23 42:8
  47:16
wardwell  3:13
  6:10
water  46:16
way  23:18
  25:13,14,19
  30:7 38:21,23
  46:23 47:24
  50:5 62:2,12
  70:13
we've  10:3
  14:13,20 25:6
  25:7 34:6
  57:20 59:22
  67:2 74:2

week  30:10,13
  30:14,18,23
  31:3,6 34:1,7
weekend  56:2
weeks  10:11
  15:14,15,16
  33:22
welcome  5:2
  9:5,24 16:24
went  33:19
whack  16:11
widely  12:9
wiles  37:11
wish  7:20 60:9
withholding
  39:10 51:9
woman  43:9,13
  44:14 55:18
wonderful
  9:24
word  30:6
  31:23 37:18
  49:10 73:15
worded  32:3
wording  32:6
  59:11
words  58:13
  64:12 73:5
work  6:20,22
  14:20 31:10
  44:20 45:8
  53:13 54:15
  57:13 66:12
  71:16
workforce
  40:20

working  41:22
  72:19
workout  45:13
works  30:19
  61:23
world  66:6
worldwide
  54:13
worn  15:1
worry  42:11
  62:6
wrinkles  28:23
write  46:8
wrong  43:8
  61:19

**x**

x  1:4,10 78:1

**y**

yeah  6:5 7:13
  16:24 19:24
  26:5 27:2 32:1
  33:14 37:16
  40:1 41:2,11
  48:1,3 49:13
  49:16 57:25
  60:13 62:21
  63:7,23 64:9
  65:23 66:11
  69:25
year  13:18
  72:10
years  12:11
  13:2,25 20:14
yep  30:21 37:3
york  1:2,13 3:6
  3:16 4:2,4,11

7:10 12:25
13:16 14:16
17:16,18,25
18:9,10,21,23
19:3,17,18,20
20:1,2,5,6,25
68:2

**z**

**zipes** 4:13 6:2
6:3,6 11:12,12
16:21 17:1
25:7 27:25,25
28:11,14,17
33:17,17 34:1
34:5,18,20
41:19 42:3
45:9,10 47:18
47:18 48:1
49:20 52:3,3
53:19 55:3,3
55:19,25 56:13
57:2,14,22
58:1,18 61:8,9
61:17,22 62:5
62:11,16,18,20
65:2,4,4,9,17
65:21,24 75:19
77:8,9
**zoom** 6:12
37:22