Paul J. Keenan Jr. (*pro hac vice* pending)
Reginald Sainvil (*pro hac vice* pending)
Baker & McKenzie LLP
1111 Brickell Avenue, 10th Floor
Miami, FL 33130
Telephone: 305-789-8900
Facsimile: 305-789-8953
Email: paul.keenan@bakermckenzie.com
      reginald.sainvil@bakermckenzie.com

Blaire Cahn
Baker & McKenzie LLP
452 Fifth Avenue
New York, NY 10018
Telephone: 212-626-4100
Facsimile: 212-310-1600
Email: blaire.cahn@bakermckenzie.com

*Proposed Counsel for the Debtor*
*and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CREDIVALORES – CREDISERVICIOS S.A., | Case No. 24-10837 (DSJ) |
| Debtor. | |

**NOTICE OF FILING OF THE PLAN SUPPLEMENT**
**FOR THE DEBTOR'S PREPACKAGED CHAPTER 11 PLAN**

**PLEASE TAKE NOTICE THAT** the Plan Supplement is being filed in support of confirmation of the *Prepackaged Chapter 11 Plan of Credivalores – Crediservicios S.A.*, (as modified, amended, or supplemented from time to time, the "**Plan**").[1]

**PLEASE TAKE FURTHER NOTICE THAT** as contemplated by the Plan, the Debtor is filing the Plan Supplement, which is compromised of the following document, which may be altered, modified or supplemented as set forth below:

- **Exhibit A**    Identity of the Directors and Officers

- **Exhibit B**    Corporate Governance Documents

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

- **Exhibit C**     Plan Projections

- **Exhibit D**     Liquidation Analysis

**PLEASE TAKE FURTHER NOTICE THAT** the Debtor expressly reserves the right, subject to the terms and conditions set forth in the Plan, to alter, amend, modify, or supplement any document in the Plan Supplement and to file additional documents to be included in the Plan Supplement. To the extent any document in the Plan Supplement is altered, amended, modified, or supplemented in any material respect, in accordance with the terms of the Plan, prior to the Confirmation Hearing, the Debtor will file a blackline of such document with the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE THAT** a hearing on confirmation of the Plan, any objections thereto, and any other matter that may properly come before the Court shall be held before the Honorable David S. Jones, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, on June 27, 2024 at 11:30 a.m. (prevailing Eastern Time) (the "**Confirmation Hearing**"). The Confirmation Hearing may be adjourned or continued from time to time by the Court or the Debtor without further notice other than adjournments announced in open Court or as indicated in any notice, including any notice of agenda of matters scheduled for hearing filed by the Debtor with the Court.

**PLEASE TAKE FURTHER NOTICE THAT** electronic copies of the Plan and Plan Supplement may be obtained for free from the Debtor's claims and noticing agent, Epiq Corporate Restructuring, LLC, at https://dm.epiq11.com/case/credivalores/documents or for a fee via PACER at http://www.nysb.uscourts.gov/.

Dated: June 14, 2024  
New York, New York

**BAKER & McKENZIE LLP**

By: /s/ *Paul J. Keenan*
  Paul J. Keenan Jr. (*pro hac vice* pending)
  Reginald Sainvil (*pro hac vice* pending)
  1111 Brickell Avenue, 10th Floor
  Miami, FL 33131
  Telephone: 305-789-8900
  Facsimile: 305-789-8953
  Email: paul.keenan@bakermckenzie.com
      reginald.sainvil@bakermckenzie.com

  Blaire Cahn
  452 Fifth Avenue
  New York, NY 10018
  Telephone: 212-626-4100
  Facsimile: 212-310-1600
  Email: blaire.cahn@bakermckenzie.com

  *Proposed Counsel for the Debtor and Debtor-in-Possession*

# EXHIBIT A

## Identity of the Directors and Officers

The current directors and officers of the Debtor shall constitute the initial directors and officers of the Reorganized Debtor, respectively, as such terms are defined in the Plan. The identity of such directors and officers is as follows:

| NAME | TITLE |
|---|---|
| Jaime Francisco Buriticá Leal | President and Chief Executive Officer |
| Liliana Arango Salazar | Vice President and Legal Counsel |
| Luis María Blaquier | Board Member |
| Gustavo Adrían Ferraro | Board Member |
| David Seinjet Neirus | Board Member |
| Jose Miguel Knoell Ferrada | Board Member |
| Juan Manuel Trujillo Sánchez | Board Member* |
| Carlos Meza | Board Member* |
| Martín Kontarovsky | Board Member* |

* Independent Board Members.

The above listed directors and officers are all current directors and officers of Credivalores – Crediservicios S.A. As to Mr. Leal and Ms. Salazar, their current compensation consists of a base salary and normal course of business annual bonus payments, in addition to certain performance-based payments made on an individualized basis for extraordinary services or in connection with extraordinary transactions. All Board Members are entitled to expense reimbursements for reasonable out-of-pocket expenses in connection with travel related to their duties, but only the Independent Board Members are entitled to fees (as well as expense reimbursements). The Debtor does not anticipate any change to the existing compensation scheme for the directors and officers in connection with the Chapter 11 case.

# EXHIBIT B

# CORPORATE GOVERNANCE DOCUMENTS

At this time the Debtor does not anticipate making any changes to its corporate governance documents and has not made any such changes.

## EXHIBIT C

## PLAN PROJECTIONS

| Class | Claim or Interest | Status | Anticipated Recovery (%) |
|---|---|---|---|
| A | Old Notes Claims | Impaired | 75% |
| B | Other Secured Claims | Unimpaired | 100% |
| C | General Unsecured Claims | Unimpaired | 100% |
| D | Interests | Unimpaired | 100% |

# EXHIBIT D

# HYPOTHETICAL LIQUIDATION ANALYSIS

## I. INTRODUCTION

In connection with the Plan and Disclosure Statement, the following hypothetical Liquidation Analysis (the "Liquidation Analysis") has been prepared by the Debtor's management with the assistance of its legal and financial advisor for the Debtor.

The Liquidation Analysis represents a hypothetical scenario whereby, under Chapter 7 liquidation proceedings, all estimated proceeds from the liquidation of the Debtor's estates would be paid to claimants and equity interest holders of the Debtor. Section 1129(a)(7) of the Bankruptcy Codes requires that each Holder of an Impaired Allowed Claim or Interest either (i) accepts the Plan or (ii) receives or retains under the Plan property of a value, as of the Effective Date, that is not less than the value such Holder would receive or retain if the Debtors was liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date of the Plan.

The purpose of the Liquidation Analysis that follows is to provide information in order for the Bankruptcy Court to determine that the Plan satisfies this requirement. The Liquidation Analysis was prepared to assist the Bankruptcy Court in making this determination and should not be used for any other purpose. To demonstrate that the Plan satisfies this standard, the Debtor, in consultation with its legal and financial advisors, have prepared the Liquidation Analysis under a hypothetical liquidation under Chapter 7 that: (i) estimates the realizable liquidation value of the Debtor's assets and (ii) estimates the distribution to creditors resulting from the liquidation, net of estimated Chapter 7 related fees and wind down costs.

Under Chapter 7, the assets of the Debtor would be subject to liquidation and values would be measured under an orderly liquidation value ("OLV") premise. OLV reflects the gross amount, in USD million, translated from COP million using the exchange rates as of May 16, 2024 that can be realized from a liquidation sale, given reasonable market exposure to find a purchaser, with the seller being compelled to sell on an "as-is", "where is" basis, as of a specific date. This analysis is based upon several significant assumptions. The Liquidation Analysis does not purport to be a valuation of the Debtor's assets and is not necessarily indicative of the values that may be realized in an actual liquidation. In fact, some of these assets may not be available for sale for an undetermined period of time, and they may diminish in value if a local bankruptcy proceeding is also commenced in other jurisdictions such as Colombia and/or a local administrator is named to administer one or more of the estates during the pendency of a Chapter 7 proceeding or a foreign court-appointed liquidation.

This Liquidation Analysis was prepared in connection with the filing of the Debtor's Disclosure Statement and Plan. The Debtor has prepared this Liquidation Analysis based on a hypothetical liquidation under Chapter 7 of the Bankruptcy Code. The Liquidation Analysis presents the Debtor's determination of the hypothetical liquidation value of their businesses if a Chapter 7 trustee (the "Trustee") were appointed and charged with winding down the estates. Under a Chapter 7 liquidation, it is assumed solely for purposes of this analysis that the Trustee would sell

all of the Debtor's major assets or surrender them to the respective lien holders, and the cash proceeds, net of liquidation related costs, would then be distributed to holders of claims in accordance with relevant local laws. Estimating recoveries in any hypothetical Chapter 7 liquidation case is uncertain due to the number of unknown variables. Thus, extensive use of estimates and assumptions have been made that, although considered reasonable, are inherently subject to significant business, economic and competitive uncertainties and contingencies beyond the control of the Debtor. In the event of a Chapter 7 liquidation, actual results may vary materially from the estimates and projections set forth in the Liquidation Analysis. Similarly, the actual amount of allowed claims in a Chapter 7 liquidation could materially and significantly differ from the amount of claims estimated in the Liquidation Analysis.

The Liquidation Analysis presents only information provided by the Debtor's management and does not include an independent evaluation of the underlying assumptions. The Liquidation Analysis has not been examined or reviewed by independent accountants in accordance with standards promulgated by the American Institute of Certified Public Accountants.

This Liquidation Analysis considers certain regulations set forth by the Colombian liquidation statutes as most of the Debtor's assets are located in this jurisdiction.

**THE LIQUIDATION ANALYSIS IS NOT INTENDED AND SHOULD NOT BE USED FOR ANY OTHER PURPOSE THAN THAT EXPLAINED ABOVE. THE LIQUIDATION ANALYSIS DOES NOT PURPORT TO BE A VALUATION OF THE DEBTOR'S ASSETS AS A GOING CONCERN, AND THERE MAY BE A SIGNIFICANT DIFFERENCE BETWEEN THE LIQUIDATION ANALYSIS AND THE VALUES THAT MAY BE REALIZED IN AN ACTUAL LIQUIDATION. THIS ANALYSIS ASSUMES "LIQUIDATION VALUES" BASED ON THE DEBTOR'S BUSINESS JUDGMENT IN CONSULTATION WITH THE DEBTOR'S ADVISORS. WHILE THE DEBTOR MAKES NO ASSURANCES, IT IS POSSIBLE THAT PROCEEDS RECEIVED FROM ANY GOING CONCERN SALE OF THE DEBTOR'S ASSETS OR BUSINESS UNITS WOULD BE MORE THAN HYPOTHETICAL LIQUIDATION VALUES, THE COSTS ASSOCIATED WITH ANY SALE WOULD BE LESS, FEWER CLAIMS WOULD BE ASSERTED AGAINST THE BANKRUPTCY ESTATES AND/OR CERTAIN ORDINARY COURSE CLAIMS WOULD BE ASSUMED BY THE BUYER OF THE DEBTOR'S BUSINESSES. THE UNDERLYING FINANCIAL INFORMATION IN THE LIQUIDATION ANALYSIS WAS NOT COMPILED OR EXAMINED BY ANY INDEPENDENT ACCOUNTANTS. NEITHER THE DEBTOR NOR ITS ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY.**

**THE LIQUIDATION ANALYSIS HAS BEEN PREPARED SOLELY FOR THE PURPOSES OF ESTIMATING THE ASSET PROCEEDS AVAILABLE IN A HYPOTHETICAL CHAPTER 7 LIQUIDATION. NOTHING CONTAINED IN THIS LIQUIDATION ANALYSIS IS INTENDED AS OR CONSTITUTES A CONCESSION OR ADMISSION FOR ANY PURPOSE OTHER THAN THE PRESENTATION OF A HYPOTHETICAL LIQUIDATION ANALYSIS FOR PURPOSES OF THE BEST**

INTERESTS TEST. THE LIQUIDATION ANALYSIS SHOULD BE READ IN CONJUNCTION WITH THE ACCOMPANYING ASSUMPTIONS.

## II. BASIS OF PRESENTATION

The Liquidation Analysis is based upon an estimate of the proceeds that may be realized by the Debtor in the event that the Debtor's assets are liquidated in an orderly manner under Chapter 7 of the Bankruptcy Code. The Liquidation Analysis does not include recoveries resulting from any potential preference claims, fraudulent conveyance litigation, or other avoidance actions, if such actions exist. The Liquidation Analysis is based upon the Debtor's unaudited balance sheet as of March 31, 2024 (unless otherwise noted) and upon projections developed by the Debtor for certain assets to reflect various probable offsets or adjustments deemed to be a more accurate predictor of value in a liquidation scenario. Management of the Debtor does not believe at this time that projected information on other assets or liabilities would vary significantly. However, this analysis is subject to change as a result of any changes to the Debtor's planned operating activities.

In addition to the above, the following key assumptions were made:

- Liquidation Analysis Depends on Estimates and Assumptions. The determination of the hypothetical proceeds from, and costs of the liquidation of the assets, is an uncertain process involving the extensive use of estimates and assumptions that, although considered reasonable by the Debtor, are inherently subject to significant business, and economic uncertainties and contingencies beyond the control of the Debtor. Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual Chapter 7 liquidation and unanticipated events and circumstances could affect the ultimate results in an actual Chapter 7 liquidation. The Debtor prepared the Liquidation Analysis for the sole purpose of establishing a reasonable good faith estimate of the proceeds that would be generated if the Debtor's assets were liquidated in accordance with Chapter 7 of the Bankruptcy Code (a "Chapter 7 Liquidation") upon conversion of these Chapter 11 Cases (the "Chapter 7 Conversion Date") on the Effective Date of the Chapter 11 Plan. No independent appraisals were conducted in preparing the Liquidation Analysis. The Liquidation Analysis is not intended and should not be used for any other purpose other than set forth herein. The underlying financial information in the Liquidation Analysis was not compiled or examined by any independent accountants. Accordingly, while deemed reasonable based on the facts currently available, neither the Debtor nor their advisors make any representations or warranties that the actual results would or would not approximate the estimates and assumptions represented in the Liquidation Analysis.

- Conversion and Appointment of a Trustee: On the Chapter 7 Conversion Date, it is assumed that a trustee would be appointed (the "Chapter 7 Trustee") to oversee the liquidation of the estates. As a baseline, the Liquidation Analysis used the Debtor's unaudited assets and liabilities as of March 31, 2024, and then, as set forth herein, the book values of certain assets and liabilities were adjusted, where appropriate, to reflect various probable offsets or adjustments deemed to be a more accurate predictor of value in a liquidation scenario. These unaudited estimates are derived from the Debtor's financial statements or more recent financial information, where available. The Debtor

does not believe the use of such estimates will result in a material change to estimated recoveries on conversion unless otherwise noted.

- Liquidation Process and Time. Following the appointment of a Chapter 7 Trustee, the liquidation period is assumed to last a total of 9 to 12 months to substantially liquidate all of the Debtor's assets, depending on the scenario assumed. This Liquidation Analysis further assumes that the liquidation process commences immediately following the Chapter 7 Conversion Date and all reasonable efforts are taken to liquidate assets in accordance with the Colombian bankruptcy laws. This analysis assumes the liquidation is performed in 12 months in the low-end of the estimated recovery range (the "Low Scenario"), and in 9 months in the high-end of the estimated recovery range (the "High Scenario"). The Liquidation Analysis assumes a liquidation of all of the Debtor's assets including (a) cash and cash equivalents, (b) accounts receivable, (c) loan portfolio, (d) and other assets. The Liquidation Analysis assumes that the Trustee does not possess the operational expertise or capability to continue to operate the Debtor's business efficiently or safely for the extended period required to conduct a going concern sale process. The individual sale of all marketable assets of the estate are assumed to take place concurrently with each other. Actual asset sales and wind-down of operations would happen immediately after service to customers is discontinued on the Conversion Date. All distributions would be made as and when proceeds from the disposition of assets and collection of receivables are received; however, the projected recoveries have not been discounted to reflect the present value of any distributions.

- Estimates of Claims: In preparing the Liquidation Analysis, the Debtor estimated Allowed Claims based on a review of their books and records as of March 31, 2024. The Liquidation Analysis also includes estimates for Claims that could be asserted and Allowed in a Chapter 7 Liquidation, including Administrative Expenses, employee-related obligations, wind down costs (as detailed herein), Chapter 7 Trustee fees, and other Allowed Claims. For purposes of the Liquidation Analysis, the Debtor has estimated the amounts of Allowed Claims and provided ranges of projected recoveries based on certain assumptions. Therefore, the Debtor's estimates of Allowed Claims set forth in the Liquidation Analysis should not be relied upon for any purpose other than considering the hypothetical distributions under a Chapter 7 liquidation. Nothing contained in the Liquidation Analysis is intended to be or constitutes a concession or admission by the Debtor. Any actual amounts of Allowed Claims in the Chapter 11 Cases could materially differ from the estimated amounts set forth in the Liquidation Analysis.

- Factors Considered in Valuing Hypothetical Liquidation Proceeds: Factors that could negatively impact the recoveries set forth in the Liquidation Analysis, include, but are not limited to: (a) economic conditions in Colombia; (b) exchange rate fluctuations as most of the Debtor's assets, including cash are in COP, while an important portion of its financial obligations are in USD; (c) termination of key important collaboration agreements with employers and pension funds, low-amount collection agencies and non-bank correspondents, as well as alliances with third parties and insurers; (d) delays

4

in the liquidation process; (e) loss of market share to key competitors; and (f) loan portfolio deterioration resulted from a halt in payments from borrowers due to the liquidation commencement. These factors may limit the amount of the proceeds generated by the liquidation of the Debtor's assets (the "Liquidation Proceeds") available to the Trustee.

- <u>Tax Consequences</u>: The Debtor's management believes that it is unlikely that material taxable gains would be triggered through a liquidation of the Debtor's assets. However, if there were to be a taxable gain from the liquidation of the Debtor's assets, the Debtor believes that any realized gains would result in only minimal tax liability, if any, because such gains would be subject to potential offset by the Debtors' current pretax losses and/or net operating loss carry forwards.

- <u>Waterfall and Recovery Range</u>: The Liquidation Analysis assumes that the proceeds generated from the liquidation of all of the Debtor's assets as of the Chapter 7 Conversion Date, will be reasonably available to the Trustee. After deducting the costs of liquidation, including the Trustee's fees and expenses and other administrative expenses incurred in the liquidation, the Trustee would allocate net Liquidation Proceeds to holders of Claims of the Debtor in accordance with the priority scheme set forth in section 726 of the Bankruptcy Code and respective foreign insolvency laws. The Liquidation Analysis estimates low and high recovery percentages for Claims upon the Trustee's application of the Liquidation Proceeds. As a starting point, the Debtor used the unaudited March 31, 2024, financial statements as a proxy for expected asset values on the Chapter 7 Conversion Date (unless otherwise noted) and made pro-forma adjustments to those values to reflect, where appropriate, various probable offsets or adjustments deemed to be a more accurate predictor of value in a liquidation scenario. While the Debtor expects to continue to incur obligations in the ordinary course of business until the Chapter 7 Conversion Date (which obligations have not been reflected herein), the ultimate inclusion of such additional obligations is not expected to materially change the results of the Liquidation Analysis. The Debtor has worked with their advisors to estimate ranges of recoveries as provided in this Liquidation Analysis. These ranges are estimates and should not be relied upon by any party. The Debtor does not provide assurance of any recovery in a Chapter 7 scenario.

### III. PRINCIPAL ASSUMPTIONS

The following notes detail the assumed treatment and estimated value of (i) the Debtor's assets, (ii) costs associated with the liquidation of these assets and (iii) any claims that have been asserted or could be asserted against these assets. The number associated with each note below corresponds with the number of a line item on the Liquidation Analysis.

(1) <u>Cash and Cash Equivalents.</u> The Debtor's cash and cash equivalents comprise cash balances and time deposits with maturities of three months or less from the Chapter 7 Conversion Date that are subject to an insignificant risk of changes in their fair market value and are used by the Debtor in the management of their short-term commitments. The Liquidation Analysis assumes that operations during the liquidation period would not

generate additional cash available for distribution except for net proceeds from the disposition of non-cash assets. The cash and cash equivalent values are based on the balance sheet date as of March 31, 2024, and are expected to be representative of the cash available for liquidation. The estimated recovery on the adjusted pro-forma balance of Cash and Cash Equivalents is estimated at 100%.

(2) Restricted Cash. The Debtor's accounting practice involves the consolidation of free-standing trusts ("*Patrimonio Autónomo*" or "*PA*"). These PAs have an irrevocable loan portfolio assigned to collateralize debt provided by banks in order to fund the Debtor operations. Therefore, the PAs contemplate the funding bank as the lender and the Debtor as guarantor and/or trustor. As a result of this consolidation, the Debtor reports assets and liabilities of these trusts in its financial statements. Restricted Cash comprises two components: (i) cash held within these loan trust accounts, inaccessible to the Debtor, and (ii) cash held within the Debtor's bank accounts related to collateral collections intended to be distributed to each loan trust account. As Restricted Cash is still liquid cash the estimated recovery is 100% which will be available first to the respective Secured Creditors.

(3) Financial Assets. Is composed of (i) a 5.03% equity participation in Agrocañas S.A. and (ii) investments in closed-end and open-end mutual funds. Recovery for the equity participation is assumed to range between 5% and 20% as Agrocañas' equity is not publicly traded and the Debtor may be required to accept a discount for sale. Conversely, recovery for the investments in the mutual funds is assumed to be 100% as shares could be sold back to the fund or on the market with relative ease.

(4) Derivative Instruments. The Debtor has 12 exchange rate bull call spread strategies (composed of 12 European long-calls and 12 European short-calls) with settlements going from Jul-24 to Jun-25. As of May 9, 2024, the mark-to-market value of the options is USD 314,389. The Liquidation Analysis assumes no recovery as the amount is immaterial.

(5) Loan Portfolio, net. Loan Portfolio is comprised of payroll loans, credit card loans and insurance premium financing. A portion of the Loan Portfolio is used as collateral for bank debt used to finance originations and overall corporate purposes.

The liquidation of the Loan Portfolio will be impacted by:

    (i)    **Aging of the loan**. As the loan delinquency period increases, the likelihood of full recovery tends to diminish. Delinquent loans may initially be manageable, but as time passes without repayment, the chances of recovering the full principal and interest decrease. Prolonged delinquencies often indicate financial distress or instability on the borrower's part, making recovery less likely. In the case of payroll loans, this may indicate that the person is no longer employed, stopped receiving a pension, switched to an employer or pension that has no collection agreement with the Debtor, or there are priority payments that are deducted from payroll, such as alimony or garnishments, which take precedence over the payroll loan and collections cannot be resumed until these payments are covered. For the

    Loan Portfolio analysis, aging has been categorized in the following six delinquency groups: (1) 0 to 30 days, (2) 31 to 60 days, (3) 61 to 90 days, (4) 91 to 120 days, (5) 121 to 180 days, and (6) more than 180 days. Recovery is assumed to progressively diminish for loans in higher delinquency groups.

  (ii) **Type of loan**. Payroll loans often carry higher recovery potential due to the mechanics of collection, where the employer makes the indicated retentions from employees' paychecks on regular intervals of time. Credit card loans and insurance premium financing may carry a relatively more complex recovery potential as the borrower has higher discretion on the payments realized and its periodicity. Consequently, the Liquidation Analysis considers a different recovery profile depending on the type of loan.

  (iii) **Size and focus on each type of loan portfolio**. According to the Debtor's management, the strategic focus is on the payroll business (46% of the loan portfolio as of March 31, 2024) due to its better risk profile, while the credit card business (52% of the loan portfolio) is in the process of being sold and closed. Additionally, the insurance premium financing business (2% of the loan portfolio) represents a small fraction of the overall Loan Portfolio. In addition, as of March 31, 2024, the Debtor has (i) 42,872payroll loans distributed among 1,046 employers and pension funds; (ii) 305,957credit card loans, and (iii) 14,048 insurance premium financing loans. Therefore, in the event of liquidation, it is assumed that higher collection efforts will be directed towards payroll loans, given its strategic focus and more manageable number of loans, followed by credit card loans, and finally insurance premium financing.

Given these considerations, the aggregated recoveries are estimated to range between 55% and 67% for the payroll loan portfolio, 24% to 33% for the credit card loan portfolio, and 19% to 31% for the insurance premium financing loan portfolio. This results in a recovery of 51% to 65% for the whole Loan Portfolio.

The recoveries of the Unencumbered and Encumbered portions of the Loan Portfolio are derived by separating loans between those owned by the Debtor and those that collateralize bank debt. Recovery for the Unencumbered Loan Portfolio ranges between 52% and 69%, while recovery for the Encumbered Loan Portfolio ranges between 51% and 62%. The Encumbered portion of the Loan Portfolio has slightly lower recovery ranges than the Unencumbered portion mainly due (i) its higher aging profile (i.e., 42% of the Encumbered loans are above 90 days delinquency, while 33% of the Unencumbered loans are above that delinquency range), and (ii) a tilt toward credit card loans (i.e., 55% of the Encumbered portion relates to credit card loans, while 49% of the Unencumbered portion relates to these type of loans).

(6) <u>Accounts Receivable, net.</u> Accounts receivables include receivables from Asesorias Financieras de Credito S.A.S. (Asficredit), the Debtor's commercial force, for operational payments made on its behalf; receivables from loan portfolios sold; direct loans; pending

collections of insurance claims and commissions; and other receivables. The pro-forma accounts receivable balance includes adjustments for offset certain payables owed to those same suppliers and parties. Estimated recovery percentages have been assigned to different categories of receivables ranging between no recovery to 40%. As a result, the overall estimated recovery on the Accounts Receivable ranges between 20% to 31%.

(7) <u>Investments in Associates.</u> Represents 25.0% equity participation in Inverefectivas S.A., classified as an associate from an accounting perspective due to the level of equity participation. Recovery is assumed to be similar than the Agrocañas' equity, between 10% and 30%, as this company's equity is not publicly traded.

(8) <u>Tax Assets, net.</u> Deferred tax assets are recognized by the Debtor in respect of temporary differences between the carrying amounts of assets and liabilities for financial reporting purposes and the amounts used for taxation purposes. Deferred tax assets and liabilities were not included as their recovery is assumed to be zero and no claim exists. The balance also includes a relatively small portion of taxes paid in advance, for which no recovery is assumed.

(9) <u>Property, Plant, and Equipment, net.</u> Property, plant and equipment ("<u>PP&E</u>") assets consist primarily of leased assets, which are accounted for as assets under IFRS 16 and therefore reflect an accounting treatment rather than a true asset owned by the Debtor. As a result, a recovery of zero is assumed for this category and consequently no related claim is recognized. The remaining PP&E reflects vehicles, technology-related hard assets, and furniture and fixtures for which a recovery of 5% to 50% has been assumed depending on the type of asset. As a result, the overall recovery of PP&E is assumed to be less than 1%.

(10) <u>Intangible Assets.</u> Intangible assets relate to trademarks, software licenses, databases, and prepaid expenses. Given the nature of these assets, no recovery is assumed in the Low Scenario, and a 20% recovery is assumed in the High Scenario.

(11) <u>Chapter 7 Trustee Fees.</u> Trustee fees are the fees associated with the appointment of a Chapter 7 trustee in accordance with section 362 of the Bankruptcy Code. Trustee fees are estimated based on the requirements of the Bankruptcy Code and historical experiences in other similar cases and are projected to be approximately 3% of gross liquidation proceeds, excluding cash, in accordance with section 362 of the Bankruptcy Code.

(12) <u>Chapter 7 Professional Fees.</u> Such amounts include legal, investment banking, financial advisors, brokerage, and accounting services required to assist the Debtor and the Trustee with the liquidation process and assumes such wind-down and associated fees. Professional Fees are assumed to be USD $2.0 million per month, to be incurred for the duration of the liquidation (i.e., 12 months in the Low Scenario and 9 months in the High Scenario). Fee estimates are based upon the Debtor's management's review and guidance on such costs.

(13) <u>Wind-Down Expenses and Charges.</u> Wind-down expenses reflect the continuance of operations necessary to liquidate assets, including Debtor's staff, rents and operating expenditures, however excluding broker and third-party commissions on sale of any assets.

The Low Scenario assumes a Liquidation Period of 12 months, while the High Scenario assumes a period of 9 months. In addition, a portion of corporate staff will need to be retained to deal with Trustee requests, creditor queries and to maintain a minimum level of books and records. Expenses related to those staff who remain are expected to be higher than in historical periods due to the need to motivate corporate and sales staff to provide their services during this period. Expenses are expected to decline near the end of the Liquidation Period to zero.

(14) Commissions on Loan Portfolio Sales. Commission estimates were based upon the Debtor's management's review and guidance on such costs and range between 2% and 5% depending on the type of loan portfolio.

(15) Severance and Other Amounts Due to Employees. The severance amount includes payments for corresponding wages, severance payments, interest on severance payments, legal bonus, vacations pay and other benefits for each of the Debtor's employees. Other Amounts Due to Employees mainly relates to the accrued vacations and personnel withholdings before the Petition Date. Debtor's management and its advisors have adopted the accrual in the Debtor's Balance Sheet as of March 31, 2024, as an approximate estimate of the balance that would be due in such a scenario for the purposes of this Liquidation Analysis.

(16) Outstanding Taxes. Outstanding taxes relate to taxes owed to tax authorities, such as withholding taxes and income taxes, which will be required to be paid from the Debtor's estates.

(17) Secured Bank Debt. Represents the outstanding balance of the secured bank debt as of March 31, 2024. The Secured Bank Debt is secured by first-priority liens on certain loans in the Debtor's Loan Portfolio and will receive the benefit of its liquidation value. No further interest on the Secured Bank Debt's principal is assumed to accrue during the liquidation. Depending on the scenario analyzed, the proceeds for the liquidation of the collateralized loan portfolio and the restricted cash held in each corresponding PA (*see Restricted Cash note num. 2*) will not be sufficient to cover the full outstanding amount, generating a Deficiency Claim that would be treated as an Unsecured Claim.

(18) Unsecured Debt. Represents the balances of the 8.875% Unsecured Notes due in 2025, the Unsecured Local Notes, shareholders' loans, the Euro Commercial Paper Program ("ECP"), and multiple working capital facilities provided by local banks, as well as the deficiency claims from Secured Bank Debt.

(19) General Unsecured Claims. General unsecured claims mainly reflect advances from sales of future loan originations, accounts payable due to vendors and collections pending to be applied to the Loan Portfolio.

**Conclusion.** After considering the effects that a Chapter 7 liquidation would have on the ultimate proceeds available for distribution to Creditors in this case, including (i) increased costs and expenses of a liquidation, including priority amounts and likely fees due to a Trustee and its professional advisors, (ii) the erosion in value of assets in the context of the expeditious liquidation required and the "forced sale" atmosphere that would prevail, and (iii) the difficulty in being able to sell individual assets, the Debtor has determined that confirmation of this Plan will provide each Creditor and equity holder with a recovery that is not less than it would receive pursuant to a liquidation of the Debtor under Chapter 7 of the Bankruptcy Code.

## Debtor's Hypothetical Liquidation Analysis

| USD Million, unless otherwise noted | Notes | Book Value Mar-24 | Pro-Forma Value Mar-24 | Hypothetical Recovery % Low | Hypothetical Recovery % High | Hypothetical Recovery $ Low | Hypothetical Recovery $ High | Hypothetical Midpoint Recovery $ | Hypothetical Midpoint Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **I. ESTIMATED LIQUIDATION VALUE OF ASSETS** | | | | | | | | | |
| Cash and Cash Equivalents | (1) | 10.3 | 2.4 | 100.0% | 100.0% | 2.4 | 2.4 | 2.4 | 100.00% |
| Restricted Cash | (2) | - | 6.4 | 100.0% | 100.0% | 6.4 | 6.4 | 6.4 | 100.00% |
| Financial Assets | (3) | 1.3 | 1.3 | 17.0% | 30.1% | 0.2 | 0.4 | 0.3 | 23.51% |
| Derivative Instruments | (4) | 2.5 | 2.5 | - | - | - | - | - | - |
| Loan Portfolio, net - Unencumbered | (5) | 140.3 | 140.3 | 51.6% | 68.7% | 72.5 | 96.3 | 84.4 | 60.15% |
| Loan Portfolio, net - Encumbered | (5) | 214.5 | 214.5 | 51.4% | 62.5% | 110.2 | 134.0 | 122.1 | 56.91% |
| Accounts Receivable, net | (6) | 68.1 | 66.7 | 20.5% | 30.8% | 13.7 | 20.6 | 17.1 | 25.63% |
| Investments in Associates | (7) | 3.0 | 3.0 | 10.0% | 30.0% | 0.3 | 0.9 | 0.6 | 20.00% |
| Tax Assets, net | (8) | 49.8 | 49.8 | - | - | - | - | - | - |
| PP&E, net | (9) | 2.4 | 2.4 | 0.6% | 1.0% | 0.0 | 0.0 | 0.0 | 0.80% |
| Intangible Assets | (10) | 2.9 | 2.9 | - | 20.0% | - | 0.6 | 0.3 | 10.00% |
| **Total Assets** | | **495.1** | **492.1** | **41.8%** | **53.1%** | **205.6** | **261.5** | **233.5** | **47.46%** |
| Net proceeds from non-debtors | | | | | | - | - | - | |
| **Total Gross Proceeds Available** | | **495.1** | **492.1** | **41.77%** | **53.14%** | **205.6** | **261.5** | **233.5** | |
| **II. ADMINISTRATIVE AND PRIORITY CLAIMS RELATED TO THE LIQUIDATION OF ASSETS** | | | | | | | | | |
| Chapter 7 Trustee Fees | (11) | | | | | (5.9) | (7.6) | (6.7) | |
| Chapter 7 Professional Fees | (12) | | | | | (24.0) | (18.0) | (21.0) | |
| Wind-Down Expenses and Charges | (13) | | | | | (7.9) | (5.8) | (6.9) | |
| Commissions on Loan Portfolios Sales | (14) | | | | | (8.5) | (5.3) | (6.9) | |
| Other Amounts Due to Employees | (15) | | | | | (0.2) | (0.2) | (0.2) | |
| Severance | (15) | | | | | (0.4) | (0.4) | (0.4) | |
| Outstanding Taxes | (16) | | | | | (0.8) | (0.8) | (0.8) | |
| **Total Administrative And Priority Claims** | | | | | | **(47.7)** | **(38.1)** | **(42.9)** | |
| **Net Proceeds Available For Distribution** | | | | | | **157.8** | **223.4** | **190.6** | |
| **III. DISTRIBUTION OF PROCEEDS** | | | | | | | | | |
| **Payment Of Secured Claims** | | | | | | | | | |

| 1st Lien Secured Claims | | Book Value | Pro-Forma Value | Low | High | Low | High | $ | % |
|---|---|---|---|---|---|---|---|---|---|
| Citibank | (17) | 26.8 | 26.8 | 100.00% | 100.00% | 26.8 | 26.8 | 26.8 | 100.00% |
| Bancolombia | (17) | 26.9 | 26.9 | 80.94% | 100.00% | 21.8 | 26.9 | 24.3 | 90.47% |
| UBS O'Connor Gramercy | (17) | 18.0 | 18.0 | 66.69% | 100.00% | 12.0 | 18.0 | 15.0 | 83.35% |
| Systemgroup | (17) | 8.6 | 8.6 | 100.00% | 100.00% | 8.6 | 8.6 | 8.6 | 100.00% |
| Banco de Occidente | (17) | 7.8 | 7.8 | 80.94% | 100.00% | 6.3 | 7.8 | 7.0 | 90.47% |
| Banco Santander | (17) | 4.3 | 4.3 | 80.94% | 100.00% | 3.5 | 4.3 | 3.9 | 90.47% |
| Banco de Bogota | (17) | 3.7 | 3.7 | 80.94% | 100.00% | 3.0 | 3.7 | 3.3 | 90.47% |
| Fiduciaria Coomeva S.A. | (17) | 0.2 | 0.24 | 56.01% | 71.92% | 0.1 | 0.2 | 0.2 | 63.96% |
| **Total 1st Lien Secured Claims** | | **96.4** | **96.4** | **85.24%** | **99.93%** | **82.1** | **96.3** | **89.2** | **92.58%** |
| Excess Proceeds Available For Payment Of General Unsecured Claims | | | | | | 7.4 | 23.7 | 15.5 | |
| **Total Proceeds Available For Payment Of General Unsecured Claims** | | | | | | **75.7** | **127.1** | **101.4** | |

| **Payment Of General Unsecured Claims** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1st Lien Secured Debt Deficiency Claims | | Pro-forma Value Low | High | Low | High | Low | High | $ | % |
| Citibank (Deficiency Claim) | (17) | - | - | 21.92% | n/a | - | - | - | - |
| Bancolombia (Deficiency Claim) | (17) | 5.1 | - | 21.92% | n/a | 1.1 | - | 0.6 | 21.92% |
| UBS O'Connor Gramercy (Deficiency Claim) | (17) | 6.0 | - | 21.92% | n/a | 1.3 | - | 0.7 | 21.92% |
| Systemgroup (Deficiency Claim) | (17) | - | - | 21.92% | n/a | - | - | - | - |
| Banco de Occidente (Deficiency Claim) | (17) | 1.5 | - | 21.92% | n/a | 0.3 | - | 0.2 | 21.92% |
| Banco Santander (Deficiency Claim) | (17) | 0.8 | - | 21.92% | n/a | 0.2 | - | 0.1 | 21.92% |
| Banco de Bogota (Deficiency Claim) | (17) | 0.7 | - | 21.92% | n/a | 0.2 | - | 0.1 | 21.92% |
| Fiduciaria Coomeva S.A. (Deficiency Claim) | (17) | 0.1 | 0.1 | 21.92% | 38.38% | 0.0 | 0.0 | 0.0 | 28.33% |
| **Total 1st Lien Secured Debt Deficiency Claims** | | **14.2** | **0.1** | **21.92%** | **38.38%** | **3.1** | **0.0** | **1.6** | **22.00%** |
| **Unsecured Debt** | | | | | | | | | |
| 8.875% Senior Notes due in 2025 | (18) | 217.5 | 217.5 | 21.92% | 38.38% | 47.7 | 83.5 | 65.6 | 30.15% |
| Fondo Nacional de Garantias (Local Notes) | (18) | 24.7 | 24.7 | 21.92% | 38.38% | 5.4 | 9.5 | 7.4 | 30.15% |
| Finanza Inversiones S.A.S | (18) | 20.2 | 20.2 | 21.92% | 38.38% | 4.4 | 7.8 | 6.1 | 30.15% |
| Inter Notes Euro Commercial Paper Program | (18) | 32.6 | 32.6 | 21.92% | 38.38% | 7.1 | 12.5 | 9.8 | 30.15% |
| Banco de Bogota (WK Facilities) | (18) | 0.7 | 0.7 | 21.92% | 38.38% | 0.2 | 0.3 | 0.2 | 30.15% |
| Banco de Occidente (WK Facilities) | (18) | 2.3 | 2.3 | 21.92% | 38.38% | 0.5 | 0.9 | 0.7 | 30.15% |
| Bancolombia (WK Facilities) | (18) | 2.3 | 2.3 | 21.92% | 38.38% | 0.5 | 0.9 | 0.7 | 30.15% |
| **Total Unsecured Debt** | | **300.5** | **300.5** | **21.92%** | **38.38%** | **65.9** | **115.3** | **90.6** | **30.15%** |
| **General Unsecured Claims** | | | | | | | | | |
| Other Unsecured Claims | (19) | 8.5 | 8.5 | 21.92% | 38.38% | 1.9 | 3.3 | 2.6 | 30.15% |
| Pre-Petition Accounts Payable | (19) | 22.2 | 22.2 | 21.92% | 38.38% | 4.9 | 8.5 | 6.7 | 30.15% |
| Other Contingent Liabilities | (19) | - | - | 21.92% | 38.38% | - | - | - | - |
| **Total Other Unsecured Claims** | | **30.7** | **30.7** | **21.92%** | **38.38%** | **6.7** | **11.8** | **9.3** | **30.15%** |
| **Total General Unsecured Claims** | | **345.4** | **331.2** | **21.92%** | **38.38%** | **75.7** | **127.1** | **101.4** | **29.98%** |
| **Proceeds Available To Shareholders** | | | | | | **-** | **-** | **-** | |

11

**Claim Recovery Summary based on Debtor's Hypothetical Liquidation Analysis**

| USD Million | Claim Mar-24 | Hypothetical Recovery % Low | Hypothetical Recovery % High | Hypothetical Recovery $ Low | Hypothetical Recovery $ High |
|---|---|---|---|---|---|
| **Secured Claims (Combined Recovery - Secured + Deficiency)** | | | | | |
| Citibank | 26.8 | 26.8 | 26.8 | 100.0% | 100.0% |
| Bancolombia | 26.9 | 22.9 | 26.9 | 85.1% | 100.0% |
| UBS O'Connor | 18.0 | 13.3 | 18.0 | 74.0% | 100.0% |
| Systemgroup | 8.6 | 8.6 | 8.6 | 100.0% | 100.0% |
| Banco de Occidente | 7.8 | 6.6 | 7.8 | 85.1% | 100.0% |
| Banco Santander | 4.3 | 3.7 | 4.3 | 85.1% | 100.0% |
| Banco de Bogota | 3.7 | 3.1 | 3.7 | 85.1% | 100.0% |
| Fiduciaria Coomeva S.A. | 0.2 | 0.2 | 0.2 | 65.7% | 82.7% |
| **Total Secured + Deficiency** | **96.4** | **85.2** | **96.3** | **88.5%** | **100.0%** |
| **Unsecured Notes** | | | | | |
| 8.875% Senior Notes due in 2025 | 217.5 | 47.7 | 83.5 | 21.9% | 38.4% |
| Fondo Nacional de Garantias (Local Notes) | 24.7 | 5.4 | 9.5 | 21.9% | 38.4% |
| Finanza Inversiones S.A.S | 20.2 | 4.4 | 7.8 | 21.9% | 38.4% |
| Inter Notes Euro Commercial Paper Program | 32.6 | 7.1 | 12.5 | 21.9% | 38.4% |
| Banco de Bogota (WK Facilities) | 0.7 | 0.2 | 0.3 | 21.9% | 38.4% |
| Banco de Occidente (WK Facilities) | 2.3 | 0.5 | 0.9 | 21.9% | 38.4% |
| Bancolombia (WK Facilities) | 2.3 | 0.5 | 0.9 | 21.9% | 38.4% |
| **Total Unsecured** | **300.5** | **65.9** | **115.3** | **21.9%** | **38.4%** |
| **General Unsecured Claims** | | | | | |
| Other Unsecured Claims | 8.5 | 1.9 | 3.3 | 21.9% | 38.4% |
| Pre-Petition Accounts Payable | 22.2 | 4.9 | 8.5 | 21.9% | 38.4% |
| **Total General Unsecured** | **30.7** | **6.7** | **11.8** | **21.9%** | **38.4%** |