1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 24-10837-dsj

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   CREDIVALORES - CREDISERVICIOS S.A.

8

9         Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                  United States Bankruptcy Court

13                  One Bowling Green

14                  New York, NY  10004

15

16                  June 13, 2024

17                  3:00 PM

18

19

20

21   B E F O R E :

22   HON. DAVID S. JONES

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  Unknown

1    HEARING re Status Conference

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   DOJ - UNITED STATES TRUSTEE

 4        Attorney for United States Trustee

 5        DOJ - UST

 6        Alexander Hamilton Custom House

 7        One Bowling Green

 8        New York, NY 10004

 9

10   BY:  GREG M. ZIPES

11

12   BAKER MCKENZIE LLP

13        Attorney for Debtor

14        1111 Brickell Avenue, Suite 1000

15        Miami, FL 33131

16

17   BY:  PAUL KEENAN

18

19   DAVIS POLK

20        Attorney for Ad Hoc Group

21        450 Lexington Avenue

22        New York, NY 10014

23

24   BY:  ANGELA LIBBY

25
```

1    ALSO PRESENT:

2

3    BENJAMIN CODY DAVIS

4    MARGARET HOOD

5    MAXWELL NIDES

6    REBAKAH PRESLEY

7    REGINALD SAINVIL

8    FRANCISCO VAZQUEZ

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                 P R O C E E D I N G S

2             THE COURT:  Hi, everyone.  It's Judge Jones.

3     We're here for a conference in Credivalores, Number 24-

4     10837.

5             Just to set the stage a teeny bit more, we had a

6     calendar in connection with requests for entry of final

7     orders, rendering final relief that had previously been

8     granted on an interim basis in connection with the first day

9     hearings.  A certificate of no objection was filed as to all

10    but one of those requests.  And I have entered orders

11    granting the relief requested as unopposed.  But soon

12    thereafter the Office of the U.S. Trustee requested that I

13    conduct a conference at the time that had been set for the

14    final hearing, which I'm happy to do.

15            And so, with that I think since Mr. Zipes

16    requested the conference, let me turn it over to him to lead

17    us off.

18            MR. ZIPES:  Thank you, Your Honor.  My office did

19    request this conference.  We were expecting some sort of

20    hearing before the Court today.  And we would have had a

21    general status.  I think it would be helpful given the

22    expedited timeline of this case that we go over some issues

23    that might alleviate bigger issues down the line

24            Your Honor, as this Court is aware, this case is

25    on the fast track.  It's a prepack or labeled as a prepack.

1   And consistent with prepacks, there are certain requests

2   made by the Debtor that are pretty standard in this

3   district, one of which is a request to waive the appointment

4   of a creditors committee.  My office is statutorily

5   obligated to appoint a committee under the Bankruptcy Code

6   if we have sufficient support for that.  That doesn't happen

7   in every Chapter 11 case, obviously.

8           But in a prepack, there's an understanding that

9   the committee will not be put in place with the -- if it

10  appears it's a true prepack and it's going to confirm,

11  there's little point in, you know, going through that

12  effort.  But nevertheless, my office retains its statutory

13  duty to appoint a committee.

14          Your Honor, we have had some interest in a

15  committee, and I know -- we've had discussions with the

16  Debtor as well about scheduling matters.  The Debtor, I will

17  state, is intent on going forward with the schedule already

18  approved by this Court.  And there are some issues in this

19  case that my office is concerned about, which I think a lot

20  of them can be addressed.

21          So, I -- what I would have done today if it was a

22  status, I would have gone over some of these concerns, Your

23  Honor.  I'm not necessarily stating that these are -- can't

24  get resolved.  But I think it would be helpful for the Court

25  to hear.

1          THE COURT:  Yeah.  Can I -- let me jump in.  I'm

2    happy to do it.  I -- yeah, I'm happy to convene and give

3    you the floor and let all the parties in interest -- and I

4    know we have Debtors' counsel and counsel for -- well, Ms.

5    Libby, I'll call her, counsel for the -- I think it's Ad Hoc

6    Committee of I guess I'll say concerned noteholders.  Right?

7    Is that the right way to put it, Ms. Libby?

8          MS. LIBBY:  That's probably an accurate way to put

9    it, yes.

10          THE COURT:  Yeah, okay.  So, I'm glad that we're

11    together.  I don't think there's any application directly

12    before me, but I'm happy to conduct a conference in hopes it

13    helps everyone understand where all the relevant players are

14    and flesh out issues that need to be addressed if necessary.

15    So go ahead.

16          Oh, I'm sorry, before -- and now that I've said go

17    ahead, let me tell you not to go ahead.  I want to

18    specifically note that the Debtors did say -- inform the

19    Court and ask that the order with respect to the request for

20    -- to be excused from the requirement to file an unsecured

21    creditors committee because postponed because of some

22    ongoing concerns -- unspecified concerns they understood

23    your office had.  So that has not been pushed forward.  And

24    so, I'm happy to talk about it now and then see where we go.

25          MR. KEENAN:  Your Honor, this is Paul Keenan from

1    Baker McKenzie on behalf of the Debtor.  Can I just make an

2    opening statement?

3               THE COURT:  Sure.

4               MR. KEENAN:  Your Honor, the Office for the U.S.

5    Trustee reached out to us a few days ago, actually last

6    week, about some questions about a retention application.

7    And we'll be filing a supplemental declaration to address

8    those issues.

9               And then just a day or two ago they reached out

10   asking some questions about the ballots and the voting in

11   this case.  We provided all the documents to the Office of

12   the U.S. Trustee this morning that they requested and we're

13   having a call with them tomorrow morning to answer any

14   questions that they have.

15              As Your Honor noted, there is no application

16   before the Court at this point in time, and I am a little

17   reluctant to engage in argument that I have no notice about.

18              THE COURT:  Yeah.  I'm not going to expect anyone

19   to argue anything.  I view this as appropriately teed up as

20   a conference.  And if it foreshadows issues or if there's

21   any constructive conversation to have, great.  And

22   otherwise, I guess we'll just adjourn and call it a

23   conference.  And if I need to be setting any particular

24   dates or doing any case management directives, that would be

25   the type of thing that could conceivably arise appropriately

1    from a conference, which is all this is.  Okay?

2              Anything else you want to add, Mr. Keenan?  Sorry,

3    you just muted yourself.  I guess I could take that as a no.

4              MR. KEENAN:  That's a no, Your Honor.  I

5    apologize.  This hearing caught me off guard, so I'm doing

6    this from my phone.

7              THE COURT:  Okay.  That's fine.  No problem.

8    Okay.

9              I guess while I'm circling, Ms. Libby is the only

10   -- the other protagonist with camera on.  So, anything you

11   want to add?

12             MS. LIBBY:  I think I'll let Mr. Zipes go first.

13   I think our concerns are largely going to be focused on the

14   committee and whether a committee should be appointed and

15   wanting to make sure Your Honor has sort of the

16   (indiscernible) on that front and then scheduling concerns.

17             THE COURT:  Okay.  All right.  So, Mr. Zipes, let

18   me go back to you.  Thanks.

19             MR. ZIPES:  Yeah.  And Your Honor, let me say that

20   I appreciate Mr. Keenan's comments because I actually --

21   part of this was just to let the Court know where certain

22   motions stand, and he did that.

23             I will state there was one motion, the cash

24   management motion, this Court entered a final order.  And

25   that is true, my office didn't file an objection to that.

1   We are operating under the assumption this is a prepack.

2   And in that order, there's language to the effect that the

3   Debtors' requirement to open up debtor-in-possession bank

4   accounts with U.S. Trustee-authorized depositories would be

5   delayed for 60 days with the assumption that if the plan

6   confirms, they wouldn't need to do that.

7           We didn't review that order before it was

8   submitted to the Court.  We don't have a problem with the

9   order except that it says final on it.  And it has language

10  in it that simply states that for 60 days the Debtors'

11  requirements to open in authorized depositories are waived.

12  That's fine.  But again, it's styled as a final order.

13          THE COURT:  Oh --

14          MR. ZIPES:  I would have preferred an interim -- a

15  further interim order.

16          But I'm just stating that on the record, and I

17  assume that that's clear to all the parties that it's going

18  for 60 days --

19          THE COURT:  Yeah.  Look, that was the

20  understanding.  Let me just see if Mr. Keenan confirm -- can

21  confirm.  And I believe that language is in the text of the

22  order, although I didn't look at it before we just started

23  talking to confirm.

24          Mr. Keenan, is that Debtors' understanding as

25  well?

1    MR. KEENAN:  Yes, Your Honor.  If this does not

2    proceed as a prepack and the case goes beyond 60 days, we

3    understand that certain provisions of the cash management

4    order will have to be revisited.

5    THE COURT:  Okay.  I'll just state in case it

6    helps anybody, including the U.S. Trustee's Office feel

7    better.  That was my understanding in approving the order.

8    All of the cash management order provisions, or maybe not

9    all of them -- critical cash management order provisions are

10   very much predicated on the notion this is a prepack and

11   there's not some indefinite carte blanche to disregard

12   ordinary cash management requirements in the event that it

13   isn't finalized swiftly in keeping with the prepack strategy

14   being pursued by the Debtors here.

15   MR. ZIPES:  And Your Honor, I don't want to over -

16   - make this overly dramatic.  We asked for this conference.

17   I think I would have just raised that at the end of the

18   conference to the extent that we're going forward today.

19   THE COURT:  Sure.

20   MR. ZIPES:  So, some of these comments are in that

21   vein.

22   As to retentions, I agree that it will probably

23   work out with no objection to the Debtors' counsel's

24   retention.  And as for Epiq, we also have no objection to

25   the Epiq retention application.

1           We'll note there is a limitation of liability

2     provision in the retention letter, but that is specifically

3     referred to in the order as not applying in the bankruptcy

4     case.  So, we are okay with Epiq as well.

5           THE COURT:  Okay.  Can I ask -- I don't think

6     those are before me yet, right?  They weren't on the

7     calendar -- they were not on the calendar and adjourned or

8     resolved.  But...

9           MR. ZIPES:  I don't think they are on the

10    calendar, Your Honor.  I'm just seeing --

11          THE COURT:  Yeah.  Okay.

12          MR. KEENAN:  Paul Keenan for the Debtors, Your

13    Honor.  No, they are on the calendar for the confirmation

14    hearing.

15          THE COURT:  Okay.

16          MR. KEENAN:  Which is set for two weeks from now.

17          THE COURT:  Okay.  So, I think the thing -- yeah,

18    Ms. Calderone, in her inimitable way immediately messaged me

19    to inform me that they're scheduled for June 27th.

20          So, I would say keep working and we will -- I'll

21    just deal with any issues that exist at that time, and I

22    guess I'll just take this as a kind of status update to the

23    Court of ongoing discussions, coupled with maybe a sort of

24    an illusion to the possible existence of issues.  But I

25    think there's nothing for me to do about it now, so -- other

1    than to say noted.

2           MR. ZIPES:  Okay.  Yeah.  And Your Honor, I don't

3    know that there's much more to say at this point.  I -- if

4    the Debtor wants to proceed, there is a scheduling order

5    entered.  It requires objections by Monday.  You know, to

6    the extent that there are questions about the ballot or that

7    the Debtor can answer tomorrow, we'll certainly use that and

8    take that into account.  But it is a tight schedule at the

9    moment.

10           And I guess, again, Your Honor, there's not much

11   to say if the Debtor wants to go forward on the timeline it

12   has.

13           THE COURT:  And the hearing -- I'm sorry, that's

14   in anticipation of the hearing date of the 27th?

15           MR. ZIPES:  The 27th.  And I can preview --

16   there's at least two or three issues that I can preview with

17   the plan that I'm hoping the Debtor will be able to agree

18   to.  I -- Your Honor, we --

19           THE COURT:  Can I ask -- let me jump in.  I mean,

20   Mr. Keenan, I want to make clear I'm not going to ask you to

21   argue these.  If it's helpful for you particularly, I'm

22   happy to let you hear it in this forum, although that's

23   unusual.  Otherwise, I might encourage you to just talk

24   about it offline and not pollute my brain.

25           MR. KEENAN:  Your Honor, I would agree with that.

```
 1    I think this is highly unusual the way we are proceeding

 2    here.  You know, we reached a call -- the Office of the U.S.

 3    Trustee reached out to us yesterday or the day before.  Like

 4    I said, we forwarded all the documents that they requested.

 5    I understand that they have some potential objections to the

 6    plan based on voting and some other issues that were perhaps

 7    not coincidentally identical to those raised by Davis Polk.

 8    And we're having a call with the U.S. Trustee tomorrow

 9    morning.  I believe it's -- I forgot the exact time, but

10    it's tomorrow morning.  And we'll work through the issues

11    with them as best we can.

12              And if that doesn't moot out an objection from the

13    Office of the U.S. Trustee, at least it will narrow the

14    issues.  And at least in my practice that's how I'm

15    accustomed to doing things.  You know, people reach out

16    before the objection deadline, have questions, request

17    documents.  We provide them, we have the conversations.  And

18    if nothing else, it hopefully will at least narrow the

19    issues.

20              THE COURT:  Okay.  I'll just say it's a known

21    phenomenon for objection deadlines to be pushed out in order

22    to permit ongoing conversations to continue.  And that's

23    something that I would not have a problem with.  I know

24    you're on a tight time frame, so I'm not going to make you

25    do that.
```

1          I think a thing I'll say in connection with that

2    is that I'm going to be traveling next week.  And so,

3    reachable, but maybe not as responsive as I usually am.  So,

4    there might be a little time lag if you are looking for me

5    next week.  I can also make myself available for emergency

6    applications if needed.  But just keep in mind that I might

7    not be as fast as I usually at least try to be in getting to

8    you on everything.  So, keep that in mind.  Okay?

9          I guess to translate that specifically, if you

10   come in with an on-consent extension request and you don't

11   hear back, don't assume I'm having some internal struggle or

12   likely to reject it, but I may not be instantaneously

13   responsive.

14          MR. KEENAN:  And, Your Honor, I just would like

15   to, you know, just voice the Debtors' opinion on something

16   that's been thrown around.

17          THE COURT:  Sure.

18          MR. KEENAN:  (Indiscernible), you know, a fast-

19   track prepackaged bankruptcy.  It's actually not.  And it

20   was intentionally not.

21          As Your Honor is aware, the Southern District of

22   New York promulgated some new, very extensive guidelines for

23   Chapter 11 prepackaged cases.  And it actually defines what

24   a fast-track case is.

25          If you remember from the presentation at the first

1    day hearing, I noted that we qualified, quite frankly, for a

2    fast-track case, which could be done in 10 to 14 days.  But

3    we did not intentionally -- we intentionally did not request

4    that.  Instead, based on a few of the footnotes in the

5    guidelines, we asked you for what I consider a more

6    traditional prepackaged confirmation timeline.  And in fact,

7    the case here was filed on May 16th, and we're looking at a

8    confirmation hearing of June 27th.  As prepacks go, that's a

9    very healthy timeline.  That is not what I would consider to

10   be accelerated beyond what's normal for a prepackaged case.

11             THE COURT:  Okay.  I hear you.

12             Ms. Libby, are you itching to speak now?

13             MS. LIBBY:  I am.  I am.  And I don't -- none of

14   this will come as a surprise to Mr. Keenan.  I mean, from

15   our perspective, I still think it's an accelerated timeline.

16   And what we wanted to raise for the Court is that we

17   actually will be making a request, and we're happy to do

18   that formally if you would like it in a motion.

19             But as I previewed on the first day of the

20   hearing, we were okay with the scheduling order, subject to

21   the fact that if we weren't able to reach consensus with the

22   Debtors on the issues that we continue to have concerns

23   about, we may be back to the Court to ask for additional

24   time.

25             And from our perspective, the primary concern that

1   we have is that we think that this case screams out for a

2   committee.  We think that this is a case where there's one

3   impaired consenting -- one impaired class here, and it's the

4   bondholder class.  And there's no representative of that

5   class other than folks in our group who don't support the

6   plan.  It's not like there's an ad hoc group here negotiated

7   with the Debtors and we're here and present and supporting

8   the plan.

9            And so, we think it's really critical that a

10  committee be appointed.  And members of our group have

11  actually submitted questionnaires and said that if the

12  trustee needs people to sit, they will sit and they will

13  serv e that role.  That's -- Your Honor, coming from a bunch

14  of folks who have never experienced the U.S. Chapter 11

15  process before.  So, it's all pretty new and foreign to them

16  because a lot of these holders are European and they're not

17  regular players in this space.  But they have raised their

18  hands and they have volunteered.

19           In terms of the timelines that we're facing, in

20  terms of the objection deadline on Monday, in terms of the

21  confirmation schedule we're on, honestly, Your Honor, I

22  think we're just a bit befuddled as to why we're going

23  forward with the confirmation before we even know whether

24  there's going to be a committee.

25           And so, we reached out to the Debtors to just --

1　　to request a few weeks of an extension on confirmation.  We

2　　think what is sensible is for us all to get an answer on

3　　whether there's going to be a committee.  If the committee

4　　is appointed, the committee will do its work, the committee

5　　will figure out whether this is indeed a prepack.  The

6　　committee can potentially resolve the issues that we

7　　continue to have around the votes.  And frankly, that's the

8　　appropriate role for the committee and for this one class

9　　that's impaired.

10　　　　　　If the U.S. Trustee decides that they don't want

11　　to appoint a committee, then we fully understand creditors

12　　have no choice at that point but to bear their own costs,

13　　come in here, object, defend the case if they want to, bear

14　　the burden of arguing that this isn't a prepack.

15　　　　　　But we don't think that's supposed to be the

16　　default.  We think the default is that there is supposed to

17　　be a committee.  And if that's pending, then creditors

18　　should have the benefit of finding out if there's going to

19　　be a committee and looking to the committee to do the work.

20　　　　　　So, what we've asked for is simply to adjourn

21　　confirmation by a few weeks.  We don't think that should

22　　harm the Debtors.  They're paying all their other creditors

23　　in full.  They just got a final order.  And then we can come

24　　back, and we can see where we are once we have a decision on

25　　whether there is a committee or not.

1          MR. KEENAN:  Your Honor, if I --

2          MS. LIBBY:  I think that's very squarely

3    scheduling-related.  I think we're -- you know, if the

4    Debtors think, you know, a few weeks is too long, you know,

5    we would be happy to work with them.  You know, maybe the

6    U.S. Trustee is able to make a decision about a committee on

7    a sooner timeline that's currently contemplated.

8          We just truly think it's just kind of

9    fundamentally not the right answer that a bunch of unsecured

10   creditors who are the only ones who are active in this case

11   are supposed to bear the burden for the whole class in terms

12   of figuring out whether this is an appropriate plan.

13         THE COURT:  I'm kind of thinking that should be

14   discussed and negotiated not live on the record before me in

15   the first instance and/or the subject of applications that

16   each side can think about and present with -- in a more

17   considered way and I can think about before I start talking

18   to people about it.  Does that make sense to you, Ms. Libby?

19         MS. LIBBY:  If the Debtors are willing.  We've

20   made this request, and they were pretty firm in their

21   response that they were not willing to.  And they were --

22   you know, they denied our objection extension request

23   through next Friday.  They were considering giving us an

24   extra 48 hours.  But so far, they've been very firm in their

25   response.  But we are always very happy to take this offline

1    and have further conversations with them.

2            THE COURT:  Okay.  And the other part of that is

3    that it would helpful -- be helpful to me to have a little

4    bit of a more formal teeing up of the scheduling issues

5    presented.  You're nodding, okay.  So, all right.  Let me

6    hear from Mr. Keenan.

7            MR. KEENAN:  Sure.  So, a few things.  First, the

8    Davis Polk group asked for an extension of time for one

9    week, which meant that their objection would have been filed

10   on a Friday and our reply would have been due on a Monday.

11   So that was one of the reasons for declining that request.

12           We were amenable to -- and we informed them that

13   we would be amenable to a two-day extension if we received a

14   two-day extension on the reply.  And soon after that email,

15   what I received was that that was off and now they were

16   asking for, you know, an extension like you just heard of

17   two weeks or more on the entire confirmation timeline.

18           With respect to the makeup of the group, two of

19   the largest holders in the Ad Hoc Group are Vontobel and

20   Monera.  Vontobel was intimately involved in negotiating the

21   exchange offer and the --

22           MS. LIBBY:  Your Honor, sorry.  Just to weigh in.

23   This is -- we are now getting into, like, evidentiary

24   issues, we're getting -- I mean, this is --

25           THE COURT:  Well, I don't want to get into --

1    yeah, I don't want to get into -- hang on, Ms. Libby.  Yeah,

2    I don't want to get -- stop.  I don't want to get into

3    specifics of settlement discussions or non-public

4    negotiations, at least unless I'm really clear why it's

5    okay.

6              MR. KEENAN:  (Indiscernible) --

7              THE COURT:  But yeah, go ahead, Mr. Keenan.  Just

8    keep that in mind.

9              MR. KEENAN:  And I understand that.  But, you

10   know, a statement was made that none of these folks have

11   been involved in a prepack Chapter 11.  We know that

12   (indiscernible) has been.  And we could point to cases where

13   they've been intimately involved in prepackaged cases.

14              But what I would suggest, Your Honor, is that if,

15   understanding you are on vacation next week, it's -- and

16   again, let's not forget that this exchange offer was

17   launched on March 7th, 2004.  And members of the Ad Hoc

18   Group, at least one of them, was intimately involved in

19   negotiating the terms of the exchange offer in January and

20   February.

21              The plan voting deadline was April 3rd.  When the

22   exchange offer was launched March 7th --

23              THE COURT:  Can I -- I want to jump

24   (indiscernible) -- I think this is really getting into

25   extensive argument and pre-argument of merits.  And -- which

1   I don't think is going to be --

2           MR. KEENAN:  So then, Your Honor, might I suggest

3   then that understanding you have vacation next week, the

4   confirmation hearing was set many weeks ago for June 27th.

5   What I would propose is that folks stick to the original

6   schedule, file their substantive objections to the plan if

7   they have any, and if they also believe that the plan -- the

8   order on the plan confirmation schedule should be disturbed

9   and rewritten, that they file an objection, or whatever it

10  is, a motion to reconsider that as well.  And it would be

11  heard when Your Honor is back, the last week of June.

12          THE COURT:  Well, I'm -- that's really going to

13  jam people.  I'm reachable.  And I can even do remote

14  hearings.  I can't do a full evidentiary hearing, or don't

15  want to.  But I can certainly do -- convene by Zoom and

16  figure out scheduling applications or things that really

17  need to be addressed.

18          And the -- so, I think -- look, I'm not on the fly

19  going to issue any rulings today, really.  It sounds like I

20  understand the dynamics, they're challenging.  The motion

21  asking that no committee be appointed has been pushed out.

22  Do we have a new date on it?  I've -- where -- what's the

23  status of that?

24          MR. KEENAN:  June 27th, Your Honor.

25          THE COURT:  Okay.  Which is the confirmation date.

1          MS. LIBBY:  (Indiscernible) -- could we

2    potentially move that up?  I think the relevant parties are

3    here.  If we can move that hearing forward so that we could

4    have resolution of whether there's a committee, I think a

5    lot of the other scheduling disputes would follow from that.

6          MR. KEENAN:  Your Honor, with all due respect,

7    it's the U.S. Trustee who determines whether or not a

8    committee be appointed and not the Ad Hoc Group.

9          THE COURT:  Yeah.  I understand.  And let me --

10   look, let me just ask this.  I just want to make sure I have

11   my head around the situation.

12         Today is June 13.  We have a prepack case with a

13   scheduled confirmation date, targeted confirmation hearing

14   date of June 27, which is two weeks from now, right?  And

15   plan objections are due Monday, which is June 17, with

16   replies due, what, the following Monday, is it, the 24.

17         MR. KEENAN:  Yes, Your Honor.

18         THE COURT:  And the Debtor wishes to go forward on

19   the current approved schedule.  It doesn't -- I don't -- let

20   me just say, I don't think a request for additional time

21   necessarily has to be a request for reconsideration of the

22   previous grant of the schedule.  It can simply be an

23   extension request.  I don't see why that's reconsideration,

24   which is disfavored.  I think that's within my current case

25   scheduling authority in light of all the facts and

1   circumstances.

2           I get -- I mean --

3           MR. KEENAN:  Your Honor --

4           THE COURT:  Hang on, Mr. Keenan.  I think you're

5   right that technically it is the -- not just technically, it

6   is the U.S. Trustee's responsibility to appoint or not

7   appoint a committee.  But I think that any party in interest

8   is entitled to speak to that and to your pending motion.

9           And I guess if the Debtor wants to go forward with

10  confirmation on the 27th without the consent of the ad hoc

11  noteholders, presumably one of the objections they'll be

12  facing is this is being done in a procedurally improper way,

13  and our clients want and believe there should be an

14  appointment of a committee and the way the case has been

15  structured and scheduled.  That question isn't even being

16  decided until the very same day as confirmation, at which

17  point no committee can be formed and staffed up and do the

18  work in time to be meaningfully heard on a confirmation

19  hearing happening that same day of the 27th.  So that's

20  something you'll be facing.

21          If you -- it seems to me -- I'm going to leave it

22  to the Debtors to figure out how they want to navigate that.

23  One question is -- one possibility is just to say, yeah,

24  that's the way it is, there's no need for a committee, this

25  is great, our prepack methods, voting, and procedures are

1    all sound.  And if the ad hoc noteholders who are

2    dissatisfied want to fight, they can do so with their own

3    very capable counsel, on their own dime, and there's no

4    reason to put things off.  And then I'll have to decide

5    that.

6            And so, I think that's the current lay of the

7    land.  And that is certainly how I see it.  The other option

8    being you can negotiate some sort of schedule modification,

9    which I know is unappealing and carries costs and risks and

10   everything else.

11           So, I think I need to let you have those

12   conversations.  I'm not going to just on the fly modify

13   schedules today.  But maybe my ruminations give you a little

14   food for thought as you think about how to approach this.

15   And you know, I guess I can make myself available as needed,

16   either through written submissions and written responses

17   from the Court or if necessary, convening.

18           I'll have some time -- actually, my next week is

19   relatively doable, I think.  And then the start of the

20   following week is a nationwide bankruptcy judge conference

21   that I'll be at.  And then I'm rushing back to entertain

22   your hearing on the 27th.  So, my availability is great

23   tomorrow, doable next week, actually harder Monday to

24   Wednesday of the following week.  I'm just telling you that

25   for your own planning purposes.  I think that's kind of what

1    I can do.

2            I'm either -- I'm just going to circle the room

3    and really encourage you to tell me if I'm misperceiving

4    anything or failing to take some action you think I can and

5    should take today that I'm missing.

6            I'll start with Mr. Zipes.

7            MR. ZIPES:  Your Honor, Greg Zipes with the U.S.

8    Trustee's Office.  I would appreciate -- the deadline is

9    Monday, and if -- we would normally have to check with the

10   Court.  I know you might be on vacation next week.  I would

11   just ask right now for two additional days.  And if the

12   Debtor consents to that, I'll -- we'll just take those two

13   days.  We might be able to file by Monday, but I -- I'll

14   take that while we have the Court's audience and -- so we

15   don't have --

16           THE COURT:  Okay.  Ms. Libby, what's your -- how

17   about you, on my -- both on the specific deadline question

18   and on the more general, what if anything else do you want

19   me to do or do you think I am misperceiving?

20           MS. LIBBY:  Just, I think the Debtors offered

21   this, but we'll take the same two-day deadline.  On the

22   second -- it's really more just a clarification point, which

23   is that again because the holders in my group, they're kind

24   of -- the basis of their objection is that they're not

25   supposed to bear the burden of investigating and defending

1   this case, that the nature of their objection will be more

2   procedural.  And you know, we think this is a case that

3   cries out for a committee.  We think the committee should

4   have done the work.  We don't think the confirmation should

5   go forward.

6              I just wanted to clarify that the Court, you know,

7   understands that, that you're not expecting, you know, us to

8   put on a full evidentiary hearing, you know, for

9   confirmation.  I think that's --

10             THE COURT:  No, no.  Yeah.  No, let me jump --

11   well no, let me jump in --

12             MS. LIBBY:  -- kind of the whole point of what

13   we're trying to (indiscernible) appointed for --

14             THE COURT:  No, I've got it.  I'm not putting any

15   demand on anybody to present any particular thing.  The

16   Debtor is the proponent and has the burden of establishing

17   all the things one has to establish.  And if your --

18   whatever your client's response is or objection is, is what

19   it is, and I'll evaluate it, and that's fine.

20             MS. LIBBY:  Okay, thank you.

21             THE COURT:  If it's presented in that way, that's

22   totally fine, and I'll just deal with whatever it is as you

23   choose to frame it.

24             Okay.  So, Mr. Keenan, let me circle back to you.

25             MR. ZIPES:  Your Honor --

1          THE COURT:  Oh, yeah.  Go ahead, Mr. Zipes.

2    Sorry.

3          MR. ZIPES:  I just had one other point.  And this

4    might -- so, Your Honor, the reason why we're in this

5    dilemma sort of is my office would just appoint a committee

6    right now.  We have sufficient access.  We haven't reviewed

7    everything in-depth, but you know, presumably we have enough

8    to appoint a committee.  We just do that because that's what

9    we're required to do.

10          In this particular case though, the Debtor filed a

11    motion, and the Debtor was entitled to file that motion,

12    waiving the appointment of a creditors committee.  And those

13    were under the prepack rules.  So, my agreement with the

14    Debtors is that we would put off the motion, there wouldn't

15    be any objection filed here.  Because there are -- actually

16    are some jurisdictional issues with the Court telling my

17    office that you can't file a motion -- appoint a committee.

18    But we're leaving that all aside.  And the point here is

19    that it was going to be a prepack.

20          If the Debtor would withdraw that motion, my

21    office could probably appoint a committee within the next

22    week.  And that is what it is.  It's not changing the

23    scheduling order at the moment.  But that is another option

24    here that would maybe alleviate concerns.  There would be a

25    committee in place.

1           But Your Honor, I'm just -- again, I don't have

2    any objection filed or motion filed that this Court needs to

3    consider.  I'm just trying to resolve this particular issue

4    and let the Court know the --

5           THE COURT:  Okay, I've got it.  So bottom line, if

6    there weren't a pending motion to delay the potential

7    appointment of a committee until after confirmation on the

8    basis that this is a prepack, then you would just appoint

9    the committee, and that might resolve Ms. Libby's issue.

10   Although, if you're telling me, it would take a week to get

11   them lined up, that doesn't leave them a whole lot of time

12   to work on the current schedule, right?

13          MS. LIBBY:  And just to clarify one point, Your

14   Honor.  Honestly if there ends up being a committee in this

15   case -- I'm not sure there's an ad hoc group in this case,

16   right?  I think that they're primarily interested in just

17   making sure that there is a representative, you know, for

18   the bonds here.

19          MR. KEENAN:  The representative is the ad hoc

20   group.

21          MS. LIBBY:  Exactly.  They don't want it to be

22   that way.  They want it to be a traditional case where there

23   is a statutorily appointed committee that investigates and

24   decides whether this is an appropriate case.

25          MR. KEENAN:  So, Your Honor, I think we ought to

1   resist, as you said, at the outset of this status

2   conference, not to argue the merits of the motion, including

3   the one on -- to dispense with the committee.

4           If I may, I mean, we're very happy to give the

5   Office of the U.S. Trustee, the Ad Hoc Group an extension of

6   time to object until Wednesday, June 17th, two days, if we

7   could move our reply by one day to Tuesday, June 25th.

8           And what I would also suggest, Your Honor, is that

9   the 19th be a date for, you know, any other motions to be

10  filed.  And the 27th, you know, our reply on the 25th can be

11  an omnibus reply.

12          So, for example, if the Trustee wants to object to

13  our motion to dispense with the committee, he can object by

14  the 19th.  Our filing on the 25th would be an omnibus reply.

15  And then at the hearing on the 27th, it could be a hearing

16  on the committee, it could be a hearing on confirmation, or

17  any other issue that, you know, folks want to have heard.

18  And that way, Your Honor --

19          THE COURT:  Well, let me -- can I just say, a

20  partial reply and then I'm going to circle back to the other

21  folks.

22          So, the partial reply from me is I think I will

23  just orally so order that the time of the Ad Hoc Committee

24  and the U.S. Trustee's Office to file responses, oppositions

25  or otherwise to -- I guess it's really to confirmation as

1     the subject matter is hereby extended to Wednesday of next

2     week, which is the 19th, right?

3              I'll note that's a federal holiday, but I'll make

4     the deadline not wrapped to the following business day,

5     nevertheless.  That's an actual date, notwithstanding that

6     it's a closure.  That's what's being requested, and I'll

7     approve that.

8              Do you want a time directive or are you okay with

9     any time on that date, Mr. Keenan?

10             MR. KEENAN:  I would prefer 5:00 p.m. on the 19th

11    and our reply on 5:00 p.m. the 25th.

12             THE COURT:  Yeah.  Let me say -- I got it.

13    Because the time is so tight, let's say 5:00 p.m. on the

14    19th.  And actually I -- this is an hour that might matter -

15    - I'd like the reply at 4:00 p.m. on the 25th.  Okay?  That

16    lets us really start working.  And that hour is going to

17    make a difference to our ability to do the job we'll want to

18    do.  Okay?

19             MR. KEENAN:  Sure.

20             THE COURT:  I will -- and let me just -- I'm not

21    doing my job if I don't exhort you all to try to come to

22    terms.  I understand that that may be not possible in light

23    of the competing interests present here, and I understand

24    why everybody wants what they want, and I don't see how you

25    reconcile that.  But if you can come to some agreed-upon

1    path, I think that would be great.

2            So that was just as to the dates.  And --

3            MR. ZIPES:  Your Honor, I will just note the 19th,

4    it is a federal holiday.  It's a new federal holiday, an

5    important one.  But I -- you know, people -- so, I have no

6    objection if --

7            THE COURT:  Yeah, no, I noted that.  It's a

8    holiday.  I think basically what's being -- there's a very

9    limited number of days.  I mean, I can enter deadlines on

10   weekends or whatever as necessary by the exigencies of the

11   case.  I was asked for a couple more days of work time.

12   I'll make -- and that happens to fall on Juneteenth.  And

13   so, I think the difference between that day and the next day

14   is quite material in terms of ability to litigate this

15   matter.  And so, I'll make the deadline then.  On or before

16   then of course means that the 18th is a possibility.  All

17   right?

18           MR. ZIPES:  Understood.

19           THE COURT:  Okay.  So that's -- now, I have in

20   mind that that's the date cycle, but there were some other -

21   - were there other scope and sequencing discussions we need

22   to have, or not really?  Maybe not.

23           It's clear that the Debtor wants to go forward

24   with the 27th as the date both for considering motions with

25   respect to a committee and confirmation, possibly other

1    stuff.  I haven't looked.

2            MR. KEENAN:  Yes, Your Honor.

3            THE COURT:  Right?  And so, I think if there's not

4    consent to break that out and do the committee motion first

5    and/or resolution that calls for -- that brings about the

6    simple appointment of a committee, then I need to hear both

7    of those on the 27th, I think.  Am I misapprehending

8    anything there in anyone's view?

9            MR. KEENAN:  No, I think that's right, Your Honor.

10   Because the committee motion and the confirmation haven't

11   really been briefed.  And as I said before at the outset,

12   you know, we've responded to everyone at Davis Polk's

13   requests for documents and information.  I believe we've

14   provided everything within two business days of their

15   request, and we'll continue to do that.

16           THE COURT:  Okay.  Well, now you're into a bit

17   more of lobbying and behind the scenes stuff that I don't

18   need to hear.

19           Let me just issue a disclaimer, which is Mr. Zipes

20   made reference to the Court's limited authority over

21   appointment.  And I -- so, let me just say anything I am

22   saying is not intended to be a directive of this Court or

23   any form of restriction or other requirement that the Court

24   is purporting to impose over the U.S. Trustee Office's

25   statutory responsibilities in the area of committee

1    appointment or otherwise.

2         And so, Mr. Zipes, if you conclude that -- I don't

3    know exactly what that means, but I am disavowing -- I'm

4    sorry, let me say that better.  I don't know that that

5    translates to in this circumstance.  I understand that the

6    U.S. Trustee's usual process is in prepack cases to be

7    willing to defer at least pending resolution of a motion to

8    postpone the appointment of a committee.  And if so, that's

9    your decision and I will -- you know, I'm not making any

10   compulsory utterance or anything with regard to committee

11   appointment at this time.  I'm just trying to tee up the

12   issues as I understand they're being brought to me.  Okay?

13        Is that -- that was maybe very murky of a

14   statement on my part.  But does that make sense, Mr. Zipes?

15        MR. ZIPES:  It does, Your Honor.  And I think

16   we're all just struggling -- I think all the parties are

17   struggling a little bit here on what -- procedurally what to

18   do.  And I think Mr. Keenan was clear on his positions and

19   we'll be guided (indiscernible).

20        THE COURT:  Okay.  I think that's all I can do.

21   So, I urge you and maybe beseech you to talk and try to work

22   this out.  And I mean, you're all fantastic professionals,

23   so hopefully you can -- I know you'll be professionally

24   accommodating to the extent consistent with your clients'

25   needs.  But see what you can do, and I will if nothing

1   changes just receive briefing on that schedule and see you

2   on the 27th.  Then we'll see where it goes.  Okay.

3           All right.  Anything else anyone wants to do

4   today?

5           MR. KEENAN:  No, Your Honor.

6           MR. ZIPES:  Thank you, Your Honor.

7           THE COURT:  All right.  Thank you very much.  Good

8   luck going forward.  And I'll see you soon.  Take care.

9           MS. LIBBY:  Thank you.

10          (Whereupon these proceedings were concluded)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    I N D E X

2

3                    RULINGS

4                                        Page      Line

5   Ad Hoc Group and U.S. Trustee's objections,   30        22

6   responses, or replies to the Debtors' motion

7   to dispense with the committee are due on

8   June 19th at 5:00 p.m.

9   Debtors' replies are due on June 25th at      31        14

10  4:00 p.m.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  June 14, 2024