**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **CREDIVALORES – CREDISERVICIOS S.A.,** | **Case No. 24-10837 (DSJ)** |
| Debtor. | |

### DECLARATION OF TIMOTHY GRAULICH IN SUPPORT OF THE AD HOC GROUP'S (I) MEMORANDUM OF LAW IN SUPPORT OF THE AD HOC GROUP'S MOTION UNDER BANKRUPTCY RULE 3018 TO COUNT CERTAIN BALLOTS AND (II) OMNIBUS OBJECTION TO (A) PLAN CONFIRMATION, (B) APPROVAL OF THE DISCLOSURE STATEMENT, (C) APPROVAL OF THE SOLICITATION PROCEDURES, AND (D) THE UCC MOTION

**TIMOTHY GRAULICH** hereby declares:

1.        I am an attorney licensed to practice in the State of New York.  I am a partner at Davis Polk & Wardwell LLP, counsel for the Ad Hoc Group.  I submit this affidavit (this "**Affidavit**") in support of *The Ad Hoc Group's (I) Memorandum of Law in Support of the Ad Hoc Group's Motion Under Bankruptcy Rule 3018 to Count Certain Ballots and (II) Omnibus Objection to (A) Plan Confirmation, (B) Approval of the Disclosure Statement, (C) Approval of the Solicitation Procedures, and (D) the UCC Motion* (the "**Brief**") [1] filed substantially contemporaneously herewith.

2.        Attached hereto as **Exhibit A** is a true and correct copy of what I understand to be an unpublished press release included in the Solicitation Packages, dated March 7, 2024.

3.        Attached hereto as **Exhibit B** is a true and correct copy of a Commencement Notice included in the Solicitation Packages, dated March 7, 2024.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Brief (as defined herein) or the Declarations, as applicable.

4. Attached hereto as **<u>Exhibit C</u>** is a true and correct copy of what I understand is Master Ballot MB002, containing the Misrepresented Votes, received by the Solicitation Agent.

5. Attached hereto as **<u>Exhibit D</u>** is a true and correct copy of A3E's Beneficial Holder Vote.

6. Attached hereto as **<u>Exhibit E</u>** is a true and correct copy of Absalon's Beneficial Holder Votes.

7. Attached hereto as **<u>Exhibit F</u>** is a true and correct copy of Julius Baer's Beneficial Holder Vote.

8. Attached hereto as **<u>Exhibit G</u>** is a true and correct copy of Vontobel's Beneficial Holder Votes.

9. Attached hereto as **<u>Exhibit H</u>** is a true and correct copy of what I understand is Master Ballot BR001.019–020, containing the Typo Votes, received by the Solicitation Agent.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my understanding, knowledge, information, and belief.

Dated:  June 19, 2024
        New York, New York

                                        */s/ Timothy Graulich*
                                        Timothy Graulich

**<u>Exhibit A</u>**

**March 7 "Press Release"**

**Credivalores – Crediservicios S.A. Announces Offer to Exchange Any and All of its Outstanding 8.875% Senior Notes due 2025 For Its Senior Secured Step-up Notes due 2029 Fully Secured by Loan Portfolio**

**BOGOTÁ, COLOMBIA**, March 7, 2024 – Credivalores – Crediservicios S.A. ("Credivalores" or the "Company") today announced that it has commenced an offer to Eligible Holders (as defined below) to exchange (the "Exchange Offer") any and all of its outstanding 8.875% Senior Notes due 2025 (CUSIP: 22555LAB2 / US22555LAB27; ISIN: P32086 AR4 / USP32086AR44) (the "Old Notes") for its new Senior Secured Step-up Notes due 2029 (the "New Notes"). In conjunction with the exchange offer, the Company commenced a consent solicitation (the "Consent Solicitation") with respect to certain proposed amendments to the indenture governing the Old Notes (the "Old Notes Indenture"), as discussed below.

The purpose of the Exchange Offer is to accomplish a financial restructuring to enable the Company to strengthen its capital structure, substantially improve its capitalization, and ensure its long-term growth and financial sustainability. The Exchange Offer will allow the Company to significantly improve its debt maturity profile, reduce its overall debt and lower its interest expense by reducing its coupon to 4% and stepping it up to 11% throughout the tenor of the bond. Importantly, the new Senior Secured Step-up Notes will be backed by a combination of outstanding loans owed to Credivalores in an aggregate amount of US $168 million, providing full coverage to the new bonds.

The current aggregate principal amount of the Old Notes outstanding is US$210.8 million. Under the terms of the Exchange Offer, as further described in the Exchange Offer Memorandum, the maximum aggregate principal amount of the New Notes that will be issued in connection with the Exchange Offer is US$ 165.12 million, which includes capitalized interest from (and including) the immediately preceding interest payment date to (but excluding) February 7, 2024. The New Notes will mature on February 9, 2029 and will be secured by a combination of first-lien and second lien pledges on Credivalores' loan portfolio of more than US $168 million at today's exchange rate.

Credivalores has had discussions with several holders of Old Notes who assisted in developing the proposal and who believe the transaction is fair and reasonable in light of the current market environment and given Credivalores's circumstances and consider this exchange offer a favorable outcome. Holders of a significant percentage of the aggregate principal amount of our Old Notes have already indicated that they will vote in favor of the transaction.

Concurrently with the Exchange Offer, the Company is also soliciting votes (the "Plan Solicitation") from all holders of the Old Notes to approve a prepackaged plan of reorganization in the United States (the "Plan"). In the event that the Exchange Offer is terminated, but holders of the Old Notes submit votes in favor of the Plan in an amount and number to satisfy the Threshold (as defined below), the Company intends to seek

 www.credivalores.com.co    Credivalores   (601) 3137500

confirmation of the Plan in order to accomplish the financial restructuring contemplated by the Exchange Offer. In the event that more than two-thirds in amount and more than one-half in number of the claims in such class of the votes timely cast by holders of the Old Notes (the "Threshold") represent votes to accept the Plan, it is the Company's current intention to move forward with the restructuring of the Old Notes set forth in the Exchange Offer.

Importantly, the Plan will not alter or modify any of the Company's existing obligations to its customers, employees and vendors, or any other local and international creditors or stakeholders, and the Company fully expects to continue operating its business in the ordinary course during the short amount of time that it expects the Plan to remain pending.

The Exchange Offer is being made only to Eligible Holders of the Old Notes, as described below, pursuant to the offering memorandum and consent solicitation statement dated March 7, 2024 (the "Statement") which sets forth more fully the terms and conditions of the Exchange Offer and Consent Solicitation. The Exchange Offer, Consent Solicitation and Plan Solicitation are scheduled to expire at 5:00 pm, New York City time, on April 3, 2024 (the "Expiration Date"), unless extended by Credivalores in its sole discretion.

**General**

BCP Securities, Inc. is acting as exclusive dealer manager for the Exchange Offer and for the Consent Solicitation. Epiq Corporate Restructuring, LLC has been appointed as the exchange agent and information agent for the Exchange Offer and the Consent Solicitation.

The complete terms and conditions of the Exchange Offer, Consent Solicitation and Plan Solicitation are described in the Statement, copies of which may be obtained by Eligible Holders by contacting (i) James Harper at BCP Securities, Inc. at +1 (203) 629-2186 or jharper@bcpsecurities.com or (ii) Epiq Corporate Restructuring, LLC at +1 (646) 362-6336 or email tabulation@epiqglobal.com.

For more information, visit  https://dm.epiq11.com/Credivalores

The New Notes have not been registered under the Securities Act of 1933, as amended (the "Securities Act"), or any state securities laws, and may not be offered or sold in the United States absent registration or an applicable exemption from registration requirements, and will therefore be subject to substantial restrictions on transfer.

The Exchange Offer and the Consent Solicitation are being made, and the New Notes are being offered and  issued, only to holders of the Old Notes who are Qualified Institutional Buyers ("QIBs") (within the meaning of Rule 144A under the U.S. Securities Act of 1933, as amended, (the "Securities Act")) in compliance with Rule 144A under the Securities Act or to persons other than U.S. Persons (as defined in Regulation S under the U.S. Securities Act of 1933, as amended (the "Securities Act")) outside the United States ("Eligible

 

Holders").

This announcement is for informational purposes only and does not constitute an offer to sell or a solicitation of an offer to buy the New Notes nor an offer to purchase Old Notes nor a solicitation of consents, nor shall it or any part of it, or the fact of its release, form the basis of, or be relied on or in connection with, any contract therefor. The Exchange Offer and Consent Solicitation is being made solely by means of the Statement.

**About Credivalores – Crediservicios S.A.**

Credivalores – Crediservicios S.A. is a leading non-bank financial institution in Colombia focused on providing under-banked segments of the population access to consumer credit and micro-insurance through loan products designed to minimize loan losses. The Company has a successful track record of over 20 years in consumer lending, serving low- and middle-income households.

**Forward-Looking Statements**

This document may include forward-looking statements that involve risks and uncertainties that are detailed in the Statement and from time to time in the Company's reports to its security holders. Words such as "estimate," "project," "plan," "believe," "expect," "anticipate," "intend," and similar expressions may identify such forward-looking statements. The Company wants to caution readers that any forward-looking statement in this document or made by the Company's management involves risks and uncertainties that may change based on various important factors not under the Company's control. These forward-looking statements represent the Company's judgment as of the date of this document. The Company disclaims, however, any intent or obligation to update these forward- looking statements.

**Contact**

Nathalie Valencia Barrera
ir@credivalores.com
Investor Relations Lead

  

<u>**Exhibit B**</u>

**March 7 Commencement Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CREDIVALORES – CREDISERVICIOS S.A.,[1] | Case No. 24-_____ (__) |
| Debtor. | |
| _____/ | |

### NOTICE OF COMMENCEMENT OF PREPACKAGED CHAPTER 11 CASE AND HEARINGS ON FIRST DAY MOTIONS AND CONFIRMATION OF THE PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF CREDIVALORES – CREDISERVICIOS S.A.

**PLEASE TAKE NOTICE** that on or about March 7, 2024, Credivalores – Crediservicios S.A. caused Epiq Corporate Restructuring, LLC to distribute packages ("**Solicitation Packages**") to (i) launch an exchange offer (the "**Exchange Offer**") to exchange certain outstanding 8.875% Senior Notes due 2025 for newly issued Senior Secured Step-up Notes due 2029, and (ii) solicit votes with respect to a Plan (defined below). The Solicitation Packages include, among other things, that certain disclosure statement (as may be altered, amended, modified, or supplemented from time to time, the "**Disclosure Statement**") and the prepackaged plan of reorganization of Credivalores – Crediservicios S.A. (as it may be altered, amended, modified, or supplemented from time to time, the "**Plan**") (collectively, the "**Plan Pleadings**").

**PLEASE TAKE FURTHER NOTICE** that Holders as of **March 7, 2024** (the "**Voting Record Date**") that received the Solicitation Packages also received appropriate voting ballots and were directed in the Disclosure Statement and voting ballots to submit a vote to accept or reject the Plan no later than **5:00 p.m. (Prevailing Eastern / New York City time) on April 3, 2024** (the "**Voting Deadline**").

**PLEASE TAKE FURTHER NOTICE** that on or about **April 5, 2024** (the "**Petition**

---

[1] The address for Credivalores – Crediservicios S.A. is Carrera 7 #76-35, 7th Floor, Bogota Colombia.

Date"), Credivalores – Crediservicios S.A., as debtor and debtor-in-possession (the "**Debtor**"), intends to file a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), to obtain approval of the Plan pursuant to the *Amended Procedural Guidelines for Prepackaged Chapter 11 Cases in the United States Bankruptcy Court for the Southern District of New York* dated February 1, 2024, which may be found at https://www.nysb.uscourts.gov/sites/default/files/m621.pdf.

 **PLEASE TAKE FURTHER NOTICE** that the Debtor shall request that the Bankruptcy Court hold a hearing (the "**First Day Hearing**") to consider certain first day motions and related pleadings (the "**First Day Pleadings**") on or about <u>**April 8, 2024**</u>, with such hearing to be held at the United States Bankruptcy Court for the Southern District of New York in accordance with the Bankruptcy Court's schedule. The Debtor shall request that the Bankruptcy Court consider the relief requested in the First Day Pleadings on a final basis, in certain cases, or on an interim basis pending a final hearing to be scheduled at a later date. The Debtor shall file an agenda in advance of the First Day Hearing, which shall include notice of the date, time and location of the First Day Hearing.

 **PLEASE TAKE FURTHER NOTICE** that if you do not want the Bankruptcy Court to grant the relief requested in the First Day Pleadings, or if you want the Bankruptcy Court to consider your views on the First Day Pleadings, then ***you or your attorney must attend the First Day Hearing***. If you or your attorney do not take these steps, then the Bankruptcy Court may decide that you do not oppose the relief sought in the First Day Pleadings and may enter orders granting the relief requested therein.

 **PLEASE TAKE FURTHER NOTICE** that on the Petition Date, in addition to the chapter

11 petition and the First Day Pleadings, the Debtor shall file pleadings in support of approval of the Disclosure Statement and confirmation of the Plan.

PLEASE TAKE FURTHER NOTICE that a hearing (the "**Combined Hearing**") to consider the adequacy of the Disclosure Statement, any objections to the Disclosure Statement, confirmation of the Plan, any objections thereto, and any other matter that may properly come before the Bankruptcy Court shall be held on or about **May 15, 2024**. The Combined Hearing may be continued from time to time by announcing such continuance in open court and the Plan may be further modified, if necessary, subject to section 1127 of the Bankruptcy Code prior to, during, or as a result of the Combined Hearing, without further notice to parties in interest.

PLEASE TAKE FURTHER NOTICE that as soon as practicable after the Petition Date, the Debtor shall publish notice (the "**Combined Hearing Notice**") of the Combined Hearing in each of *The Wall Street Journal* and the *Financial Times International Edition* and (ii) serve the Combined Hearing Notice on impaired parties and parties in interest. The Combined Hearing Notice shall contain a summary of the Plan, including a copy of all releases, injunctions, and exculpation provisions, and the proposed confirmation schedule. All case information is also expected to be made available at https://dm.epiq11.com/Credivalores free of charge.

PLEASE TAKE FURTHER NOTICE that the deadline to object to the Plan or Disclosure Statement shall be on or about **May 6, 2024 at 4:30 p.m. (Prevailing Eastern / New York City Time)** (the "**Objection Deadline**"), as set forth in the Combined Hearing Notice. Any objections (each, an "**Objection**") to the Disclosure Statement and the Plan, must: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the Southern District of New York; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such

entity; and (d) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objection. Unless an Objection is timely served and filed, it may <u>not</u> be considered by the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that the Debtor is seeking relief from the Bankruptcy Court to direct the U.S. Trustee not to convene a meeting of creditors pursuant to section 341(a) of the Bankruptcy Code (the "**Section 341 Meeting**"). If the Section 341 Meeting is required to be convened, the Debtor will file, serve on the parties on whom it served this notice, and post on the Debtor's restructuring website, not less than seven (7) days before the date scheduled for such meeting, a notice of the date, time, and place of the Section 341 Meeting.

**PLEASE TAKE FURTHER NOTICE** that *<u>your rights may be affected by the Plan and other actions in the bankruptcy case</u>*. **You should carefully read the First Day Pleadings and the Plan Pleadings relating to your potential claim in the Debtor's restructuring and, if applicable, discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult with one in connection with the Debtor's chapter 11 case).**

Dated: March 7, 2024

**BAKER & McKENZIE LLP**
452 Fifth Avenue
New York, NY 10018
Telephone: 212-626-4875
Facsimile: 212-310-1695

-and-

1111 Brickell Avenue
Suite 1000
Miami, FL 33131
Telephone: 305-789-8900
Facsimile: 305-789-8953

*Proposed Counsel for the Debtor and Debtor-in-Possession*

<u>**Exhibit C**</u>

**Master Ballot MB002**

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CREDIVALORES – CREDISERVICIOS S.A.,[1] | Case No. 24-_____ (__) |
|       Debtor. | |
| _____/ | |

### MASTER BALLOT FOR ACCEPTING OR REJECTING THE PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION FOR CREDIVALORES – CREDISERVICIOS S.A.

### CLASS A: MASTER BALLOT FOR OLD NOTES CLAIMS

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT CAREFULLY <u>BEFORE</u> COMPLETING THIS BALLOT.

**THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE CLAIMS AGENT PRIOR TO 5:00 P.M. PREVAILING EASTERN TIME (NEW YORK CITY TIME) ON April 3, 2024 (THE "VOTING DEADLINE").**

The above-captioned debtor and debtor in possession (the "**Debtor**") intends to file a chapter 11 case in the above-captioned bankruptcy court (the "**Court**") and is soliciting votes with respect to the proposed *Debtor's Prepackaged Chapter 11 Plan* (as amended, supplemented or otherwise modified from time to time, the "**Plan**") and the *Disclosure Statement for the Plan* (as amended, supplemented, or otherwise modified from time to time, the "**Disclosure Statement**") pursuant to sections 1125 and 1126(b) of title 11 of the United States Code (the "**Bankruptcy Code**").[2]

---

[1] The address for Credivalores – Crediservicios S.A. is Carrera 7 #76-35, 7th Floor, Bogotá, Colombia.

[2] Capitalized terms otherwise undefined herein have the meanings ascribed to them in the Disclosure Statement and Plan, as applicable.

You are receiving this master ballot (the "**Master Ballot**") because records indicate you are the Nominee (as defined below) of Beneficial Holders[3] of the Old Notes Claims as of March 7, 2024 (the "**Voting Record Date**").

This Master Ballot is to be used by you as a broker, bank, common representative or other nominee, as the agent of a broker, bank, common representative or other nominee (each of the foregoing, a "**Nominee**"), or as the proxy holder of a Nominee for Beneficial Holders of Old Notes Claims, to transmit to the Claims Agent (as defined below) the votes of such Beneficial Holders in respect of their Claims to accept or reject the Plan. This Master Ballot may not be used for any purpose other than for submitting votes, certifying one's "Holder Status", and decisions to opt in to the Third-Party Release (as defined below) on behalf of their Beneficial Holders with respect to the Plan.

The Plan can be confirmed by the Court and thereby made binding on the Beneficial Holders, whether or not they vote, if the Plan (i) is accepted by the Holders of at least two-thirds in amount and more than one-half in number of the claims in each impaired Class of claims who vote on the Plan and (ii) otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Court nonetheless may confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

The Beneficial Holders' rights are described in the Disclosure Statement, which is accessible from the Debtor's restructuring website at https://dm.epiq11.com/Credivalores (the "**Restructuring Website**"), along with copies of the Plan and certain other materials. If you desire paper copies, or if you need to obtain additional solicitation packages, you may (a) contact the Debtor's claims and balloting agent (the "**Claims Agent**"), Epiq Corporate Restructuring LLC ("**Epiq**"), at (646) 362-6336, or by email at tabulation@epiqglobal.com with a reference to "Credivalores Voting" in the subject line, or (b) once the Chapter 11 Case has been filed, you may download such documents (excluding ballots) from the Debtor's Restructuring Website, free of charge. Copies of these documents may also be obtained for a fee via PACER (account required) at https://www.nysb.uscourts.gov/. Please be advised that the Claims Agent is not permitted to provide legal advice.

This Master Ballot may not be used for any purpose other than conveying the vote and decision regarding the opt in to the releases on behalf of your Beneficial Holder clients. If you believe that you have received this Master Ballot in error, or if you believe that you have received the wrong Master Ballot, please contact the Claims Agent <u>immediately</u> at the e-mail address or telephone number set forth above.

If the Plan is confirmed by the Court, it will be binding on Class A claimants whether or not they vote to accept or vote to reject the Plan.

In addition to this Master Ballot, you should have received copies of (a) the Disclosure Statement and attached exhibits, (b) the Plan, and (c) a pre-addressed, pre-paid return envelope (the "**Solicitation Package**"). You are required to distribute the Solicitation Package to your Beneficial Holder clients immediately to enable each such Beneficial Holder to cast their votes and decisions to opt in to the releases (or not) in a timely fashion. Any vote delivered to you by a Beneficial Holder shall not be counted for purposes of accepting or rejecting the Plan until you complete, sign and return this Master Ballot to the Claims Agent, **so that it is received by the Voting Deadline, as indicated above**.

---

[3] A "**Beneficial Holder**" means an entity that beneficially owns the Old Notes whose claims have not been satisfied prior to the Voting Record Date pursuant to Court order or otherwise, as reflected in the records maintained by the Nominee.

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

PLEASE COMPLETE ITEMS 1 THROUGH 5. IF THIS MASTER BALLOT IS NOT SIGNED ON THE APPROPRIATE LINES BELOW, THIS MASTER BALLOT **WILL NOT** BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1. Certification of Authority to Vote.** The undersigned certifies that as of the Voting Record Date, the undersigned (please check appropriate box):

☐X Is a broker, bank, or other nominee for the Beneficial Holders in the principal amount of the Old Notes Claims listed in Item 2 below or

☐ Is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a Nominee for the Beneficial Holders in the principal amount of the Old Notes Claims listed in Item 2 below or

☐ Has been granted a proxy (an original of which is attached hereto) from a Nominee for the Beneficial Holders (or the Beneficial Holders itself/themselves) in the principal amount of the Old Notes Claims listed in Item 2 below

and accordingly, has full power and authority to vote to accept or reject the Plan, on behalf of the Beneficial Holders of the Old Notes Claims described in Item 2.

**Item 2. Holder Status, Votes on the Plan, and Release Election, from Beneficial Holder Ballots.** The undersigned transmits the following votes of beneficial owners in respect of the Old Notes and certifies that the information provided below (including any information provided on additional sheets attached hereto) is a true and accurate schedule of the Beneficial Holders of the Old Notes Claims, as identified by their respective account numbers, that have (i) delivered a duly completed Beneficial Holder ballot (a "**Beneficial Holder Ballot**") to the undersigned voting to accept or reject the Plan or (ii) conveyed their vote on the Plan and decision to opt in to the releases (or not) via email, telephone, internet application, facsimile, voter information form, or other customary means of conveying such information.

Indicate in the appropriate column below the aggregate principal amount of the Old Notes Claims that voted for each account as well as the "Holder Status" of each Beneficial Holder as indicated on the Beneficial Holder Ballot, or attach such information to this Master Ballot in the form of the following table.

Please note that each Beneficial Holder must vote all such Beneficial Holder's Old Notes Claims in Class A to accept or reject the Plan and may not split any vote. Any Beneficial Holder Ballot received from a Beneficial Holder that does not indicate an acceptance or rejection of the Plan or indicates both an acceptance and a rejection of the Plan will not be counted.

(Please complete the information requested below. Attach additional sheets if necessary.)

**USE A SEPARATE MASTER BALLOT FOR EACH CUSIP; INDICATE CUSIP BELOW:**

☐ **22555L AB2 (ISIN US22555LAB27)**      ☒ **P32086 AR4 (ISIN USP32086AR44)**

| FROM BENEFICIAL BALLOTS | | | | | |
|---|---|---|---|---|---|
| | | **ITEM 2** **HOLDER STATUS** | | **ITEM 3** **VOTE ON PLAN** | **ITEM 4** **RELEASE** |
| **BENEFICIAL HOLDER NAME OR ACCOUNT NUMBER** | **PRINCIPAL AMOUNT HELD AS OF VOTING RECORD DATE** | **QUALIFIED HOLDER** | | **OLD NOTES CLAIMS VOTE ON THE PLAN** | RELEASE OPT IN |
| | | **IS A QUALIFIED HOLDER** | **IS A NON-QUALIFIED HOLDER** | To **ACCEPT** the Plan | To **REJECT** the Plan | PLACE AN "X" IF THE BOX IN ITEM 4 WAS CHECKED |
| 1.SEE | $ 16,814,000 | ☒ | ☐ | ☒ | ☐ | ☐ |
| 2.ATTACHED | $ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 3. | $ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 4. | $ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 5. | $ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **TOTAL** | | | | | | |

**Item 3. Important Information Regarding the Release by Certain Holders of Claims.**

**THE PLAN CONTAINS RELEASES. PARTIES SHOULD BE AWARE THAT, IF THE PLAN IS CONFIRMED and if the Effective Date occurs, the Released Parties, as defined in <u>Section 1.1.73</u> of the Plan and as reproduced below, will be receiving releases and certain parties will be giving releases and be bound by injunctions as set forth in <u>Article VIII</u> of the Plan, and with respect to the releases described in <u>Article VIII</u> of the Plan and reproduced below, they are automatically deemed to have consented to the release provisions of the Plan, if either vote to accept the Plan. For the avoidance of doubt, a Holder of a Claim or Interest that votes to accept the Plan shall be automatically deemed to have given the releases irrespective of whether such Holder elects to opt in to the Third-Party Release.**

**IF A BENEFICIAL HOLDER VOTES TO ACCEPT THE PLAN, IT SHALL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE.**

**IF A BENEFICIAL HOLDER VOTES TO REJECT THE PLAN, THE BENEFICIAL HOLDER MAY STILL CONSENT TO GIVE THE THIRD-PARTY RELEASE SET FORTH IN <u>ARTICLE VIII</u> OF THE PLAN BY ELECTING THE OPT IN OPTION ON THE BENEFICIAL HOLDER BALLOT.**

**IF A BENEFICIAL HOLDER EXECUTES AND RETURNS THE BENEFICIAL HOLDER BALLOT WITHOUT A VOTE TO ACCEPT OR REJECT THE PLAN, THE BENEFICIAL HOLDER MAY STILL CONSENT TO GIVE THE THIRD-PARTY RELEASE SET FORTH IN <u>ARTICLE VIII</u> OF THE PLAN BY ELECTING THE OPT IN OPTION ON THE BENEFICIAL HOLDER BALLOT.**

4

**THE BENEFICIAL HOLDER'S DECISION TO OPT IN (OR NOT OPT IN) TO GIVING THE THIRD-PARTY RELEASE SET FORTH IN ARTICLE VIII OF THE PLAN WILL NOT AFFECT ANY DISTRIBUTION THE BENEFICIAL HOLDER MAY RECEIVE IF THE PLAN IS ULTIMATELY CONFIRMED.**

To provide additional information regarding the Third-Party Release, the following Sections of the Plan have been copied immediately below: Section 1.1.38 (Exculpated Claim); Section 1.1.39 (Exculpated Party); Section 1.1.73 (Released Party); Section 1.1.74 (Releasing Party); Section 8.2 (Discharge of Claims and Termination of Interests); Section 8.3 (Releases by the Debtor); Section 8.4 (Releases by the Releasing Parties); Section 8.5 (Exculpation); and Section 8.6 (Injunction). To the extent of any discrepancy between the following and the corresponding sections in the Plan, including any modifications or amendments thereto, the sections in the Plan control. Please carefully review the following.

**Relevant Definitions:**

"**Exculpated Claim**" means any Claim related to any act or omission in connection with, relating to, or arising out of the Debtor's in-court or out-of-court efforts to negotiate, enter into or implement the Chapter 11 Case, the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with or pursuant to the Disclosure Statement or the Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation, the administration and implementation of the Plan, or the distribution of property under the Plan.

"**Exculpated Party**" means each of the following in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; (c) the Trustee; (d) the Holders of Interests; and (e) with respect to each of the foregoing Entities in clauses (a) through (d) such Entity's predecessors, successors and assigns and current and former Affiliates, subsidiaries, officers, directors, members, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals.

"**Released Party**" means each of the following: (a) the Debtor; (b) the Trustee; (c) the Holders of Interests; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's successors and assigns, and current and former Affiliates, subsidiaries, officers, directors, members, stockholders, partners, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such.

"**Releasing Party**" means each of the following: (a) the Holders of Impaired Claims or Interests that (i) affirmatively vote to accept the Plan or (ii) abstain from voting on the Plan; (b) to the fullest extent permissible under applicable law, the Holders of Unimpaired Claims or Interests; (c) the Trustee; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's successors and assigns, and current and former Affiliates, subsidiaries, officers, directors, members, stockholders, partners, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such.

**Relevant Provisions:**

Section 8.2 of the Plan provides for the discharge of Claims and termination of Interests (the "**Discharge**"):

**Except as otherwise provided for herein and effective as of the Effective Date: (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor or any of its assets, property, or Estate; (b) the Plan shall bind all Holders of Claims and Interests,**

notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtor's liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtor, the Debtor's Estate, the Reorganized Debtor, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

Section 8.3 of the Plan provides for the Debtor's release of the Released Parties (the "**Debtor Release**"):

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise expressly provided herein, for good and valuable consideration, as of the Effective Date, to the extent permitted by applicable laws, the Released Parties are conclusively, absolutely, unconditionally, irrevocably, and forever deemed released and discharged by the Debtor, the Reorganized Debtor, and the Debtor's Estate from any and all actions, Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, asserted or that could possibly have been asserted on behalf of the Debtor, that the Debtor, Reorganized Debtor, or Debtor's Estate, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in, or under, in whole or in part, the Debtor, the Chapter 11 Case, the Old Notes, the Old Notes Indenture, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests prior to or during the Chapter 11 Case, the negotiation, formulation, solicitation, or preparation of the Disclosure Statement, the Plan, the Plan Supplement, or related agreements, instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, however, that the foregoing provisions of this Section 8.3 shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction; provided further that nothing in this Section 8.3 shall release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement, or otherwise given effect under, the Plan, including the New Notes and any other agreement or document related thereto or entered into in connection therewith, as applicable.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this Section 8.3, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by this Section 8.3; (c) in the best interests of the Debtor and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to the Debtor asserting any Claim or Cause of Action released by this Section 8.3.

Section 8.4 of the Plan provides for the Releases by the Releasing Parties (the "**Third-Party Release**"):

**As of the Effective Date, to the extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtor, the Reorganized Debtor, the Estate, the Released Parties and each such Entity's successors and assigns, current and former affiliates, subsidiaries, officers, directors, members, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such, and only if such Persons occupied any such positions at any time on or after the Petition Date, from any and all Claims, Interests, obligations, rights, liabilities, actions, causes of action, choses in action, suits, debts, demands, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including all claims and actions against any Entities under the Bankruptcy Code) whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity asserted or that could possibly have been asserted, or would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the Old Notes, the Old Notes Indenture, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Releasing Party, the restructuring of Claims and Interests prior to or during the Chapter 11 Case, the negotiation, formulation, solicitation, or preparation of the Disclosure Statement, the Plan, the Plan Supplement, or related agreements, instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; _provided, however_, that the foregoing provisions of this _Section 8.4_ shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction; _provided further_ that nothing in this _Section 8.4_ shall release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement, or otherwise given effect under, the Plan.**

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this _Section 8.4_, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) important to the Plan; (b) in exchange for the good and valuable consideration provided by the Debtor, the Reorganized Debtor, the Estate and the Released Parties; (c) a good faith settlement and compromise of the Claims released by this _Section 8.4_; (d) in the best interests of the Debtor and all Holders of Claims and Interests; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; and (g) a bar to any Entity granting a release under this _Section 8.4_ from asserting any Claim or Cause of Action released by this _Section 8.4_.

Section 8.5 of the Plan provides for the exculpation of Exculpated Parties (the "**Exculpation**"):

**No Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim; <u>provided</u>, <u>however</u>, that the foregoing "exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted fraud, gross negligence, or willful misconduct; <u>provided</u>, <u>further</u>, that in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to, or in connection with, the Plan. The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of acceptances and rejections of the Plan and the making of distributions pursuant to the Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable, law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

Section 8.6 of the Plan provides for a permanent injunction with respect to actions against the Released Parties and the Exculpated Parties (the "**Injunction**"):

**Except as otherwise provided herein or for obligations issued pursuant hereto, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to <u>Section 8.3</u> or <u>Section 8.4</u>, discharged pursuant to <u>Section 8.2</u>, or are subject to exculpation pursuant to <u>Section 8.5</u> are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, exculpated, or settled pursuant to the Plan.**

<u>**Item 4. Additional Ballots Submitted by Beneficial Holders.**</u> The undersigned certifies that the information provided below (including any information on additional sheets attached hereto) is a true and accurate schedule on which the undersigned has transcribed the information, if any, provided in Item 5 of each vote received from a Beneficial Holder.

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

(Please complete the information requested below. Attach additional sheets if necessary.)

| Your Customer Account Number for Each Beneficial Holder Who Completed Item 5 of the Beneficial Holder Ballot | TRANSCRIBE FROM ITEM 5 OF THE BENEFICIAL HOLDER BALLOTS | | | |
| --- | --- | --- | --- | --- |
| | Account Number of Other Claims Voted | Name of Record Holder or Nominee | Principal Amount of Other Claims Voted | CUSIP of Other Claims Voted |
| 1.SPREADSHEET | ATTACHED | | $ | |
| 2. | | | $ | |
| 3. | | | $ | |
| 4. | | | $ | |
| 5. | | | $ | |

**Item 5. Additional Certifications.** By signing this Master Ballot, the undersigned certifies to the Court and the Debtor:

a) that the undersigned has received a copy of the Solicitation Package and has delivered the same to the Beneficial Holders listed in Item 2 of this Master Ballot;

b) that the undersigned has received from each Beneficial Holder listed in Item 2 of this Master Ballot (i) a completed and signed Beneficial Holder Ballot or (ii) an e-mail, recorded telephone call, internet transmission, facsimile, voter information card, or other customary means of communication conveying a vote and decision to opt in to the releases (or not);

c) that the undersigned is the Nominee (or agent of the Nominee) of the Old Notes Claim being voted, the Holder of the Old Notes Claims being voted listed in Item 2 above, or has been authorized by each such Beneficial Holder to vote on the Plan;

d) that the undersigned has properly disclosed for each Beneficial Holder who submitted Ballots or votes and opt in decisions via other customary means: (i) the respective amounts of the Old Notes Claim owned by each Beneficial Holder; (ii) each Beneficial Holder's respective vote concerning the Plan; (iii) for each Beneficial Holder that has opted in to the Third-Party Release, such Beneficial Holder's election; (iv) for each Beneficial Holder, the "Qualified Holder" or "Non-Qualified Holder" status of such Beneficial Holder; and (v) the customer account or other identification number for each such Beneficial Holder; and

e) that each such Beneficial Holder has certified to the undersigned that it is eligible to vote on the Plan; and it will maintain the Beneficial Holder Ballots and evidence of separate transactions returned by Beneficial Holders including e-mails, recorded telephone conversations, facsimile transmissions, internet communications, voter information forms, or other official communications (whether properly completed or defective) for at least one year after the Effective Date and disclose all such information to the Court or the Debtor, as the case may be, if requested.

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

| | |
|---|---|
| Name of Nominee and/or DTC Participant: | CITIBANK NA |
| | (Print or Type) |
| DTC Participant Number (if applicable): | 908 cede & co |
| Signature: | ███████████ |
| Name of Signatory: | ███████████ |
| Title: | Senior Asset Analyst AVP |
| Address: | 3800 CITIGROUP CENTER DRIVE TAMPA FL 33610 |
| Telephone Number: | ███████████ |
| Email | ███████████ |
| Date Completed: | 4/3/2024 |

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

**PLEASE COMPLETE, SIGN, AND DATE THIS MASTER BALLOT AND RETURN IT PROMPTLY AND NO LATER THAN THE VOTING DEADLINE OF April 3, 2024 AT 5:00 P.M. (PREVAILING EASTERN TIME / NEW YORK CITY TIME) TO:**

---

**If by First Class Mail, Courier or Overnight Mail:**

Credivalores - Master Ballot Processing
c/o Epiq Corporate Restructuring LLC
10300 SW Allen Boulevard
Beaverton, OR 97005

---

**If via electronic mail (preferred method):**

tabulation@epiqglobal.com with a reference
to "Credivalores Master Ballot Processing" in the subject line.

**IMPORTANT NOTE: For Master Ballots submitted via electronic mail, the received date and time in the Claims Agent's inbox will be used as a timestamp for receipt.**

**Nominees that cast a Master Ballot via electronic mail should NOT also submit a paper Master Ballot.**

---

CUSIP P32086 AR4 (ISIN USP32086AR44)

CUSIP 22555L AB2 (ISIN US22555LAB27)

> **IF THE CLAIMS AGENT DOES NOT <u>ACTUALLY RECEIVE</u> THIS MASTER BALLOT PRIOR TO THE VOTING DEADLINE, AND IF THE VOTING DEADLINE IS NOT EXTENDED, THE VOTES OR ELECTIONS TRANSMITTED HEREBY MAY BE COUNTED ONLY IN THE DISCRETION OF THE DEBTOR.**

**IF YOU HAVE ANY QUESTIONS CONCERNING THIS MASTER BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AGENT BY TELEPHONE AT (646) 362-6336, OR EMAIL TO TABULATION@EPIQGLOBAL.COM WITH A REFERENCE TO "CREDIVALORES VOTING" IN THE SUBJECT LINE. THE CLAIMS AGENT IS NOT AUTHORIZED TO PROVIDE, AND WILL NOT PROVIDE, LEGAL OR FINANCIAL ADVICE.**

> **THE DEBTOR IS SEEKING CONFIRMATION OF THE PLAN AS PART OF A PREPACKAGED CHAPTER 11 CASE, AS DESCRIBED IN THE PREPACKAGED CHAPTER 11 CASE GUIDELINES OF THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (LOCAL RULE 3018-2). THE ACCEPTANCES AND REJECTIONS OF THE PLAN SET FORTH HEREIN THEREFORE WILL BE SUBJECT TO 11 U.S.C. § 1126(b) AND SUCH GUIDELINES. HOWEVER, IT IS IMPERATIVE THAT ALL DEADLINES SET FORTH HEREIN BE OBSERVED PENDING ANY FURTHER DETERMINATIONS BY THE COURT PRESIDING OVER SUCH CASE.**

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

## VOTING INSTRUCTIONS

1. The Debtor is soliciting votes of Holders of Claims with respect to the Plan attached as **Annex B** to the Disclosure Statement. Capitalized terms used in the Master Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Plan. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS MASTER BALLOT**.

2. The Court may confirm the Plan and thereby bind the Beneficial Holders to the terms of the Plan, if it is accepted by the Holders of two-thirds in amount and more than one-half in number of Claims in each Impaired Class of Claims entitled to vote on the Plan. In the event the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if it finds that the Plan accords fair and equitable treatment to the Class or Classes that have rejected the Plan and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3. **Distribution of Solicitation Packages and Beneficial Holder Ballots**. You should immediately distribute the Solicitation Package to all Beneficial Holders of Old Notes Claims as of the Voting Record Date and take any action required to enable each such Beneficial Holders to vote timely the Claims that it holds. Any vote delivered to you by a Beneficial Holder shall not be counted for purposes of accepting or rejecting the Plan until you complete, sign and return this Master Ballot to the Claims Agent, so that it is received by the Voting Deadline.

4. **Soliciting, Receiving and Compiling Votes**. You should solicit votes from your Beneficial Holder clients via the (a) delivery of duly completed Beneficial Holder Ballots or (b) conveyance of their vote on the Plan and decision to opt in to the releases (or not) via e-mail, telephone, internet application, facsimile, voter information form, or other customary means of conveying such information.

If you are transmitting the votes of any Beneficial Holder other than yourself, you may either:

a) "Pre-validate" the individual Beneficial Holder Ballot contained in the Solicitation Package and then forward the Solicitation Package to the Beneficial Holder of the Claim for voting no later than five (5) Business Days after the receipt by such Nominee of the Solicitation Package, with the Beneficial Holder then returning the individual Beneficial Holder Ballot directly to the Claims Agent in the return envelope to be provided in the Solicitation Package. A Nominee "pre-validates" a Beneficial Holder's Ballot by signing the Beneficial Holder Ballot and including its DTC participant number; indicating the account number of the Beneficial Holder and the principal amount of Claims held by the Nominee for such Beneficial Holder accompanied by a medallion guarantee stamp certifying the Beneficial Holder's position as of the Voting Record Date; and then forwarding the Beneficial Holder Ballot together with the Solicitation Package to the Beneficial Holder. The Beneficial Holder then completes the remaining information requested on the Beneficial Holder Ballot and returns the Beneficial Holder Ballot directly to the Claims Agent. A list of the Beneficial Holders to whom "pre-validated" Beneficial Holder Ballots were delivered should be maintained by Nominees for inspection for at least one (1) year from the Effective Date; **or**

b) No later than five (5) Business Days after receipt by such Nominee of the Solicitation Package, forward the Solicitation Package to the Beneficial Holder of the Claim for voting along with a return envelope provided by and addressed to the Nominee, with the Beneficial Holder then returning the individual Beneficial Holder Ballot to the Nominee. Additionally, a Nominee may collect votes through a voter information form, e-mail, or other customary method of collecting

votes from a Beneficial Holder, the Beneficial Holder shall follow the Nominee's instruction for completing and submitting its vote to the Nominee. The Nominee will tabulate the votes of its respective owners on a Master Ballot that will be provided to the Nominee separately by the Claims Agent, in accordance with any instructions set forth in the instructions to the Master Ballot, and then return the Master Ballot to the Claims Agent. The Nominee should advise the Beneficial Holder to return their individual Beneficial Holder Ballots (or otherwise transmit their vote) to the Nominee by a date calculated by the Nominee to allow it to prepare and return the Master Ballot to the Claims Agent so that the Master Ballot is actually received by the Claims Agent on or before the Voting Deadline.

5. With regard to any Ballots returned to you by a Beneficial Holder, you must: (a) compile and validate the votes and other relevant information of each such Beneficial Holder on the Master Ballot using the customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Ballot; (c) transmit the Master Ballot to the Claims Agent; and (d) retain the Beneficial Holder Ballots in your files for a period of one (1) year after the Effective Date. You may be ordered to produce the Beneficial Holder Ballots to the Debtor or the Court.

6. Multiple Master Ballots may be completed and delivered to the Claims Agent. Votes reflected by multiple Master Ballots will be counted except to the extent that they are duplicative of votes cast on other Master Ballots. If two or more Master Ballots are inconsistent, the latest-received properly executed valid Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior Master Ballot. If more than one Master Ballot is submitted and the later Master Ballot(s) supplement(s) rather than supersede(s) the earlier Master Ballot(s), please mark the subsequent Master Ballot(s) with the words "Additional Vote" or such other language as you customarily use to indicate an additional vote that is not meant to revoke an earlier vote.

7. Each Beneficial Holder must vote its entire Old Notes Claim in Class A either to accept or reject the Plan. A Beneficial Holder may not split its votes.

8. If a Beneficial Holder casts more than one Beneficial Holder Ballot voting the same Claim prior to the deadline set by each Nominee, the last valid vote received (as determined by you) should be deemed to reflect such Beneficial Holder's intent to either accept or reject the Plan.

9. The attached Master Ballot is not a letter of transmittal and may not be used for any purpose other than to transmit votes to accept or reject the Plan and elect to opt in to the Third-Party Release. ***Holders of Old Notes should not surrender certificates (if any) representing their Old Notes at this time, and neither the Debtor nor the Claims Agent will accept delivery of any such certificates transmitted together with a Master Ballot.***

10. This Master Ballot does not constitute and shall not be deemed a proof of claim or interest or an assertion of a Claim or Interest.

11. **The Master Ballot must be returned to the Claims Agent so as to be actually received by the Claims Agent on or before the Voting Deadline. The Voting Deadline is <u>April 3, 2024, at 5:00 p.m., prevailing Eastern Time (New York City Time)</u>.**

12. Please be sure to sign and date your Master Ballot. You should indicate that you are signing a Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity and, if required or requested

by the Claims Agent, must submit proper evidence to the requesting party to so act on behalf of such Beneficial Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Ballot.

13. If a Master Ballot is received after the Voting Deadline, it may be counted only in the discretion of the Debtor. **Additionally, the following Master Ballots will <u>not</u> be counted**:

   a) any Master Ballot that is illegible or contains insufficient information to permit the identification of the Nominee;

   b) any unsigned Master Ballot;

   c) any Master Ballot cast by an entity that (i) does not have Beneficial Holder clients that are entitled to vote to accept or reject the Plan or (ii) is not otherwise entitled to cast a Master Ballot pursuant to the procedures described in any order of the Court;

   d) any Master Ballot sent to any party other than the Claims Agent (e.g., the Debtor, any official committee, if any, or the Court);

   e) any inconsistent or duplicate Master Ballots that are simultaneously cast with respect to the same Old Notes Claim;

   f) any Master Ballot transmitted to the Claims Agent by facsimile;

   g) any Master Ballot superseded by another timely valid Master Ballot;

   h) any Master Ballot cast on a form other than the one sent by the Claims Agent;

   i) any votes on a Master Ballot submitted by a Beneficial Holder who voted other Old Notes Claims in the same Class differently; or

   j) any Beneficial Holder vote on a Master Ballot not marked to accept or reject the Plan; or

   k) any Beneficial Holder marked both to accept and reject the Plan.

14. The following additional rules shall apply to Master Ballots:

   a) Votes cast by Beneficial Holders through a Nominee will be applied against the positions held by such entities holding the Class A Old Notes Claims as of the Voting Record Date, as evidenced by the record and depository listings;

   b) Votes submitted by a Nominee, whether pursuant to a Master Ballot, or pre-validated Beneficial Holder Ballot provided by the Nominee to the Beneficial Holder, will not be counted in excess of the record principal amount of the Class A Old Notes Claims held by such Nominee;

   c) To the extent that conflicting votes or "over-votes" are submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballot, the Claims Agent will attempt to reconcile discrepancies with the Nominee;

   d) To the extent that over-votes on a Master Ballot or pre-validated Beneficial Holder Ballot are not reconcilable prior to the preparation of the vote certification, the Claims Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

submitted on the Master Ballot or pre-validated Beneficial Holder Ballots that contained the over-vote, but only to the extent of the Nominee's amount of Class A Old Notes Claims; and

e) For purposes of tabulating votes, each Beneficial Holder holding through a particular account will be deemed to have voted the principal amount relating to its holding in that particular account, although the Claims Agent may be asked to adjust such principal amount to reflect the claim amount.

15. No fees or commissions or other remuneration will be payable to any broker, bank, dealer or other person in connection with this solicitation. Upon written request, however, the Debtor will reimburse you for customary mailing and handling expenses incurred by you in forwarding Solicitation Packages to your client(s).

**NOTHING CONTAINED HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL RENDER YOU OR ANY OTHER PERSON THE AGENT OF THE DEBTOR OR THE DEBTOR'S AGENT, OR AUTHORIZE YOU OR ANY OTHER PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF ANY OF THEM WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE ENCLOSED DOCUMENTS.**

| ISIN | Quantity | Option | BENNAME |
|---|---|---|---|
| USP32086AR44 | 200,000.00 | 1 - OTHR | |
| USP32086AR44 | 200,000.00 | 1 - OTHR | |
| USP32086AR44 | 587,000.00 | 1 - OTHR | |
| USP32086AR44 | 200,000.00 | 1 - OTHR | |
| USP32086AR44 | 200,000.00 | 1 - OTHR | |
| USP32086AR44 | 200,000.00 | 1 - OTHR | |
| USP32086AR44 | 1,300,000.00 | 1 - OTHR | |
| USP32086AR44 | 300,000.00 | 1 - OTHR | |
| USP32086AR44 | 200,000.00 | 1 - OTHR | |
| USP32086AR44 | 400,000.00 | 1 - OTHR | |
| USP32086AR44 | 5,777,000.00 | 1 - OTHR | Vontobel Fund II - Fixed\ Maturity Emerging Markets\ Bond 2026 |
| USP32086AR44 | 200,000.00 | 1 - OTHR | |
| USP32086AR44 | 200,000.00 | 1 - OTHR | |
| USP32086AR44 | 200,000.00 | 1 - OTHR | |
| USP32086AR44 | 200,000.00 | 1 - OTHR | |
| USP32086AR44 | 200,000.00 | 1 - OTHR | |
| USP32086AR44 | 200,000.00 | 1 - OTHR | |
| USP32086AR44 | 500,000.00 | 1 - OTHR | |
| USP32086AR44 | 50,000.00 | 1 - OTHR | |
| USP32086AR44 | 3,500,000.00 | 1 - OTHR | Julius Baer |
| USP32086AR44 | 2,000,000 | 1 - OTHR | First Geneva SICAV-FIS S.A. |

**Exhibit D**

**A3E's Beneficial**

**Holder Vote**

| From: | ████████████@a3ecapital.com> |
| --- | --- |
| Sent: | Friday, March 29, 2024 4:36 PM |
| To: | DL-tabulation; Alvaro Cunto; Bulat Khalitov; Jim Harper; michael.fitzgerald@bakermckenzie.com; paul.keenan@bakermckenzie.com |
| Cc: | crdv.dpw.rx; JVillen@HL.com; Melcer, Moshe |
| Subject: | Credivalores - Chapter 11 Plan Solicitation - A3E Capital SICAV plc |
| Attachments: | Credivalores - Beneficial Ballot (A3Esigned) - 29mar24.pdf |

*Confidential – Subject to FRE 408 and Its Equivalents*

To Whom It May Concern:

Reference is made to that certain Offering Memorandum and Consent Solicitation (the "**Solicitation Materials**") launched by Credivalores – Crediservicios S.A. ("**Credivalores**" or the "**Company**") and dated as of March 7, 2024. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Solicitation Materials.

I write on behalf of **A3E Capital SICAV plc.** (the "**Noteholder**"), which is the beneficial holder of **$1'500'000** in principal amount of 8.875% Senior Dues due 2025 issued by Credivalores (the "**Existing Notes**") and am a member of an ad hoc group of Existing Note holders represented by Davis Polk and Houlihan Lokey. Proof of the Firm's Existing Notes position is available upon request.

The Noteholder attempted to timely vote its Claims to reject the Plan and opt out of the releases therein, but was unable to do so through its custodian.

In accordance with Bankruptcy Rule 3018(c), the Noteholder hereby votes all of its Claims **to reject the Plan**, as further set forth on the ballot attached hereto, a copy of which will be delivered to the Balloting Agent as well. The Noteholder, on behalf of itself, its affiliates, its representatives, and any other entity that could purport to grant a release under the Plan <u>expressly</u> opts out of the release contained in Section 8.4 of the Plan.

The Plan is unacceptable to the Noteholder because, among other reasons, the Plan contemplates that the Noteholder and other holders of Existing Notes will make material economic concessions while Interests will be Reinstated. We do not expect that the Plan can be consensually confirmed, so such a value transfer is plainly prohibited by the Bankruptcy Code. The Noteholder also objects to the Statement because, among other reasons, it provides little to no information as to how the Plan was negotiated and the events leading up to the commencement of the Plan Solicitation.

The Noteholder expressly reserves all rights with respect to the Existing Notes, the Exchange Offer, the Plan, the Statement, and any Chapter 11 Case, including the right to object to Confirmation and to Plan Solicitation.

Sincerely,

████████

Director / Chairman of the Board of Directors

A3E Capital SICAV plc. (the Noteholder)

--
*Yours Sincerely,*
██████████, *CFA*
*Chairman of the Board of Directors*
*A3E Capital SICAV p.l.c.*

*mobile:* ███████
*mobile:* ███████

*This email has been sent from A3E Capital SICAV p.l.c.*
*A3E Capital SICAV p.l.c.; Collective Investment Scheme, registered in Malta, Registration Number: SV 243; address:*
*Quad Central, Q3 Level 9, Triq Il-Esportaturi, Zone 1, Central Business District, Birkirkara CBD1040,*
*Malta. Authorised and Supervised by the Malta Financial Services Authority (www.mfsa.com.mt);*
*Unless specifically indicated, this e-mail is not an offer to buy or sell or a solicitation to buy or sell any securities,*
*investment products or other financial product or service, an official confirmation of any transaction, or an official*
*statement of A3E Capital SICAV p.l.c. Any views or opinions presented are solely those of the author and do not*
*necessarily represent those of A3E Capital SICAV p.l.c. This message is confidential. It may also be privileged or*
*otherwise protected by intellectual property or other legal rules. If you have received it by mistake, please let us know by*
*e-mail reply and delete it from your system; you may not copy this message or disclose its contents to anyone.*
🌳 **please don't print this e-mail unless you really need to.**

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CREDIVALORES – CREDISERVICIOS S.A.,[1] | Case No. 24-_____ (__) |
| Debtor. | |

_____/

**BENEFICIAL HOLDER BALLOT FOR ACCEPTING OR REJECTING THE PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION FOR CREDIVALORES – CREDISERVICIOS S.A.**

**CLASS A: OLD NOTES CLAIMS**

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT CAREFULLY BEFORE COMPLETING THIS BALLOT.

**THIS BENEFICIAL HOLDER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED IN ACCORDANCE WITH THE INSTRUCTIONS RECEIVED FROM YOUR NOMINEE SO THAT THE BALLOT OR A MASTER BALLOT REFLECTING YOUR VOTE IS ACTUALLY RECEIVED BY THE CLAIMS AGENT PRIOR TO 5:00 P.M. PREVAILING EASTERN TIME (NEW YORK CITY TIME) ON April 3, 2024 (THE "VOTING DEADLINE").**

The above-captioned debtor and debtor in possession (the "**Debtor**") intends to file a chapter 11 case in the above-captioned bankruptcy court (the "**Court**") and is soliciting votes with respect to the proposed *Debtor's Prepackaged Chapter 11 Plan* (as amended, supplemented or otherwise modified from time to time, the "**Plan**") and the *Disclosure Statement for the Plan* (as amended, supplemented, or otherwise modified from time to time, the "**Disclosure Statement**") pursuant to sections 1125 and 1126(b) of title 11 of the United States Code (the "**Bankruptcy Code**").[2]

> Please use this ballot (the "**Beneficial Holder Ballot**") to cast your vote to accept or reject the Plan if you are, as of March 7, 2024 (the "**Voting Record Date**") a beneficial holder of an **Old Notes Claim** in Class A (each, a "**Beneficial Holder**").
>
> **Only Holders holding Old Notes Claims may vote to accept or reject the Plan using this Beneficial Holder Ballot.**

The Plan can be confirmed by the Court and thereby made binding on you, whether or not you vote, if the Plan (i) is accepted by the Holders of at least two-thirds in amount and more than one-half in number of the

---

[1] The address for Credivalores – Crediservicios S.A. is Carrera 7 #76-35, 7th Floor, Bogota Colombia.

[2] Capitalized terms otherwise undefined herein have the meanings ascribed to them in the Disclosure Statement and Plan, as applicable.

claims in each impaired Class of claims who vote on the Plan and (ii) otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Court nonetheless may confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

Your rights are described in the Disclosure Statement, which is accessible from the Debtor's restructuring website at https://dm.epiq11.com/Credivalores (the "**Restructuring Website**"), along with copies of the Plan and certain other materials. If you desire paper copies, or if you need to obtain additional solicitation packages, you may (a) contact the Debtor's claims and balloting agent (the "**Claims Agent**"), Epiq Corporate Restructuring LLC ("**Epiq**"), at (646) 362-6336, or by email at tabulation@epiqglobal.com with a reference to "Credivalores Voting" in the subject line, or (b) once the Chapter 11 Case has been filed, you may download such documents (excluding ballots) from the Debtor's Restructuring Website, free of charge. Copies of these documents may also be obtained for a fee via PACER (account required) at https://www.nysb.uscourts.gov/. Please be advised that the Claims Agent is not permitted to provide legal advice.

This Beneficial Holder Ballot may not be used for any purpose other than casting a vote to accept or reject the Plan, making certain decisions regarding releases and making certain certifications. If you believe that you have received this Beneficial Holder Ballot in error, or if you believe that you have received the wrong Beneficial Holder Ballot, please contact your Nominee at the number and address they have provided.

Nothing contained herein or in the enclosed documents shall render you or any other entity the agent of the Debtor or the Claims Agent or authorize you or any other entity to use any document or make any statements on behalf of the Debtor with respect to the Plan, except for the statements contained in the documents enclosed herewith.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class A. If you hold Claims through more than one Nominee, you will receive a Beneficial Holder Ballot for each Claim in which you are entitled to vote.

If the Plan is confirmed by the Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must complete, sign and return this Beneficial Holder Ballot to your Nominee so that your Nominee has sufficient time to submit a Master Ballot to the Claims Agent by the Voting Deadline indicated above. Your Nominee may also provide a pre-validated Beneficial Holder Ballot with instructions for you to complete and return the pre-validated Beneficial Holder Ballot directly to the Claims Agent.

*PLEASE SUBMIT YOUR BENEFICIAL HOLDER BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE, WHICH MAY INCLUDE (I) SUBMITTING THIS BENEFICIAL HOLDER BALLOT OR (II) CONVEYING YOUR VOTE VIA E-MAIL, TELEPHONE, INTERNET APPLICATION, FACSIMILE, VOTER INFORMATION FORM, OR OTHER ACCEPTED AND CUSTOMARY MEANS OF DELIVERING SUCH INFORMATION TO YOUR NOMINEE.*

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

PLEASE COMPLETE <u>ITEMS 1 THROUGH 6</u>. IF THIS BENEFICIAL HOLDER BALLOT IS NOT SIGNED ON THE APPROPRIATE LINES BELOW, THIS BENEFICIAL HOLDER BALLOT **WILL NOT** BE VALID OR COUNTED AS HAVING BEEN CAST.

## Item 1. Amount of Claim

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of an Old Notes Claim in Class A in the following aggregate unpaid principal amount:

$ __1'500'000,-__

## Item 2. Holder Status

The Holder of the Old Notes Claim in Class A certifies that as of the Voting Record Date, the undersigned (please check only one box):

☒ Is a "**Qualified Holder**" meaning such Holder is:

(1) located in the United States, and is a "Qualified Institutional Buyer" as such term is defined in Rule 144A under the Securities Act acknowledging that it will be receiving "restricted securities" within the meaning of Rule 144 under the Securities Act; or

(2) not a "U.S. Person" as defined in Rule 902(k) under the Securities Act and is qualified to participate in the Exchange Offer, in accordance with the laws of its jurisdiction of location or residence.

**OR**

☐ Is a "**Non-Qualified Holder**" meaning, any Holder of an Allowed Old Notes Claim that is not a Qualified Holder.

## Item 3. Vote on Plan

The Holder of the Claim in Class A set forth in <u>Item 1</u> votes to (please check only one box):

| ☐ | **ACCEPT** (vote FOR) the Plan | ☒ | **REJECT** (vote AGAINST) the Plan |
|---|---|---|---|

**SUBJECT TO THE LIMITATIONS SET FORTH HEREIN, YOU HAVE THE RIGHT TO OPT IN TO THE THIRD-PARTY RELEASE (AS DEFINED BELOW) SET FORTH IN <u>SECTION 8.4</u> OF THE PLAN.**

**IF YOU VOTE TO ACCEPT THE PLAN, YOU SHALL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE.**

3

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

**IF YOU VOTE TO REJECT THE PLAN, YOU MAY STILL CONSENT TO GIVE THE THIRD-PARTY RELEASE SET FORTH IN <u>ARTICLE VIII</u> OF THE PLAN BY ELECTING THE OPT IN OPTION BELOW.**

**IF YOU EXECUTE AND RETURN YOUR BENEFICIAL HOLDER BALLOT WITHOUT A VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY STILL CONSENT TO GIVE THE THIRD-PARTY RELEASE SET FORTH IN <u>ARTICLE VIII</u> OF THE PLAN BY ELECTING THE OPT IN OPTION BELOW.**

**YOUR DECISION TO OPT IN (OR NOT OPT IN) TO GIVING THE THIRD-PARTY RELEASE WILL NOT AFFECT ANY DISTRIBUTION YOU MAY RECEIVE IF THE PLAN IS ULTIMATELY CONFIRMED.**

<u>**Item 4. Important Information Regarding the Release by Certain Holders of Claims**</u>

**THE PLAN CONTAINS RELEASES. PARTIES SHOULD BE AWARE THAT, IF THE PLAN IS CONFIRMED and if the Effective Date occurs, the Released Parties, as defined in <u>Section 1.1.73</u> of the Plan and as reproduced below, will be receiving releases and certain parties will be giving releases and be bound by injunctions as set forth in <u>Article VIII</u> of the Plan, and with respect to the releases described in <u>Article VIII</u> of the Plan and reproduced below, they are automatically deemed to have consented to the release provisions of the Plan, if either vote to accept the Plan. For the avoidance of doubt, a Holder of a Claim or Interest that votes to accept the Plan shall be automatically deemed to have given the releases irrespective of whether such Holder elects to opt in to the Third-Party Release.**

To provide additional information regarding the Third-Party Release, the following Sections of the Plan have been copied immediately below: <u>Section 1.1.38</u> (Exculpated Claim); <u>Section 1.1.39</u> (Exculpated Party); Section 1.1.73 (Released Party); <u>Section 1.1.74</u> (Releasing Party); <u>Section 8.2</u> (Discharge of Claims and Termination of Interests); <u>Section 8.3</u> (Releases by the Debtor); <u>Section 8.4</u> (Releases by the Releasing Parties); <u>Section 8.5</u> (Exculpation); and <u>Section 8.6</u> (Injunction). To the extent of any discrepancy between the following and the corresponding sections in the Plan, including any modifications or amendments thereto, the sections in the Plan control. Please carefully review the following.

<u>**Relevant Definitions:**</u>

"***Exculpated Claim***" means any Claim related to any act or omission in connection with, relating to, or arising out of the Debtor's in-court or out-of-court efforts to negotiate, enter into or implement the Chapter 11 Case, the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with or pursuant to the Disclosure Statement or the Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation, the administration and implementation of the Plan, or the distribution of property under the Plan.

"***Exculpated Party***" means each of the following in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; (c) the Trustee; (d) the Holders of Interests; and (e) with respect to each of the foregoing Entities in clauses (a) through (d) such Entity's predecessors, successors and assigns and current and former Affiliates, subsidiaries, officers, directors, members, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals.

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

"***Released Party***" means each of the following: (a) the Debtor; (b) the Trustee; (c) the Holders of Interests; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's successors and assigns, and current and former Affiliates, subsidiaries, officers, directors, members, stockholders, partners, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such.

"***Releasing Party***" means each of the following: (a) the Holders of Impaired Claims or Interests that (i) affirmatively vote to accept the Plan or (ii) abstain from voting on the Plan; (b) to the fullest extent permissible under applicable law, the Holders of Unimpaired Claims or Interests; (c) the Trustee; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's successors and assigns, and current and former Affiliates, subsidiaries, officers, directors, members, stockholders, partners, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such.

**Relevant Provisions:**

Section 8.2 of the Plan provides for the discharge of Claims and termination of Interests (the "**Discharge**"):

> **Except as otherwise provided for herein and effective as of the Effective Date: (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor or any of its assets, property, or Estate; (b) the Plan shall bind all Holders of Claims and Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtor's liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtor, the Debtor's Estate, the Reorganized Debtor, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.**

Section 8.3 of the Plan provides for the Debtor's release of the Released Parties (the "**Debtor Release**"):

> **Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise expressly provided herein, for good and valuable consideration, as of the Effective Date, to the extent permitted by applicable laws, the Released Parties are conclusively, absolutely, unconditionally, irrevocably, and forever deemed released and discharged by the Debtor, the Reorganized Debtor, and the Debtor's Estate from any and all actions, Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, asserted or that could possibly have been asserted on behalf of the Debtor, that the Debtor, Reorganized Debtor, or the Debtor's Estate, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in, or under, in whole or in part, the Debtor, the Chapter 11 Case, the Old Notes, the Old Notes Indenture, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that**

5

is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests prior to or during the Chapter 11 Case, the negotiation, formulation, solicitation, or preparation of the Disclosure Statement, the Plan, the Plan Supplement, or related agreements, instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, however, that the foregoing provisions of this Section 8.3 shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction; provided further that nothing in this Section 8.3 shall release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement, or otherwise given effect under, the Plan, including the New Notes and any other agreement or document related thereto or entered into in connection therewith, as applicable.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this Section 8.3, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by this Section 8.3; (c) in the best interests of the Debtor and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to the Debtor asserting any Claim or Cause of Action released by this Section 8.3.

Section 8.4 of the Plan provides for the Releases by the Releasing Parties (the "**Third-Party Release**"):

As of the Effective Date, to the extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtor, the Reorganized Debtor, the Estate, the Released Parties and each such Entity's successors and assigns, current and former affiliates, subsidiaries, officers, directors, members, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such, and only if such Persons occupied any such positions at any time on or after the Petition Date, from any and all Claims, Interests, obligations, rights, liabilities, actions, causes of action, choses in action, suits, debts, demands, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including all claims and actions against any Entities under the Bankruptcy Code) whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity asserted or that could possibly have been asserted, or would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the Old Notes, the Old Notes Indenture, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Releasing Party, the restructuring of

6

Claims and Interests prior to or during the Chapter 11 Case, the negotiation, formulation, solicitation, or preparation of the Disclosure Statement, the Plan, the Plan Supplement, or related agreements, instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; **provided, however,** that the foregoing provisions of this **Section 8.4** shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction; **provided further** that nothing in this **Section 8.4** shall release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement, or otherwise given effect under, the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this **Section 8.4**, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) important to the Plan; (b) in exchange for the good and valuable consideration provided by the Debtor, the Reorganized Debtor, the Estate and the Released Parties; (c) a good faith settlement and compromise of the Claims released by this **Section 8.4**; (d) in the best interests of the Debtor and all Holders of Claims and Interests; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; and (g) a bar to any Entity granting a release under this **Section 8.4** from asserting any Claim or Cause of Action released by this **Section 8.4**.

Section 8.5 of the Plan provides for the exculpation of Exculpated Parties (the "**Exculpation**"):

No Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim; **provided, however,** that the foregoing "exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted fraud, gross negligence, or willful misconduct; **provided, further,** that in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to, or in connection with, the Plan. The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of acceptances and rejections of the Plan and the making of distributions pursuant to the Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable, law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

Section 8.6 of the Plan provides for a permanent injunction with respect to actions against the Released Parties and the Exculpated Parties (the "**Injunction**"):

Except as otherwise provided herein or for obligations issued pursuant hereto, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to **Section 8.3** or **Section 8.4**, discharged pursuant to **Section 8.2**, or are subject to exculpation pursuant to **Section 8.5** are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order

7

against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, exculpated, or settled pursuant to the Plan.

The Holder of the Class A Old Notes Claim set forth in <u>Item 1</u> elects to:

| |
|---|
| ☐   Opt In to the Third-Party Release |

### Item 5. Certifications as to Old Notes Claims Held in Additional Accounts with Other Nominees.

By completing and returning this Beneficial Holder Ballot, the undersigned Beneficial Holder certifies that either: (a) it has not submitted any other Beneficial Holder Ballot in respect of its Old Notes Claims held in other accounts or other record names, or (b) it has provided the information specified in the following table for all other Old Notes Claims for which it has submitted additional Beneficial Holder Ballots, each of which indicates the same vote to accept or reject the Plan (please use additional sheets of paper if necessary):

ONLY COMPLETE THIS SECTION IF YOU HAVE VOTED OTHER OLD NOTES CLAIMS ON A BALLOT OTHER THAN THIS BENEFICIAL HOLDER BALLOT.

(Please complete the information requested below. Attach additional sheets if necessary.)

| Account Number or Beneficial Holder Name of Other Claims Voted | Name of Record Holder or Nominee | Principal Amount of Other Old Note Claims Voted | CUSIP of Other Old Notes Claims Voted |
|---|---|---|---|
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |

To be counted, a Beneficial Holder must vote *ALL* of its Old Notes Claims either to accept or reject the Plan. No split votes will be permitted.

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

**Item 6.Acknowledgements.** By signing this Beneficial Holder Ballot, the undersigned (i) acknowledges receipt of the Disclosure Statement, Plan and the other applicable solicitation materials and certifies that the undersigned, as of the Voting Record Date, (ii) is the Beneficial Holder or has the power and authority to vote to accept or reject the Plan on behalf of the Beneficial Holder, and (iii) acknowledges that the undersigned has cast the same vote with respect to all Old Notes Claims in a single Class, and that no other Beneficial Holder Ballots with respect to the amount of the Old Note Claims identified in Item 1 above have been cast or, if any other Beneficial Holder Ballots have been cast with respect to such Claims, then any such earlier received Ballots are hereby revoked. The undersigned understands that, if this Beneficial Holder Ballot is otherwise validly executed but is not timely submitted, does not indicate either acceptance or rejection of the Plan or indicates both an acceptance and rejection of the Plan, this Beneficial Holder Ballot will not be counted as having been cast.

| | |
|---|---|
| Name of Beneficial Holder: | **A3E Capital SICAV p.l.c.** |
| Signature: | █████████████████ |
| Name of Signatory (if different than Beneficial Holder): | **Mr** █████████████ |
| If authorized by Agent, Title of Agent: | |
| Street Address: | **Quad Central, Q3 Level 9, Triq L-Esportaturi,** |
| | **Zone 1, Central Business District** |
| City, State, Zip Code: | **Birkirkara, CBD1040** |
| Country: | **Malta** |
| Telephone Number: | ███████████ |
| Email Address: | ███████**@a3ecapital.com / info@a3ecapital.com** |
| Date Completed | **Mar-29-2024** |

**PLEASE COMPLETE, SIGN, AND DATE THIS BENEFICIAL HOLDER BALLOT AND RETURN IT <u>PROMPTLY</u> IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE. IF THE CLAIMS AGENT DOES NOT ACTUALLY RECEIVE THE MASTER BALLOT REFLECTING THE VOTE CAST ON THIS BENEFICIAL HOLDER BALLOT (OR YOUR PRE-VALIDATED BENEFICIAL HOLDER BALLOT, IF APPLICABLE) ON OR BEFORE THE VOTING DEADLINE, AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE WILL NOT BE COUNTED, UNLESS OTHERWISE DETERMINED BY THE DEBTOR.**

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

**IF YOU HAVE ANY QUESTIONS CONCERNING THIS BENEFICIAL HOLDER BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AGENT BY TELEPHONE AT (646) 362-6336, OR EMAIL TO TABULATION@EPIQGLOBAL.COM WITH A REFERENCE TO "CREDIVALORES VOTING" IN THE SUBJECT LINE. THE CLAIMS AGENT IS NOT AUTHORIZED TO PROVIDE, AND WILL NOT PROVIDE, LEGAL OR FINANCIAL ADVICE.**

---

**THE DEBTOR IS SEEKING CONFIRMATION OF THE PLAN AS PART OF A PREPACKAGED CHAPTER 11 CASE, AS DESCRIBED IN THE PREPACKAGED CHAPTER 11 CASE GUIDELINES OF THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (LOCAL RULE 3018-2). THE ACCEPTANCES AND REJECTIONS OF THE PLAN SET FORTH HEREIN THEREFORE WILL BE SUBJECT TO 11 U.S.C. § 1126(b) AND SUCH GUIDELINES. HOWEVER, IT IS IMPERATIVE THAT ALL DEADLINES SET FORTH HEREIN BE OBSERVED PENDING ANY FURTHER DETERMINATIONS BY THE COURT PRESIDING OVER SUCH CASE.**

---

CUSIP P32086 AR4 (ISIN USP32086AR44)

CUSIP 22555L AB2 (ISIN US22555LAB27)

## <u>VOTING INSTRUCTIONS</u>

1.  The Debtor is soliciting votes of Holders of Claims with respect to the Plan attached as **<u>Annex B</u>** to the Disclosure Statement. Capitalized terms used in the Beneficial Holder Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Plan. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BENEFICIAL HOLDER BALLOT.**

2.  The Court may confirm the Plan and thereby bind you to the terms of the Plan, if it is accepted by the Holders of two-thirds in amount and more than one-half in number of Claims in each Impaired Class of Claims entitled to vote on the Plan. In the event the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if it finds that the Plan accords fair and equitable treatment to the Class or Classes that have rejected the Plan and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3.  In <u>Item 1</u>, or elsewhere on the Beneficial Holder Ballot, your Claim amount is going to be pre-printed, in which case you are to review this amount and contact your Nominee if you believe your Claim amount for voting purposes has been listed in error.

4.  In the boxes provided in <u>Item 2</u>, please indicate whether you are a Qualified Holder or Non-Qualified Holder.

5.  In the boxes provided in <u>Item 3</u> of the Beneficial Holder Ballot, please indicate acceptance or rejection of the Plan. If you vote to accept the Plan, you are specifically consenting to the releases contained in the Plan. Such releases include, but are not limited to, the releases contained in <u>Article VIII</u> of the Plan, which include the Release by Releasing Parties (*i.e.*, the Third-Party Release) of claims and causes of action against certain non-Debtor entities.

6.  If your Beneficial Holder Ballot is not received by your Nominee in sufficient time to be included on a timely submitted Master Ballot, it will not be counted unless the Debtor determines otherwise. In all cases, Beneficial Holders should allow sufficient time to assure timely delivery of your Beneficial Holder Ballot to your Nominee. Beneficial Holder Ballots must be returned in accordance with the instructions received.

7.  Please be sure to sign and date your Beneficial Holder Ballot. If you are signing a Beneficial Holder Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims Agent, the Debtor, or the Court, must submit proper evidence to the requesting party to so act on behalf of such holder.

8.  If you have submitted more than one Beneficial Holder Ballot for your Old Notes Claims, you ***must*** complete <u>Item 5</u>. Please note that the information provided in <u>Items 1</u> and <u>5</u> must, taken together, identify all of your holdings of Old Notes Claims as of the Voting Record Date.

9.  If you conveyed more than one vote on the same Old Notes Claim, the last valid vote received by your Nominee will be deemed to reflect your intent to either accept or reject the Plan.

10. You may receive more than one Beneficial Holder Ballot if you hold Old Notes Claims through multiple Nominees. You must vote all of your Old Notes Claims to accept or reject the Plan in the same manner. Accordingly, if you submit more than one vote and the votes are not consistent, such votes shall not be counted.

11. If a Beneficial Holder Ballot is received <u>after</u> the Voting Deadline and if the Voting Deadline is not extended, it may be counted only in the discretion of the Debtor.

12. Additionally, the following Beneficial Holder Ballots will <u>not</u> be counted:

   a. any vote cast by an entity that does not hold Old Notes Claims as of the Voting Record Date;

   b. any vote sent to any party other than the Nominee (*e.g.*, the Debtor, any official committee, or the Court) or, in the case of a pre-validated Beneficial Holder Ballot, the Claims Agent;

   c. any vote superseded by another timely valid vote;

   d. any inconsistent or duplicate votes that are simultaneously cast with respect to the same Old Notes Claim;

   e. any vote (or group of votes from a single creditor) that partially rejects and partially accepts the Plan will not be counted;

   f. any Beneficial Holder Ballot not marked to accept or reject the Plan; or

   g. any Beneficial Holder Ballot marked both to accept and reject the Plan.

13. The Beneficial Holder Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to submit elections (if any). Accordingly, at this time, holders of Claims should not surrender certificates or instruments representing or evidencing their Claims, if any, and neither the Debtor nor the Claims Agent will accept delivery of any such certificates or instruments surrendered together with a Beneficial Holder Ballot.

14. The Beneficial Holder Ballot does not constitute and shall not be deemed a proof of Claim or Interest or an assertion of a Claim or Interest.

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

## Exhibit E

## Absalon's Beneficial

## Holder Votes

| From: | Operations <operations@formuepleje.dk> |
|---|---|
| Sent: | Wednesday, April 3, 2024 10:10 AM |
| To: | tabulation@epiqglobal.com; alvaro.cunto@bcpsecurities.com; bkhalitov@bcpsecurities.com; jharper@bcpsecurities.com; michael.fitzgerald@bakermckenzie.com; paul.keenan@bakermckenzie.com |
| Cc: | crdv.dpw.rx; JVillen@HL.com; ██████████████; IVS.Client.Management |
| Subject: | Subject: Credivalores - Chapter 11 Plan Solicitation - Formuepleje EM Virksomhedsobligationer |
| Attachments: | 3499_001.pdf |

To Whom It May Concern:

Reference is made to that certain Offering Memorandum and Consent Solicitation (the "**Solicitation Materials**") launched by Credivalores – Crediservicios S.A. ("**Credivalores**" or the "**Company**") and dated as of March 7, 2024. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Solicitation Materials

I write on behalf of Formuepleje EM Virksomhedsobligationer (the "**Noteholder**"), which is the beneficial holder of $400,000 in principal amount of 8.875% Senior Dues due 2025 issued by Credivalores (the "**Existing Notes**") and am a member of an ad hoc group of Existing Note holders represented by Davis Polk and Houlihan Lokey. Proof of the Noteholder's Existing Notes position is available upon request.

The Noteholder attempted to timely vote its Claims to reject the Plan and opt out of the releases therein, but was unable to do so through its custodian.

In accordance with Bankruptcy Rule 3018(c), the Noteholder hereby votes all of its Claims to reject the Plan, as further set forth on the ballot attached hereto, a copy of which will be delivered to the Balloting Agent as well. The Noteholder, on behalf of itself, its affiliates, its representatives, and any other entity that could purport to grant a release under the Plan <u>expressly</u> opts out of the release contained in Section 8.4 of the Plan.

The Plan is unacceptable to the Noteholder because, among other reasons, the Plan contemplates that the Noteholder and other holders of Existing Notes will make material economic concessions while Interests will be Reinstated. We do not expect that the Plan can be consensually confirmed, so such a value transfer is plainly prohibited by the Bankruptcy Code. The Noteholder also objects to the Statement because, among other reasons, it provides little to no information as to how the Plan was negotiated and the events leading up to the commencement of the Plan Solicitation.

The Noteholder expressly reserves all rights with respect to the Existing Notes, the Exchange Offer, the Plan, the Statement, and any Chapter 11 Case, including the right to object to Confirmation and to Plan Solicitation.

Sincerely,

Med venlig hilsen/Best regards

████████████████

Controller

Direkte:
Mobil: ████████████





Formuepleje A/S
Værkmestergade 25 // 8000 Aarhus C
Telefon: +45 87 46 49 00
formuepleje.dk

This e-mail may contain confidential information. If you are not the intended recipient, please notify the sender immediately and delete this e-mail. Any unauthorized disclosure and copying of this e-mail or parts of it is strictly forbidden.
Formuepleje does not accept responsibility for the accuracy and completeness of this e-mail or any attachments. If verification of this e-mail is sought please request a hard copy. Formuepleje can process personal data about you.
Please see our Privacy Policy on our website, www.formuepleje.dk.

Danish Company reg. no. (CVR) of Formuepleje A/S: 18 05 97 38.
Formuepleje Holding A/S is the mother company in the Formuepleje Group.

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CREDIVALORES – CREDISERVICIOS S.A.,[1] | Case No. 24-_____ (__) |
| Debtor. | |

_____/

**BENEFICIAL HOLDER BALLOT FOR ACCEPTING OR REJECTING THE
PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION FOR
CREDIVALORES – CREDISERVICIOS S.A.**

**CLASS A: OLD NOTES CLAIMS**

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR
COMPLETING THIS BALLOT CAREFULLY BEFORE COMPLETING THIS BALLOT.

**THIS BENEFICIAL HOLDER BALLOT MUST BE COMPLETED, EXECUTED,
AND RETURNED IN ACCORDANCE WITH THE INSTRUCTIONS RECEIVED FROM
YOUR NOMINEE SO THAT THE BALLOT OR A MASTER BALLOT REFLECTING YOUR
VOTE IS ACTUALLY RECEIVED BY THE CLAIMS AGENT PRIOR TO 5:00 P.M.
PREVAILING EASTERN TIME (NEW YORK CITY TIME)
ON April 3, 2024 (THE "VOTING DEADLINE").**

The above-captioned debtor and debtor in possession (the "**Debtor**") intends to file a chapter 11 case in the above-captioned bankruptcy court (the "**Court**") and is soliciting votes with respect to the proposed *Debtor's Prepackaged Chapter 11 Plan* (as amended, supplemented or otherwise modified from time to time, the "**Plan**") and the *Disclosure Statement for the Plan* (as amended, supplemented, or otherwise modified from time to time, the "**Disclosure Statement**") pursuant to sections 1125 and 1126(b) of title 11 of the United States Code (the "**Bankruptcy Code**").[2]

> Please use this ballot (the "**Beneficial Holder Ballot**") to cast your vote to accept or reject the Plan if you are, as of March 7, 2024 (the "**Voting Record Date**") a beneficial holder of an **Old Notes Claim** in Class A (each, a "**Beneficial Holder**").
>
> **Only Holders holding Old Notes Claims may vote to accept or reject the Plan using this Beneficial Holder Ballot.**

The Plan can be confirmed by the Court and thereby made binding on you, whether or not you vote, if the Plan (i) is accepted by the Holders of at least two-thirds in amount and more than one-half in number of the

---

[1] The address for Credivalores – Crediservicios S.A. is Carrera 7 #76-35, 7th Floor, Bogota Colombia.

[2] Capitalized terms otherwise undefined herein have the meanings ascribed to them in the Disclosure Statement and Plan, as applicable.

claims in each impaired Class of claims who vote on the Plan and (ii) otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Court nonetheless may confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

Your rights are described in the Disclosure Statement, which is accessible from the Debtor's restructuring website at https://dm.epiq11.com/Credivalores (the "**Restructuring Website**"), along with copies of the Plan and certain other materials. If you desire paper copies, or if you need to obtain additional solicitation packages, you may (a) contact the Debtor's claims and balloting agent (the "**Claims Agent**"), Epiq Corporate Restructuring LLC ("**Epiq**"), at (646) 362-6336, or by email at tabulation@epiqglobal.com with a reference to "Credivalores Voting" in the subject line, or (b) once the Chapter 11 Case has been filed, you may download such documents (excluding ballots) from the Debtor's Restructuring Website, free of charge. Copies of these documents may also be obtained for a fee via PACER (account required) at https://www.nysb.uscourts.gov/. Please be advised that the Claims Agent is not permitted to provide legal advice.

This Beneficial Holder Ballot may not be used for any purpose other than casting a vote to accept or reject the Plan, making certain decisions regarding releases and making certain certifications. If you believe that you have received this Beneficial Holder Ballot in error, or if you believe that you have received the wrong Beneficial Holder Ballot, please contact your Nominee at the number and address they have provided.

Nothing contained herein or in the enclosed documents shall render you or any other entity the agent of the Debtor or the Claims Agent or authorize you or any other entity to use any document or make any statements on behalf of the Debtor with respect to the Plan, except for the statements contained in the documents enclosed herewith.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class A. If you hold Claims through more than one Nominee, you will receive a Beneficial Holder Ballot for each Claim in which you are entitled to vote.

If the Plan is confirmed by the Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must complete, sign and return this Beneficial Holder Ballot to your Nominee so that your Nominee has sufficient time to submit a Master Ballot to the Claims Agent by the Voting Deadline indicated above. Your Nominee may also provide a pre-validated Beneficial Holder Ballot with instructions for you to complete and return the pre-validated Beneficial Holder Ballot directly to the Claims Agent.

***PLEASE SUBMIT YOUR BENEFICIAL HOLDER BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE, WHICH MAY INCLUDE (I) SUBMITTING THIS BENEFICIAL HOLDER BALLOT OR (II) CONVEYING YOUR VOTE VIA E-MAIL, TELEPHONE, INTERNET APPLICATION, FACSIMILE, VOTER INFORMATION FORM, OR OTHER ACCEPTED AND CUSTOMARY MEANS OF DELIVERING SUCH INFORMATION TO YOUR NOMINEE.***

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

PLEASE COMPLETE <u>ITEMS 1 THROUGH 6</u>. IF THIS BENEFICIAL HOLDER BALLOT IS NOT SIGNED ON THE APPROPRIATE LINES BELOW, THIS BENEFICIAL HOLDER BALLOT **WILL NOT** BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1. Amount of Claim**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of an Old Notes Claim in Class A in the following aggregate unpaid principal amount:

$ __400,000_____

**Item 2. Holder Status**

The Holder of the Old Notes Claim in Class A certifies that as of the Voting Record Date, the undersigned (please check only one box):

☑ Is a **"Qualified Holder"** meaning such Holder is:

(1) located in the United States, and is a "Qualified Institutional Buyer" as such term is defined in Rule 144A under the Securities Act acknowledging that it will be receiving "restricted securities" within the meaning of Rule 144 under the Securities Act; or

(2) not a "U.S. Person" as defined in Rule 902(k) under the Securities Act and is qualified to participate in the Exchange Offer, in accordance with the laws of its jurisdiction of location or residence.

**OR**

☐ Is a **"Non-Qualified Holder"** meaning, any Holder of an Allowed Old Notes Claim that is not a Qualified Holder.

**Item 3. Vote on Plan**

The Holder of the Claim in Class A set forth in <u>Item 1</u> votes to (please check only one box):

| | | | |
|---|---|---|---|
| ☐ | **ACCEPT** (vote FOR) the Plan | ☑ | **REJECT** (vote AGAINST) the Plan |

**SUBJECT TO THE LIMITATIONS SET FORTH HEREIN, YOU HAVE THE RIGHT TO OPT IN TO THE THIRD-PARTY RELEASE (AS DEFINED BELOW) SET FORTH IN <u>SECTION 8.4</u> OF THE PLAN.**

**IF YOU VOTE TO ACCEPT THE PLAN, YOU SHALL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE.**

3

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

**IF YOU VOTE TO REJECT THE PLAN, YOU MAY STILL CONSENT TO GIVE THE THIRD-PARTY RELEASE SET FORTH IN <u>ARTICLE VIII</u> OF THE PLAN BY ELECTING THE OPT IN OPTION BELOW.**

**IF YOU EXECUTE AND RETURN YOUR BENEFICIAL HOLDER BALLOT WITHOUT A VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY STILL CONSENT TO GIVE THE THIRD-PARTY RELEASE SET FORTH IN <u>ARTICLE VIII</u> OF THE PLAN BY ELECTING THE OPT IN OPTION BELOW.**

**YOUR DECISION TO OPT IN (OR NOT OPT IN) TO GIVING THE THIRD-PARTY RELEASE WILL NOT AFFECT ANY DISTRIBUTION YOU MAY RECEIVE IF THE PLAN IS ULTIMATELY CONFIRMED.**

<u>**Item 4. Important Information Regarding the Release by Certain Holders of Claims**</u>

**THE PLAN CONTAINS RELEASES. PARTIES SHOULD BE AWARE THAT, IF THE PLAN IS CONFIRMED and if the Effective Date occurs, the Released Parties, as defined in <u>Section 1.1.73</u> of the Plan and as reproduced below, will be receiving releases and certain parties will be giving releases and be bound by injunctions as set forth in <u>Article VIII</u> of the Plan, and with respect to the releases described in <u>Article VIII</u> of the Plan and reproduced below, they are automatically deemed to have consented to the release provisions of the Plan, if either vote to accept the Plan. For the avoidance of doubt, a Holder of a Claim or Interest that votes to accept the Plan shall be automatically deemed to have given the releases irrespective of whether such Holder elects to opt in to the Third-Party Release.**

To provide additional information regarding the Third-Party Release, the following Sections of the Plan have been copied immediately below: <u>Section 1.1.38</u> (Exculpated Claim); <u>Section 1.1.39</u> (Exculpated Party); Section 1.1.73 (Released Party); <u>Section 1.1.74</u> (Releasing Party); <u>Section 8.2</u> (Discharge of Claims and Termination of Interests); <u>Section 8.3</u> (Releases by the Debtor); <u>Section 8.4</u> (Releases by the Releasing Parties); <u>Section 8.5</u> (Exculpation); and <u>Section 8.6</u> (Injunction). To the extent of any discrepancy between the following and the corresponding sections in the Plan, including any modifications or amendments thereto, the sections in the Plan control. Please carefully review the following.

<u>Relevant Definitions:</u>

"***Exculpated Claim***" means any Claim related to any act or omission in connection with, relating to, or arising out of the Debtor's in-court or out-of-court efforts to negotiate, enter into or implement the Chapter 11 Case, the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with or pursuant to the Disclosure Statement or the Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation, the administration and implementation of the Plan, or the distribution of property under the Plan.

"***Exculpated Party***" means each of the following in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; (c) the Trustee; (d) the Holders of Interests; and (e) with respect to each of the foregoing Entities in clauses (a) through (d) such Entity's predecessors, successors and assigns and current and former Affiliates, subsidiaries, officers, directors, members, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals.

4

"**Released Party**" means each of the following: (a) the Debtor; (b) the Trustee; (c) the Holders of Interests; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's successors and assigns, and current and former Affiliates, subsidiaries, officers, directors, members, stockholders, partners, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such.

"**Releasing Party**" means each of the following: (a) the Holders of Impaired Claims or Interests that (i) affirmatively vote to accept the Plan or (ii) abstain from voting on the Plan; (b) to the fullest extent permissible under applicable law, the Holders of Unimpaired Claims or Interests; (c) the Trustee; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's successors and assigns, and current and former Affiliates, subsidiaries, officers, directors, members, stockholders, partners, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such.

**Relevant Provisions:**

Section 8.2 of the Plan provides for the discharge of Claims and termination of Interests (the "**Discharge**"):

> **Except as otherwise provided for herein and effective as of the Effective Date: (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor or any of its assets, property, or Estate; (b) the Plan shall bind all Holders of Claims and Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtor's liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtor, the Debtor's Estate, the Reorganized Debtor, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.**

Section 8.3 of the Plan provides for the Debtor's release of the Released Parties (the "**Debtor Release**"):

> **Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise expressly provided herein, for good and valuable consideration, as of the Effective Date, to the extent permitted by applicable laws, the Released Parties are conclusively, absolutely, unconditionally, irrevocably, and forever deemed released and discharged by the Debtor, the Reorganized Debtor, and the Debtor's Estate from any and all actions, Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, asserted or that could possibly have been asserted on behalf of the Debtor, that the Debtor, Reorganized Debtor, or the Debtor's Estate, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in, or under, in whole or in part, the Debtor, the Chapter 11 Case, the Old Notes, the Old Notes Indenture, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that**

5

is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests prior to or during the Chapter 11 Case, the negotiation, formulation, solicitation, or preparation of the Disclosure Statement, the Plan, the Plan Supplement, or related agreements, instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; **provided, however,** that the foregoing provisions of this **Section 8.3** shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction; **provided further** that nothing in this **Section 8.3** shall release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement, or otherwise given effect under, the Plan, including the New Notes and any other agreement or document related thereto or entered into in connection therewith, as applicable.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this **Section 8.3**, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by this **Section 8.3**; (c) in the best interests of the Debtor and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to the Debtor asserting any Claim or Cause of Action released by this **Section 8.3**.

Section 8.4 of the Plan provides for the Releases by the Releasing Parties (the "**Third-Party Release**"):

As of the Effective Date, to the extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtor, the Reorganized Debtor, the Estate, the Released Parties and each such Entity's successors and assigns, current and former affiliates, subsidiaries, officers, directors, members, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such, and only if such Persons occupied any such positions at any time on or after the Petition Date, from any and all Claims, Interests, obligations, rights, liabilities, actions, causes of action, choses in action, suits, debts, demands, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including all claims and actions against any Entities under the Bankruptcy Code) whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity asserted or that could possibly have been asserted, or would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the Old Notes, the Old Notes Indenture, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Releasing Party, the restructuring of

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

Claims and Interests prior to or during the Chapter 11 Case, the negotiation, formulation, solicitation, or preparation of the Disclosure Statement, the Plan, the Plan Supplement, or related agreements, instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; **provided, however**, that the foregoing provisions of this <u>Section 8.4</u> shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction; **provided further** that nothing in this <u>Section 8.4</u> shall release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement, or otherwise given effect under, the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this <u>Section 8.4</u>, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) important to the Plan; (b) in exchange for the good and valuable consideration provided by the Debtor, the Reorganized Debtor, the Estate and the Released Parties; (c) a good faith settlement and compromise of the Claims released by this <u>Section 8.4</u>; (d) in the best interests of the Debtor and all Holders of Claims and Interests; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; and (g) a bar to any Entity granting a release under this <u>Section 8.4</u> from asserting any Claim or Cause of Action released by this <u>Section 8.4</u>.

Section 8.5 of the Plan provides for the exculpation of Exculpated Parties (the "**Exculpation**"):

No Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim; **provided, however**, that the foregoing "exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted fraud, gross negligence, or willful misconduct; **provided, further**, that in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to, or in connection with, the Plan. The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of acceptances and rejections of the Plan and the making of distributions pursuant to the Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable, law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

Section 8.6 of the Plan provides for a permanent injunction with respect to actions against the Released Parties and the Exculpated Parties (the "**Injunction**"):

Except as otherwise provided herein or for obligations issued pursuant hereto, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to <u>Section 8.3</u> or <u>Section 8.4</u>, discharged pursuant to <u>Section 8.2</u>, or are subject to exculpation pursuant to <u>Section 8.5</u> are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order

7

against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, exculpated, or settled pursuant to the Plan.

The Holder of the Class A Old Notes Claim set forth in <u>Item 1</u> elects to:

| |
|---|
| ☐   Opt In to the Third-Party Release |

### Item 5. Certifications as to Old Notes Claims Held in Additional Accounts with Other Nominees.

By completing and returning this Beneficial Holder Ballot, the undersigned Beneficial Holder certifies that either: (a) it has not submitted any other Beneficial Holder Ballot in respect of its Old Notes Claims held in other accounts or other record names, or (b) it has provided the information specified in the following table for all other Old Notes Claims for which it has submitted additional Beneficial Holder Ballots, each of which indicates the same vote to accept or reject the Plan (please use additional sheets of paper if necessary):

ONLY COMPLETE THIS SECTION IF YOU HAVE VOTED OTHER OLD NOTES CLAIMS ON A BALLOT OTHER THAN THIS BENEFICIAL HOLDER BALLOT.

(Please complete the information requested below. Attach additional sheets if necessary.)

| Account Number or Beneficial Holder Name of Other Claims Voted | Name of Record Holder or Nominee | Principal Amount of Other Old Note Claims Voted | CUSIP of Other Old Notes Claims Voted |
|---|---|---|---|
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |

To be counted, a Beneficial Holder must vote *ALL* of its Old Notes Claims either to accept or reject the Plan. No split votes will be permitted.

8

**Item 6.Acknowledgements.** By signing this Beneficial Holder Ballot, the undersigned (i) acknowledges receipt of the Disclosure Statement, Plan and the other applicable solicitation materials and certifies that the undersigned, as of the Voting Record Date, (ii) is the Beneficial Holder or has the power and authority to vote to accept or reject the Plan on behalf of the Beneficial Holder, and (iii) acknowledges that the undersigned has cast the same vote with respect to all Old Notes Claims in a single Class, and that no other Beneficial Holder Ballots with respect to the amount of the Old Note Claims identified in Item 1 above have been cast or, if any other Beneficial Holder Ballots have been cast with respect to such Claims, then any such earlier received Ballots are hereby revoked. The undersigned understands that, if this Beneficial Holder Ballot is otherwise validly executed but is not timely submitted, does not indicate either acceptance or rejection of the Plan or indicates both an acceptance and rejection of the Plan, this Beneficial Holder Ballot will not be counted as having been cast.

| | |
|---|---|
| Name of Beneficial Holder: | Formuepleje FM Virksomhedsobligationer |
| Signature: | |
| Name of Signatory (if different than Beneficial Holder): | Head of Operations |
| If authorized by Agent, Title of Agent: | |
| Street Address: | Værkmestergade 25 |
| City, State, Zip Code: | 8000, Aarhus C |
| Country: | Denmark |
| Telephone Number: | |
| Email Address: | operations@formuepleje.dk |
| Date Completed | 03-04-2024 |

**PLEASE COMPLETE, SIGN, AND DATE THIS BENEFICIAL HOLDER BALLOT AND RETURN IT _PROMPTLY_ IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE. IF THE CLAIMS AGENT DOES NOT ACTUALLY RECEIVE THE MASTER BALLOT REFLECTING THE VOTE CAST ON THIS BENEFICIAL HOLDER BALLOT (OR YOUR PRE-VALIDATED BENEFICIAL HOLDER BALLOT, IF APPLICABLE) ON OR BEFORE THE VOTING DEADLINE, AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE WILL NOT BE COUNTED, UNLESS OTHERWISE DETERMINED BY THE DEBTOR.**

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

**IF YOU HAVE ANY QUESTIONS CONCERNING THIS BENEFICIAL HOLDER BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AGENT BY TELEPHONE AT (646) 362-6336, OR EMAIL TO TABULATION@EPIQGLOBAL.COM WITH A REFERENCE TO "CREDIVALORES VOTING" IN THE SUBJECT LINE. THE CLAIMS AGENT IS NOT AUTHORIZED TO PROVIDE, AND WILL NOT PROVIDE, LEGAL OR FINANCIAL ADVICE.**

> **THE DEBTOR IS SEEKING CONFIRMATION OF THE PLAN AS PART OF A PREPACKAGED CHAPTER 11 CASE, AS DESCRIBED IN THE PREPACKAGED CHAPTER 11 CASE GUIDELINES OF THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (LOCAL RULE 3018-2). THE ACCEPTANCES AND REJECTIONS OF THE PLAN SET FORTH HEREIN THEREFORE WILL BE SUBJECT TO 11 U.S.C. § 1126(b) AND SUCH GUIDELINES. HOWEVER, IT IS IMPERATIVE THAT ALL DEADLINES SET FORTH HEREIN BE OBSERVED PENDING ANY FURTHER DETERMINATIONS BY THE COURT PRESIDING OVER SUCH CASE.**

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

## VOTING INSTRUCTIONS

1.  The Debtor is soliciting votes of Holders of Claims with respect to the Plan attached as **Annex B** to the Disclosure Statement. Capitalized terms used in the Beneficial Holder Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Plan. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BENEFICIAL HOLDER BALLOT.**

2.  The Court may confirm the Plan and thereby bind you to the terms of the Plan, if it is accepted by the Holders of two-thirds in amount and more than one-half in number of Claims in each Impaired Class of Claims entitled to vote on the Plan. In the event the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if it finds that the Plan accords fair and equitable treatment to the Class or Classes that have rejected the Plan and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3.  In Item 1, or elsewhere on the Beneficial Holder Ballot, your Claim amount is going to be pre-printed, in which case you are to review this amount and contact your Nominee if you believe your Claim amount for voting purposes has been listed in error.

4.  In the boxes provided in Item 2, please indicate whether you are a Qualified Holder or Non-Qualified Holder.

5.  In the boxes provided in Item 3 of the Beneficial Holder Ballot, please indicate acceptance or rejection of the Plan. If you vote to accept the Plan, you are specifically consenting to the releases contained in the Plan. Such releases include, but are not limited to, the releases contained in Article VIII of the Plan, which include the Release by Releasing Parties (*i.e.*, the Third-Party Release) of claims and causes of action against certain non-Debtor entities.

6.  If your Beneficial Holder Ballot is not received by your Nominee in sufficient time to be included on a timely submitted Master Ballot, it will not be counted unless the Debtor determines otherwise. In all cases, Beneficial Holders should allow sufficient time to assure timely delivery of your Beneficial Holder Ballot to your Nominee. Beneficial Holder Ballots must be returned in accordance with the instructions received.

7.  Please be sure to sign and date your Beneficial Holder Ballot. If you are signing a Beneficial Holder Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims Agent, the Debtor, or the Court, must submit proper evidence to the requesting party to so act on behalf of such holder.

8.  If you have submitted more than one Beneficial Holder Ballot for your Old Notes Claims, you *must* complete Item 5. Please note that the information provided in Items 1 and 5 must, taken together, identify all of your holdings of Old Notes Claims as of the Voting Record Date.

9.  If you conveyed more than one vote on the same Old Notes Claim, the last valid vote received by your Nominee will be deemed to reflect your intent to either accept or reject the Plan.

10. You may receive more than one Beneficial Holder Ballot if you hold Old Notes Claims through multiple Nominees. You must vote all of your Old Notes Claims to accept or reject the Plan in the same manner. Accordingly, if you submit more than one vote and the votes are not consistent, such votes shall not be counted.

11. If a Beneficial Holder Ballot is received <u>after</u> the Voting Deadline and if the Voting Deadline is not extended, it may be counted only in the discretion of the Debtor.

12. Additionally, the following Beneficial Holder Ballots will <u>not</u> be counted:

    a. any vote cast by an entity that does not hold Old Notes Claims as of the Voting Record Date;

    b. any vote sent to any party other than the Nominee (*e.g.*, the Debtor, any official committee, or the Court) or, in the case of a pre-validated Beneficial Holder Ballot, the Claims Agent;

    c. any vote superseded by another timely valid vote;

    d. any inconsistent or duplicate votes that are simultaneously cast with respect to the same Old Notes Claim;

    e. any vote (or group of votes from a single creditor) that partially rejects and partially accepts the Plan will not be counted;

    f. any Beneficial Holder Ballot not marked to accept or reject the Plan; or

    g. any Beneficial Holder Ballot marked both to accept and reject the Plan.

13. The Beneficial Holder Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to submit elections (if any). Accordingly, at this time, holders of Claims should not surrender certificates or instruments representing or evidencing their Claims, if any, and neither the Debtor nor the Claims Agent will accept delivery of any such certificates or instruments surrendered together with a Beneficial Holder Ballot.

14. The Beneficial Holder Ballot does not constitute and shall not be deemed a proof of Claim or Interest or an assertion of a Claim or Interest.

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN
US22555LAB27)

| From: | Operations <operations@formuepleje.dk> |
| Sent: | Wednesday, April 3, 2024 10:15 AM |
| To: | Operations; 'tabulation@epiqglobal.com'; 'alvaro.cunto@bcpsecurities.com'; 'bkhalitov@bcpsecurities.com'; 'jharper@bcpsecurities.com'; 'michael.fitzgerald@bakermckenzie.com'; 'paul.keenan@bakermckenzie.com' |
| Cc: | crdv.dpw.rx; JVillen@HL.com; ████████████; BBH CA RESPONSE TEAM; Operations |
| Subject: | Subject: Credivalores - Chapter 11 Plan Solicitation - Absalon EM Corporate Debt SICAV |
| Attachments: | 3498_001.pdf |

To Whom It May Concern:

Reference is made to that certain Offering Memorandum and Consent Solicitation (the "**Solicitation Materials**") launched by Credivalores – Crediservicios S.A. ("**Credivalores**" or the "**Company**") and dated as of March 7, 2024. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Solicitation Materials

I write on behalf of Absalon EM Corporate Debt SICAV (the "**Noteholder**"), which is the beneficial holder of $3,600,000 in principal amount of 8.875% Senior Dues due 2025 issued by Credivalores (the "**Existing Notes**") and am a member of an ad hoc group of Existing Note holders represented by Davis Polk and Houlihan Lokey. Proof of the Noteholder's Existing Notes position is available upon request.

The Noteholder attempted to timely vote its Claims to reject the Plan and opt out of the releases therein, but was unable to do so through its custodian.

In accordance with Bankruptcy Rule 3018(c), the Noteholder hereby votes all of its Claims to reject the Plan, as further set forth on the ballot attached hereto, a copy of which will be delivered to the Balloting Agent as well. The Noteholder, on behalf of itself, its affiliates, its representatives, and any other entity that could purport to grant a release under the Plan <u>expressly</u> opts out of the release contained in Section 8.4 of the Plan.

The Plan is unacceptable to the Noteholder because, among other reasons, the Plan contemplates that the Noteholder and other holders of Existing Notes will make material economic concessions while Interests will be Reinstated. We do not expect that the Plan can be consensually confirmed, so such a value transfer is plainly prohibited by the Bankruptcy Code. The Noteholder also objects to the Statement because, among other reasons, it provides little to no information as to how the Plan was negotiated and the events leading up to the commencement of the Plan Solicitation.

The Noteholder expressly reserves all rights with respect to the Existing Notes, the Exchange Offer, the Plan, the Statement, and any Chapter 11 Case, including the right to object to Confirmation and to Plan Solicitation.

Sincerely,


Med venlig hilsen/Best regards

████████████████

Controller

Direkte:
Mobil: ████████

1





Formuepleje A/S
Værkmestergade 25 // 8000 Aarhus C
Telefon: +45 87 46 49 00
formuepleje.dk

This e-mail may contain confidential information. If you are not the intended recipient, please notify the sender immediately and delete this e-mail. Any unauthorized disclosure and copying of this e-mail or parts of it is strictly forbidden.
Formuepleje does not accept responsibility for the accuracy and completeness of this e-mail or any attachments. If verification of this e-mail is sought please request a hard copy. Formuepleje can process personal data about you.
Please see our Privacy Policy on our website, www.formuepleje.dk.

Danish Company reg. no. (CVR) of Formuepleje A/S: 18 05 97 38.
Formuepleje Holding A/S is the mother company in the Formuepleje Group.

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CREDIVALORES – CREDISERVICIOS S.A.,[1] | Case No. 24-_____ (__) |
| Debtor. | |
| _____/ | |

**BENEFICIAL HOLDER BALLOT FOR ACCEPTING OR REJECTING THE PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION FOR CREDIVALORES – CREDISERVICIOS S.A.**

**CLASS A: OLD NOTES CLAIMS**

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT CAREFULLY <u>BEFORE</u> COMPLETING THIS BALLOT.

**THIS BENEFICIAL HOLDER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED IN ACCORDANCE WITH THE INSTRUCTIONS RECEIVED FROM YOUR NOMINEE SO THAT THE BALLOT OR A MASTER BALLOT REFLECTING YOUR VOTE IS <u>ACTUALLY RECEIVED</u> BY THE CLAIMS AGENT PRIOR TO 5:00 P.M. PREVAILING EASTERN TIME (NEW YORK CITY TIME) ON April 3, 2024 (THE "VOTING DEADLINE").**

The above-captioned debtor and debtor in possession (the "**Debtor**") intends to file a chapter 11 case in the above-captioned bankruptcy court (the "**Court**") and is soliciting votes with respect to the proposed *Debtor's Prepackaged Chapter 11 Plan* (as amended, supplemented or otherwise modified from time to time, the "**Plan**") and the *Disclosure Statement for the Plan* (as amended, supplemented, or otherwise modified from time to time, the "**Disclosure Statement**") pursuant to sections 1125 and 1126(b) of title 11 of the United States Code (the "**Bankruptcy Code**").[2]

Please use this ballot (the "**Beneficial Holder Ballot**") to cast your vote to accept or reject the Plan if you are, as of March 7, 2024 (the "**Voting Record Date**") a beneficial holder of an **Old Notes Claim** in Class A (each, a "**Beneficial Holder**").

**Only Holders holding Old Notes Claims may vote to accept or reject the Plan using this Beneficial Holder Ballot.**

The Plan can be confirmed by the Court and thereby made binding on you, whether or not you vote, if the Plan (i) is accepted by the Holders of at least two-thirds in amount and more than one-half in number of the

---

[1] The address for Credivalores – Crediservicios S.A. is Carrera 7 #76-35, 7th Floor, Bogota Colombia.

[2] Capitalized terms otherwise undefined herein have the meanings ascribed to them in the Disclosure Statement and Plan, as applicable.

claims in each impaired Class of claims who vote on the Plan and (ii) otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Court nonetheless may confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

Your rights are described in the Disclosure Statement, which is accessible from the Debtor's restructuring website at https://dm.epiq11.com/Credivalores (the "**Restructuring Website**"), along with copies of the Plan and certain other materials. If you desire paper copies, or if you need to obtain additional solicitation packages, you may (a) contact the Debtor's claims and balloting agent (the "**Claims Agent**"), Epiq Corporate Restructuring LLC ("**Epiq**"), at (646) 362-6336, or by email at tabulation@epiqglobal.com with a reference to "Credivalores Voting" in the subject line, or (b) once the Chapter 11 Case has been filed, you may download such documents (excluding ballots) from the Debtor's Restructuring Website, free of charge. Copies of these documents may also be obtained for a fee via PACER (account required) at https://www.nysb.uscourts.gov/. Please be advised that the Claims Agent is not permitted to provide legal advice.

This Beneficial Holder Ballot may not be used for any purpose other than casting a vote to accept or reject the Plan, making certain decisions regarding releases and making certain certifications. If you believe that you have received this Beneficial Holder Ballot in error, or if you believe that you have received the wrong Beneficial Holder Ballot, please contact your Nominee at the number and address they have provided.

Nothing contained herein or in the enclosed documents shall render you or any other entity the agent of the Debtor or the Claims Agent or authorize you or any other entity to use any document or make any statements on behalf of the Debtor with respect to the Plan, except for the statements contained in the documents enclosed herewith.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class A. If you hold Claims through more than one Nominee, you will receive a Beneficial Holder Ballot for each Claim in which you are entitled to vote.

If the Plan is confirmed by the Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must complete, sign and return this Beneficial Holder Ballot to your Nominee so that your Nominee has sufficient time to submit a Master Ballot to the Claims Agent by the Voting Deadline indicated above. Your Nominee may also provide a pre-validated Beneficial Holder Ballot with instructions for you to complete and return the pre-validated Beneficial Holder Ballot directly to the Claims Agent.

***PLEASE SUBMIT YOUR BENEFICIAL HOLDER BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE, WHICH MAY INCLUDE (I) SUBMITTING THIS BENEFICIAL HOLDER BALLOT OR (II) CONVEYING YOUR VOTE VIA E-MAIL, TELEPHONE, INTERNET APPLICATION, FACSIMILE, VOTER INFORMATION FORM, OR OTHER ACCEPTED AND CUSTOMARY MEANS OF DELIVERING SUCH INFORMATION TO YOUR NOMINEE.***

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

PLEASE COMPLETE ITEMS 1 THROUGH 6. IF THIS BENEFICIAL HOLDER BALLOT IS NOT SIGNED ON THE APPROPRIATE LINES BELOW, THIS BENEFICIAL HOLDER BALLOT **WILL NOT** BE VALID OR COUNTED AS HAVING BEEN CAST.

## Item 1. Amount of Claim

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of an Old Notes Claim in Class A in the following aggregate unpaid principal amount:

$ 3,600,000

## Item 2. Holder Status

The Holder of the Old Notes Claim in Class A certifies that as of the Voting Record Date, the undersigned (please check only one box):

☒ Is a **"Qualified Holder"** meaning such Holder is:

(1) located in the United States, and is a "Qualified Institutional Buyer" as such term is defined in Rule 144A under the Securities Act acknowledging that it will be receiving "restricted securities" within the meaning of Rule 144 under the Securities Act; or

(2) not a "U.S. Person" as defined in Rule 902(k) under the Securities Act and is qualified to participate in the Exchange Offer, in accordance with the laws of its jurisdiction of location or residence.

**OR**

☐ Is a "**Non-Qualified Holder**" meaning, any Holder of an Allowed Old Notes Claim that is not a Qualified Holder.

## Item 3. Vote on Plan

The Holder of the Claim in Class A set forth in Item 1 votes to (please check only one box):

| ☐ **ACCEPT** (vote FOR) the Plan | ☒ **REJECT** (vote AGAINST) the Plan |
|---|---|

**SUBJECT TO THE LIMITATIONS SET FORTH HEREIN, YOU HAVE THE RIGHT TO OPT IN TO THE THIRD-PARTY RELEASE (AS DEFINED BELOW) SET FORTH IN SECTION 8.4 OF THE PLAN.**

**IF YOU VOTE TO ACCEPT THE PLAN, YOU SHALL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE.**

3

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

**IF YOU VOTE TO REJECT THE PLAN, YOU MAY STILL CONSENT TO GIVE THE THIRD-PARTY RELEASE SET FORTH IN <u>ARTICLE VIII</u> OF THE PLAN BY ELECTING THE OPT IN OPTION BELOW.**

**IF YOU EXECUTE AND RETURN YOUR BENEFICIAL HOLDER BALLOT WITHOUT A VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY STILL CONSENT TO GIVE THE THIRD-PARTY RELEASE SET FORTH IN <u>ARTICLE VIII</u> OF THE PLAN BY ELECTING THE OPT IN OPTION BELOW.**

**YOUR DECISION TO OPT IN (OR NOT OPT IN) TO GIVING THE THIRD-PARTY RELEASE WILL NOT AFFECT ANY DISTRIBUTION YOU MAY RECEIVE IF THE PLAN IS ULTIMATELY CONFIRMED.**

<u>**Item 4. Important Information Regarding the Release by Certain Holders of Claims**</u>

**THE PLAN CONTAINS RELEASES. PARTIES SHOULD BE AWARE THAT, IF THE PLAN IS CONFIRMED and if the Effective Date occurs, the Released Parties, as defined in <u>Section 1.1.73</u> of the Plan and as reproduced below, will be receiving releases and certain parties will be giving releases and be bound by injunctions as set forth in <u>Article VIII</u> of the Plan, and with respect to the releases described in <u>Article VIII</u> of the Plan and reproduced below, they are automatically deemed to have consented to the release provisions of the Plan, if either vote to accept the Plan. For the avoidance of doubt, a Holder of a Claim or Interest that votes to accept the Plan shall be automatically deemed to have given the releases irrespective of whether such Holder elects to opt in to the Third-Party Release.**

To provide additional information regarding the Third-Party Release, the following Sections of the Plan have been copied immediately below: <u>Section 1.1.38</u> (Exculpated Claim); <u>Section 1.1.39</u> (Exculpated Party); Section 1.1.73 (Released Party); <u>Section 1.1.74</u> (Releasing Party); <u>Section 8.2</u> (Discharge of Claims and Termination of Interests); <u>Section 8.3</u> (Releases by the Debtor); <u>Section 8.4</u> (Releases by the Releasing Parties); <u>Section 8.5</u> (Exculpation); and <u>Section 8.6</u> (Injunction). To the extent of any discrepancy between the following and the corresponding sections in the Plan, including any modifications or amendments thereto, the sections in the Plan control. Please carefully review the following.

<u>**Relevant Definitions:**</u>

"***Exculpated Claim***" means any Claim related to any act or omission in connection with, relating to, or arising out of the Debtor's in-court or out-of-court efforts to negotiate, enter into or implement the Chapter 11 Case, the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with or pursuant to the Disclosure Statement or the Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation, the administration and implementation of the Plan, or the distribution of property under the Plan.

"***Exculpated Party***" means each of the following in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; (c) the Trustee; (d) the Holders of Interests; and (e) with respect to each of the foregoing Entities in clauses (a) through (d) such Entity's predecessors, successors and assigns and current and former Affiliates, subsidiaries, officers, directors, members, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals.

4

"**Released Party**" means each of the following: (a) the Debtor; (b) the Trustee; (c) the Holders of Interests; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's successors and assigns, and current and former Affiliates, subsidiaries, officers, directors, members, stockholders, partners, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such.

"**Releasing Party**" means each of the following: (a) the Holders of Impaired Claims or Interests that (i) affirmatively vote to accept the Plan or (ii) abstain from voting on the Plan; (b) to the fullest extent permissible under applicable law, the Holders of Unimpaired Claims or Interests; (c) the Trustee; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's successors and assigns, and current and former Affiliates, subsidiaries, officers, directors, members, stockholders, partners, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such.

**Relevant Provisions:**

Section 8.2 of the Plan provides for the discharge of Claims and termination of Interests (the "Discharge"):

**Except as otherwise provided for herein and effective as of the Effective Date: (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor or any of its assets, property, or Estate; (b) the Plan shall bind all Holders of Claims and Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtor's liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtor, the Debtor's Estate, the Reorganized Debtor, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.**

Section 8.3 of the Plan provides for the Debtor's release of the Released Parties (the "**Debtor Release**"):

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise expressly provided herein, for good and valuable consideration, as of the Effective Date, to the extent permitted by applicable laws, the Released Parties are conclusively, absolutely, unconditionally, irrevocably, and forever deemed released and discharged by the Debtor, the Reorganized Debtor, and the Debtor's Estate from any and all actions, Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, asserted or that could possibly have been asserted on behalf of the Debtor, that the Debtor, Reorganized Debtor, or the Debtor's Estate, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in, or under, in whole or in part, the Debtor, the Chapter 11 Case, the Old Notes, the Old Notes Indenture, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that**

5

is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests prior to or during the Chapter 11 Case, the negotiation, formulation, solicitation, or preparation of the Disclosure Statement, the Plan, the Plan Supplement, or related agreements, instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, however, that the foregoing provisions of this Section 8.3 shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction; provided further that nothing in this Section 8.3 shall release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement, or otherwise given effect under, the Plan, including the New Notes and any other agreement or document related thereto or entered into in connection therewith, as applicable.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this Section 8.3, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by this Section 8.3; (c) in the best interests of the Debtor and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to the Debtor asserting any Claim or Cause of Action released by this Section 8.3.

Section 8.4 of the Plan provides for the Releases by the Releasing Parties (the "**Third-Party Release**"):

As of the Effective Date, to the extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtor, the Reorganized Debtor, the Estate, the Released Parties and each such Entity's successors and assigns, current and former affiliates, subsidiaries, officers, directors, members, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such, and only if such Persons occupied any such positions at any time on or after the Petition Date, from any and all Claims, Interests, obligations, rights, liabilities, actions, causes of action, choses in action, suits, debts, demands, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including all claims and actions against any Entities under the Bankruptcy Code) whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity asserted or that could possibly have been asserted, or would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the Old Notes, the Old Notes Indenture, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Releasing Party, the restructuring of

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

Claims and Interests prior to or during the Chapter 11 Case, the negotiation, formulation, solicitation, or preparation of the Disclosure Statement, the Plan, the Plan Supplement, or related agreements, instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; **provided, however,** that the foregoing provisions of this **Section 8.4** shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction; **provided further** that nothing in this **Section 8.4** shall release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement, or otherwise given effect under, the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this **Section 8.4,** which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) important to the Plan; (b) in exchange for the good and valuable consideration provided by the Debtor, the Reorganized Debtor, the Estate and the Released Parties; (c) a good faith settlement and compromise of the Claims released by this **Section 8.4;** (d) in the best interests of the Debtor and all Holders of Claims and Interests; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; and (g) a bar to any Entity granting a release under this **Section 8.4** from asserting any Claim or Cause of Action released by this **Section 8.4.**

Section 8.5 of the Plan provides for the exculpation of Exculpated Parties (the "**Exculpation**"):

No Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim; **provided, however,** that the foregoing "exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted fraud, gross negligence, or willful misconduct; **provided, further,** that in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to, or in connection with, the Plan. The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of acceptances and rejections of the Plan and the making of distributions pursuant to the Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable, law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

Section 8.6 of the Plan provides for a permanent injunction with respect to actions against the Released Parties and the Exculpated Parties (the "**Injunction**"):

Except as otherwise provided herein or for obligations issued pursuant hereto, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to **Section 8.3** or **Section 8.4,** discharged pursuant to **Section 8.2,** or are subject to exculpation pursuant to **Section 8.5** are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order

7

against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, exculpated, or settled pursuant to the Plan.

**The Holder of the Class A Old Notes Claim set forth in <u>Item 1</u> elects to:**

---

☐   Opt In to the Third-Party Release

---

**<u>Item 5. Certifications as to Old Notes Claims Held in Additional Accounts with Other Nominees.</u>**

By completing and returning this Beneficial Holder Ballot, the undersigned Beneficial Holder certifies that either: (a) it has not submitted any other Beneficial Holder Ballot in respect of its Old Notes Claims held in other accounts or other record names, or (b) it has provided the information specified in the following table for all other Old Notes Claims for which it has submitted additional Beneficial Holder Ballots, each of which indicates the same vote to accept or reject the Plan (please use additional sheets of paper if necessary):

ONLY COMPLETE THIS SECTION IF YOU HAVE VOTED OTHER OLD NOTES CLAIMS ON A BALLOT OTHER THAN THIS BENEFICIAL HOLDER BALLOT.

(Please complete the information requested below. Attach additional sheets if necessary.)

| Account Number or Beneficial Holder Name of Other Claims Voted | Name of Record Holder or Nominee | Principal Amount of Other Old Note Claims Voted | CUSIP of Other Old Notes Claims Voted |
|---|---|---|---|
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |

To be counted, a Beneficial Holder must vote *ALL* of its Old Notes Claims either to accept or reject the Plan. No split votes will be permitted.

8

Credivalores – Crediservicios S.A.
Class A: Old Notes Claim
BENEFICIAL BALLOT

**Item 6.Acknowledgements.** By signing this Beneficial Holder Ballot, the undersigned (i) acknowledges receipt of the Disclosure Statement, Plan and the other applicable solicitation materials and certifies that the undersigned, as of the Voting Record Date, (ii) is the Beneficial Holder or has the power and authority to vote to accept or reject the Plan on behalf of the Beneficial Holder, and (iii) acknowledges that the undersigned has cast the same vote with respect to all Old Notes Claims in a single Class, and that no other Beneficial Holder Ballots with respect to the amount of the Old Note Claims identified in Item 1 above have been cast or, if any other Beneficial Holder Ballots have been cast with respect to such Claims, then any such earlier received Ballots are hereby revoked. The undersigned understands that, if this Beneficial Holder Ballot is otherwise validly executed but is not timely submitted, does not indicate either acceptance or rejection of the Plan or indicates both an acceptance and rejection of the Plan, this Beneficial Holder Ballot will not be counted as having been cast.



| | |
|---|---|
| Name of Beneficial Holder: | Absalon EM Corporate Debt SICAV |
| Signature: | |
| Name of Signatory (if different than Beneficial Holder): | Head of Operations |
| If authorized by Agent, Title of Agent: | |
| Street Address: | 15, RUE DE FLAXWEILER GREVENMACHER L-6776 |
| City, State, Zip Code: | 6776 Potaschberg Grevenmacher, Luxembourg |
| Country: | Luxembourg |
| Telephone Number: | |
| Email Address: | operations@formuepleje.dk |
| Date Completed | 03/04/2024 |

**PLEASE COMPLETE, SIGN, AND DATE THIS BENEFICIAL HOLDER BALLOT AND RETURN IT PROMPTLY IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE. IF THE CLAIMS AGENT DOES NOT ACTUALLY RECEIVE THE MASTER BALLOT REFLECTING THE VOTE CAST ON THIS BENEFICIAL HOLDER BALLOT (OR YOUR PRE-VALIDATED BENEFICIAL HOLDER BALLOT, IF APPLICABLE) ON OR BEFORE THE VOTING DEADLINE, AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE WILL NOT BE COUNTED, UNLESS OTHERWISE DETERMINED BY THE DEBTOR.**

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

**IF YOU HAVE ANY QUESTIONS CONCERNING THIS BENEFICIAL HOLDER BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AGENT BY TELEPHONE AT (646) 362-6336, OR EMAIL TO TABULATION@EPIQGLOBAL.COM WITH A REFERENCE TO "CREDIVALORES VOTING" IN THE SUBJECT LINE. THE CLAIMS AGENT IS NOT AUTHORIZED TO PROVIDE, AND WILL NOT PROVIDE, LEGAL OR FINANCIAL ADVICE.**

> **THE DEBTOR IS SEEKING CONFIRMATION OF THE PLAN AS PART OF A PREPACKAGED CHAPTER 11 CASE, AS DESCRIBED IN THE PREPACKAGED CHAPTER 11 CASE GUIDELINES OF THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (LOCAL RULE 3018-2). THE ACCEPTANCES AND REJECTIONS OF THE PLAN SET FORTH HEREIN THEREFORE WILL BE SUBJECT TO 11 U.S.C. § 1126(b) AND SUCH GUIDELINES. HOWEVER, IT IS IMPERATIVE THAT ALL DEADLINES SET FORTH HEREIN BE OBSERVED PENDING ANY FURTHER DETERMINATIONS BY THE COURT PRESIDING OVER SUCH CASE.**

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

## VOTING INSTRUCTIONS

1. The Debtor is soliciting votes of Holders of Claims with respect to the Plan attached as **Annex B** to the Disclosure Statement. Capitalized terms used in the Beneficial Holder Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Plan. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BENEFICIAL HOLDER BALLOT.**

2. The Court may confirm the Plan and thereby bind you to the terms of the Plan, if it is accepted by the Holders of two-thirds in amount and more than one-half in number of Claims in each Impaired Class of Claims entitled to vote on the Plan. In the event the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if it finds that the Plan accords fair and equitable treatment to the Class or Classes that have rejected the Plan and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3. In Item 1, or elsewhere on the Beneficial Holder Ballot, your Claim amount is going to be pre-printed, in which case you are to review this amount and contact your Nominee if you believe your Claim amount for voting purposes has been listed in error.

4. In the boxes provided in Item 2, please indicate whether you are a Qualified Holder or Non-Qualified Holder.

5. In the boxes provided in Item 3 of the Beneficial Holder Ballot, please indicate acceptance or rejection of the Plan. If you vote to accept the Plan, you are specifically consenting to the releases contained in the Plan. Such releases include, but are not limited to, the releases contained in Article VIII of the Plan, which include the Release by Releasing Parties (*i.e.*, the Third-Party Release) of claims and causes of action against certain non-Debtor entities.

6. If your Beneficial Holder Ballot is not received by your Nominee in sufficient time to be included on a timely submitted Master Ballot, it will not be counted unless the Debtor determines otherwise. In all cases, Beneficial Holders should allow sufficient time to assure timely delivery of your Beneficial Holder Ballot to your Nominee. Beneficial Holder Ballots must be returned in accordance with the instructions received.

7. Please be sure to sign and date your Beneficial Holder Ballot. If you are signing a Beneficial Holder Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims Agent, the Debtor, or the Court, must submit proper evidence to the requesting party to so act on behalf of such holder.

8. If you have submitted more than one Beneficial Holder Ballot for your Old Notes Claims, you ***must*** complete Item 5. Please note that the information provided in Items 1 and 5 must, taken together, identify all of your holdings of Old Notes Claims as of the Voting Record Date.

9. If you conveyed more than one vote on the same Old Notes Claim, the last valid vote received by your Nominee will be deemed to reflect your intent to either accept or reject the Plan.

10. You may receive more than one Beneficial Holder Ballot if you hold Old Notes Claims through multiple Nominees. You must vote all of your Old Notes Claims to accept or reject the Plan in the same manner. Accordingly, if you submit more than one vote and the votes are not consistent, such votes shall not be counted.

11.    If a Beneficial Holder Ballot is received <u>after</u> the Voting Deadline and if the Voting Deadline is not extended, it may be counted only in the discretion of the Debtor.

12.    Additionally, the following Beneficial Holder Ballots will <u>not</u> be counted:

   a.    any vote cast by an entity that does not hold Old Notes Claims as of the Voting Record Date;

   b.    any vote sent to any party other than the Nominee (*e.g.*, the Debtor, any official committee, or the Court) or, in the case of a pre-validated Beneficial Holder Ballot, the Claims Agent;

   c.    any vote superseded by another timely valid vote;

   d.    any inconsistent or duplicate votes that are simultaneously cast with respect to the same Old Notes Claim;

   e.    any vote (or group of votes from a single creditor) that partially rejects and partially accepts the Plan will not be counted;

   f.    any Beneficial Holder Ballot not marked to accept or reject the Plan; or

   g.    any Beneficial Holder Ballot marked both to accept and reject the Plan.

13.    The Beneficial Holder Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to submit elections (if any). Accordingly, at this time, holders of Claims should not surrender certificates or instruments representing or evidencing their Claims, if any, and neither the Debtor nor the Claims Agent will accept delivery of any such certificates or instruments surrendered together with a Beneficial Holder Ballot.

14.    The Beneficial Holder Ballot does not constitute and shall not be deemed a proof of Claim or Interest or an assertion of a Claim or Interest.

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

**Exhibit F**

**Julius Baer's Beneficial**

**Holder Vote**

| From: | ████████████████ @juliusbaer.com> |
|---|---|
| Sent: | Tuesday, April 2, 2024 8:49 AM |
| To: | tabulation@epiqglobal.com; alvaro.cunto@bcpsecurities.com; bkhalitov@bcpsecurities.com; jharper@bcpsecurities.com; michael.fitzgerald@bakermckenzie.com; paul.keenan@bakermckenzie.com |
| Cc: | crdv.dpw.rx; JVillen@HL.com; ████████ ; ████████ ; edin-ca-response |
| Subject: | Credivalores - Chapter 11 Plan Solicitation - Julius Baer Fixed Income Emerging Markets Corporate Fund |
| Attachments: | Credivalores - Beneficial Ballot (JB FI EM Corp).pdf |

*Confidential – Subject to FRE 408 and Its Equivalents*

To Whom It May Concern:

Reference is made to that certain Offering Memorandum and Consent Solicitation (the "**Solicitation Materials**") launched by Credivalores – Crediservicios S.A. ("**Credivalores**" or the "**Company**") and dated as of March 7, 2024. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Solicitation Materials

I write on behalf of Julius Baer Fixed Income Emerging Markets Corporate Fund (the "**Noteholder**"), which is the beneficial holder of $3,500,000 in principal amount of 8.875% Senior Dues due 2025 issued by Credivalores (the "**Existing Notes**") and am a member of an ad hoc group of Existing Note holders represented by Davis Polk and Houlihan Lokey. Proof of the Firm's Existing Notes position is available upon request.

The Noteholder attempted to timely vote its Claims to reject the Plan and opt out of the releases therein, but was unable to do so through its custodian.

In accordance with Bankruptcy Rule 3018(c), the Noteholder hereby votes all of its Claims to reject the Plan, as further set forth on the ballot attached hereto, a copy of which will be delivered to the Balloting Agent as well. The Noteholder, on behalf of itself, its affiliates, its representatives, and any other entity that could purport to grant a release under the Plan expressly opts out of the release contained in Section 8.4 of the Plan.

The Plan is unacceptable to the Noteholder because, among other reasons, the Plan contemplates that the Noteholder and other holders of Existing Notes will make material economic concessions while Interests will be Reinstated. We do not expect that the Plan can be consensually confirmed, so such a value transfer is plainly prohibited by the Bankruptcy Code. The Noteholder also objects to the Statement because, among other reasons, it provides little to no information as to how the Plan was negotiated and the events leading up to the commencement of the Plan Solicitation.

The Noteholder expressly reserves all rights with respect to the Existing Notes, the Exchange Offer, the Plan, the Statement, and any Chapter 11 Case, including the right to object to Confirmation and to Plan Solicitation.

Sincerely,

████████ , CFA
Executive Director
Senior EM Fixed Income Portfolio Manager

**Bank Julius Baer & Co. Ltd.**
Morgartenstrasse 1, P.O. Box,

8010 Zurich, Switzerland
T █████████████████
www.juliusbaer.com

*****JuliusBaer Disclaimer*****
This e-mail may contain confidential or privileged information. If you have received this e-mail by mistake, please contact us immediately and completely delete it (and any attachments) and do not forward it or inform any other person of its contents. If you send us messages by e-mail, we take this as your authorisation to correspond with you by e-mail, however, we reserve the right not to execute orders and instructions transmitted by e-mail at any time and without further explanation. If you do not wish to receive any further e-mail correspondence, please let us know. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, amended, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Neither the Julius Baer Group nor the sender accept liability for any errors or omissions in the content of this message which arise as a result of its e-mail transmission. Please note that all e-mail communications to and from the Julius Baer Group may be monitored. This communication is for informational purposes only. It is not intended as an offer or solicitation for the purchase or sale of any financial instrument or as an official confirmation of any transaction. Please find our client privacy notices here .

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CREDIVALORES – CREDISERVICIOS S.A.,[1] | Case No. 24-__________ (__) |
| Debtor. | |
| ____________________________________/ | |

**BENEFICIAL HOLDER BALLOT FOR ACCEPTING OR REJECTING THE PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION FOR CREDIVALORES – CREDISERVICIOS S.A.**

**CLASS A: OLD NOTES CLAIMS**

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT CAREFULLY BEFORE COMPLETING THIS BALLOT.

**THIS BENEFICIAL HOLDER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED IN ACCORDANCE WITH THE INSTRUCTIONS RECEIVED FROM YOUR NOMINEE SO THAT THE BALLOT OR A MASTER BALLOT REFLECTING YOUR VOTE IS ACTUALLY RECEIVED BY THE CLAIMS AGENT PRIOR TO 5:00 P.M. PREVAILING EASTERN TIME (NEW YORK CITY TIME) ON April 3, 2024 (THE "VOTING DEADLINE").**

The above-captioned debtor and debtor in possession (the "**Debtor**") intends to file a chapter 11 case in the above-captioned bankruptcy court (the "**Court**") and is soliciting votes with respect to the proposed *Debtor's Prepackaged Chapter 11 Plan* (as amended, supplemented or otherwise modified from time to time, the "**Plan**") and the *Disclosure Statement for the Plan* (as amended, supplemented, or otherwise modified from time to time, the "**Disclosure Statement**") pursuant to sections 1125 and 1126(b) of title 11 of the United States Code (the "**Bankruptcy Code**").[2]

Please use this ballot (the "**Beneficial Holder Ballot**") to cast your vote to accept or reject the Plan if you are, as of March 7, 2024 (the "**Voting Record Date**") a beneficial holder of an **Old Notes Claim** in Class A (each, a "**Beneficial Holder**").

**Only Holders holding Old Notes Claims may vote to accept or reject the Plan using this Beneficial Holder Ballot.**

The Plan can be confirmed by the Court and thereby made binding on you, whether or not you vote, if the Plan (i) is accepted by the Holders of at least two-thirds in amount and more than one-half in number of the

[1] The address for Credivalores – Crediservicios S.A. is Carrera 7 #76-35, 7th Floor, Bogota Colombia.

[2] Capitalized terms otherwise undefined herein have the meanings ascribed to them in the Disclosure Statement and Plan, as applicable.

claims in each impaired Class of claims who vote on the Plan and (ii) otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Court nonetheless may confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

Your rights are described in the Disclosure Statement, which is accessible from the Debtor's restructuring website at https://dm.epiq11.com/Credivalores (the "**Restructuring Website**"), along with copies of the Plan and certain other materials. If you desire paper copies, or if you need to obtain additional solicitation packages, you may (a) contact the Debtor's claims and balloting agent (the "**Claims Agent**"), Epiq Corporate Restructuring LLC ("**Epiq**"), at (646) 362-6336, or by email at tabulation@epiqglobal.com with a reference to "Credivalores Voting" in the subject line, or (b) once the Chapter 11 Case has been filed, you may download such documents (excluding ballots) from the Debtor's Restructuring Website, free of charge. Copies of these documents may also be obtained for a fee via PACER (account required) at https://www.nysb.uscourts.gov/. Please be advised that the Claims Agent is not permitted to provide legal advice.

This Beneficial Holder Ballot may not be used for any purpose other than casting a vote to accept or reject the Plan, making certain decisions regarding releases and making certain certifications. If you believe that you have received this Beneficial Holder Ballot in error, or if you believe that you have received the wrong Beneficial Holder Ballot, please contact your Nominee at the number and address they have provided.

Nothing contained herein or in the enclosed documents shall render you or any other entity the agent of the Debtor or the Claims Agent or authorize you or any other entity to use any document or make any statements on behalf of the Debtor with respect to the Plan, except for the statements contained in the documents enclosed herewith.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class A. If you hold Claims through more than one Nominee, you will receive a Beneficial Holder Ballot for each Claim in which you are entitled to vote.

If the Plan is confirmed by the Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must complete, sign and return this Beneficial Holder Ballot to your Nominee so that your Nominee has sufficient time to submit a Master Ballot to the Claims Agent by the Voting Deadline indicated above. Your Nominee may also provide a pre-validated Beneficial Holder Ballot with instructions for you to complete and return the pre-validated Beneficial Holder Ballot directly to the Claims Agent.

*PLEASE SUBMIT YOUR BENEFICIAL HOLDER BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE, WHICH MAY INCLUDE (I) SUBMITTING THIS BENEFICIAL HOLDER BALLOT OR (II) CONVEYING YOUR VOTE VIA E-MAIL, TELEPHONE, INTERNET APPLICATION, FACSIMILE, VOTER INFORMATION FORM, OR OTHER ACCEPTED AND CUSTOMARY MEANS OF DELIVERING SUCH INFORMATION TO YOUR NOMINEE.*

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

---

PLEASE COMPLETE <u>ITEMS 1 THROUGH 6</u>. IF THIS BENEFICIAL HOLDER BALLOT IS NOT
SIGNED ON THE APPROPRIATE LINES BELOW, THIS BENEFICIAL HOLDER BALLOT **WILL
NOT** BE VALID OR COUNTED AS HAVING BEEN CAST.

---

## Item 1. Amount of Claim

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of an
Old Notes Claim in Class A in the following aggregate unpaid principal amount:

$ **3,500,000**

## Item 2. Holder Status

The Holder of the Old Notes Claim in Class A certifies that as of the Voting Record Date, the undersigned
(please check only one box):

☑ Is a "**Qualified Holder**" meaning such Holder is:

(1) located in the United States, and is a "Qualified Institutional Buyer" as such term is
defined in Rule 144A under the Securities Act acknowledging that it will be receiving
"restricted securities" within the meaning of Rule 144 under the Securities Act; or

(2) not a "U.S. Person" as defined in Rule 902(k) under the Securities Act and is qualified to
participate in the Exchange Offer, in accordance with the laws of its jurisdiction of
location or residence.

**OR**

☐ Is a "**Non-Qualified Holder**" meaning, any Holder of an Allowed Old Notes Claim that is
not a Qualified Holder.

## Item 3. Vote on Plan

The Holder of the Claim in Class A set forth in <u>Item 1</u> votes to (please check only one box):

| ☐ **ACCEPT** (vote FOR) the Plan | ☑ **REJECT** (vote AGAINST) the Plan |
|---|---|

**SUBJECT TO THE LIMITATIONS SET FORTH HEREIN, YOU HAVE THE RIGHT TO OPT IN
TO THE THIRD-PARTY RELEASE (AS DEFINED BELOW) SET FORTH IN <u>SECTION 8.4</u> OF
THE PLAN.**

**IF YOU VOTE TO ACCEPT THE PLAN, YOU SHALL BE DEEMED TO HAVE CONSENTED
TO THE THIRD-PARTY RELEASE.**

3

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN
US22555LAB27)

**IF YOU VOTE TO REJECT THE PLAN, YOU MAY STILL CONSENT TO GIVE THE THIRD-PARTY RELEASE SET FORTH IN <u>ARTICLE VIII</u> OF THE PLAN BY ELECTING THE OPT IN OPTION BELOW.**

**IF YOU EXECUTE AND RETURN YOUR BENEFICIAL HOLDER BALLOT WITHOUT A VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY STILL CONSENT TO GIVE THE THIRD-PARTY RELEASE SET FORTH IN <u>ARTICLE VIII</u> OF THE PLAN BY ELECTING THE OPT IN OPTION BELOW.**

**YOUR DECISION TO OPT IN (OR NOT OPT IN) TO GIVING THE THIRD-PARTY RELEASE WILL NOT AFFECT ANY DISTRIBUTION YOU MAY RECEIVE IF THE PLAN IS ULTIMATELY CONFIRMED.**

### <u>Item 4. Important Information Regarding the Release by Certain Holders of Claims</u>

**THE PLAN CONTAINS RELEASES. PARTIES SHOULD BE AWARE THAT, IF THE PLAN IS CONFIRMED and if the Effective Date occurs, the Released Parties, as defined in <u>Section 1.1.73</u> of the Plan and as reproduced below, will be receiving releases and certain parties will be giving releases and be bound by injunctions as set forth in <u>Article VIII</u> of the Plan, and with respect to the releases described in <u>Article VIII</u> of the Plan and reproduced below, they are automatically deemed to have consented to the release provisions of the Plan, if either vote to accept the Plan. For the avoidance of doubt, a Holder of a Claim or Interest that votes to accept the Plan shall be automatically deemed to have given the releases irrespective of whether such Holder elects to opt in to the Third-Party Release.**

To provide additional information regarding the Third-Party Release, the following Sections of the Plan have been copied immediately below: <u>Section 1.1.38</u> (Exculpated Claim); <u>Section 1.1.39</u> (Exculpated Party); Section 1.1.73 (Released Party); <u>Section 1.1.74</u> (Releasing Party); <u>Section 8.2</u> (Discharge of Claims and Termination of Interests); <u>Section 8.3</u> (Releases by the Debtor); <u>Section 8.4</u> (Releases by the Releasing Parties); <u>Section 8.5</u> (Exculpation); and <u>Section 8.6</u> (Injunction). To the extent of any discrepancy between the following and the corresponding sections in the Plan, including any modifications or amendments thereto, the sections in the Plan control. Please carefully review the following.

#### <u>Relevant Definitions:</u>

"*Exculpated Claim*" means any Claim related to any act or omission in connection with, relating to, or arising out of the Debtor's in-court or out-of-court efforts to negotiate, enter into or implement the Chapter 11 Case, the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with or pursuant to the Disclosure Statement or the Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation, the administration and implementation of the Plan, or the distribution of property under the Plan.

"*Exculpated Party*" means each of the following in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; (c) the Trustee; (d) the Holders of Interests; and (e) with respect to each of the foregoing Entities in clauses (a) through (d) such Entity's predecessors, successors and assigns and current and former Affiliates, subsidiaries, officers, directors, members, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals.

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

"***Released Party***" means each of the following: (a) the Debtor; (b) the Trustee; (c) the Holders of Interests; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's successors and assigns, and current and former Affiliates, subsidiaries, officers, directors, members, stockholders, partners, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such.

"***Releasing Party***" means each of the following: (a) the Holders of Impaired Claims or Interests that (i) affirmatively vote to accept the Plan or (ii) abstain from voting on the Plan; (b) to the fullest extent permissible under applicable law, the Holders of Unimpaired Claims or Interests; (c) the Trustee; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's successors and assigns, and current and former Affiliates, subsidiaries, officers, directors, members, stockholders, partners, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such.

**Relevant Provisions:**

Section 8.2 of the Plan provides for the discharge of Claims and termination of Interests (the "**Discharge**"):

**Except as otherwise provided for herein and effective as of the Effective Date: (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor or any of its assets, property, or Estate; (b) the Plan shall bind all Holders of Claims and Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtor's liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtor, the Debtor's Estate, the Reorganized Debtor, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.**

Section 8.3 of the Plan provides for the Debtor's release of the Released Parties (the "**Debtor Release**"):

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise expressly provided herein, for good and valuable consideration, as of the Effective Date, to the extent permitted by applicable laws, the Released Parties are conclusively, absolutely, unconditionally, irrevocably, and forever deemed released and discharged by the Debtor, the Reorganized Debtor, and the Debtor's Estate from any and all actions, Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, asserted or that could possibly have been asserted on behalf of the Debtor, that the Debtor, Reorganized Debtor, or the Debtor's Estate, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in, or under, in whole or in part, the Debtor, the Chapter 11 Case, the Old Notes, the Old Notes Indenture, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that**

5

is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests prior to or during the Chapter 11 Case, the negotiation, formulation, solicitation, or preparation of the Disclosure Statement, the Plan, the Plan Supplement, or related agreements, instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, however, that the foregoing provisions of this Section 8.3 shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction; provided further that nothing in this Section 8.3 shall release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement, or otherwise given effect under, the Plan, including the New Notes and any other agreement or document related thereto or entered into in connection therewith, as applicable.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this Section 8.3, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by this Section 8.3; (c) in the best interests of the Debtor and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to the Debtor asserting any Claim or Cause of Action released by this Section 8.3.

Section 8.4 of the Plan provides for the Releases by the Releasing Parties (the "Third-Party Release"):

As of the Effective Date, to the extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtor, the Reorganized Debtor, the Estate, the Released Parties and each such Entity's successors and assigns, current and former affiliates, subsidiaries, officers, directors, members, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such, and only if such Persons occupied any such positions at any time on or after the Petition Date, from any and all Claims, Interests, obligations, rights, liabilities, actions, causes of action, choses in action, suits, debts, demands, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including all claims and actions against any Entities under the Bankruptcy Code) whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity asserted or that could possibly have been asserted, or would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the Old Notes, the Old Notes Indenture, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Releasing Party, the restructuring of

6

Claims and Interests prior to or during the Chapter 11 Case, the negotiation, formulation, solicitation, or preparation of the Disclosure Statement, the Plan, the Plan Supplement, or related agreements, instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; **provided, however,** that the foregoing provisions of this **Section 8.4** shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction; **provided further** that nothing in this **Section 8.4** shall release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement, or otherwise given effect under, the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this **Section 8.4**, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) important to the Plan; (b) in exchange for the good and valuable consideration provided by the Debtor, the Reorganized Debtor, the Estate and the Released Parties; (c) a good faith settlement and compromise of the Claims released by this **Section 8.4**; (d) in the best interests of the Debtor and all Holders of Claims and Interests; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; and (g) a bar to any Entity granting a release under this **Section 8.4** from asserting any Claim or Cause of Action released by this **Section 8.4**.

Section 8.5 of the Plan provides for the exculpation of Exculpated Parties (the "**Exculpation**"):

No Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim; **provided, however,** that the foregoing "exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted fraud, gross negligence, or willful misconduct; **provided, further,** that in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to, or in connection with, the Plan. The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of acceptances and rejections of the Plan and the making of distributions pursuant to the Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable, law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

Section 8.6 of the Plan provides for a permanent injunction with respect to actions against the Released Parties and the Exculpated Parties (the "**Injunction**"):

Except as otherwise provided herein or for obligations issued pursuant hereto, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to **Section 8.3** or **Section 8.4**, discharged pursuant to **Section 8.2**, or are subject to exculpation pursuant to **Section 8.5** are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order

7

against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, exculpated, or settled pursuant to the Plan.

The Holder of the Class A Old Notes Claim set forth in <u>Item 1</u> elects to:

☐   Opt In to the Third-Party Release

## Item 5. Certifications as to Old Notes Claims Held in Additional Accounts with Other Nominees.

By completing and returning this Beneficial Holder Ballot, the undersigned Beneficial Holder certifies that either: (a) it has not submitted any other Beneficial Holder Ballot in respect of its Old Notes Claims held in other accounts or other record names, or (b) it has provided the information specified in the following table for all other Old Notes Claims for which it has submitted additional Beneficial Holder Ballots, each of which indicates the same vote to accept or reject the Plan (please use additional sheets of paper if necessary):

ONLY COMPLETE THIS SECTION IF YOU HAVE VOTED OTHER OLD NOTES CLAIMS ON A BALLOT OTHER THAN THIS BENEFICIAL HOLDER BALLOT.

(Please complete the information requested below. Attach additional sheets if necessary.)

| Account Number or Beneficial Holder Name of Other Claims Voted | Name of Record Holder or Nominee | Principal Amount of Other Old Note Claims Voted | CUSIP of Other Old Notes Claims Voted |
|---|---|---|---|
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |

To be counted, a Beneficial Holder must vote *ALL* of its Old Notes Claims either to accept or reject the Plan. No split votes will be permitted.

8

**Item 6.Acknowledgements.** By signing this Beneficial Holder Ballot, the undersigned (i) acknowledges receipt of the Disclosure Statement, Plan and the other applicable solicitation materials and certifies that the undersigned, as of the Voting Record Date, (ii) is the Beneficial Holder or has the power and authority to vote to accept or reject the Plan on behalf of the Beneficial Holder, and (iii) acknowledges that the undersigned has cast the same vote with respect to all Old Notes Claims in a single Class, and that no other Beneficial Holder Ballots with respect to the amount of the Old Note Claims identified in Item 1 above have been cast or, if any other Beneficial Holder Ballots have been cast with respect to such Claims, then any such earlier received Ballots are hereby revoked. The undersigned understands that, if this Beneficial Holder Ballot is otherwise validly executed but is not timely submitted, does not indicate either acceptance or rejection of the Plan or indicates both an acceptance and rejection of the Plan, this Beneficial Holder Ballot will not be counted as having been cast.

| | |
|---|---|
| Name of Beneficial Holder: | Julius Baer Fixed Income Emerging Markets Corporate |
| Signature: | ███████████████████ |
| Name of Signatory (if different than Beneficial Holder): | Portfolio Manager: ████████████ |
| If authorized by Agent, Title of Agent: | Executive Director |
| Street Address: | Stauffacherquai 42/44 |
| City, State, Zip Code: | Zurich, 8004 |
| Country: | Switzerland |
| Telephone Number: | ████████████ |
| Email Address: | sfmo.ops@juliusbaer.com |
| Date Completed | 04.02.2024 |

**PLEASE COMPLETE, SIGN, AND DATE THIS BENEFICIAL HOLDER BALLOT AND RETURN IT PROMPTLY IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE. IF THE CLAIMS AGENT DOES NOT ACTUALLY RECEIVE THE MASTER BALLOT REFLECTING THE VOTE CAST ON THIS BENEFICIAL HOLDER BALLOT (OR YOUR PRE-VALIDATED BENEFICIAL HOLDER BALLOT, IF APPLICABLE) ON OR BEFORE THE VOTING DEADLINE, AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE WILL NOT BE COUNTED, UNLESS OTHERWISE DETERMINED BY THE DEBTOR.**

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

**IF YOU HAVE ANY QUESTIONS CONCERNING THIS BENEFICIAL HOLDER BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AGENT BY TELEPHONE AT (646) 362-6336, OR EMAIL TO TABULATION@EPIQGLOBAL.COM WITH A REFERENCE TO "CREDIVALORES VOTING" IN THE SUBJECT LINE. THE CLAIMS AGENT IS NOT AUTHORIZED TO PROVIDE, AND WILL NOT PROVIDE, LEGAL OR FINANCIAL ADVICE.**

**THE DEBTOR IS SEEKING CONFIRMATION OF THE PLAN AS PART OF A PREPACKAGED CHAPTER 11 CASE, AS DESCRIBED IN THE PREPACKAGED CHAPTER 11 CASE GUIDELINES OF THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (LOCAL RULE 3018-2). THE ACCEPTANCES AND REJECTIONS OF THE PLAN SET FORTH HEREIN THEREFORE WILL BE SUBJECT TO 11 U.S.C. § 1126(b) AND SUCH GUIDELINES. HOWEVER, IT IS IMPERATIVE THAT ALL DEADLINES SET FORTH HEREIN BE OBSERVED PENDING ANY FURTHER DETERMINATIONS BY THE COURT PRESIDING OVER SUCH CASE.**

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN
US22555LAB27)

## <u>VOTING INSTRUCTIONS</u>

1.  The Debtor is soliciting votes of Holders of Claims with respect to the Plan attached as **<u>Annex B</u>** to the Disclosure Statement. Capitalized terms used in the Beneficial Holder Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Plan. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BENEFICIAL HOLDER BALLOT.**

2.  The Court may confirm the Plan and thereby bind you to the terms of the Plan, if it is accepted by the Holders of two-thirds in amount and more than one-half in number of Claims in each Impaired Class of Claims entitled to vote on the Plan. In the event the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if it finds that the Plan accords fair and equitable treatment to the Class or Classes that have rejected the Plan and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3.  In <u>Item 1</u>, or elsewhere on the Beneficial Holder Ballot, your Claim amount is going to be pre-printed, in which case you are to review this amount and contact your Nominee if you believe your Claim amount for voting purposes has been listed in error.

4.  In the boxes provided in <u>Item 2</u>, please indicate whether you are a Qualified Holder or Non-Qualified Holder.

5.  In the boxes provided in <u>Item 3</u> of the Beneficial Holder Ballot, please indicate acceptance or rejection of the Plan. If you vote to accept the Plan, you are specifically consenting to the releases contained in the Plan. Such releases include, but are not limited to, the releases contained in <u>Article VIII</u> of the Plan, which include the Release by Releasing Parties (*i.e.*, the Third-Party Release) of claims and causes of action against certain non-Debtor entities.

6.  If your Beneficial Holder Ballot is not received by your Nominee in sufficient time to be included on a timely submitted Master Ballot, it will not be counted unless the Debtor determines otherwise. In all cases, Beneficial Holders should allow sufficient time to assure timely delivery of your Beneficial Holder Ballot to your Nominee. Beneficial Holder Ballots must be returned in accordance with the instructions received.

7.  Please be sure to sign and date your Beneficial Holder Ballot. If you are signing a Beneficial Holder Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims Agent, the Debtor, or the Court, must submit proper evidence to the requesting party to so act on behalf of such holder.

8.  If you have submitted more than one Beneficial Holder Ballot for your Old Notes Claims, you *must* complete <u>Item 5</u>. Please note that the information provided in <u>Items 1</u> and <u>5</u> must, taken together, identify all of your holdings of Old Notes Claims as of the Voting Record Date.

9.  If you conveyed more than one vote on the same Old Notes Claim, the last valid vote received by your Nominee will be deemed to reflect your intent to either accept or reject the Plan.

10. You may receive more than one Beneficial Holder Ballot if you hold Old Notes Claims through multiple Nominees. You must vote all of your Old Notes Claims to accept or reject the Plan in the same manner. Accordingly, if you submit more than one vote and the votes are not consistent, such votes shall not be counted.

11.    If a Beneficial Holder Ballot is received <u>after</u> the Voting Deadline and if the Voting Deadline is not extended, it may be counted only in the discretion of the Debtor.

12.    Additionally, the following Beneficial Holder Ballots will <u>not</u> be counted:

   a.    any vote cast by an entity that does not hold Old Notes Claims as of the Voting Record Date;

   b.    any vote sent to any party other than the Nominee (*e.g.*, the Debtor, any official committee, or the Court) or, in the case of a pre-validated Beneficial Holder Ballot, the Claims Agent;

   c.    any vote superseded by another timely valid vote;

   d.    any inconsistent or duplicate votes that are simultaneously cast with respect to the same Old Notes Claim;

   e.    any vote (or group of votes from a single creditor) that partially rejects and partially accepts the Plan will not be counted;

   f.    any Beneficial Holder Ballot not marked to accept or reject the Plan; or

   g.    any Beneficial Holder Ballot marked both to accept and reject the Plan.

13.    The Beneficial Holder Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to submit elections (if any). Accordingly, at this time, holders of Claims should not surrender certificates or instruments representing or evidencing their Claims, if any, and neither the Debtor nor the Claims Agent will accept delivery of any such certificates or instruments surrendered together with a Beneficial Holder Ballot.

14.    The Beneficial Holder Ballot does not constitute and shall not be deemed a proof of Claim or Interest or an assertion of a Claim or Interest.

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

## **Exhibit G**

## **Vontobel's Beneficial**

## **Holder Votes**

| From: | ███████████████████████ @vontobel.com> |
|---|---|
| Sent: | Tuesday, April 2, 2024 2:24 AM |
| To: | tabulation@epiqglobal.com; alvaro.cunto@bcpsecurities.com; bkhalitov@bcpsecurities.com; jharper@bcpsecurities.com; michael.fitzgerald@bakermckenzie.com; paul.keenan@bakermckenzie.com |
| Cc: | crdv.dpw.rx; JVillen@HL.com; Melcer, Moshe; ██████████ @vontobel.com; Graulich, Timothy; ██████████ @vontobel.com; RBCIS_CICS; MOCAClientInquiries; ██████████ |
| Subject: | Credivalores - Chapter 11 Plan Solicitation - Vontobel Asset Management AG |
| Attachments: | Credivalores - Beneficial Ballot_ZHFIEM0005_18616_SIGNED.pdf; Credivalores - Beneficial Ballot_ZHFIEM0016_34809_SIGNED.pdf |

*Confidential – Subject to FRE 408 and Its Equivalents*

To Whom It May Concern:

Reference is made to that certain Offering Memorandum and Consent Solicitation (the "**Solicitation Materials**") launched by Credivalores – Crediservicios S.A. ("**Credivalores**" or the "**Company**") and dated as of March 7, 2024. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Solicitation Materials

I write on behalf of Vontobel Asset Management AG (the "**Noteholder**"), which is the beneficial holder of $ 11'650'000 and $ 5'777'000 in principal amount of 8.875% Senior Dues due 2025 issued by Credivalores (the "**Existing Notes**") and am a member of an ad hoc group of Existing Note holders represented by Davis Polk and Houlihan Lokey. Proof of the Firm's Existing Notes position is available upon request.
The Noteholder attempted to timely vote its Claims to reject the Plan and opt out of the releases therein, but was unable to do so through its custodian.

In accordance with Bankruptcy Rule 3018(c), the Noteholder hereby votes all of its Claims to reject the Plan, as further set forth on the ballot attached hereto, a copy of which will be delivered to the Balloting Agent as well. The Noteholder, on behalf of itself, its affiliates, its representatives, and any other entity that could purport to grant a release under the Plan <u>expressly</u> opts out of the release contained in Section 8.4 of the Plan.

The Plan is unacceptable to the Noteholder because, among other reasons, the Plan contemplates that the Noteholder and other holders of Existing Notes will make material economic concessions while Interests will be Reinstated. We do not expect that the Plan can be consensually confirmed, so such a value transfer is plainly prohibited by the Bankruptcy Code. The Noteholder also objects to the Statement because, among other reasons, it provides little to no information as to how the Plan was negotiated and the events leading up to the commencement of the Plan Solicitation.

The Noteholder expressly reserves all rights with respect to the Existing Notes, the Exchange Offer, the Plan, the Statement, and any Chapter 11 Case, including the right to object to Confirmation and to Plan Solicitation.

Sincerely,

████████████, CFA
Director
Strategic Projects
Technology & Services
.................................................................................... .

# Vontobel

Vontobel Asset Management AG
Genferstrasse 27, 8022 Zurich, Switzerland
T ██████████
M ██████████
██████████ @vontobel.com, vontobel.com

Important Notice

This message is intended only for the individual named. It may contain confidential or privileged information. If you are not the named addressee you should in particular not disseminate, distribute, modify or copy this e-mail. Please notify the sender immediately by e-mail, if you have received this message by mistake and delete it from your system.
Without prejudice to any contractual agreements between you and us which shall prevail in any case, we take it as your authorization to correspond with you by e-mail if you send us messages by e-mail. However, we reserve the right not to execute orders and instructions transmitted by e-mail at any time and without further explanation.
E-mail transmission may not be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete. Also processing of incoming e-mails cannot be guaranteed. All liability of Vontobel Holding Ltd. and any of its affiliates (hereinafter collectively referred to as "Vontobel Group") for any damages resulting from e-mail use is excluded. You are advised that urgent and time sensitive messages should not be sent by e-mail and if verification is required please request a printed version.
Please note that all e-mail communications to and from the Vontobel Group are subject to electronic storage and review by Vontobel Group. Unless stated to the contrary and without prejudice to any contractual agreements between you and Vontobel Group which shall prevail in any case, e-mail-communication is for informational purposes only and is not intended as an offer or solicitation for the purchase or sale of any financial instrument or as an official confirmation of any transaction.
The legal basis for the processing of your personal data is the legitimate interest to develop a commercial relationship with you, as well as your consent to forward you commercial communications. You can exercise, at any time and under the terms established under current regulation, your rights. If you prefer not to receive any further communications, please contact your client relationship manager if you are a client of Vontobel Group or notify the sender. Please note for an exact reference to the affected group entity the corporate e-mail signature. For further information about data privacy at Vontobel Group please consult www.vontobel.com.

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CREDIVALORES – CREDISERVICIOS S.A.,[1] | Case No. 24-_____ (__) |
| Debtor. | |
| _____/ | |

**BENEFICIAL HOLDER BALLOT FOR ACCEPTING OR REJECTING THE PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION FOR CREDIVALORES – CREDISERVICIOS S.A.**

**CLASS A: OLD NOTES CLAIMS**

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT CAREFULLY BEFORE COMPLETING THIS BALLOT.

**THIS BENEFICIAL HOLDER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED IN ACCORDANCE WITH THE INSTRUCTIONS RECEIVED FROM YOUR NOMINEE SO THAT THE BALLOT OR A MASTER BALLOT REFLECTING YOUR VOTE IS ACTUALLY RECEIVED BY THE CLAIMS AGENT PRIOR TO 5:00 P.M. PREVAILING EASTERN TIME (NEW YORK CITY TIME) ON April 3, 2024 (THE "VOTING DEADLINE").**

The above-captioned debtor and debtor in possession (the "**Debtor**") intends to file a chapter 11 case in the above-captioned bankruptcy court (the "**Court**") and is soliciting votes with respect to the proposed *Debtor's Prepackaged Chapter 11 Plan* (as amended, supplemented or otherwise modified from time to time, the "**Plan**") and the *Disclosure Statement for the Plan* (as amended, supplemented, or otherwise modified from time to time, the "**Disclosure Statement**") pursuant to sections 1125 and 1126(b) of title 11 of the United States Code (the "**Bankruptcy Code**").[2]

Please use this ballot (the "**Beneficial Holder Ballot**") to cast your vote to accept or reject the Plan if you are, as of March 7, 2024 (the "**Voting Record Date**") a beneficial holder of an **Old Notes Claim** in Class A (each, a "**Beneficial Holder**").

**Only Holders holding Old Notes Claims may vote to accept or reject the Plan using this Beneficial Holder Ballot.**

The Plan can be confirmed by the Court and thereby made binding on you, whether or not you vote, if the Plan (i) is accepted by the Holders of at least two-thirds in amount and more than one-half in number of the

---

[1] The address for Credivalores – Crediservicios S.A. is Carrera 7 #76-35, 7th Floor, Bogota Colombia.

[2] Capitalized terms otherwise undefined herein have the meanings ascribed to them in the Disclosure Statement and Plan, as applicable.

claims in each impaired Class of claims who vote on the Plan and (ii) otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Court nonetheless may confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

Your rights are described in the Disclosure Statement, which is accessible from the Debtor's restructuring website at https://dm.epiq11.com/Credivalores (the "**Restructuring Website**"), along with copies of the Plan and certain other materials. If you desire paper copies, or if you need to obtain additional solicitation packages, you may (a) contact the Debtor's claims and balloting agent (the "**Claims Agent**"), Epiq Corporate Restructuring LLC ("**Epiq**"), at (646) 362-6336, or by email at tabulation@epiqglobal.com with a reference to "Credivalores Voting" in the subject line, or (b) once the Chapter 11 Case has been filed, you may download such documents (excluding ballots) from the Debtor's Restructuring Website, free of charge. Copies of these documents may also be obtained for a fee via PACER (account required) at https://www.nysb.uscourts.gov/. Please be advised that the Claims Agent is not permitted to provide legal advice.

This Beneficial Holder Ballot may not be used for any purpose other than casting a vote to accept or reject the Plan, making certain decisions regarding releases and making certain certifications. If you believe that you have received this Beneficial Holder Ballot in error, or if you believe that you have received the wrong Beneficial Holder Ballot, please contact your Nominee at the number and address they have provided.

Nothing contained herein or in the enclosed documents shall render you or any other entity the agent of the Debtor or the Claims Agent or authorize you or any other entity to use any document or make any statements on behalf of the Debtor with respect to the Plan, except for the statements contained in the documents enclosed herewith.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class A. If you hold Claims through more than one Nominee, you will receive a Beneficial Holder Ballot for each Claim in which you are entitled to vote.

If the Plan is confirmed by the Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must complete, sign and return this Beneficial Holder Ballot to your Nominee so that your Nominee has sufficient time to submit a Master Ballot to the Claims Agent by the Voting Deadline indicated above. Your Nominee may also provide a pre-validated Beneficial Holder Ballot with instructions for you to complete and return the pre-validated Beneficial Holder Ballot directly to the Claims Agent.

*PLEASE SUBMIT YOUR BENEFICIAL HOLDER BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE, WHICH MAY INCLUDE (I) SUBMITTING THIS BENEFICIAL HOLDER BALLOT OR (II) CONVEYING YOUR VOTE VIA E-MAIL, TELEPHONE, INTERNET APPLICATION, FACSIMILE, VOTER INFORMATION FORM, OR OTHER ACCEPTED AND CUSTOMARY MEANS OF DELIVERING SUCH INFORMATION TO YOUR NOMINEE.*

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

PLEASE COMPLETE <u>ITEMS 1 THROUGH 6</u>. IF THIS BENEFICIAL HOLDER BALLOT IS NOT
SIGNED ON THE APPROPRIATE LINES BELOW, THIS BENEFICIAL HOLDER BALLOT **WILL
NOT** BE VALID OR COUNTED AS HAVING BEEN CAST.

### Item 1. Amount of Claim

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of an
Old Notes Claim in Class A in the following aggregate unpaid principal amount:

$ 5'777'000

### Item 2. Holder Status

The Holder of the Old Notes Claim in Class A certifies that as of the Voting Record Date, the undersigned
(please check only one box):

☒ Is a "**Qualified Holder**" meaning such Holder is:

(1) located in the United States, and is a "Qualified Institutional Buyer" as such term is
defined in Rule 144A under the Securities Act acknowledging that it will be receiving
"restricted securities" within the meaning of Rule 144 under the Securities Act; or

(2) not a "U.S. Person" as defined in Rule 902(k) under the Securities Act and is qualified to
participate in the Exchange Offer, in accordance with the laws of its jurisdiction of
location or residence.

**OR**

☐ Is a "**Non-Qualified Holder**" meaning, any Holder of an Allowed Old Notes Claim that is
not a Qualified Holder.

### Item 3. Vote on Plan

The Holder of the Claim in Class A set forth in <u>Item 1</u> votes to (please check only one box):

☐   <u>**ACCEPT**</u> (vote FOR) the Plan     ☒   <u>**REJECT**</u> (vote AGAINST) the Plan

**SUBJECT TO THE LIMITATIONS SET FORTH HEREIN, YOU HAVE THE RIGHT TO OPT IN
TO THE THIRD-PARTY RELEASE (AS DEFINED BELOW) SET FORTH IN <u>SECTION 8.4</u> OF
THE PLAN.**

**IF YOU VOTE TO ACCEPT THE PLAN, YOU SHALL BE DEEMED TO HAVE CONSENTED
TO THE THIRD-PARTY RELEASE.**

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN
US22555LAB27)

**IF YOU VOTE TO REJECT THE PLAN, YOU MAY STILL CONSENT TO GIVE THE THIRD-PARTY RELEASE SET FORTH IN <u>ARTICLE VIII</u> OF THE PLAN BY ELECTING THE OPT IN OPTION BELOW.**

**IF YOU EXECUTE AND RETURN YOUR BENEFICIAL HOLDER BALLOT WITHOUT A VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY STILL CONSENT TO GIVE THE THIRD-PARTY RELEASE SET FORTH IN <u>ARTICLE VIII</u> OF THE PLAN BY ELECTING THE OPT IN OPTION BELOW.**

**YOUR DECISION TO OPT IN (OR NOT OPT IN) TO GIVING THE THIRD-PARTY RELEASE WILL NOT AFFECT ANY DISTRIBUTION YOU MAY RECEIVE IF THE PLAN IS ULTIMATELY CONFIRMED.**

<u>**Item 4. Important Information Regarding the Release by Certain Holders of Claims**</u>

**THE PLAN CONTAINS RELEASES. PARTIES SHOULD BE AWARE THAT, IF THE PLAN IS CONFIRMED and if the Effective Date occurs, the Released Parties, as defined in <u>Section 1.1.73</u> of the Plan and as reproduced below, will be receiving releases and certain parties will be giving releases and be bound by injunctions as set forth in <u>Article VIII</u> of the Plan, and with respect to the releases described in <u>Article VIII</u> of the Plan and reproduced below, they are automatically deemed to have consented to the release provisions of the Plan, if either vote to accept the Plan. For the avoidance of doubt, a Holder of a Claim or Interest that votes to accept the Plan shall be automatically deemed to have given the releases irrespective of whether such Holder elects to opt in to the Third-Party Release.**

To provide additional information regarding the Third-Party Release, the following Sections of the Plan have been copied immediately below: <u>Section 1.1.38</u> (Exculpated Claim); <u>Section 1.1.39</u> (Exculpated Party); Section 1.1.73 (Released Party); <u>Section 1.1.74</u> (Releasing Party); <u>Section 8.2</u> (Discharge of Claims and Termination of Interests); <u>Section 8.3</u> (Releases by the Debtor); <u>Section 8.4</u> (Releases by the Releasing Parties); <u>Section 8.5</u> (Exculpation); and <u>Section 8.6</u> (Injunction). To the extent of any discrepancy between the following and the corresponding sections in the Plan, including any modifications or amendments thereto, the sections in the Plan control. Please carefully review the following.

<u>**Relevant Definitions:**</u>

"*Exculpated Claim*" means any Claim related to any act or omission in connection with, relating to, or arising out of the Debtor's in-court or out-of-court efforts to negotiate, enter into or implement the Chapter 11 Case, the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with or pursuant to the Disclosure Statement or the Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation, the administration and implementation of the Plan, or the distribution of property under the Plan.

"*Exculpated Party*" means each of the following in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; (c) the Trustee; (d) the Holders of Interests; and (e) with respect to each of the foregoing Entities in clauses (a) through (d) such Entity's predecessors, successors and assigns and current and former Affiliates, subsidiaries, officers, directors, members, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals.

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

"**Released Party**" means each of the following: (a) the Debtor; (b) the Trustee; (c) the Holders of Interests; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's successors and assigns, and current and former Affiliates, subsidiaries, officers, directors, members, stockholders, partners, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such.

"**Releasing Party**" means each of the following: (a) the Holders of Impaired Claims or Interests that (i) affirmatively vote to accept the Plan or (ii) abstain from voting on the Plan; (b) to the fullest extent permissible under applicable law, the Holders of Unimpaired Claims or Interests; (c) the Trustee; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's successors and assigns, and current and former Affiliates, subsidiaries, officers, directors, members, stockholders, partners, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such.

**Relevant Provisions:**

Section 8.2 of the Plan provides for the discharge of Claims and termination of Interests (the "**Discharge**"):

> **Except as otherwise provided for herein and effective as of the Effective Date: (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor or any of its assets, property, or Estate; (b) the Plan shall bind all Holders of Claims and Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtor's liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtor, the Debtor's Estate, the Reorganized Debtor, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.**

Section 8.3 of the Plan provides for the Debtor's release of the Released Parties (the "**Debtor Release**"):

> **Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise expressly provided herein, for good and valuable consideration, as of the Effective Date, to the extent permitted by applicable laws, the Released Parties are conclusively, absolutely, unconditionally, irrevocably, and forever deemed released and discharged by the Debtor, the Reorganized Debtor, and the Debtor's Estate from any and all actions, Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, asserted or that could possibly have been asserted on behalf of the Debtor, that the Debtor, Reorganized Debtor, or the Debtor's Estate, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in, or under, in whole or in part, the Debtor, the Chapter 11 Case, the Old Notes, the Old Notes Indenture, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that**

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests prior to or during the Chapter 11 Case, the negotiation, formulation, solicitation, or preparation of the Disclosure Statement, the Plan, the Plan Supplement, or related agreements, instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, however, that the foregoing provisions of this Section 8.3 shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction; provided further that nothing in this Section 8.3 shall release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement, or otherwise given effect under, the Plan, including the New Notes and any other agreement or document related thereto or entered into in connection therewith, as applicable.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this Section 8.3, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by this Section 8.3; (c) in the best interests of the Debtor and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to the Debtor asserting any Claim or Cause of Action released by this Section 8.3.

Section 8.4 of the Plan provides for the Releases by the Releasing Parties (the "Third-Party Release"):

As of the Effective Date, to the extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtor, the Reorganized Debtor, the Estate, the Released Parties and each such Entity's successors and assigns, current and former affiliates, subsidiaries, officers, directors, members, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such, and only if such Persons occupied any such positions at any time on or after the Petition Date, from any and all Claims, Interests, obligations, rights, liabilities, actions, causes of action, choses in action, suits, debts, demands, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including all claims and actions against any Entities under the Bankruptcy Code) whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity asserted or that could possibly have been asserted, or would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the Old Notes, the Old Notes Indenture, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Releasing Party, the restructuring of

6

Claims and Interests prior to or during the Chapter 11 Case, the negotiation, formulation, solicitation, or preparation of the Disclosure Statement, the Plan, the Plan Supplement, or related agreements, instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, however, that the foregoing provisions of this Section 8.4 shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction; provided further that nothing in this Section 8.4 shall release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement, or otherwise given effect under, the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this Section 8.4, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) important to the Plan; (b) in exchange for the good and valuable consideration provided by the Debtor, the Reorganized Debtor, the Estate and the Released Parties; (c) a good faith settlement and compromise of the Claims released by this Section 8.4; (d) in the best interests of the Debtor and all Holders of Claims and Interests; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; and (g) a bar to any Entity granting a release under this Section 8.4 from asserting any Claim or Cause of Action released by this Section 8.4.

Section 8.5 of the Plan provides for the exculpation of Exculpated Parties (the "Exculpation"):

No Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim; provided, however, that the foregoing "exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted fraud, gross negligence, or willful misconduct; provided, further, that in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to, or in connection with, the Plan. The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of acceptances and rejections of the Plan and the making of distributions pursuant to the Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable, law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

Section 8.6 of the Plan provides for a permanent injunction with respect to actions against the Released Parties and the Exculpated Parties (the "Injunction"):

Except as otherwise provided herein or for obligations issued pursuant hereto, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 8.3 or Section 8.4, discharged pursuant to Section 8.2, or are subject to exculpation pursuant to Section 8.5 are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, exculpated, or settled pursuant to the Plan.

The Holder of the Class A Old Notes Claim set forth in <u>Item 1</u> elects to:

☐   Opt In to the Third-Party Release

### Item 5. Certifications as to Old Notes Claims Held in Additional Accounts with Other Nominees.

By completing and returning this Beneficial Holder Ballot, the undersigned Beneficial Holder certifies that either: (a) it has not submitted any other Beneficial Holder Ballot in respect of its Old Notes Claims held in other accounts or other record names, or (b) it has provided the information specified in the following table for all other Old Notes Claims for which it has submitted additional Beneficial Holder Ballots, each of which indicates the same vote to accept or reject the Plan (please use additional sheets of paper if necessary):

ONLY COMPLETE THIS SECTION IF YOU HAVE VOTED OTHER OLD NOTES CLAIMS ON A BALLOT OTHER THAN THIS BENEFICIAL HOLDER BALLOT.

(Please complete the information requested below. Attach additional sheets if necessary.)

| Account Number or Beneficial Holder Name of Other Claims Voted | Name of Record Holder or Nominee | Principal Amount of Other Old Note Claims Voted | CUSIP of Other Old Notes Claims Voted |
|---|---|---|---|
| Vontobel Fund II - Fixed Maturity Emerging Markets Bond 2026 | Caceis IS Bank | $      5'777'000 | ZP8519610 |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |

To be counted, a Beneficial Holder must vote *ALL* of its Old Notes Claims either to accept or reject the Plan. No split votes will be permitted.

8

**Item 6.Acknowledgements.** By signing this Beneficial Holder Ballot, the undersigned (i) acknowledges receipt of the Disclosure Statement, Plan and the other applicable solicitation materials and certifies that the undersigned, as of the Voting Record Date, (ii) is the Beneficial Holder or has the power and authority to vote to accept or reject the Plan on behalf of the Beneficial Holder, and (iii) acknowledges that the undersigned has cast the same vote with respect to all Old Notes Claims in a single Class, and that no other Beneficial Holder Ballots with respect to the amount of the Old Note Claims identified in Item 1 above have been cast or, if any other Beneficial Holder Ballots have been cast with respect to such Claims, then any such earlier received Ballots are hereby revoked. The undersigned understands that, if this Beneficial Holder Ballot is otherwise validly executed but is not timely submitted, does not indicate either acceptance or rejection of the Plan or indicates both an acceptance and rejection of the Plan, this Beneficial Holder Ballot will not be counted as having been cast.

| | |
|---|---|
| Name of Beneficial Holder: | Vontobel Fund II - Fixed Maturity Emerging Markets Bond 2026 |
| Signature: | |
| Name of Signatory (if different than Beneficial Hol | |
| If authorized by Agent, Title of Agent: | |
| Street Address: | Gotthardstrasse 43 |
| City, State, Zip Code: | 8002 Zurich |
| Country: | Switzerland |
| Telephone Number: | |
| Email Address: | @vontobel.com |
| Date Completed | 28 March 2024 |

**PLEASE COMPLETE, SIGN, AND DATE THIS BENEFICIAL HOLDER BALLOT AND RETURN IT PROMPTLY IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE. IF THE CLAIMS AGENT DOES NOT ACTUALLY RECEIVE THE MASTER BALLOT REFLECTING THE VOTE CAST ON THIS BENEFICIAL HOLDER BALLOT (OR YOUR PRE-VALIDATED BENEFICIAL HOLDER BALLOT, IF APPLICABLE) ON OR BEFORE THE VOTING DEADLINE, AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE WILL NOT BE COUNTED, UNLESS OTHERWISE DETERMINED BY THE DEBTOR.**

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

**IF YOU HAVE ANY QUESTIONS CONCERNING THIS BENEFICIAL HOLDER BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AGENT BY TELEPHONE AT (646) 362-6336, OR EMAIL TO TABULATION@EPIQGLOBAL.COM WITH A REFERENCE TO "CREDIVALORES VOTING" IN THE SUBJECT LINE. THE CLAIMS AGENT IS NOT AUTHORIZED TO PROVIDE, AND WILL NOT PROVIDE, LEGAL OR FINANCIAL ADVICE.**

> **THE DEBTOR IS SEEKING CONFIRMATION OF THE PLAN AS PART OF A PREPACKAGED CHAPTER 11 CASE, AS DESCRIBED IN THE PREPACKAGED CHAPTER 11 CASE GUIDELINES OF THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (LOCAL RULE 3018-2). THE ACCEPTANCES AND REJECTIONS OF THE PLAN SET FORTH HEREIN THEREFORE WILL BE SUBJECT TO 11 U.S.C. § 1126(b) AND SUCH GUIDELINES. HOWEVER, IT IS IMPERATIVE THAT ALL DEADLINES SET FORTH HEREIN BE OBSERVED PENDING ANY FURTHER DETERMINATIONS BY THE COURT PRESIDING OVER SUCH CASE.**

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

## VOTING INSTRUCTIONS

1.   The Debtor is soliciting votes of Holders of Claims with respect to the Plan attached as **Annex B** to the Disclosure Statement. Capitalized terms used in the Beneficial Holder Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Plan. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BENEFICIAL HOLDER BALLOT.**

2.   The Court may confirm the Plan and thereby bind you to the terms of the Plan, if it is accepted by the Holders of two-thirds in amount and more than one-half in number of Claims in each Impaired Class of Claims entitled to vote on the Plan. In the event the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if it finds that the Plan accords fair and equitable treatment to the Class or Classes that have rejected the Plan and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3.   In Item 1, or elsewhere on the Beneficial Holder Ballot, your Claim amount is going to be pre-printed, in which case you are to review this amount and contact your Nominee if you believe your Claim amount for voting purposes has been listed in error.

4.   In the boxes provided in Item 2, please indicate whether you are a Qualified Holder or Non-Qualified Holder.

5.   In the boxes provided in Item 3 of the Beneficial Holder Ballot, please indicate acceptance or rejection of the Plan. If you vote to accept the Plan, you are specifically consenting to the releases contained in the Plan. Such releases include, but are not limited to, the releases contained in Article VIII of the Plan, which include the Release by Releasing Parties (*i.e.*, the Third-Party Release) of claims and causes of action against certain non-Debtor entities.

6.   If your Beneficial Holder Ballot is not received by your Nominee in sufficient time to be included on a timely submitted Master Ballot, it will not be counted unless the Debtor determines otherwise. In all cases, Beneficial Holders should allow sufficient time to assure timely delivery of your Beneficial Holder Ballot to your Nominee. Beneficial Holder Ballots must be returned in accordance with the instructions received.

7.   Please be sure to sign and date your Beneficial Holder Ballot. If you are signing a Beneficial Holder Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims Agent, the Debtor, or the Court, must submit proper evidence to the requesting party to so act on behalf of such holder.

8.   If you have submitted more than one Beneficial Holder Ballot for your Old Notes Claims, you *must* complete Item 5. Please note that the information provided in Items 1 and 5 must, taken together, identify all of your holdings of Old Notes Claims as of the Voting Record Date.

9.   If you conveyed more than one vote on the same Old Notes Claim, the last valid vote received by your Nominee will be deemed to reflect your intent to either accept or reject the Plan.

10.  You may receive more than one Beneficial Holder Ballot if you hold Old Notes Claims through multiple Nominees. You must vote all of your Old Notes Claims to accept or reject the Plan in the same manner. Accordingly, if you submit more than one vote and the votes are not consistent, such votes shall not be counted.

11. If a Beneficial Holder Ballot is received <u>after</u> the Voting Deadline and if the Voting Deadline is not extended, it may be counted only in the discretion of the Debtor.

12. Additionally, the following Beneficial Holder Ballots will <u>not</u> be counted:

    a. any vote cast by an entity that does not hold Old Notes Claims as of the Voting Record Date;

    b. any vote sent to any party other than the Nominee (*e.g.*, the Debtor, any official committee, or the Court) or, in the case of a pre-validated Beneficial Holder Ballot, the Claims Agent;

    c. any vote superseded by another timely valid vote;

    d. any inconsistent or duplicate votes that are simultaneously cast with respect to the same Old Notes Claim;

    e. any vote (or group of votes from a single creditor) that partially rejects and partially accepts the Plan will not be counted;

    f. any Beneficial Holder Ballot not marked to accept or reject the Plan; or

    g. any Beneficial Holder Ballot marked both to accept and reject the Plan.

13. The Beneficial Holder Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to submit elections (if any). Accordingly, at this time, holders of Claims should not surrender certificates or instruments representing or evidencing their Claims, if any, and neither the Debtor nor the Claims Agent will accept delivery of any such certificates or instruments surrendered together with a Beneficial Holder Ballot.

14. The Beneficial Holder Ballot does not constitute and shall not be deemed a proof of Claim or Interest or an assertion of a Claim or Interest.

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CREDIVALORES – CREDISERVICIOS S.A.,[1] | Case No. 24-_____ (__) |
| Debtor. | |

_____/

### BENEFICIAL HOLDER BALLOT FOR ACCEPTING OR REJECTING THE PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION FOR CREDIVALORES – CREDISERVICIOS S.A.

### CLASS A: OLD NOTES CLAIMS

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT CAREFULLY BEFORE COMPLETING THIS BALLOT.

**THIS BENEFICIAL HOLDER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED IN ACCORDANCE WITH THE INSTRUCTIONS RECEIVED FROM YOUR NOMINEE SO THAT THE BALLOT OR A MASTER BALLOT REFLECTING YOUR VOTE IS ACTUALLY RECEIVED BY THE CLAIMS AGENT PRIOR TO 5:00 P.M. PREVAILING EASTERN TIME (NEW YORK CITY TIME) ON April 3, 2024 (THE "VOTING DEADLINE").**

The above-captioned debtor and debtor in possession (the "**Debtor**") intends to file a chapter 11 case in the above-captioned bankruptcy court (the "**Court**") and is soliciting votes with respect to the proposed *Debtor's Prepackaged Chapter 11 Plan* (as amended, supplemented or otherwise modified from time to time, the "**Plan**") and the *Disclosure Statement for the Plan* (as amended, supplemented, or otherwise modified from time to time, the "**Disclosure Statement**") pursuant to sections 1125 and 1126(b) of title 11 of the United States Code (the "**Bankruptcy Code**").[2]

---

Please use this ballot (the "**Beneficial Holder Ballot**") to cast your vote to accept or reject the Plan if you are, as of March 7, 2024 (the "**Voting Record Date**") a beneficial holder of an **Old Notes Claim** in Class A (each, a "**Beneficial Holder**").

**Only Holders holding Old Notes Claims may vote to accept or reject the Plan using this Beneficial Holder Ballot.**

---

The Plan can be confirmed by the Court and thereby made binding on you, whether or not you vote, if the Plan (i) is accepted by the Holders of at least two-thirds in amount and more than one-half in number of the

---

[1] The address for Credivalores – Crediservicios S.A. is Carrera 7 #76-35, 7th Floor, Bogota Colombia.

[2] Capitalized terms otherwise undefined herein have the meanings ascribed to them in the Disclosure Statement and Plan, as applicable.

claims in each impaired Class of claims who vote on the Plan and (ii) otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Court nonetheless may confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

Your rights are described in the Disclosure Statement, which is accessible from the Debtor's restructuring website at https://dm.epiq11.com/Credivalores (the "**Restructuring Website**"), along with copies of the Plan and certain other materials. If you desire paper copies, or if you need to obtain additional solicitation packages, you may (a) contact the Debtor's claims and balloting agent (the "**Claims Agent**"), Epiq Corporate Restructuring LLC ("**Epiq**"), at (646) 362-6336, or by email at tabulation@epiqglobal.com with a reference to "Credivalores Voting" in the subject line, or (b) once the Chapter 11 Case has been filed, you may download such documents (excluding ballots) from the Debtor's Restructuring Website, free of charge. Copies of these documents may also be obtained for a fee via PACER (account required) at https://www.nysb.uscourts.gov/. Please be advised that the Claims Agent is not permitted to provide legal advice.

This Beneficial Holder Ballot may not be used for any purpose other than casting a vote to accept or reject the Plan, making certain decisions regarding releases and making certain certifications. If you believe that you have received this Beneficial Holder Ballot in error, or if you believe that you have received the wrong Beneficial Holder Ballot, please contact your Nominee at the number and address they have provided.

Nothing contained herein or in the enclosed documents shall render you or any other entity the agent of the Debtor or the Claims Agent or authorize you or any other entity to use any document or make any statements on behalf of the Debtor with respect to the Plan, except for the statements contained in the documents enclosed herewith.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class A. If you hold Claims through more than one Nominee, you will receive a Beneficial Holder Ballot for each Claim in which you are entitled to vote.

If the Plan is confirmed by the Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must complete, sign and return this Beneficial Holder Ballot to your Nominee so that your Nominee has sufficient time to submit a Master Ballot to the Claims Agent by the Voting Deadline indicated above. Your Nominee may also provide a pre-validated Beneficial Holder Ballot with instructions for you to complete and return the pre-validated Beneficial Holder Ballot directly to the Claims Agent.

*PLEASE SUBMIT YOUR BENEFICIAL HOLDER BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE, WHICH MAY INCLUDE (I) SUBMITTING THIS BENEFICIAL HOLDER BALLOT OR (II) CONVEYING YOUR VOTE VIA E-MAIL, TELEPHONE, INTERNET APPLICATION, FACSIMILE, VOTER INFORMATION FORM, OR OTHER ACCEPTED AND CUSTOMARY MEANS OF DELIVERING SUCH INFORMATION TO YOUR NOMINEE.*

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

PLEASE COMPLETE <u>ITEMS 1 THROUGH 6</u>. IF THIS BENEFICIAL HOLDER BALLOT IS NOT SIGNED ON THE APPROPRIATE LINES BELOW, THIS BENEFICIAL HOLDER BALLOT **WILL NOT** BE VALID OR COUNTED AS HAVING BEEN CAST.

## Item 1. Amount of Claim

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of an Old Notes Claim in Class A in the following aggregate unpaid principal amount:

$ 11'650'000

## Item 2. Holder Status

The Holder of the Old Notes Claim in Class A certifies that as of the Voting Record Date, the undersigned (please check only one box):

☒ Is a "**Qualified Holder**" meaning such Holder is:

(1) located in the United States, and is a "Qualified Institutional Buyer" as such term is defined in Rule 144A under the Securities Act acknowledging that it will be receiving "restricted securities" within the meaning of Rule 144 under the Securities Act; or

(2) not a "U.S. Person" as defined in Rule 902(k) under the Securities Act and is qualified to participate in the Exchange Offer, in accordance with the laws of its jurisdiction of location or residence.

**OR**

☐ Is a "**Non-Qualified Holder**" meaning, any Holder of an Allowed Old Notes Claim that is not a Qualified Holder.

## Item 3. Vote on Plan

The Holder of the Claim in Class A set forth in <u>Item 1</u> votes to (please check only one box):

| | | | |
|---|---|---|---|
| ☐ | **ACCEPT** (vote FOR) the Plan | ☒ | **REJECT** (vote AGAINST) the Plan |

**SUBJECT TO THE LIMITATIONS SET FORTH HEREIN, YOU HAVE THE RIGHT TO OPT IN TO THE THIRD-PARTY RELEASE (AS DEFINED BELOW) SET FORTH IN <u>SECTION 8.4</u> OF THE PLAN.**

**IF YOU VOTE TO ACCEPT THE PLAN, YOU SHALL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE.**

3

**IF YOU VOTE TO REJECT THE PLAN, YOU MAY STILL CONSENT TO GIVE THE THIRD-PARTY RELEASE SET FORTH IN <u>ARTICLE VIII</u> OF THE PLAN BY ELECTING THE OPT IN OPTION BELOW.**

**IF YOU EXECUTE AND RETURN YOUR BENEFICIAL HOLDER BALLOT WITHOUT A VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY STILL CONSENT TO GIVE THE THIRD-PARTY RELEASE SET FORTH IN <u>ARTICLE VIII</u> OF THE PLAN BY ELECTING THE OPT IN OPTION BELOW.**

**YOUR DECISION TO OPT IN (OR NOT OPT IN) TO GIVING THE THIRD-PARTY RELEASE WILL NOT AFFECT ANY DISTRIBUTION YOU MAY RECEIVE IF THE PLAN IS ULTIMATELY CONFIRMED.**

<u>**Item 4. Important Information Regarding the Release by Certain Holders of Claims**</u>

**THE PLAN CONTAINS RELEASES. PARTIES SHOULD BE AWARE THAT, IF THE PLAN IS CONFIRMED and if the Effective Date occurs, the Released Parties, as defined in <u>Section 1.1.73</u> of the Plan and as reproduced below, will be receiving releases and certain parties will be giving releases and be bound by injunctions as set forth in <u>Article VIII</u> of the Plan, and with respect to the releases described in <u>Article VIII</u> of the Plan and reproduced below, they are automatically deemed to have consented to the release provisions of the Plan, if either vote to accept the Plan. For the avoidance of doubt, a Holder of a Claim or Interest that votes to accept the Plan shall be automatically deemed to have given the releases irrespective of whether such Holder elects to opt in to the Third-Party Release.**

To provide additional information regarding the Third-Party Release, the following Sections of the Plan have been copied immediately below: <u>Section 1.1.38</u> (Exculpated Claim); <u>Section 1.1.39</u> (Exculpated Party); Section 1.1.73 (Released Party); <u>Section 1.1.74</u> (Releasing Party); <u>Section 8.2</u> (Discharge of Claims and Termination of Interests); <u>Section 8.3</u> (Releases by the Debtor); <u>Section 8.4</u> (Releases by the Releasing Parties); <u>Section 8.5</u> (Exculpation); and <u>Section 8.6</u> (Injunction). To the extent of any discrepancy between the following and the corresponding sections in the Plan, including any modifications or amendments thereto, the sections in the Plan control. Please carefully review the following.

<u>**Relevant Definitions:**</u>

"***Exculpated Claim***" means any Claim related to any act or omission in connection with, relating to, or arising out of the Debtor's in-court or out-of-court efforts to negotiate, enter into or implement the Chapter 11 Case, the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with or pursuant to the Disclosure Statement or the Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation, the administration and implementation of the Plan, or the distribution of property under the Plan.

"***Exculpated Party***" means each of the following in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; (c) the Trustee; (d) the Holders of Interests; and (e) with respect to each of the foregoing Entities in clauses (a) through (d) such Entity's predecessors, successors and assigns and current and former Affiliates, subsidiaries, officers, directors, members, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals.

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

"*Released Party*" means each of the following: (a) the Debtor; (b) the Trustee; (c) the Holders of Interests; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's successors and assigns, and current and former Affiliates, subsidiaries, officers, directors, members, stockholders, partners, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such.

"*Releasing Party*" means each of the following: (a) the Holders of Impaired Claims or Interests that (i) affirmatively vote to accept the Plan or (ii) abstain from voting on the Plan; (b) to the fullest extent permissible under applicable law, the Holders of Unimpaired Claims or Interests; (c) the Trustee; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's successors and assigns, and current and former Affiliates, subsidiaries, officers, directors, members, stockholders, partners, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such.

**Relevant Provisions:**

Section 8.2 of the Plan provides for the discharge of Claims and termination of Interests (the "**Discharge**"):

**Except as otherwise provided for herein and effective as of the Effective Date: (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor or any of its assets, property, or Estate; (b) the Plan shall bind all Holders of Claims and Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtor's liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtor, the Debtor's Estate, the Reorganized Debtor, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.**

Section 8.3 of the Plan provides for the Debtor's release of the Released Parties (the "**Debtor Release**"):

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise expressly provided herein, for good and valuable consideration, as of the Effective Date, to the extent permitted by applicable laws, the Released Parties are conclusively, absolutely, unconditionally, irrevocably, and forever deemed released and discharged by the Debtor, the Reorganized Debtor, and the Debtor's Estate from any and all actions, Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, asserted or that could possibly have been asserted on behalf of the Debtor, that the Debtor, Reorganized Debtor, or the Debtor's Estate, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in, or under, in whole or in part, the Debtor, the Chapter 11 Case, the Old Notes, the Old Notes Indenture, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that**

5

is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests prior to or during the Chapter 11 Case, the negotiation, formulation, solicitation, or preparation of the Disclosure Statement, the Plan, the Plan Supplement, or related agreements, instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, however, that the foregoing provisions of this Section 8.3 shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction; provided further that nothing in this Section 8.3 shall release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement, or otherwise given effect under, the Plan, including the New Notes and any other agreement or document related thereto or entered into in connection therewith, as applicable.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this Section 8.3, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by this Section 8.3; (c) in the best interests of the Debtor and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to the Debtor asserting any Claim or Cause of Action released by this Section 8.3.

Section 8.4 of the Plan provides for the Releases by the Releasing Parties (the "Third-Party Release"):

As of the Effective Date, to the extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtor, the Reorganized Debtor, the Estate, the Released Parties and each such Entity's successors and assigns, current and former affiliates, subsidiaries, officers, directors, members, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such, and only if such Persons occupied any such positions at any time on or after the Petition Date, from any and all Claims, Interests, obligations, rights, liabilities, actions, causes of action, choses in action, suits, debts, demands, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including all claims and actions against any Entities under the Bankruptcy Code) whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity asserted or that could possibly have been asserted, or would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the Old Notes, the Old Notes Indenture, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Releasing Party, the restructuring of

6

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

Claims and Interests prior to or during the Chapter 11 Case, the negotiation, formulation, solicitation, or preparation of the Disclosure Statement, the Plan, the Plan Supplement, or related agreements, instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; **provided, however, that** the foregoing provisions of this **Section 8.4** shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction; **provided further** that nothing in this **Section 8.4** shall release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement, or otherwise given effect under, the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this **Section 8.4**, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) important to the Plan; (b) in exchange for the good and valuable consideration provided by the Debtor, the Reorganized Debtor, the Estate and the Released Parties; (c) a good faith settlement and compromise of the Claims released by this **Section 8.4**; (d) in the best interests of the Debtor and all Holders of Claims and Interests; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; and (g) a bar to any Entity granting a release under this **Section 8.4** from asserting any Claim or Cause of Action released by this **Section 8.4**.

Section 8.5 of the Plan provides for the exculpation of Exculpated Parties (the "**Exculpation**"):

No Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim; **provided, however,** that the foregoing "exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted fraud, gross negligence, or willful misconduct; **provided, further,** that in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to, or in connection with, the Plan. The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of acceptances and rejections of the Plan and the making of distributions pursuant to the Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable, law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

Section 8.6 of the Plan provides for a permanent injunction with respect to actions against the Released Parties and the Exculpated Parties (the "**Injunction**"):

Except as otherwise provided herein or for obligations issued pursuant hereto, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to **Section 8.3** or **Section 8.4**, discharged pursuant to **Section 8.2**, or are subject to exculpation pursuant to **Section 8.5** are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order

7

against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, exculpated, or settled pursuant to the Plan.

The Holder of the Class A Old Notes Claim set forth in <u>Item 1</u> elects to:

---

☐   Opt In to the Third-Party Release

---

## Item 5. Certifications as to Old Notes Claims Held in Additional Accounts with Other Nominees.

By completing and returning this Beneficial Holder Ballot, the undersigned Beneficial Holder certifies that either: (a) it has not submitted any other Beneficial Holder Ballot in respect of its Old Notes Claims held in other accounts or other record names, or (b) it has provided the information specified in the following table for all other Old Notes Claims for which it has submitted additional Beneficial Holder Ballots, each of which indicates the same vote to accept or reject the Plan (please use additional sheets of paper if necessary):

ONLY COMPLETE THIS SECTION IF YOU HAVE VOTED OTHER OLD NOTES CLAIMS ON A BALLOT OTHER THAN THIS BENEFICIAL HOLDER BALLOT.

(Please complete the information requested below. Attach additional sheets if necessary.)

| Account Number or Beneficial Holder Name of Other Claims Voted | Name of Record Holder or Nominee | Principal Amount of Other Old Note Claims Voted | CUSIP of Other Old Notes Claims Voted |
|---|---|---|---|
| Vontobel Fund - Emerging Markets Corporate Bond | Caceis IS Bank | $   11'650'000 | ZP8519610 |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |

To be counted, a Beneficial Holder must vote *ALL* of its Old Notes Claims either to accept or reject the Plan. No split votes will be permitted.

8

**Item 6.Acknowledgements.** By signing this Beneficial Holder Ballot, the undersigned (i) acknowledges receipt of the Disclosure Statement, Plan and the other applicable solicitation materials and certifies that the undersigned, as of the Voting Record Date, (ii) is the Beneficial Holder or has the power and authority to vote to accept or reject the Plan on behalf of the Beneficial Holder, and (iii) acknowledges that the undersigned has cast the same vote with respect to all Old Notes Claims in a single Class, and that no other Beneficial Holder Ballots with respect to the amount of the Old Note Claims identified in <u>Item 1</u> above have been cast or, if any other Beneficial Holder Ballots have been cast with respect to such Claims, then any such earlier received Ballots are hereby revoked. The undersigned understands that, if this Beneficial Holder Ballot is otherwise validly executed but is not timely submitted, does not indicate either acceptance or rejection of the Plan or indicates both an acceptance and rejection of the Plan, this Beneficial Holder Ballot will not be counted as having been cast.

| | |
|---|---|
| Name of Beneficial Holder: | Vontobel Fund - Emerging Markets Corporate Bond |
| Signature: | |
| Name of Signatory (if different than Beneficial H | |
| If authorized by Agent, Title of Agent: | |
| Street Address: | Gotthardstrasse 43 |
| City, State, Zip Code: | 8002 Zurich |
| Country: | Switzerland |
| Telephone Number: | ███████ |
| Email Address: | ███████@vontobel.com |
| Date Completed | 28 March 2024 |

**PLEASE COMPLETE, SIGN, AND DATE THIS BENEFICIAL HOLDER BALLOT AND RETURN IT <u>PROMPTLY</u> IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE. IF THE CLAIMS AGENT DOES NOT ACTUALLY RECEIVE THE MASTER BALLOT REFLECTING THE VOTE CAST ON THIS BENEFICIAL HOLDER BALLOT (OR YOUR PRE-VALIDATED BENEFICIAL HOLDER BALLOT, IF APPLICABLE) ON OR BEFORE THE VOTING DEADLINE, AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE WILL NOT BE COUNTED, UNLESS OTHERWISE DETERMINED BY THE DEBTOR.**

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

IF YOU HAVE ANY QUESTIONS CONCERNING THIS BENEFICIAL HOLDER BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AGENT BY TELEPHONE AT (646) 362-6336, OR EMAIL TO TABULATION@EPIQGLOBAL.COM WITH A REFERENCE TO "CREDIVALORES VOTING" IN THE SUBJECT LINE. THE CLAIMS AGENT IS NOT AUTHORIZED TO PROVIDE, AND WILL NOT PROVIDE, LEGAL OR FINANCIAL ADVICE.

THE DEBTOR IS SEEKING CONFIRMATION OF THE PLAN AS PART OF A PREPACKAGED CHAPTER 11 CASE, AS DESCRIBED IN THE PREPACKAGED CHAPTER 11 CASE GUIDELINES OF THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (LOCAL RULE 3018-2). THE ACCEPTANCES AND REJECTIONS OF THE PLAN SET FORTH HEREIN THEREFORE WILL BE SUBJECT TO 11 U.S.C. § 1126(b) AND SUCH GUIDELINES. HOWEVER, IT IS IMPERATIVE THAT ALL DEADLINES SET FORTH HEREIN BE OBSERVED PENDING ANY FURTHER DETERMINATIONS BY THE COURT PRESIDING OVER SUCH CASE.

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

## VOTING INSTRUCTIONS

1.  The Debtor is soliciting votes of Holders of Claims with respect to the Plan attached as **Annex B** to the Disclosure Statement. Capitalized terms used in the Beneficial Holder Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Plan. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BENEFICIAL HOLDER BALLOT.**

2.  The Court may confirm the Plan and thereby bind you to the terms of the Plan, if it is accepted by the Holders of two-thirds in amount and more than one-half in number of Claims in each Impaired Class of Claims entitled to vote on the Plan. In the event the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if it finds that the Plan accords fair and equitable treatment to the Class or Classes that have rejected the Plan and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3.  In Item 1, or elsewhere on the Beneficial Holder Ballot, your Claim amount is going to be pre-printed, in which case you are to review this amount and contact your Nominee if you believe your Claim amount for voting purposes has been listed in error.

4.  In the boxes provided in Item 2, please indicate whether you are a Qualified Holder or Non-Qualified Holder.

5.  In the boxes provided in Item 3 of the Beneficial Holder Ballot, please indicate acceptance or rejection of the Plan. If you vote to accept the Plan, you are specifically consenting to the releases contained in the Plan. Such releases include, but are not limited to, the releases contained in Article VIII of the Plan, which include the Release by Releasing Parties (*i.e.*, the Third-Party Release) of claims and causes of action against certain non-Debtor entities.

6.  If your Beneficial Holder Ballot is not received by your Nominee in sufficient time to be included on a timely submitted Master Ballot, it will not be counted unless the Debtor determines otherwise. In all cases, Beneficial Holders should allow sufficient time to assure timely delivery of your Beneficial Holder Ballot to your Nominee. Beneficial Holder Ballots must be returned in accordance with the instructions received.

7.  Please be sure to sign and date your Beneficial Holder Ballot. If you are signing a Beneficial Holder Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims Agent, the Debtor, or the Court, must submit proper evidence to the requesting party to so act on behalf of such holder.

8.  If you have submitted more than one Beneficial Holder Ballot for your Old Notes Claims, you *must* complete Item 5. Please note that the information provided in Items 1 and 5 must, taken together, identify all of your holdings of Old Notes Claims as of the Voting Record Date.

9.  If you conveyed more than one vote on the same Old Notes Claim, the last valid vote received by your Nominee will be deemed to reflect your intent to either accept or reject the Plan.

10. You may receive more than one Beneficial Holder Ballot if you hold Old Notes Claims through multiple Nominees. You must vote all of your Old Notes Claims to accept or reject the Plan in the same manner. Accordingly, if you submit more than one vote and the votes are not consistent, such votes shall not be counted.

11.    If a Beneficial Holder Ballot is received <u>after</u> the Voting Deadline and if the Voting Deadline is not extended, it may be counted only in the discretion of the Debtor.

12.    Additionally, the following Beneficial Holder Ballots will <u>not</u> be counted:

    a.    any vote cast by an entity that does not hold Old Notes Claims as of the Voting Record Date;

    b.    any vote sent to any party other than the Nominee (*e.g.*, the Debtor, any official committee, or the Court) or, in the case of a pre-validated Beneficial Holder Ballot, the Claims Agent;

    c.    any vote superseded by another timely valid vote;

    d.    any inconsistent or duplicate votes that are simultaneously cast with respect to the same Old Notes Claim;

    e.    any vote (or group of votes from a single creditor) that partially rejects and partially accepts the Plan will not be counted;

    f.    any Beneficial Holder Ballot not marked to accept or reject the Plan; or

    g.    any Beneficial Holder Ballot marked both to accept and reject the Plan.

13.    The Beneficial Holder Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to submit elections (if any). Accordingly, at this time, holders of Claims should not surrender certificates or instruments representing or evidencing their Claims, if any, and neither the Debtor nor the Claims Agent will accept delivery of any such certificates or instruments surrendered together with a Beneficial Holder Ballot.

14.    The Beneficial Holder Ballot does not constitute and shall not be deemed a proof of Claim or Interest or an assertion of a Claim or Interest.

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

## Exhibit H

## Master Ballot BR001.019–020

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CREDIVALORES – CREDISERVICIOS S.A.,[1] | Case No. 24-_____ (__) |
| Debtor. | |
| _____/ | |

**MASTER BALLOT FOR ACCEPTING OR REJECTING THE
PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION FOR
CREDIVALORES – CREDISERVICIOS S.A.**

**CLASS A: MASTER BALLOT FOR OLD NOTES CLAIMS**

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT CAREFULLY <u>BEFORE</u> COMPLETING THIS BALLOT.

**THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE CLAIMS AGENT PRIOR TO 5:00 P.M. PREVAILING EASTERN TIME (NEW YORK CITY TIME) ON April 3, 2024 (THE "VOTING DEADLINE").**

The above-captioned debtor and debtor in possession (the "**Debtor**") intends to file a chapter 11 case in the above-captioned bankruptcy court (the "**Court**") and is soliciting votes with respect to the proposed *Debtor's Prepackaged Chapter 11 Plan* (as amended, supplemented or otherwise modified from time to time, the "**Plan**") and the *Disclosure Statement for the Plan* (as amended, supplemented, or otherwise modified from time to time, the "**Disclosure Statement**") pursuant to sections 1125 and 1126(b) of title 11 of the United States Code (the "**Bankruptcy Code**").[2]

---

[1] The address for Credivalores – Crediservicios S.A. is Carrera 7 #76-35, 7th Floor, Bogotá, Colombia.

[2] Capitalized terms otherwise undefined herein have the meanings ascribed to them in the Disclosure Statement and Plan, as applicable.

You are receiving this master ballot (the "**Master Ballot**") because records indicate you are the Nominee (as defined below) of Beneficial Holders[3] of the Old Notes Claims as of March 7, 2024 (the "**Voting Record Date**").

This Master Ballot is to be used by you as a broker, bank, common representative or other nominee, as the agent of a broker, bank, common representative or other nominee (each of the foregoing, a "**Nominee**"), or as the proxy holder of a Nominee for Beneficial Holders of Old Notes Claims, to transmit to the Claims Agent (as defined below) the votes of such Beneficial Holders in respect of their Claims to accept or reject the Plan. This Master Ballot may not be used for any purpose other than for submitting votes, certifying one's "Holder Status", and decisions to opt in to the Third-Party Release (as defined below) on behalf of their Beneficial Holders with respect to the Plan.

The Plan can be confirmed by the Court and thereby made binding on the Beneficial Holders, whether or not they vote, if the Plan (i) is accepted by the Holders of at least two-thirds in amount and more than one-half in number of the claims in each impaired Class of claims who vote on the Plan and (ii) otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Court nonetheless may confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

The Beneficial Holders' rights are described in the Disclosure Statement, which is accessible from the Debtor's restructuring website at https://dm.epiq11.com/Credivalores (the "**Restructuring Website**"), along with copies of the Plan and certain other materials. If you desire paper copies, or if you need to obtain additional solicitation packages, you may (a) contact the Debtor's claims and balloting agent (the "**Claims Agent**"), Epiq Corporate Restructuring LLC ("**Epiq**"), at (646) 362-6336, or by email at tabulation@epiqglobal.com with a reference to "Credivalores Voting" in the subject line, or (b) once the Chapter 11 Case has been filed, you may download such documents (excluding ballots) from the Debtor's Restructuring Website, free of charge. Copies of these documents may also be obtained for a fee via PACER (account required) at https://www.nysb.uscourts.gov/. Please be advised that the Claims Agent is not permitted to provide legal advice.

This Master Ballot may not be used for any purpose other than conveying the vote and decision regarding the opt in to the releases on behalf of your Beneficial Holder clients. If you believe that you have received this Master Ballot in error, or if you believe that you have received the wrong Master Ballot, please contact the Claims Agent <u>immediately</u> at the e-mail address or telephone number set forth above.

If the Plan is confirmed by the Court, it will be binding on Class A claimants whether or not they vote to accept or vote to reject the Plan.

In addition to this Master Ballot, you should have received copies of (a) the Disclosure Statement and attached exhibits, (b) the Plan, and (c) a pre-addressed, pre-paid return envelope (the "**Solicitation Package**"). You are required to distribute the Solicitation Package to your Beneficial Holder clients immediately to enable each such Beneficial Holder to cast their votes and decisions to opt in to the releases (or not) in a timely fashion. Any vote delivered to you by a Beneficial Holder shall not be counted for purposes of accepting or rejecting the Plan until you complete, sign and return this Master Ballot to the Claims Agent, **so that it is received by the Voting Deadline, as indicated above**.

---

[3] A "**Beneficial Holder**" means an entity that beneficially owns the Old Notes whose claims have not been satisfied prior to the Voting Record Date pursuant to Court order or otherwise, as reflected in the records maintained by the Nominee.

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

valores – Crediservicios S.A.
Class A: Old Notes Claim
MASTER BALLOT

---

PLEASE COMPLETE <u>ITEMS 1 THROUGH 5</u>. IF THIS MASTER BALLOT IS NOT SIGNED ON THE APPROPRIATE LINES BELOW, THIS MASTER BALLOT **WILL NOT** BE VALID OR COUNTED AS HAVING BEEN CAST.

---

**Item 1. Certification of Authority to Vote.** The undersigned certifies that as of the Voting Record Date, the undersigned (please check appropriate box):

☐      Is a broker, bank, or other nominee for the Beneficial Holders in the principal amount of the Old Notes Claims listed in <u>Item 2</u> below or

☒      Is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a Nominee for the Beneficial Holders in the principal amount of the Old Notes Claims listed in <u>Item 2</u> below or

☐      Has been granted a proxy (an original of which is attached hereto) from a Nominee for the Beneficial Holders (or the Beneficial Holders itself/themselves) in the principal amount of the Old Notes Claims listed in <u>Item 2 </u>below

and accordingly, has full power and authority to vote to accept or reject the Plan, on behalf of the Beneficial Holders of the Old Notes Claims described in <u>Item 2</u>.

**Item 2. Holder Status, Votes on the Plan, and Release Election, from Beneficial Holder Ballots.** The undersigned transmits the following votes of beneficial owners in respect of the Old Notes and certifies that the information provided below (including any information provided on additional sheets attached hereto) is a true and accurate schedule of the Beneficial Holders of the Old Notes Claims, as identified by their respective account numbers, that have (i) delivered a duly completed Beneficial Holder ballot (a "**Beneficial Holder Ballot**") to the undersigned voting to accept or reject the Plan or (ii) conveyed their vote on the Plan and decision to opt in to the releases (or not) via email, telephone, internet application, facsimile, voter information form, or other customary means of conveying such information.

Indicate in the appropriate column below the aggregate principal amount of the Old Notes Claims that voted for each account as well as the "Holder Status" of each Beneficial Holder as indicated on the Beneficial Holder Ballot, or attach such information to this Master Ballot in the form of the following table.

Please note that each Beneficial Holder must vote all such Beneficial Holder's Old Notes Claims in Class A to accept or reject the Plan and may not split any vote. Any Beneficial Holder Ballot received from a Beneficial Holder that does not indicate an acceptance or rejection of the Plan or indicates both an acceptance and a rejection of the Plan will not be counted.

(Please complete the information requested below. Attach additional sheets if necessary.)

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

valores – Crediservicios S.A.
Class A: Old Notes Claim
MASTER BALLOT

## USE A SEPARATE MASTER BALLOT FOR EACH CUSIP; INDICATE CUSIP BELOW:

☐  **22555L AB2 (ISIN US22555LAB27)**      ☐  **P32086 AR4 (ISIN USP32086AR44)**

| FROM BENEFICIAL BALLOTS | | | | | |
|---|---|---|---|---|---|
| | | **ITEM 2**<br>**HOLDER STATUS** | | **ITEM 3**<br>**VOTE ON PLAN** | **ITEM 4**<br>**RELEASE** |
| **BENEFICIAL HOLDER NAME OR ACCOUNT NUMBER** | **PRINCIPAL AMOUNT HELD AS OF VOTING RECORD DATE** | **QUALIFIED HOLDER** | | **OLD NOTES CLAIMS VOTE ON THE PLAN** | RELEASE OPT IN |
| | | **IS A QUALIFIED HOLDER** | **IS A NON-QUALIFIED HOLDER** | To **ACCEPT** the Plan | To **REJECT** the Plan | PLACE AN "X" IF THE BOX IN ITEM 4 WAS CHECKED |
| 1. | $ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 2. | $ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 3. | $ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 4. | $ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 5. | $ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **TOTAL** | SEE ATTACHED | SEE ATTACHED | SEE ATTACHED | SEE ATTACHED | SEE ATTACHED | SEE ATTACHED |

**Item 3. Important Information Regarding the Release by Certain Holders of Claims.**

**THE PLAN CONTAINS RELEASES. PARTIES SHOULD BE AWARE THAT, IF THE PLAN IS CONFIRMED and if the Effective Date occurs, the Released Parties, as defined in <u>Section 1.1.73</u> of the Plan and as reproduced below, will be receiving releases and certain parties will be giving releases and be bound by injunctions as set forth in <u>Article VIII</u> of the Plan, and with respect to the releases described in <u>Article VIII</u> of the Plan and reproduced below, they are automatically deemed to have consented to the release provisions of the Plan, if either vote to accept the Plan. For the avoidance of doubt, a Holder of a Claim or Interest that votes to accept the Plan shall be automatically deemed to have given the releases irrespective of whether such Holder elects to opt in to the Third-Party Release.**

**IF A BENEFICIAL HOLDER VOTES TO ACCEPT THE PLAN, IT SHALL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE.**

**IF A BENEFICIAL HOLDER VOTES TO REJECT THE PLAN, THE BENEFICIAL HOLDER MAY STILL CONSENT TO GIVE THE THIRD-PARTY RELEASE SET FORTH IN <u>ARTICLE VIII</u> OF THE PLAN BY ELECTING THE OPT IN OPTION ON THE BENEFICIAL HOLDER BALLOT.**

**IF A BENEFICIAL HOLDER EXECUTES AND RETURNS THE BENEFICIAL HOLDER BALLOT WITHOUT A VOTE TO ACCEPT OR REJECT THE PLAN, THE BENEFICIAL HOLDER MAY STILL CONSENT TO GIVE THE THIRD-PARTY RELEASE SET FORTH IN <u>ARTICLE VIII</u> OF THE PLAN BY ELECTING THE OPT IN OPTION ON THE BENEFICIAL HOLDER BALLOT.**

**THE BENEFICIAL HOLDER'S DECISION TO OPT IN (OR NOT OPT IN) TO GIVING THE THIRD-PARTY RELEASE SET FORTH IN ARTICLE VIII OF THE PLAN WILL NOT AFFECT ANY DISTRIBUTION THE BENEFICIAL HOLDER MAY RECEIVE IF THE PLAN IS ULTIMATELY CONFIRMED.**

To provide additional information regarding the Third-Party Release, the following Sections of the Plan have been copied immediately below: Section 1.1.38 (Exculpated Claim); Section 1.1.39 (Exculpated Party); Section 1.1.73 (Released Party); Section 1.1.74 (Releasing Party); Section 8.2 (Discharge of Claims and Termination of Interests); Section 8.3 (Releases by the Debtor); Section 8.4 (Releases by the Releasing Parties); Section 8.5 (Exculpation); and Section 8.6 (Injunction). To the extent of any discrepancy between the following and the corresponding sections in the Plan, including any modifications or amendments thereto, the sections in the Plan control. Please carefully review the following.

### Relevant Definitions:

"**Exculpated Claim**" means any Claim related to any act or omission in connection with, relating to, or arising out of the Debtor's in-court or out-of-court efforts to negotiate, enter into or implement the Chapter 11 Case, the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with or pursuant to the Disclosure Statement or the Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation, the administration and implementation of the Plan, or the distribution of property under the Plan.

"**Exculpated Party**" means each of the following in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; (c) the Trustee; (d) the Holders of Interests; and (e) with respect to each of the foregoing Entities in clauses (a) through (d) such Entity's predecessors, successors and assigns and current and former Affiliates, subsidiaries, officers, directors, members, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals.

"**Released Party**" means each of the following: (a) the Debtor; (b) the Trustee; (c) the Holders of Interests; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's successors and assigns, and current and former Affiliates, subsidiaries, officers, directors, members, stockholders, partners, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such.

"**Releasing Party**" means each of the following: (a) the Holders of Impaired Claims or Interests that (i) affirmatively vote to accept the Plan or (ii) abstain from voting on the Plan; (b) to the fullest extent permissible under applicable law, the Holders of Unimpaired Claims or Interests; (c) the Trustee; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's successors and assigns, and current and former Affiliates, subsidiaries, officers, directors, members, stockholders, partners, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such.

### Relevant Provisions:

Section 8.2 of the Plan provides for the discharge of Claims and termination of Interests (the "**Discharge**"):

**Except as otherwise provided for herein and effective as of the Effective Date: (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor or any of its assets, property, or Estate; (b) the Plan shall bind all Holders of Claims and Interests,**

notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtor's liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtor, the Debtor's Estate, the Reorganized Debtor, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

Section 8.3 of the Plan provides for the Debtor's release of the Released Parties (the "**Debtor Release**"):

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise expressly provided herein, for good and valuable consideration, as of the Effective Date, to the extent permitted by applicable laws, the Released Parties are conclusively, absolutely, unconditionally, irrevocably, and forever deemed released and discharged by the Debtor, the Reorganized Debtor, and the Debtor's Estate from any and all actions, Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, asserted or that could possibly have been asserted on behalf of the Debtor, that the Debtor, Reorganized Debtor, or Debtor's Estate, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in, or under, in whole or in part, the Debtor, the Chapter 11 Case, the Old Notes, the Old Notes Indenture, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests prior to or during the Chapter 11 Case, the negotiation, formulation, solicitation, or preparation of the Disclosure Statement, the Plan, the Plan Supplement, or related agreements, instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, however, that the foregoing provisions of this Section 8.3 shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction; provided further that nothing in this Section 8.3 shall release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement, or otherwise given effect under, the Plan, including the New Notes and any other agreement or document related thereto or entered into in connection therewith, as applicable.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this Section 8.3, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by this Section 8.3; (c) in the best interests of the Debtor and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to the Debtor asserting any Claim or Cause of Action released by this Section 8.3.

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

Section 8.4 of the Plan provides for the Releases by the Releasing Parties (the "**Third-Party Release**"):

**As of the Effective Date, to the extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtor, the Reorganized Debtor, the Estate, the Released Parties and each such Entity's successors and assigns, current and former affiliates, subsidiaries, officers, directors, members, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such, and only if such Persons occupied any such positions at any time on or after the Petition Date, from any and all Claims, Interests, obligations, rights, liabilities, actions, causes of action, choses in action, suits, debts, demands, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including all claims and actions against any Entities under the Bankruptcy Code) whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity asserted or that could possibly have been asserted, or would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the Old Notes, the Old Notes Indenture, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Releasing Party, the restructuring of Claims and Interests prior to or during the Chapter 11 Case, the negotiation, formulation, solicitation, or preparation of the Disclosure Statement, the Plan, the Plan Supplement, or related agreements, instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; _provided, however_, that the foregoing provisions of this _Section 8.4_ shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction; _provided further_ that nothing in this _Section 8.4_ shall release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement, or otherwise given effect under, the Plan.**

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this _Section 8.4_, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) important to the Plan; (b) in exchange for the good and valuable consideration provided by the Debtor, the Reorganized Debtor, the Estate and the Released Parties; (c) a good faith settlement and compromise of the Claims released by this _Section 8.4_; (d) in the best interests of the Debtor and all Holders of Claims and Interests; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; and (g) a bar to any Entity granting a release under this _Section 8.4_ from asserting any Claim or Cause of Action released by this _Section 8.4_.

Section 8.5 of the Plan provides for the exculpation of Exculpated Parties (the "**Exculpation**"):

**No Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim; <u>provided</u>, <u>however</u>, that the foregoing "exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted fraud, gross negligence, or willful misconduct; <u>provided</u>, <u>further</u>, that in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to, or in connection with, the Plan. The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of acceptances and rejections of the Plan and the making of distributions pursuant to the Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable, law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

Section 8.6 of the Plan provides for a permanent injunction with respect to actions against the Released Parties and the Exculpated Parties (the "**Injunction**"):

**Except as otherwise provided herein or for obligations issued pursuant hereto, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to <u>Section 8.3</u> or <u>Section 8.4</u>, discharged pursuant to <u>Section 8.2</u>, or are subject to exculpation pursuant to <u>Section 8.5</u> are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, exculpated, or settled pursuant to the Plan.**

<u>**Item 4. Additional Ballots Submitted by Beneficial Holders.**</u> The undersigned certifies that the information provided below (including any information on additional sheets attached hereto) is a true and accurate schedule on which the undersigned has transcribed the information, if any, provided in Item 5 of each vote received from a Beneficial Holder.

(Please complete the information requested below. Attach additional sheets if necessary.)

| Your Customer Account Number for Each Beneficial Holder Who Completed Item 5 of the Beneficial Holder Ballot | TRANSCRIBE FROM ITEM 5 OF THE BENEFICIAL HOLDER BALLOTS | | | |
|---|---|---|---|---|
| | Account Number of Other Claims Voted | Name of Record Holder or Nominee | Principal Amount of Other Claims Voted | CUSIP of Other Claims Voted |
| 1. | | | $ | |
| 2. | | | $ | |
| 3. | | | $ | |
| 4. | | | $ | |
| 5. | SEE ATTACHED | SEE ATTACHED | $  SEE ATTACHED | SEE ATTACHED |

**Item 5. Additional Certifications.** By signing this Master Ballot, the undersigned certifies to the Court and the Debtor:

a) that the undersigned has received a copy of the Solicitation Package and has delivered the same to the Beneficial Holders listed in Item 2 of this Master Ballot;

b) that the undersigned has received from each Beneficial Holder listed in Item 2 of this Master Ballot (i) a completed and signed Beneficial Holder Ballot or (ii) an e-mail, recorded telephone call, internet transmission, facsimile, voter information card, or other customary means of communication conveying a vote and decision to opt in to the releases (or not);

c) that the undersigned is the Nominee (or agent of the Nominee) of the Old Notes Claim being voted, the Holder of the Old Notes Claims being voted listed in Item 2 above, or has been authorized by each such Beneficial Holder to vote on the Plan;

d) that the undersigned has properly disclosed for each Beneficial Holder who submitted Ballots or votes and opt in decisions via other customary means: (i) the respective amounts of the Old Notes Claim owned by each Beneficial Holder; (ii) each Beneficial Holder's respective vote concerning the Plan; (iii) for each Beneficial Holder that has opted in to the Third-Party Release, such Beneficial Holder's election; (iv) for each Beneficial Holder, the "Qualified Holder" or "Non-Qualified Holder" status of such Beneficial Holder; and (v) the customer account or other identification number for each such Beneficial Holder; and

e) that each such Beneficial Holder has certified to the undersigned that it is eligible to vote on the Plan; and it will maintain the Beneficial Holder Ballots and evidence of separate transactions returned by Beneficial Holders including e-mails, recorded telephone conversations, facsimile transmissions, internet communications, voter information forms, or other official communications (whether properly completed or defective) for at least one year after the Effective Date and disclose all such information to the Court or the Debtor, as the case may be, if requested.

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

Credivalores – Crediservicios S.A.
Class A: Old Notes Claim
MASTER BALLOT

| | |
|---|---|
| Name of Nominee and/or DTC Participant: | SEE ATTACHED |
| | (Print or Type) |
| DTC Participant Number (if applicable): | |
| Signature: | |
| Name of Signatory: | |
| Title: | |
| Address: | |
| Telephone Number: | |
| Email | April 3, 2024 |
| Date Completed: | |

This proxy is issued to Powers of Attorney
executed by each listed Brokerage Firm or Nominee
which are in full force and effect as of the date hereof.
The Powers of Attorney are on file with the Offices of
Broadridge Financial Solutions, Inc.

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

Credivalores – Crediservicios S.A.
Class A: Old Notes Claim
MASTER BALLOT

**PLEASE COMPLETE, SIGN, AND DATE THIS MASTER BALLOT AND RETURN IT PROMPTLY AND NO LATER THAN THE VOTING DEADLINE OF April 3, 2024 AT 5:00 P.M. (PREVAILING EASTERN TIME / NEW YORK CITY TIME) TO:**

<div>

**If by First Class Mail, Courier or Overnight Mail:**
Credivalores - Master Ballot Processing
c/o Epiq Corporate Restructuring LLC
10300 SW Allen Boulevard
Beaverton, OR 97005

---

**If via electronic mail (preferred method):**

tabulation@epiqglobal.com with a reference
to "Credivalores Master Ballot Processing" in the subject line.

**IMPORTANT NOTE: For Master Ballots submitted via electronic mail, the received date and time in the Claims Agent's inbox will be used as a timestamp for receipt.**

**Nominees that cast a Master Ballot via electronic mail should NOT also submit a paper Master Ballot.**

</div>

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

IF THE CLAIMS AGENT DOES NOT <u>ACTUALLY RECEIVE</u> THIS MASTER BALLOT PRIOR TO THE VOTING DEADLINE, AND IF THE VOTING DEADLINE IS NOT EXTENDED, THE VOTES OR ELECTIONS TRANSMITTED HEREBY MAY BE COUNTED ONLY IN THE DISCRETION OF THE DEBTOR.

IF YOU HAVE ANY QUESTIONS CONCERNING THIS MASTER BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AGENT BY TELEPHONE AT (646) 362-6336, OR EMAIL TO TABULATION@EPIQGLOBAL.COM WITH A REFERENCE TO "CREDIVALORES VOTING" IN THE SUBJECT LINE. THE CLAIMS AGENT IS NOT AUTHORIZED TO PROVIDE, AND WILL NOT PROVIDE, LEGAL OR FINANCIAL ADVICE.

THE DEBTOR IS SEEKING CONFIRMATION OF THE PLAN AS PART OF A PREPACKAGED CHAPTER 11 CASE, AS DESCRIBED IN THE PREPACKAGED CHAPTER 11 CASE GUIDELINES OF THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (LOCAL RULE 3018-2). THE ACCEPTANCES AND REJECTIONS OF THE PLAN SET FORTH HEREIN THEREFORE WILL BE SUBJECT TO 11 U.S.C. § 1126(b) AND SUCH GUIDELINES. HOWEVER, IT IS IMPERATIVE THAT ALL DEADLINES SET FORTH HEREIN BE OBSERVED PENDING ANY FURTHER DETERMINATIONS BY THE COURT PRESIDING OVER SUCH CASE.

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

## VOTING INSTRUCTIONS

1.  The Debtor is soliciting votes of Holders of Claims with respect to the Plan attached as **Annex B** to the Disclosure Statement. Capitalized terms used in the Master Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Plan. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS MASTER BALLOT**.

2.  The Court may confirm the Plan and thereby bind the Beneficial Holders to the terms of the Plan, if it is accepted by the Holders of two-thirds in amount and more than one-half in number of Claims in each Impaired Class of Claims entitled to vote on the Plan. In the event the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if it finds that the Plan accords fair and equitable treatment to the Class or Classes that have rejected the Plan and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3.  **Distribution of Solicitation Packages and Beneficial Holder Ballots**. You should immediately distribute the Solicitation Package to all Beneficial Holders of Old Notes Claims as of the Voting Record Date and take any action required to enable each such Beneficial Holders to vote timely the Claims that it holds. Any vote delivered to you by a Beneficial Holder shall not be counted for purposes of accepting or rejecting the Plan until you complete, sign and return this Master Ballot to the Claims Agent, so that it is received by the Voting Deadline.

4.  **Soliciting, Receiving and Compiling Votes**. You should solicit votes from your Beneficial Holder clients via the (a) delivery of duly completed Beneficial Holder Ballots or (b) conveyance of their vote on the Plan and decision to opt in to the releases (or not) via e-mail, telephone, internet application, facsimile, voter information form, or other customary means of conveying such information.

If you are transmitting the votes of any Beneficial Holder other than yourself, you may either:

a)  "Pre-validate" the individual Beneficial Holder Ballot contained in the Solicitation Package and then forward the Solicitation Package to the Beneficial Holder of the Claim for voting no later than five (5) Business Days after the receipt by such Nominee of the Solicitation Package, with the Beneficial Holder then returning the individual Beneficial Holder Ballot directly to the Claims Agent in the return envelope to be provided in the Solicitation Package. A Nominee "pre-validates" a Beneficial Holder's Ballot by signing the Beneficial Holder Ballot and including its DTC participant number; indicating the account number of the Beneficial Holder and the principal amount of Claims held by the Nominee for such Beneficial Holder accompanied by a medallion guarantee stamp certifying the Beneficial Holder's position as of the Voting Record Date; and then forwarding the Beneficial Holder Ballot together with the Solicitation Package to the Beneficial Holder. The Beneficial Holder then completes the remaining information requested on the Beneficial Holder Ballot and returns the Beneficial Holder Ballot directly to the Claims Agent. A list of the Beneficial Holders to whom "pre-validated" Beneficial Holder Ballots were delivered should be maintained by Nominees for inspection for at least one (1) year from the Effective Date; **or**

b)  No later than five (5) Business Days after receipt by such Nominee of the Solicitation Package, forward the Solicitation Package to the Beneficial Holder of the Claim for voting along with a return envelope provided by and addressed to the Nominee, with the Beneficial Holder then returning the individual Beneficial Holder Ballot to the Nominee. Additionally, a Nominee may collect votes through a voter information form, e-mail, or other customary method of collecting

votes from a Beneficial Holder, the Beneficial Holder shall follow the Nominee's instruction for completing and submitting its vote to the Nominee. The Nominee will tabulate the votes of its respective owners on a Master Ballot that will be provided to the Nominee separately by the Claims Agent, in accordance with any instructions set forth in the instructions to the Master Ballot, and then return the Master Ballot to the Claims Agent. The Nominee should advise the Beneficial Holder to return their individual Beneficial Holder Ballots (or otherwise transmit their vote) to the Nominee by a date calculated by the Nominee to allow it to prepare and return the Master Ballot to the Claims Agent so that the Master Ballot is actually received by the Claims Agent on or before the Voting Deadline.

5. With regard to any Ballots returned to you by a Beneficial Holder, you must: (a) compile and validate the votes and other relevant information of each such Beneficial Holder on the Master Ballot using the customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Ballot; (c) transmit the Master Ballot to the Claims Agent; and (d) retain the Beneficial Holder Ballots in your files for a period of one (1) year after the Effective Date. You may be ordered to produce the Beneficial Holder Ballots to the Debtor or the Court.

6. Multiple Master Ballots may be completed and delivered to the Claims Agent. Votes reflected by multiple Master Ballots will be counted except to the extent that they are duplicative of votes cast on other Master Ballots. If two or more Master Ballots are inconsistent, the latest-received properly executed valid Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior Master Ballot. If more than one Master Ballot is submitted and the later Master Ballot(s) supplement(s) rather than supersede(s) the earlier Master Ballot(s), please mark the subsequent Master Ballot(s) with the words "Additional Vote" or such other language as you customarily use to indicate an additional vote that is not meant to revoke an earlier vote.

7. Each Beneficial Holder must vote its entire Old Notes Claim in Class A either to accept or reject the Plan. A Beneficial Holder may not split its votes.

8. If a Beneficial Holder casts more than one Beneficial Holder Ballot voting the same Claim prior to the deadline set by each Nominee, the last valid vote received (as determined by you) should be deemed to reflect such Beneficial Holder's intent to either accept or reject the Plan.

9. The attached Master Ballot is not a letter of transmittal and may not be used for any purpose other than to transmit votes to accept or reject the Plan and elect to opt in to the Third-Party Release. *Holders of Old Notes should not surrender certificates (if any) representing their Old Notes at this time, and neither the Debtor nor the Claims Agent will accept delivery of any such certificates transmitted together with a Master Ballot.*

10. This Master Ballot does not constitute and shall not be deemed a proof of claim or interest or an assertion of a Claim or Interest.

11. **The Master Ballot must be returned to the Claims Agent so as to be actually received by the Claims Agent on or before the Voting Deadline. The Voting Deadline is <u>April 3, 2024, at 5:00 p.m., prevailing Eastern Time (New York City Time)</u>.**

12. Please be sure to sign and date your Master Ballot. You should indicate that you are signing a Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity and, if required or requested

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

by the Claims Agent, must submit proper evidence to the requesting party to so act on behalf of such Beneficial Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Ballot.

13. If a Master Ballot is received after the Voting Deadline, it may be counted only in the discretion of the Debtor. **Additionally, the following Master Ballots will <u>not</u> be counted**:

    a) any Master Ballot that is illegible or contains insufficient information to permit the identification of the Nominee;

    b) any unsigned Master Ballot;

    c) any Master Ballot cast by an entity that (i) does not have Beneficial Holder clients that are entitled to vote to accept or reject the Plan or (ii) is not otherwise entitled to cast a Master Ballot pursuant to the procedures described in any order of the Court;

    d) any Master Ballot sent to any party other than the Claims Agent (e.g., the Debtor, any official committee, if any, or the Court);

    e) any inconsistent or duplicate Master Ballots that are simultaneously cast with respect to the same Old Notes Claim;

    f) any Master Ballot transmitted to the Claims Agent by facsimile;

    g) any Master Ballot superseded by another timely valid Master Ballot;

    h) any Master Ballot cast on a form other than the one sent by the Claims Agent;

    i) any votes on a Master Ballot submitted by a Beneficial Holder who voted other Old Notes Claims in the same Class differently; or

    j) any Beneficial Holder vote on a Master Ballot not marked to accept or reject the Plan; or

    k) any Beneficial Holder marked both to accept and reject the Plan.

14. The following additional rules shall apply to Master Ballots:

    a) Votes cast by Beneficial Holders through a Nominee will be applied against the positions held by such entities holding the Class A Old Notes Claims as of the Voting Record Date, as evidenced by the record and depository listings;

    b) Votes submitted by a Nominee, whether pursuant to a Master Ballot, or pre-validated Beneficial Holder Ballot provided by the Nominee to the Beneficial Holder, will not be counted in excess of the record principal amount of the Class A Old Notes Claims held by such Nominee;

    c) To the extent that conflicting votes or "over-votes" are submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballot, the Claims Agent will attempt to reconcile discrepancies with the Nominee;

    d) To the extent that over-votes on a Master Ballot or pre-validated Beneficial Holder Ballot are not reconcilable prior to the preparation of the vote certification, the Claims Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan

submitted on the Master Ballot or pre-validated Beneficial Holder Ballots that contained the over-vote, but only to the extent of the Nominee's amount of Class A Old Notes Claims; and

e) For purposes of tabulating votes, each Beneficial Holder holding through a particular account will be deemed to have voted the principal amount relating to its holding in that particular account, although the Claims Agent may be asked to adjust such principal amount to reflect the claim amount.

15. No fees or commissions or other remuneration will be payable to any broker, bank, dealer or other person in connection with this solicitation. Upon written request, however, the Debtor will reimburse you for customary mailing and handling expenses incurred by you in forwarding Solicitation Packages to your client(s).

**NOTHING CONTAINED HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL RENDER YOU OR ANY OTHER PERSON THE AGENT OF THE DEBTOR OR THE DEBTOR'S AGENT, OR AUTHORIZE YOU OR ANY OTHER PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF ANY OF THEM WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE ENCLOSED DOCUMENTS.**

CUSIP P32086 AR4 (ISIN USP32086AR44)
CUSIP 22555L AB2 (ISIN US22555LAB27)

| RUN/DT | JOB # | TIMESTAMP | CUSIP | CLI | CONTROL# | SHARES | PROP VOTE | VT/DATE | PROP 1. FOR | PROP 1. AGN | PROP 1. ABS | PROP 2. FOR | PROP 2. AGN | PROP 2. ABS | PROP 3. FOR | PROP 3. AGN | PROP 3. ABS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 240403 | Z87277 | 2024040314402208 | P32086AR4 | 352 | 0483797990900586 | 8382000 | FNN | 3/28/2024 | 8382000 | | | | 8382000 | | | 8382000 | |
| 240403 | Z87277 | 2024040314402208 | P32086AR4 | 352 | 7341058591233656 | 2450000 | FNN | 3/28/2024 | 2450000 | | | | 2450000 | | | 2450000 | |