UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 24-10837-dsj

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of:

CREDIVALORES - CREDISERVICIOS S.A.,

        Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                United States Bankruptcy Court

                One Bowling Green

                New York, NY  10004

                July 2, 2024

                2:31 PM

B E F O R E :

HON. DAVID S. JONES

U.S. BANKRUPTCY JUDGE

ECRO:  UNKNOWN

HEARING re Combined Hearing to Consider the Adequacy of the Disclosure Statement and Confirmation of the Joint Plan

Transcribed by:  Sonya Ledanski Hyde

A P P E A R A N C E S :


UNITED STATES DEPARTMENT OF JUSTICE

Attorney for the United States Trustee

Alexander Hamilton Custom House

One Bowling Green

New York, NY 10004


BY:  GREG M. ZIPES


BAKER MCKENZIE LLP

Attorney for the Debtor

1111 Brickell Avenue, Suite 1000

Miami, FL 33131


BY:  PAUL KEENAN


TIMOTHY GRAULICH

Attorney for the Ad Hoc Group

450 Lexington Avenue

New York, NY 10014


BY:  ANGELA LIBBY

ALSO PRESENT:

FRANCISCO VAZQUEZ

P R O C E E D I N G S

THE COURT: Good afternoon, everyone. It's Judge Jones. Let me quickly take appearances just so I'm sure I know who's here. Maybe not complete because we have everyone through the sign in process, but I'll just record who's here first for Debtor I see Mr. Graulich.

MR. GRAULICH: Good afternoon, Your Honor. Timothy Graulich of Davis Polk & Wardwell on behalf of the Ad Hoc Group.

THE COURT: Okay, great. And I will say it's something you might be wondering. Yes, I noticed that you submitted a letter today and I've reviewed it. So, in further reference to the -- a matter that's on for today. And for Debtor I see we have Mr. Keenan.

MR. KEENAN: Yes, Your Honor. Paul Keenan from Baker McKenzie on behalf of the Debtor.

THE COURT: Okay. And the US Trustee we have Mr. Zipes.

MR. ZIPES: Yes, Your Honor, and my colleague, Rachel Siegel, should also be on the line somewhere.

THE COURT: Okay, that's fine. These are the prime actors and I'm not going to take full appearances. As I say, we've got them through the sign-in process anyway. So, let me thank you all for making yourselves available on relatively short notice and for attending.

I scheduled today's proceeding for the purpose of issuing an oral ruling as soon as was responsively possible in light of the agreement of all parties. That this is a time sensitive matter in which delay causes financial strain or harm on the Debtor, which everybody wants to avoid to the extent possible.

The Court and the parties have a shared goal to achieve a proper and timely resolution to maximize the Debtor's rehabilitation and financial prospects. And towards that end the Court is now going to deliver an oral ruling with respect to confirmation related issues that were heard during a contested confirmation hearing that also addressed other issues last week.

Specifically, on June 27, 2024, the Court heard four motions or applications of Debtor's, they interrelate, which were opposed by the Ad Hoc Group of note holders as well as by the Office of the United States Trustee. I note that the US Trustee's opposition has been, at least, largely resolved consensually and had been as of the June 27th hearing.

The Court also heard argument on one motion filed by the Ad Hoc Group that raises issues that are identical to those raised in the Ad Hoc Group's opposition to Debtor's motions. That is, they're not fully coextensive, but all the issues raised in support of the Ad Hoc Group's motion

are also raised in its opposition to Debtor's suite of applications. That's S-U-I-T-E.

Debtors in turn opposed the Ad Hoc Group's motion. So, the applications being resolved today are first the Debtor's motion to approve solicitation procedures. Second, the Debtor's motion to dispense with the formation of a Committee of Unsecured Creditors and relatedly the holding of a meeting of Creditors under 11 USC, Section 341. Third, the Debtor's motion to approve the disclosure statement. And fourth, the Debtor's motion to confirm the plan. Fifth, the Ad Hoc Group's motion to count certain ballets is how I'll characterize that motion.

For reasons I will state shortly, the Court grants the Debtor's motions and denies the Ad Hoc Group's motion. This oral ruling will rule in some detail on the contested issues that were put to the Court during an evidentiary hearing and extensive argument last week.

And then, with respect to all other requirements of the bankruptcy code for further relief sought, specifically, including plan confirmation, the Court anticipates relying on and incorporating in modified form the most recent version of the proposed findings of fact and conclusions of law that Debtor has submitted in connection with their motion or motions.

I anticipate having some further discussion about

that on the record today after I complete this oral ruling as to the issues that the parties have actively contested. By way of background this case was brought and styled as a Chapter 11 Case of a Columbian Entity that among other things provides payday lending services to individuals in Columbia.

The company's financing includes US issued notes. Debtor reports that due to reasons including a decline in value of the Columbian currency in which Debtor's income is received as against US currency in which Debtor must satisfy its debt obligations, Debtor needs to restructure its debt obligations while otherwise continuing to meet its other obligations.

In pursuit of this objective and relying on well-established statute, rules, and customs authorizing the use of pre-bankruptcy petition solicitation and balloting of affected parties to attempt to gain swift approval of a pre-packaged plan of reorganization in US Bankruptcy Courts, the Debtor sent a combined solicitation package to noteholders informing them of Debtors desire either to have a consensual modification of the bond's terms or else if the high level of support needed for that was not forthcoming, then a US Bankruptcy court approved restructuring of the terms of the notes at issue. There is no meaningful dispute that a solicitation package was sent to the effected noteholders

along with ballots and voting instructions.

I will add that the debt in question that's to be -- that's the subject of dispute is the only constituents in the case that whose entitlements are going to be modified under the terms of the proposed plan and the objecting Ad Hoc Group consists of some holders of those notes that are impacted by the course of action date pursued by the Debtor.

What I see as the driving issues here are as follows. Bankruptcy code Section 1129 sets forth multiple requirements for confirming a plan of reorganization. The key requirement here is Subsection 8 of Section of 1129(a), which requires that each class of claims subject to the plan either, "Has accepted the plan" or "is not impaired under the plan."

If this requirement along with other applicable requirements is met, the plan may be confirmed. However, if this requirement, meaning Subsection 8 of Section 1129(a) is not met in that there is an impaired class of nonconsenting claimholders then additional requirements would apply and undisputedly have not been satisfied here. See, for example, Section 1129(a)(10) of the bankruptcy code which requires that at least one impaired class of Creditors has accepted a plan in the event all classes have not either accepted the plan or are not impaired.

Here, there is only one impaired class, the

noteholders.  Debtors say that class has accepted the plan such that they are entitled to have their plan confirmed as validly consensual.  The Ad Hoc Group objects that a number of noteholders in that group in fact opposed the plan but were unsuccessful in their efforts to have their ballots properly cast and recorded within the time limits set by Debtor's notice and voting procedures.

The upshot is that if Debtor is correct, they have established the requisite universal consent to satisfy the confirmation requirement of Section 1129(a)(8).  But if the Ad Hoc Group is correct, then the required consent is not present.  I'm going to self-edit to say the adjective universal is not really accurate, but it's also not required.  Obviously, there are nonconsenting players present in the case including the members of the Ad Hoc Group, at least, they do not now consent.

So, really, it's that if Debtor is correct, they have established the required level of consent to satisfy the confirmation requirements of Section 1129(a)(8).  Deciding whether the required consent has been established here is governed primarily by 11 USC Section 1126.  In brief, Section 1126(a) says that holders have allowed claims or interests may accept or reject a plan.

And in turn Subsection B of Section 1126 provides that a holder of a claim that has accepted or rejected the

plan before the commencement of the bankruptcy case is deemed to have accepted or rejected the plan as the case may be if either of two conditions are met. The first as set forth in Section 1126(b)(1) is that the solicitation or, excuse me, the solicitation of acceptance or rejection was, "In compliance with any applicable non-bankruptcy law, rule, or regulation."

The second condition set forth in Section 1126(b)(2) is that if there is no such non-bankruptcy law, rule, or regulation, the solicitation was made after disclosure to the holder of adequate information as defined in Section 1125(a) of the code which governs disclosure statements made during the course of a bankruptcy case.

Continuing with my review of the governing statutory principles Subsection C of Section 1126 instructs or provides that a, "Class of claims has accepted a plan," if after excluding some types of Creditors not at issue here, the plan has been accepted by holders of claims at least two-thirds in amount and more than one half in number of the allowed claims of such class, "That have accepted or rejected such plan."

In other words, the code itself tells courts to look not to the total class, but just to those who have acted either to accept or to reject the plan. As an initial matter then, the Court considers whether Debtors

solicitation procedures met the requirements of Section 1126(b).  Because if those requirements were not met then the Court could not conclude that the votes on which Debtor relies were validly obtained and the Court further could not -- or the Debtor then could not establish the requisite level of consent to support confirmation, which it also seeks today.

Here, the Court concludes that the solicitation was sufficient and meets applicable legal requirements as set forth in the code.  Here, the solicitation involved a combined exchange offer which required a high degree of bondholder support and which if accepted would have avoided the need for a bankruptcy along with a solicitation for votes in connection with a contemplated bankruptcy which would require a lower degree of support than a non-bankruptcy exchange offer.  The level of support is what I just described the code as requiring.

The Court credits the record established in this case and specifically the testimony of Ms. Sullivan, which was uncontested, that the solicitation procedures in this cage, excuse me, in this case match the usual, and customary, and lawful procedures for soliciting bondholders in exchange offers and prepackaged bankruptcy plans as commonly employed in this district.  Procedures that Ms. Sullivan has implemented dozens of times.

Ms. Sullivan also testified that she ran or was responsible for running the voting solicitation and tabulation in this case and that she did so in the same way she has handled and would have handled those processes in any other case. She further testified that the Debtor placed no pressure on her to count or disqualify any ballots or to put its thumb on the scale of the balloting outcome. And the Debtor has not made any serious effort to dispute the showing or to undermine Ms. Sullivan's testimony. I, therefore, credit Ms. Sullivan's testimony in full.

The Court concludes as does not appear seriously disputed that the securities laws are an applicable source of non-bankruptcy law that can govern review of the substantive information in the Debtor's prepetition solicitation documents under Sections 1125(g) and 1126(b)(1) of the bankruptcy code.

The Ad Hoc Group has presented no argument that the substance of Debtor's prepetition solicitation and disclosure statement violated non-bankruptcy law. While the Debtor's position is that it in fact complied with and satisfied any such requirements. In other words, the Court credits, finds, and concludes that the solicitation that Debtors performed here satisfies the requirements of applicable non-bankruptcy law namely the securities laws.

In the alternative, even if this were not so, the

Court concludes that the same solicitation also met the requirements of Section 1125(a) and therefore satisfies the alternative requirements for prepetition solicitations set forth in the Section 1126(b)(2) of the bankruptcy code. I note that Debtor's proposed order filed in connection with its motion sought this alternative holding and neither the Ad Hoc Group nor any other party has shown that these requirements are not met.

I also note the letter I referenced at the top of the hearing submitted by the Ad Hoc Group today representing specifically that an error in ballot completion was done not by an agent of that noteholder itself, but rather by a professional engaged in the vote transmission process. But that error did not -- was not attributable to the Debtor and it's not alleged to have been attributable to the Debtor.

And so, I have been thinking in the lead up to this hearing about where that contention fits. And at this point in my analysis, I'll just pause to acknowledge having read it and I will note that nothing in that letter causes me to alter my conclusion that the solicitation procedures themselves were deficient. Rather, for reasons stated I find that the disclosures and the solicitation procedures did conform with applicable law.

Further, and this is something that requires few words to say but it is central to the legal analysis here on

which the Court relies and that drives the outcome of this case. It is undisputed that the voting results as tabulated and certified by Debtor's agent, Epiq, meet the voting support requirements of Sections 1129(a)(8) and 1126(c) of the code. That's a short and simple observation, but one that is central to the Court's ruling. Again, the as tabulated votes meet the amount and number requirements set forth in the code.

So, the only question then is whether there is some reason to discount or compel a modification of the vote totals as reported and relied upon by Debtor. More concretely, this leaves the remaining question of whether notwithstanding the fact that the Debtor followed permissible solicitation procedures, the Court should order the contested ballots counted as requested by the Ad Hoc Group or should otherwise disturb the voting results as determined by Epiq.

The Court concludes that there is no basis to disturb the balloting results as determined and reported by Debtor's independent agent, Epiq, a specialist in the field. And specifically, again, the Court credits the testimony of Epiq's representative, Ms. Sullivan, that she performed her duties without interference from Debtor as to the ballot determinations that she made and that she determined were appropriate.

In fact, the Ad Hoc Group's counsel forthrightly acknowledged that they had no indication of any sort of impropriety on the part of Debtor in terms of influencing Ms. Sullivan's or Epiq's performance of their duties and the Ad Hoc Group is not relying on any such contention.

Ms. Sullivan's testimony was somewhat lengthy but boils down to an explanation of why she did not determine that the votes of three key actors focused on by the Ad Hoc Group -- I'm creating a double negative with my syntax. So, let me be careful and start over.

Ms. Sullivan's testimony boils down to why she disagrees with the Ad Hoc Group's contention that the votes of three key actors should be reported and/or recharacterized as no votes in response to those solicitations. The contentions included that certain noteholders agents for submitting ballots did not submit no ballots and that information submitted along with another entity's ballot did not confirm that the entity was a beneficial holder or owner of the position as of the pertinent date.

There has been no showing that the determinations made by Ms. Sullivan and Epiq were erroneous. At most, the contentions constitutes suggestions that the experienced and expert entity and individual tasked with vote tabulation, that means Epiq and Ms. Sullivan, could have exercised

discretion differently to record no votes despite Epiq's lack of receipt of verifiably qualified, excuse me, verifiably qualified and properly submitted no votes.

All the Ad Hoc Group's cited authorities are materially distinguishable because the authority cited either do not address the issue of Creditor identity verification or present non analogous facts. First, the Ad Hoc Group cites In re Adelphia Communications Corp, 359 B.R. 54 (Bankr. S.D.N.Y 2006), which at Page 56 of the decision, the reported decision, characterizes the right of Creditors to vote on a Chapter 11 plan as sacred.

This Court's ruling in that case, in Adelphia, addressed a motion under Section 1126(e) to designate and disqualify certain Creditors otherwise proper votes after extensive preplanned litigation. This case does not present that scenario, rather the Court today faces a dispute focused on verifying Creditors identities in the prepetition solicitation process.

And all parties agree that Credivalores' agent followed traditional procedures for doing so. Further, while the Court of course agrees with Adelphia, the Adelphia decision, that voting rights are essential to the bankruptcy process, the question is whether appropriate voting procedures were adopted and followed here, and the Court views this case as not presenting any issues of improper

disenfranchisement. For that reason, the Adelphia case does not weigh in favor of ruling for the Ad Hoc Group or against Debtor today.

Second, the Ad Hoc Group cites In re Pioneer Finance Corp., 246 B.R. 626 (Bankr. D.Nev 2000). For four reasons, I'm going to talk about this case at a little bit of length, the Court finds that that ruling insufficient to order the vote rerun, or the disputed votes counted. First, in that case the Debtor did not send a proposed plan to Creditors prepetition, but merely asked for consent to support a plan the Debtor would write and circulate later.

By contrast, Credivalores sent out its full proposed plan of reorganization along with its solicitation materials in a more formal and developed process. Second, in the Pioneer case the Court had no evidence whether the solicitation materials actually reached the Creditors at issue, see 246 B.R. at 634 Note 11.

The Court observes here that under Part IX.E, Sub II of its amended procedural guidelines for prepackaged Chapter 11 cases, Creditors with nominees holding securities in so called street name on their behalf assume the risk that they may receive the solicitation package from the Debtor due to -- may or may not receive the solicitation package from the Debtor due to nominee errors.

While here, the Ad Hoc Group does not dispute that

its members in fact received the solicitation package, the guidelines are just one manifestation of the broader and reasonable principle that Creditors choose their own agents and are bound by the outcomes of the performance of those agents' duties. And that principle makes it reasonable for vote tabulating professionals not to have taken the additional steps proposed by the Ad Hoc Group.

I will note that the letter submitted today by the Ad Hoc Group does make a reasonable case certainly for the fact that the error that they say crept into the process with respect to the Monata vote was not the result of an agent error or an error by an agent of Monata's own choosing but rather appears to have occurred by somewhere further down the chain and removed from Monata's control. And so, I'm not necessarily holding the Monata situation to the legal principle that the consequences of Monata's own agent is something that binds it.

However, more generally, the principle applies at least to other actors and further whether that principle does or does not apply it remains in the Court's view inappropriate and unduly disruptive and process destabilizing for the Court to enter a ruling today which would have the effect of causing vote tabulators to need to look behind votes as received and processed to determine and validate the entire process by which those votes reached the

tabulators.

I think that the necessary consequence of the position being advanced by Ad Hoc Group would be one of undermining finality and inviting litigation and uncertainty into a process in a way that would be very harmful to the process and that would undermine tabulators' necessary ability to rely on and respond to simply that which they receive.

Okay, continuing with the discussion of in re Pioneer Finance Corp., which is what gave rise to that somewhat lengthy discussion. Third, the Court sees no evidence that any other voting Creditors failed to receive the solicitation packages from their nominees. Again, in re Pioneer involved a situation where it wasn't clear that there was even receipt of solicitation packages, that's not the problem here.

Rather here, on the master ballots the nominees certified to the Court first that they sent the solicitation package to the beneficial holders and second that they received the votes reported from those beneficial holders. Furthermore, per Item 6 of the beneficial holder ballots the beneficial holders acknowledge that they have received the disclosure statement plan and other applicable solicitation materials.

The Court, exercising its discretion under

bankruptcy rule 3017(e) as contemplated by Pioneer Finance Corp., finds these certifications sufficient. Fourth, no one disputes that it is the holder of a claim or interest who is entitled to receive a plan solicitation package and to vote. That again, is quoting in re Pioneer 246 B.R. at 634. See also, 11 USC Section 1126(c).

The real question is whether the Court approves or disapproves the process first as proposed for verifying the identities of the parties entitled to vote and second as executed for verifying the identities of voters. The Court approves the processes in this case in both respects. Again, the Court fully credits the testimony of Ms. Sullivan, concededly an industry leader with decades of experience and great expertise, that the procedures used were typical and appropriate and that the deviations proposed by the Ad Hoc Group were not ones she would view as appropriate in any case.

I just want to add one more thing with respect to the letter submitted today by the Ad Hoc Group. The Ad Hoc Group in addition to making the observation that Monata's vote non -- the issue leading to the nonrecognition of Monata's vote or inability to verify the identity of Monata as an eligible voter did not result from fault on the part of Monata. I find that it also didn't result from fault on the part of Debtor.

But at any rate, the letter suggests that the Court grant relief under bankruptcy Rule 3017(e) as a result of the processing of Monata's vote. I will note that that rule concerns transmission to beneficial holders of securities and requires the Court to consider procedures for transmitting such documents to beneficial holders of stock, bonds, notes, and other types of securities. I'm omitting a few words. And to enter any orders the Court deems appropriate.

So, obviously, the issue here is not one of transmission but rather a processing of votes and even -- but even assuming that the circumstances described in the letter submitted today could theoretically constitute grounds for relief under Rule 3017(e), I don't see a basis for concluding that such relief, the relief sought would be appropriate.

Okay, lastly, Counsel for the Ad Hoc Group suggested that when the Debtor or its agent received notice or indication that Creditors disputed the disqualification of their ballots for improper delivery or failure to appear on the depository trust company's security position report, the Debtor should have instructed those Creditors that they could validate their positions by submitting a medallion stamped document.

Ms. Sullivan did testify that there is a procedure

by which votes can be credited and authorized via medallion -- a medallion process even if the DTC report can't be matched. However, the Court declines to impose such a requirement because there -- the Court is not satisfied and has not seen any persuasive reason why the Debtor should bear this additional burden of informing and advising would be voters of the possibility they could pursue a medallion stamp process.

It is the case that a Creditor -- or I credit the testimony that a Creditor may obtain a medallion stamp as evidence of its position without requiring the Debtor's involvement or instruction. That is an available remedy for voters to take or pathway for voters to take. But the Ad Hoc Group presents no authority for the idea that a Debtor's tabulation agent should be required to go beyond its core responsibilities in order to make further outreach and promote further efforts by parties that submit improper votes to pursue further options.

Imposing such a burden would improperly shift responsibility for pursuing voting rights from the logically responsible parties, the voters, and their agents onto the shoulders of the solicitating Debtor and its agents. Doing so would complicate and add expense to the voting process, would render finality difficult to achieve, and would harmfully turn the complex but ministerial vote counting

enterprise into a potential source of dispute and litigation in every case as disappointed voters would contend that the Debtor and its voting tabulation professionals should have done more to validate and count improperly submitted no ballots, that's N-O, ballots.

The Court knows of no law supporting such a burden shift and the Ad Hoc Group has identified none. In fact, when asked how a ruling in their favor could be written, Counsel identified no viable legal source of a such a duty, but merely argued that the narrow circumstances here warranted equitable reallocation or crediting of votes. And yet the Court is not satisfied that the Group, Ad Hoc Group, has established cause for the Court to take such an unusual and systemically destabilizing measure.

Thus, for reasons stated on the record at today's hearing the Court finds for Debtor on all contested issues. Specifically, that translates to a denial of the Ad Hoc Group's motion to count certain ballots and approval of the Debtor's related or linked applications to approve their solicitation procedures, dispense with formation of a committee of unsecured creditors because that's resolved by today's ruling or the need for it is eliminated by today's ruling. The Debtor's motion to approve the disclosure statement and the Debtor's motion to confirm the plan.

So, subject to discussion which I'll turn to

momentarily of specific aspects of the proposed order, the Court therefore grants all motions of the Debtor and denies the motion of Ad Hoc Group. And I'm subject to further discussion of details of the proposed order. It is so ordered. Before I turn to the order, let me do a couple things.

One is I want to acknowledge to Mr. Graulich and the Ad Hoc Group the effort and the intensity of feelings that this case seems to have engendered. I stand by my ruling, I have given it my best shot, but I want to acknowledge and tell you it's -- I always still find it difficult to rule against people particularly when they're arguing in good faith about a position they care deeply about. I acknowledge it, I nevertheless have given you the ruling that I think is required and appropriate in the circumstances. So, I wanted to stay that and not invite a response, but just to say that by way of human acknowledgement.

And let me turn to Mr. Keenan before I get to my detailed questions about the order. This is a thing I often do when I render an oral ruling, I want to ask the prevailing party if there's anything I omitted or misstated that you think I should be clearing up on the record?

MR. KEENAN: No, Your Honor. I listened very closely and took notes throughout. I can't think of any

finding of fact at the moment that would be necessary to support the ruling.

THE COURT: Okay, thank you. And I want to -- I'm going to spell out for clarity because I litigated for a long time and never encountered a judge who did this. My purpose is that now and then in human history it's happened that judges, particularly rendering oral ruling, can either misstate something or just make an inadvertent error that can create procedural effort issues or appellate issues down the road.

And if it can be and/or messy motion for rehearing or reconsideration and it's my desire to head off any such headache. Not by inviting re-argument, but just by letting the prevailing party have a chance to tell me to clean up any mess that I inadvertently made on this file in the interest of efficiency. So, that's the purpose of the inquiry. And with that, let me just turn to the proposed order.

I don't actually have too much but let me just run through what I've got. So, and what I'm looking at is the proposed, document titled, Proposed Findings of Fact, Conclusions of Law, and Order Approving the Adequacy of the Disclosure State, Solicitation of Votes and Voting Procedures and Forms of Ballots and Confirming Prepackaged Chapter 11 Amended Plan Submitted by Debtors in Connection

with Their Application. Sorry, my printout doesn't have the ECF number on it so but you'll -- hopefully, that's clear enough.

So, I'm just going to walk through a few thoughts really and this is mainly directed at Mr. Keenan. The first is on Page 4 of that document. Oh, my helpful Clerk tells me it's ECF Number 125. So, the first one is just a ministerial thing. Ultimately, we're going to end with me asking you to submit a proposed order.

And Paragraph A1 of that on Page 4 just recites the findings and conclusions set forth herein and the record of the confirmation hearing. I'm going to want you to insert including the oral ruling of the Court which is incorporated herein. You can say during the hearing on July 2nd which is incorporated herein. I want to specifically reference and incorporate the -- that oral ruling. And then, the sentence goes on to say constitute the Court's findings of fact and conclusion of law.

MR. KEENAN: Okay.

THE COURT: Then, I had a set of potentially unnecessary edits that I'm -- that are -- go to my comfort. I think your proposed order is clearly written and assumes the applicability of the burden of proof including Debtor's obligation to establish its entitlement to relief by a preponderance of the evidence.

But as written the order includes some very absolute wording coming from my style that's coming from my mouth. And so, I wanted to just add reference to the applicable standard in certain places. So, I will let you know where that is. I don't think this changes your substance and you can let me know if it -- you think any of this problematic or ill advised.

So, the first is in Paragraph 32. Your existing proposed language is the Debtor and each of its constituents who negotiated the amended plan, I'll omit a variety of words but it's a good faith finding paragraph. I would -- I envision modifying that by -- right after the first two words which are the Debtor, inserting, has shown by a preponderance of evidence, which has not been overcome by contrary evidence, that it and then it would continue and each of the constituents, et cetera. Really, what I'm doing is just reinserting the that my finding is an evidentiary finding under the applicable standard, okay?

And I would like to make a similar edit to Paragraph 34. Paragraph 34 concerns directors, officers, and insiders and it concerns the satisfaction of Section 1129(a)(5). And really, where I want to put that is just in the last sentence of that paragraph. Right now, it says, the proposed directors are qualified, and their appointments are consistent with the interest of holders of claims and

within public policy. I would like that -- I would just like a very similar insert to go right after the word the in that last sentence. So, it would be the Debtor has shown by a preponderance of evidence, which has not been overcome by contrary evidence, that the proposed directors, et cetera.

The next place I had in mind revising similarly is Paragraph 36, best interests of Creditors test, Section 1129(a)(7). This, in the second sentence, again, makes certain findings with respect specifically to the liquidation analysis attached to the plan supplement. Again, I would like it to read the Debtor has shown by a preponderance of evidence, which has not been overcome by contrary evidence that, and then it would continue the liquidation analysis attached to the plan supplement and just go on as written.

I think also in Paragraph 36 that eliminates the need for the clause that Sub -- Sub iii, which is a separate statement that this hasn't been controverted by other evidence. That's baked into my edit at the top of the sentence so you would get rid of little Romanette iii and little Romanette iv would be come iii and be preceded by the work and, okay?

And then, my next edit is to Paragraph 50, which is preceded by the heading GEG Disclosure of Facts. It asks me to find that the Debtor has disclosed all material facts

regarding the amended plan. That's a very sweeping statement. I think it should more accurately be the Debtor has made legally sufficient disclosures. I am finding and concluding that and represents without evidence backed dispute that it has disclosed all material facts, et cetera.

My next wished for modification is in Paragraph 84, governing law, which says that New York State Law applies. My training as a lawyer for the Federal Government has me a strong believer that sometimes no state law applies and that one looks to Federal Law or other sources of law. So, I think that should be -- have an introductory phrase added to the extent state law governs, and then just continue subject to the provisions, et cetera. Okay?

And then, and this one we might want to have discussion of. You've got waiver of stay for good cause shown you want me to waive any stay and make this immediately applicable. Mr. Graulich, I'm going to guess you, would you object to immediate applicability of this order? And relatedly, do you or might you intend to pursue an appeal?

MR. GRAULICH: As to the second question, Your Honor, I think we have to talk to the Ad Hoc Group. I mean, I think we've made this clear from the beginning certain individual members of the Ad Hoc Group are so small in this case that the only reason that they're actually doing this

is because they really do think that there's like a reverse floodgate problem here that we're approving a plan in light of evidence that in fact the votes aren't there. I will have to check to see if that sort of commercial view prevails with respect to an appeal. So, I don't know I'll have to discuss with them. I don't think the decision has been made yet to be truthful.

THE COURT: Okay, thank you for that explanation and I'm going to take that as an elaboration and clarification of a yes, an appeal might be forthcoming. It might not, it might, you have to talk more.

MR. GRAULICH: I think that's fair, Your Honor.

THE COURT: Okay, I've got it. That's fine. And so, what I -- so, then, I have -- that informs my view of what the waiver of stay provision should say, all right? So, let me say a few words about that. That's this we're talking about Paragraph 92 of the proposed order. The Debtors have proposed that I eliminate the applicability of any stay.

So, I -- let me just say the following which goes both to my thinking and then which is going to culminate in proposed modification. I strongly believe in preserving party's ability and right to pursue appeals from my orders. I am not infallible, and I don't want to preclude anyone from doing so. I also strongly believe in not saddling my

district court colleagues with emergency applications and/or me with unnecessary emergency stay application.

So, I want to preserve enough time for people to figure out what they want to do and do so if they want and yet have – not unleash a fire drill down the record. So, I have come up with a what I think is a good way of implementing that impulse in this context. So, I'll just give you the language, but I'll -- first I'll just tell you the substance.

What I want to do is modify the stay from the rules baseline of 14 days and say that I'm going to make the order applicable, make a seven day stay applicable on this order. But extend that seven days to 14 if and only if a notice of appeal is filed within seven days or there is another agreement reached by the parties and approved by this Court to further extend that time.

And my thought of that -- my thinking is if I just leave the 14 day stay in place there's every risk and possibility that on day 13 or 14 I or a district judge will be faced with an emergency application. And I want to head that off by trying to make the process start sooner and yet provide a protection for the Ad Hoc Group's time to pursue whatever they want to pursue if they want to do so without needing to have an absolute fire drill of a emergency stay application.

So, that's my intention.  Translating that to words the waiver of stay provision as drafted starts as follows.  For good cause shown the stay of this confirmation order provided by any bankruptcy rule is, and then, it currently says waived and goes on with some more words.  So, just get rid of the rest of the sentence after is and replace it with the following.  Modified and shall remain in place for seven days after entry of this order, and - only if a notice of appeal is filed within seven days - for an additional seven days, i.e., for a total of 14 days from entry of this order.  We have a lot of legal talent on this call so is that clear or does that -- is that wording clear and workable and consistent with the impulse I just described, which is the reason for it?  Mr. Graulich, what do you think?

MR. GRAULICH:  It seems to reflect the sentiment that you've described.

THE COURT:  Okay.  Yeah, you don't have to -- I'm not asking you -- right, it's unfair of me to ask you to tell me that's terrific Judge or I'm completely good with that, but I wanted to make sure on the workability and clarity perspective that I'm not creating a muddle for everybody.  Mr. Keenan?

MR. KEENAN:  Yes, Your Honor, I thought it was very clear.  But if you don't mind, could you read it again

because I couldn't --

THE COURT: I don't mind, that's fine. Okay. So, you've got for good cause, this is your wording. For good cause shown the stay of this confirmation order provided by any bankruptcy rule is, and then you're going to delete the rest of what you had which begins waived and then it says this shall be effective and enforceable immediately upon entry.

Instead, it will be, it is modified and shall remain in place for, oh, I'm sorry I'll slow down. Is modified and shall remain in place for seven days after entry of this order, and - only if a notice of appeal is filed within seven days of entry of this order - for an additional seven days, i.e., for a total of 14 days from entry of this order.

MR. KEENAN: Thank you, Your Honor.

THE COURT: Okay, that was it. All right. So, what I anticipate is this. That -- oh, let me just say, I'm sorry. That concludes my thoughts that I had identified with respect to the specific proposed findings of fact and conclusions of law that were submitted in aid of the motion augmented by the oral ruling that I just delivered.

So, what I would like to happen is have the Debtor make appropriate modifications to that proposed order and submit it in Word form. It, of course, should have been run

past Mr. Graulich and his team and US Trustee program to make sure everybody doesn't have problems with the form. And then, we'll get it processed and unfortunately -- if possible, and unfortunately given the impending arrival of July 4th, I will tell you I have diminishing staff availability starting mid to late morning tomorrow.

So, if we get something today, we can review it and get it entered quickly in the morning before people start to go poof, that would be helpful to the Court. There's going to be some lucky staffer sticking around into the day and helping everybody deal with whatever couldn't be done quicker. But if we can spare such a person, that would be great, okay? Is that -- so, hopefully that's doable. And just keep us posted on timing.

MR. KEENAN: Yeah.

MR. GRAULICH: And Your Honor just Timothy Graulich on behalf of the Ad Hoc Group. On this point, we have not provided any comments to the confirmation order for a variety of reasons, not the least of which is that it was filed. We weren't able to do it before the hearing because I think it was filed the morning of the hearing. There is at least one or two defying terms in there that I don't think are from this case.

And for example, it also cross-references the plan which says, you know, I know my client's think this is a bad

deal, but it actually says I think that you get $750 which is not what anybody, I believe, wants. I think $750 out of every $1,000 of bonds.

THE COURT: Right.

MR. GRAULICH: So, there's some comments like that that will -- that we would want to send across to the company that we could do very quickly.

THE COURT: Well, let -- yeah, let's take a minute and talk through. I mean, I don't want to just hang up on you and leave you with a mess. So, let's talk through logistics. Are you -- do you have a full set of comments of that nature ready to go and transmit?

MR. GRAULICH: I think that we could have those to the -- to Counsel, you know, within the hour.

THE COURT: Okay, that sounds great. And then, so, I mean ultimately hopefully there will be an agreed upon form of order and if there isn't we'll figure out what to do and that might involve a further application. But Mr. Keenan, is that workable to you?

MR. KEENAN: Yes, Your Honor, we can work on it this afternoon and get it uploaded if not late afternoon, this evening.

THE COURT: Okay.

MR. KEENAN: (Indiscernible).

THE COURT: You know what, this whole line of

timing discussion is premised on my assumption that time is of the essence, and you want to get this entered before the 4th. Let me just actually realty test that. Is that right, Mr. Keenan?

MR. KEENAN: It is, Your Honor. It may come as a shock, but the 4th of July is not a holiday in Columbia and as for the reasons I stated on the record at the last hearing, it is key that they emerge in Chapter 11 as soon as possible just because of the lack of understanding and awareness of Chapter 11 that it's stabilizing not destabilizing affected foreign countries, so.

THE COURT: Okay. So, we'll work to get it entered. I think you should know the 5th is a Court holiday. I mean, I, you know, I and my staff are attentive to emails, but things really shut down here for the -- it's going to be tough if you get -- as time goes on for us to process things.

I'm just going to tell you something that I was kind of delighted and amused by today. The lead into it is you'll see I'm doing this from home. I've been diagnosed with COVID. I feel pretty darn fine, but I'm not allowed to see humans, but as -- and I don't know if you could hear background noise, but my next-door neighbors are having massive renovations done and there's various loud power tools and things happening.

And that's all by way of building up to say the entire work crew arrived today in Columbia soccer jerseys because their national soccer team is playing Brazil tonight in a massive scrimmage.  So, I was thinking of you not only because of the case but because my nice neighboring work crew doing work on my neighbor's house.  So, that's what I wanted to share with you.

Okay, and I hope you didn't find that upsetting frivolous but it's just what's going on and it also explains any power tools you heard.  Okay, is there anything else we need to do today before we adjourn?  No, okay.  Let me -- yeah, sorry, go ahead.

MR. KEENAN:  No, Your Honor.

THE COURT:  All right.  Let me thank you all for your efforts.  I will tell you I took this case very seriously --

MR. VAZQUEZ:  I'm sorry, Your Honor.

THE COURT:  Sorry, yeah, who's speaking?

MR. VAZQUEZ:  I'm sorry, my computer literally just crashed.  I will be very brief.  This is Francisco Vazquez from Norton Rose Fullbright on behalf of the Bank of New York Mellon.  Like I mentioned a moment ago, my computer literally crashed while you were finishing up --

THE COURT:  Okay.  Yeah, go ahead, Mr. Vazquez.

MR. VAZQUEZ:  -- before Mr. Keenan spoke.  I just

want to make sure that Mr. Keenan alerted you that we had agreed to two, I think, minor changes to the confirmation order. I didn't want those to come as a surprise to you. I don't remember which paragraph they're in as I said my computer crashed, but they're relatively minor. I don't know if Mr. Keenan can just highlight those for you so again no surprises when you see the new order.

THE COURT: Yeah, thanks, Mr. Vazquez. Let me say I didn't give poor Mr. Keenan a chance to do that because I launched right into ruling. So, you want to walk us through that, Mr. Keenan, if you're able.

MR. KEENAN: Yes. I would have to pull it up and I'm sorry I didn't mention it before. They were relatively minor. I am looking for Mr. Vazquez's email right now because --

THE COURT: If it's going to take time --

MR. VAZQUEZ: Again, I apologize --

MR. KEENAN: Maybe Mr. Vazquez you can just explain them in substance and then the redline which --

MR. VAZQUEZ: I think in Paragraph 8.

MR. KEENAN: Okay.

THE COURT: Yeah, hang on, you're talking over each other Mr. Vazquez doesn't have video.

MR. VAZQUEZ: I believe it's Paragraph --

THE COURT: Go ahead.

MR. VAZQUEZ: I'm sorry. On Paragraph 36 I believe where we talk about the cancelation of notes. I think we added the phrase and the trustee after the word Debtor. But that should not be controversial. And then, I believe there's a sentence that says -- that preserves the trustee's rights including the indemnification obligation. And there was some wording there that I think it said something for the purposes of the sentence, which we struck. Again, two minor changes but I don't want Your Honor to be surprised by them when they came in.

THE COURT: Okay. So, here's what I -- the first one sounds completely fine. The indemnification obligation is my concerns in the US Trustee Program's concerns always start to jump if people are expanding indemnification rights. But we'll look for that in the proposed order. Mr. Zipes, I'll ask you to eyeball those things and if you have concerns about it, let me know. Unless you're pre-signed off?

MR. ZIPES: Your Honor, I'm not aware of what these changes are and I -- I'm a little surprised to hear this because I should have been involved with any revisions of that kind. I can't say that I'm signing off on it at the moment. And if the Debtor wants to take the risk of that we need to have a further hearing on this -- my office did file an objection and we did -- our objection was in essence

mooted out because language was taken out of the plan. Our objection still stands as far as it is if that language is now coming in, I don't think it's appropriate. But I don't -- that said, I don't know what the language is.

MR. VAZQUEZ: No, it's -- exactly Paul, I'm sorry, Mr. Zipes, it is not new language. What we did was, and now I've been able to pull up the order, it is Paragraph 64, apologies I have the numbers off from memory. But if you look at the last sentence which has always been there, it says notwithstanding the foregoing. And then, it had this wording as solely for the purpose set forth in the sentence which doesn't seem to make any sense. And that's the language we struck, and solely for the purpose set forth in the sentence. So, we're not adding anything, I just want to be clear, we're just deleting what I would consider to be purposeless language.

MR. ZIPES: Your Honor, I completely trust Mr. Vazquez in this regard. I just want to state that, you know, our -- I didn't review the confirmation order Docket Number 125, it doesn't -- it refers to the amended plan which my office has signed off on. So, I've yet to record findings today and I am not entirely certain what this language is, but I think my issues have been flagged and if Mr. Vazquez is saying that my issues are not being effected then I'm not going to have an objection to it. I'm sorry if

I'm --

THE COURT:  Okay.

MR. ZIPES:  -- missing something here and making an issue that doesn't exist.  I just -- I'm not (indiscernible) saw this order that was amended.  I was referring -- I was looking at Docket 125 and I don't recall seeing any other changes.

THE COURT:  Okay.  I mean, I know Mr. Vazquez appeared at previously, I think, at the hearing and stated that there some issues he was working out and that they were going to be dealt with.  So, all right, let's -- let me ask this, Mr. Zipes, which is not specific to Mr. Vazquez.  Has the -- I had -- is there any unresolved portion of the substance of the US Trustee Program's objection?  Because I had understood that it was effectively resolved by a combination of modifications that were agreed to prior to the hearing coupled with your just waiting for the Court's ruling that I just delivered.  Is there anything else that the US Trustee Program wishes to advance that has not been resolved?

MR. ZIPES:  No, Your Honor.  We had some questions at the evidentiary hearing and we asked those questions.

THE COURT:  Okay.  That was my impression and I wanted to get that explicitly on the record.  So, look, let me suggest this.  I think Mr. Vazquez and Mr. Keenan are

positing that these modifications are not ones of great substance, but they bring clarity and ensure that Mr. Vazquez' client's rights are adequately protected. If so, that sounds fine.

Mr. Zipes, I'll just ask you to look at the modifications and holler if you have any concerns. They're being billed as not -- something that you shouldn't have concerns about. But if you do, let them be known, okay, quickly. And it's -- I'm looking at the language, it's paragraph -- it's a modification to Paragraph 64, the last sentence and it's slipping my mind where the other one is. The first one sounded pretty nonconsequential. The second one I got a little interested in because it concerns indemnification. I see a little hand insignia by Mr. Vazquez there, so let me let you go ahead.

MR. VAZQUEZ: I was going to say the --

THE COURT: I think you do.

MR. VAZQUEZ: -- first change is in the Subsection V, (indiscernible) 64, the end shall be deemed cancelled, discharged, released and extinguished wherein the trustee now of any continuing allegations they're under. The notes are canceled, neither the Debtor nor the Trustee should have obligations thereunder. That's the change.

THE COURT: Okay. And can you give me the second change again? It's in the last sentence of Paragraph 64?

MR. VAZQUEZ:  Actually, the (indiscernible) sentence, it's a sentence that begin notwithstanding the foregoing.

THE COURT:  Oh, yeah.  I'm sorry, yes.  I missed that small last sentence, go ahead.

MR. VAZQUEZ:  See the words, Your Honor, there after words foregoing and solely for the purpose set forth in this sentence?

THE COURT:  Yes.

MR. VAZQUEZ:  So, with that (indiscernible).

THE COURT:  So, what are you doing, are you just striking the words and solely for the purpose set forth in this sentence?  You there, Mr. Vazquez?

MR. VAZQUEZ:  That's exactly right, Your Honor. That's exactly what we're proposed to do.

THE COURT:  Okay.  You see that, Mr. Zipes?

MR. ZIPES:  Your Honor, I do very much want to resolve this right now.  I need one more.  Can you count up, please, the lines, how many lines up from 65 that this is? One, two --

THE COURT:  Oh.

MR. VAZQUEZ:  Sure.  On 65, if I count it on mine, it is one, two, three, four, five, six, seven, eight, nine, ten, eleven lines up you'll see the word notwithstanding the foregoing.

THE COURT:  That's my count too.  It's also the fourth to the last line on the copy, on the printed copy, I have that's clean of Page 21.

MR. ZIPES:  And if you can all indulge me, I -- and show me exactly what exactly is coming out again in that from this --

THE COURT:  You see that -- yeah, first, let's make sure you're in the right sentence.  You see that --

MR. ZIPES:  I'm on the right sentence, I am on the right sentence.

THE COURT:  It's purely deleting the words and solely for the purpose set forth in this sentence.

MR. ZIPES:  Your Honor, I think that's fine.

THE COURT:  Okay.  Great.  Okay.  And --

MR. VAZQUEZ:  Thank you, Mr. Zipes.

THE COURT:  Yeah.  And okay, so let me again ask if there's anything else anyone needs to raise?  Okay.  Hearing nothing further, thank you for your efforts.  Again, terrific lawyering and I appreciate that it's a -- feelings are high in this case but well done and I look forward to receiving the order and taking it from there.  Take care, we're adjourned.

MR. ZIPES:  Thank you, Your Honor.

(Whereupon these proceedings were concluded at 3:36 PM)

I N D E X

RULINGS

|                                                        | Page | Line |
|--------------------------------------------------------|------|------|
| Debtor's Motion To Confirm The Plan, GRANTED           | 3    | 13   |
| Ad Hoc Group's Motion To Count Certain                 |      |      |
| Ballots, DENIED                                        | 24   | 17   |
| Debtor's Related Or Linked Applications                |      |      |
| To Approve Their Solicitation Procedures,              | 24   | 19   |
| GRANTED                                                |      |      |
| All Debtor Motions, GRANTED                            | 25   | 3    |
| All Ad Hoc Motions, DENIED                             | 25   | 3    |

**C E R T I F I C A T I O N**

I, Sonya Ledanski Hyde, certified that the foregoing transcript is a true and accurate record of the proceedings.

*Sonya M. Ledanski Hyde*

Sonya Ledanski Hyde

Veritext Legal Solutions

330 Old Country Road

Suite 300

Mineola, NY 11501

Date: July 8, 2024

| & | | | |
|---|---|---|---|

**&**

**&** 6:8

**1**

**1** 12:4 14:15
**1,000** 37:3
**10** 10:21
**1000** 4:13
**10004** 1:14 4:7
**10014** 4:21
**11** 8:8 9:4
 11:21 18:11
 19:17,20 22:6
 27:25 38:8,10
**1111** 4:13
**1125** 12:12
 14:15 15:2
**1126** 11:21,22
 11:24 12:4,9
 12:15 13:2
 14:15 15:4
 16:4 18:13
 22:6
**1129** 10:9,11
 10:17,21 11:10
 11:19 16:4
 29:22 30:8
**11501** 48:23
**12151** 48:6
**125** 28:7 42:20
 43:6
**13** 33:19 47:5
**14** 33:11,13,18
 33:19 34:10
 35:14
**17** 47:7

**19** 47:9

**2**

**2** 1:16 12:9
 15:4
**2000** 19:5
**2006** 18:9
**2024** 1:16 7:14
 48:25
**21** 46:3
**24** 47:7,9
**24-10837** 1:3
**246** 19:5,17
 22:5
**25** 47:11,12
**27** 7:14
**27th** 7:19
**2:31** 1:17
**2nd** 28:15

**3**

**3** 47:5,11,12
**300** 48:22
**3017** 22:1 23:2
 23:14
**32** 29:8
**330** 48:21
**33131** 4:14
**34** 29:20,20
**341** 8:8
**359** 18:8
**36** 30:7,16 41:1
**3:36** 46:25

**4**

**4** 28:6,10
**450** 4:20
**4th** 36:5 38:3,6

**5**

**5** 29:22
**50** 30:23
**54** 18:9
**56** 18:9
**5th** 38:13

**6**

**6** 21:21
**626** 19:5
**634** 19:17 22:6
**64** 42:7 44:10
 44:19,25
**65** 45:19,22

**7**

**7** 30:8
**750** 37:1,2

**8**

**8** 10:11,17
 11:10,19 16:4
 40:20 48:25
**84** 31:7

**9**

**92** 32:17

**a**

**a1** 28:10
**ability** 21:7
 32:23
**able** 36:20
 40:11 42:7
**absolute** 29:2
 33:24
**accept** 11:23
 12:24
**acceptance**
 12:5

**accepted** 10:13
 10:23,24 11:1
 11:25 12:2,16
 12:18,20 13:12
**accurate** 11:13
 48:4
**accurately**
 31:2
**achieve** 7:8
 24:24
**acknowledge**
 15:18 21:22
 26:7,11,14
**acknowledged**
 17:2
**acknowledge...**
 26:18
**acted** 12:24
**action** 10:7
**actively** 9:2
**actors** 6:22
 17:8,13 20:19
**actually** 19:16
 27:19 31:25
 37:1 38:3 45:1
**ad** 4:19 6:9
 7:16,22,23,25
 8:3,11,14 10:5
 11:3,11,15
 14:17 15:7,10
 16:15 17:1,5,8
 17:12 18:4,7
 19:2,4,25 20:7
 20:9 21:3
 22:16,19,19
 23:17 24:13
 25:7,12,17

26:3,8 31:22
31:24 33:22
36:17 47:6,12
**add** 10:2 22:18
24:23 29:3
**added** 31:12
41:3
**adding** 42:14
**addition** 22:20
**additional**
10:19 20:7
24:6 34:10
35:14
**address** 18:6
**addressed** 7:13
18:13
**adelphia** 18:8
18:12,21,21
19:1
**adequacy** 2:1
27:22
**adequate**
12:11
**adequately**
44:3
**adjective** 11:12
**adjourn** 39:11
**adjourned**
46:22
**adopted** 18:24
**advance** 43:19
**advanced** 21:3
**advised** 29:7
**advising** 24:6
**affected** 9:17
38:11

**afternoon** 6:2
6:7 37:21,21
**agent** 15:12
16:3,20 18:19
20:12,12,16
23:18 24:15
**agents** 17:16
20:3,5 24:21
24:22
**ago** 39:22
**agree** 18:19
**agreed** 37:16
40:2 43:16
**agreement** 7:3
33:15
**agrees** 18:21
**ahead** 39:12,24
40:25 44:15
45:5
**aid** 35:21
**alerted** 40:1
**alexander** 4:5
**allegations**
44:21
**alleged** 15:15
**allowed** 11:22
12:20 38:21
**alter** 15:20
**alternative**
14:25 15:3,6
**amended** 19:19
27:25 29:10
31:1 42:20
43:5
**amount** 12:19
16:7

**amused** 38:19
**analogous** 18:7
**analysis** 15:18
15:25 30:10,14
**angela** 4:23
**anticipate** 8:25
35:18
**anticipates**
8:21
**anybody** 37:2
**anyway** 6:23
**apologies** 42:8
**apologize**
40:17
**appeal** 31:20
32:5,10 33:14
34:9 35:12
**appeals** 32:23
**appear** 14:11
23:20
**appearances**
6:3,22
**appeared** 43:9
**appears** 20:13
**appellate** 27:9
**applicability**
28:23 31:18
32:18
**applicable**
10:15 12:6
13:9 14:12,24
15:23 21:23
29:4,18 31:17
33:12,12
**application**
28:1 33:2,20
33:25 37:18

**applications**
7:15 8:2,4
25:19 33:1
47:8
**applies** 20:18
31:8,9
**apply** 10:19
20:20
**appointments**
29:24
**appreciate**
46:19
**appropriate**
16:25 18:23
22:15,17 23:9
23:16 26:15
35:24 42:3
**approval** 9:17
25:18
**approve** 8:5,9
25:19,23 47:9
**approved** 9:23
33:15
**approves** 22:7
22:11
**approving**
27:22 32:2
**argued** 25:10
**arguing** 26:13
**argument** 7:21
8:17 14:17
27:13
**arrival** 36:4
**arrived** 39:2
**asked** 19:10
25:8 43:22

asking 28:9 34:19
asks 30:24
aspects 26:1
assume 19:21
assumes 28:22
assuming 23:12
assumption 38:1
attached 30:10 30:14
attempt 9:17
attending 6:25
attentive 38:14
attorney 4:4,12 4:19
attributable 15:14,15
augmented 35:22
authorities 18:4
authority 18:5 24:14
authorized 24:1
authorizing 9:15
availability 36:6
available 6:24 24:12
avenue 4:13,20
avoid 7:5
avoided 13:12

aware 41:19
awareness 38:10

**b**

b 1:21 11:24 12:4,9 13:2 14:15 15:4
b.r. 18:8 19:5 19:17 22:5
backed 31:4
background 9:3 38:23
bad 36:25
baked 30:19
baker 4:11 6:16
ballets 8:11
ballot 15:11 16:23 17:18
balloting 9:16 14:7 16:19
ballots 10:1 11:5 14:6 16:15 17:16,17 21:17,21 23:20 25:5,5,18 27:24 47:7
bank 39:21
bankr 18:9 19:5
bankruptcy 1:1,12,23 8:19 9:16,18,23 10:9,21 12:1,6 12:9,13 13:13 13:14,16,23 14:13,16,19,24

15:4 18:22 22:1 23:2 34:4 35:5
baseline 33:11
basis 16:18 23:14
bear 24:6
beginning 31:23
begins 35:6
behalf 6:8,16 19:21 36:17 39:21
believe 32:22 32:25 37:2 40:24 41:2,5
believer 31:9
beneficial 17:19 21:19,20 21:21,22 23:4 23:6
best 26:10 30:7
beyond 24:15
billed 44:7
binds 20:17
bit 19:6
boils 17:7,11
bond's 9:21
bondholder 13:12
bondholders 13:23
bonds 23:7 37:3
bound 20:4
bowling 1:13 4:6

brazil 39:3
brickell 4:13
brief 11:22 39:20
bring 44:2
broader 20:2
brought 9:3
building 39:1
burden 24:6,19 25:6 28:23

**c**

c 4:1 6:1 12:15 16:4 22:6 48:1 48:1
cage 13:21
call 34:12
called 19:21
cancelation 41:2
canceled 44:22
cancelled 44:19
care 26:13 46:21
careful 17:10
case 1:3 9:3,4 10:4 11:15 12:1,2,13 13:19,21 14:3 14:5 16:2 18:12,15,25 19:1,6,9,15 20:9 22:11,17 24:9 25:2 26:9 31:25 36:23 39:5,15 46:20

cases 19:20
cast 11:6
cause 25:13
  31:15 34:3
  35:3,4
causes 7:4
  15:19
causing 20:23
central 15:25
  16:6
certain 8:11
  17:15 18:14
  25:18 29:4
  30:9 31:23
  42:22 47:6
certainly 20:9
certifications
  22:2
certified 16:3
  21:18 48:3
cetera 29:16
  30:5 31:5,13
chain 20:14
chance 27:14
  40:9
change 44:18
  44:23,25
changes 29:5
  40:2 41:9,20
  43:7
chapter 9:4
  18:11 19:20
  27:25 38:8,10
characterize
  8:12
characterizes
  18:10

check 32:4
choose 20:3
choosing 20:12
circulate 19:11
circumstances
  23:12 25:10
  26:16
cited 18:4,5
cites 18:8 19:4
claim 11:25
  22:3
claimholders
  10:19
claims 10:12
  11:22 12:16,18
  12:20 29:25
clarification
  32:10
clarity 27:4
  34:22 44:2
class 10:12,18
  10:22,25 11:1
  12:16,20,23
classes 10:23
clause 30:17
clean 27:14
  46:3
clear 21:14
  28:2 31:23
  34:12,12,25
  42:15
clearing 26:23
clearly 28:22
clerk 28:6
client's 36:25
  44:3

closely 26:25
code 8:19 10:9
  10:21 12:12,22
  13:10,17 14:16
  15:4 16:5,8
coextensive
  7:24
colleague 6:19
colleagues 33:1
columbia 9:6
  38:6 39:2
columbian 9:4
  9:9
combination
  43:16
combined 2:1
  9:19 13:11
come 30:21
  33:6 38:5 40:3
comfort 28:21
coming 29:2,2
  42:3 46:5
commencem...
  12:1
comments
  36:18 37:5,11
commercial
  32:4
committee 8:7
  25:21
commonly
  13:24
communicati...
  18:8
company 37:7
company's 9:7
  23:21

compel 16:10
complete 6:4
  9:1
completely
  34:20 41:12
  42:17
completion
  15:11
complex 24:25
compliance
  12:6
complicate
  24:23
complied 14:20
computer
  39:19,22 40:5
concededly
  22:13
concerns 23:4
  29:20,21 41:13
  41:13,17 44:6
  44:8,13
conclude 13:3
concluded
  46:24
concludes 13:8
  14:11,22 15:1
  16:18 35:19
concluding
  23:15 31:4
conclusion
  15:20 28:18
conclusions
  8:23 27:22
  28:11 35:21
concretely
  16:12

condition 12:8
conditions 12:3
confirm 8:10 17:18 25:24 47:5
confirmation 2:2 7:11,12 8:20 11:10,19 13:6 28:12 34:3 35:4 36:18 40:2 42:19
confirmed 10:16 11:2
confirming 10:10 27:24
conform 15:23
connection 8:23 13:14 15:5 27:25
consensual 9:20 11:3
consensually 7:19
consent 11:9 11:11,16,18,20 13:6 19:10
consequence 21:2
consequences 20:16
consider 2:1 23:5 42:15
considers 12:25

consistent 29:25 34:13
consists 10:6
constituents 10:3 29:9,16
constitute 23:13 28:17
constitutes 17:23
contemplated 13:14 22:1
contend 25:2
contention 15:17 17:5,12
contentions 17:15,23
contested 7:12 8:15 9:2 16:15 25:16
context 33:7
continue 29:15 30:13 31:13
continuing 9:12 12:14 21:9 44:21
contrary 29:15 30:5,13
contrast 19:12
control 20:14
controversial 41:4
controverted 30:18
copy 46:2,2
core 24:15
corp 18:8 19:5 21:10 22:2

correct 11:8,11 11:17
counsel 17:1 23:17 25:9 37:14
count 8:11 14:6 25:4,18 45:18,22 46:1 47:6
counted 16:15 19:8
counting 24:25
countries 38:11
country 48:21
couple 26:5
coupled 43:17
course 10:7 12:13 18:21 35:25
court 1:1,12 6:2,10,17,21 7:7,10,14,21 8:13,16,20 9:23 12:25 13:3,4,8,18 14:11,21 15:1 16:1,14,18,21 18:16,21,24 19:7,15,18 20:22 21:11,18 21:25 22:7,10 22:12 23:2,5,8 24:3,4 25:6,12 25:13,16 26:2 27:3 28:13,20 32:8,13 33:1

33:16 34:18 35:2,17 36:9 37:4,8,15,23 37:25 38:12,13 39:14,18,24 40:8,16,22,25 41:11 43:2,8 43:23 44:17,24 45:4,9,11,16 45:21 46:1,7 46:11,14,16
court's 16:6 18:12 20:20 28:17 43:17
courts 9:18 12:22
covid 38:21
crashed 39:20 39:23 40:5
create 27:9
creating 17:9 34:22
crediservicios 1:7
credit 14:10 24:9
credited 24:1
crediting 25:11
creditor 18:6 24:9,10
creditors 8:7,8 10:22 12:17 18:10,14,17 19:10,16,20 20:3 21:12 23:19,22 25:21 30:7

**credits** 13:18
14:22 16:21
22:12
**credivalores**
1:7 18:19
19:12
**crept** 20:10
**crew** 39:2,6
**cross** 36:24
**culminate**
32:21
**currency** 9:9
9:10
**currently** 34:5
**custom** 4:5
**customary**
13:22
**customs** 9:15

**d**

**d** 6:1 47:1
**d.nev** 19:5
**darn** 38:21
**date** 10:7 17:20
48:25
**david** 1:22
**davis** 6:8
**day** 33:12,18
33:19 36:11
**days** 33:11,13
33:14 34:8,9
34:10,10 35:11
35:13,14,14
**deal** 36:11 37:1
**dealt** 43:11
**debt** 9:11,11
10:2

**debtor** 1:9 4:12
6:6,14,16 7:5
8:23 9:8,10,11
9:19 10:7 11:8
11:17 13:3,5
14:5,8 15:14
15:15 16:11,13
16:23 17:3
19:3,9,11,23
19:24 22:25
23:18,22 24:5
24:22 25:3,16
26:2 29:9,13
30:3,11,25
31:2 35:23
41:4,23 44:22
47:11
**debtor's** 7:9,15
7:23 8:1,5,6,9
8:10,14 9:9
11:7 14:14,18
14:20 15:5
16:3,20 24:11
24:14 25:19,24
28:23 47:5,8
**debtors** 8:3
9:20 11:1
12:25 14:23
27:25 32:18
**debtor's** 25:23
**decades** 22:13
**deciding** 11:20
**decision** 18:9
18:10,22 32:6
**decline** 9:8
**declines** 24:3

**deemed** 12:2
44:19
**deems** 23:8
**deeply** 26:13
**deficient** 15:21
**defined** 12:11
**defying** 36:22
**degree** 13:11
13:15
**delay** 7:4
**delete** 35:5
**deleting** 42:15
46:11
**delighted**
38:19
**deliver** 7:10
**delivered**
35:22 43:18
**delivery** 23:20
**denial** 25:17
**denied** 47:7,12
**denies** 8:14
26:2
**department**
4:3
**depository**
23:21
**described**
13:17 23:12
34:14,17
**designate**
18:13
**desire** 9:20
27:12
**despite** 18:1
**destabilizing**
20:22 25:14

38:11
**detail** 8:15
**detailed** 26:20
**details** 26:4
**determinations**
16:24 17:21
**determine** 17:7
20:24
**determined**
16:17,19,24
**developed**
19:14
**deviations**
22:15
**diagnosed**
38:20
**differently**
18:1
**difficult** 24:24
26:12
**diminishing**
36:5
**directed** 28:5
**directors** 29:20
29:24 30:5
**disagrees**
17:12
**disappointed**
25:2
**disapproves**
22:8
**discharged**
44:20
**disclosed** 30:25
31:5
**disclosure** 2:2
8:9 12:11,12

14:19 21:23
25:23 27:23
30:24
**disclosures**
15:22 31:3
**discount** 16:10
**discretion** 18:1
21:25
**discuss** 32:6
**discussion** 8:25
21:9,11 25:25
26:4 31:15
38:1
**disenfranchi...**
19:1
**dispense** 8:6
25:20
**dispute** 9:24
10:3 14:8
18:16 19:25
25:1 31:5
**disputed** 14:12
19:8 23:19
**disputes** 22:3
**disqualificati...**
23:19
**disqualify** 14:6
18:14
**disruptive**
20:21
**distinguisha...**
18:5
**district** 1:2
13:24 33:1,19
**disturb** 16:16
16:19

**doable** 36:13
**docket** 42:19
43:6
**document**
23:24 27:21
28:6
**documents**
14:15 23:6
**doing** 18:20
24:22 29:16
31:25 32:25
38:20 39:6
45:11
**door** 38:23
**double** 17:9
**dozens** 13:25
**drafted** 34:2
**drill** 33:5,24
**drives** 16:1
**driving** 10:8
**dsj** 1:3
**dtc** 24:2
**due** 9:8 19:23
19:24
**duties** 16:23
17:4 20:5
**duty** 25:9

**e**

**e** 1:21,21 4:1,1
6:1,1 8:2 18:13
22:1 23:2,14
47:1 48:1
**ecf** 28:2,7
**ecro** 1:25
**edit** 11:12
29:19 30:19,23

**edits** 28:21
**effect** 20:23
**effected** 9:25
42:24
**effective** 35:7
**effectively**
43:15
**efficiency**
27:16
**effort** 14:8
26:8 27:9
**efforts** 11:5
24:17 39:15
46:18
**eight** 45:23
**either** 9:20
10:13,23 12:3
12:24 18:6
27:7
**elaboration**
32:9
**eleven** 45:24
**eligible** 22:23
**eliminate**
32:18
**eliminated**
25:22
**eliminates**
30:16
**email** 40:14
**emails** 38:15
**emerge** 38:8
**emergency**
33:1,2,20,24
**employed**
13:24

**encountered**
27:5
**enforceable**
35:7
**engaged** 15:13
**engendered**
26:9
**ensure** 44:2
**enter** 20:22
23:8
**entered** 36:8
38:2,13
**enterprise** 25:1
**entire** 20:25
39:2
**entirely** 42:22
**entitled** 11:2
22:4,9
**entitlement**
28:24
**entitlements**
10:4
**entity** 9:4
17:18,24
**entity's** 17:18
**entry** 34:8,11
35:8,12,13,15
**envision** 29:12
**epiq** 16:3,17,20
17:22,25
**epiq's** 16:22
17:4 18:1
**equitable**
25:11
**erroneous**
17:22

error 15:11,14
20:10,12,12
27:8
errors 19:24
essence 38:2
41:25
essential 18:22
establish 13:5
28:24
established
9:15 11:9,18
11:20 13:18
25:13
et 29:16 30:5
31:5,13
evening 37:22
event 10:23
everybody 7:5
34:23 36:2,11
evidence 19:15
21:12 24:11
28:25 29:14,15
30:4,5,12,13
30:19 31:4
32:3
evidentiary
8:16 29:17
43:22
exactly 42:5
45:14,15 46:5
46:5
example 10:21
36:24
exchange
13:11,16,23
excluding
12:17

excuse 12:5
13:21 18:2
executed 22:10
exercised
17:25
exercising
21:25
exist 43:4
existing 29:8
expanding
41:14
expense 24:23
experience
22:14
experienced
17:23
expert 17:24
expertise 22:14
explain 40:19
explains 39:9
explanation
17:7 32:8
explicitly
43:24
extend 33:13
33:16
extensive 8:17
18:15
extent 7:6
31:12
extinguished
44:20
eyeball 41:16

**f**

f 1:21 48:1
faced 33:20

faces 18:16
fact 8:22 11:4
14:20 16:13
17:1 20:1,10
25:7 27:1,21
28:18 32:3
35:20
facts 18:7
30:24,25 31:5
failed 21:12
failure 23:20
fair 32:12
faith 26:13
29:11
far 42:2
fault 22:23,24
favor 19:2 25:8
federal 31:8,10
feel 38:21
feelings 26:8
46:19
field 16:20
fifth 8:10
figure 33:4
37:17
file 27:15 41:24
filed 7:21 15:5
33:14 34:9
35:13 36:20,21
finality 21:4
24:24
finance 19:5
21:10 22:1
financial 7:4,9
financing 9:7
find 15:22
22:24 26:11

30:25 39:8
finding 27:1
29:11,17,18
31:3
findings 8:22
27:21 28:11,18
30:9 35:20
42:22
finds 14:22
19:7 22:2
25:16
fine 6:21 32:13
35:2 38:21
41:12 44:4
46:13
finishing 39:23
fire 33:5,24
first 6:6 8:4
12:3 18:7 19:8
21:18 22:8
28:5,7 29:8,12
33:8 41:11
44:12,18 46:7
fits 15:17
five 45:23
fl 4:14
flagged 42:23
floodgate 32:2
focused 17:8
18:17
followed 16:13
18:20,24
following
32:20 34:7
follows 10:9
34:3

**foregoing**
42:10 45:3,7
45:25 48:3
**foreign** 38:11
**form** 8:21
35:25 36:2
37:17
**formal** 19:14
**formation** 8:6
25:20
**forms** 27:24
**forth** 10:9 12:4
12:8 13:10
15:4 16:8
28:11 42:11,13
45:7,12 46:12
**forthcoming**
9:22 32:10
**forthrightly**
17:1
**forward** 46:20
**four** 7:15 19:5
45:23
**fourth** 8:10
22:2 46:2
**francisco** 5:2
39:20
**frivolous** 39:9
**full** 6:22 14:10
19:12 37:11
**fullbright**
39:21
**fully** 7:24
22:12
**further** 6:13
8:19,25 13:4
14:5 15:24

18:20 20:13,19
24:16,17,18
26:3 33:16
37:18 41:24
46:18
**furthermore**
21:21

**g**

**g** 6:1 14:15
**gain** 9:17
**geg** 30:24
**generally**
20:18
**give** 33:8 40:9
44:24
**given** 26:10,14
36:4
**go** 24:15 28:21
30:2,15 36:9
37:12 39:12,24
40:25 44:15
45:5
**goal** 7:7
**goes** 28:17
32:20 34:5
38:16
**going** 6:22 7:10
10:4 11:12
19:6 27:4 28:4
28:8,12 31:17
32:9,21 33:11
35:5 36:10
38:16,18 39:9
40:16 42:25
43:11 44:16
**good** 6:2,7
26:13 29:11

31:15 33:6
34:3,20 35:3,3
**govern** 14:13
**governed**
11:21
**governing**
12:14 31:7
**government**
31:8
**governs** 12:12
31:12
**grant** 23:2
**granted** 47:5
47:10,11
**grants** 8:13
26:2
**graulich** 4:18
6:6,7,8 26:7
31:17,21 32:12
34:14,16 36:1
36:16,17 37:5
37:13
**great** 6:10
22:14 36:13
37:15 44:1
46:14
**green** 1:13 4:6
**greg** 4:9
**grounds** 23:14
**group** 4:19 6:9
7:16,22 10:6
11:3,4,11,16
14:17 15:7,10
16:16 17:5,9
18:8 19:2,4,25
20:7,9 21:3
22:16,19,20

23:17 24:14
25:7,12,12
26:3,8 31:22
31:24 36:17
**group's** 7:23
7:25 8:3,11,14
17:1,12 18:4
25:18 33:22
47:6
**guess** 31:17
**guidelines**
19:19 20:2

**h**

**half** 12:19
**hamilton** 4:5
**hand** 44:14
**handled** 14:4,4
**hang** 37:9
40:22
**happen** 35:23
**happened** 27:6
**happening**
38:25
**harm** 7:5
**harmful** 21:5
**harmfully**
24:25
**head** 27:12
33:20
**headache**
27:13
**heading** 30:24
**hear** 38:22
41:20
**heard** 7:12,14
7:21 39:10

**hearing** 2:1,1
  7:12,20 8:17
  15:10,17 25:16
  28:12,14 36:20
  36:21 38:8
  41:24 43:9,17
  43:22 46:18
**helpful** 28:6
  36:9
**helping** 36:11
**high** 9:21
  13:11 46:20
**highlight** 40:6
**history** 27:6
**hoc** 4:19 6:9
  7:16,22,23,25
  8:3,11,14 10:6
  11:3,11,15
  14:17 15:7,10
  16:15 17:1,5,8
  17:12 18:4,8
  19:2,4,25 20:7
  20:9 21:3
  22:16,19,19
  23:17 24:14
  25:7,12,17
  26:3,8 31:22
  31:24 33:22
  36:17 47:6,12
**holder** 11:25
  12:11 17:19
  21:21 22:3
**holders** 7:16
  10:6 11:22
  12:18 21:19,20
  21:22 23:4,6
  29:25

**holding** 8:7
  15:6 19:20
  20:15
**holiday** 38:6
  38:14
**holler** 44:6
**home** 38:20
**hon** 1:22
**honor** 6:7,15
  6:19 26:24
  31:22 32:12
  34:24 35:16
  36:16 37:20
  38:5 39:13,17
  41:9,19 42:17
  43:21 45:6,14
  45:17 46:13,23
**hope** 39:8
**hopefully** 28:2
  36:13 37:16
**hour** 37:14
**house** 4:5 39:6
**human** 26:17
  27:6
**humans** 38:22
**hyde** 3:1 48:3,8

**i**

**i.e.** 34:10 35:14
**idea** 24:14
**identical** 7:22
**identified** 25:7
  25:9 35:19
**identities**
  18:17 22:9,10
**identity** 18:6
  22:22

**ii** 19:19
**iii** 30:17,20,21
**immediate**
  31:18
**immediately**
  31:17 35:7
**impacted** 10:7
**impaired** 10:13
  10:18,22,24,25
**impending**
  36:4
**implemented**
  13:25
**implementing**
  33:7
**impose** 24:3
**imposing**
  24:19
**impression**
  43:23
**improper**
  18:25 23:20
  24:17
**improperly**
  24:19 25:4
**impropriety**
  17:3
**impulse** 33:7
  34:13
**inability** 22:22
**inadvertent**
  27:8
**inadvertently**
  27:15
**inappropriate**
  20:21

**included** 17:15
**includes** 9:7
  29:1
**including** 8:20
  9:8 11:15
  28:13,23 41:6
**income** 9:9
**incorporate**
  28:16
**incorporated**
  28:14,15
**incorporating**
  8:21
**indemnificat...**
  41:6,12,14
  44:14
**independent**
  16:20
**indication** 17:2
  23:19
**indiscernible**
  37:24 43:5
  44:19 45:1,10
**individual**
  17:24 31:24
**individuals** 9:5
**indulge** 46:4
**industry** 22:13
**infallible** 32:24
**influencing**
  17:3
**information**
  12:11 14:14
  17:17
**informing** 9:20
  24:6

**informs** 32:14
**initial** 12:24
**inquiry** 27:17
**insert** 28:13
  30:2
**inserting** 29:13
**insiders** 29:21
**insignia** 44:14
**instructed**
  23:22
**instruction**
  24:12
**instructions**
  10:1
**instructs** 12:15
**insufficient**
  19:7
**intend** 31:19
**intensity** 26:8
**intention** 34:1
**interest** 22:3
  27:16 29:25
**interested**
  44:13
**interests** 11:23
  30:7
**interference**
  16:23
**interrelate**
  7:15
**introductory**
  31:11
**invite** 26:16
**inviting** 21:4
  27:13
**involve** 37:18

**involved** 13:10
  21:14 41:21
**involvement**
  24:12
**issue** 9:24
  12:17 18:6
  19:17 22:21
  23:10 43:4
**issued** 9:7
**issues** 7:11,13
  7:22,25 8:16
  9:2 10:8 18:25
  25:16 27:9,9
  42:23,24 43:10
**issuing** 7:2
**item** 21:21
**iv** 30:21
**ix.e** 19:18

**j**

**jerseys** 39:2
**joint** 2:2
**jones** 1:22 6:3
**judge** 1:23 6:2
  27:5 33:19
  34:20
**judges** 27:7
**july** 1:16 28:14
  36:5 38:6
  48:25
**jump** 41:14
**june** 7:14,19
**justice** 4:3

**k**

**keenan** 4:16
  6:14,15,15
  26:19,24 28:5

28:19 34:23,24
  35:16 36:15
  37:19,20,24
  38:4,5 39:13
  39:25 40:1,6,9
  40:11,12,18,21
  43:25
**keep** 36:14
**key** 10:11 17:8
  17:13 38:8
**kind** 38:19
  41:22
**know** 6:4 29:5
  29:6 32:5
  36:25,25 37:14
  37:25 38:13,14
  38:22 40:6
  41:17 42:4,19
  43:8
**known** 44:8
**knows** 25:6

**l**

**lack** 18:2 38:9
**language** 29:9
  33:8 42:1,2,4,6
  42:13,16,23
  44:9
**largely** 7:18
**lastly** 23:17
**late** 36:6 37:21
**launched**
  40:10
**law** 8:23 12:6,9
  14:13,19,24
  15:23 25:6
  27:22 28:18
  31:7,7,9,10,10

31:12 35:21
**lawful** 13:22
**laws** 14:12,24
**lawyer** 31:8
**lawyering**
  46:19
**lead** 15:16
  38:19
**leader** 22:13
**leading** 22:21
**leave** 33:18
  37:10
**leaves** 16:12
**ledanski** 3:1
  48:3,8
**legal** 13:9
  15:25 20:16
  25:9 34:11
  48:20
**legally** 31:3
**lending** 9:5
**length** 19:7
**lengthy** 17:6
  21:11
**letter** 6:12 15:9
  15:19 20:8
  22:19 23:1,13
**letting** 27:13
**level** 9:21
  11:18 13:6,16
**lexington** 4:20
**libby** 4:23
**light** 7:3 32:2
**limits** 11:6
**line** 6:20 37:25
  46:2 47:4

| | | | |
|---|---|---|---|
| **lines** 45:19,19 45:24 | **make** 20:9 24:16 27:8 | **medallion** 23:23 24:1,2,7 | **missing** 43:3 |
| **linked** 25:19 47:8 | 29:19 31:16 33:11,12,21 | 24:10 | **misstate** 27:8 |
| **liquidation** 30:10,14 | 34:21 35:24 36:2 40:1 | **meet** 9:12 16:3 16:7 | **misstated** 26:22 |
| **listened** 26:24 | 42:12 46:8 | **meeting** 8:8 | **modification** 9:21 16:10 |
| **literally** 39:19 39:23 | **makes** 20:5 30:8 | **meets** 13:9 | 31:6 32:22 44:10 |
| **litigated** 27:4 | **making** 6:24 22:20 43:3 | **mellon** 39:22 | **modifications** 35:24 43:16 |
| **litigation** 18:15 21:4 25:1 | **manifestation** 20:2 | **members** 11:15 20:1 31:24 | 44:1,6 |
| **little** 19:6 30:20,21 41:20 | **massive** 38:24 39:4 | **memory** 42:8 | **modified** 8:21 10:4 34:7 35:9 |
| 44:13,14 | **master** 21:17 | **mention** 40:13 | 35:11 |
| **llp** 4:11 | **match** 13:21 | **mentioned** 39:22 | **modify** 33:10 |
| **logically** 24:20 | **matched** 24:3 | **merely** 19:10 25:10 | **modifying** 29:12 |
| **logistics** 37:11 | **material** 30:25 31:5 | **mess** 27:15 37:10 | **moment** 27:1 39:22 41:23 |
| **long** 27:5 | **materially** 18:5 | **messy** 27:11 | **momentarily** 26:1 |
| **look** 12:23 20:24 41:15 | **materials** 19:14,16 21:24 | **met** 10:16,18 12:3 13:1,2 | **monata** 20:11 20:15 22:22,24 |
| 42:9 43:24 44:5 46:20 | **matter** 1:5 6:13 7:4 12:25 | 15:1,8 | **monata's** 20:12,14,16 |
| **looking** 27:20 40:14 43:6 | **maximize** 7:8 | **miami** 4:14 | 22:20,22 23:3 |
| 44:9 | **mckenzie** 4:11 6:16 | **mid** 36:6 | **mooted** 42:1 |
| **looks** 31:10 | | **mind** 30:6 34:25 35:2 | **morning** 36:6 36:8,21 |
| **lot** 34:11 | **mean** 31:22 37:9,16 38:14 | 44:11 | **motion** 7:21,25 8:3,5,6,9,10,11 |
| **loud** 38:24 | 43:8 | **mine** 45:22 | 8:12,14,24 |
| **lower** 13:15 | **meaning** 10:17 | **mineola** 48:23 | 15:6 18:13 |
| **lucky** 36:10 | **meaningful** 9:24 | **ministerial** 24:25 28:8 | 25:18,23,24 26:3 27:11 |
| **m** | **means** 17:25 | **minor** 40:2,5 40:14 41:9 | 35:21 47:5,6 |
| **m** 4:9 | **measure** 25:14 | **minute** 37:8 | |
| **made** 12:10,13 14:8 16:24 | | **missed** 45:4 | |
| 17:22 27:15 31:3,23 32:7 | | | |

| | | | |
|---|---|---|---|
| **motions** 7:15 7:24 8:14,24 26:2 47:11,12 | **never** 27:5 **nevertheless** 26:14 | **notice** 6:25 11:7 23:18 33:14 34:9 35:12 | **occurred** 20:13 **offer** 13:11,16 **offers** 13:23 **office** 7:17 |
| **mouth** 29:3 **muddle** 34:22 **multiple** 10:9 | **new** 1:2,14 4:7 4:21 31:7 39:22 40:7 42:6 | **noticed** 6:11 **notwithstand...** 16:13 42:10 45:2,24 | 41:24 42:21 **officers** 29:20 **oh** 28:6 35:10 35:18 45:4,21 |

**n**

**n** 4:1 6:1 25:5
47:1 48:1
**name** 19:21
**narrow** 25:10
**national** 39:3
**nature** 37:12
**necessarily** 20:15
**necessary** 21:2
21:6 27:1
**need** 13:13
20:23 25:22
30:17 39:11
41:24 45:18
**needed** 9:22
**needing** 33:24
**needs** 9:11
46:17
**negative** 17:9
**negotiated** 29:10
**neighbor's** 39:6
**neighboring** 39:5
**neighbors** 38:23
**neither** 15:6
44:22

**nice** 39:5
**nine** 45:23
**noise** 38:23
**nominee** 19:24
**nominees** 19:20 21:13,17
**non** 12:6,9
13:15 14:13,19
14:24 18:7
22:21
**nonconsenting** 10:18 11:14
**nonconseque...** 44:12
**nonrecogniti...** 22:21
**norton** 39:21
**note** 7:16,17
15:5,9,19
19:17 20:8
23:3
**noteholder** 15:12
**noteholders** 9:19,25 11:1,4
17:16
**notes** 9:7,24
10:6 23:7
26:25 41:2
44:21

**number** 11:3
12:19 16:7
28:2,7 42:20
**numbers** 42:8
**ny** 1:14 4:7,21
48:23

**o**

**o** 1:21 6:1 25:5
48:1
**object** 31:18
**objecting** 10:5
**objection** 41:25,25 42:2
42:25 43:14
**objective** 9:14
**objects** 11:3
**obligation** 28:24 41:6,12
**obligations** 9:11,12,13
44:23
**observation** 16:5 22:20
**observes** 19:18
**obtain** 24:10
**obtained** 13:4
**obviously** 11:14 23:10

**okay** 6:10,17
6:21 21:9
23:17 27:3
28:19 29:18
30:22 31:13
32:8,13 34:18
35:2,17 36:13
37:15,23 38:12
39:8,10,11,24
40:21 41:11
43:2,8,23 44:8
44:24 45:16
46:14,14,16,17
**old** 48:21
**omit** 29:10
**omitted** 26:22
**omitting** 23:7
**ones** 22:16
44:1
**opposed** 7:16
8:3 11:4
**opposition** 7:18,23 8:1
**options** 24:18
**oral** 7:2,10
8:15 9:1 26:21
27:7 28:13,16
35:22

| | | | |
|---|---|---|---|
| **order** 15:5 16:14 19:8 24:16 26:1,4,5 26:20 27:18,22 28:9,22 29:1 31:19 32:17 33:12,13 34:4 34:8,11 35:4 35:12,13,15,24 36:18 37:17 40:3,7 41:15 42:7,19 43:5 46:21 | **paragraph** 28:10 29:8,11 29:20,20,23 30:7,16,23 31:6 32:17 40:4,20,24 41:1 42:7 44:10,10,25 | **persuasive** 24:5 | **policy** 30:1 |
| **ordered** 26:5 | **part** 17:3 19:18 22:23,25 | **pertinent** 17:20 | **polk** 6:8 |
| **orders** 23:8 32:23 | **particularly** 26:12 27:7 | **petition** 9:16 | **poof** 36:9 |
| **outcome** 14:7 16:1 | **parties** 7:3,7 9:2,17 18:19 22:9 24:17,21 33:15 | **phrase** 31:11 41:3 | **poor** 40:9 |
| **outcomes** 20:4 | | **pioneer** 19:4 19:15 21:10,14 22:1,5 | **portion** 43:13 |
| **outreach** 24:16 | | **place** 30:6 33:18 34:8 35:10,11 | **positing** 44:1 |
| **overcome** 29:14 30:4,12 | **party** 15:7 26:22 27:14 | **placed** 14:6 | **position** 14:20 17:19 21:3 23:21 24:11 26:13 |
| **own** 20:3,12,16 | **party's** 32:23 | **places** 29:4 | **positions** 23:23 |
| **owner** 17:19 | **past** 36:1 | **plan** 2:2 8:10 8:20 9:18 10:5 10:10,13,13,14 10:16,23,24 11:1,2,4,23 12:1,2,16,18 12:21,24 18:11 19:9,11,13 21:23 22:4 25:24 27:25 29:10 30:10,14 31:1 32:2 36:24 42:1,20 47:5 | **possibility** 24:7 33:19 |
| **p** | **pathway** 24:13 | | **possible** 7:2,6 36:4 38:9 |
| **p** 4:1,1 6:1 | **paul** 4:16 6:15 42:5 | | **posted** 36:14 |
| **package** 9:19 9:25 19:22,24 20:1 21:19 22:4 | **pause** 15:18 | | **potential** 25:1 |
| | **payday** 9:5 | | **potentially** 28:20 |
| **packaged** 9:18 | **people** 26:12 33:3 36:8 41:14 | | **power** 38:24 39:10 |
| **packages** 21:13 21:15 | **performance** 17:4 20:4 | | **pre** 9:16,17 41:17 |
| **page** 18:9 28:6 28:10 46:3 47:4 | **performed** 14:23 16:22 | **plans** 13:24 | **preceded** 30:21 30:24 |
| | **permissible** 16:14 | **players** 11:14 | **preclude** 32:24 |
| | **person** 36:12 | **playing** 39:3 | **premised** 38:1 |
| | **perspective** 34:22 | **please** 45:19 | **prepackaged** 13:23 19:19 27:24 |
| | | **pm** 1:17 46:25 | **prepetition** 14:14,18 15:3 18:17 19:10 |
| | | **point** 15:18 36:17 | **preplanned** 18:15 |
| | | | **preponderance** 28:25 29:14 |

30:4,12
**present** 5:1
11:12,15 18:7
18:15
**presented**
14:17
**presenting**
18:25
**presents** 24:14
**preserve** 33:3
**preserves** 41:5
**preserving**
32:22
**pressure** 14:6
**pretty** 38:21
44:12
**prevailing**
26:22 27:14
**prevails** 32:5
**previously**
43:9
**primarily**
11:21
**prime** 6:22
**principle** 20:3
20:5,16,18,19
**principles**
12:15
**printed** 46:2
**printout** 28:1
**prior** 43:16
**problem** 21:16
32:2
**problematic**
29:7
**problems** 36:2

**procedural**
19:19 27:9
**procedure**
23:25
**procedures** 8:5
11:7 13:1,20
13:22,24 15:20
15:22 16:14
18:20,24 22:14
23:5 25:20
27:24 47:9
**proceeding** 7:1
**proceedings**
46:24 48:4
**process** 6:5,23
15:13 18:18,23
19:14 20:10,21
20:25 21:5,6
22:8 24:2,8,23
33:21 38:17
**processed**
20:24 36:3
**processes** 14:4
22:11
**processing**
23:3,11
**professional**
15:13
**professionals**
20:6 25:3
**program** 36:1
43:19
**program's**
41:13 43:14
**promote** 24:17
**proof** 28:23

**proper** 7:8
18:14
**properly** 11:6
18:3
**proposed** 8:22
10:5 15:5 19:9
19:13 20:7
22:8,16 26:1,4
27:17,21,21
28:9,22 29:9
29:24 30:5
32:17,18,22
35:20,24 41:15
45:15
**prospects** 7:9
**protected** 44:3
**protection**
33:22
**provide** 33:22
**provided** 34:4
35:4 36:18
**provides** 9:5
11:24 12:16
**provision**
32:15 34:2
**provisions**
31:13
**public** 30:1
**pull** 40:12 42:7
**purely** 46:11
**purpose** 7:1
27:6,16 42:11
42:13 45:7,12
46:12
**purposeless**
42:16

**purposes** 41:8
**pursue** 24:7,18
31:19 32:23
33:22,23
**pursued** 10:7
**pursuing** 24:20
**pursuit** 9:14
**put** 8:16 14:7
29:22

**q**

**qualified** 18:2
18:3 29:24
**question** 10:2
16:9,12 18:23
22:7 31:21
**questions**
26:20 43:21,22
**quicker** 36:12
**quickly** 6:3
36:8 37:7 44:9
**quoting** 22:5

**r**

**r** 1:21 4:1 6:1
48:1
**rachel** 6:20
**raise** 46:17
**raised** 7:23,25
8:1
**raises** 7:22
**ran** 14:1
**rate** 23:1
**rather** 15:12
15:21 18:16
20:13 21:17
23:11

**reached** 19:16
20:25 33:15
**read** 15:19
30:11 34:25
**ready** 37:12
**real** 22:7
**reallocation**
25:11
**really** 11:13,17
28:5 29:16,22
32:1 38:15
**realty** 38:3
**reason** 16:10
19:1 24:5
31:25 34:14
**reasonable**
20:3,5,9
**reasons** 8:13
9:8 15:21 19:6
25:15 36:19
38:7
**recall** 43:6
**receipt** 18:2
21:15
**receive** 19:22
19:23 21:8,12
22:4
**received** 9:10
20:1,24 21:20
21:22 23:18
**receiving** 46:21
**recent** 8:22
**recharacteriz...**
17:14
**recites** 28:10
**reconsiderati...**
27:12

**record** 6:5 9:1
13:18 18:1
25:15 26:23
28:11 33:5
38:7 42:21
43:24 48:4
**recorded** 11:6
**redline** 40:19
**reference** 6:13
28:16 29:3
**referenced**
15:9
**references**
36:24
**referring** 43:6
**refers** 42:20
**reflect** 34:16
**regard** 42:18
**regarding** 31:1
**regulation**
12:7,10
**rehabilitation**
7:9
**rehearing**
27:11
**reinserting**
29:17
**reject** 11:23
12:24
**rejected** 11:25
12:2,21
**rejection** 12:5
**related** 7:11
25:19 47:8
**relatedly** 8:7
31:19

**relatively** 6:25
40:5,13
**released** 44:20
**relied** 16:11
**relief** 8:19 23:2
23:14,15,15
28:24
**relies** 13:4 16:1
**rely** 21:7
**relying** 8:21
9:14 17:5
**remain** 34:7
35:10,11
**remaining**
16:12
**remains** 20:20
**remedy** 24:12
**remember** 40:4
**removed** 20:14
**render** 24:24
26:21
**rendering** 27:7
**renovations**
38:24
**reorganization**
9:18 10:10
19:13
**replace** 34:7
**report** 23:21
24:2
**reported** 16:11
16:19 17:13
18:10 21:20
**reports** 9:8
**representative**
16:22

**representing**
15:10
**represents**
31:4
**requested**
16:15
**require** 13:15
**required** 11:11
11:14,18,20
13:11 24:15
26:15
**requirement**
10:11,15,17
11:10 24:4
**requirements**
8:18 10:10,16
10:19 11:19
13:1,2,9 14:21
14:23 15:2,3,8
16:4,7
**requires** 10:12
10:22 15:24
23:5
**requiring**
13:17 24:11
**requisite** 11:9
13:5
**rerun** 19:8
**resolution** 7:8
**resolve** 45:18
**resolved** 7:19
8:4 25:21
43:15,20
**respect** 7:11
8:18 20:11
22:18 30:9
32:5 35:20

| | | | |
|---|---|---|---|
| **respects** 22:11 | **rights** 18:22 | **saddling** 32:25 | **securities** |
| **respond** 21:7 | 24:20 41:6,15 | **satisfaction** | 14:12,24 19:20 |
| **response** 17:14 | 44:3 | 29:21 | 23:5,7 |
| 26:17 | **rise** 21:10 | **satisfied** 10:20 | **security** 23:21 |
| **responsibiliti...** | **risk** 19:21 | 14:21 24:4 | **see** 6:6,14 10:8 |
| 24:16 | 33:18 41:23 | 25:12 | 10:20 19:17 |
| **responsibility** | **road** 27:10 | **satisfies** 14:23 | 22:6 23:14 |
| 24:20 | 48:21 | 15:2 | 32:4 38:20,22 |
| **responsible** | **romanette** | **satisfy** 9:10 | 40:7 44:14 |
| 14:2 24:21 | 30:20,21 | 11:9,18 | 45:6,16,24 |
| **responsively** | **rose** 39:21 | **saw** 43:5 | 46:7,8 |
| 7:2 | **rule** 8:15 12:6 | **saying** 42:24 | **seeing** 43:7 |
| **rest** 34:6 35:6 | 12:10 22:1 | **says** 11:22 | **seeks** 13:7 |
| **restructure** | 23:2,4,14 | 29:23 31:7 | **seem** 42:12 |
| 9:11 | 26:12 34:4 | 34:5 35:6 | **seems** 26:9 |
| **restructuring** | 35:5 | 36:25 37:1 | 34:16 |
| 9:23 | **rules** 9:15 | 41:5 42:10 | **seen** 24:5 |
| **result** 20:11 | 33:11 | **scale** 14:7 | **sees** 21:11 |
| 22:23,24 23:2 | **ruling** 7:2,11 | **scenario** 18:16 | **self** 11:12 |
| **results** 16:2,16 | 8:15 9:1 16:6 | **scheduled** 7:1 | **send** 19:9 37:6 |
| 16:19 | 18:12 19:2,7 | **scrimmage** | **sense** 42:12 |
| **reverse** 32:1 | 20:22 25:8,22 | 39:4 | **sensitive** 7:4 |
| **review** 12:14 | 25:23 26:10,15 | **second** 8:5 | **sent** 9:19,25 |
| 14:13 36:7 | 26:21 27:2,7 | 12:8 19:4,14 | 19:12 21:18 |
| 42:19 | 28:13,16 35:22 | 21:19 22:9 | **sentence** 28:17 |
| **reviewed** 6:12 | 40:10 43:18 | 30:8 31:21 | 29:23 30:3,8 |
| **revising** 30:6 | **rulings** 47:3 | 44:12,24 | 30:20 34:6 |
| **revisions** 41:21 | **run** 27:19 | **section** 8:8 | 41:5,8 42:9,11 |
| **rid** 30:20 34:6 | 35:25 | 10:9,11,17,21 | 42:14 44:11,25 |
| **right** 18:10 | **running** 14:2 | 11:10,19,21,22 | 45:2,2,5,8,13 |
| 29:12,23 30:2 | | 11:24 12:4,8 | 46:8,9,10,12 |
| 32:15,23 34:19 | **s** | 12:12,15 13:1 | **sentiment** |
| 35:17 37:4 | | 15:2,4 18:13 | 34:16 |
| 38:3 39:14 | **s** 1:22 4:1 6:1 | 22:6 29:21 | **separate** 30:17 |
| 40:10,14 43:11 | 8:2 | 30:7 | **serious** 14:8 |
| 45:14,18 46:8 | **s.a.** 1:7 | **sections** 14:15 | **seriously** 14:11 |
| 46:9,10 | **s.d.n.y** 18:9 | 16:4 | 39:16 |
| | **sacred** 18:11 | | |

services 9:5
set 11:6 12:3,8
  13:10 15:3
  16:7 28:11,20
  37:11 42:11,13
  45:7,12 46:12
sets 10:9
seven 33:12,13
  33:14 34:8,9
  34:10 35:11,13
  35:14 45:23
share 39:7
shared 7:7
shift 24:19
  25:7
shock 38:6
short 6:25 16:5
shortly 8:13
shot 26:10
shoulders
  24:22
show 46:5
showing 14:9
  17:21
shown 15:7
  29:13 30:3,11
  31:16 34:3
  35:4
shut 38:15
siegel 6:20
sign 6:5,23
signature 48:6
signed 41:17
  42:21
signing 41:22
similar 29:19
  30:2

similarly 30:6
simple 16:5
simply 21:7
situation 20:15
  21:14
six 45:23
slipping 44:11
slow 35:10
small 31:24
  45:5
soccer 39:2,3
solely 42:11,13
  45:7,12 46:12
solicitating
  13:22 24:22
solicitation 8:5
  9:16,19,25
  12:4,5,10 13:1
  13:8,10,13,20
  14:2,15,18,22
  15:1,20,22
  16:14 18:18
  19:13,16,22,23
  20:1 21:13,15
  21:18,23 22:4
  25:20 27:23
  47:9
solicitations
  15:3 17:15
solutions 48:20
somewhat 17:6
  21:11
sonya 3:1 48:3
  48:8
soon 7:2 38:8
sooner 33:21

sorry 28:1
  35:10,19 39:12
  39:17,18,19
  40:13 41:1
  42:5,25 45:4
sort 17:2 32:4
sought 8:19
  15:6 23:15
sounded 44:12
sounds 37:15
  41:12 44:4
source 14:12
  25:1,9
sources 31:10
southern 1:2
spare 36:12
speaking 39:18
specialist
  16:20
specific 26:1
  35:20 43:12
specifically
  7:14 8:20
  13:19 15:11
  16:21 25:17
  28:15 30:9
spell 27:4
spoke 39:25
stabilizing
  38:10
staff 36:5
  38:14
staffer 36:10
stamp 24:8,10
stamped 23:24
stand 26:9

standard 29:4
  29:18
stands 42:2
start 17:10
  33:21 36:9
  41:14
starting 36:6
starts 34:2
state 8:13
  27:23 31:7,9
  31:12 42:18
stated 15:21
  25:15 38:7
  43:9
statement 2:2
  8:9 14:19
  21:23 25:24
  30:18 31:2
statements
  12:13
states 1:1,12
  4:3,4 7:17
statute 9:15
statutory
  12:15
stay 26:16
  31:15,16 32:15
  32:19 33:2,10
  33:12,18,24
  34:2,3 35:4
steps 20:7
sticking 36:10
stock 23:6
strain 7:4
street 19:21
striking 45:12

| | | | |
|---|---|---|---|
| **strong** 31:9 | **suggestions** 17:23 | **tabulating** 20:6 | **testimony** 13:19 14:9,10 |
| **strongly** 32:22 32:25 | **suggests** 23:1 | **tabulation** 14:3 17:24 | 16:21 17:6,11 22:12 24:10 |
| **struck** 41:8 42:13 | **suite** 4:13 8:1 48:22 | 24:15 25:3 | **thank** 6:24 27:3 32:8 |
| **style** 29:2 | **sullivan** 13:19 13:25 14:1 | **tabulators** 20:23 21:1,6 | 35:16 39:14 46:15,18,23 |
| **styled** 9:3 | 16:22 17:22,25 | **take** 6:3,22 24:13,13 25:13 | **thanks** 40:8 |
| **sub** 19:18 30:17,17 | 22:13 23:25 | 32:9 37:8 40:16 41:23 | **theoretically** 23:13 |
| **subject** 10:3,12 25:25 26:3 | **sullivan's** 14:9 14:10 17:4,6 | 46:21 | **thereunder** 44:23 |
| 31:13 | 17:11 | **taken** 20:6 42:1 | **thing** 22:18 26:20 28:8 |
| **submit** 17:16 24:17 28:9 | **supplement** 30:10,14 | **talent** 34:11 | **things** 9:5 26:6 38:15,17,25 |
| 35:25 | **support** 7:25 9:22 13:6,12 | **talk** 19:6 31:22 32:11 37:9,10 | 41:16 |
| **submitted** 6:12 8:23 15:10 | 13:15,16 16:4 19:11 27:2 | 41:2 | **think** 21:2 26:15,23,25 |
| 17:17 18:3 20:8 22:19 | **supporting** 25:6 | **talking** 32:17 40:22 | 28:22 29:5,6 30:16 31:2,11 |
| 23:13 25:4 27:25 35:21 | **sure** 6:3 34:21 36:2 40:1 | **tasked** 17:24 | 31:22,23 32:1 32:6,12 33:6 |
| **submitting** 17:16 23:23 | 45:22 46:8 | **team** 36:1 39:3 | 34:15 36:21,23 36:25 37:1,2 |
| **subsection** 10:11,17 11:24 | **surprise** 40:3 | **tell** 26:11 27:14 33:8 34:20 | 37:13 38:13 40:2,20 41:3,7 |
| 12:15 44:18 | **surprised** 41:10,20 | 36:5 38:18 39:15 | 42:3,23 43:9 43:25 44:17 |
| **substance** 14:18 29:6 | **surprises** 40:7 | **tells** 12:22 28:6 | 46:13 |
| 33:9 40:19 43:14 44:2 | **sweeping** 31:1 | **ten** 45:24 | **thinking** 15:16 32:21 33:17 |
| **substantive** 14:14 | **swift** 9:17 | **terms** 9:21,23 10:5 17:3 | 39:4 |
| **sufficient** 13:9 22:2 31:3 | **syntax** 17:9 | 36:22 | **third** 8:8 21:11 |
| **suggest** 43:25 | **systemically** 25:14 | **terrific** 34:20 46:19 | **thirds** 12:19 |
| **suggested** 23:18 | | **test** 30:7 38:3 | |
| | **t** | **testified** 14:1,5 | |
| | **t** 8:2 48:1,1 | **testify** 23:25 | |
| | **tabulated** 16:2 16:7 | | |

| | | | |
|---|---|---|---|
| **thought** 33:17 34:24 | **totals** 16:11 | **types** 12:17 23:7 | **unknown** 1:25 |
| **thoughts** 28:4 35:19 | **tough** 38:16 | **typical** 22:15 | **unleash** 33:5 |
| **three** 17:8,13 45:23 | **towards** 7:10 | **u** | **unnecessary** 28:21 33:2 |
| **thumb** 14:7 | **traditional** 18:20 | **u** 8:2 | **unresolved** 43:13 |

thought 33:17 34:24

thoughts 28:4 35:19

three 17:8,13 45:23

thumb 14:7

time 7:4 11:6 27:5 33:3,16 33:22 38:1,16 40:16

timely 7:8

times 13:25

timing 36:14 38:1

timothy 4:18 6:8 36:16

titled 27:21

today 6:12,13 8:4 9:1 13:7 15:10 18:16 19:3 20:8,22 22:19 23:13 36:7 38:19 39:2,11 42:22

today's 7:1 25:15,22,22

tomorrow 36:6

tonight 39:3

took 26:25 39:15

tools 38:25 39:10

top 15:9 30:19

total 12:23 34:10 35:14

totals 16:11

tough 38:16

towards 7:10

traditional 18:20

training 31:8

transcribed 3:1

transcript 48:4

translates 25:17

translating 34:1

transmission 15:13 23:4,11

transmit 37:12

transmitting 23:6

true 48:4

trust 23:21 42:17

trustee 4:4 6:17 7:17 36:1 41:3,13 43:14 43:19 44:20,22

trustee's 7:18 41:6

truthful 32:7

trying 33:21

turn 8:3 11:24 24:25 25:25 26:5,19 27:17

two 12:3,19 29:12 36:22 40:2 41:9 45:20,23

types 12:17 23:7

typical 22:15

**u**

u 8:2

u.s. 1:23

ultimately 28:8 37:16

uncertainty 21:4

uncontested 13:20

under 8:8 10:5 10:14 14:15 18:13 19:18 21:25 23:2,14 29:18 44:21

undermine 14:9 21:6

undermining 21:4

understanding 38:9

understood 43:15

undisputed 16:2

undisputedly 10:20

unduly 20:21

unfair 34:19

unfortunately 36:3,4

united 1:1,12 4:3,4 7:17

universal 11:9 11:13

unknown 1:25

unleash 33:5

unnecessary 28:21 33:2

unresolved 43:13

unsecured 8:7 25:21

unsuccessful 11:5

unusual 25:13

uploaded 37:21

upsetting 39:8

upshot 11:8

usc 8:8 11:21 22:6

use 9:15

used 22:14

usual 13:21

**v**

v 44:19

validate 20:25 23:23 25:4

validly 11:3 13:4

value 9:9

variety 29:10 36:19

various 38:24

vazquez 5:2 39:17,19,21,24 39:25 40:8,17 40:18,20,23,24 41:1 42:5,18 42:24 43:8,12 43:25 44:3,15

44:16,18 45:1
45:6,10,13,14
45:22 46:15
**vazquez's**
40:14
**verifiably** 18:2
18:3
**verification**
18:7
**verify** 22:22
**verifying** 18:17
22:8,10
**veritext** 48:20
**version** 8:22
**viable** 25:9
**video** 40:23
**view** 20:20
22:16 32:4,14
**views** 18:25
**violated** 14:19
**vote** 15:13
16:10 17:24
18:11 19:8
20:6,11,23
22:5,9,21,22
23:3 24:25
**voter** 22:23
**voters** 22:10
24:7,13,13,21
25:2
**votes** 13:3,14
16:7 17:8,12
17:14 18:1,3
18:14 19:8
20:24,25 21:20
23:11 24:1,18
25:11 27:23

32:3
**voting** 10:1
11:7 14:2 16:2
16:3,16 18:22
18:23 21:12
24:20,23 25:3
27:23

**w**

**waiting** 43:17
**waive** 31:16
**waived** 34:5
35:6
**waiver** 31:15
32:15 34:2
**walk** 28:4
40:10
**want** 22:18
26:7,10,21
27:3 28:12,15
29:22 31:14,16
32:24 33:3,4,4
33:10,20,23,23
37:6,9 38:2
40:1,3,10 41:9
42:14,18 45:17
**wanted** 26:16
29:3 34:21
39:7 43:24
**wants** 7:5 37:2
41:23
**wardwell** 6:8
**warranted**
25:11
**way** 9:3 14:3
21:5 26:17
33:6 39:1

**we've** 6:23
31:23
**week** 7:13 8:17
**weigh** 19:2
**wished** 31:6
**wishes** 43:19
**wondering**
6:11
**word** 30:2
35:25 41:3
45:24
**wording** 29:2
34:12 35:3
41:7 42:11
**words** 12:22
14:21 15:25
23:8 29:11,13
32:16 34:2,5
45:6,7,12
46:11
**work** 30:22
37:20 38:12
39:2,5,6
**workability**
34:21
**workable**
34:13 37:19
**working** 43:10
**write** 19:11
**written** 25:8
28:22 29:1
30:15

**x**

**x** 1:4,10 47:1

**y**

**yeah** 34:18
36:15 37:8
39:12,18,24
40:8,22 45:4
46:7,16
**york** 1:2,14 4:7
4:21 31:7
39:22

**z**

**zipes** 4:9 6:18
6:19 41:16,19
42:6,17 43:3
43:12,21 44:5
45:16,17 46:4
46:9,13,15,23