1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 24-10837-dsj

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    CREDIVALORES - CREDISERVICIOS, S.A.,

8

9              Debtor.

10    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                    United States Bankruptcy Court

12                    One Bowling Green

13                    New York, NY 10004-1408

14

15                    Thursday, September 5, 2024

16                    11:03 a.m.

17

18

19

20

21    B E F O R E :

22    HON. DAVID S. JONES

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO:    UNKNOWN

1    HEARING re Status Conference.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Rita Weltsch

```
1   A P P E A R A N C E S :

2

3   BAKER MCKENZIE LLP

4        Attorneys for the Debtor

5        1111 Brickell Avenue, Suite 1000

6        Miami, FL 33131

7

8   BY:  PAUL KEENAN (TELEPHONICALLY)

9

10  DAVIS POLK & WARDWELL LLP

11       Attorneys for the Ad Hoc Group of Noteholders

12       450 Lexington Avenue

13       New York, NY 10017

14

15  BY:  TIMOTHY E. GRAULICH (TELEPHONICALLY)

16

17  UNITED STATES DEPARTMENT OF JUSTICE

18       Attorneys for the Office of the United States Trustee

19       Alexander Hamilton Customs House

20       One Bowling Green - Room 534

21       New York, NY 10004

22

23  BY:  ANDREW D. VELEZ-RIVERA (TELEPHONICALLY)

24

25
```

1    UNITED STATES DEPARTMENT OF JUSTICE

2        Attorney for the Internal Revenue Service

3        86 Chambers Street

4        New York, NY 10007

5

6    BY:  ALYSSA O'GALLAGHER (TELEPHONICALLY)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                   P R O C E E D I N G S

2           THE COURT:  All right.  The next and final case on

3    the calendar is Credivalores, Number 24-10837, down for a

4    status conference.  Let me go ahead and take appearances on

5    that.  Who's here for Debtors, please?

6           MR. KEENAN:  Good morning, Your Honor.  This is

7    Paul Keenan, from Baker McKenzie, on behalf of the Debtors.

8           THE COURT:  Hi.  Nice to -- yep.  Go ahead.  Are

9    you with a team?

10           MR. KEENAN:  No one else from Baker McKenzie.

11    Your Honor, but Susana Hidvegi, who is an attorney licensed

12    to practice in the country of Colombia.  She is on today.

13    She won't be speaking, I don't believe, but --

14           THE COURT:  Okay.

15           MR. KEENAN:  -- I just wanted to introduce her.

16           THE COURT:  Great.  Nice to see you and welcome.

17    Okay.  And let's see, I think we have someone -- Mr. --I

18    apologize.  I forget how to pronounce your name, but

19    Graulich --

20           MR. GRAULICH:  Yes --

21           THE COURT:  -- for the Ad Hoc Group?

22           MR. GRAULICH:  You got it perfectly correct, Your

23    Honor, and better than I've been able to be with my camera

24    today, so my apologies.  But if you could remember my name,

25    you could also remember what I look like.  So I apologize,

1    though.  I'm on my firm laptop in a different law office

2    today, stepped out of meetings and --

3              THE COURT:  Got it.

4              MR. GRAULICH:  -- I need to get it taken a look at

5    by my IT folks.

6              THE COURT:  No problem.  I can see your name

7    beautifully, and I can hear you very well, so that's fine.

8    And yes, I do remember what you look like as well from a

9    nice, lengthy time we spent together in the Courtroom.

10             Okay.  I'll keep canvassing.  Mr. Velez Rivera for

11   the U.S. Trustee?

12             MR. VELEZ-RIVERA:  Good morning, Your Honor.  Andy

13   Velez-Rivera, from the U.S. Trustee's office.

14             THE COURT:  Okay.  Ms. O'Gallagher?

15             MS. O'GALLAGHER:  Good morning, Your Honor.

16   Alyssa O'Gallagher, from the U.S. Attorney's Office, on

17   behalf of the IRS.

18             THE COURT:  Great.  Nice to see you.  Anyone else

19   actively participating today?  Okay.  I'll just disclose to

20   all of you I actually know Ms. O'Gallagher in a friendly and

21   personal manner outside of work.  We were also -- I think we

22   didn't quite overlap at the U.S. Attorney's Office, but that

23   won't affect my discharge of my duties here today.  I just

24   like to make it known.

25             Okay.  So let's hear the update of unspecified

1    developments that prompted this conference.

2              MR. KEENAN:  Yes, Your Honor.  And first of all,

3    thank you very much for taking this request for a status

4    conference on such short notice.  There was developments

5    late last week in Columbia, which we thought it was

6    important to inform the Court.  We were able to inform Davis

7    Polk yesterday and we were able to have email exchanges with

8    the U.S. Trustee, and I'll be able to provide their office

9    with more details later today if they would like.

10             First of all, Your Honor, you may recall that we

11   had a contested confirmation hearing, and Your Honor entered

12   an order confirming the plan.  I believe it was on July 2nd,

13   so nearly two months ago.

14             Also, as the Court may recall, the plan

15   contemplated the issuance of new notes, which of course

16   would require a new indenture drafting of new notes.  There

17   is a requirement to run those by the SEC.  Of course, they

18   have to be negotiated with Indenture Trustee's counsel.  And

19   so, we expected that it would take about six to eight weeks

20   to go effective on the plan, because it was centered around

21   the issuance of new notes.  And we're at about that eight-

22   week mark.

23             The development that we wanted to inform the Court

24   of is that, you know, we will not be going effective, at

25   least not anytime soon.  And one of the principal reasons is

1   that a Law 1116 proceeding was commenced in Colombia just

2   last Friday.  Your Honor, fortunately, myself and also

3   Susana Hidvegi, of course, have a lot of experience working

4   in Colombia on various cross-border matters where they touch

5   both Colombia and the U.S.

6           And I certainly won't, you know, give the Court a

7   lengthy dissertation on Law 1116 proceedings, except to say

8   that it's the rough equivalent of a Chapter 11 in Colombia.

9   And to be clear, this was voluntarily commenced by

10  Credivalores in Colombia, although, you know, I'll say under

11  significant pressure to do so, which I'll explain in a

12  moment.

13          I think the one salient feature I might mention of

14  the Law 1116 process in Colombia is that unlike the United

15  States, where a company files a petition and the bankruptcy

16  case commences immediately, under Law 1116 -- and this is a

17  common feature, I think, throughout Latin America -- a

18  company -- when a company files a voluntary petition, the

19  regulatory body then takes two to four months to review the

20  petition and determine whether or not the case -- the

21  petition should be admitted and the case should proceed.

22          So, at this moment, you could think of ourselves

23  as sort of being in a bit of a gap period in the sense that

24  a petition was filed by the company last Friday, but the

25  case is not technically in motion yet.

1          What that means, then, Your Honor, is that we're

2     in this unfortunate position of being in what I'd call two

3     concurrent plenary proceedings over the same Debtor.  And

4     what I mean by that is that, you know, for the same Debtor,

5     Credivalores, we have a pending Chapter 11 case, albeit with

6     a confirmed plan and a, you know, pending petition for a Law

7     1116 proceeding in Columbia.

8          THE COURT:  I'm sorry, but both commenced by

9     Credivalores, right, by the same entity?

10          MR. KEENAN:  Correct.  Correct.  Correct.  And so,

11     if you will, there are two courts, so to speak, that purport

12     to have jurisdiction in two different countries over the

13     same entity.  And that's a different situation than what we

14     typically strive for, which is where you have, you know, a -

15     - you know, for example, you know, we have experience with a

16     Chapter 11 in the U.S. over a company, and that you might

17     file a version of Chapter 15 in Colombia.  So you have an

18     ancillary proceeding in Colombia.  And just to clarify,

19     Columbia has adopted the UNCITRAL Model Law cross-border

20     insolvency, which is our Chapter 15.

21          THE COURT:  Right.

22          MR. KEENAN:  But to be clear, this is not a

23     Chapter 15 proceeding in Colombia, right?  This is like a

24     Chapter 11 proceeding in Colombia, so to speak.

25          THE COURT:  Hmm.

1        MR. KEENAN:  And which makes it more complicated,

2   right?  Because typically, you know, you have one plenary

3   proceeding, I call it, and one ancillary proceeding that

4   follows the plenary proceeding.  Here we have two plenary

5   proceedings over the same -- over the same Debtor.

6        We only -- quite frankly, as Debtor's counsel, we

7   only learned this when it was filed.  And there were some

8   events leading up to this filing that we learned of just on

9   Monday.  And I'll relay some of those events to the Court.

10       So it appears that in late July, at least two

11  insurance companies who are creditors of the Debtor

12  commenced a form of civil litigation in Colombia for unpaid

13  debts that led to embargoes on the company's bank accounts

14  in Colombia.

15       Embargoes are a common litigation tool for

16  plaintiffs in Latin America, and the best way to describe it

17  is that you could think of it as a prejudgment attachment of

18  bank accounts, you know, at the commencement of civil

19  litigation.  And as the Court's certainly aware, it's very

20  difficult to get prejudgment relief at the beginning of a

21  civil litigation case.  The bar is very high.  It's not

22  nearly as high in Latin America.  And so these embargoes by

23  creditors at the outset of civil litigation are not

24  uncommon.

25       Unfortunately, since, you know, it's over bank

1    accounts in this case, that obviously constrains the

2    company's liquidity.  And it's my understanding that those

3    embargoes, plus other issues are -- caused two things.  One

4    is it's caused the company to miss an interest payment on

5    its local bonds.

6           So, in this case, Your Honor, you'll recall, of

7    course, that we have, I believe it was $210 million in

8    dollar denominated bonds governed by New York law.  And

9    those are the bonds that were being exchanged through the

10   prepackaged plan.  But the company also had local bonds.

11   And the approximate amount -- denominated in the Colombian

12   pesos, but in the approximate amount of about $24 million

13   U.S.

14           There was an interest payment due on those local

15   bonds and those local bonds were going to ride through like

16   all the other claims under the plan.  Those local bonds had

17   an interest payment that was due on October 26th that the

18   company did not make.

19           And so, the liquidity issues that the company is

20   facing has caused it to miss the interest payment on its

21   local bonds.  It's also caused it to be unable to fund the

22   administrative expenses that would need to be funded under

23   the confirmed Chapter 11 plan to make it go effective, and

24   also to make the bond payment under the new notes that

25   would, you know, be due almost immediately.  It was actually

1      due a week ago, I believe.  So --

2                  THE COURT:  And you -- I think you may have

3      misstated a date.  I think you may have just referenced

4      October of 26th, but --

5                  MR. KEENAN:  And August 26th, Your Honor.

6                  THE COURT:  Yeah, okay.

7                  MR. KEENAN:  So, that was the due date for the

8      interest payment under the local bonds.

9                  And so, you know, to be frank, we're in a tough

10     spot.  This is uncharted territory.  I've been involved in,

11     you know, a Chapter 11 case where we sought recognition

12     under the Model Law in Colombia.  I've done the reverse

13     where we had a Colombian proceeding and obtained Chapter 15

14     protection here.  And in both those cases, we worked closely

15     with the Superintendent of Corporations in Colombia to make

16     that happen.

17                 Here, to my knowledge, this is the first time that

18     there's ever been two concurrent plenary proceedings, as I

19     call it, over the same Debtor in the U.S. and Colombia.

20                 THE COURT:  Right.

21                 MR. KEENAN:  Fortunately -- I'm going to sing

22     Susana's praises here for a moment, Ms. Hidvegi.  Ms.

23     Hidvegi is probably one of the, you know, the preeminent

24     practitioners of insolvency law in Colombia.  I've known her

25     probably for almost 15 years at this point.  She started off

1    as an Associate Brigard when Colombia enacted their

2    restructuring law in 2006.  And she quickly became the

3    country's expert on a Law 1116, so much so that she wound up

4    serving, I believe it was, a three or four term as the Chief

5    Bankruptcy Judge in Columbia.  And she has now returned to

6    private practice.

7            We're fortunate that the company has hired her.

8    And we're going to be working closely in the coming weeks to

9    figure out what her options are.  Don't know what the

10   options are, quite frankly.  Don't know -- we're just at the

11   beginning stages here.  But we thought that since the

12   company is now the subject of another bankruptcy proceeding

13   in another country that it was incumbent upon us to inform

14   the Court and, of course, to inform all the other parties.

15           THE COURT:  Okay.  So I am disinclined to say much

16   of anything, other than to absorb this information.  I don't

17   want to complicate things further.  This is -- you said this

18   was a first for you.  It's a first for me of having two

19   principal cases in two jurisdictions concurrently.  I think

20   one that occurs to me, I appreciate your -- first off, I

21   should say I appreciate your calling this to attention

22   promptly, because there's potential broader interest.

23           I think it would be appropriate for the Debtor to

24   file some form of notice --

25           MR. KEENAN:  Notice?

1        THE COURT:  Yeah, of the commencement of Law 1116,

2   I guess if it's fair to call it, restructuring or insolvency

3   proceedings in Colombia concerning the same Debtor that's

4   the Debtor in the case here.  I think that would be good for

5   maximizing notice to parties in interest.  And I'd encourage

6   you to just -- well, not -- I'd direct you to order the

7   transcript, as I'm sure you would anyway, so that that'll be

8   docketed in due course.  I think that's embargoed -- public

9   access to that is embargoed for a time.  But it'll then be

10  memorialized and made part of the record.

11        I'm -- I guess as part -- can -- are you in a

12  position to say anything about likelihood of effective date

13  timing?  Or it's just -- it sounds to me like you have too

14  much uncertainty about that right now to speak to that.

15        MR. KEENAN:  It's -- I think I can say

16  unequivocally I don't see an effective date anytime soon,

17  meaning in the coming days or weeks.  And so, you know, I

18  think that --

19        THE COURT:  Okay.  Maybe I should -- what if I set

20  a conference date and your notice can include that a

21  conference date has been -- a further conference date has

22  been set for date X and Debtors do not anticipate achieving

23  effectiveness of their plan before then, something like

24  that?

25        MR. KEENAN:  Yes, Your Honor.

1          THE COURT:  Okay.  I'm making this up, so if I say

2    something that doesn't make sense, please tell me.  I mean,

3    that is, by making it up I mean I am coming up with things

4    that I think are appropriate, sensible measures, but I'm

5    open for better ideas because it's new, a new situation to

6    me, both because I hadn't learned of it before this

7    conference started and because I've never been in this

8    situation.

9          I'm going to let everybody else speak.  And let

10   me ask one thing -- and I know Mr. Graulich wants to speak

11   too.  I assume that the -- I'll just call it the treatment

12   of the preexisting notes that was the centerpiece of the

13   plan and the modification of parties rights, will not go

14   into force until and unless you achieve your effective date.

15   Is that right?  In other words, is Mr. Graulich's clientele,

16   that is the Ad Hoc Group or the dissenting noteholders, at

17   risk of their rights being modified pursuant to the plan

18   that I approved prior to -- before further things happen or

19   not?

20          MR. KEENAN:  So, Your Honor, I think what we can

21   stipulate here today is what you suggested earlier, which is

22   that perhaps we set a conference, a further status

23   conference, for two weeks from now.  I'm hoping that we'll

24   have some more clarity on something before then.  And

25   certainly the Debtors can commit to not going effective on

1    the plan before then, or without further --

2           THE COURT:  Okay.

3           MR. KEENAN:  -- notice to the parties.

4           THE COURT:  And I would make it, like, three

5    business days thereafter or something so that there's not a

6    --

7           MR. KEENAN:  Sure.

8           THE COURT:  -- you know, a fire drill at that

9    time.  Okay.  So that makes sense.  And I think we can get

10   you a date in something like two weeks.  I'm responsive to

11   the parties' views of how far out we want go.  If you want

12   two weeks, that's fine with me.

13          Mr. Graulich, you were getting ready to speak and

14   I jumped in.  Anything -- what do you want to add, if

15   anything?

16          MR. GRAULICH:  Yeah.  No, just -- thank you, Your

17   Honor, and for the record, Timothy Graulich, of Davis Polk,

18   on behalf of the Ad Hoc Group.  Just a couple of

19   observations.  One, with respect to the effectiveness of the

20   plan, you know, the plan has -- you know, the plan and

21   disclosure statement that was sent out to clients, to

22   creditors -- and not to rehash any of the objections that we

23   had previously -- stated specifically that the first bond

24   payment was to be made on August 7th, i.e., you know, almost

25   a month ago.  Presumably that would have meant that the

1    bonds should have been issued and the case gone effective

2    back then.

3         You know, given the fact -- and what's unusual

4    about this is that, you know, we weren't involved in

5    negotiating any of this, but I'm also assuming that the bond

6    indenture and the (indiscernible) -- like, I'm sure every

7    subsequent event that has happened right now is probably a

8    breach of those agreements.  So I'm not so sure that there's

9    a world in which the bonds could -- that the plan could be -

10   - just go effective at this point.  But we'll see.  You

11   know, again, I -- we're all sort of dealing with this in

12   real time.

13        But I do want to raise my hand to say that I think

14   very significant new events have occurred here that it's not

15   obvious to me that we're able to go effective at this point.

16   Maybe if things get resolved in the next two weeks in

17   Colombia, maybe that's -- you know, maybe people come to the

18   conclusion that no harm, no foul, it's close enough.  But,

19   you know, I think there's already material potentially, you

20   know, breaches of what the arrangement was supposed to be,

21   even under the plan that's been confirmed.

22             THE COURT:  Okay.

23             MR. GRAULICH:  The other observation is that I

24   think this is the first time -- I'll throw in my hat as well

25   -- that of two plenary cases where they have not yet been

1    coordinated and they sort of weren't -- although both

2    commenced by the Debtors, I take Mr. Keenan's point that,

3    you know, one was sort of commenced as the plan A and the

4    other one may have been, you know, the subsequent Colombian

5    proceedings may have been commenced -- I don't want to say

6    under duress -- but based upon newly developing facts on the

7    ground locally.

8             But, you know, the history of Chapter 15 probably

9    goes back to the Maxwell case, which I think was two plenary

10   cases, one in the UK, one in the U.S.  So there are ways

11   and, you know, the Southern District does have court-to-

12   court communication protocols.

13            You know, I'm sure Mr. Keenan is already thinking

14   about how best to, you know, coordinate this proceeding with

15   that proceeding.  And frankly, we would have, as the

16   bondholders and as creditors, have I think common ground

17   with the Debtors to make sure that they're -- that these --

18   this sort of unanticipated new filing doesn't, you know,

19   cause undue harm to creditors.

20            So there probably is some, you know, coordination

21   that could be done.  But you know, I think what Your Honor

22   has requested or has suggested about there being a

23   conference, you know, if it's in two weeks, that's great.

24   But I'm not so sure that unless this gets resolved

25   immediately that we're -- you know, and this may not be

1    something that even the creditors would be happy about --

2    but I am, just myself, questioning whether or not the --

3    that too much has changed from what was in the disclosure

4    statement and the plan for there be a world where we're

5    back in the, you know, a pre-pack, you know, plan going

6    effective in two weeks, for example.

7              THE COURT:  Yeah, I hear you, Mr. Graulich.  I

8    thank you for those thoughts.  I think that the best

9    contribution I can make is to not say too much, because

10   that'll -- it isn't fully -- it wouldn't be fully informed

11   and I think it's pretty clear that Mr. Keenan and his team

12   are reacting kind of in real time to -- and trying to get

13   their arms around how to proceed, as well as maybe some

14   additional facts.

15             My concern in the meantime, my objective in the

16   meantime, is to allow that process to occur in a way that

17   doesn't further complicate matters or prejudice anybody's

18   rights, and in particular, my thoughts go really to all

19   noteholders, both the dissenters and then, honestly, even

20   the folks supporting the prior plan.  So I want to make sure

21   they have both notice and an opportunity to have their

22   rights addressed if they want to raise anything.

23             Otherwise -- you know, but otherwise I think we

24   just have to allow a little time.  I'm sure the Debtors'

25   team will be communicating with all stakeholders and trying

1    to sort things out, and I want to allow enough breathing

2    room for that to occur, so long as that's not going to

3    result in somebody being prejudiced.  Those are sort of my

4    thoughts.  Does that work for you, Mr. Graulich?

5           MR. GRAULICH:  It does.  It does.  And I think,

6    again, while Mr. Keenan and I, who have known each other for

7    quite a while, had a good conversation yesterday, I think we

8    are aligned in trying to make sure that there is a -- the

9    best possible outcome here for creditors.  So, that all is

10   sensible to me.

11          THE COURT:  Okay, great.  I'm told I have calendar

12   availability on the 17th of September and then the 24th, if

13   any -- if you want to pick either of those on the spot, or

14   else you can talk to whoever you need to talk to offline and

15   then just communicate with my deputy which you prefer.

16   Okay?

17          I'm going to ask the other participants in a

18   minute if they want to add anything or ask questions, but

19   Mr. Keenan, so far, so good, based on what you've heard --

20          MR. KEENAN:  Yes --

21          THE COURT:  -- from Mr. Graulich?

22          MR. KEENAN:  Yes, Your Honor.

23          THE COURT:  Okay.  Any further thoughts from the

24   U.S. Trustee's Office?

25          MR. VELEZ-RIVERA:  Good morning, Your Honor.  Andy

1    Velez-Rivera, for the U.S. Trustee.  No, I have nothing to

2    add today.  We're absorbing the information in the same

3    manner you are.

4            THE COURT:  Okay.

5            MR. VELEZ-RIVERA:  Thank you.

6            THE COURT:  Yep, thanks.  And I'm open for

7    applications at any time from anybody who wants to make it.

8    Ms. O'Gallagher, how about for the U.S. Attorney's Office?

9            MS. O'GALLAGHER:  Nothing to add, Your Honor.

10   Thank you very much.

11          THE COURT:  Okay.  So, let's -- so let me just

12   recap, I think, where we are.  First, I thank you for the

13   update.  There's a second plenary proceeding unexpectedly

14   now occurring in Colombia.  Debtors are going to file a

15   notice of that.  Debtors have committed that no steps will

16   be taken of having the plan go effective, and I've generally

17   urged that no steps be taken that will prejudice peoples' --

18   parties in interest rights, pending a further conference.

19         And that further conference will occur on either

20   September 17th or September 24th.  I'll just presumptively

21   put it at 10:00 a.m. as part of a calendar, but if you need

22   a separate or a different time, that would be fine.  And you

23   can consult among yourselves and figure out which of those

24   two dates makes more sense, and then just communicate to

25   them to Ms. Calderon what it is, and get a notice of

1    conference on file making known to the world that date.

2            And then also, in the meantime, Debtors will file

3    some version of the notice document that Mr. Keenan and I

4    discussed earlier.  Okay?  Does that cover -- I think that's

5    the total set of takeaways.  Do I have that right, Mr.

6    Keenan?

7            MR. KEENAN:  Yes, Your Honor.

8            THE COURT:  Okay.  So, thank you for alerting me

9    to this situation and I will just say good luck navigating.

10   It sounds challenging, but you're a skilled group and we'll

11   see where you get.  Okay?

12           MR. KEENAN:  Thank you.

13           THE COURT:  All right.  Thank you, all.

14           MR. KEENAN:  Thank you, Your Honor.

15           MAN:  Take care, Judge.

16           MR. GRAULICH:  Thank you, Your Honor.

17           (Whereupon these proceedings were concluded at

18   11:29 a.m.)

19

20

21

22

23

24

25

1              C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6        *[signature: Sonya M. Ledanski Hyde]*

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  September 12, 2024