Paul J. Keenan Jr. (admitted *pro hac vice*)
Baker & McKenzie LLP
830 Brickell Plaza, Suite 3100
Miami, FL 33130
Telephone: 305-789-8900
Facsimile: 305-789-8953
Email: paul.keenan@bakermckenzie.com

Blaire Cahn
Baker & McKenzie LLP
452 Fifth Avenue
New York, NY 10018
Telephone: 212-626-4100
Facsimile: 212-310-1600
Email: blaire.cahn@bakermckenzie.com

*Counsel for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 7 |
| CREDIVALORES – CREDISERVICIOS S.A., | Case No. 24-10837 (DSJ) |
| | Docket Nos. 217, 222, 228, 231 & 232 |
| Debtor. | |
| _____/ | |

**BAKER & MCKENZIE LLP'S NOTICE OF FILING AND SUPPLEMENTAL
AUTHORITY IN SUPPORT OF (I) THE MOTION OF BAKER & MCKENZIE
LLP TO WITHDRAW AS COUNSEL FOR THE DEBTOR; AND (II) THE
LIMITED OBJECTION OF BAKER & MCKENZIE LLP TO THE
<u>CHAPTER 7 TRUSTEE'S CROSS-MOTION FOR TURNOVER</u>**

Baker & McKenzie LLP ("**Baker McKenzie**") hereby submits this notice of filing and supplemental authority, to be considered in further support of (i) the *Motion of Baker & McKenzie LLP to Withdraw as Counsel for the Debtor* [Docket No. 217]; and (ii) the *Limited Objection of Baker & McKenzie LLP to the Chapter 7 Trustee's Cross-Motion For Turnover* [Docket No. 228], and respectfully states as follows:

1. Attached hereto as **Exhibit A**, is a true and correct copy of Baker McKenzie's engagement letter with the Debtor, including the standard terms of engagement.

2. Attached hereto as **Exhibit B**, is a true and correct copy of the prospective special the Chapter 7 trustee's letter requesting turnover dated November 11, 2025. Prior to this correspondence, the Trustee did not make any request for client files, orally or in writing.

3. Attached hereto as **Exhibit C**, is a true and correct copy of *In re Refco Securities Litigation*, 759 F.Supp.2d 342 (S.D.N.Y. 2011). This published decision applies the ruling in *Matter of Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn*, 91 N.Y.2d 30 (Ct. of App. of N.Y., 1997), which was cited by the Chapter 7 Trustee in his *Reply in Further Support of Chapter 7 Trustee's Cross-Motion for Turnover* filed on December 16, 2025 [Docket No. 232].

Dated: December 16, 2025

**BAKER & McKENZIE LLP**

By: */s/ Paul J. Keenan Jr.*
Paul J. Keenan Jr. (admitted *pro hac vice*)
830 Brickell Plaza, Suite 3100
Miami, FL 33131
Telephone: 305-789-8900
Facsimile: 305-789-8953
Email: paul.keenan@bakermckenzie.com

– and –

Blaire Cahn
452 Fifth Avenue
New York, NY 10018
Telephone: 212-626-4100
Facsimile: 212-310-1600
Email: blaire.cahn@bakermckenzie.com

*Counsel for the Debtor and Debtor-in-Possession*

# **EXHIBIT A**

Engagement Letter with Standard Terms of Engagement



**Baker & McKenzie LLP**

452 Fifth Avenue
New York, NY 10018
United States

Tel: +1 212 626 4100
Fax: +1 212 310 1600
www.bakermckenzie.com

**Asia Pacific**
Bangkok
Beijing
Brisbane
Hanoi
Ho Chi Minh City
Hong Kong
Jakarta
Kuala Lumpur*
Manila*
Melbourne
Seoul
Shanghai
Singapore
Sydney
Taipei
Tokyo
Yangon

**Europe, Middle East & Africa**
Abu Dhabi
Almaty
Amsterdam
Antwerp
Bahrain
Barcelona
Berlin
Brussels
Budapest
Cairo
Casablanca
Doha
Dubai
Dusseldorf
Frankfurt/Main
Geneva
Istanbul
Jeddah*
Johannesburg
Kyiv
London
Luxembourg
Madrid
Milan
Munich
Paris
Prague
Riyadh*
Rome
Stockholm
Vienna
Warsaw
Zurich

**The Americas**
Bogota
Brasilia**
Buenos Aires
Caracas
Chicago
Dallas
Guadalajara
Houston
Juarez
Lima
Los Angeles
Mexico City
Miami
Monterrey
New York
Palo Alto
Porto Alegre**
Rio de Janeiro**
San Francisco
Santiago
Sao Paulo**
Tijuana
Toronto
Washington, DC

* Associated Firm
** In cooperation with Trench, Rossi e Watanabe Advogados

January 11, 2024

Credivalores - Crediservicios S.A.
Cra 7 No. 76-35 Piso 7
Bogotá D.C., Colombia

      Attn: Jaime Francisco Buriticá Leal

      Re: Engagement Letter - Credivalores - Crediservicios S.A.

Dear Jaime,

We are pleased to represent Credivalores - Crediservicios S.A. in connection with the proposed restructuring of its debt and related matters including a possible filing under the U.S. bankruptcy code. The purpose of this letter is to confirm the terms of our representation.

It is anticipated that this engagement will be supervised and principally discharged by me with the assistance of other Baker & McKenzie lawyers.

Subject to the separate fee quote attached as Annex A hereto, you agree to pay the reasonable fees and other charges billed by us in connection with this representation. Unless we agree otherwise, our fees for services are based on time spent on specific projects, computed at our hourly rates for those persons performing the services rendered. At present, the hourly rates for lawyers in our New York office range from $610.00 to $2,000.00 for partners and associates and from $420.00 to $440.00 for paralegals and clerks. Our rates are also subject to adjustment by the firm from time to time.

In conjunction with our representation of you in this matter, you agree to remit a payment to us in the amount of: $100,000 as an advance towards our professional fees (the "Retainer"). Upon our receipt of that payment, the money will be deposited into our client trust account. We anticipate submitting monthly invoices for the professional services rendered and other charges and expenses incurred. While we require that you pay our invoice in-full on a monthly basis, we may at any time in our sole discretion apply the Retainer against any such invoices. You hereby specifically authorize the firm to apply funds from the Retainer against any such invoices. To the extent any amounts owing under any invoices are applied against the Retainer, you agree to replenish the advance fee by having us apply any of your payments first to replenish the advance fee and then against outstanding invoices. At the conclusion of this engagement and subject to the aforementioned billing and payment practices, any remaining cash balance will be returned to you.

We will incur various disbursements and other charges in performing legal services for you. You agree to pay for those charges and expenses in addition to our fees. For purposes of illustration, the disbursements and other charges commonly include long distance telephone,



telefax and other types of electronic communication, courier, messenger and other delivery fees, postage, translation and interpretation fees, travel expenses, photocopying and other reproduction costs, secretarial and clerical staff overtime as may be required to meet the deadlines involved with your matter, and other similar items. In addition, we will also include a charge for any local value added or similar taxes (including, for example, goods and services tax, business tax or services tax) due in respect of legal services performed in certain jurisdictions.

We anticipate submitting monthly invoices for the professional services rendered and other charges and expenses incurred. Payment is due upon receipt of our statement.

We may, from time to time, for your convenience, estimate the cost of dealing with a particular matter. However, such estimates are by their nature inexact and should not be considered to be agreed ranges or caps unless expressly agreed by us. Therefore, unless otherwise expressly agreed, any estimates made by us are for general planning purposes only and are subject to our regular billing procedures.

If a dispute arises between you and our Firm regarding our fees or other charges, you may be entitled to require resolution of that dispute by arbitration or mediation pursuant to the New York State Fee Dispute Resolution Program. The availability of that program will depend upon the amount and nature of any dispute.

If you have any questions, please call me. Otherwise, please sign and return the enclosed copy of this letter. Unless we agree otherwise in writing, the terms of this letter and our Standard Terms of Engagement for Legal Services will govern this engagement and any future assignments we accept from you.

Sincerely yours,

*Michael Fitzgerald*

Michael Fitzgerald
Partner
+1 212 626 4460
Michael.Fitzgerald@bakermckenzie.com

2

**Baker McKenzie.**

Agreed, on Behalf:
Credivalores - Crediservicios S.A.

By: Jaime Francisco Buriticá Leal

Title: Chief Executive Officer

Date: January 11, 2024

Enclosures:    Baker & McKenzie LLP Standard Terms of Engagement for Legal Services;

# Baker & McKenzie LLP Standard Terms of Engagement for Legal Services

**Governing Terms**. This statement contains the standard terms for our engagement as your lawyers. Unless modified in writing by mutual agreement, these terms will be an integral part of any agreement we may have with you. Please review this statement carefully and contact us promptly if you have any questions. We suggest that you retain this statement in your file.

**Application and Interpretation**. Your engagement is with Baker & McKenzie LLP, a member of Baker & McKenzie International, which is a Swiss Verein with member law firms around the world. In accordance with the common terminology used in professional service organizations, reference in these Standard Terms, or otherwise in the course of your dealings with us, to a "partner" means a partner, or equivalent, in this or another such law firm. Similarly, references to an "office" means an office of any such law firm.

**Client Service Lawyer**. One lawyer will generally be assigned primary responsibility for seeing that your requests for legal services are met. Additional lawyers and paralegals from other Firm offices may assist in rendering the most appropriate and efficient legal services, and we will share confidential information with them regarding your matters for the purposes of better serving you.

**Scope of Our Engagement and Fees**. The scope of any engagement will be set out in a separate letter that will be sent to you each time we agree to represent you on an individual matter (Assignment Letter). Our fee arrangement will be set out in that letter.

**Conflicts**. We will always honor our duty of confidentiality to you and protect your information. Without detracting from our duty of confidentiality to you, this letter confirms our mutual agreement that, so long as we act in accordance with ethical requirements, we and other Firm offices may without your consent act for other persons or entities whose interests are adverse to you or your affiliates in matters not substantially related to our engagement by you. The adversity may be in litigation, legislative or regulatory matters, or in transactions or otherwise, all regardless of type, importance or severity of the matter.

We agree, however, that we will not act adversely to you in any instance where, as the result of our representation of you, we have obtained sensitive, proprietary or other confidential information of a nonpublic nature that, if known to any such other client of ours, could be used in a matter in which we are retained by our other client to your or your affiliates' material disadvantage, unless we screen our lawyers and paralegals who have such information from any involvement in the adverse representation.

You also understand that we and other Firm offices may obtain confidential information from other clients that might be of interest to you, but which we cannot share with you.

**Conflicts With Affiliates**. For purposes of our engagement, our client is only the entity designated in our Assignment Letter, and not its affiliates (the stockholders, parent, subsidiaries, directors, officers, or related companies of any entity, or the individual members of a trade association, or the partners of a partnership or joint venture). Accordingly, for conflict of interest purposes, we and other Firm offices may represent another client with interests adverse to



your affiliates without obtaining your or their consent. We will expect you to inform us immediately if the designated client does business under any other name.

**Third Parties**. Our engagement for you does not create any rights in or liabilities to any third party.

**Termination of Services**. We are subject to the rules of professional responsibility for the jurisdictions in which we practice, which list types of conduct or circumstances that require or allow us to withdraw from representing a client. We may terminate our representation for any reason consistent with the applicable rules of professional responsibility. We try to identify in advance and discuss with our client any situation that may lead to our withdrawal, and if withdrawal ever becomes necessary we give the client written notice of our withdrawal.

You may terminate our representation at any time by notifying us. Termination of our services will not affect your responsibility for payment for legal services rendered and additional charges incurred before termination and in connection with an orderly transition of your matters.

Our attorney-client relationship will be considered terminated upon our completion of the specific services that you have retained us to perform, or if open-ended services are agreed upon, when more than six months have elapsed from the last time you requested and we furnished any billable services to you. If you later retain us to perform further or additional services, our attorney-client relationship will be revived, subject to these and any subsequent written terms in the Assignment Letter. The fact that we may inform you from time to time of developments in the law which may be of interest to you, by newsletter or otherwise, should not be understood as a revival of an attorney-client relationship. Moreover, we have no obligation to inform you of such developments in the law unless we are engaged in writing to do so.

**Your Papers**. When termination occurs, papers and property that you have provided to us will, at your request, be returned to you promptly. Copies of papers we have created for you, which you may need but no longer have, will be made available to you. Our drafts and work product will belong to us. We reserve the right, subject to any applicable laws or rules of professional responsibility to the contrary, to destroy within a reasonable time any items described in this paragraph that are retained by us.

**E-mail**. Documents sent to you by e-mail (whether or not containing confidential information) will not be encrypted unless you request us, in writing, to encrypt outgoing e-mail and we are able to agree with you and implement mutually acceptable encryption standards and protocols.

We make reasonable attempts to exclude from our e-mails and any attachments any virus or other defect that might affect any computer or IT system. However, it is your responsibility to put in place measures to protect your computer or IT system against any such virus or defect, and we do not accept any liability for any loss or damage that may arise from the receipt or use of electronic communications from us.

**Use of Cloud Services for the Storage and Processing of Data.** We may utilize cloud services in the provision of legal services related to the provision of services to you. We evaluate all cloud services providers against industry standard frameworks for information security to validate the existence of systems to protect the confidentiality, integrity, and availability of data. All cloud services providers operate under services agreements that require conduct that is consistent with our legal and ethical obligations.

If you require us to use a specific consumer-grade cloud storage provider (e.g., the free, non enterprise versions of Dropbox.com, Box.com, Onedrive.com, etc.) for the storage, sharing or exchange of documents or information generated or used in the course of a specific engagement we assume no responsibility for the security of the data or the provider's security standards. Note that we provide our own secure, encrypted

2



file transfer system as well as a secure Extranet, to facilitate the storage and sharing of information between you and us.

**Data protection and International Data Transfer.** We may obtain data about individuals (personal data) in connection with our provision of services to you. Unless we specifically agree otherwise, we act as the owner/controller of personal data, and retain responsibility to address data protection laws to the extent applicable to us. The Firm implements standard contractual clauses and other measures to address cross-border data transfer restrictions in data protection laws. With respect to the administration of the client-attorney relationship (invoicing, archiving, checking for possible conflicts of interest, marketing and knowledge services) and the hosting of data (client, contact, time recording, invoice, cash flow data, etc.) as well as all data in connection with client-related activities (files, documents, emails, data provided by you, etc.), we receive support from other Firm offices and affiliated entities (in particular Baker McKenzie Global Services LLC[1], B&M Global Services Manila, Inc.[2] and Baker & McKenzie Global Services NI Limited[3]). For the purpose of administrating the client-attorney relationship, client-related activities, marketing, business development and knowledge management, we may disclose the data to other Firm offices.

**Questions.** One of our goals is to ensure that legal services are delivered effectively and efficiently, and that all billings are accurate and understandable. Please direct any questions about services or billing practices to your client service lawyer.

**Agreement.** These Standard Terms shall be incorporated into any specific engagement and will be part of each Assignment Letter. Except for pending uncompleted assignments, these Standard Terms supersede all prior understandings or agreements between you and us and they shall prevail over any contrary or alternative terms of yours or any third party. Any change to these terms must be made or confirmed in writing in the Assignment Letter and be signed by the Managing Partner of one of our Firm offices.

---

[1] 300 E. Randolph Dr., Suite 5000, Chicago, Illinois 60601, USA
[2] 8th Floor, BGC Corporate Center, #3030 11th Ave Cor 30th Street, City Center, Bonifacio Global City, 1634 Taguig City, Manila
[3] City Quays One, 7 Clarendon Road, Belfast BT1 3BG

3

# Annex A

We expect our fees (not including disbursements) for acting as counsel for Credivalores with respect to U.S. law matters in connection with the proposed restructuring of its debt and related matters including a possible filing under the U.S. Bankruptcy Code to be between US$1,770,000 and US$2,700,000. This fee quote assumes that the company negotiates the terms of a pre-packaged agreement with its bondholders and BCP without our involvement and that there are no objections to the Chapter 11 plan before or after its filing. This also assumes that the pre-packaged agreement is agreed to and approved within three months (which includes two months to prepare the exchange offer and one month for the court approval.) In addition, our administrators will require an upfront retainer payment of US$100,000 to be governed by customary terms (and will be applied to our actual fees incurred on this specific matter). The remaining fees will be billed on a monthly basis and payable in not more than 60 days time.

## **EXHIBIT B**

Request for Turnover Letter Dated November 11, 2025

# AMINI LLC

**Jeffrey Chubak**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　212.497.8247
MEMBER NY & NJ BARS　　　　　　　　　　　　　　　　　　　　　　　　　jchubak@aminillc.com

November 11, 2025

**By Email**

Paul Keenan, Jr.
Baker & McKenzie LLP
1111 Brickel Avenue
Suite 1000
Miami FL 33131
paul.keenan@bakermckenzie.com

Blaire Cahn
Baker & McKenzie LLP
452 Fifth Avenue
New York, NY 10018
blaire.cahn@bakermckenzie.com

Re:   11 U.S.C. § 542 Turnover Demand of Client File
　　　24-bk-10837-dsj In re Credivalores - Crediservicios S.A.

Dear Mr. Keenan and Ms. Cahn:

We are prospective special litigation counsel to Salvatore LaMonica, the Chapter 7 trustee ("Trustee") of the above-referenced debtor ("Debtor").  We understand that Baker McKenzie represented the Debtor both prepetition and during its bankruptcy case and has recently moved to withdraw.  We note that Baker McKenzie's proposed order would relieve it "from any further obligations in connection with the Chapter 7 case and any related proceedings."  The Trustee will likely oppose such relief; however, the motion underscores the necessity of obtaining Baker McKenzie's files forthwith.  Baker McKenzie is in custody of documents pertinent to the Trustee's 11 U.S.C. § 704(a)(4) investigation of the Debtor's financial affairs.  We therefore write to request that Baker McKenzie produce its entire client file concerning the Debtor, pursuant to 11 U.S.C. § 542.  This request includes but is not limited to:

- All communications:

  o  among Baker McKenzie attorneys concerning the Debtor,

  o  with the Debtor or any of its directors or officers, including senior management listed in ECF #4 Schedule 6, or prospective directors or officers, including those persons listed in ECF #78 Exhibit A,

  o  with any of the Debtor's secured or unsecured creditors, including any identified in the liquidation analysis in ECF #78 Exhibit D or any holders of senior notes due 2025,

Paul Keenan, Jr.
Blaire Cahn
November 11, 2025
Page 2

- o with any holder of equity securities in the Debtor including any identified in ECF [#4](#4) ¶19,

- o with any of the Debtor's professionals, including FTI or Hidvegi & Betancourt Consultores or

- o with any administrator in the Debtor's Colombian Law 1116 proceeding, or with Biviana del Pilar Torres Catañeda, or any of their respective representatives.

- All documents concerning any Related Party Transaction, as defined in ECF [#4](#4) ¶50.

- All documents concerning any payments made by the Debtor during the preference period (including the 1-year period for potential insiders) and during this case, including contracts/engagement letters, invoices and payment records including bank statements, wire transfer or ACH logs and accounting records.

- All documents concerning the Debtor's corporate governance, or otherwise relating to control of the Debtor.

- Any other materials or files maintained by Baker McKenzie that relate to the Debtor's property, liabilities, business operations or financial condition.

The Trustee's entitlement to turnover of the entire client file is well established. *McKinstry v. Genser (In re Black Diamond Mining Co., LLC)*, 507 B.R. 209, 214 (E.D. Ky. 2014) (client file is property the trustee may use under § 542(a) and relates to the Debtor's property or financial affairs under § 542(e) because records and communications therein are relevant to potential claims). Neither the work product doctrine nor privilege for internal law firm documents have any application. *Id*. at 215-19. Pursuant to *CFTC v. Weintraub*, 471 U.S. 343 (1985), the Trustee controls the attorney-client privilege.

Time is of the essence, given the timing of the Trustee's appointment relative to the 11 U.S.C. § 108(a)(2) deadline. The Trustee accordingly requests access to these documents as soon as possible.

Please confirm your receipt of this letter and promptly confirm that Baker McKenzie will comply with this request. Should there be any objection to turnover, we would like to resolve any such objection informally but absent a response the Trustee will seek relief from the Court.

Sincerely,

/s/ Jeffrey Chubak

cc: Avery Samet
   Salvatore LaMonica
   Gary Herbst

# **EXHIBIT C**

*In re Refco Securities Litigation*, 759 F.Supp.2d 342 (S.D.N.Y. 2011)

🚩 **KeyCite Yellow Flag**
Distinguished by Gruss v. Zwirn, S.D.N.Y., November 20, 2013

759 F.Supp.2d 342
United States District Court, S.D. New York.

In re REFCO SECURITIES LITIGATION
Kenneth M. Krys, et al., Plaintiffs,
v.
Christopher Sugrue, et al., Defendants.

No. 07 MDL 1902(JSR)
|
Nos. 08 Civ. 3065, 08 Civ. 3086
|
Feb. 14, 2011.

**Synopsis**
**Background:** In multi-district litigation (MDL) concerning bankrupt securities broker, as Chapter 11 debtor, Special Master Hedges granted motion by successors to funds and their investment manager to compel law firm and attorneys, as non-party objectors, to produce firm's e-mail. Objectors appealed.

**Holdings:** The District Court, Jed S. Rakoff, J., held that:

[1] e-mail was not discoverable as irrelevant;

[2] e-mail was privileged document intended for internal review; and

[3] privileged e-mail was not discoverable based on client's needs.

Reversed.

West Headnotes (6)

[1]  **Federal Courts** 🔑 Effect of transfer and subsequent proceedings

District court reviews discovery orders of a special master appointed in multi-district litigation (MDL) for abuse of discretion.

[2]  **Federal Civil Procedure** 🔑 Particular Subject Matters

**Federal Civil Procedure** 🔑 Work Product Privilege; Trial Preparation Materials

Nonparty objector's e-mail, withheld as allegedly privileged attorney work product, from successor to funds and their investment manager was not discoverable, as irrelevant in multi-district litigation (MDL) concerning securities broker, as Chapter 11 debtor, since true purpose of successor's request for e-mail was to bolster successor's legal malpractice claims in arbitration against objectors. Fed.Rules Civ.Proc.Rule 26(b)(1), 28 U.S.C.A.

1 Case that cites this headnote
More cases on this issue

[3]  **Witnesses** 🔑 Documents; subpoena duces tecum

Subpoenas issued pursuant to federal civil procedure rules are subject to the relevance requirement for discovery of any nonprivileged matter. Fed.Rules Civ.Proc.Rules 26(b)(1), 45, 28 U.S.C.A.

34 Cases that cite this headnote
More cases on this issue

[4]  **Federal Civil Procedure** 🔑 Work Product Privilege; Trial Preparation Materials

In multi-district litigation (MDL) concerning securities broker, as Chapter 11 debtor, nonparty objector's e-mail that was withheld from successor to funds and their investment manager, was privileged, under New York work product law, providing narrow exceptions to client's presumptive access to attorney's entire file on represented matter, since e-mail fell within exception as document intended for internal law office review and use consisting of law firm partners' discussions of preliminary impressions of legal or factual issues in representing funds and manager in bankruptcy proceedings.

1 Case that cites this headnote

[More cases on this issue](#)

[5]   **Attorneys and Legal Services**   Maintaining and returning records and files

New York law provides narrow exceptions to a client's presumptive access to the attorney's entire file on the represented matter, including the exception for documents intended for internal law office review and use.

[2 Cases that cite this headnote](#)

[6]   **Federal Civil Procedure**   Work Product Privilege;  Trial Preparation Materials

Nonparty objector's privileged e-mail, protected as document intended for internal law office review and use regarding law partners' discussions of preliminary impressions of legal or factual issues in representing funds and their investment manager in bankruptcy proceedings, was not discoverable, under New York work product law, by successor to funds and manager on ground of ethical duty based on client's needs, in multi-district litigation (MDL) concerning securities broker, as Chapter 11 debtor, since e-mail was relevant only to bolster successor's legal malpractice claims against law firm in arbitration.

[1 Case that cites this headnote](#)
[More cases on this issue](#)

**\*343**  *MEMORANDUM*

[JED S. RAKOFF](#), District Judge.

On December 21, 2010 Special Master Hedges heard oral argument on a discovery dispute between the so-called "Krys **\*344** Plaintiffs" and non-parties Gibson Dunn & Crutcher LLP ("Gibson Dunn"), Scott Kislin, and Mitchell Karlan (collectively, the "Gibson Dunn Objectors") regarding whether or not the Gibson Dunn Objectors had to produce a particular Gibson Dunn e-mail exhibit. The Special Master subsequently issued an Order, filed January 13, 2011 in docket number 07 MD 1902, directing the Gibson Dunn Objectors to produce the disputed e-mail to the Krys Plaintiffs. On January 20, 2011 the Gibson Dunn Objectors appealed to this Court. The Court directed the Gibson Dunn Objectors to submit a letter brief ("Gibson Dunn Br.") setting forth the grounds for their appeal by January 25, 2011, and directed the Krys Plaintiffs to submit a letter brief ("Krys Br.") in response by January 28, 2011. After careful consideration of these submissions and an in camera review of the disputed e-mail itself, the Court issued a bottom-line Order on February 4, 2011 overruling the Special Master's January 13, 2011 Order. This Memorandum sets forth the reasons for the Court's decision.

By way of background, the Krys Plaintiffs are successors to the SPhinX Funds and their investment manager, PlusFunds Group, Inc. ("PlusFunds"). Krys Br. at 1. At relevant times, Gibson Dunn represented three PlusFunds directors; Chris Sugrue, Mark Kavanagh and Brian Owens. *Id.* Gibson Dunn also represented PlusFunds in litigation matters beginning in early 2005, and represented SPhinX and PlusFunds in Refco bankruptcy proceedings beginning in October 2005. *Id.* The Krys Plaintiffs assert the following two claims against Gibson Dunn Objectors, both of which the Court referred to arbitration by Order dated January 21, 2010: (1) that Gibson Dunn aided and abetted the breaches of fiduciary duty committed by Sugrue, Kavanagh and Owens; and (2) that Gibson Dunn committed legal malpractice by representing SPhinX and PlusFunds in the Refco bankruptcy proceedings when its legal advice was "compromised by unresolved conflicts of interest arising from its simultaneous representation of PlusFunds, SPhinX, Sugrue, Kavanagh, Owens, the Suffolk entities, and other parties connected to Sugrue and Kavanagh." *Id.* at 2.

On November 6, 2009, before the Court referred these claims to arbitration, the Krys Plaintiffs served a subpoena on the Gibson Dunn Objectors. Gibson Dunn Br. at 2. In response to this subpoena, the Gibson Dunn Objectors produced two privilege logs and over 137,000 pages of documents, including the Gibson Dunn e-mail here at issue (the "E-mail"). The E-mail is a three-page document that consists of a series of internal Gibson Dunn electronic communications among Gibson Dunn partners Scott Kislin, Mitchell Karlan, Natasha Labovitz, Andrew Levy and Bruce Bolander dated October 30–31, 2005. In general terms, the partners share their preliminary thoughts concerning Gibson Dunn's representation of SPhinX and PlusFunds in various matters, including the Refco bankruptcy proceedings.

 **[1]** On September 17, 2010 Gibson Dunn discovered that the E-mail had been inadvertently produced and notified the Krys Plaintiffs of the inadvertent production; the Krys Plaintiffs subsequently certified that they had destroyed all copies of the E-mail in accordance with the Court's December 15, 2009 Protective Order. *Id.* On November 15, 2010, Gibson Dunn produced to the Krys Plaintiffs a privilege log identifying "Internal Law Firm Communication/Document; work product" as the basis for withholding the E-mail. *Id.* The Krys Plaintiffs subsequently argued before the Special Master that the Gibson Dunn Objectors were required to produce the E-mail, and the Special Master agreed. Gibson **\*345** Dunn then timely appealed to this Court. In accordance with the federal rules and with the orders of this Court appointing the two special masters in this MDL, the Court reviews the discovery orders of Special Master Hedges for abuse of discretion.

The Gibson Dunn Objectors present two grounds for appeal. First, they argue that the E-mail has no relevance to the instant multi-district litigation ("MDL") in which the Special Master is presiding over discovery and, indeed, is relevant only to the arbitration between the Gibson Dunn Objectors and the Krys Plaintiffs. Gibson Dunn Br. at 1. They contend that "discovery relevant only to claims pending in arbitration is a matter to be decided in arbitration, and that the Krys Plaintiffs cannot end run that truism by serving a subpoena in the MDL." *Id.* at 2. They further argue that, by seeking to compel the production of information that is irrelevant to the instant action, the Krys Plaintiffs are engaged in an abuse of the federal subpoena power. *Id.* at 2 (citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 352 n. 17, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) ("[W]hen the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery is properly denied.")).

 **[2]** The Special Master in fact agreed with the Krys Plaintiffs that the E-mail is irrelevant to the MDL. *See* 12/21/10 Transcript at 10 ("I don't see how it is relevant to this proceeding frankly."); *Id.* at 11 ("I, frankly, don't see how it's discoverable or usable in much of anything...."). Although this factual finding by Special Master Hedges could only be overturned if it were clear error, the Court has independently reviewed the record and concludes that the Special Master's finding in this regard was plainly correct. Indeed, while the Krys Plaintiffs offer a series of tenuous arguments for the E-mail's relevance to the MDL, the Court finds the arguments not only unpersuasive but also intended to obscure the bald fact that the true purpose of the Krys Plaintiffs' request for the E-mail is to bolster claims in the arbitration, and nothing else. *See* Oppenheimer Fund, Inc., 437 U.S. at 352 n. 17, 98 S.Ct. 2380 ("In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information.").

 **[3]** Having correctly concluded that the E-mail was irrelevant to the MDL, Special Master Hedges nonetheless concluded, for reasons obscure, that the E-mail's relevance (or irrelevance) to the MDL was "not the point." *See* 12/21/10 Transcript at 11. This was an abuse of discretion. Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense." Fed.R.Civ.P.R. 26(b)(1) (emphasis supplied). Subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1). *See During v. City Univ. of N.Y.,* No. 05 Civ. 6992(RCC), 2006 WL 2192843, at \*2 (S.D.N.Y. Aug. 1, 2006) ("Subpoenas issued under Rule 45 of the Federal Rules of Civil Procedure are subject to Rule 26(b)(1)'s overriding relevance requirement."). Thus, the relevance *vel non* of the E-mail to the MDL is key to whether or not it is discoverable, and it was an abuse of discretion for the Special Master, having found that the E-mail was irrelevant to the MDL, to nonetheless order its production. [1]

 **\*346** **[4]** **[5]** Reversal is also warranted on the second ground raised by the Gibson Dunn Objectors, *viz.,* that the E-mail is privileged under the doctrine of *Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn LLP,* 91 N.Y.2d 30, 666 N.Y.S.2d 985, 689 N.E.2d 879 (1997).[2] Although the court in *Sage Realty* recognized that a client has "presumptive access to the attorney's entire file on the represented matter, subject to narrow exceptions," 91 N.Y.2d at 37, 666 N.Y.S.2d 985, 689 N.E.2d 879, one of those exceptions is "documents intended for internal law office review and use." *Id.* This is because "[t]he need for lawyers to be able to set down their thoughts privately in order to assure effective and appropriate representation warrants keeping such documents secret from the client involved." *Id.*

As non-exclusive examples of the kinds of documents that might be properly withheld under this exception, the court in *Sage Realty* mentioned "documents containing a firm attorney's general or other assessment of the client, or tentative preliminary impressions of the legal or factual issues presented in the representation, recorded primarily for the purpose of giving internal direction to facilitate performance

of the legal services entailed in that representation." *Id.* at 37–38, 666 N.Y.S.2d 985, 689 N.E.2d 879. The conversations in the E-mail are precisely these kinds of discussions. They are internal conversations among law firm partners setting forth their "preliminary impressions of the legal or factual issues presented in the representation." *Id.* at 38, 666 N.Y.S.2d 985, 689 N.E.2d 879.

The Special Master does not appear to have concluded to the contrary. *See* 12/21/10 Transcript at 7 ("These are internal musings."); Transcript at 8 ("these are just partners chatting about something"); Transcript at 11 ("[T]hese, frankly, are musings between counsel and partners at the firm as to how litigation might shape or whatever."). He failed, nonetheless, to apply the *Sage Realty* exception. This was, again, an abuse of discretion.

On appeal, the Krys Plaintiffs argue that even if the *Sage Realty* exception otherwise applies, the document is discoverable under an exception to *Sage Realty*'s exception. Krys Br. at 5. They contend that where the client demonstrates a need for the document, the lawyer has an ethical duty to produce it, even if it fits within the exception. Krys Br. at 5 (citing *Polin v. Wisehart & Koch,* No. 00 CIV. 9624(AGS) (MHD), 2002 WL 1033807, at *2–3 (S.D.N.Y. May 22, 2002) ("[W]hen the interests of the client and the attorney clash—as here—it is the client's interest that will prevail.... [W]hat may be withheld turns upon the needs of the client, and ... even opinion work product is subject to production on that basis.")). In this case, the Krys Plaintiffs argue that they have a need for the E-mail because it demonstrates Gibson Dunn's knowledge that it had a conflict of interest at the time it rendered advice to SPhinX and PlusFunds, and that cases construing *Sage Realty* have ordered such communications produced where relevant to allegations of malpractice and conflict of interest. Krys Br. at 5 (citing, for example, **\*347** *Bolton v. Weil, Gotshal & Manges LLP,* 14 Misc.3d 1220(A), 836 N.Y.S.2d 483, 2005 WL 5118189, at *4 (N.Y.Sup.2005)).

[6] Again, however, as the Gibson Dunn Objectors note, this argument only proves their point. The cases cited by the Krys Plaintiffs were legal malpractice cases in which the documents were found relevant to those actions. Legal malpractice claims are not before the Court, as they have been referred to arbitration. Thus, to the extent the exception to *Sage Realty*'s exception applies in this case, it applies only to the legal malpractice claims currently in arbitration. More generally, the ethical duty to produce the E-mail arises, if at all, only in the context of the arbitration.

The Court has considered the other arguments raised by the Krys Plaintiffs and finds them without merit. In sum, the Court concludes that the Special Master abused his discretion in ordering the Gibson Dunn Objectors to produce the E-mail, both because the E-mail is irrelevant to the MDL proceedings and because it is privileged under *Sage Realty.* Accordingly, the Court reaffirms its February 4, 2011 Order in all respects.

**All Citations**

759 F.Supp.2d 342

---

**Footnotes**

1     The Krys Plaintiffs contend that arguments regarding relevancy are misplaced because "Gibson Dunn has an ethical duty to produce the e-mails at Plaintiffs' request." Krys Br. at 3. As explained further below, the Court finds that Gibson Dunn does not in fact have an ethical obligation, at least not in the context of the MDL. However, even if it did, this argument—premised on Gibson Dunn's legal representation of SPhinX and PlusFunds—again highlights the fact that the requested information is relevant to the Krys Plaintiffs' legal malpractice claims against Gibson Dunn that are the subject of the arbitration, not the MDL.

2     New York law applies to this issue. *See* Fed. R. Ev. 501.

---